# Exhibit B.1

5/13/2022 9:54 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 64475496
By: Monica Jackson
Filed: 5/13/2022 9:54 AM

# 2022-28716 / Court: 11

CAUSE NO. _____

| | | |
|---|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG UK, LTD.  REEDHYCALOG, LP, NATIONAL OILWELL VARCO, LP, | § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| SCHLUMBERGER TECHNOLOGY CORP., SMITH INTERNATIONAL, INC. | § § § | _____ JUDICIAL DISTRICT |
| *Defendants.* | § | |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs Grant Prideco, Inc., ReedHycalog UK, Ltd., ReedHycalog, LP and National Oilwell Varco, LP file this Original Petition against Defendants Schlumberger Technology Corporation and Smith International, Inc. and shows as follow:

## NATURE OF THE CASE

This is a dispute between oilfield service companies and involves a breach of contract and a request for declaratory relief related to certain patented technology owned by Plaintiffs.

## DISCOVERY CONTROL PLAN

1.      Discovery is intended to be conducted under Level 3 in accordance with Rule 190 of the Texas Rules of Civil Procedure.

## PARTIES

2.      Plaintiff Grant Prideco, Inc. is a limited partnership formed under Delaware law, registered in Texas as a foreign limited partnership and has a principal place of business in Harris County, Texas.

3.      Plaintiff ReedHycalog UK, Ltd. is a limited partnership formed under the laws of the United Kingdom, and has a principal place of business in Gloucestershire, England.

4.      Plaintiff ReedHycalog, LP is a limited partnership formed under the laws of Delaware and has a principal place of business in Harris County, Texas. Collectively, Plaintiffs ReedHycalog UK, Ltd. and ReedHycalog UK, Ltd. are referred to herein as "ReedHycalog."

5.      Plaintiff National Oilwell Varco, LP ("NOV") is a limited partnership formed under the laws of Delaware, and has a principal place of business in Harris County, Texas.

6.      Defendant Schlumberger Technology Corporation ("Schlumberger") is a Domestic For-Profit Corporation and has a principal place of business in Harris County, Texas. Schlumberger may be served with process by serving its registered agent Capitol Corporate Services, Inc. at 206 East 9th Street, Suite 1300, Austin, Texas 78701.

7.      Defendant Smith International, Inc. ("Smith") is a Delaware corporation and has a principal place of business in Harris County, Texas.  Smith may be served with process by serving its registered agent Capitol Corporate Services, Inc. at 206 East 9th Street, Suite 1300, Austin, Texas 78701.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction because the amount in controversy exceeds the minimum jurisdictional limits of this Court and because the parties' respective principal places of business destroy diversity.

9.      Venue is proper in Harris County, Texas because (a) all or a substantial part of the events or omissions giving rise to the claim occurred there, (b) Defendant's principal place of business is there and (c) Defendant agreed to venue there as part of the transaction underlying Plaintiff' claims. Tex. Civ. P. & Rem. Code § 15.002(a)(1) and (3); § 15.020 (b).

## FACTUAL BACKGROUND

*ReedHycalog's Patented Leaching Technology*

10.     ReedHycalog is in the drill bit business. It has a long track record of developing revolutionary technology and obtaining patents related thereto. As an example, ReedHycalog developed and obtained patents related to certain technology it developed that leaches cobalt out of polycrystalline diamonds (the "Leaching Technology"). The Leaching Technology is commonly used to improve the durability of polycrystalline diamonds (aka synthetic diamonds) mounted on the cutting surfaces of downhole tools, including drill bits, reamers and hole openers (collectively referred to hereafter as "PDC Bits").

11.     The Leaching Technology can also be used to improve the performance of other products made with polycrystalline diamonds. As an example, ReedHycalog has used the Leaching Technology on polycrystalline diamonds located on non-cutting surfaces of mechanical valves located on the inside (i.e. non cutting surfaces) of other oilfield service tools.

*Grant Prideco Purchased ReedHycalog from Schlumberger*

12.     In or about 1998, Schlumberger acquired ReedHycalog.

13.     In 2002, Schlumberger decided to exit the drill bit market and in so doing, sold ReedHycalog and its Leaching Technololgy to Grant Prideco pursuant to the terms of a written Purchase Agreement dated October 25, 2002 (the "2002 Purchase Agreement").

14.     When Schlumberger sold ReedHycalog and its Leaching Technology to Grant Prideco, Schlumberger retained a limited royalty free license on certain kinds of downhole applications. The terms and conditions of that royalty free license are expressly set forth in the 2002 Purchase Agreement and prohibit, for example, Schlumberger from using the Leaching Technology in connection with the manufacture, sale or distribution of PDC Bits.

15.     Another one of the conditions of the royalty free license prohibits Schlumberger from using the Leaching Technology to manufacture or develop products or components that Grant Prideco is willing and able to sell to Schlumberger on commercially reasonable terms. In practical terms, the 2002 Purchase Agreement gave Grant Prideco the right to manufacture and earn profits on the downhole applications subject to the royalty free license – so long as Grant Prideco was willing and able to sell such products and components to Schlumberger on commercially reasonable terms.

16.     At various times following the 2002 sale, Schlumberger breached the terms of the limited royalty free license in the 2002 Purchase Agreement by using the Leaching Technology to manufacture or develop products or components that Grant Prideco was willing and able to sell to Schlumberger on commercially reasonable terms.

17.     The 2002 Purchase Agreement contains no arbitration provision, but does contain a jurisdiction and venue clause in favor of the courts in Houston, Harris County, Texas.

*Smith's License Agreement*

18.     In 2006, ReedHycalog and Grant Prideco entered a written agreement with Smith that provided Smith a non-exclusive license to use the Leaching Technology on "Licensed Drill Bits", which the agreement expressly defined as including drill bits, bicenter bits, fixed blade reamers and hole openers.

19.     In 2008, NOV acquired Grant Prideco and thereby also acquired ReedHycalog and its Leaching Technology.

20.     In 2009, Grant Prideco, ReedHycalog and NOV (collectively referred to hereafter as Plaintiffs) entered an addendum to the Smith license agreement (referred to hereafter as the "2009 Smith License Agreement"). Among other changes, the 2009 Smith License Agreement:

4

- broadened the definition of "Licensed Drill Bits" to include all reamers; and

- expanded the scope of Smith's non-exclusive license to include royalty obligations on "Licensed Mills", another kind of downhole tool.

21.     The 2009 Smith License Agreement also provided Smith with an additional "Limited Testing License" that entitled Smith to test Leached PCD elements in "Test Products", which the agreement defined as excluding the products covered by Smith's nonexclusive license; e.g. Licensed Drill Bits, reamers, hole openers and Licensed Mills.

22.     The non-exclusive license and the "Limited Testing License" are the only two licenses Smith has to use the Leaching Technology. Neither of those two licenses permit or grant Smith any product-by-product license. Meaning, Smith does not have a "reamer" license and a "drill bit" license or any other license on a product-by-product basis.

23.     Paragraph 4.03 of the 2009 Smith License Agreement contains the parties' agreement with respect to Plaintiffs' audit rights and Smith's obligations related thereto. And Exhibit E to the 2009 Smith License contains a limited arbitration clause that provides certain disputes regarding the calculation of royalties must be submitted to arbitration. This lawsuit does not seek to litigate any of the parties' arbitrable claims.

24.     Finally, paragraph 7.05 of the 2009 Smith License Agreement provides that if Smith sells unlicensed products that use the Leaching Technology, then Smith owes Plaintiffs 70% of Smith's gross profits on such products.

25.     In August 2010, Schlumberger acquired Smith.

**The Pending Audit and Related Arbitration**

26.     In November 2019, Plaintiffs initiated an audit of Smith's royalty obligations for the time period January 1, 2016 through September 2019. During the pendency of the audit, Smith refused to produce records related to revenues earned on certain downhole tools including reamers

– claiming that its royalty obligations on those tools ceased as a result of its having been acquired by Schlumberger in 2010.

27.     When the parties were unable to resolve their disputes over the amount of royalties owed (as referenced in the pending audit), Plaintiffs initiated an arbitration against Smith and Schlumberger in January 2021.

28.     In 2021, Smith declared that it had terminated its royalty-bearing reamer license in 2011. Prior to that 2021 declaration, Plaintiffs did not know nor have reason to believe that Smith contended that it had actually terminated either of the two licenses it obtained in the 2009 Smith License Agreement.

29.     As set forth above, the 2009 Smith License Agreement does not give Smith a "reamer" license or any product-by-product license. Instead, Smith only has two licenses with respect to the Leaching Technology: (i) a non-exclusive license for use in connection with "Licensed Drill Bits" and "Licensed Mills" (which license covers drill bits, reamers and hole openers among other downhole tools) and (ii) a "Limited Testing License."

30.     Given that Smith does not have a "reamer" license to terminate, Smith's 2021 declaration regarding termination creates a controversy about whether Smith terminated its non-exclusive license to use the Leaching Technology.

31.     Schlumberger and Smith's conduct gives rise to the following causes of action.

## CAUSES OF ACTION

***Schlumberger's Breach of the 2002 Purchase Agreement***

32.     Plaintiff ReedHycalog incorporates the allegations in the preceding paragraphs as if fully set forth herein.

33.     The 2002 Purchase Agreement is a valid enforceable agreement between Plaintiff Grant Prideco and Defendant Schlumberger.

34.     The 2002 Purchase Agreement prohibits Schlumberger from using the Leaching Technology to manufacture or develop products or components that Plaintiff Grant Prideco is willing and able to sell to Schlumberger on commercially reasonable terms.

35.     At various times following the 2002 sale, Schlumberger breached the terms of the the 2002 Purchase Agreement by using the Leaching Technology to manufacture or develop products or components that Grant Prideco was willing and able to sell to Schlumberger on commercially reasonable terms.

36.     Plaintiff Grant Prideco suffered actual damages as a result of Defendant Schlumberger's breach. Plaintiff Grant Prideco seeks recovery of those actual damages as well as recovery of its attorneys' fees and interest pursuant to Tex. Civ. Prac. & Rem. Code 38.001.

***Request for Declaratory Judgment Against Smith***

37.     Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

38.     The 2009 Smith License Agreement does not give Smith a "reamer" license or any product-by-product license. Instead, Smith only has two licenses with respect to the Leaching Technology: (i) a non-exclusive license for use in connection with "Licensed Drill Bits" and "Licensed Mills" (which license covers drill bits, reamers and hole openers among other downhole tools) and (ii) a "Limited Testing License."

39.     Smith's declaration in September 2021 that it had "terminated its royalty-bearing reamer license in 2011" creates an actual controversy over which Plaintiffs seek declaratory relief.

40.     In particular, Plaintiffs seek a declaration that Smith either (i) terminated the entirety of its non-exclusive license to use the Leaching Technology in 2011 or (ii) has not terminated its non-exclusive license to use the Leaching Technology.

**Alternative Claim Against Smith for Breach of 2009 Smith License Agreement**

41.     Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein

42.     The 2009 Smith License Agreement is a valid and enforceable agreement. Paragraph 7.05 of the agreement provides that if Smith sells unlicensed products that use the Leaching Technology, then Smith owes Plaintiffs 70% of Smith's gross profits on its sale of unlicensed products.

43.     In the event the Court declares that Smith terminated its non-exclusive license to use the Leaching Technology as of 2011, the Smith's sale of unlicensed products since 2011 has caused Plaintiffs to suffer actual damages in the form and amount as specified in the agreement.

44.     Plaintiffs seek recovery of those actual damages as well as recovery of their attorneys' fees and interest pursuant to Tex. Civ. Prac. & Rem. Code 38.001.

**Discovery Rule**

45.     Plaintiff Grant Prideco did not know and in the exercise of reasonable diligence could not have known of the facts giving rise to its claims against Defendant Schlumberger until a time well within the applicable period allowed by law for the filing of a lawsuit.

46.     Plaintiffs Grant Prideco, ReedHycalog and NOV did not know and in the exercise of reasonable diligence could not have known of the facts giving rise to their claims against Defendant Smith until a time well within the applicable period allowed by law for the filing of a lawsuit.

**STATEMENT OF RELIEF**

47.     Plaintiff Grant Prideco seeks monetary relief over $1,000,000. The monetary relief sought by Grant Prideco is within the jurisdictional limits of the Court.

**FEES AND COSTS**

48.     Plaintiff Grant Prideco seeks recovery of its reasonable attorney's fees for breach of contract under Chapter 38 of the Texas Civil Practices and Remedies Code. Plaintiffs Grant Prideco, ReedHycalog and NOV seek recovery of their reasonable attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code 38.001.

**CONDITIONS PRECEDENT**

49.     All conditions precedent to Plaintiffs' claims for relief have occurred, have been performed, or have been waived.

**PRAYER**

50.     Premises considered, Plaintiff Grant Prideco asks that the Court enter judgment against Defendant Schlumberger and award it the following relief:

     a.  actual and consequential damages.

     b.  pre-and post-judgment interest as allowed by law.

     c.  reasonable and necessary attorney's fees and costs of court.

     d.  such other and further relief to which Plaintiffs are entitled.

51.     Plaintiffs Grant Prideco, ReedHycalog and NOV ask the Court to declare that Defendant Smith either (i) terminated the entirety of its non-exclusive license to use the Leaching Technology in 2011 or (ii) has not terminated its non-exclusive license to use the Leaching Technology and for such other and further relief to which they may be entitled, including the

recovery of their reasonable and necessary attorney's fees related to and arising out of this request for Declaratory Relief.

Respectfully Submitted,

**AHMAD, ZAVITSANOS & MENSING P.C.**

*/s/ John Zavitsanos*
John Zavitsanos
Texas Bar No. 22251650
P. Kevin Leyendecker
Texas Bar No. 00784472
Shahmeer Halepota
Texas Bar No. 24109968
Michael Killingsworth
Texas Bar No. 24110089
Louis Liao
Texas Bar No. 24109471
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Telephone: 713.655.1101
jzavitsanos@azalaw.com
kleyendecker@azalaw.com
shalepota@azalaw.com
mkillingsworth@azalaw.com
lliao@azalaw.com

**ATTORNEYS FOR PLAINTIFFS**

# Exhibit B.2

8/19/2022 5:34 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 67496409
By: Anais Aguirre
Filed: 8/19/2022 5:34 PM

CAUSE NO. 2022-28716

| | | |
|---|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG | § | |
| UK, LTD.  REEDHYCALOG, LP, | § | IN THE DISTRICT COURT OF |
| NATIONAL OILWELL VARCO, LP, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| SCHLUMBERGER TECHNOLOGY CORP., | § | |
| SMITH INTERNATIONAL, INC. | § | |
| *Defendants.* | § | 11TH JUDICIAL DISTRICT |

## PLAINTIFFS' FIRST AMENDED ORIGINAL PETITION

Plaintiffs Grant Prideco, Inc., ReedHycalog UK, Ltd., ReedHycalog, LP and National

Oilwell Varco, LP file this First Amended Original Petition against Defendants Schlumberger

Technology Corporation and Smith International, Inc. and shows as follow:

## NATURE OF THE CASE

This is a dispute between oilfield service companies and involves a breach of contract and

a request for declaratory relief related to certain patented technology owned by Plaintiffs.

## DISCOVERY CONTROL PLAN

1.      Discovery is intended to be conducted under Level 3 in accordance with Rule 190

of the Texas Rules of Civil Procedure.

## PARTIES

2.      Plaintiff Grant Prideco, Inc. is a limited partnership formed under Delaware law,

registered in Texas as a foreign limited partnership and has a principal place of business in Harris

County, Texas.

3.      Plaintiff ReedHycalog UK, Ltd. is a limited partnership formed under the laws of

the United Kingdom, and has a principal place of business in Gloucestershire, England.

4.      Plaintiff ReedHycalog, LP is a limited partnership formed under the laws of Delaware and has a principal place of business in Harris County, Texas. Collectively, Plaintiffs ReedHycalog UK, Ltd. and ReedHycalog UK, Ltd. are referred to herein as "ReedHycalog."

5.      Plaintiff National Oilwell Varco, LP ("NOV") is a limited partnership formed under the laws of Delaware, and has a principal place of business in Harris County, Texas.

6.      Defendant Schlumberger Technology Corporation ("Schlumberger") is a Domestic For-Profit Corporation and has a principal place of business in Harris County, Texas. Schlumberger may be served with process by serving its registered agent Capitol Corporate Services, Inc. at 206 East 9th Street, Suite 1300, Austin, Texas 78701.

7.      Defendant Smith International, Inc. ("Smith") is a Delaware corporation and has a principal place of business in Harris County, Texas.  Smith may be served with process by serving its registered agent Capitol Corporate Services, Inc. at 206 East 9th Street, Suite 1300, Austin, Texas 78701.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction because the amount in controversy exceeds the minimum jurisdictional limits of this Court and because the parties' respective principal places of business destroy diversity.

9.      Venue is proper in Harris County, Texas because (a) all or a substantial part of the events or omissions giving rise to the claim occurred there, (b) Defendant's principal place of business is there and (c) Defendant agreed to venue there as part of the transaction underlying Plaintiff' claims. Tex. Civ. P. & Rem. Code § 15.002(a)(1) and (3); § 15.020 (b).

## FACTUAL BACKGROUND

### *ReedHycalog's Patented Leaching Technology*

10.     ReedHycalog is in the drill bit business. It has a long track record of developing revolutionary technology and obtaining patents related thereto. As an example, ReedHycalog developed and obtained patents related to certain technology it developed that leaches cobalt out of polycrystalline diamonds (the "Leaching Technology"). The Leaching Technology is commonly used to improve the durability of polycrystalline diamonds (aka synthetic diamonds) mounted on the cutting surfaces of downhole tools, including drill bits, reamers and hole openers (collectively referred to hereafter as "PDC Bits").

11.     The Leaching Technology can also be used to improve the performance of other products made with polycrystalline diamonds. As an example, ReedHycalog has used the Leaching Technology on polycrystalline diamonds located on non-cutting surfaces of mechanical valves located on the inside (i.e. non cutting surfaces) of other oilfield service tools.

### *Grant Prideco Purchased ReedHycalog from Schlumberger*

12.     In or about 1998, Schlumberger acquired ReedHycalog.

13.     In 2002, Schlumberger decided to exit the drill bit market and in so doing, sold ReedHycalog and its Leaching Technololgy to Grant Prideco pursuant to the terms of a written Purchase Agreement dated October 25, 2002 (the "2002 Purchase Agreement").

14.     When Schlumberger sold ReedHycalog and its Leaching Technology to Grant Prideco, Schlumberger retained a limited royalty free license on certain kinds of downhole applications. The terms and conditions of that royalty free license are expressly set forth in the 2002 Purchase Agreement and prohibit, for example, Schlumberger from using the Leaching Technology in connection with the manufacture, sale or distribution of PDC Bits.

15.     Another one of the conditions of the royalty free license prohibits Schlumberger from using the Leaching Technology to manufacture or develop products or components that Grant Prideco is willing and able to sell to Schlumberger on commercially reasonable terms. In practical terms, the 2002 Purchase Agreement gave Grant Prideco the right to manufacture and earn profits on the downhole applications subject to the royalty free license – so long as Grant Prideco was willing and able to sell such products and components to Schlumberger on commercially reasonable terms.

16.     At various times following the 2002 sale, Schlumberger breached the terms of the limited royalty free license in the 2002 Purchase Agreement by using the Leaching Technology to manufacture or develop products or components that Grant Prideco was willing and able to sell to Schlumberger on commercially reasonable terms.

17.     The 2002 Purchase Agreement contains no arbitration provision, but does contain a jurisdiction and venue clause in favor of the courts in Houston, Harris County, Texas.

*Smith's License Agreement*

18.     In 2006, ReedHycalog and Grant Prideco entered a written agreement with Smith that provided Smith a non-exclusive license to use the Leaching Technology on "Licensed Drill Bits", which the agreement expressly defined as including drill bits, bicenter bits, fixed blade reamers and hole openers.

19.     In 2008, NOV acquired Grant Prideco and thereby also acquired ReedHycalog and its Leaching Technology.

20.     In 2009, Grant Prideco, ReedHycalog and NOV (collectively referred to hereafter as Plaintiffs) entered an addendum to the Smith license agreement (referred to hereafter as the "2009 Smith License Agreement"). Among other changes, the 2009 Smith License Agreement:

4

- broadened the definition of "Licensed Drill Bits" to include all reamers; and

- expanded the scope of Smith's non-exclusive license to include royalty obligations on "Licensed Mills", another kind of downhole tool.

21.     The 2009 Smith License Agreement also provided Smith with an additional "Limited Testing License" that entitled Smith to test Leached PCD elements in "Test Products", which the agreement defined as excluding the products covered by Smith's nonexclusive license; e.g. Licensed Drill Bits, reamers, hole openers and Licensed Mills.

22.     The non-exclusive license and the "Limited Testing License" are the only two licenses Smith has to use the Leaching Technology. Neither of those two licenses permit or grant Smith any product-by-product license. Meaning, Smith does not have a "reamer" license and a "drill bit" license or any other license on a product-by-product basis.

23.     Paragraph 4.03 of the 2009 Smith License Agreement contains the parties' agreement with respect to Plaintiffs' audit rights and Smith's obligations related thereto. And Exhibit E to the 2009 Smith License contains a limited arbitration clause that provides certain disputes regarding the calculation of royalties must be submitted to arbitration. This lawsuit does not seek to litigate any of the parties' arbitrable claims.

24.     Finally, paragraph 7.05 of the 2009 Smith License Agreement provides that if Smith sells unlicensed products that use the Leaching Technology, then Smith owes Plaintiffs 70% of Smith's gross profits on such products.

25.     In August 2010, Schlumberger acquired Smith.

***The Pending Audit and Related Arbitration***

26.     In November 2019, Plaintiffs initiated an audit of Smith's royalty obligations for the time period January 1, 2016 through September 2019. During the pendency of the audit, Smith refused to produce records related to revenues earned on certain downhole tools including reamers

5

– claiming that its royalty obligations on those tools ceased as a result of its having been acquired by Schlumberger in 2010.

