**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG UK, LTD., REEDHYCALOG, LP, NATIONAL OILWELL VARCO, LP,<br><br>*Plaintiffs/Counter-Defendants*,<br>v.<br><br>SCHLUMBERGER TECHNOLOGY CORP., SMITH INTERNATIONAL, INC.; ULTERRA DRILLING TECHNOLOGIES, L.P., ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC.; VAREL INTERNATIONAL ENERGY SERVICES, INC., and VAREL INTERNATIONAL INDUSTRIES, L.P.,<br><br>*Defendants*. | Civil Action No. 4:23-cv-00730 |

**EXHIBIT F**

**TO**

**PLAINTIFFS' MOTION TO DISMISS AND REMAND**

Case 4:23-cv-00730   Document 32-2   Filed on 03/29/23 in TXSD   Page 2 of 8

Ayala-Roel v. Horne, Not Reported in Fed. Supp. (2017)

2017 WL 7792616
Only the Westlaw citation is currently available.
United States District Court, S.D.
Texas, Brownsville Division.

Gerardo AYALA-ROEL, and

Rosalba Rangel De Ayala Plaintiffs,

v.

Petra HORNE, et al, Defendants.

Case No. 1:17-cv-129
|
Signed 10/27/2017

**Attorneys and Law Firms**

Elisabeth Lisa S. Brodyaga, Attorney at Law, San Benito, TX, Jaime M. Diez, Jones Crane, Brownsville, TX, for Plaintiffs.

Appellate Division, U.S. Attorney's Office Southern District of Texas, Houston, TX, Christopher D. Pineda, United States Attorneys Office, Brownsville, TX, for Defendants.

**MEMORANDUM OPINION AND ORDER**

Andrew S. Hanen, United States District Judge

 **\*1** Before the Court is Defendants' Motion to Dismiss [Defs.' Mot. to Dismiss, Doc. No. 7], Petitioners'/Plaintiffs' Opposition to Motion to Dismiss [Pet'rs' Resp. to Defs.' Mot. to Dismiss, Doc. No. 13] and Defendants' Reply to Plaintiffs' Response to Defendants' Motion to Dismiss. [Defs.' Reply to Pet'rs' Resp. to Defs.' Mot. to Dismiss, Doc. No. 19]. For the following reasons, the Court grants the Defendant's Motion to Dismiss.

**I. Background**

The Plaintiffs, Gerardo Ayala-Roel ("Ayala") or ("Petitioner"), and his wife, Rosalba Rangel de Ayala ("Ms. Rangel"), were both born in Mexico, but make their home in the United States. [Pet. for Writ of Habeas Corpus, Doc. No. 1 at 4]. Ayala's son, a United States citizen, filed visa petitions on behalf of both of his parents, including applications to adjust status ("Form I-485") and an application for advance parole for Ayala, from which Ayala received an advance parole card. [*Id.* at 5]. An application to adjust status serves as a request to change a person's immigration status to that of a lawful permanent resident. [*Id.*]. An advance parole card allows the applicant to travel abroad without abandoning a pending application, and then return to the United States. [*Id.*].

With the advance parole card in his possession, Mr. Ayala traveled to Mexico on April 4th, 2016. [*Id.*]. Upon his return through the Brownsville port-of-entry, he was stopped by agents of United States Customs and Border Protection (CBP). [*Id.*]. The agents had received a "TECS hit,"[1] an alert in the government's computer system which allegedly suggested that Ayala had some connection to illegal drug traffickers. [Pet'rs' Resp. to Defs.' Mot. to Dismiss, Doc. No. 13 at 2]. The agents proceeded to question Ayala, but he soon stopped the interrogation and requested a lawyer. [*Id.* at 3].

