**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG UK, LTD., REEDHYCALOG, LP, NATIONAL OILWELL VARCO, LP,<br><br>*Plaintiffs/Counter-Defendants*,<br>v.<br><br>SCHLUMBERGER TECHNOLOGY CORP., SMITH INTERNATIONAL, INC.; ULTERRA DRILLING TECHNOLOGIES, L.P., ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC.; VAREL INTERNATIONAL ENERGY SERVICES, INC., and VAREL INTERNATIONAL INDUSTRIES, L.P.,<br><br>*Defendants.* | Civil Action No. 4:23-cv-00730 |

**EXHIBIT G**

**TO**

**PLAINTIFFS' MOTION TO DISMISS AND REMAND**

2021 WL 4149134
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas, Houston Division.

RYAN, LLC, Plaintiff,
v.
ERNST & YOUNG, LLP, et al, Defendants.

Civil Action No. 4:20-CV-3134
|
Signed 06/17/2021
|
Entered 06/18/2021

**Attorneys and Law Firms**

[Todd W. Mensing](#), [Edward Burton Goolsby](#), [Foster Calhoun Johnson](#), [Joseph Y. Ahmad](#), [Monica Mahbuba Uddin](#), Paul Stevens Turkevich, Weining Bai, Ahmad Zavitsanos et al, Houston, TX, for Plaintiff.

[Jessica Bateman Pulliam](#), Baker Botts LLP, Dallas, TX, [Louis E. Layrisson, III](#), Baker Botts LLP, Houston, TX, for Defendants.

## ORDER

[Andrew S. Hanen](#), United States District Judge

 *1  Before the Court is Plaintiff Ryan, LLC's ("Plaintiff") Motion to Remand. (Doc. No. 11). Defendants Ernst & Young, LLP ("EY") and S.K. Thakkar ("Thakkar") (collectively, the "Defendants") responded (Doc. No. 12), and Plaintiff replied thereto. (Doc. No. 13). After careful consideration, the Court hereby **GRANTS** the Motion to Remand.

### I. Background

According to the Second Amended Petition, filed in the 281st Judicial District Court of Harris County, Plaintiff is a Texas-based accounting and consulting firm that acquired Shiv Om Consultants, LLC ("SOC"). Among other practice groups, Plaintiff has developed an "oil and gas severance tax and royalty practice group" to help companies realize savings and obtain refunds of state taxes and federal royalties. (Doc. No. 1-3 at 52). Plaintiff alleges that this practice group has dedicated years to developing confidential, proprietary, and trade secret models. Defendant Ernst & Young ("EY") is a global audit, accounting, and consulting firm.

Thakkar, who worked for SOC prior to Plaintiff's acquisition, allegedly signed an employment agreement that inured to Plaintiffs benefit after Plaintiff purchased SOC. The agreement imposed confidentiality, non-solicitation, and non-compete obligations upon Thakkar.

In 2016, still within the restrictive period of the employment agreement's terms, Thakkar resigned from SOC and joined EY as a senior manager in the Indirect Tax Group, allegedly to compete with Plaintiff in the federal royalty, severance tax, and sales and use tax consulting space. (*Id.* at 57). Plaintiff eventually initiated proceedings in 2018 against Thakkar in Fort Bend County District Court (*In re Ryan, LLC*). Apparently, Thakkar resolved the dispute by representing to Plaintiff, in a letter on April 26, 2019, that he had complied and would continue to comply with the restrictive covenants. No other information was provided as to the terms of the resolution of that case.

Subsequently, Plaintiff sued Defendants in the 281st District Court of Harris County, Texas, on June 15, 2020, alleging (1) misappropriation of trade secrets; (2) tortious interference with contract; and (3) breach of contract. Apparently, Plaintiff discovered in November, 2019, that EY's audit group had been accessing and acquiring Plaintiff's confidential federal royalties work product from mutual clients without Plaintiff's knowledge or consent. According to Plaintiff, this work product was not commonly known, and in fact formed the basis of confidentiality agreements with its clients, who are also obligated to maintain the secrecy of Plaintiffs trade secret work product. Plaintiff alleges that the EY audit team would forward this protected information to Thakkar. Allegedly, Thakkar would then leverage this work product information and in turn pitch EY's federal royalty services to Plaintiff's clients in such a way that undermined Plaintiff's existing contracts. He would refer to Plaintiff's confidential work papers and make defamatory statements about Plaintiff. Plaintiff alleges that EY persists in demanding Plaintiff's confidential, proprietary, and trade-secret work product under the guise of audits.