27.     When the parties were unable to resolve their disputes over the amount of royalties owed (as referenced in the pending audit), Plaintiffs initiated an arbitration against Smith and Schlumberger in January 2021.

28.     In 2021, Smith declared that it had terminated its royalty-bearing reamer license in 2011. Prior to that 2021 declaration, Plaintiffs did not know nor have reason to believe that Smith contended that it had actually terminated either of the two licenses it obtained in the 2009 Smith License Agreement.

29.     As set forth above, the 2009 Smith License Agreement does not give Smith a "reamer" license or any product-by-product license. Instead, Smith only has two licenses with respect to the Leaching Technology: (i) a non-exclusive license for use in connection with "Licensed Drill Bits" and "Licensed Mills" (which license covers drill bits, reamers and hole openers among other downhole tools) and (ii) a "Limited Testing License."

30.     Given that Smith does not have a "reamer" license to terminate, Smith's 2021 declaration regarding termination creates a controversy about whether Smith terminated its non-exclusive license to use the Leaching Technology.

31.     Schlumberger and Smith's conduct gives rise to the following causes of action.

## **CAUSES OF ACTION**

### *Schlumberger's Breach of the 2002 Purchase Agreement*

32.     Plaintiff ReedHycalog incorporates the allegations in the preceding paragraphs as if fully set forth herein.

33.     The 2002 Purchase Agreement is a valid enforceable agreement between Plaintiff Grant Prideco and Defendant Schlumberger.

34.     The 2002 Purchase Agreement prohibits Schlumberger from using the Leaching Technology to manufacture or develop products or components that Plaintiff Grant Prideco is willing and able to sell to Schlumberger on commercially reasonable terms.

35.     At various times following the 2002 sale, Schlumberger breached the terms of the the 2002 Purchase Agreement by using the Leaching Technology to manufacture or develop products or components that Grant Prideco was willing and able to sell to Schlumberger on commercially reasonable terms.

36.     Plaintiff Grant Prideco suffered actual damages as a result of Defendant Schlumberger's breach. Plaintiff Grant Prideco seeks recovery of those actual damages as well as recovery of its attorneys' fees and interest pursuant to Tex. Civ. Prac. & Rem. Code 38.001.

### *Alternative Claim Against Smith for Breach of 2009 Smith License Agreement*

37.     Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein

38.     The 2009 Smith License Agreement is a valid and enforceable agreement. Paragraph 7.05 of the agreement provides that if Smith sells unlicensed products that use the Leaching Technology, then Smith owes Plaintiffs 70% of Smith's gross profits on its sale of unlicensed products.

39.     In the event the pending arbitration between the parties results in a finding that Smith terminated its non-exclusive license to use the Leaching Technology as of 2011, the Smith's sale of unlicensed products since 2011 has caused Plaintiffs to suffer actual damages in the form and amount as specified in the agreement.

40.     Plaintiffs seek recovery of those actual damages as well as recovery of their attorneys' fees and interest pursuant to Tex. Civ. Prac. & Rem. Code 38.001.

***Discovery Rule***

41.     Plaintiff Grant Prideco did not know and in the exercise of reasonable diligence could not have known of the facts giving rise to its claims against Defendant Schlumberger until a time well within the applicable period allowed by law for the filing of a lawsuit.

42.     Plaintiffs Grant Prideco, ReedHycalog and NOV did not know and in the exercise of reasonable diligence could not have known of the facts giving rise to their claims against Defendant Smith until a time well within the applicable period allowed by law for the filing of a lawsuit.

## STATEMENT OF RELIEF

43.     Plaintiff Grant Prideco seeks monetary relief over $1,000,000. The monetary relief sought by Grant Prideco is within the jurisdictional limits of the Court.

## FEES AND COSTS

44.     Plaintiff Grant Prideco seeks recovery of its reasonable attorney's fees for breach of contract under Chapter 38 of the Texas Civil Practices and Remedies Code. Plaintiffs Grant Prideco, ReedHycalog and NOV seek recovery of their reasonable attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code 38.001.

## CONDITIONS PRECEDENT

45.     All conditions precedent to Plaintiffs' claims for relief have occurred, have been performed, or have been waived.

## PRAYER

46.     Premises considered, Plaintiff Grant Prideco asks that the Court enter judgment against Defendant Schlumberger and award it the following relief:

    a.   actual and consequential damages.

    b.   pre-and post-judgment interest as allowed by law.

    c.   reasonable and necessary attorney's fees and costs of court.

    d.   such other and further relief to which Plaintiffs are entitled.


                              Respectfully Submitted,

                              **AHMAD, ZAVITSANOS & MENSING P.C.**

                              */s/ John Zavitsanos*
                              John Zavitsanos
                              Texas Bar No. 22251650
                              P. Kevin Leyendecker
                              Texas Bar No. 00784472
                              Shahmeer Halepota
                              Texas Bar No. 24109968
                              Michael Killingsworth
                              Texas Bar No. 24110089
                              Louis Liao
                              Texas Bar No. 24109471
                              1221 McKinney Street, Suite 2500
                              Houston, Texas 77010
                              Telephone: 713.655.1101
                              jzavitsanos@azalaw.com
                              kleyendecker@azalaw.com
                              shalepota@azalaw.com
                              mkillingsworth@azalaw.com
                              lliao@azalaw.com

                              **ATTORNEYS FOR PLAINTIFFS**

9

**CERTIFICATE OF SERVICE**

  I certify that on August 19, 2022, a copy of the foregoing was served on the following counsel of record via email.

Craig Smeyser
Samantha Jarvis
Smyser Kaplan and Veselka
717 Texas Ave. #2800
Houston, TX 77002


        /s/ P. Kevin Leyendecker
        P. Kevin Leyendecker

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Myrna Flores on behalf of John Zavitsanos
Bar No. 22251650
mflores@azalaw.com
Envelope ID: 67496409
Status as of 8/22/2022 11:58 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| John Zavitsanos | | jzavitsanos@azalaw.com | 8/19/2022 5:34:10 PM | SENT |
| Patrick KevinLeyendecker | | kleyendecker@azalaw.com | 8/19/2022 5:34:10 PM | SENT |
| Shahmeer Halepota | | shalepota@azalaw.com | 8/19/2022 5:34:10 PM | SENT |
| Michael Killingsworth | | mkillingsworth@azalaw.com | 8/19/2022 5:34:10 PM | SENT |
| Louis Liao | | lliao@azalaw.com | 8/19/2022 5:34:10 PM | SENT |
| Samantha Jarvis | | sjarvis@skv.com | 8/19/2022 5:34:10 PM | SENT |
| Craig Smeyser | | csmyser@skv.com | 8/19/2022 5:34:10 PM | SENT |
| Samantha Jarvis | | sjarvis@skv.com | 8/19/2022 5:34:10 PM | SENT |
| Craig Smeyser | | csmyser@skv.com | 8/19/2022 5:34:10 PM | SENT |

# Exhibit B.3

8/19/2022 5:34 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 67496409
By: Anais Aguirre
Filed: 8/19/2022 5:34 PM

CAUSE NO. 2022-28716

| | | |
|---|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG UK, LTD.  REEDHYCALOG, LP, NATIONAL OILWELL VARCO, LP,<br>    *Plaintiffs,* | §<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| v. | §<br>§ | HARRIS COUNTY, TEXAS |
| SCHLUMBERGER TECHNOLOGY CORP., SMITH INTERNATIONAL, INC.<br>    *Defendants.* | §<br>§<br>§<br>§ | 11TH JUDICIAL DISTRICT |

## **PLAINTIFFS' NOTICE OF ABANDONMENT**

Plaintiffs Grant Prideco, Inc., ReedHycalog UK, Ltd., ReedHycalog, LP and National Oilwell Varco, LP hereby abandon with prejudice their Declaratory Judgment cause of action alleged in Plaintiffs' Original Petition at ¶¶ 37-40. This abandonment **only** applies to Plaintiffs' Declaratory Judgment cause of action. *See* TEX. R. CIV. P. 165. Plaintiffs remaining causes of action against Defendants remain in place and are unaffected by this Notice.

Respectfully Submitted,

**AHMAD, ZAVITSANOS & MENSING P.C.**

*/s/ John Zavitsanos*
John Zavitsanos
Texas Bar No. 22251650
P. Kevin Leyendecker
Texas Bar No. 00784472
Shahmeer Halepota
Texas Bar No. 24109968
Michael Killingsworth
Texas Bar No. 24110089
Louis Liao
Texas Bar No. 24109471
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Telephone: 713.655.1101
jzavitsanos@azalaw.com
kleyendecker@azalaw.com
shalepota@azalaw.com
mkillingsworth@azalaw.com
lliao@azalaw.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I certify that on August 19, 2022, a copy of the foregoing was served on the following counsel of record via email.

Craig Smeyser
Samantha Jarvis
Smyser Kaplan and Veselka
717 Texas Ave. #2800
Houston, TX 77002

/s/ P. Kevin Leyendecker
P. Kevin Leyendecker

2

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Myrna Flores on behalf of John Zavitsanos
Bar No. 22251650
mflores@azalaw.com
Envelope ID: 67496409
Status as of 8/22/2022 11:58 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Samantha Jarvis | | sjarvis@skv.com | 8/19/2022 5:34:10 PM | SENT |
| John Zavitsanos | | jzavitsanos@azalaw.com | 8/19/2022 5:34:10 PM | SENT |
| Patrick KevinLeyendecker | | kleyendecker@azalaw.com | 8/19/2022 5:34:10 PM | SENT |
| Shahmeer Halepota | | shalepota@azalaw.com | 8/19/2022 5:34:10 PM | SENT |
| Michael Killingsworth | | mkillingsworth@azalaw.com | 8/19/2022 5:34:10 PM | SENT |
| Louis Liao | | lliao@azalaw.com | 8/19/2022 5:34:10 PM | SENT |
| Craig Smeyser | | csmyser@skv.com | 8/19/2022 5:34:10 PM | SENT |
| Samantha Jarvis | | sjarvis@skv.com | 8/19/2022 5:34:10 PM | SENT |
| Craig Smeyser | | csmyser@skv.com | 8/19/2022 5:34:10 PM | SENT |

Exhibit B.4

2/6/2023 5:02 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 72491296
By: Wanda Chambers
Filed: 2/6/2023 5:02 PM

CAUSE NO. 2022-28716

| | | |
|---|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG UK, LTD. REEDHYCALOG, LP, NATIONAL OILWELL VARCO, LP, | § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § | |
| v. | § § | |
| SCHLUMBERGER TECHNOLOGY CORP., SMITH INTERNATIONAL, INC.; ULTERRA DRILLING TECHNOLOGIES, L.P. , ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC.; and VAREL INTERNATIONAL ENERGY SERVICES, INC., VAREL INTERNATIONAL INDUSTRIES, L.P. | § § § § § § § § § | HARRIS COUNTY, TEXAS |
| *Defendants.* | § | 11TH JUDICIAL DISTRICT |

## **PLAINTIFFS' SECOND AMENDED PETITION**

Plaintiffs Grant Prideco, Inc., ReedHycalog UK, Ltd., ReedHycalog, LP and National Oilwell Varco, LP (collectively, "Plaintiffs") file this Second Amended Petition against Defendants Schlumberger Technology Corporation ("Schlumberger") and Smith International, Inc. ("Smith"); Ulterra Drilling Technologies, L.P. and Rockbit International Subsidiaries, LLC (collectively, "Ulterra"); Varel International Energy Services, Inc. and Varel International Industries, L.P. (collectively, "Varel"); and show as follows:

## **NATURE OF THE CASE**

This is a dispute between oilfield service companies arising out of written agreements that grant Defendants non-exclusive licenses to use Plaintiffs' patented technology to improve the performance of synthetic diamond cutters (referred to herein as "Leached Cutters") located on drill bits and other downhole tools.

The central issue in the case relates to the duration of Defendants' royalty obligations as expressly defined in the license agreements. Specifically, each license expressly states that

Defendants owe royalties until the termination of either the last patent specifically listed in the license or any later-issue patent that relates to the technology.

Because the patents related to the technology do not terminate until 2031, Plaintiffs seek both a declaration that Defendants' royalty obligations do not expire until 2031 and damages as a result of Defendants' failure to pay royalties after October 2021.

The case also involves a discreet breach of contract claim against Defendant Schlumberger as a result of its unlicensed manufacture and sale of certain downhole tools with Leached Cutters.

## DISCOVERY CONTROL PLAN

1.      Discovery is intended to be conducted under Level 3 in accordance with Rule 190 of the Texas Rules of Civil Procedure.

## PARTIES

*Plaintiffs*

2.      Plaintiff Grant Prideco, Inc. is a limited partnership formed under Delaware law, registered in Texas as a foreign limited partnership, and has a principal place of business in Harris County, Texas.

3.      Plaintiff ReedHycalog UK, Ltd. Is a limited partnership formed under the laws of the United Kingdom, and has a principal place of business in Gloucestershire, England.

4.      Plaintiff ReedHycalog, LP is a limited partnership formed under the laws of Delaware, registered in Texas as a foreign limited partnership, and has a principal place of business in Harris County, Texas. Collectively, Plaintiffs ReedHycalog UK, Ltd. and ReedHycalog UK, Ltd. are referred to herein as "ReedHycalog."

5.　　　Plaintiff National Oilwell Varco, LP ("NOV") is a limited partnership formed under the laws of Delaware, registered in Texas as a foreign limited partnership, and has a principal place of business in Harris County, Texas.

*Schlumberger*

6.　　　Defendant Schlumberger Technology Corporation ("Schlumberger") is a Domestic For-Profit Corporation and has a principal place of business in Harris County, Texas. Schlumberger may be served with process by serving its registered agent Capitol Corporate Services, Inc. at 206 East 9th Street, Suite 1300, Austin, Texas 78701.

7.　　　Defendant Smith International, Inc. ("Smith") is a Delaware corporation and has a principal place of business in Harris County, Texas. Smith may be served with process by serving its registered agent Capitol Corporate Services, Inc. at 206 East 9th Street, Suite 1300, Austin, Texas 78701.

*Ulterra*

8.　　　Defendant Ulterra Drilling Technologies. L.P. is a Texas limited partnership having a place of business at 420 Throckmorton St., Ste. 1110, Ft. Worth, TX 76102.  It may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

9.　　　Defendant Rockbit International Subsidiaries, LLC. Is a Texas corporation, currently operating under the name Ulterra International Subsidiaries, LLC.  It has a place of business at 201 Main Street, Suite 1660, Ft. Worth, TX 76102.  It may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

3

*Varel*

10.      Defendant Varel International Energy Services, Inc. is a Delaware corporation having its principal place of business in Texas.  It may be served with process by serving its registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

11.      Defendant Varel International Industries, L.P. is a Delaware partnership having its principal place of business in Texas.  It is registered to do business in Texas.  It may be served with process by serving its registered agent Corporation Service Company d/b/a/ CSC-Lawyers Incorporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

## JURISDICTION AND VENUE

12.      This Court has jurisdiction pursuant to Article V, Section 8, of the Texas Constitution. The amount in controversy exceeds the minimum jurisdictional limits of this Court.

13.      Venue is proper in Harris County, Texas under Tex. Civ. Prac. & Rem. Code § 15.002(a)(1) and 15.020 (b). All claims raised in this Second Amended Petition concern disputes between the parties that arise out of and/or relate to valid and existing contracts in which each Defendant agreed that the exclusive jurisdiction and venue for any action brought between the parties that arises out of or relates to the contract shall be the courts sitting in Harris County, Texas. Moreover, all of a substantial part of the events and omissions giving rise to the claims made the basis of this lawsuit occurred in Harris County, Texas.

## FACTUAL BACKGROUND

*ReedHycalog's Patented Leaching Technology*

14.      Plaintiff ReedHycalog is in the drill bit business. It has a long track record of developing revolutionary technology and obtaining patents related thereto.

4

15.     Among others, ReedHycalog owns patents related to certain technology it developed that leaches cobalt out of polycrystalline diamond material (the "Leaching Technology"). The Leaching Technology is commonly used to improve the durability of polycrystalline diamonds (aka synthetic diamonds) mounted on the cutting surfaces of downhole tools, including drill bits, reamers, and hole openers.

***Grant Prideco's Acquisition of ReedHycalog from Schlumberger***

16.     In or about 1998, Schlumberger acquired ReedHycalog.

17.     In 2002, Schlumberger sold ReedHycalog and its Leaching Technology to Grant Prideco pursuant to the terms of a written Purchase Agreement dated October 25, 2002 (the "2002 Purchase Agreement").

18.     When Schlumberger sold ReedHycalog and its Leaching Technology to Grant Prideco, Schlumberger retained a limited royalty free license on certain kinds of downhole applications. The terms and conditions of that royalty free license are expressly set forth in the 2002 Purchase Agreement and prohibit, for example, Schlumberger from using the Leaching Technology in connection with the manufacture, sale or distribution of (a) PDC Bits (i.e. drill bits with Leached Cutters) or (b) components thereof (i.e. Leached Cutters). Stated differently, the 2002 Purchase Agreement prohibits Schlumberger from manufacturing, selling or renting any downhole tools that contain Leached Cutters.

19.     At various times following the 2002 sale, Schlumberger breached (and continues to breach) the terms of the limited royalty free license in the 2002 Purchase Agreement by using the Leaching Technology to manufacture, sell or rent downhole tools that contain Leached Cutters.

*Smith's 2006 License Agreement*

20.     In 2006, ReedHycalog and Grant Prideco entered a written agreement with Smith (the "2006 Smith License") that provided Smith a non-exclusive license to use the Leaching Technology on "Licensed Drill Bits," which the agreement expressly defined as including drill bits, bicenter bits, fixed blade reamers and hole openers.

*NOV's Acquisition of Grant Prideco and ReedHycalog*

21.     In 2008, NOV acquired Grant Prideco and in so doing, also acquired ReedHycalog, ReedHycalog's Leaching Technology and the patent rights owned by ReedHycalog relating to such technology.

*The License Agreements at Issue*

22.     In 2009, Plaintiffs entered into an addendum with Smith which supplemented, amended, and modified some of the terms of the "2006 Smith License." This 2009 agreement is referred to herein as the "Smith License."

23.     Also in 2009, Plaintiffs entered into separate license agreements with Schlumberger, Ulterra, and Varel under which Schlumberger, Ulterra, and Varel each received a non-exclusive license to use the Leaching Technology (referred to as the "Schlumberger License", the "Ulterra License" and the "Varel License").

24.     Collectively, the license agreements with Smith, Schlumberger, Ulterra and Varel are referred to herein as the "License Agreements."

*The Schlumberger License Also Prohibits Selling Non-Licensed Tools with Leached Cutters*

25.     The Schlumberger License, like the 2002 Purchase Agreement, prohibits Schlumberger from using the Leaching Technology to manufacture, sell or rent unlicensed downhole tools with Leached Cutters. Schlumberger also specifically agreed in its License

Agreement to pay Plaintiffs a penalty equal to 70% of gross margin (as defined in the agreement) in connection with the non-inadvertent sale/rental of unlicensed tools with Leached Cutters.

***The License Agreements Grant Broad Licenses to Use the Leaching Technology Based on a Variety of Patents***

26.     Each License Agreement contains royalty obligations based on the "Licensed RH Patents" – a phrase that is defined by the following common language:

> "Licensed RH Patents" ***means all U.S. patents and patent applications listed on Exhibit C*** and all foreign counterpart patents and patent applications, ***and all continuations***, continuations-in-part, divisionals, reissues, reexaminations, and term extensions ***thereof***. … ***Licensed RH Patents also includes any*** current or ***later-issued Licensor patent*** (i) ***having an independent claim relating to the Leaching of PCD elements or*** (ii) having a dependent claim relating to the Leaching of PCD elements, ***which was filed on or before the Effective Date of this Agreement*** or claims a priority date on or before the Effective Date of this Agreement. …[1] (emphasis added)

27.     Exhibit C to each License Agreement identifies a number of patents owned by Plaintiffs that relate to the Leaching Technology. Each of the specifically listed patents constitute a "Licensed RH Patent" under the License Agreements.

28.     Although not explicitly listed on Exhibit C to each License Agreement, U.S. Patent No. 7,568,534 ("the '534 Patent) is also a "Licensed RH Patent" because it is a continuation of a patent application listed on Exhibit C to each License Agreement; namely U.S. Patent Application Serial No. 11/163,323. The '534 Patent expires on October 10, 2025.

29.     Likewise, U.S. Patent No. 8,721,752 ("the '752 Patent") is also a "Licensed RH Patent" because it includes at least one "independent claim relating to the Leaching of PCD

---

[1] The Ulterra and Varel PCD Leaching Technology Licenses included additional language in their definitions of "Licensed RH Patents" not pertinent to the present claims.

7

elements" and was filed prior to the effective date of each License Agreement. The '752 Patent expires on January 10, 2031.

***The Defendants Owe Royalties Based on Invoicing of "Licensed Drill Bits"***

30.    To provide a convenient method of fixing the business value of the privileges granted to Defendants under the License Agreements, and to avoid the necessity of the parties having a controversy as to whether each product offered by Defendants embodies any particular "Licensed RH Patent", the parties to each License Agreement adopted the approach of basing royalties on an agreed percentage of the licensee's sales of an identified class of product offerings.

31.    Specifically, in consideration for the grant of the broad and expansive technology rights in the License Agreements, each Defendant agreed to pay royalties based on the net price of "Licensed Drill Bits" invoiced during each reported quarter.  To that end, each License Agreement includes the following common language:

> Beginning on the Effective date of this Agreement [Licensee] will owe ReedHycalog, on a quarterly basis, a go-forward royalty based on [Licensee's] Net Price of Licensed Drill Bits[2] invoiced on a worldwide basis to a third party customer during the reported quarter.