At this point, the agents gave Ayala the option to withdraw his application for parole, or in the alternative, to have a formal finding made as to his admissibility. [*Id.*]. Ayala signed the withdrawal paperwork (although he contends he did so involuntarily and under duress), and returned to Mexico, where he remains. [Pet. for Writ of Habeas Corpus, Doc. No. 1 at 5]. On the same day, United States Citizenship and Immigration Services (USCIS) issued a written decision denying Mr. Ayala's adjustment application, which included a statement that his advance parole had been terminated. [Defs.' Mot. to Dismiss, Doc. No. 7 at 2]. Ms. Rangel's I-485 application for adjustment remains pending. [Pet. for Writ of Habeas Corpus, Doc. No. 1 at 7].

 **\*2** Subsequently, Ayala brought this habeas corpus petition. [*Id.*]. He named agents of CBP and USCIS as Defendants, as well as the Secretary of Homeland Security and the United States [CBP and USCIS are both agencies of the Department of Homeland Security (DHS) ]. [*Id.* at 1]. He also requests relief from this Court under the Declaratory Judgment Act, the Mandamus Act, and the Administrative Procedures Act. [*Id.*].

Ayala asks this Court for judicial review of the denial of his adjustment application, review of the denial of his advance parole, and for relief based on a constitutional due process claim. [*Id.*]. Additionally, Ms. Rangel asks this Court for injunctive relief regarding her pending application. [*Id.* at 10]. She asks this Court to enjoin the government from considering the drug-related allegations against Mr. Ayala in its determination of her own application. [*Id.*]. Defendants have responded by asking the Court to dismiss the case,

Case 4:23-cv-00730   Document 32-2   Filed on 03/29/23 in TXSD   Page 3 of 8

Ayala-Roel v. Horne, Not Reported in Fed. Supp. (2017)

asserting that this Court lacks subject matter jurisdiction. [Defs.' Mot. to Dismiss, Doc. No. 7].

## II. Legal Standard

Defendant moved to dismiss the Petition pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Fed. R. Civ. P. 12(b)(1); 12(b)(6). To survive a motion to dismiss, a claim must be "plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(b)(1) requires a court to dismiss claims for which the court lacks subject matter jurisdiction. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996) ). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A court must accept all factual allegations in the plaintiff's complaint as true when ruling on the motion to dismiss for lack of subject matter jurisdiction. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001).

Federal Rule of Civil Procedure 12(b)(6) allows dismissal based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court "must accept as true all well pleaded facts in the complaint, and the complaint is to be liberally construed in favor of the plaintiff." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). A court should not dismiss a complaint for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* The court must "construe [the] facts in the light most favorable to the nonmoving party, as a motion to dismiss under [R]ule 12(b)(6) 'is viewed with disfavor and is rarely granted.' " *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) ).

**\*3** In this case, the Court's subject matter jurisdiction is limited by the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005). *See Jean v. Gonzales*, 452 F.3d 392, 396 (5th Cir. 2006). The REAL ID Act, codified at 8 U.S.C. § 1252 (2012), "amends the jurisdictional provisions of the Immigration and Nationality Act, altering the way in which noncitizens can seek judicial review of administrative orders of removal. Section 106 of the REAL ID Act has divested federal courts of jurisdiction over § 2241 (habeas corpus) petitions attacking removal orders. ..." *Id.* (citing *Rosales v. Bureau of Immigration & Customs Enforcement*, 426 F.3d 733, 735–36 (5th Cir. 2005).

## III. Ayala's Adjustment Application

Ayala first seeks judicial review of the government's denial of his application for adjustment of status (Form I-485). [Pet. for Writ of Habeas Corpus, Doc. No. 1 at 10]. This Court lacks subject matter jurisdiction to review Ayala's adjustment application denial under 8 U.S.C. § 1252(a)(2)(B). [2]

Form I-485 applications for adjustment are governed by 8 U.S.C § 1255. That section allows the Secretary of Homeland Security (also refered to as "DHS"), in his discretion, to adjust the status of an alien to that of an alien lawfully admitted for permanent residence, permitted the alien makes an application. § 1255.

If DHS makes the discretionary determination to deny an alien such an adjustment, however, courts do not have the ability to review the decision. In § 1252(a)(2)(B), the statute strips courts of the jurisdiction to review "any judgment regarding the granting of relief under section ... 1255," as well as "any other decision ... which is specified under this subchapter to be in the discretion of [DHS]." § 1252.