 *2  Plaintiff also alleges that Ryan Nick ("Nick") was acting as EY's agent to acquire its confidential, proprietary, and trade secret information. According to Plaintiff's allegations, Nick worked in Plaintiff's severance tax and federal royalty

group. He was allegedly similarly bound by an employment agreement with confidentiality and noncompete provisions. He announced his departure from Plaintiff on May 6, 2020 and joined EY. Upon examining Nick's old work laptop shortly thereafter, Plaintiff determined that he had accessed a substantial volume of work product immediately before his departure in suspicious circumstances. Allegedly, EY then assigned Nick to review Plaintiff's confidential work product and provide a summary of the savings generated for Plaintiff's clients.

Plaintiff additionally alleges that EY's conduct, including auditing its (EY's) own clients and disclosing confidential information from audits to other "non-attest" departments and third parties, violated the standards, rules, and conduct for the American Institute of Certified Public Accountants (AICPA), Public Company Accounting Oversight Board (PCAOB), Security and Exchange Commission (SEC), and the Texas State Board of Public Accountancy (TSBPA), all of which set various ethical and auditing standards for the profession. According to Defendants, Plaintiff did not make these allegations in its Verified Original Petition or its First Amended Verified Petition. (Doc. No. 12 at 8 & Doc. No. 1-3 at 3, 24). Plaintiff has not contradicted this representation.

The state trial court entered a temporary restraining order against EY and eventually entered an Agreed Temporary Injunction against EY. (Doc. No. 1-4 at 3, 42). Thereafter, Defendants filed their Original Answer, which apparently prompted the Plaintiff to file the Second Amended Petition (the live complaint) on August 19, 2020. The Second Amended Petition asserted the same three state law claims as the prior petitions: misappropriation of trade secrets, tortious interference with contract, and breach of contract, but added references to various federal statutes that the Defendants allegedly violated. Defendants removed the case to this Court on September 8, 2020, asserting federal question jurisdiction. They contend that the Second Amended Petition raises a federal question for the first time, because of the new allegations that EY's conduct violated certain federal regulations. Plaintiff filed this Motion to Remand (Doc. No. 11), to which Defendants responded (Doc. No. 12) and Plaintiff replied. (Doc. No. 13).

## II. Legal Standard

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove to federal court any state court action over which the federal district court would have original jurisdiction. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). Accordingly, the removing party bears the burden of establishing that federal subject matter jurisdiction exists, and that removal was proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). When evaluating a motion to remand, all factual allegations are considered in the light most favorable to the plaintiff, and any contested fact issues are resolved in the plaintiff's favor. *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005).

## III. Analysis

Plaintiff makes three major arguments in favor of remand. First, it argues Defendants' removal was untimely. (Doc. No. 11 at 10). Second, it argues that Defendants waived their removal rights by seeking relief in the state court case. (*Id.* at 15). Third, Plaintiff argues that it pleaded neither a federal cause of action nor a state law claim dependent on federal law. (*Id.* at 17).

### A. Removal was Not Untimely

Plaintiff's argument about the untimeliness of removal is premised upon a theory of federal question jurisdiction that Defendants expressly disavow. Plaintiff argues that the only way federal question jurisdiction in this case could be derived—in Plaintiff's view incorrectly—is from Defendants' assertion of an affirmative defense, which invoked federal laws, *prior* to the Second Amended Petition. (*Id.* at 13). At various times in the state court proceedings, including in a hearing to dissolve the TRO 60 days prior to removal, defendants asserted that "PCAOB and SEC regulations excused EY's misconduct." (Doc. No. 11 at 13). Based upon Defendants' invocation of these federal regulations in their defense, Plaintiff argues that Defendants were on notice of federal question jurisdiction at least 60 days before they removed the case, rendering removal untimely under 28 U.S.C. § 1446(b). (*Id.*)

**\*3** As both parties recognize, an affirmative defense cannot form the basis of removal. *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986). Accordingly, any argument that Defendants' affirmative defense somehow put them on notice of federal jurisdiction is illogical, because the affirmative defense *could not provide* the basis for removal. Instead, this Court finds that Defendants assert federal question jurisdiction based upon their understanding

of specific allegations found for the first time in Plaintiff's Second Amended Petition, namely the reference to several federal regulations. (Doc. No. 3–4). Plaintiff's contention that Defendants were aware of potential issues of federal law earlier in the litigation from various filings is also irrelevant: courts do not investigate the defendant's subjective knowledge to convert a case into a removable action. *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 210 (5th Cir. 2002). If this Court's characterization is accurate, Defendants' removal was timely.