32.    Importantly, the definition of "Licensed Drill Bits" is not based on whether such "Licensed Drill Bit" practices the claims of any particular Licensed RH Patent. Rather, the defining criteria for determining whether a product is a royalty-bearing "Licensed Drill Bit" is based on certain articulated physical characteristics. Specifically, the License Agreements define "Licensed Drill Bits" as drill bits manufactured or marketed by the Licensee or its Subsidiaries containing at

---

[2] The Smith License Agreement includes an additional three words  after the phrase "Licensed Drill Bits."

least one PCD element having "a non-Leached [or unLeached] region that is not substantially free of catalyzing material" and either

(i)     a Leached region that is substantially free of catalyzing material to a depth less than 0.1 mm from the Top Working Surface (as measured in a direction perpendicular to the outer surface of the Top Working Surface (See Exhibit A)), which may (but is not required to) further have a Bevel Working Surface and/ or Side Working Surface that has a Leached region that is substantially free of catalyzing material to a depth less than 0.1 mm from the Bevel Working Surface and/or Side Working Surface (as measured in a direction perpendicular to the outer surface of the Bevel or Side Working Surfaces, respectively (See Exhibit A)); or

(ii)    a Bevel Working Surface and/or Side Working Surface that has a Leached region that is substantially free of catalyzing material to a depth less than 0.1 mm from the Bevel Working Surface and/or Side Working Surface (as measured in a direction perpendicular to the outer surface of the Bevel or Side Working Surfaces (See Exhibit A)); or

(iii)   a Leached region that is substantially free of catalyzing material to a depth equal to or greater than 0 .1 mm from the Top Working Surface (as measured in a direction perpendicular to the outer surface of the Top Working Surface (See Exhibit A)); or

(iv)    a Bevel Working Surface and/or Side Working Surface that has a Leached region that is substantially free of catalyzing material to a depth greater than or equal to 0.1 mm from the Bevel Working Surface and/or Side Working Surface (as measured in a direction perpendicular to the outer surface of the Bevel or Side Working Surfaces (See Exhibit A))…[3]

***Each License Agreement Obligates Defendants to Pay Royalties Until the Expiration of the Last to Expire Licensed RH Patent***

33.     To ensure that each Defendant was granted the ability to use any and all of the Leaching Technology, and to ensure that Plaintiffs were properly compensated for the grant of the broad licenses described above, each License Agreement specifically provides that (in the absence

---

[3] Section 2.05 of the Schlumberger License is similar but does not include (iii) and (iv) above.

of other termination occurrences) the term of the licenses granted and the obligation to pay royalties remains in full force and effect until the expiration of the last to expire Licensed RH Patents. Specifically:

- Section 7.04 of the Smith License and Section 8 of the Varel License provide that: [Licensee's] obligation to pay royalties to ReedHycalog…shall terminate…[u]pon expiration of all of the Licensed RH Patents… .

- Section 8.02 of the Ulterra License provides that "[t]he licenses and obligations to make royalty payments…shall terminate with respect to [Licensee] upon the expiration date of the last of the Licensed RH Patents."

- Section 7.02 of the Schlumberger Leaching Technology License provides: "This Agreement shall terminate upon the later of the expiration date of the last Licensed RH Patent."

34.     For the Schlumberger License, Ulterra License and Varel License, none of the occurrences terminating their respective obligations to make royalty payments have occurred. Consequently, these License Agreements remain in full force and effect today and including through January 10, 2031.

35.     On March 28, 2022, Smith terminated the Smith License. Prior to then, none of the occurrences terminating Smith's obligation to make royalty payments had occurred. Consequently, the Smith License remained in full force and effect through March 28, 2022.

***Defendants Stopped Paying Royalties After October 22, 2021***

36.     After October 22, 2021, Smith, Ulterra, and Varel stopped paying royalties under their respective License Agreements, although each Defendant continued to receive revenues as a result of their having invoiced products constituting "Licensed Drill Bits" as defined under their respective License Agreements.

37.     Defendants' conduct gives rise to the following causes of action.

## CAUSES OF ACTION

### Count I (Against All Defendants)
### DECLARATORY JUDGMENT – THE '752 PATENTS ARE LICENSED RH PATENTS

38.     Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

39.     Defendants owe royalties under their respective License Agreements until the expiration of the last to expire "Licensed RH Patents."

40.     The phrase "Licensed RH Patents" expressly includes all U.S. patents and patent applications listed in Defendants' respective License Agreements as well as later-issue patents that have an independent or dependent claim relating to the Leaching Technology (provided such later-issue patent was filed before the date of each Defendants' License Agreement).

41.     U.S. Patent No. 7,568,534 ("the '534 Patent) is a continuation of a patent application listed on Exhibit C to each License Agreement. The '534 Patent does not expire until October 10, 2025.

42.     U.S. Patent No. 8,721,752 ("the '752 Patent") contains claims that relate to the Leaching Technology, was filed before the respective dates of Defendants' License Agreements and does not expire until 2031.

43.     For Schlumberger, Ulterra and Varel, none of the occurrences terminating their respective obligation to make royalty payments have occurred. Consequently, Defendants Schlumberger, Varel and Ulterra owe royalties under their respective License Agreements through the expiration of the '752 Patent in 2031. Defendants Schlumberger, Ulterra and Varel disagree that the '752 Patent is a "Licensed RH Patents" and further disagree that they owe royalties under their respective License Agreements beyond October 21, 2021. As a result of that disagreement, the issue of whether the '752 Patent is a "Licensed RH Patent", and the corresponding impact on

11

the time period for which Defendants Schlumberger, Ulterra and Varel owe royalties, represents a justiciable controversy between Plaintiffs and Defendants Schlumberger, Ulterra and Varel.

44.     For Smith, none of the occurrences terminating its obligation to make royalty payments occurred prior to March 28, 2022. Consequently, Defendant Smith owes royalties under its License Agreement between October 21, 2021 and March 28, 2022. Defendant Smith disagrees that the '752 Patent is a "Licensed RH Patents" and further disagrees that it owes royalties beyond October 21, 2021. As a result of that disagreement, the issue of whether the '752 Patent is a "Licensed RH Patent", and the corresponding impact on the time period for which Defendant Smith owes royalties, represents a justiciable controversy between Plaintiffs and Defendants Smith.

45.      Pursuant to Tex. Civ. Prac. & Rem. Code § 37.004, Plaintiffs are entitled to and seek relief in the form of a declaration that the '752 Patent is a Licensed RH Patent.

### Count II (Against Smith, Ulterra, and Varel)
### BREACH OF CONTRACT – FAILURE TO PAY OWED ROYALTIES

46.     Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

47.     Each License Agreement is a valid and enforceable contract.

48.     Plaintiffs performed under each License Agreement.

49.     Defendants Smith, Ulterra, and Varel breached their respective License Agreements by failing to pay royalties on licensed products they invoiced after October 21, 2021.

50.     Plaintiffs suffered damages as a result of each Defendant's failure to pay royalties after October 21, 2021. Plaintiffs seek to recover such damages, including interest thereon, as well as their attorneys' fees incurred as a result of each Defendant's breach.

## Count III (Against Schlumberger)
### BREACH OF CONTRACT – SELLING ROTARY STEERABLE TOOLS WITH LEACHED CUTTERS

51.     Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

52.     The 2002 Purchase Agreement and Schlumberger License are valid and enforceable contracts.

53.     Plaintiffs performed under both the 2002 Purchase Agreement and Schlumberger License.

54.     Defendant Schlumberger breached the 2002 Purchase Agreement and Schlumberger License by manufacturing, selling/renting unlicensed downhole tools with Leached Cutters, such as Schlumberger's Rotary Steerable Tool.

55.     Plaintiffs suffered damages as a result of Defendant Schlumberger' breach of the 2002 Purchase Agreement and Schlumberger License. Plaintiffs seek to recover such damages, including interest thereon, as well as their attorneys' fees incurred as a result of Defendant Schlumberger's breach.

### STATEMENT OF RELIEF

56.     Plaintiffs seek monetary relief from each Defendant of over $1,000,000. The monetary relief sought by Plaintiffs is within the jurisdictional limits of the Court.

57.     Plaintiffs seek the issuance of the declarations requested in Count I.

### FEES AND COSTS

58.     Plaintiffs seek recovery of their reasonable attorney's fees for breach of contract under Chapter 38 of the Texas Civil Practices and Remedies Code.

59.     Plaintiffs also seek and are entitled to recovery of their reasonable attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code Sections 37.009.

## CONDITIONS PRECEDENT

60.     All conditions precedent to Plaintiffs' claims for relief have occurred, have been performed, or have been waived.

## PRAYER

61.     Premises considered, Plaintiffs ask that the Court enter judgment against each Defendant and award it the following relief:

    a.  actual and consequential damages;

    b.  pre-and post-judgment interest as allowed by law;

    c.  reasonable and necessary attorney's fees and costs of court;

    d.  declaratory judgment that U.S. Patent No. 8,721,752 is a Licensed RH Patent; and

    e.  such other and further relief to which Plaintiffs are entitled.

Respectfully Submitted,

**AHMAD, ZAVITSANOS & MENSING P.L.L.C.**     **MCAUGHAN DEAVER, P.L.L.C.**

*/s/ Kevin Leyendecker*
John Zavitsanos                                 Bob McAughan
Texas Bar No. 22251650                          Texas Bar No. 00786096
Kevin Leyendecker                               550 Westcott St., Ste. 375
Texas Bar No. 00784472                          Houston, TX 77007
Shahmeer Halepota                               (713) 829-3851
Texas Bar No. 24109968                          bmcaughan@md-iplaw.com
Michael Killingsworth
Texas Bar No. 24110089
Louis Liao
Texas Bar No. 24109471
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Telephone: 713.655.1101
jzavitsanos@azalaw.com
kleyendecker@azalaw.com
shalepota@zalaw.com
mkillingsworth@azalaw.com
lliao@azalaw.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

    I certify that on February 6, 2023, a copy of the foregoing was served on the following counsel of record via email.

Craig Smeyser
Samantha Jarvis
Smyser Kaplan and Veselka
717 Texas Ave. #2800
Houston, TX 77002

                    /s/ Kevin Leyendecker
                    Kevin Leyendecker

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Myrna Flores on behalf of Patrick Leyendecker
Bar No. 784472
mflores@azalaw.com
Envelope ID: 72491296
Status as of 2/7/2023 8:17 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| John Zavitsanos | | jzavitsanos@azalaw.com | 2/6/2023 5:02:38 PM | SENT |
| Patrick KevinLeyendecker | | kleyendecker@azalaw.com | 2/6/2023 5:02:38 PM | SENT |
| Shahmeer Halepota | | shalepota@azalaw.com | 2/6/2023 5:02:38 PM | SENT |
| Michael Killingsworth | | mkillingsworth@azalaw.com | 2/6/2023 5:02:38 PM | SENT |
| Louis Liao | | lliao@azalaw.com | 2/6/2023 5:02:38 PM | SENT |
| Linda Casas | | lcasas@skv.com | 2/6/2023 5:02:38 PM | SENT |
| Craig Smeyser | | csmyser@skv.com | 2/6/2023 5:02:38 PM | SENT |
| Samantha Jarvis | | sjarvis@skv.com | 2/6/2023 5:02:38 PM | SENT |
| Craig Smeyser | | csmyser@skv.com | 2/6/2023 5:02:38 PM | SENT |
| Samantha Jarvis | | sjarvis@skv.com | 2/6/2023 5:02:38 PM | SENT |

2/6/2023 5:02:38 PM
Marilyn Burgess District Clerk
Harris County
Envelope No: 72491296
By: CHAMBERS, WANDA R
Filed: 2/6/2023 5:02:38 PM

# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:** ___2022-28716___

**CURRENT COURT:** ___11th Judicial District Court___

**Name(s) of Documents to be served:**  Plaintiffs' Second Amended Petition

**FILE DATE:** ___2/6/2023___ Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to**:  ___Rockbit International Subsidiaries, LLC___

Address of Service: _____

City, State & Zip: _____

Agent (if applicable)  CT Corporation System, 1999 Bryan St.,  Suite 900, Dallas, Texas 75201-3136

**TYPE OF SERVICE/PROCESS TO BE ISSUED:** (Check the proper Box)

[X] **Citation**    [ ] **Citation by Posting**    [ ] **Citation by Publication**    [ ] **Citations Rule 106 Service**

[ ] **Citation Scire Facias      Newspaper**_____

[ ] **Temporary Restraining Order**    [ ] **Precept**    [ ] **Notice**

[ ] **Protective Order**

[ ] **Secretary of State Citation ($12.00)**    [ ] **Capias** (not by E-Issuance)    [ ] **Attachment** (not by E-Issuance)

[ ] **Certiorari**    [ ] **Highway Commission/Texas Department of Transportation ($12.00)**

[ ] **Commissioner of Insurance ($12.00)**    [ ] **Hague Convention ($16.00)**    [ ] **Garnishment**

[ ] **Habeas Corpus** (not by E-Issuance)    [ ] **Injunction**    [ ] **Sequestration**

[ ] **Subpoena**

[ ] **Other (Please Describe)** _____

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** *(check one)*:
[ ] **ATTORNEY PICK-UP (phone)** _____     [X] **E-Issuance by District Clerk**
[ ] **MAIL to attorney   at:** _____     **(No Service Copy Fees Charged)**
[ ] **CONSTABLE**     *Note*: The email registered with EfileTexas.gov must be
[ ] **CERTIFIED MAIL by District Clerk**     used to retrieve the E-Issuance Service Documents.
     Visit www.hcdistrictclerk.com for more instructions.

[ ] **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____   Phone: _____

[ ] **OTHER,** *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name:  K. Leyendecker/NOV   Bar # or ID  00784472

Mailing Address:  1221 McKinney Street, Suite 2500, Houston, Texas 77010

Phone Number:  713-655-1101

2/6/2023 5:02:38 PM
Marilyn Burgess District Clerk
Harris County
Envelope No: 72491296
By: CHAMBERS, WANDA R
Filed: 2/6/2023 5:02:38 PM

# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:** 2022-28716          **CURRENT COURT:** 11th Judicial District Court

**Name(s) of Documents to be served:** Plaintiffs' Second Amended Petition

**FILE DATE:** 2/6/2023 _____ Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to**: Ulterra Drilling Technologies, L.P.

Address of Service: _____

City, State & Zip: _____

Agent (if applicable) CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

**TYPE OF SERVICE/PROCESS TO BE ISSUED:** (Check the proper Box)

| | |
|---|---|
| [X] **Citation**     [ ] **Citation by Posting**     [ ] **Citation by Publication**     [ ] **Citations Rule 106 Service** | |

[ ] **Citation Scire Facias**     Newspaper_____

[ ] **Temporary Restraining Order**     [ ] **Precept**     [ ] **Notice**

[ ] **Protective Order**

[ ] **Secretary of State Citation ($12.00)**     [ ] **Capias** (not by E-Issuance)     [ ] **Attachment** (not by E-Issuance)

[ ] **Certiorari**     [ ] **Highway Commission/Texas Department of Transportation ($12.00)**

[ ] **Commissioner of Insurance ($12.00)**     [ ] **Hague Convention ($16.00)**     [ ] **Garnishment**

[ ] **Habeas Corpus** (not by E-Issuance)     [ ] **Injunction**     [ ] **Sequestration**

[ ] **Subpoena**

[ ] **Other (Please Describe)** _____

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** *(check one)*:
[ ] **ATTORNEY PICK-UP (phone)** _____     [X] **E-Issuance by District Clerk**
[ ] **MAIL to attorney   at:** _____     **(No Service Copy Fees Charged)**
[ ] **CONSTABLE**     *Note*: The email registered with EfileTexas.gov must be
[ ] **CERTIFIED MAIL by District Clerk**     used to retrieve the E-Issuance Service Documents.
     Visit www.hcdistrictclerk.com for more instructions.

[ ] **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____     Phone: _____

[ ] **OTHER,** *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name: K. Leyendecker/NOV   Bar # or ID  00784472

Mailing Address: 1221 McKinney Street, Suite 2500, Houston, Texas 77010

Phone Number: 713-655-1101

2/6/2023 5:02:38 PM
Marilyn Burgess District Clerk
Harris County
Envelope No: 72491296
By: CHAMBERS, WANDA R
Filed: 2/6/2023 5:02:38 PM

**Marilyn Burgess**

HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

## Request for Issuance of Service

**CASE NUMBER:** 2022-28716

**CURRENT COURT:** 11th Judicial District Court

**Name(s) of Documents to be served:** Plaintiffs' Second Amended Petition

**FILE DATE:** 2/6/2023 _____ Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:** Varel International Energy Services, Inc.

Address of Service: _____

City, State & Zip: _____

Agent (if applicable) Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808

**TYPE OF SERVICE/PROCESS TO BE ISSUED:** (Check the proper Box)

| | | |
|---|---|---|
| ☒ **Citation** | ☐ **Citation by Posting** | ☐ **Citation by Publication** | ☐ **Citations Rule 106 Service** |

☐ **Citation Scire Facias    Newspaper** _____

☐ **Temporary Restraining Order**       ☐ **Precept**       ☐ **Notice**

☐ **Protective Order**

☐ **Secretary of State Citation ($12.00)**   ☐ **Capias** (not by E-Issuance)   ☐ **Attachment** (not by E-Issuance)

☐ **Certiorari**       ☐ **Highway Commission/Texas Department of Transportation ($12.00)**

☐ **Commissioner of Insurance ($12.00)**   ☐ **Hague Convention ($16.00)**   ☐ **Garnishment**

☐ **Habeas Corpus** (not by E-Issuance)   ☐ **Injunction**   ☐ **Sequestration**

☐ **Subpoena**

☐ **Other (Please Describe)** _____

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** *(check one)*:
☐ **ATTORNEY PICK-UP (phone)** _____   ☒ **E-Issuance by District Clerk**
☐ **MAIL to attorney  at:** _____   **(No Service Copy Fees Charged)**
☐ **CONSTABLE**   *Note:* The email registered with EfileTexas.gov must be
☐ **CERTIFIED MAIL by District Clerk**   used to retrieve the E-Issuance Service Documents.
   Visit www.hcdistrictclerk.com for more instructions.

☐ **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____   Phone: _____

☐ **OTHER,** *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name: K. Leyendecker/NOV   Bar # or ID 00784472

Mailing Address: 1221 McKinney Street, Suite 2500, Houston, Texas 77010

Phone Number: 713-655-1101

2/6/2023 5:02:38 PM
Marilyn Burgess District Clerk
Harris County
Envelope No: 72491296
By: CHAMBERS, WANDA R
Filed: 2/6/2023 5:02:38 PM

# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:** 2022-28716          **CURRENT COURT:** 11th Judicial District Court

**Name(s) of Documents to be served:** Plaintiffs' Second Amended Petition

**FILE DATE:** _____ Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:** Varel International Industries, LP

**Address of Service:** _____

**City, State & Zip:** _____

**Agent (if applicable):** Corporation Service Company d/b/a/ CSC-Lawyers Incorporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

## TYPE OF SERVICE/PROCESS TO BE ISSUED: (Check the proper Box)

- [X] **Citation**
- [ ] **Citation by Posting**
- [ ] **Citation by Publication**
- [ ] **Citations Rule 106 Service**
- [ ] **Citation Scire Facias**   Newspaper_____
- [ ] **Temporary Restraining Order**
- [ ] **Precept**
- [ ] **Notice**
- [ ] **Protective Order**
- [ ] **Secretary of State Citation ($12.00)**
- [ ] **Capias** (not by E-Issuance)
- [ ] **Attachment** (not by E-Issuance)
- [ ] **Certiorari**
- [ ] **Highway Commission/Texas Department of Transportation ($12.00)**
- [ ] **Commissioner of Insurance ($12.00)**
- [ ] **Hague Convention ($16.00)**
- [ ] **Garnishment**
- [ ] **Habeas Corpus** (not by E-Issuance)
- [ ] **Injunction**
- [ ] **Sequestration**
- [ ] **Subpoena**
- [ ] **Other (Please Describe)** _____

**(See additional Forms for Post Judgment Service)**

---

**SERVICE BY** *(check one)*:
- [ ] **ATTORNEY PICK-UP (phone)** _____
- [X] **E-Issuance by District Clerk**
- [ ] **MAIL to attorney at:** _____   **(No Service Copy Fees Charged)**
- [ ] **CONSTABLE**
- [ ] **CERTIFIED MAIL by District Clerk**

*Note*: The email registered with EfileTexas.gov must be used to retrieve the E-Issuance Service Documents. Visit www.hcdistrictclerk.com for more instructions.

- [ ] **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____   Phone: _____

- [ ] **OTHER,** *explain* _____

---

**Issuance of Service Requested By:** Attorney/Party Name: K. Leyendecker/NOV   Bar # or ID 00784472

Mailing Address: 1221 McKinney Street, Suite 2500, Houston, Texas 77010

Phone Number: 713-655-1101

# Exhibit B.5

2/27/2023 9:04 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 73123352
By: Monica Jackson
Filed: 2/27/2023 9:04 AM

CAUSE NO. 2022-28716

| | | |
|---|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG UK, LTD., REEDHYCALOG, LP, NATIONAL OILWELL VARCO, LP, *Plaintiffs/Counter-Defendants,* | § § § § § | IN THE DISTRICT OF |
| v. | § § | HARRIS COUNTY, TEXAS |
| SCHLUMBERGER TECHNOLOGY CORP., SMITH INTERNATIONAL, INC.; ULTERRA DRILLING TECHNOLOGIES, L.P., ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC.; and VAREL INTERNATIONAL ENERGY SERVICES, INC., VAREL INTERNATIONAL INDUSTRIES, L.P., *Defendants.* | § § § § § § § § § § § | 11TH JUDICIAL DISTRICT |

**SCHLUMBERGER TECHNOLOGY CORP.'S AND SMITH INTERNATIONAL, INC.'S PLEA TO THE JURISDICTION, AND ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS SUBJECT THERETO**

Defendants Schlumberger Technology Corp. ("Schlumberger") and Smith International, Inc. ("Smith") (collectively "Defendants") file their (i) Plea to the Jurisdiction, and subject thereto, (ii) Original Answer and Affirmative Defenses ("Answer") to Plaintiffs Grant Prideco, Inc. ("Grant Prideco"), ReedHycalog UK, Ltd., ReedHycalog, LP (both ReedHycalog entities together, "ReedHycalog"), and National Oilwell Varco, LP's ("NOV") (collectively, "Plaintiffs") Second Amended Petition ("Petition"), and (iii) Original Counterclaims, and respectfully show the Court as follows:

**PLEA TO THE JURISDICTION**

Pursuant to Rule 85 of the Texas Rules of Civil Procedure, Defendants make this plea to the jurisdiction. This Court does not have subject matter jurisdiction over this dispute because at least one party has asserted a claim for relief arising under any Act of Congress relating to patents. *See* 28 U.S.C. § 1338(a) ("No State court shall have jurisdiction over any claim for relief arising

under any Act of Congress relating to patents, plant variety protection, or copyrights."); *see also* 28 U.S.C. § 1454(a) (allowing removal of cases in which "any party" asserts such a claim).

## ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS, SUBJECT TO THE PLEA TO THE JURISDICTION

## INTRODUCTION

For nearly two decades Plaintiffs had a monopoly on the right to make, use and sell certain polycrystalline diamond cutters having leached surfaces ("Leached Cutters").  By law that monopoly is now over.  Beginning in 2001, Plaintiffs filed for and obtained 12 United States patents directed to Leached Cutters.  These core patents were a step change in the industry, and Schlumberger and Smith obtained licenses to use them.  For more than a decade, Schlumberger and Smith paid royalties to Plaintiffs per their agreements.  In October 2021, however, the last of these 12 patents expired, and Schlumberger and Smith accordingly stopped paying Plaintiffs.  Now, because these 12 patents have expired, any new entrant to the industry is free to make, use, and sell Leached Cutters *without a license and without owing Plaintiffs a cent*.  Nevertheless, Plaintiffs assert that the Defendants' royalty obligations under their licenses do not expire until 2031, which is *nearly a decade after the expiration of the 12 core patents*.  Specifically, Plaintiffs assert that two other patents exist—which Schlumberger and Smith do not practice—one of which Plaintiffs allege does not expire until January 2031.

Plaintiffs' claims fail for multiple reasons.  First, its interpretation of its licenses with the Defendants is incorrect.  Any royalty obligations ended in October 2021 when the last of the 12 core patents expired.  Second, the suggestion that royalty obligations continue based on patents other than the 12 core patents, which are not used by the Defendants, is unlawful under long-established Supreme Court law.  *Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964).  Any attempt by

Plaintiffs to extend its licenses to collect royalties based on patents that Schlumberger and Smith do not practice is unlawful per se and unenforceable.

## GENERAL DENIAL

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendants generally deny each and every allegation in the Petition and demand strict proof of all matters set forth therein as required by applicable laws.  Defendants reserve the right to amend this pleading and to assert counterclaims or claims against other parties in accordance with the Texas Rules of Civil Procedure.

## SPECIFIC DENIALS

Subject to and without waiver of the foregoing denial, and pursuant to Texas Rule of Civil Procedure 54, Defendants specifically deny that all conditions precedent to Plaintiffs' claims for relief have occurred, have been performed or have been waived.  Defendants do not assume the burden of proof on any such issues except as required by applicable law.  Defendants reserve the right to supplement these specific denials upon discovery of facts or evidence rendering such action appropriate:

1.      With respect to Count III, Schlumberger specifically denies that "Purchaser Parent" was "willing and able to sell to [Schlumberger] and its Affiliates at a commercially reasonable price" as required by Section 5.7 of the 2002 Purchase Agreement.

2.      With respect to Count III, Schlumberger specifically denies that "the quality, delivery time and other terms [were] reasonably satisfactory to [Schlumberger] and its Affiliates" as required by Section 5.7 of the 2002 Purchase Agreement.

## AFFIRMATIVE DEFENSES

Subject to and without waiver of the foregoing denial, and pursuant to Texas Rule of Civil Procedure 94, Defendants assert the following defenses but do not assume the burden of proof on

3

any such defenses except as required by applicable law.  Defendants reserve the right to assert other defenses or otherwise supplement their defenses upon discovery of facts or evidence rendering such action appropriate:

1.      Plaintiffs' claims are barred in whole or in part because every claim of U.S. Patent No. 7,568,534 ("the '534 Patent) is invalid and/or unenforceable for failure to comply with one or more of the requirements of the United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

2.      Plaintiffs' claims are barred in whole or in part because every claim of U.S. Patent No. 8,721,752 ("the '752 Patent") is invalid and/or unenforceable for failure to comply with one or more of the requirements of the United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

3.       Plaintiffs' claims are barred in whole or in part because Defendants have not infringed and do not infringe, under any theory of infringement, including literally or under the doctrine of equivalents, directly (whether individually or jointly), or indirectly (whether contributorily or by inducement), any valid, enforceable claim of the '534 Patent.

4.      Plaintiffs' claims are barred in whole or in part because Defendants have not infringed and do not infringe, under any theory of infringement, including literally or under the doctrine of equivalents, directly (whether individually or jointly), or indirectly (whether contributorily or by inducement), any valid, enforceable claim of the '752 Patent.

5.      Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations.

6.      Plaintiffs' claims are barred in whole or in part by one or more of the doctrines of license, estoppel, acquiescence, waiver, laches, and unclean hands.

4

7.     Plaintiffs' claims are barred in whole or in part by their prior material breaches and/or failure to perform their required obligations.

8.     Plaintiffs' claims are barred in whole or in part because they are based on purported contractual duties that have terminated.

9.     Plaintiffs' claims are barred in whole or in part because they are based on purported contractual duties that are void on public policy grounds.

10.    Plaintiffs' claims are barred in whole or in part because federal law, including laws arising under Acts of Congress relating to patents, preempts them.

11.    On information and belief, the '534 Patent and the '752 Patent, as well as the 12 core patents, are being exploited and used in an improper manner that impermissibly broadens the physical and/or temporal scope of Plaintiffs' patent grant with anticompetitive effect, thereby rendering Plaintiffs' demand for royalties unenforceable and unlawful patent misuse.

12.    Plaintiffs' claims are barred, in whole or part, by failure to mitigate.

WHEREFORE, Schlumberger and Smith request that Plaintiffs' Complaint be dismissed with prejudice and that Defendants be awarded the costs of this action, its attorneys' fees, and all other relief that this Court deems just and proper.

## <u>COUNTERCLAIMS</u>

Defendants Schlumberger and Smith, by way of Counterclaims against Plaintiffs, state as follows:

### PARTIES

1.     Counter-Plaintiff/Defendant Schlumberger Technology Corporation is a Texas corporation with its principal place of business in Fort Bend County, Texas.

2.     Counter-Plaintiff/Defendant Smith International, Inc. is a Delaware Limited Liability Company that is now known as Smith International, LLC, with its principal place of

5

business in Harris County, Texas.   Collectively, Schlumberger and Smith are referred to as "Defendants."

3.      On information and belief, Counter-Defendant/Plaintiff Grant Prideco, Inc. ("Grant Prideco") is a Delaware limited partnership with its principal place of business in Harris County, Texas and has appeared in this lawsuit through its counsel of record.

4.      On information and belief, Counter-Defendant/Plaintiff ReedHycalog UK, Ltd. is a limited partnership formed under the laws of the United Kingdom with its principal place of business in Gloucestershire, England and has appeared in this lawsuit through its counsel of record.

5.      On information and belief, Counter-Defendant/Plaintiff ReedHycalog, LP is a Delaware limited partnership with its principal place of business in Harris County, Texas and has appeared in this lawsuit through its counsel of record.   Collectively, ReedHycalog UK, Ltd. and ReedHycalog LP are referred to as "ReedHycalog."

6.      On information and belief, Counter-Defendant/Plaintiff National Oilwell Varco, LP ("NOV") is a Delaware limited partnership with its principal place of business in Harris County, Texas and has appeared in this lawsuit through its counsel of record.

## FACTS

### I.      Schlumberger Sells ReedHycalog to Grant Prideco in 2002

7.      Prior to and during part of 2002, Schlumberger owned ReedHycalog.   In and around this time, ReedHycalog developed certain polycrystalline diamond leached cutter technology that is used in drilling oil wells ("Leached Cutters" or "Leached Cutter Technology").

8.      One or more of the Plaintiffs applied for, and obtained, 12 core patents directed to this Leached Cutter Technology.   These patents include U.S. Patent Nos. 6,861,098, 6,861,137, and 6,878,447 ("Thermal Characteristic Patents"), U.S. Patent No. 6,601,662 ("Impact Strength

6

Patent"), and U.S. Patent Nos. 6,585,064, 6,589,640, 6,749,033, 6,544,308, 6,562,462, 6,592,985, 6,739,214, and 6,797,326 ("Other Asserted Patents") (collectively, the "12 core patents").

9.      In 2002, Schlumberger sold ReedHycalog to Grant Prideco.  The terms of this sale are set forth in a Purchase Agreement dated October 25, 2002 between Schlumberger and Grant Prideco (the "2002 Purchase Agreement").

10.      As part of the 2002 Purchase Agreement, Schlumberger received a world-wide, perpetual, non-exclusive, irrevocable, non-transferable, royalty-free license to use, make, have made, sell and offer for sale certain ReedHycalog intellectual property for use with applications for downhole tools other than drill bits.

11.      Nothing in the 2002 Purchase Agreement prohibited Defendants from obtaining a subsequent license from Plaintiffs for drill bits or other technology not covered by the royalty-free license in the 2002 Purchase Agreement.

## II.      Plaintiffs Monetize Their Leaching Technology

12.      Starting around 2006, ReedHycalog and Grant Prideco sought to generate revenue in another way—by suing over and licensing their Leached Cutter Technology, specifically the 12 core patents.

13.      From 2006 through 2008, ReedHycalog and Grant Prideco initiated patent infringement suits in the Eastern District of Texas against drill bit and cutter providers such as Baker Hughes, Halliburton, US Synthetic Corporation, Ulterra, and Diamond Innovations. ReedHycalog and Grant Prideco accused these drill bit and cutter providers of, *inter alia*, infringing some or all of its 12 core patents.

14.      In 2008, NOV acquired Grant Prideco and thereby also acquired ReedHycalog.

15.      By 2009, many of the industry leaders settled their litigations with Plaintiffs and obtained a license.  Other industry leaders negotiated licenses without litigation.

16.     Smith, for example, was never sued by any of the Plaintiffs for infringement of the 12 core patents.  Rather, in 2006 Smith signed a non-exclusive license agreement giving it certain rights to the Leached Cutter Technology (the "2006 Smith License").   That license was supplemented and amended in 2009 (the "2009 Smith License").  The 2009 Smith License states that the license grant is "under the Licensed RH Patents."  The 2009 Smith License also requires the Licensed RH Patents to be valid.  If the Licensed RH Patents are not valid, then no royalties are owed to Plaintiffs.

17.     Schlumberger was also not sued by any of the Plaintiffs for infringement of the 12 core patents.  Instead, in 2009, Schlumberger, like Smith, signed a non-exclusive license agreement with certain of the Plaintiffs (the "2009 Schlumberger License").   The 2009 Schlumberger License states that the license grant is "under the Licensed RH Patents."  The 2009 Schlumberger License also requires the Licensed RH Patents to be valid.  If the Licensed RH Patents are not valid, then no royalties are owed to Plaintiffs.

18.     Schlumberger acquired Smith in 2010.  The 2009 Smith License and the 2009 Schlumberger License are collectively referred to as "the License Agreements."

19.     "Licensed Drill Bits" were defined in Schlumberger's License Agreement, in relevant part, as certain PDC Bits containing PCD elements leached to depths of "less than 0.1 mm," and defined in Smith's License Agreement, in relevant part, as certain PDC Bits containing PCD elements leached to depths of "less than 0.1 mm" or "equal to or greater than 0.1 mm."  The depths of leaching licensed in the License Agreements corresponded to the depths of leaching recited in certain claims of the 12 core patents.

20.     The royalties under the License Agreements are tied directly to one or more of the 12 core patents.  For example, each of the License Agreements defines the "Asserted Patents" as

8

the patents that were asserted to judgment in ReedHycalog's and/or Grant Prideco's litigations related to Leached Cutters.  In these litigations, ReedHycalog and/or Grant Prideco asserted some or all of the 12 core patents, but only a subset of the 12 core patents were asserted to judgment.

21.     By way of example, the 2009 Smith License Agreement states that certain royalties shall be suspended "if all of the Asserted Claims of the Impact Strength Patent and the three Thermal Characteristic Patents are found to be invalid or unenforceable, as reflected in a final judgment by a district court."  It further states that any remaining royalties shall be suspended if "all of the Asserted Claims" are "found to be invalid or unenforceable, as reflected in a final judgment by a district court," where the Asserted Claims are limited to those claims asserted to judgment in prior litigations from the 12 core patents only.  In other words, if all such claims are ever found invalid or unenforceable, then no royalties are owed regardless of whether any other patents are valid and enforceable.

22.     The 2009 Smith License Agreement also states that royalties shall "be suspended if an appealable, unambiguous judgment by a United States District Court finds that Leaching" performed to certain depths does not infringe any of the same Asserted Claims.

23.     Schlumberger's License Agreement contains similar provisions that tie royalties to the 12 core patents.  For example, it defines "Asserted Claims" as limited to the claims from the 12 core patents that were asserted to judgment, and states that the obligation to pay royalties is suspended if there is a "final, appealable judgment by a United States district court that all Asserted Claims of the Thermal Characteristic and Impact Strength Patents are invalid or unenforceable." In other words, when some or all of the claims of the 12 core patents are invalid or unenforceable, then no royalties are owed regardless of whether any other patents are valid and enforceable.

24.     Schlumberger's License Agreement also expressly ties the termination of royalties to the expiration of the Thermal Characteristic and Impact Strength Patents.

**III.     The Twelve Core Patents Expire and Defendants Cease Paying Royalties**

25.     Defendants paid royalties to Plaintiffs per their agreements through October 22, 2021.

26.     On October 22, 2021, the last-to-expire of the 12 core patents expired.

27.     Accordingly, Defendants ceased paying royalties as of October 22, 2021.

**IV.     Plaintiffs Seek to Impose Royalty Obligations on Schlumberger and Smith After the Expiration of the Twelve Core Patents**

28.     The License Agreements do not obligate Schlumberger and Smith to pay royalties after the expiration of the 12 core patents.  Thus, Defendants' obligation under the License Agreements to pay royalties to Plaintiffs terminated no later than October 22, 2021.

29.     Plaintiffs, however, assert that "Defendants' royalty obligations do not expire until 2031."

30.     That is because Plaintiffs assert that Defendants' royalty obligations under the License Agreements extend until the expiration of all Licensed RH Patents, and Plaintiffs further assert that the '534 and '752 Patents are Licensed RH Patents that do not expire until October 10, 2025 and January 10, 2031, respectively.

31.     Calculating the expiration of a patent, as Plaintiffs have purportedly done in this lawsuit, is an issue that is unique to patent law.  Indeed, the '752 Patent on its face states it is entitled to an extension or an adjustment under the Patent Act, 35 U.S.C. § 154(b), of 879 days.

32.     Plaintiffs have only identified the '534 and '752 Patents as purported Licensed RH Patents that Plaintiffs assert are unexpired.

10

33.     The '534 and the '752 Patents are not among the 12 core patents.  Neither the '534 nor the '752 Patent are listed in the License Agreements.  The '752 Patent did not even issue until 2014, five years after the License Agreements were entered into.  Neither the '534 Patent nor the '752 Patent were ever asserted in a litigation.

34.     Schlumberger and Smith do not practice any claim of the '534 and '752 Patents.

35.     Despite the fact that Defendants' obligation to pay royalties ended no later than October 22, 2021, and despite the fact that Defendants do not practice any claim of the '534 and '752 Patents, Plaintiffs assert that Defendants should continue to pay royalties solely because the '534 Patent allegedly expires in 2025 and the '752 Patent allegedly expires in 2031.

36.     Plaintiffs seek to impose the same royalty on Defendants' revenue both pre- and post-October 22, 2021.

37.     Plaintiffs seek royalties on technology that has now been committed to the public domain based on unexpired patents that Defendants do not use.

38.     After October 22, 2021, companies that do not have a license with Plaintiffs can sell leached cutters with leaching depths both "less than 0.1 mm" and "equal to or greater than 0.1 mm" without paying a royalty to Plaintiffs.  Yet, Plaintiffs assert that Defendants may not do the same.

39.     Plaintiffs' assertion is not only contrary to the License Agreements, but it is also unlawful.  In *Brulotte v. Thys Company*, the Supreme Court of the United States held that "a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful per se."  379 U.S. 29, 32 (1964).

40.     The rationale behind *Brulotte* is clear:  Plaintiffs' 12 core patents expired in October 2021.  Since then, new market participants have been permitted to make products that would have

11

been previously covered by these 12 core patents and owe no royalties.  It is unlawful per se for Plaintiffs to extend their patent monopoly beyond the expiration of the 12 core patents by pointing to other unexpired patents that Schlumberger and Smith do not practice.  The Supreme Court of the United States admonished Plaintiffs' very practice in *Brulotte*, and more recently, in *Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446 (2015).

41.     Plaintiffs' unlawful actions are apparent in evaluating the alleged Licensed RH Patents identified in their Second Amended Petition.  Indeed, both the '534 Patent and '752 Patent recognize that leaching—the technology giving rise to the License Agreements that is now committed to the public domain—is "well known in the art."

42.     For example, the '534 Patent states that:

It has become ***well known in the art*** to preferentially remove this catalyzing material from a portion of the working surface in order to form a surface with much higher abrasion resistance without substantially reducing its impact strength.

'534 Patent at 2:29–32.  Thus, the '534 Patent recognized that leaching was not the subject of the purported invention of the patent.

43.     The '752 Patent also recognized that leaching PCD cutters was known in the art:

It has become ***well known*** that the cutting properties of these PCD materials are greatly enhanced when a relatively thin layer of the diamond material adjacent to the working surface is treated to remove the catalyzing material that remains there from the manufacturing process. This has been a relatively thin layer, generally from about 0.05 mm to about 0.4 mm thick, and the depth from the working surface tends to be generally uniform. ***This type of PDC cutting element has now become nearly universally used as cutting elements*** in earth boring drill bits and has caused a very significant improvement in drill bit performance.

'752 Patent at 1:31–41.  Thus, the '752 Patent recognized that leaching was not the subject of the purported invention of the patent and in fact was "nearly universally used" as of the priority date of the '752 Patent.

12

44.     The specifications of the '534 and '752 Patents are clear that they do not cover the invention of leaching, which was the subject of the 12 core patents.

45.     Defendants now bring their counterclaims for Declaratory Judgment of Invalidity and Non-Infringement with respect to the '534 and the '752 Patents along with a finding that Defendants do not owe royalties under their License Agreements after October 22, 2021 including because Plaintiffs' attempt to extract royalties thereafter is unlawful per se and unenforceable, as the Supreme Court of the United States recognized in *Brulotte*, and No Breach of Contract.

### COUNT I – Declaratory Judgment of Invalidity of the '534 Patent

46.     Defendants reallege paragraphs 1–45 as if fully set forth herein.

47.     Based on the filing of this action, an actual controversy has arisen and now exists between the parties as to the validity of the claims of the '534 Patent.

48.     The claims of the '534 Patent are invalid for failure to comply with one or more of the requirements of the United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.  For example, the claims are anticipated and/or rendered obvious by, *inter alia*, U.S. Patent Nos. 6,189,634, 6,861,098, 6,544,308, and 7,608,333.  Defendants reserve the right to assert additional prior art and/or other invalidity defenses against the '534 Patent.

49.     Defendants request a declaration by the Court that the claims of the '534 Patent are invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

### COUNT II – Declaratory Judgment of Invalidity of the '752 Patent

50.     Defendants reallege paragraphs 1–45 as if fully set forth herein.

13

51.     Based on the filing of this action, an actual controversy has arisen and now exists between the parties as to the validity of the claims of the '752 Patent.

52.     The claims of the '752 Patent are invalid for failure to comply with one or more of the requirements of the United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.  For example, the claims are anticipated and/or rendered obvious by, *inter alia*, U.S. Patent Nos. 9,097,074, 6,544,308, 6,601,662, 8,066,087, and 7,726,420.   Defendants reserve the right to assert additional prior art and/or other invalidity defenses against the '752 Patent.

53.     Defendants request a declaration by the Court that the claims of the '752 Patent are invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

### COUNT III – Declaratory Judgment of Non-Infringement of the '534 Patent

54.     Defendants reallege paragraphs 1–45 as if fully set forth herein.

55.     Based on the filing of this action, an actual controversy has arisen and now exists between the parties as to whether Defendants infringe the '534 Patent.

56.     Defendants do not infringe Claim 1 of the '534 Patent at least because, *inter alia*, Defendants do not perform the steps of: "exposing untreated superhard material between the end and peripheral working surfaces, by machining away the polycrystalline diamond material" and "preferentially wearing the exposed, untreated polycrystalline diamond material of the cutting element forming a pair of protruding lips with diamond material," as required by Claim 1 of the '534 Patent.

57.     Defendants request a declaration by the Court that Defendants have not infringed and do not infringe any valid and enforceable claim of the '534 Patent under any theory of

14

infringement, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

### COUNT IV – Declaratory Judgment of Non-Infringement of the '752 Patent

58.     Defendants reallege paragraphs 1–45 as if fully set forth herein.

59.     Based on the filing of this action, an actual controversy has arisen and now exists between the parties as to whether Defendants infringe the '752 Patent.

60.     Defendants do not infringe at least Claims 1 and 12 of the '752 Patent because, *inter alia*, Defendants do not make, use, sell, offer to sell, or import polycrystalline diamond cutting elements with at least one "substantially catalyst-free projection extending below the first depth and to a second depth, the at least one projection being a distance from the working surface," as required by at least Claims 1 and 12 of the '752 Patent. Defendants do not infringe any claim that depends, directly or indirectly, from Claims 1 or 12 for at least these reasons.

61.     Defendants request a declaration by the Court that Defendants have not infringed and do not infringe any valid and enforceable claim of the '752 Patent under any theory of infringement, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

### COUNT V – Declaratory Judgment That Defendants Owe No Royalties After October 22, 2021 Under the License Agreements

62.     Defendants reallege paragraphs 1–45, 55–57, and 59–61 as if fully set forth herein.

63.     Based on the filing of this action, an actual controversy has arisen and now exists between the parties as to whether any royalties are owed and enforceable under the License Agreements after October 22, 2021 at least because it is unlawful for Plaintiffs to require the payment of royalties accruing after the patents incorporated into Defendants' products have expired, under at least *Brulotte* and its progeny.