Courts across the country, including the Fifth Circuit and district courts in the Southern District of Texas, have approached this issue in a similar manner. *See Hadwani v Gonzales*, 445 F.3d 798, 800 (5th Cir. 2006), *Kahlid v. United States*, 1 F. Supp. 3d 560, 562 (S.D. Tex. 2014). They have uniformly held that § 1252(a)(2)(B) denies federal district courts the jurisdiction to rehear or review denials of I-485 applications. *See, e.g.*, *Hadwani*, 445 F.3d at 800 ("[W]e join a number of our sister circuits in holding that

Case 4:23-cv-00730 Document 32-2 Filed on 03/29/23 in TXSD Page 4 of 8

Ayala-Roel v. Horne, Not Reported in Fed. Supp. (2017)

we lack jurisdiction over petitions for review concerning the discretionary denial of relief under 8 U.S.C § 1255.").

The leading case in the Fifth Circuit is *Ayanbadejo v. Chertoff*, 517 F.3d 273 (5th Cir. 2008). In that case, a citizen of Nigeria appealed USCIS's denial of his I-485 application on the grounds that his marriage was a sham, entered into for the purpose of obtaining legal status in the United States. *Ayanbadejo*, 517 F.3d at 274–75. The district court declined to review his denial, ruling that it lacked jurisdiction under § 1252(a)(2)(B). *Id.* at 276. The Fifth Circuit affirmed. *Id.* at 277–78. The appellate court held that § 1252(a)(2)(B)(ii) strips district courts of jurisdiction to hear challenges to denials made by immigration officials which are "specified in the statute to be discretionary." *Id.* at 276. According to the court, § 1252(a)(2)(B)(i) "explicitly placed any judgment regarding the granting of relief ... under section 1255, which provides the statutory authority for I-485 applications, in this category of discretionary decisions that no courts have jurisdiction to review." *Id.* Since § 1252(a)(2)(B)(ii) strips courts' jurisdiction to hear decisions that are discretionary within the section, and because § 1252(a)(2)(B)(i) places I-485 within the section, the Court lacked jurisdiction.

**\*4** In Ayala's case, the Secretary of Homeland Security, acting through his agent, the USCIS Field Office Director, discretionarily denied Ayala's Form I-485 application. [Defs.' Mot. to Dismiss, Doc. No. 7 at 2]. As was the district court in *Ayanbedejo*, this Court is constrained by the language and clear meaning of § 1252(a)(2)(B). 517 F.3d at 276. The statutory scheme strips courts, including this one, of the jurisdiction to review discretionary denials of I-485 applications. *Id.* To the extent that Ayala asks this Court to review the denial of his I-485 application, the Court is unable to do so.

As a counterargument, Ayala asserts that the denial of his adjustment application was not discretionary. [Pet'rs' Resp. to Defs.' Mot. to Dismiss, Doc. No. 13 at 18]. He claims that the application "was denied, *not in the exercise of discretion,* but because Defendant Limon considered that he was statutorily ineligible for such relief, based on the alleged determination ... that he was a drug dealer." [*Id.*] (emphasis in original).

As the Fifth Circuit has held, the statutory scheme removes jurisdiction as to *any* decision made within § 1255. *See Ayanbadejo* at 276–77. ("Section 1252 explicitly places 'any judgement regarding the granting of relief under ... section 1255,' which provides the statutory authority for I-485 applications, in this category of discretionary decisions that no courts have jurisdiction to review.") In *Ayanbadejo*, this included an I-485 denial based on an alleged sham marriage. *Id.* Here, it also includes Ayala's I-485 denial based on allegations of criminal drug trafficking. *Id.* at 275. The government's decision was made under § 1255, and the Court lacks jurisdiction to review it.