B. Defendants did not waive their right to remove

Plaintiff's argument that Defendants waived their right to remove by seeking relief in state court is also unpersuasive. Defendants who timely file a notice of removal may waive that right by taking "substantial action in state court *indicating an intent to submit the case to the jurisdiction of that court.*" *Ortiz v. Brownsville Indep. Sch. Dist.*, 257 F. Supp. 2d 885, 889 (S.D. Tex. 2003) (emphasis added). Waiver will not occur unless it is clear and unequivocal, *Strong v. Green Tree Servicing, L.L.C.*, 716 F.App'x 259, 263 (5th Cir. 2017), which generally means the right of removal is only lost upon a proceeding to an adjudication on the merits. *See Ortiz*, 257 F.Supp. 2d at 889 ("[W]hile the mere filing of a potentially dispositive motion is insufficient to find waiver, a defendant who *argues* such a motion at a hearing or otherwise urges its resolution may not thereafter remove her case.") (emphasis added).

Courts have looked to two factors to determine when there is clear and specific intent to waive the right of removal. First, courts assess whether the actions were taken by the defendant in state court for the purpose of preserving the status quo, or if defendants manifested an intent to litigate the merits of the claim; and second, whether removal can be characterized as an appeal from an adverse judgment of the state court. *Jacko v. Thorn Americas, Inc.*, 121 F. Supp. 2d 574, 576 (E.D. Tex. 2000). The second factor does not apply in the present case, because as discussed below, Defendants removed immediately after filing their motions to dismiss in state court, which constitute the only relevant filings to this inquiry.

The Court finds that Defendants have taken no action in this lawsuit that constitutes waiver of their right of removal. When the case is not initially removable, as here, the waiver issue turns on what actions the defendant takes *once the case becomes removable. Id.* After the Second Amended Petition, Defendants' only state-court activity was filing two motions to dismiss right before removing the case. (Doc. No. 12 at 13). Each motion featured a disclaimer that Defendants did not seek a resolution:

> Defendants file this Motion subject to their right to remove based on new allegations in the most recently amended Petition to *preserve their rights and maintain the status quo*. The cause of action that is the focus of this Motion appeared in prior Petitions, and today is the deadline for filing this Motion under Rule 91a. While Defendants file this Motion to preserve their rights and the status quo, *they are not seeking a ruling from this Court at this time and instead are filing a Notice of Removal immediately after the filing of this Motion.*

(Doc. No. 11-15 at 2). Defendants' intent to merely maintain the status quo rather than to litigate the merits of the case in state court is bolstered by their filing of the notice of removal mere minutes after filing the motion to dismiss. (Doc. No. 12 at 13). Accordingly, the motions, though dispositive, do not reflect an intention to seek resolution from the state court or manifest an intent to litigate the merits of the claim. *See Jacko*, 121 F. Supp. 2d at 576. Therefore, the Defendants did not waive their right to remove, if one truly exists.

C. Plaintiff pleaded neither a federal cause of action nor a state law claim dependent on federal law.

**\*4** District courts have federal question jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Whether federal question jurisdiction exists is determined under the "well-pleaded complaint" rule. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–10 (1983). That is, the existence of federal question jurisdiction is determined solely by what appears on the face of the plaintiff's complaint. *Id. at* 10. Federal question jurisdiction arises when either (1) a plaintiff pleads a cause of action created by federal law, or (2) the state law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*

*& Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). In other words, federal question jurisdiction exists where "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008).

### 1. Plaintiff did not plead a federal cause of action.

Defendants argue that federal question jurisdiction exists because Plaintiff alleges that Defendants' conduct "violated SEC and PCAOB regulations." (Doc. No. 1 at 2–3). Plaintiff contends that the Second Amended Petition merely *cites* to federal regulations but does not invoke them to state a federal claim; in fact, none of the regulations referenced provide a private cause of action.

The Court finds that Plaintiff's reference to various federal regulations and standards in its Second Amended Petition merely served to describe types of conduct that violated the PCAOB or SEC, not to allege a separate cause of action under either regulation. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 917–18 (5th Cir. 2001); *see also Fathergill v. Rouleau*, 2003 WL 22342718, at *2 (N.D. Tex. Oct. 14, 2003) (holding complaint that identified federal securities laws does not create federal question jurisdiction); *Schappel v. UICI*, 1991 WL 1101262, at *2 (N.D. Tex. Dec. 3, 1999) (holding that complaint alleging that defendant "failed to comply with federal securities laws" merely provided factual basis for state law claim). This conclusion is supported by the fact that the complaint explicitly alleges three distinct state law claims entitled "Counts." (Doc. No. 1-3 at 63–69). Moreover, the federal regulations referred to do not provide a private cause of action.[1] In other words, the federal laws referenced in the Second Amended Petition cannot "create the cause of action." *Singh*, 538 F.3d at 337. Thus, a fair reading of Plaintiff's allegations would not infer an invocation of a federal cause of action. *See Duru v. Berger Psychological Services PC*, 3:15-CV-120-B-BH, 2015 WL 9311531, at *3 (N.D. Tex. Nov. 6, 2015), report and recommendation adopted, 3:15-CV-120-B, 2015 WL 9302805 (N.D. Tex. Dec. 22, 2015) ("Because HIPAA does not confer a private cause of action on Plaintiff and it cannot be enforced by her, it cannot form the basis of federal question jurisdiction.").