15

64.     The '534 Patent and '752 Patent, as well as the 12 core patents, are being exploited and used in an improper manner that impermissibly broadens the physical and/or temporal scope of Plaintiffs' patent grant with anticompetitive effect, thereby rendering any attempt to enforce the License Agreements based on the expiration dates of the '534 Patent and '752 Patent unlawful per se and unenforceable.

65.     As set forth herein, the '534 Patent and '752 Patent recognized that leaching technology was well known at the time of the purported inventions disclosed in the '534 Patent and '752 Patent.   Accordingly, the '534 Patent and '752 Patent do not claim the leaching technology giving rise to the License Agreements.   Nonetheless, Plaintiffs still seek to extract royalties from Defendants for their use of leaching technology that is now committed to the public domain based on the alleged expiration dates of the '534 Patent and '752 Patent.

66.     The Defendants do not practice any valid and enforceable claim of the '534 Patent and '752 Patent.

67.     Therefore, any attempt by Plaintiffs to enforce purported contractual obligations, including to extract royalties from Defendants, after October 22, 2021, including on the basis of the '534 Patent and '752 Patent, is unlawful per se and unenforceable.

## COUNT VI – Declaratory Judgment that the Asserted Claims are Unenforceable after October 22, 2021 because they are Expired

68.     Defendants reallege paragraphs 1–45 as if fully set forth herein.

69.     The License Agreements define Asserted Claims as "claims [that] are asserted to judgment by ReedHycalog and/or Grant Prideco in a patent infringement lawsuit in a United States District Court," (2009 Smith License), or "claims [that] are asserted to judgment by ReedHycalog in a patent infringement lawsuit in a United States District Court," (2009 Schlumberger License).

16

70.     The only claims that were asserted in a patent infringement lawsuit, and thus the only claims that were asserted to judgment, were claims from some of the 12 core patents.

71.     The 2009 Smith License states that royalties are suspended if some or all of the Asserted Claims are found to be invalid or unenforceable as reflected in a final judgment by a district court.

72.     The 2009 Schlumberger License states that royalties are suspended if some or all of the Asserted Claims are found to be invalid or unenforceable as reflected in a final judgment by a district court.

73.     The 12 core patents have expired and are thus unenforceable for activity occurring after October 22, 2021.

74.     Therefore, Defendants request a declaration by the Court that the 12 core patents, and thus the Asserted Claims, are expired and therefore unenforceable for activity occurring after October 22, 2021.

### COUNT VII – Declaratory Judgment that the Asserted Claims are Not Infringed after October 22, 2021 because they are Expired

75.     Defendants reallege paragraphs 1–45, and 69–70 as if fully set forth herein.

76.     The 2009 Smith License states that "Royalties due by Smith pursuant to Section 4.01(b)(1) of this Agreement shall also be suspended if an appealable, unambiguous judgment by a United States District Court finds that Leaching, performed to a depth adjacent to any working surface, does not infringe all such Asserted Claims, then Smith's obligation to pay royalties for any products that contain PCD elements Leached to a depth equal to or shallower than such court determined depth shall be suspended as of the date of said final, appealable judgment, finding, or holding."

77.     The 2009 Smith License also states that "Royalties due by Smith pursuant to Section 4.01(b)(2) of this Agreement shall also be suspended if an appealable, unambiguous judgment by a United States District Court finds that Leaching, performed to a depth adjacent to any working surface to a depth greater than or equal to 0.1mm does not infringe all such Asserted Claims (wherein the Asserted Patents include at least one of the Licensed RH Patents other than the Thermal Characteristic Patents and the Impact Strength Patent), then Smith's obligation to pay royalties for any products that contain PCD elements Leached to a depth equal to or shallower than such court determined depth shall be suspended as of the date of said final, appealable judgment, finding, or holding."

78.     The 12 core patents have expired and therefore Leaching and PCD elements Leached to any depth do not infringe any of the claims of such patents after October 22, 2021.

79.     Therefore, Defendants request a declaration by the Court that the 12 core patents are expired and therefore the Asserted Claims are not infringed for activity occurring after October 22, 2021.

## COUNT VIII – Declaratory Judgment of No Breach of Contract

80.     Defendants reallege paragraphs 1–45, 55–57, and 59–61 as if fully set forth herein.

81.     Royalties under the License Agreements ended no later than October 22, 2021 when the last-to-expire of the 12 core patents expired.

82.     Yet, Plaintiffs assert that Defendants owe royalties under their respective License Agreements until January 10, 2031 and have allegedly breached by failing to pay.

83.     Defendants did not breach the License Agreements at least because Defendants' obligations to pay royalties terminated no later than October 22, 2021.

84.     Therefore, Defendants request a declaration by the Court that they have not breached the License Agreements.

18

## CONDITIONS PRECEDENT

85.     All conditions precedent to recovery, to the extent they exist, have been performed or have occurred pursuant to Tex. R. Civ. P. 54.

## ATTORNEYS' FEES

86.     Defendants seek an award of their costs and reasonable and necessary attorneys' fees as are equitable and just under Tex. Civ. Prac. & Rem. Code § 37.009 both with respect to Plaintiff/Counter-Defendants' request for a declaratory judgment asserted in their Second Amended Petition and Counter-Plaintiff/Defendants' request for a declaratory judgment asserted in their Original Counterclaim. Defendants also seek an award of their attorneys' fees under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

FOR THESE REASONS, Defendants respectfully request that the Court enter a judgment in its favor that:

87.     Dismisses all claims against Defendants and orders that Plaintiffs take nothing by reason of Plaintiffs' allegations against Defendants;

88.     Orders the declaratory judgments requested in ¶¶ 46–84, *supra*; and

89.     Orders that Defendants recover all costs incurred in defense of Plaintiffs' claims, and that Defendants' judgment against Plaintiffs includes the following:

(a)     Reasonable attorneys' fees to the maximum extent permitted by law;

(b)     Costs of suit; and

(c)     Such other further relief, general and special, at law or in equity, to which Defendants may be justly entitled.

19

Date:  February 27, 2023

Respectfully submitted,

By: */s/ Craig Smyser*
    Craig Smyser
    TBN 18777575
    Samantha J. Jarvis
    TBN 24089238
    Garland D. Murphy IV
    TBN 24058010
    **SMYSER KAPLAN & VESELKA LLP**
    717 Texas Avenue, Suite 2800
    Houston, Texas  77002
    Telephone:  713.221.2300
    Facsimile:  713.221.2320
    csmyser@skv.com
    sjarvis@skv.com
    lmurphy@skv.com

    Nick Brown
    TBN 24092182
    **KIRKLAND & ELLIS LLP**
    609 Main Street
    Houston, Texas 77002
    Telephone: 713.836.3600
    Facsimile:  713.836.3601
    nick.brown@kirkland.com

    James John Lomeo
    TBN 24118993
    **KIRKLAND & ELLIS LLP**
    401 Congress Ave
    Austin, Texas 78701
    Telephone: 512.678.9100
    Facsimile:  512.678.9101
    james.lomeo@kirkland.com

    ***Counsel for Defendants***
    ***Schlumberger Technology Corp. and***
    ***Smith International, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of February 2023, a copy of Defendants' Plea to the Jurisdiction, and Original Answer and Affirmative Defenses, and Original Counterclaims Subject thereto, was served on all counsel of record via this Court's e-filing system.


*/s/ Craig Smyser*
Craig Smyser

21

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Edwynna Adams on behalf of Craig Smyser
Bar No. 18777575
eadams@skv.com
Envelope ID: 73123352
Status as of 2/27/2023 10:01 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| John Zavitsanos | | jzavitsanos@azalaw.com | 2/27/2023 9:04:21 AM | SENT |
| Patrick KevinLeyendecker | | kleyendecker@azalaw.com | 2/27/2023 9:04:21 AM | SENT |
| Shahmeer Halepota | | shalepota@azalaw.com | 2/27/2023 9:04:21 AM | SENT |
| Michael Killingsworth | | mkillingsworth@azalaw.com | 2/27/2023 9:04:21 AM | SENT |
| Louis Liao | | lliao@azalaw.com | 2/27/2023 9:04:21 AM | SENT |
| Kara Blasingame | | kara.blasingame@kirkland.com | 2/27/2023 9:04:21 AM | SENT |
| Linda Casas | | lcasas@skv.com | 2/27/2023 9:04:21 AM | SENT |
| Nick Brown | | nick.brown@kirkland.com | 2/27/2023 9:04:21 AM | SENT |
| Bob McAughan | | bmcaughan@md-iplaw.com | 2/27/2023 9:04:21 AM | SENT |
| Ryan Kane | | ryan.kane@kirkland.com | 2/27/2023 9:04:21 AM | SENT |
| Tera Stone | | tera.stone@kirkland.com | 2/27/2023 9:04:21 AM | SENT |
| Jessica Davis | | jessica.davis@kirkland.com | 2/27/2023 9:04:21 AM | SENT |
| Craig Smyser | | csmyser@skv.com | 2/27/2023 9:04:21 AM | SENT |
| Samantha Jarvis | | sjarvis@skv.com | 2/27/2023 9:04:21 AM | SENT |
| James JohnLomeo | | james.lomeo@kirkland.com | 2/27/2023 9:04:21 AM | SENT |
| Nick Brown | | nick.brown@kirkland.com | 2/27/2023 9:04:21 AM | SENT |
| Garland Murphy | | lmurphy@skv.com | 2/27/2023 9:04:21 AM | SENT |
| Craig Smyser | | csmyser@skv.com | 2/27/2023 9:04:21 AM | SENT |
| Samantha Jarvis | | sjarvis@skv.com | 2/27/2023 9:04:21 AM | SENT |

# Exhibit B.6

2/27/2023 9:46 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 73126033
By: Anais Aguirre
Filed: 2/27/2023 9:46 AM

## CAUSE NO. 2022-28716

| | | |
|---|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG UK, LTD., REEDHYCALOG, LP, NATIONAL OILWELL VARCO, LP, | § § § § § | IN THE DISTRICT OF |
| *Plaintiffs/Counter-Defendants,* | | |
| v. | § § | HARRIS COUNTY, TEXAS |
| SCHLUMBERGER TECHNOLOGY CORP., SMITH INTERNATIONAL, INC.; ULTERRA DRILLING TECHNOLOGIES, L.P., ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC.; and VAREL INTERNATIONAL ENERGY SERVICES, INC., VAREL INTERNATIONAL INDUSTRIES, L.P., | § § § § § § § § § § § | 11TH JUDICIAL DISTRICT |
| *Defendants.* | § | |

**ULTERRA DRILLING TECHNOLOGIES, L.P.'S AND ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC'S PLEA TO THE JURISDICTION, AND ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS SUBJECT THERETO**

Defendants Ulterra Drilling Technologies, L.P. ("Ulterra") and Rockbit International Subsidiaries, LLC ("Rockbit") (collectively "Defendants") file their (i) Plea to the Jurisdiction, and subject thereto, (ii) Original Answer and Affirmative Defenses ("Answer") to Plaintiffs Grant Prideco, Inc. ("Grant Prideco"), ReedHycalog UK, Ltd., ReedHycalog, LP (both ReedHycalog entities together, "ReedHycalog"), and National Oilwell Varco, LP's ("NOV") (collectively, "Plaintiffs") Second Amended Petition ("Petition"), and (iii) Original Counterclaims, and respectfully show the Court as follows:

## PLEA TO THE JURISDICTION

Pursuant to Rule 85 of the Texas Rules of Civil Procedure, Defendants make this plea to the jurisdiction. This Court does not have subject matter jurisdiction over this dispute because at least one party has asserted a claim for relief arising under any Act of Congress relating to patents. *See* 28 U.S.C. § 1338(a) ("No State court shall have jurisdiction over any claim for relief arising

under any Act of Congress relating to patents, plant variety protection, or copyrights."); *see also* 28 U.S.C. § 1454(a) (allowing removal of cases in which "any party" asserts such a claim).

## ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS, SUBJECT TO THE PLEA TO THE JURISDICTION

### INTRODUCTION

For nearly two decades Plaintiffs have had a monopoly on the right to make, use and sell certain polycrystalline diamond cutters having leached surfaces ("Leached Cutters"). By law that monopoly is now over. Beginning in 2001, Plaintiffs filed for and obtained 12 United States patents directed to Leached Cutters. These core patents were a step change in the industry, and Defendants obtained licenses to use them. For more than a decade, Defendants paid royalties to Plaintiffs per their agreement. In October 2021, however, the last of these 12 patents expired, and Defendants accordingly stopped paying Plaintiffs. Now, because these 12 patents have expired, any new entrant to the industry is free to make, use, and sell Leached Cutters *without a license and without owing Plaintiffs a cent*. Nevertheless, Plaintiffs assert that Defendants' royalty obligations under their licenses do not expire until 2031, which is *nearly a decade after the expiration of the 12 core patents*. Specifically, Plaintiffs assert that two other patents exist— which Defendants do not practice—one of which Plaintiffs allege does not expire until January 2031.

Plaintiffs' claims fail for multiple reasons. First, its interpretation of its license with Defendants is incorrect. Any royalty obligations ended in October 2021 when the last of the 12 core patents expired. Second, the suggestion that royalty obligations continue based on patents other than the 12 core patents, which are not used by the Defendants, is unlawful under long-established Supreme Court law. *Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964). Any attempt by

Plaintiffs to extend its license to collect royalties based on patents that Defendants do not practice is unlawful per se and unenforceable.

## GENERAL DENIAL

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendants generally deny each and every allegation in the Petition and demand strict proof of all matters set forth therein as required by applicable laws.  Defendants reserve the right to amend this pleading and to assert counterclaims or claims against other parties in accordance with the Texas Rules of Civil Procedure.

## AFFIRMATIVE DEFENSES

Subject to and without waiver of the foregoing denial, and pursuant to Texas Rule of Civil Procedure 94, Defendants assert the following defenses but do not assume the burden of proof on any such defenses except as required by applicable law.  Defendants reserve the right to assert other defenses or otherwise supplement their defenses upon discovery of facts or evidence rendering such action appropriate:

1.     Plaintiffs' claims are barred in whole or in part because Defendants have not infringed and do not infringe, under any theory of infringement, including literally or under the doctrine of equivalents, directly (whether individually or jointly), or indirectly (whether contributorily or by inducement), any claim of U.S. Patent No. 7,568,534 ("the '534 Patent")

2.     Plaintiffs' claims are barred in whole or in part because Defendants have not infringed and do not infringe, under any theory of infringement, including literally or under the doctrine of equivalents, directly (whether individually or jointly), or indirectly (whether contributorily or by inducement), any claim of U.S. Patent No. 8,721,752 ("the '752 Patent").

3.     Plaintiffs' claims are barred in whole or in part by their prior material breaches and/or failure to perform their required obligations.

3

4.      Plaintiffs' claims are barred in whole or in part because they are based on purported contractual duties that have terminated.

5.      Plaintiffs' claims are barred in whole or in part because they are based on purported contractual duties that are void on public policy grounds.

6.      Plaintiffs' claims are barred in whole or in part because federal law, including laws arising under Acts of Congress relating to patents, preempts them.

7.      On information and belief, the '534 Patent and the '752 Patent, as well as the 12 core patents, are being exploited and used in an improper manner that impermissibly broadens the physical and/or temporal scope of Plaintiffs' patent grant with anticompetitive effect, thereby rendering Plaintiffs' demand for royalties unenforceable and unlawful patent misuse.

8.      Plaintiffs' claims are barred, in whole or part, by failure to mitigate.

WHEREFORE, Defendants request that Plaintiffs' Petition be dismissed with prejudice and that Defendants be awarded the costs of this action, its attorneys' fees, and all other relief that this Court deems just and proper.

## COUNTERCLAIMS

Defendants, by way of Counterclaims against Plaintiffs, state as follows:

## PARTIES

1.      Counter-Plaintiff/Defendant Ulterra Drilling Technologies, L.P. is a Texas limited partnership with its principal place of business in Tarrant County, Texas.

2.      Counter-Plaintiff/Defendant Rockbit International Subsidiaries, LLC is a Texas Limited Liability Company that is now known as Ulterra International Subsidiaries, LLC, with its principal place of business in Tarrant County, Texas.  Collectively, Ulterra and Rockbit are referred to as "Defendants."

4

3.      On information and belief, Counter-Defendant/Plaintiff Grant Prideco, Inc. ("Grant Prideco") is a Delaware limited partnership with its principal place of business in Harris County, Texas and has appeared in this lawsuit through its counsel of record.

4.      On information and belief, Counter-Defendant/Plaintiff ReedHycalog UK, Ltd. is a limited partnership formed under the laws of the United Kingdom with its principal place of business in Gloucestershire, England and has appeared in this lawsuit through its counsel of record.

5.      On information and belief, Counter-Defendant/Plaintiff ReedHycalog, LP is a Delaware limited partnership with its principal place of business in Harris County, Texas and has appeared in this lawsuit through its counsel of record.  Collectively, ReedHycalog UK, Ltd. and ReedHycalog LP are referred to as "ReedHycalog."

6.      On information and belief, Counter-Defendant/Plaintiff National Oilwell Varco, LP ("NOV") is a Delaware limited partnership with its principal place of business in Harris County, Texas and has appeared in this lawsuit through its counsel of record.

**FACTS**

**I.      Plaintiffs Monetize Their Leaching Technology**

7.      In and around 2002, ReedHycalog developed certain polycrystalline diamond leached cutter technology that is used in drilling oil wells ("Leached Cutters" or "Leached Cutter Technology").

8.      One or more of the Plaintiffs applied for, and obtained, 12 core patents directed to this Leached Cutter Technology.  These patents include U.S. Patent Nos. 6,861,098, 6,861,137, and 6,878,447 ("Thermal Characteristic Patents"), U.S. Patent No. 6,601,662 ("Impact Strength

Patent"), and U.S. Patent Nos. 6,585,064, 6,589,640, 6,749,033, 6,544,308, 6,562,462, 6,592,985, 6,739,214, and 6,797,326 ("Depth Patents") [1] (collectively, the "12 core patents").

9.     In 2002, Grant Prideco acquired ReedHycalog.

10.     Starting around 2006, ReedHycalog and Grant Prideco sought to generate revenue in addition to selling drill bits—by suing over and licensing their Leached Cutter Technology, specifically the 12 core patents.

11.     From 2006 through 2008, ReedHycalog and Grant Prideco initiated patent infringement suits in the Eastern District of Texas against drill bit and cutter providers.  Ulterra was one such provider—along with others such as Baker Hughes, Halliburton, US Synthetic Corporation, and Diamond Innovations.  ReedHycalog and Grant Prideco accused Ulterra and these drill bit and cutter providers of, *inter alia*, infringing some or all of the 12 core patents.

12.     Specifically, with respect to Ulterra, ReedHycalog and Grant Prideco accused Ulterra of infringing the Thermal Characteristic Patents, the Impact Strength Patent, and the Depth Patents in a lawsuit in the Eastern District of Texas, which was filed on June 4, 2007.

13.     Over the next two years, Ulterra, ReedHycalog and Grant Prideco litigated the case through *Markman*, fact discovery, expert discovery, and dispositive motions briefing.

14.     In 2008, NOV acquired Grant Prideco and thereby also acquired ReedHycalog.

15.     By 2009, many of the industry leaders settled their litigations with Plaintiffs and obtained a license.

16.     Ulterra was no different.  The litigation involving Ulterra never reached trial as all claims and counterclaims in that lawsuit were dismissed with prejudice on September 22, 2009.

---

[1]     The "Depth Patents" as defined in the agreement between Plaintiffs and Defendants omits U.S Patent No. 6,562,462 but lists U.S. Patent No. 6,544,308 twice.

17.     Defendants and Plaintiffs executed an agreement titled the ReedHycalog – Ulterra Patent Cross-License Agreement (the "License Agreement") with an effective date of September 1, 2009.  The License Agreement states that the license grant is "under the Licensed RH Patents."

18.     "Licensed Ulterra Drill Bits" were defined in the License Agreement, in relevant part, as any and all PDC Bits containing at least one PCD element leached to depths of "less than 0.1 mm" or "equal to or greater than 0.1 mm."  The depths of leaching licensed in the License Agreement corresponded to the depths of leaching recited in certain claims of the 12 core patents.

19.     The royalties under the License Agreement are tied directly to one or more of the 12 core patents.  For example, the License Agreement defines the "Asserted Patents" as the patents that were asserted to judgment in ***any*** of ReedHycalog's litigations related to Leached Cutters— not just the litigation between ReedHycalog and Ulterra.  In these litigations, ReedHycalog asserted some or all of the 12 core patents, but only a subset of the 12 core patents were asserted to judgment.

20.     The License Agreement also states that royalties shall "be suspended if an appealable, unambiguous judgment by a United States District Court finds that Leaching" performed to certain depths or "any partially leached PCD element" does not infringe any of the Asserted Claims.  In the License Agreement, like the definition of "Asserted Patents," the definition of "Asserted Claims" is similarly limited to the claims from the 12 core patents that were asserted to judgment.

## II.     The Twelve Core Patents Expire and Defendants Cease Paying Royalties

21.     Defendants paid royalties to Plaintiffs per their agreement through October 22, 2021.

22.     On October 22, 2021, the last-to-expire of the 12 core patents expired.

23.     Accordingly, Defendants ceased paying royalties as of October 22, 2021.

III.     **Plaintiffs Seek to Impose Royalty Obligations on Defendants After the Expiration of the Twelve Core Patents**

24.     The License Agreement does not obligate Defendants to pay royalties after the expiration of the 12 core patents.  Thus, Defendants' obligation under the License Agreement to pay royalties to Plaintiffs terminated no later than October 22, 2021.

25.     Plaintiffs, however, assert that "Defendants' royalty obligations do not expire until 2031."

26.     That is because Plaintiffs assert that Defendants' royalty obligations under the License Agreement extend until the expiration of all Licensed RH Patents, and Plaintiffs further assert that the '534 and '752 Patents are Licensed RH Patents that do not expire until October 10, 2025 and January 10, 2031, respectively.