Ayala also cannot advance in this Court his claims under the Declaratory Judgment Act, the Administrative Procedures Act, or the Mandamus Act. Courts have held that jurisdiction will not adhere under these other causes because of § 1252's express bar against it. *See Khalid v. DHS*, 1 F. Supp. 3d 560, 561 (S.D. Tex. 2014). Section 1252(a)(2)(B) begins: "Notwithstanding any other provision of law (statutory or nonstatutory)...." *See, e.g.*, *id.* ("None of the bases for relief cited by Plaintiff in his complaint—the Administrative Procedures Act; the Mandamus Act; or the Declaratory Judgment Act—permit the Court to make an end-run around the lack of jurisdiction over Defendant's denial of Plaintiff's I-485 application.") (citation omitted).

For the foregoing reasons, the Court grants the Defendants' Motion to Dismiss as to Ayala's claims regarding his adjustment application.

### IV. Ayala's Advance Parole

Ayala also challenges the denial of his advance parole. [Pet. for Writ of Habeas Corpus, Doc. No. 1 at 1]. Adavnce parole is a permit for a non-citizen to re-enter the United States after having traveled abroad, often issued because the non-citizen has a pending status application that he or she does not wish to abandon. [*Id.* at 2; Defs.' Mot. to Dismiss, Doc. No. 7 at 9].

While it does not appear that the Fifth Circuit has dealt directly with the issue of jurisdiction in a case of an advance parole denial, the Ninth Circuit has decided a case with facts nearly identical to Ayala's. *See Hassan v. Chertoff*, 593 F.3d 785, 788 (9th Cir. 2010). In that case, the Plaintiff received an advance parole card before traveling outside the United States while his application for adjustment was pending. *Id.* While he was abroad, the government denied his adjustment application and revoked his advance parole. *Id.* Upon his return, Hassan was denied readmission, and he brought suit in federal court. *Id.*

Case 4:23-cv-00730 Document 32-2 Filed on 03/29/23 in TXSD Page 5 of 8

Ayala-Roel v. Horne, Not Reported in Fed. Supp. (2017)

**\*5** The Ninth Circuit held that the district court lacked subject matter jurisdiction to hear Hassan's claim. *Id.* at 789–90. The court looked to § 1252(a)(2)(B)(ii)'s restriction on courts' jurisdiction to review any decision by the Attorney General which is specified under that subchapter to be in his discretion.[3] *Id.* at 788. The decision to deny Hassan's advance parole, according to the court, was a discretionary decision within the meaning of the statute, and the court could not hear the case. *Id.* at 789–90. The court reasoned that the purpose of Plaintiff's advance parole was to allow him to remain in the United States during the pendency of his adjustment application. *Id.* Once DHS made the discretionary decision to deny the application, the revocation of Plaintiff's advance parole "followed inevitably." *Id.* at 790. The court therefore lacked jurisdiction under § 1252(a)(2)(B)(ii) to hear Hassan's claim. *Id.*

The same is true in this case. The purpose of Ayala's advance parole was to allow him to re-enter the United States after traveling abroad during the pendency of his adjustment application. The government discretionarily denied Ayala's application for adjustment and also discretionarily denied Ayala's advance parole. [Defs.' Mot. to Dismiss, Doc. No. 7 at 2]. Once the application was denied, the denial of his advance parole "followed inevitably," as did Hassan's. 593 F.3d at 790. Like the Ninth Circuit, which found it had no jurisdiction, this Court also concludes that it lacks jurisdiction to hear appeals of decisions that are within the director's discretion.

Accordingly, the Court grants Defendants' Motion to Dismiss as to Ayala's claims regarding his advance parole denial.

### V. Ayala's Constitutional Claims

Ayala makes several claims that the government has violated due process, including allegations that he was denied the requisite notice and that he was denied a hearing. [Pet. for Writ of Habeas Corpus, Doc. No. 1 at 1; Pet'rs' Resp. to Defs.' Mot. to Dismiss, Doc. No. 13 at 5].