### 2. Plaintiff did not plead a state law claim dependent on federal law.

Alternatively, Defendants contend that Plaintiff's claim for tortious interference with contract turns on a disputed federal issue of substantial importance to the federal system, because Plaintiff must support an essential element of its claim by alleging "disputed violations of federal standards." (Doc. No. 12 at 17). Specifically, Defendants argue that Plaintiff cannot make out the "tortiously unlawful" element of its tortious interference claim without analyzing whether Defendants' conduct violated federal laws. Plaintiff's primary argument is that Defendants fail to meet the "necessary" factor of the *Singh* (or *Grable*) test, because federal law is not a "necessary" element of its tortious interference claim. (Doc. No. 11 at 18). While the failure to show any one *Singh* factor is fatal to the exercise of federal jurisdiction, Plaintiff additionally argues that Defendants have failed to meet other factors, namely that the federal issue is "substantial" and that federal jurisdiction will not "disturb the balance of federal and state judicial responsibilities." (*Id.* at 21–23).

*5 If a plaintiff can allege at least one theory in support of the state law claim that does not require any interpretation of federal law, then no federal question exists. *Goffney v. Bank of AM., N.A.*, 897 F. Supp. 2d 520, 526 (S.D.Tex. 2012) ("When a claim can be supported by alternative and independent theories of recovery, one based on state law and the other on federal law, that claim may not form the basis for federal question jurisdiction because federal law is not a 'necessary' element of the claim."). Under Texas law, a tortious interference claim requires the plaintiff to show, among other things, that the defendant's conduct was either independently tortious or unlawful. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). The Supreme Court of Texas has clarified that the independently tortious prong can be satisfied by a plaintiff proving that the defendant's conduct would be actionable under a recognized tort, which includes defamation, fraud, or common-law trade secret misappropriation. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001); *see also Amazon Tours, Inc. v. Quest Glob. Angling Adventures L.L.C.*, 2004 WL 1788078, at *3 (N.D. Tex. June 30, 2004) (plaintiff's misappropriation allegations were also sufficient to state tortious interference claim).

The Court finds that at a bare minimum Plaintiff has alleged at least one theory of its tortious interference claim that

does not require any interpretation of federal law. Plaintiff's tortious interference claim is brief. Most importantly, it incorporates all prior allegations in the live petition, and makes clear that it refers to tortious interference with Plaintiff's present and prospective business relationships with its clients and agreements with its employees to maintain confidentiality. (Doc. No. 1-3 at 68). The prior factual allegations that were incorporated into the tortious interference claim include Thakkar's alleged defamation of Plaintiff, Defendants' alleged used of trade secrets to improperly compete, and Defendants' alleged fraudulent statements to Plaintiff's customers, including that EY required papers with confidential information about Plaintiff to properly conduct its audit. (Doc. No. 1-3 at 58, 60 & 61). Thus, Plaintiff has established alternative grounds, other than showing violations of PCAOB or SEC regulations, to support its state law claim for tortious interference. It can assert defamation, fraud, or common-law trade secret misappropriation as tortiously independent conduct in support of its tortious interference claim, without proving "disputed violations of federal law" or asking the Court to determine whether Defendants' conduct "violated ... federal auditing standards." (Doc. No. 12 at 18).

The test for "necessity" is whether Plaintiff *must* prove, not *could* prove, that Defendants violated federal law. *See Willy*, 855 F. 2d at 1170 (allegations that defendants violated both federal and state law did not "necessarily" raise federal question); *see also Howery*, 243 F.3d at 918; *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 535 (5th Cir. 2017); *Goffney*, 897 F.Supp.2d at 526. Since Defendants are unable to establish that Plaintiff must prove that Defendants violated federal law to proceed on its tortious interference claim, this failure ends the Court's remand inquiry. *Am. Airlines, Inc. v. Sabre, Inc.*, 694 F.3d 539, 544 (5th Cir. 2012) ("Because [defendant] failed to satisfy the first prong of the *Grable* test—that is, failed to show that [plaintiff's] state-law claim *necessarily* raises a stated federal issue—we do not address the remaining prongs.").

### IV. Attorney's Fees

Plaintiff asks the Court to award it fees and costs for opposing Defendants' improper removal. The Court declines to do so. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.").

### V. Conclusion

**\*6** For the foregoing reasons, the Court **GRANTS** the Plaintiff's Motion to Remand. (Doc. No. 11). This case is remanded to the 281st Judicial Court of Harris County, Texas.

**All Citations**

Slip Copy, 2021 WL 4149134

---

### Footnotes

1   Both parties acknowledge this fact. (Doc. No. 11 at 18 & Doc. No. 12 at 15).

---