27.     Calculating the expiration of a patent, as Plaintiffs have purportedly done in this lawsuit, is an issue that is unique to patent law.  Indeed, the '752 Patent on its face states it is entitled to an extension or an adjustment under the Patent Act, 35 U.S.C. § 154(b), of 879 days.

28.     Plaintiffs have only identified the '534 and '752 Patents as purported Licensed RH Patents that Plaintiffs assert are unexpired.

29.     The '534 and the '752 Patents are not among the 12 core patents.  Neither the '534 nor the '752 Patent are listed in the License Agreement.  The '752 Patent did not even issue until 2014, nearly five years after the License Agreement was entered into.  Neither the '534 Patent nor the '752 Patent were ever asserted in a litigation.

30.     Defendants do not practice any claim of the '534 and '752 Patents.

31.     Despite the fact that Defendants' obligation to pay royalties ended no later than October 22, 2021, and despite the fact that Defendants do not practice any claim of the '534 and

8

'752 Patents, Plaintiffs assert that Defendants should continue to pay royalties solely because the '534 Patent allegedly expires in 2025 and the '752 Patent allegedly expires in 2031.

32.     Plaintiffs seek to impose the same royalty on Defendants' revenue both pre- and post-October 22, 2021.

33.     Plaintiffs seek royalties on technology that has now been committed to the public domain based on unexpired patents that Defendants do not use.

34.     After October 22, 2021, companies that do not have a license with Plaintiffs can sell leached cutters with leaching depths both "less than 0.1 mm" and "equal to or greater than 0.1 mm" without paying a royalty to Plaintiffs.  Yet, Plaintiffs assert that Defendants may not do the same.

35.     Plaintiffs' assertion is not only contrary to the License Agreement, but it is also unlawful.  In *Brulotte v. Thys Company*, the Supreme Court of the United States held that "a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful per se."  379 U.S. 29, 32 (1964).

36.     The rationale behind *Brulotte* is clear:  Plaintiffs' 12 core patents expired in October 2021.  Since then, new market participants have been permitted to make products that would have been previously covered by these 12 core patents and owe no royalties.  It is unlawful per se for Plaintiffs to extend their patent monopoly beyond the expiration of the 12 core patents by pointing to other unexpired patents that Defendants do not practice.  The Supreme Court of the United States admonished Plaintiffs' very practice in *Brulotte*, and more recently, *Brulotte* was reaffirmed in *Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446 (2015).

37.     Plaintiffs' unlawful actions are apparent in evaluating the alleged Licensed RH Patents identified in their Second Amended Petition.  Indeed, both the '534 Patent and '752 Patent

recognize that leaching—the technology giving rise to the License Agreement that is now committed to the public domain—is "well known in the art."

38.     For example, the '534 Patent states that:

It has become **well known in the art** to preferentially remove this catalyzing material from a portion of the working surface in order to form a surface with much higher abrasion resistance without substantially reducing its impact strength.

'534 Patent at 2:29–32.  Thus, the '534 Patent recognized that leaching was not the subject of the purported invention of the patent.

39.     The '752 Patent also recognized that leaching PCD cutters was known in the art:

It has become **well known** that the cutting properties of these PCD materials are greatly enhanced when a relatively thin layer of the diamond material adjacent to the working surface is treated to remove the catalyzing material that remains there from the manufacturing process. This has been a relatively thin layer, generally from about 0.05 mm to about 0.4 mm thick, and the depth from the working surface tends to be generally uniform. **This type of PDC cutting element has now become nearly universally used as cutting elements** in earth boring drill bits and has caused a very significant improvement in drill bit performance.

'752 Patent at 1:31–41.  Thus, the '752 Patent recognized that leaching was not the subject of the purported invention of the patent and in fact was "nearly universally used" as of the priority date of the '752 Patent.

40.     The specifications of the '534 and '752 Patents are clear that they do not cover the invention of leaching, which was the subject of the 12 core patents.

41.     Defendants now bring their counterclaims for Declaratory Judgment of Non-Infringement with respect to the '534 and the '752 Patents, a finding that Defendants do not owe royalties under the License Agreement after October 22, 2021 including because Plaintiffs' attempt to extract royalties thereafter is unlawful per se and unenforceable, as the Supreme Court of the United States recognized in *Brulotte*, and No Breach of Contract.

### COUNT I – Declaratory Judgment of Non-Infringement of the '534 Patent

42.     Defendants reallege paragraphs 1–41 as if fully set forth herein.

43.     Based on the filing of this action, an actual controversy has arisen and now exists between the parties as to whether Defendants infringe the '534 Patent.

44.     Defendants do not infringe Claim 1 of the '534 Patent at least because, *inter alia*, Defendants do not perform the steps of: "exposing untreated superhard material between the end and peripheral working surfaces, by machining away the polycrystalline diamond material" and "preferentially wearing the exposed, untreated polycrystalline diamond material of the cutting element forming a pair of protruding lips with diamond material," as required by Claim 1 of the '534 Patent.

45.     Defendants request a declaration by the Court that Defendants have not infringed and do not infringe any claim of the '534 Patent under any theory of infringement, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

### COUNT II – Declaratory Judgment of Non-Infringement of the '752 Patent

46.     Defendants reallege paragraphs 1–41 as if fully set forth herein.

47.     Based on the filing of this action, an actual controversy has arisen and now exists between the parties as to whether Defendants infringe the '752 Patent.

48.     Defendants do not infringe Claims 1 and 12 of the '752 Patent at least because, *inter alia*, Defendants do not make, use, sell, offer to sell, or import polycrystalline diamond cutting elements with at least one "substantially catalyst-free projection extending below the first depth and to a second depth, the at least one projection being a distance from the working surface," as required by at least Claims 1 and 12 of the '752 Patent.  Defendants do not infringe any claim that depends, directly or indirectly, from Claims 1 or 12 for at least these reasons.

49.     Defendants request a declaration by the Court that Defendants have not infringed and do not infringe any claim of the '752 Patent under any theory of infringement, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

## COUNT III – Declaratory Judgment That Defendants Owe No Royalties After October 22, 2021 Under the License Agreement

50.     Defendants reallege paragraphs 1–41, 43–45, and 47–49 as if fully set forth herein.

51.     Based on the filing of this action, an actual controversy has arisen and now exists between the parties as to whether any royalties are owed and enforceable under the License Agreement after October 22, 2021 at least because it is unlawful for Plaintiffs to require the payment of royalties accruing after the patents incorporated into Defendants' products have expired, under at least *Brulotte* and its progeny.

52.     The '534 Patent and '752 Patent, as well as the 12 core patents, are being exploited and used in an improper manner that impermissibly broadens the physical and/or temporal scope of Plaintiffs' patent grant with anticompetitive effect, thereby rendering any attempt to enforce the License Agreement based on the expiration dates of the '534 Patent and '752 Patent unlawful per se and unenforceable.

53.     As set forth herein, the '534 Patent and '752 Patent recognized that leaching technology was well known at the time of the purported inventions disclosed in the '534 Patent and '752 Patent.  Accordingly, the '534 Patent and '752 Patent do not claim the leaching technology giving rise to the License Agreement.  Nonetheless, Plaintiffs still seek to extract royalties from Defendants for their use of leaching technology that is now committed to the public domain based on the alleged expiration dates of the '534 Patent and '752 Patent.

54.     The Defendants do not practice any claim of the '534 Patent and '752 Patent.

12

55.     Therefore, any attempt by Plaintiffs to enforce purported contractual obligations, including to extract royalties from Defendants, after October 22, 2021, including on the basis of the '534 Patent and '752 Patent, is unlawful per se and unenforceable.

**COUNT IV – Declaratory Judgment that the Asserted Claims are Not Infringed after October 22, 2021 because they are Expired**

56.     Defendants reallege paragraphs 1–41 as if fully set forth herein.

57.     The License Agreement defines Asserted Claims as "claims [that] are asserted to judgment by any party in a patent infringement lawsuit in a United States District Court involving ReedHycalog."

58.     The only claims that were asserted in a patent infringement lawsuit, and thus the only claims that were asserted to judgment, were claims from some of the 12 core patents.

59.     The License Agreement states that "Royalties due by Ulterra pursuant to Section 6.01(b)(1) of this Agreement may also be suspended if an appealable, unambiguous judgment by a United States District Court finds that Leaching, performed to a depth adjacent to any working surface, does not infringe all such Asserted Claims."  The License Agreement also states that "royalties due by Ulterra pursuant to Section 6.01(b)(1) of this Agreement may also be suspended if an appealable, unambiguous judgment by a United States District Court finds that any partially leached PCD element does not infringe all such Asserted Claims."

60.     The License Agreement states that "Royalties due by Ulterra pursuant to Section 6.01(b)(2) of this Agreement may also be suspended if an appealable, unambiguous judgment by a United States District Court finds that Leaching, performed to a depth adjacent to any working surface to a depth greater than or equal to 0.1mm does not infringe all such Asserted Claims (wherein the Asserted Patents include at least one of the Licensed RH Patents other than the Thermal Characteristic Patents and the Impact Strength Patent)."  The License Agreement also

state that "royalties due by Ulterra pursuant to Section 6.01(b)(2) of this Agreement may also be suspended if an appealable, unambiguous judgment by a United States District Court finds that any partially leached PCD element does not infringe all such Asserted Claims (wherein the Asserted Patents include at least one of the Licensed RH Patents other than the Thermal Characteristic Patents and the Impact Strength Patent)."

61.     The 12 core patents have expired and therefore Leaching and partially leached PCD elements do not infringe any of the claims of such patents after October 22, 2021.

62.     Therefore, Defendants request a declaration by the Court that the 12 core patents are expired and therefore the Asserted Claims are not infringed for activity occurring after October 22, 2021.

### COUNT V – Declaratory Judgment of No Breach of Contract

63.     Defendants reallege paragraphs 1–41, 43–45, and 47–49 as if fully set forth herein.

64.     Royalties under the License Agreement ended no later than October 22, 2021 when the last-to-expire of the 12 core patents expired.

65.     Yet, Plaintiffs assert that Defendants owe royalties under the License Agreement until January 10, 2031 and have allegedly breached by failing to pay.

66.     Defendants did not breach the License Agreement at least because Defendants' obligations to pay royalties terminated no later than October 22, 2021.

67.     Therefore, Defendants request a declaration by the Court that they have not breached the License Agreement.

### CONDITIONS PRECEDENT

68.     All conditions precedent to recovery, to the extent they exist, have been performed or have occurred pursuant to Tex. R. Civ. P. 54.

14

## ATTORNEYS' FEES

69.     Defendants seek an award of their costs and reasonable and necessary attorneys'

fees as are equitable and just under Tex. Civ. Prac. & Rem. Code § 37.009 both with respect to

Plaintiff/Counter-Defendants' request for a declaratory judgment asserted in their Second

Amended Petition and Counter-Plaintiff/Defendants' request for a declaratory judgment asserted

in their Original Counterclaim. Defendants also seek an award of their attorneys' fees under 35

U.S.C. § 285.

## PRAYER FOR RELIEF

FOR THESE REASONS, Defendants respectfully request that the Court enter a judgment

in its favor that:

70.     Dismisses all claims against Defendants and orders that Plaintiffs take nothing by

reason of Plaintiffs' allegations against Defendants;

71.     Orders the declaratory judgments requested in ¶¶ 42–67, *supra*; and

72.     Orders that Defendants recover all costs incurred in defense of Plaintiffs' claims,

and that Defendants' judgment against Plaintiffs includes the following:

(a)     Reasonable attorneys' fees to the maximum extent permitted by law;

(b)     Costs of suit; and

(c)     Such other further relief, general and special, at law or in equity, to which
        Defendants may be justly entitled.

Date:  February 27, 2023                    Respectfully submitted,


                                            By: */s/ David J. Beck*
                                                 David J. Beck
                                                 TBN 00000070
                                                 **BECK REDDEN LLP**
                                                 1221 McKinney Street
                                                 Suite 4500
                                                 Houston, Texas 77010
                                                 Telephone:  713.951.3700
                                                 Facsimile:  713.951.3720
                                                 dbeck@beckredden.com

                                                 Nick Brown
                                                 TBN 24092182
                                                 **KIRKLAND & ELLIS LLP**
                                                 609 Main Street
                                                 Houston, Texas 77002
                                                 Telephone: 713.836.3600
                                                 Facsimile:  713.836.3601
                                                 nick.brown@kirkland.com

                                                 James John Lomeo
                                                 TBN 24118993
                                                 **KIRKLAND & ELLIS LLP**
                                                 401 Congress Ave
                                                 Austin, Texas 78701
                                                 Telephone: 512.678.9100
                                                 Facsimile:  512.678.9101
                                                 james.lomeo@kirkland.com


                                                 ***Counsel for Defendants Ulterra Drilling
                                                 Technologies, L.P. and Rockbit International
                                                 Subsidiaries, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of February 2023, a copy of Defendants' Plea to the Jurisdiction, and Original Answer and Affirmative Defenses, and Original Counterclaims Subject thereto, was served on all counsel of record via this Court's e-filling system.

*/s/ David J. Beck*
David J. Beck

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Verm on behalf of David Beck
Bar No. 70
lverm@beckredden.com
Envelope ID: 73126033
Status as of 2/27/2023 10:05 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| John Zavitsanos | | jzavitsanos@azalaw.com | 2/27/2023 9:46:45 AM | SENT |
| Patrick KevinLeyendecker | | kleyendecker@azalaw.com | 2/27/2023 9:46:45 AM | SENT |
| Shahmeer Halepota | | shalepota@azalaw.com | 2/27/2023 9:46:45 AM | SENT |
| Michael Killingsworth | | mkillingsworth@azalaw.com | 2/27/2023 9:46:45 AM | SENT |
| Louis Liao | | lliao@azalaw.com | 2/27/2023 9:46:45 AM | SENT |
| Kara Blasingame | | kara.blasingame@kirkland.com | 2/27/2023 9:46:45 AM | SENT |
| Linda Casas | | lcasas@skv.com | 2/27/2023 9:46:45 AM | SENT |
| Nick Brown | | nick.brown@kirkland.com | 2/27/2023 9:46:45 AM | SENT |
| Bob McAughan | | bmcaughan@md-iplaw.com | 2/27/2023 9:46:45 AM | SENT |
| Ryan Kane | | ryan.kane@kirkland.com | 2/27/2023 9:46:45 AM | SENT |
| Tera Stone | | tera.stone@kirkland.com | 2/27/2023 9:46:45 AM | SENT |
| Jessica Davis | | jessica.davis@kirkland.com | 2/27/2023 9:46:45 AM | SENT |
| Edwynna Adams | | eadams@skv.com | 2/27/2023 9:46:45 AM | SENT |
| Garland Murphy | | lmurphy@skv.com | 2/27/2023 9:46:45 AM | SENT |
| Craig Smeyser | | csmyser@skv.com | 2/27/2023 9:46:45 AM | SENT |
| Samantha Jarvis | | sjarvis@skv.com | 2/27/2023 9:46:45 AM | SENT |
| Nick Brown | | nick.brown@kirkland.com | 2/27/2023 9:46:45 AM | SENT |
| James JohnLomeo | | james.lomeo@kirkland.com | 2/27/2023 9:46:45 AM | SENT |
| Craig Smeyser | | csmyser@skv.com | 2/27/2023 9:46:45 AM | SENT |
| Samantha Jarvis | | sjarvis@skv.com | 2/27/2023 9:46:45 AM | SENT |
| David J.Beck | | dbeck@beckredden.com | 2/27/2023 9:46:45 AM | SENT |

Exhibit B.7

2/27/2023 9:53 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 73126490
By: Monica Jackson
Filed: 2/27/2023 9:53 AM

## CAUSE NO. 2022-28716

| | | |
|---|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG UK, LTD., REEDHYCALOG, LP, NATIONAL OILWELL VARCO, LP, *Plaintiffs/Counter-Defendants,* | § § § § § | IN THE DISTRICT OF |
| v. | § § | HARRIS COUNTY, TEXAS |
| SCHLUMBERGER TECHNOLOGY CORP., SMITH INTERNATIONAL, INC.; ULTERRA DRILLING TECHNOLOGIES, L.P., ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC.; and VAREL INTERNATIONAL ENERGY SERVICES, INC., VAREL INTERNATIONAL INDUSTRIES, L.P., *Defendants.* | § § § § § § § § § § § | 11TH JUDICIAL DISTRICT |

**ULTERRA DRILLING TECHNOLOGIES, L.P.'S AND ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC'S PLEA TO THE JURISDICTION, AND ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS SUBJECT THERETO**

Defendants Ulterra Drilling Technologies, L.P. ("Ulterra") and Rockbit International Subsidiaries, LLC ("Rockbit") (collectively "Defendants") file their (i) Plea to the Jurisdiction, and subject thereto, (ii) Original Answer and Affirmative Defenses ("Answer") to Plaintiffs Grant Prideco, Inc. ("Grant Prideco"), ReedHycalog UK, Ltd., ReedHycalog, LP (both ReedHycalog entities together, "ReedHycalog"), and National Oilwell Varco, LP's ("NOV") (collectively, "Plaintiffs") Second Amended Petition ("Petition"), and (iii) Original Counterclaims, and respectfully show the Court as follows:

## PLEA TO THE JURISDICTION

Pursuant to Rule 85 of the Texas Rules of Civil Procedure, Defendants make this plea to the jurisdiction. This Court does not have subject matter jurisdiction over this dispute because at least one party has asserted a claim for relief arising under any Act of Congress relating to patents. *See* 28 U.S.C. § 1338(a) ("No State court shall have jurisdiction over any claim for relief arising

under any Act of Congress relating to patents, plant variety protection, or copyrights."); *see also* 28 U.S.C. § 1454(a) (allowing removal of cases in which "any party" asserts such a claim).

## <u>ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS,<br>SUBJECT TO THE PLEA TO THE JURISDICTION</u>

### <u>INTRODUCTION</u>

For nearly two decades Plaintiffs have had a monopoly on the right to make, use and sell certain polycrystalline diamond cutters having leached surfaces ("Leached Cutters"). By law that monopoly is now over. Beginning in 2001, Plaintiffs filed for and obtained 12 United States patents directed to Leached Cutters. These core patents were a step change in the industry, and Defendants obtained licenses to use them. For more than a decade, Defendants paid royalties to Plaintiffs per their agreement. In October 2021, however, the last of these 12 patents expired, and Defendants accordingly stopped paying Plaintiffs. Now, because these 12 patents have expired, any new entrant to the industry is free to make, use, and sell Leached Cutters ***without a license and without owing Plaintiffs a cent***. Nevertheless, Plaintiffs assert that Defendants' royalty obligations under their licenses do not expire until 2031, which is ***nearly a decade after the expiration of the 12 core patents***. Specifically, Plaintiffs assert that two other patents exist— which Defendants do not practice—one of which Plaintiffs allege does not expire until January 2031.

Plaintiffs' claims fail for multiple reasons. First, its interpretation of its license with Defendants is incorrect. Any royalty obligations ended in October 2021 when the last of the 12 core patents expired. Second, the suggestion that royalty obligations continue based on patents other than the 12 core patents, which are not used by the Defendants, is unlawful under long-established Supreme Court law. *Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964). Any attempt by

Plaintiffs to extend its license to collect royalties based on patents that Defendants do not practice is unlawful per se and unenforceable.

## **GENERAL DENIAL**

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendants generally deny each and every allegation in the Petition and demand strict proof of all matters set forth therein as required by applicable laws.  Defendants reserve the right to amend this pleading and to assert counterclaims or claims against other parties in accordance with the Texas Rules of Civil Procedure.

## **AFFIRMATIVE DEFENSES**

Subject to and without waiver of the foregoing denial, and pursuant to Texas Rule of Civil Procedure 94, Defendants assert the following defenses but do not assume the burden of proof on any such defenses except as required by applicable law.  Defendants reserve the right to assert other defenses or otherwise supplement their defenses upon discovery of facts or evidence rendering such action appropriate:

1.      Plaintiffs' claims are barred in whole or in part because Defendants have not infringed and do not infringe, under any theory of infringement, including literally or under the doctrine of equivalents, directly (whether individually or jointly), or indirectly (whether contributorily or by inducement), any claim of U.S. Patent No. 7,568,534 ("the '534 Patent")

2.      Plaintiffs' claims are barred in whole or in part because Defendants have not infringed and do not infringe, under any theory of infringement, including literally or under the doctrine of equivalents, directly (whether individually or jointly), or indirectly (whether contributorily or by inducement), any claim of U.S. Patent No. 8,721,752 ("the '752 Patent").

3.      Plaintiffs' claims are barred in whole or in part by their prior material breaches and/or failure to perform their required obligations.

3

4.      Plaintiffs' claims are barred in whole or in part because they are based on purported contractual duties that have terminated.

5.      Plaintiffs' claims are barred in whole or in part because they are based on purported contractual duties that are void on public policy grounds.

6.      Plaintiffs' claims are barred in whole or in part because federal law, including laws arising under Acts of Congress relating to patents, preempts them.

7.      On information and belief, the '534 Patent and the '752 Patent, as well as the 12 core patents, are being exploited and used in an improper manner that impermissibly broadens the physical and/or temporal scope of Plaintiffs' patent grant with anticompetitive effect, thereby rendering Plaintiffs' demand for royalties unenforceable and unlawful patent misuse.

8.      Plaintiffs' claims are barred, in whole or part, by failure to mitigate.

WHEREFORE, Defendants request that Plaintiffs' Petition be dismissed with prejudice and that Defendants be awarded the costs of this action, its attorneys' fees, and all other relief that this Court deems just and proper.

## COUNTERCLAIMS

Defendants, by way of Counterclaims against Plaintiffs, state as follows:

### PARTIES

1.      Counter-Plaintiff/Defendant Ulterra Drilling Technologies, L.P. is a Texas limited partnership with its principal place of business in Tarrant County, Texas.

2.      Counter-Plaintiff/Defendant Rockbit International Subsidiaries, LLC is a Texas Limited Liability Company that is now known as Ulterra International Subsidiaries, LLC, with its principal place of business in Tarrant County, Texas.  Collectively, Ulterra and Rockbit are referred to as "Defendants."