Ayala argues that the government did not provide him with the requisite notice, as required by 8 CFR § 212.5(e)(2)(i).[4] [Pet'rs' Resp. to Defs.' Mot. to Dismiss, Doc. No. 13 at 5]. The government is required by that section to provide notice when it terminates an alien's parole under certain situations. § 212.5(e)(2)(i). In short, the statute requires that written notice be provided if the government terminates parole "upon accomplishment of the purpose for which parole was authorized." *Id.* The government argues that Ayala's advance parole was revoked because his I-485 application for admission was revoked, and the purpose for which the advance parole was granted was nullified. [Pet'rs' Resp. to Defs.' Mot. to Dismiss, Doc. No. 13 at 13].

Additionally, Ayala claims that the government violated his right to due process when it did not provide him a hearing before an immigration judge, which he says is required by § 1225(b)(2)(A).[5] [Pet. for Writ of Habeas Corpus, Doc. No. 1 at 1]. That section states that, if the government finds an "applicant for admission" is not clearly entitled to be admitted, the alien should be detained for a proceeding, specifically a proceeding before an immigration judge. § 1225(b)(2)(A).

### A. Statutory Bar to Judicial Review of Constitutional Claims.

**\*6** Ayala argues, not without some validity, that either the notice he received was sent after his entrance was denied at the port-of-reentry or the notice issued the same day (even if it was before he was denied entrance) was not notice calculated to satisfy the requisites of due process. While, under the current pleadings, the Court might be inclined to agree with his position, it has no jurisdiction to address the alleged constitutional infirmities.

The same statute that bars review of the denial of his I-485 form applies here. Section 1252 removes from courts' jurisdiction the ability to rehear discretionary decisions made by the Attorney General within the subchapter. The grant or denial of advance parole is within the same subchapter (advance parole being found in § 1182), and it is a discretionary matter with the Attorney General.

By couching his claim as a violation of due process, however, Ayala is clearly attempting to argue that his case is different. Ayala's argument is that these are constitutional claims, and that it is not within the government's discretion to violate the United States Constitution. Therefore, he concludes that § 1225 does not bar jurisdiction. Since § 1225 only removes jurisdiction form discretionary decisions, and since constitutional violations are not discretionary, the Court would have jurisdiction to hear them.

Unfortunately for Ayala, the statute contemplates this scenario. Congress used section 1252(a)(2)(D) to explicitly place the jurisdiction to hear these kinds of claims with

Ayala-Roel v. Horne, Not Reported in Fed. Supp. (2017)

Case 4:23-cv-00730 Document 32-2 Filed on 03/29/23 in TXSD Page 6 of 8

the courts of appeals.[6] This section states that it does not "preclud[e] review of *constitutional claims* or questions of law ... filed *with an appropriate court of appeals*." § 1252 (emphasis added). That section effectively lodges jurisdiction over purely constitutional claims with the courts of appeals, and not with the district courts. The statute clearly precludes a role for district courts in the adjudication of these kinds of claims.

Thus, only the courts of appeal retain jurisdiction to hear constitutional claims like the ones that Ayala asserts. Accordingly, this Court does not have jurisdiction to hear Ayala's claims that the government has violated his right to due process in denying him adequate notice or a hearing.

**B. The Government Argues that Ayala Received the Required Notice and that Ayala Was Not Entitled to a Hearing Before an Immigration Judge.**

The government argues that it provided Ayala with notice that his advance parole had been terminated. On April 4, 2016, the same day that Ayala was rejected at the port-of-entry (although not necessarily before he was denied), USCIS issued a written decision informing him that "the purpose for which your advance parole document was issued has been accomplished" and that "[a]ny unexpired advance parole document issued to you ... is terminated as of the date of this notice." [Defs.' Mot. to Dismiss, Doc. No. 7 at 12]. By issuing the written document to Ayala, the government maintains that it met its obligation.

As to Ayala's claim regarding a hearing, the government claims that § 1225(b)(2)(A) does not apply. It claims that CBP gave Ayala the choice to withdraw his application for admission, or to have a formal finding made as to his admissibility. [Defs.' Mot. to Dismiss, Doc. No. 7 at 1]. Ayala chose the former, and withdrew his application. [*Id.*]. Therefore, he was not an "applicant for admission," and the requirement for a hearing in § 1225(b)(2)(A) was not triggered. Consequently, the government claims that no due process violation occurred.