4

3.      On information and belief, Counter-Defendant/Plaintiff Grant Prideco, Inc. ("Grant Prideco") is a Delaware limited partnership with its principal place of business in Harris County, Texas and has appeared in this lawsuit through its counsel of record.

4.      On information and belief, Counter-Defendant/Plaintiff ReedHycalog UK, Ltd. is a limited partnership formed under the laws of the United Kingdom with its principal place of business in Gloucestershire, England and has appeared in this lawsuit through its counsel of record.

5.      On information and belief, Counter-Defendant/Plaintiff ReedHycalog, LP is a Delaware limited partnership with its principal place of business in Harris County, Texas and has appeared in this lawsuit through its counsel of record.  Collectively, ReedHycalog UK, Ltd. and ReedHycalog LP are referred to as "ReedHycalog."

6.      On information and belief, Counter-Defendant/Plaintiff National Oilwell Varco, LP ("NOV") is a Delaware limited partnership with its principal place of business in Harris County, Texas and has appeared in this lawsuit through its counsel of record.

## FACTS

### I.      Plaintiffs Monetize Their Leaching Technology

7.      In and around 2002, ReedHycalog developed certain polycrystalline diamond leached cutter technology that is used in drilling oil wells ("Leached Cutters" or "Leached Cutter Technology").

8.      One or more of the Plaintiffs applied for, and obtained, 12 core patents directed to this Leached Cutter Technology.  These patents include U.S. Patent Nos. 6,861,098, 6,861,137, and 6,878,447 ("Thermal Characteristic Patents"), U.S. Patent No. 6,601,662 ("Impact Strength

Patent"), and U.S. Patent Nos. 6,585,064, 6,589,640, 6,749,033, 6,544,308, 6,562,462, 6,592,985, 6,739,214, and 6,797,326 ("Depth Patents") [1] (collectively, the "12 core patents").

9.    In 2002, Grant Prideco acquired ReedHycalog.

10.    Starting around 2006, ReedHycalog and Grant Prideco sought to generate revenue in addition to selling drill bits—by suing over and licensing their Leached Cutter Technology, specifically the 12 core patents.

11.    From 2006 through 2008, ReedHycalog and Grant Prideco initiated patent infringement suits in the Eastern District of Texas against drill bit and cutter providers.  Ulterra was one such provider—along with others such as Baker Hughes, Halliburton, US Synthetic Corporation, and Diamond Innovations.  ReedHycalog and Grant Prideco accused Ulterra and these drill bit and cutter providers of, *inter alia*, infringing some or all of the 12 core patents.

12.    Specifically, with respect to Ulterra, ReedHycalog and Grant Prideco accused Ulterra of infringing the Thermal Characteristic Patents, the Impact Strength Patent, and the Depth Patents in a lawsuit in the Eastern District of Texas, which was filed on June 4, 2007.

13.    Over the next two years, Ulterra, ReedHycalog and Grant Prideco litigated the case through *Markman*, fact discovery, expert discovery, and dispositive motions briefing.

14.    In 2008, NOV acquired Grant Prideco and thereby also acquired ReedHycalog.

15.    By 2009, many of the industry leaders settled their litigations with Plaintiffs and obtained a license.

16.    Ulterra was no different.  The litigation involving Ulterra never reached trial as all claims and counterclaims in that lawsuit were dismissed with prejudice on September 22, 2009.

---

[1]    The "Depth Patents" as defined in the agreement between Plaintiffs and Defendants omits U.S Patent No. 6,562,462 but lists U.S. Patent No. 6,544,308 twice.

17.     Defendants and Plaintiffs executed an agreement titled the ReedHycalog – Ulterra Patent Cross-License Agreement (the "License Agreement") with an effective date of September 1, 2009.  The License Agreement states that the license grant is "under the Licensed RH Patents."

18.     "Licensed Ulterra Drill Bits" were defined in the License Agreement, in relevant part, as any and all PDC Bits containing at least one PCD element leached to depths of "less than 0.1 mm" or "equal to or greater than 0.1 mm."  The depths of leaching licensed in the License Agreement corresponded to the depths of leaching recited in certain claims of the 12 core patents.

19.     The royalties under the License Agreement are tied directly to one or more of the 12 core patents.  For example, the License Agreement defines the "Asserted Patents" as the patents that were asserted to judgment in ***any*** of ReedHycalog's litigations related to Leached Cutters— not just the litigation between ReedHycalog and Ulterra.  In these litigations, ReedHycalog asserted some or all of the 12 core patents, but only a subset of the 12 core patents were asserted to judgment.

20.     The License Agreement also states that royalties shall "be suspended if an appealable, unambiguous judgment by a United States District Court finds that Leaching" performed to certain depths or "any partially leached PCD element" does not infringe any of the Asserted Claims.  In the License Agreement, like the definition of "Asserted Patents," the definition of "Asserted Claims" is similarly limited to the claims from the 12 core patents that were asserted to judgment.

## II.     The Twelve Core Patents Expire and Defendants Cease Paying Royalties

21.     Defendants paid royalties to Plaintiffs per their agreement through October 22, 2021.

22.     On October 22, 2021, the last-to-expire of the 12 core patents expired.

23.     Accordingly, Defendants ceased paying royalties as of October 22, 2021.

7

III.    **Plaintiffs Seek to Impose Royalty Obligations on Defendants After the Expiration of the Twelve Core Patents**

24.    The License Agreement does not obligate Defendants to pay royalties after the expiration of the 12 core patents.  Thus, Defendants' obligation under the License Agreement to pay royalties to Plaintiffs terminated no later than October 22, 2021.

25.    Plaintiffs, however, assert that "Defendants' royalty obligations do not expire until 2031."

26.    That is because Plaintiffs assert that Defendants' royalty obligations under the License Agreement extend until the expiration of all Licensed RH Patents, and Plaintiffs further assert that the '534 and '752 Patents are Licensed RH Patents that do not expire until October 10, 2025 and January 10, 2031, respectively.

27.    Calculating the expiration of a patent, as Plaintiffs have purportedly done in this lawsuit, is an issue that is unique to patent law.  Indeed, the '752 Patent on its face states it is entitled to an extension or an adjustment under the Patent Act, 35 U.S.C. § 154(b), of 879 days.

28.    Plaintiffs have only identified the '534 and '752 Patents as purported Licensed RH Patents that Plaintiffs assert are unexpired.

29.    The '534 and the '752 Patents are not among the 12 core patents.  Neither the '534 nor the '752 Patent are listed in the License Agreement.  The '752 Patent did not even issue until 2014, nearly five years after the License Agreement was entered into.  Neither the '534 Patent nor the '752 Patent were ever asserted in a litigation.

30.    Defendants do not practice any claim of the '534 and '752 Patents.

31.    Despite the fact that Defendants' obligation to pay royalties ended no later than October 22, 2021, and despite the fact that Defendants do not practice any claim of the '534 and

'752 Patents, Plaintiffs assert that Defendants should continue to pay royalties solely because the '534 Patent allegedly expires in 2025 and the '752 Patent allegedly expires in 2031.

32.     Plaintiffs seek to impose the same royalty on Defendants' revenue both pre- and post-October 22, 2021.

33.     Plaintiffs seek royalties on technology that has now been committed to the public domain based on unexpired patents that Defendants do not use.

34.     After October 22, 2021, companies that do not have a license with Plaintiffs can sell leached cutters with leaching depths both "less than 0.1 mm" and "equal to or greater than 0.1 mm" without paying a royalty to Plaintiffs.  Yet, Plaintiffs assert that Defendants may not do the same.

35.     Plaintiffs' assertion is not only contrary to the License Agreement, but it is also unlawful.  In *Brulotte v. Thys Company*, the Supreme Court of the United States held that "a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful per se."  379 U.S. 29, 32 (1964).

36.     The rationale behind *Brulotte* is clear:  Plaintiffs' 12 core patents expired in October 2021.  Since then, new market participants have been permitted to make products that would have been previously covered by these 12 core patents and owe no royalties.  It is unlawful per se for Plaintiffs to extend their patent monopoly beyond the expiration of the 12 core patents by pointing to other unexpired patents that Defendants do not practice.  The Supreme Court of the United States admonished Plaintiffs' very practice in *Brulotte*, and more recently, *Brulotte* was reaffirmed in *Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446 (2015).

37.     Plaintiffs' unlawful actions are apparent in evaluating the alleged Licensed RH Patents identified in their Second Amended Petition.  Indeed, both the '534 Patent and '752 Patent

recognize that leaching—the technology giving rise to the License Agreement that is now committed to the public domain—is "well known in the art."

38.     For example, the '534 Patent states that:

It has become **well known in the art** to preferentially remove this catalyzing material from a portion of the working surface in order to form a surface with much higher abrasion resistance without substantially reducing its impact strength.

'534 Patent at 2:29–32.  Thus, the '534 Patent recognized that leaching was not the subject of the purported invention of the patent.

39.     The '752 Patent also recognized that leaching PCD cutters was known in the art:

It has become **well known** that the cutting properties of these PCD materials are greatly enhanced when a relatively thin layer of the diamond material adjacent to the working surface is treated to remove the catalyzing material that remains there from the manufacturing process. This has been a relatively thin layer, generally from about 0.05 mm to about 0.4 mm thick, and the depth from the working surface tends to be generally uniform. **This type of PDC cutting element has now become nearly universally used as cutting elements** in earth boring drill bits and has caused a very significant improvement in drill bit performance.

'752 Patent at 1:31–41.  Thus, the '752 Patent recognized that leaching was not the subject of the purported invention of the patent and in fact was "nearly universally used" as of the priority date of the '752 Patent.

40.     The specifications of the '534 and '752 Patents are clear that they do not cover the invention of leaching, which was the subject of the 12 core patents.

41.     Defendants now bring their counterclaims for Declaratory Judgment of Non-Infringement with respect to the '534 and the '752 Patents, a finding that Defendants do not owe royalties under the License Agreement after October 22, 2021 including because Plaintiffs' attempt to extract royalties thereafter is unlawful per se and unenforceable, as the Supreme Court of the United States recognized in *Brulotte*, and No Breach of Contract.

## COUNT I – Declaratory Judgment of Non-Infringement of the '534 Patent

42.    Defendants reallege paragraphs 1–41 as if fully set forth herein.

43.    Based on the filing of this action, an actual controversy has arisen and now exists between the parties as to whether Defendants infringe the '534 Patent.

44.    Defendants do not infringe Claim 1 of the '534 Patent at least because, *inter alia*, Defendants do not perform the steps of: "exposing untreated superhard material between the end and peripheral working surfaces, by machining away the polycrystalline diamond material" and "preferentially wearing the exposed, untreated polycrystalline diamond material of the cutting element forming a pair of protruding lips with diamond material," as required by Claim 1 of the '534 Patent.

45.    Defendants request a declaration by the Court that Defendants have not infringed and do not infringe any claim of the '534 Patent under any theory of infringement, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

## COUNT II – Declaratory Judgment of Non-Infringement of the '752 Patent

46.    Defendants reallege paragraphs 1–41 as if fully set forth herein.

47.    Based on the filing of this action, an actual controversy has arisen and now exists between the parties as to whether Defendants infringe the '752 Patent.

48.    Defendants do not infringe Claims 1 and 12 of the '752 Patent at least because, *inter alia*, Defendants do not make, use, sell, offer to sell, or import polycrystalline diamond cutting elements with at least one "substantially catalyst-free projection extending below the first depth and to a second depth, the at least one projection being a distance from the working surface," as required by at least Claims 1 and 12 of the '752 Patent.  Defendants do not infringe any claim that depends, directly or indirectly, from Claims 1 or 12 for at least these reasons.

49.     Defendants request a declaration by the Court that Defendants have not infringed and do not infringe any claim of the '752 Patent under any theory of infringement, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

### COUNT III – Declaratory Judgment That Defendants Owe No Royalties After October 22, 2021 Under the License Agreement

50.     Defendants reallege paragraphs 1–41, 43–45, and 47–49 as if fully set forth herein.

51.     Based on the filing of this action, an actual controversy has arisen and now exists between the parties as to whether any royalties are owed and enforceable under the License Agreement after October 22, 2021 at least because it is unlawful for Plaintiffs to require the payment of royalties accruing after the patents incorporated into Defendants' products have expired, under at least *Brulotte* and its progeny.

52.     The '534 Patent and '752 Patent, as well as the 12 core patents, are being exploited and used in an improper manner that impermissibly broadens the physical and/or temporal scope of Plaintiffs' patent grant with anticompetitive effect, thereby rendering any attempt to enforce the License Agreement based on the expiration dates of the '534 Patent and '752 Patent unlawful per se and unenforceable.

53.     As set forth herein, the '534 Patent and '752 Patent recognized that leaching technology was well known at the time of the purported inventions disclosed in the '534 Patent and '752 Patent.  Accordingly, the '534 Patent and '752 Patent do not claim the leaching technology giving rise to the License Agreement.  Nonetheless, Plaintiffs still seek to extract royalties from Defendants for their use of leaching technology that is now committed to the public domain based on the alleged expiration dates of the '534 Patent and '752 Patent.

54.     The Defendants do not practice any claim of the '534 Patent and '752 Patent.

12

55.     Therefore, any attempt by Plaintiffs to enforce purported contractual obligations, including to extract royalties from Defendants, after October 22, 2021, including on the basis of the '534 Patent and '752 Patent, is unlawful per se and unenforceable.

### COUNT IV – Declaratory Judgment that the Asserted Claims are Not Infringed after October 22, 2021 because they are Expired

56.     Defendants reallege paragraphs 1–41 as if fully set forth herein.

57.     The License Agreement defines Asserted Claims as "claims [that] are asserted to judgment by any party in a patent infringement lawsuit in a United States District Court involving ReedHycalog."

58.     The only claims that were asserted in a patent infringement lawsuit, and thus the only claims that were asserted to judgment, were claims from some of the 12 core patents.

59.     The License Agreement states that "Royalties due by Ulterra pursuant to Section 6.01(b)(1) of this Agreement may also be suspended if an appealable, unambiguous judgment by a United States District Court finds that Leaching, performed to a depth adjacent to any working surface, does not infringe all such Asserted Claims."  The License Agreement also states that "royalties due by Ulterra pursuant to Section 6.01(b)(1) of this Agreement may also be suspended if an appealable, unambiguous judgment by a United States District Court finds that any partially leached PCD element does not infringe all such Asserted Claims."

60.     The License Agreement states that "Royalties due by Ulterra pursuant to Section 6.01(b)(2) of this Agreement may also be suspended if an appealable, unambiguous judgment by a United States District Court finds that Leaching, performed to a depth adjacent to any working surface to a depth greater than or equal to 0.1mm does not infringe all such Asserted Claims (wherein the Asserted Patents include at least one of the Licensed RH Patents other than the Thermal Characteristic Patents and the Impact Strength Patent)."  The License Agreement also

state that "royalties due by Ulterra pursuant to Section 6.01(b)(2) of this Agreement may also be suspended if an appealable, unambiguous judgment by a United States District Court finds that any partially leached PCD element does not infringe all such Asserted Claims (wherein the Asserted Patents include at least one of the Licensed RH Patents other than the Thermal Characteristic Patents and the Impact Strength Patent)."

61.     The 12 core patents have expired and therefore Leaching and partially leached PCD elements do not infringe any of the claims of such patents after October 22, 2021.

62.     Therefore, Defendants request a declaration by the Court that the 12 core patents are expired and therefore the Asserted Claims are not infringed for activity occurring after October 22, 2021.

### COUNT V – Declaratory Judgment of No Breach of Contract

63.     Defendants reallege paragraphs 1–41, 43–45, and 47–49 as if fully set forth herein.

64.     Royalties under the License Agreement ended no later than October 22, 2021 when the last-to-expire of the 12 core patents expired.

65.     Yet, Plaintiffs assert that Defendants owe royalties under the License Agreement until January 10, 2031 and have allegedly breached by failing to pay.

66.     Defendants did not breach the License Agreement at least because Defendants' obligations to pay royalties terminated no later than October 22, 2021.

67.     Therefore, Defendants request a declaration by the Court that they have not breached the License Agreement.

### CONDITIONS PRECEDENT

68.     All conditions precedent to recovery, to the extent they exist, have been performed or have occurred pursuant to Tex. R. Civ. P. 54.

14

**ATTORNEYS' FEES**

69.     Defendants seek an award of their costs and reasonable and necessary attorneys' fees as are equitable and just under Tex. Civ. Prac. & Rem. Code § 37.009 both with respect to Plaintiff/Counter-Defendants' request for a declaratory judgment asserted in their Second Amended Petition and Counter-Plaintiff/Defendants' request for a declaratory judgment asserted in their Original Counterclaim. Defendants also seek an award of their attorneys' fees under 35 U.S.C. § 285.

**<u>PRAYER FOR RELIEF</u>**

FOR THESE REASONS, Defendants respectfully request that the Court enter a judgment in its favor that:

70.     Dismisses all claims against Defendants and orders that Plaintiffs take nothing by reason of Plaintiffs' allegations against Defendants;

71.     Orders the declaratory judgments requested in ¶¶ 42–67, *supra*; and

72.     Orders that Defendants recover all costs incurred in defense of Plaintiffs' claims, and that Defendants' judgment against Plaintiffs includes the following:

(a)     Reasonable attorneys' fees to the maximum extent permitted by law;

(b)     Costs of suit; and

(c)     Such other further relief, general and special, at law or in equity, to which Defendants may be justly entitled.

Date:  February 27, 2023

Respectfully submitted,

By: */s/ David J. Beck*
    David J. Beck
    TBN 00000070
    **BECK REDDEN LLP**
    1221 McKinney Street
    Suite 4500
    Houston, Texas 77010
    Telephone:  713.951.3700
    Facsimile:  713.951.3720
    dbeck@beckredden.com

    Nick Brown
    TBN 24092182
    **KIRKLAND & ELLIS LLP**
    609 Main Street
    Houston, Texas 77002
    Telephone: 713.836.3600
    Facsimile:  713.836.3601
    nick.brown@kirkland.com

    James John Lomeo
    TBN 24118993
    **KIRKLAND & ELLIS LLP**
    401 Congress Ave
    Austin, Texas 78701
    Telephone: 512.678.9100
    Facsimile:  512.678.9101
    james.lomeo@kirkland.com

    ***Counsel for Defendants Ulterra Drilling Technologies, L.P. and Rockbit International Subsidiaries, LLC***

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of February 2023, a copy of Defendants' Plea to the Jurisdiction, and Original Answer and Affirmative Defenses, and Original Counterclaims Subject thereto, was served on all counsel of record via this Court's e-filling system.

/s/ David J. Beck
David J. Beck

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Lisa Verm on behalf of David Beck
Bar No. 70
lverm@beckredden.com
Envelope ID: 73126490
Status as of 2/27/2023 10:35 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| John Zavitsanos | | jzavitsanos@azalaw.com | 2/27/2023 9:53:05 AM | SENT |
| David J.Beck | | dbeck@beckredden.com | 2/27/2023 9:53:05 AM | SENT |
| Patrick KevinLeyendecker | | kleyendecker@azalaw.com | 2/27/2023 9:53:05 AM | SENT |
| Shahmeer Halepota | | shalepota@azalaw.com | 2/27/2023 9:53:05 AM | SENT |
| Michael Killingsworth | | mkillingsworth@azalaw.com | 2/27/2023 9:53:05 AM | SENT |
| Kara Blasingame | | kara.blasingame@kirkland.com | 2/27/2023 9:53:05 AM | SENT |
| Linda Casas | | lcasas@skv.com | 2/27/2023 9:53:05 AM | SENT |
| Nick Brown | | nick.brown@kirkland.com | 2/27/2023 9:53:05 AM | SENT |
| Bob McAughan | | bmcaughan@md-iplaw.com | 2/27/2023 9:53:05 AM | SENT |
| Ryan Kane | | ryan.kane@kirkland.com | 2/27/2023 9:53:05 AM | SENT |
| Tera Stone | | tera.stone@kirkland.com | 2/27/2023 9:53:05 AM | SENT |
| Jessica Davis | | jessica.davis@kirkland.com | 2/27/2023 9:53:05 AM | SENT |
| Edwynna Adams | | eadams@skv.com | 2/27/2023 9:53:05 AM | SENT |
| Louis Liao | | lliao@azalaw.com | 2/27/2023 9:53:05 AM | SENT |
| Craig Smeyser | | csmyser@skv.com | 2/27/2023 9:53:05 AM | SENT |
| Samantha Jarvis | | sjarvis@skv.com | 2/27/2023 9:53:05 AM | SENT |
| Garland Murphy | | lmurphy@skv.com | 2/27/2023 9:53:05 AM | SENT |
| Nick Brown | | nick.brown@kirkland.com | 2/27/2023 9:53:05 AM | SENT |
| James JohnLomeo | | james.lomeo@kirkland.com | 2/27/2023 9:53:05 AM | SENT |
| Craig Smeyser | | csmyser@skv.com | 2/27/2023 9:53:05 AM | SENT |
| Samantha Jarvis | | sjarvis@skv.com | 2/27/2023 9:53:05 AM | SENT |

# Exhibit B.8

2/27/2023 11:39 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 73135184
By: Anais Aguirre
Filed: 2/27/2023 11:39 AM

## CAUSE NO.: 2022-28716

| | | |
|---|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG UK, LTD., REEDHYCALOG, L.P., NATIONAL OILWELL VARCO, LP. <br>     PLAINTIFFS <br><br> VS. <br><br> SCHLUMBERGER TECHNOLOGY CORP., SMITH INTERNATIONAL, INC.; ULTERRA DRILLING TECHNOLOGIES, L.P., ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC; AND VAREL INTERNATIONAL ENERGY SERVICES, INC., VAREL INTERNATIONAL INDUSTRIES, L.P. <br>     DEFENDANTS | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | IN THE 11TH <br><br><br><br><br> JUDICIAL DISTRICT COURT <br><br><br><br><br><br><br> OF HARRIS COUNTY, TEXAS |

## DEFENDANTS' PLEA TO THE JURISICTION, SPECIAL EXCEPTIONS, ORIGINAL ANSWER, AFFIRMATIVE DEFENSES/PLEAS IN AVOIDANCE, APPLICATIONS FOR DECLARATORY JUDGMENT and COUNTERCLAIMS

TO THE HONORABLE JUDGE OF SAID COURT:

    COME NOW, Varel International Energy Services, Inc. and Varel International Industries, L.P., Defendants and Counterclaimants (collectively, "Varel") in the above entitled and numbered Cause, and file this their Plea to the Jurisdiction, Special Exceptions, Original Answer, Affirmative Defenses/Pleas in Avoidance, Applications for Declaratory Judgment and Counterclaims; and in Support hereof, would respectfully show unto the Court as follows:

### I.    Plea to the Jurisdiction

    1.  Pursuant to Rule 85 of the Texas Rules of Civil Procedure, Varel makes a plea to the jurisdiction.  This Court does not have subject matter jurisdiction over this dispute because at least one party has asserted a claim for relief arising under any Act of Congress relating to patents. *See* 28 U.S.C. § 1338(a) ("No State court shall have jurisdiction over any claim for relief

arising under any Act of Congress relating to patents, plant variety protection, or copyrights."); *see also* 28 U.S.C. § 1454(a) (allowing removal of cases in which "any party" asserts such a claim).