 **\*7** This Court need not give an advisory ruling on these arguments, as it concludes that the issue is one that must be raised with the circuit court. Therefore, it grants Defendants' Motion to Dismiss as to Ayala's due process claims.

**VI. Ms. Rangel's Claim**

Petitioner's wife, Ms. Rangel, also seeks relief from this Court. [Pet. for Writ of Habeas Corpus, Doc. No. 1 at 9]. She asks that the Court enjoin Defendants "from cancelling [her] advance parole document and returning her to Mexico." [*Id.*] "Mrs. Ayala's eligibility for adjustment of status is gravely imperiled by Defendant Limon's finding that her husband is a drug trafficker" and that "it is highly likely that if that finding is upheld, she will also be found ineligible to adjust." [Pet'rs' Resp. to Defs.' Mot. to Dismiss, Doc. No. 13 at 20]. While this statement may in fact be accurate, it may well prove to be inaccurate. Consequently, it does not give this Court a case or controversy which it may hear.

A claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted). Here, Ms. Rangel's case is not yet ripe, and she is therefore unable to pursue a claim in this Court. According to the parties' filings, her application for adjustment is currently pending and no determination has yet been made. [Pet'rs' Resp. to Defs.' Mot. to Dismiss, Doc. No. 13 at 6]. Although Ms. Rangel's situation may seem precarious and she may be justifiably anxious about her status, this Court does not have the power to adjudicate legal claims that have not yet arisen.

**VII. Conclusion**

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss. [Defs.' Mot. to Dismiss, Doc. No. 7]. Also pending before the Court are Plaintiffs' Motion for Information [Doc. No. 9], Defendants' Response to Plaintiffs' Motion for Information [Doc. No. 16], and Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Information [Doc. No. 20]. These motions are denied as moot.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 7792616

Ayala-Roel v. Horne, Not Reported in Fed. Supp. (2017)

Case 4:23-cv-00730   Document 32-2   Filed on 03/29/23 in TXSD   Page 7 of 8

# Footnotes

1. The Treasury Enforcement Computer System ("TECS") is a government database / computer system used at ports-of-entry to provide information on potential entrants, including information that may identify known or suspected criminals. *See* Department of Homeland Security, Privacy Impact Assessment Update for the TECS System: CBP Primary and Secondary Processing (TECS) National SAR Initiative 2 (2011), https://www.dhs.gov/xlibrary/assets/privacy/privacy-pia-cbp-tecs-sar-update.pdf ("TECS is an information-sharing platform, which allows users to access different databases that may be maintained on the platform or accessed through the platform, and the name of a system of records that include temporary and permanent enforcement, inspection, and operational records relevant to the anti-terrorism and law enforcement mission of CBP and numerous other federal agencies that it supports.").

2. 8 U.S.C. § 1252(a)(2)(B) states, in its entirety:

   (B) Denials of discretionary relief

   Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, *no court shall have jurisdiction to review*—

   *(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or*

   *(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion* of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title

   (emphasis added).

3. *See supra* note 1, citing § 1252(a)(2)(B).

4. Section 212.5(e)(2)(i) states:

   (e) Termination of parole—

   (2)(i) On notice. In cases not covered by paragraph (e)(1) of this section, *upon accomplishment of the purpose for which parole was authorized* or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, *parole shall be terminated upon written notice to the alien* and he or she shall be restored to the status that he or she had at the time of parole.

   (emphasis added).

5. Section 1225(b)(2)(A) states:

   § 1225. Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing

   (A) Subject to subparagraphs (B) and (C), in the case of an alien who is *an applicant for admission*, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, *the alien shall be detained for a proceeding under section 1229a of this title.*

Ayala-Roel v. Horne, Not Reported in Fed. Supp. (2017)

Case 4:23-cv-00730   Document 32-2   Filed on 03/29/23 in TXSD   Page 8 of 8

(emphasis added).

6   Section 1252(a)(2)(D) states:

   (D) Judicial review of certain legal claims.

   Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

---

**End of Document**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.