2.   Plaintiffs filed a Declaratory Judgement Action seeking a determination regarding whether a patent is a Licensed RH Patent and the life of said patent, under 35 U.S.C. § 154, which is unquestionably a question of federal patent law under 28 U.S.C. §§ 1331 ("The [federal] district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.") and 1338(a) ("No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents…").

3.   Further, at least one Defendant asserts an affirmative defense of patent misuse as to render the remaining patents-at-issue unenforceable and/or invalid, another question of federal patent law. *Id.*

4.   Plaintiffs seek a Declaratory Judgement as to the enforceability of expired patents.

5.   Plaintiffs seek to extract royalties on expired patents in violation of *Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964).

6.   Plaintiffs seek to extend their monopoly on the use of the patented technology beyond the statutorily provided term, which is a restraint of trade which constitutes a violation of the antitrust doctrine as set forth in the Sherman Act.

7.   Varel objects to the jurisdiction of this Court, as these questions are subject to exclusive federal jurisdiction.

## II.   <u>Special Exceptions</u>

8.   Under Texas Rules of Civil Procedure 45 and 47, a plaintiff's petition must consist of a statement in plain and concise language setting forth the plaintiff's cause(s) of action in a manner

sufficient to give a defendant "fair notice" of the claim involved. Tex. R. Civ. P. 45, 47; *see Horizon v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000); *Castleberry v. Goolsby Bldg. Corp.*, 617 S.W.2d 665, 666 (Tex. 1981). The purpose of this rule is to give the opposing party sufficient information to enable him to prepare a defense. *Id.*; *Roark v. Allen*, 633 S.W.2d 674, 676-77 (Tex. App.-Houston [14th Dist.] 1987), *rev'd on other grounds*, 776 S.W.2d 567 (Tex. 1989).

9.   Special exceptions are proper when a plaintiff makes vague allegations or fails to plead all of the elements of a cause of action. *See Crabtree v. Ray Richey & Co., Inc.*, 682 S.W.2d 727, 728 (Tex. App.-Fort Worth 1985, no writ). In addition, special exceptions are proper when a plaintiff pleads conclusions. *See Cox v. Galena Park Indep. School Dist.*, 895 S.W.2d 745, 749 (Tex. App.-Corpus Christi 1994, no writ).

10. When a court sustains a defendant's special exceptions, it must order the plaintiff to amend its petition. *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658-59 (Tex. 1998); *Ford v. Performance Aircraft Servs., Inc.*, 178 S.W.3d 330, 336-37 (Tex. App.-Fort Worth 2005, pet. denied). If the plaintiff fails to amend its petition, the trial court should strike the objectionable allegations. *Id.*; *Cruz v. Morris*, 877 S.W.2d 45, 47 (Tex. App.-Houston [14th Dist.] 1994, no writ). The plaintiff may then proceed to trial based on the remainder of its petition, and if no viable cause of action exists, the trial court should dismiss the lawsuit. *Id.*; *Mowbray v. Avery*, 76 S.W.3d 663, 678 (Tex. App.-Corpus Christi 2002, pet. denied).

11. Varel specially excepts to Plaintiff's Second Amended Petition as more specifically set forth below.

12. Count I references multiple patents, namely U.S. Patent No. 7,568,534 (the "'534 Patent") and U.S. Patent No. 8,721,752 (the "'752 Patent"). *See* Second Am. Pet., pp. 11-12, ¶¶ 38-45.

13. Count I of Plaintiff's Second Amended Petition is entitled "Count I (Against All Defendants) Declaratory Judgment – The '752 Patents are License RH Patents". Second Am. Pet., p. 11.

14. However, ¶ 45 only seeks relief for "a declaration that the '752 Patent is Licensed RH Patent" and is otherwise silent as to any relief concerning the '534 Patent. *Id*.

15. Further, Plaintiffs' Prayer, p. 14, seeks relief for "declaratory judgment that U.S. Patent No. 8,721,752 is a Licensed RH Patent", but is silent as to the '534 Patent.

16. Varel specially excepts to Plaintiffs' pleading and seeks clarification as to whether Plaintiffs seek any form of relief concerning the '534 Patent.

## III.   <u>General Denial</u>

17. Subject to the above Plea, and pursuant to Texas Rule of Civil Procedure 92, Defendants, Varel International Energy Services, Inc. and Varel International Industries, L.P., deny each and every, singular and all, the allegations contained in Plaintiffs' Second Amended Petition, saying that the Allegations therein are not true, either in whole or in part, and demanding strict proof thereof.

## IV.   <u>Background</u>

18. This suit involves an industry juggernaut exerting unlawful control, restraint of trade, and monopolistic power over its "licensed" competitors.

19. On June 4, 2007, Plaintiffs, ReedHyaclog Uk, Ltd., ReedHyaclog, LP, and Grant Prideco, Inc., filed suit against Varel and co-defendant Ulterra Drilling Technologies, L.P., among others, alleging infringement of a dozen U.S. Patents. *See ReedHycalog UK, Ltd. et al. v. United Diamond, et al.*, Civil Action No. 6:07-CV-251, in the United States District Court for the Eastern District of Texas.

20. These patents include U.S. Pat. No. 6,585,064; 6,592,985; 6,749,033; 6,589,640; 6,739,214; 6,544,308; 6,797,326; U.S. Pat. No. 6,562,462; 6,878,447; 6,861,098; 6,861,137; and 6,601,662 (herein, the "Core Patents"). Each of these patents is explicitly identified in Exhibit C of the Varel License Agreement.

21. Indeed, Varel sought a license to the Core Patents to 1) practice said patents and 2) settle the 2007 Infringement Litigation between itself and Plaintiffs. However, Plaintiffs would not settle or license the Core Patents alone and forced Varel to include language to create an open-ended and indefinite definition of "Licensed RH Patents". Whereby then non-existing and undesired patents would also be licensed *and extend the term of royalty obligations*. The only limitation to which these "Extra Patents" would be included are those *may* be granted in the future stemming from any open application, anywhere in the world, at the time of the Effective Date of the Varel License Agreement, March 1, 2009.

22. Defendants did not have the opportunity to evaluate, much less know, the scope of the Extra Patents before signing the agreement. It is unclear if Plaintiffs even know the scope and breadth of the Licensed RH Patents floating around in their portfolio.

23. The Core Patents had a good life and expired at the end of their twenty-year life on various dates in 2021, as intended by Congress. Meaning any business or person that is not burdened and restrained by a license from Plaintiff can freely exploit the Core Patents with no royalty accruing or owed to Plaintiffs.

24. Plaintiffs now allege that U.S. Patent No. 7,568,534 and U.S. Patent No. 8,721,752 (herein, "Extra Patents") extend the term of the Varel License Agreement by an additional 4-10 years beyond the natural life of the Core Patents, far exceeding the intended 20-year patent monopoly set by Congress. Second Am. Petition, ¶¶ 41-42.

25. As alleged by Plaintiffs the Varel License Agreement "contains royalty obligations based on the 'Licensed RH Patents'". Second Am. Petition, ¶ 26.

26. Said royalty obligations are not graduated, nor reduced, based on the expiration of Plaintiffs' patents. Instead, the royalty rates remain constant whether they include the original dozens of patents or if only one patent, which may have been unknown at the Effective Date, remains. Further, the royalty rate does not account for the expired Core Patents, nor does it account if the patent claims are actually being practiced.

27. Further, Article 8.05(b) of the Varel License Agreement deems the licenses granted under Article III to be terminated as of the date the unpaid royalties were due. It is telling that Plaintiffs have not sought a declaration to terminate the licenses and institute a patent infringement suit as the Extra Patents are not infringed, on information and belief, nor do they have any value to the licensees. Instead, Plaintiffs seek to continue to unlawfully extract royalties from licensees for the expired Core Patents while relying on the additional ten-years of term provided by the Extra Patents. Licensees no longer receive any benefit or consideration under the various agreements.

## V.    Affirmative Defenses/Pleas in Avoidance

28. Varel incorporates by reference the allegations set forth in the preceding paragraphs 18 through 27 as if fully set forth herein.

29. Subject to and without waiver of the foregoing Plea to the Jurisdiction and general denial, and pursuant to Texas Rule of Civil Procedure 94, Varel asserts the following defenses, but does not assume the burden of proof on any such defenses except as required by applicable law. Varel reserves the right to assert other defenses or otherwise supplement its defenses upon discovery of facts or evidence rendering such action appropriate.

30. Plaintiffs' claims are barred in whole or in part because Varel has not and does not infringe, under any theory of infringement, including literally or under the doctrine of equivalents, directly (whether individually or jointly), or indirectly (whether contributorily or by inducement), any claim of the '534 Patent.

31. Plaintiffs' claims are barred in whole or in part because Varel has not and does not infringe, under any theory of infringement, including literally or under the doctrine of equivalents, directly (whether individually or jointly), or indirectly (whether contributorily or by inducement), any claim of the '752 Patent.

32. Plaintiffs' claims are barred in whole or in part by their prior material breaches and/or failure to perform their required obligations.

33. Plaintiffs' claims are barred in whole or in part because they are based on purported contractual duties that have since terminated.

34. Plaintiffs' claims are barred in whole or in part because they are based on purported contractual duties and obligations that are void on public policy grounds.

35. Plaintiffs' claims are barred in whole or in part because federal law, including laws arising under Acts of Congress relating to patents, preempts such claims.

36. On information and belief, the '534 Patent and '752 Patent are being exploited by Plaintiffs and used in an improper manner that impermissibly broadens the physical and/or temporal scope of Plaintiffs' patent grant with anticompetitive effect while using Plaintiffs' power and control over the relevant market, thereby rendering Plaintiffs' demand for royalties unenforceable and unlawful patent misuse.

37. Plaintiffs' claims are barred, in whole or in part, by their failure to mitigate.

38. Plaintiffs seek payment of patent royalties on expired patents which are now unenforceable, Varel avers a failure of consideration.

39. Plaintiffs seek payment of patent royalties on unpracticed patents claims, Varel avers a failure of consideration.

40. Plaintiffs seek to extend the life of their federally mandated monopoly by tying the payment of royalties of expired licensed Core Patents to un-utilized, unwanted and unlicensed Extra Patents. Specifically, the Extra Patents were not granted, disclosed, and/or existent at the time of entering into the Varel License Agreement. As a result, Varel asserts patent misuse as an affirmative defense to Plaintiffs' claims.

41. Expired patents are unenforceable. Varel asserts unenforceability as a defense to Plaintiffs' claims.

42. Defendants assert estoppel as a defense to Plaintiffs' claims.

43. Defendants assert quasi estoppel as a defense to Plaintiffs' claims.

44. Wherefore, Varel requests that Plaintiffs' Second Amended Petition be dismissed with prejudice and that Varel be awarded its costs for responding to this action, its reasonable and necessary attorneys' fees, and all other relief that the Court deems just and proper.

## VI.    Counterclaims – Declaratory Judgment Actions

45. Varel incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

46. The Texas Uniform Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) reads in relevant part: "A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of

construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code Ann. § 37.004; *see also Id*. at § 37.003(a) ("A court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed…."). Under this provision, "any person interested under a written contract may have determined any question of construction or validity arising under that contract and obtain a declaration of rights, status, or other legal relations thereunder." *Transp. Ins. Co. v. WH Cleaners, Inc.*, 372 S.W.3d 223, 228 (Tex. App.—Dallas 2012, no pet.) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a)); *see also Trinity Universal Ins. Co. v. Sweatt*, 978 S.W.2d 267, 270 (Tex. App.—Fort Worth 1998, no. pet.) ("Construction and validity of contracts are the most obvious and common uses of the declaratory judgment action.").

47. This Court is invested with the power to declare the rights, status, and legal relations between the Parties for the purposes of some relief sought herein. A genuine case and controversy exists between Plaintiffs and Varel, within the jurisdiction of this Court, and involving rights, status, and other legal relations of the Parties. *See* Tex. Civ. Prac. & Rem. Code § 37.002(b).

48. Pursuant to the Uniform Declaratory Judgment Act ("UDJA"), Varel seeks a declaration from the Court that Varel's licenses under the Varel License Agreement were terminated as of October 22, 2021.

49. Pursuant to the UDJA, Varel seeks a declaration from the Court, in light of the terminated licenses under the Varel License Agreement, that no go-forward royalties are owed to Plaintiffs after October 22, 2021.

50. Pursuant to the UDJA, Varel seeks a declaration from the Court that U.S. Patent No. 8,721,752 is not a related patent and is not a Licensed RH Patent, as alleged by Plaintiffs.

51. Pursuant to the UDJA, Varel seeks a declaration from the Court that U.S. Patent No. 7,567,534 is not a related patent and is not a Licensed RH Patent as alleged by Plaintiffs.

52. Pursuant to the UDJA, Varel seeks a declaration from the Court that Varel does not infringe any claim of U.S. Patent No. 7,568,534.

53. Pursuant to the UDJA, Varel seeks a declaration from the Court that Varel does not infringe any claim of U.S. Patent No. 8,721,752.

54. Pursuant to the UDJA, Varel seeks a declaration from the Court that U.S. Patent No. 8,721,752 is unenforceable for at least illegal tying, anti-trust, and/or patent misuse. *See Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964).

55. Pursuant to the UDJA, Varel seeks a declaration from the Court that U.S. Patent No. 7,568,534 is unenforceable for at least illegal tying, anti-trust, and/or patent misuse. *See Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964).

56. Pursuant to the UDJA, Varel seeks a declaration from the Court that the Varel License Agreement constitutes an unlawful patent tying scheme to extract go-forward royalties from Defendants for undesired, unpracticed, and unwanted patents after the expiration of the Core Patents. *See Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964).

57. Pursuant to the UDJA, Varel seeks a declaration from the Court that Plaintiffs' actions, including the demand for go-forward royalty payments, after October 22, 2021 and the expiration of the Core Patents, constitute *per se* patent misuse rendering the Extra Patents unenforceable and voiding the Varel License Agreement. *See Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964).

### VII.   <u>Attorneys' Fees</u>

58. Varel seeks its reasonable and necessary attorneys' fees and expenses pursuant to Chapters 37.009 and 38.001 et seq. of the Texas Civil Practice & Remedies Code.

### VIII.   <u>Conditions Precedent</u>

59. All conditions precedent to Varel's claims for relief have been performed, have occurred, and/or excused or waived.

### IX.   <u>Prayer for Relief</u>

WHEREFORE, PREMISES CONSIDERED, Defendants, Varel International Energy Services, Inc. and Varel International Industries, L.P., pray that Plaintiffs take nothing by reason of this suit, that Defendants be awarded judgement as to Plaintiffs' claims, as to the unenforceability of the Varel License Agreement, unenforceability of the Extra Patents, non-infringement of the '534 and ' 752 Patents, damages suffered, costs of court,  and reasonable and necessary attorneys' fees in the defense hereof, and for all such other and further relief, both general and special, at law and in equity, to which these Defendants may show themselves to be justly entitled and for which they shall ever pray.

Date: February 27, 2023

RESPECTFULLY SUBMITTED,
**STEPHENS JUREN PLLC**

*/s/KELLY D. STEPHENS*
KELLY D. STEPHENS
TBA NO.: 19158300
S.D. TEXAS NO.: 8535
MATTHEW C. JUREN
TBA NO.:  24065530

2500 TANGLEWILDE, STE. 320
HOUSTON, TEXAS 77063
832-344-5400 - PHONE
832-476-5460 - FAX
KSTEPHENS@PATENT-LAWYERS.COM

MJUREN@PATENT-LAWYERS.COM

**ATTORNEYS FOR DEFENDANTS**
**VAREL INTERNATIONAL ENERGY**
**SERVICES, INC. AND VAREL**
**INTERNATIONAL INDUSTRIES, L.P.**

<u>**Certificate of Service**</u>

I hereby certify that a true and correct copy of the foregoing Defendant's Plea to the Jurisdiction, Special Exceptions, Original Answer, Affirmative Defenses/Pleas in Avoidance and Counterclaims was served upon the parties listed below, on the 27th day of February, 2023, via electronic service and/or email.

John Zavitsanos
Kevin Leyendecker
Ahmad, Zavitsanos & Mensing, P.L.L.C.
1221McKinney St. Ste. 2500
Houston, Texas 77010
jzavitsanos@azalaw.com
kleyendecker@azalaw.com

Bob McAughan
550 Westcott St., Ste. 375
Houston, Texas  77007
bmcaughan@md-iplaw.com

*Counsel for Attorneys for Plaintiffs*

David J. Beck
**BECK REDDEN LLP**
1221 McKinney Street
Suite 4500
Houston, Texas 77010
Telephone:  713.951.3700
Facsimile:  713.951.3720
dbeck@beckredden.com

Nick Brown
**KIRKLAND & ELLIS LLP**
609 Main Street
Houston, Texas 77002
Telephone: 713.836.3600
Facsimile:  713.836.3601
nick.brown@kirkland.com

James John Lomeo
**KIRKLAND & ELLIS LLP**
401 Congress Ave
Austin, Texas 78701
Telephone: 512.678.9100
Facsimile:  512.678.9101
james.lomeo@kirkland.com

*Counsel for Defendants Ulterra Drilling Technologies, L.P. and Rockbit International Subsidiaries, LLC*

Craig Smyser
Samantha J. Jarvis
Garland D. Murphy
SMYSER KAPLAN & VESELKA, LLP
717 Texas Ave., Ste. 2800
Houston, Texas 77002
Telephone:     713-221-2300
Facsimile:     713-221-2320
csmyser@skv.com
sjarvis@skv.com
lmurphy@skv.com

Nick Brown
**KIRKLAND & ELLIS LLP**
609 Main Street
Houston, Texas 77002
Telephone: 713.836.3600
Facsimile:  713.836.3601
nick.brown@kirkland.com

James John Lomeo
**KIRKLAND & ELLIS LLP**
401 Congress Ave
Austin, Texas 78701
Telephone: 512.678.9100
Facsimile:  512.678.9101
james.lomeo@kirkland.com

*Counsel for Defendants, Schlumberger Technology Corp. And Smith International, Inc.*

*/s/Kelly D. Stephens*

Kelly D. Stephens

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Kelly Stephens on behalf of Kelly Stephens
Bar No. 19158300
kelly.stephens@hotmail.com
Envelope ID: 73135184
Status as of 2/27/2023 11:57 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| John Zavitsanos | | jzavitsanos@azalaw.com | 2/27/2023 11:39:13 AM | SENT |
| David J.Beck | | dbeck@beckredden.com | 2/27/2023 11:39:13 AM | SENT |
| Patrick KevinLeyendecker | | kleyendecker@azalaw.com | 2/27/2023 11:39:13 AM | SENT |
| Shahmeer Halepota | | shalepota@azalaw.com | 2/27/2023 11:39:13 AM | SENT |
| Michael Killingsworth | | mkillingsworth@azalaw.com | 2/27/2023 11:39:13 AM | SENT |
| Kara Blasingame | | kara.blasingame@kirkland.com | 2/27/2023 11:39:13 AM | SENT |
| Linda Casas | | lcasas@skv.com | 2/27/2023 11:39:13 AM | SENT |
| Nick Brown | | nick.brown@kirkland.com | 2/27/2023 11:39:13 AM | SENT |
| Bob McAughan | | bmcaughan@md-iplaw.com | 2/27/2023 11:39:13 AM | SENT |
| Ryan Kane | | ryan.kane@kirkland.com | 2/27/2023 11:39:13 AM | SENT |
| Tera Stone | | tera.stone@kirkland.com | 2/27/2023 11:39:13 AM | SENT |
| Jessica Davis | | jessica.davis@kirkland.com | 2/27/2023 11:39:13 AM | SENT |
| Edwynna Adams | | eadams@skv.com | 2/27/2023 11:39:13 AM | SENT |
| Kelly DStephens | | kelly.stephens@hotmail.com | 2/27/2023 11:39:13 AM | SENT |
| Matthew Juren | 24065530 | mjuren@patent-lawyers.com | 2/27/2023 11:39:13 AM | SENT |
| Kelly DStephens | | kstephens@patent-lawyers.com | 2/27/2023 11:39:13 AM | SENT |
| Louis Liao | | lliao@azalaw.com | 2/27/2023 11:39:13 AM | SENT |
| Craig Smeyser | | csmyser@skv.com | 2/27/2023 11:39:13 AM | SENT |
| Samantha Jarvis | | sjarvis@skv.com | 2/27/2023 11:39:13 AM | SENT |
| Garland Murphy | | lmurphy@skv.com | 2/27/2023 11:39:13 AM | SENT |
| Nick Brown | | nick.brown@kirkland.com | 2/27/2023 11:39:13 AM | SENT |
| James JohnLomeo | | james.lomeo@kirkland.com | 2/27/2023 11:39:13 AM | SENT |
| Samantha Jarvis | | sjarvis@skv.com | 2/27/2023 11:39:13 AM | SENT |
| Craig Smeyser | | csmyser@skv.com | 2/27/2023 11:39:13 AM | SENT |