**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG UK, LTD., REEDHYCALOG, LP, NATIONAL OILWELL VARCO, LP,<br><br>*Plaintiffs/Counter-Defendants*,<br>v.<br><br>SCHLUMBERGER TECHNOLOGY CORP., SMITH INTERNATIONAL, INC.; ULTERRA DRILLING TECHNOLOGIES, L.P., ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC.; VAREL INTERNATIONAL ENERGY SERVICES, INC., and VAREL INTERNATIONAL INDUSTRIES, L.P.,<br><br>*Defendants*. | Civil Action No. 4:23-cv-00730 |

**EXHIBIT J**

**TO**

**PLAINTIFFS' MOTION TO DISMISS AND REMAND**

United States District Court
Southern District of Texas
**ENTERED**
October 22, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CORROSION PREVENTION TECHNOLOGIES LLC, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:20-CV-2201 |
| LOREN L. HATLE, *et al*, | § § § | |
| Defendants. | § § | |

## ORDER

Pending before the Court is Plaintiff Corrosion Prevention Technologies LLC's ("CPT" or "Plaintiff" or "Counterclaim Defendant") Motion to Dismiss Defendants', Loren L. Hatle, Santiago Hernandez, Timothy Mulville, Bear Metal Technologies, LLC, and Corrosion Exchange, LLC (collectively the "Defendants" or "Counterclaim Plaintiffs"), Counterclaims. (Doc. No. 19). The Defendants filed a Response, (Doc. No. 20), and CPT filed a Reply. (Doc. No. 21). After considering the briefing and applicable law, the Court grants the Plaintiff's motion.

### I. Background[1]

CPT manufactures, markets, and sells treatment kits for corrosion, which is a problem in various industries, such as oil and gas, shipping trades, and others. CPT allegedly created corrosion prevention technology that takes fewer steps to complete, saving time and energy of users. Its main product, which is allegedly trademarked, is called CorrX. The individual Defendants are former employees of CPT. Defendant Bear Metal Technologies was allegedly started by the individual

---

[1] The Background comes from the facts alleged in CPT's complaint. (*See* Doc. No. 1). Where appropriate for analysis of the motion, however, the facts will be recited in the light most favorable to non-moving party, the Defendants. *See Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

Defendants when they left CPT's employ and Defendant Corrosion Exchange was subsequently started by Defendant Hatle.

CPT sued all Defendants for alleged violations of the Lanham Act, the Federal Defend Trade Secrets Act, and the Texas Uniform Trade Secrets Act, and for common law misappropriation. It also sued the individual Defendants for breach of confidentiality agreements they allegedly signed and for conversion. Finally, CPT sued only Hatle for breach of an assignment agreement under which Hatle was allegedly obligated to transfer the rights to certain intellectual property to CPT.

Subsequently, the Defendants answered and filed counterclaims against CPT for declaratory judgment of noninfringement of two patents (US Patent No. 9,782,804 (the "'804 patent") and US Patent No. 9,193,943 (the "'943 patent")), and state-law claims of tortious interference with potential business relationship, business disparagement, and defamation. (*See* Doc. No. 16).

CPT has now moved to dismiss all of the Defendants' counterclaims, or, in the alternative, for a more definite statement as to the state-law claims. (*See* Doc. No. 19). CPT moves for dismissal of the declaratory judgment claims under Rule 12(b)(1) contending that this Court has no subject-matter jurisdiction over them. (*See id.* at 7–9); Fed. R. Civ. Pro. 12(b)(1). Further, CPT asks that this Court dismiss the Defendants' tort claims under Rule 12(b)(6) for failure to state a claim, or, in the alternative, to order the Defendants to re-plead with more clarity under Rule 12(e). (*See* Doc. No. 19 at 9–17); Fed. R. Civ. Pro. 12(b)(6), (e).

## II. Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. PCOrder.com*, 402 F.3d 489,

2

494 (5th Cir. 2005) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). The burden of proof for a 12(b)(1) motion to dismiss is on the party asserting jurisdiction, who must prove by a preponderance of the evidence that the court has jurisdiction based on the complaint (or, in this case, answer) and evidence. *Gilbert v. Donahoe*, 751 F.3d 303, 307 (5th Cir. 2014). The Declaratory Judgment Act does not by itself confer subject-matter jurisdiction on this Court because it is "procedural only." *Vaden v. Discover Bank*, 556 U.S. 49, 70 n.19 (2009) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). Federal courts do have exclusive jurisdiction over any case "arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a). Nonetheless, Article III of the Constitution requires that federal courts only decide "Cases" and "Controversies," which is reflected in the Declaratory Judgment Act's "actual controversy" requirement. 28 U.S.C. § 2201(a); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 120 (2007).

A party may file a motion to dismiss claims against it for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion under Rule 12(b)(6), a plaintiff (or counter-plaintiff) must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint (or answer) as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint (or answer) that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at

678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

Rule 12(e) provides that a party may "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. Pro. 12(e). "In contrast to a Rule 12(b)(6) Motion, a Rule 12(e) Motion is appropriate where 'a pleading fails to specify the allegations in a manner that provides sufficient notice.'" *Aguirre v. Tristar Risk Mgmt.*, No. C-10-394, 2011 WL 248199, at *3 (S.D. Tex. Jan. 24, 2011) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

### III. Analysis

**A.  Declaratory Judgment Claims**

As explained above, the Declaratory Judgment Act does not provide an independent basis for federal jurisdiction; this Court is, as always, limited in its exercise of jurisdiction to actual "cases" and "controversies." *MedImmune*, 549 U.S. at 120. To have subject-matter jurisdiction over the Defendants' declaratory-judgment counterclaims, there must be an actual controversy. *Id.* CPT contends that, because it has made no allegation of patent infringement against the Defendants, there is no actual controversy over the patents. (*See* Doc. No. 19 at 7–9). The Defendants claim that, despite CPT making no allegation of patent infringement, CPT's complaint still raises an actual controversy over the '804 and '943 patents. (*See* Doc. No. 20 at 11–12). The question here, then, is whether there is an actual controversy over Defendants' potential infringement of the '804 and '943 patents sufficient to confer jurisdiction upon this Court.

The Supreme Court has clarified when a court has jurisdiction over a declaratory-judgment claim. A court must decide whether there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

4

judgment." *MedImmune*, 549 U.S. at 128 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Nonetheless, a party is not required to "bet the farm" by pursuing arguably illegal activity before seeking a declaration of its contested legal rights. *Id.* at 129. The Federal Circuit has further expounded upon this standard in the patent context: "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007). Declaratory-judgment jurisdiction will not arise without some affirmative act by the patentee. *Id.* An affirmative act by the patentee in this context is "conduct that can reasonably be inferred as demonstrating intent to enforce a patent." *UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 787 F. App'x 691, 698 (Fed. Cir. 2019) (citations omitted).

Here, CPT is the patentee in the would-be infringement suit and has certainly taken an affirmative act—it filed suit against the Defendants. The question, then, is whether the filing of its complaint can reasonably be inferred as demonstrating an intent to enforce patents '804 and '943. *See id.* The Defendants contend:

> Plaintiff's Complaint alleges that the '804 and '943 Patents "embody CorrX™," which is the Plaintiff's trademark associated with its corrosion prevention technology. ECF No 1 ¶¶ 12-15. *Plaintiff's Complaint then explicitly alleges that Defendants have misappropriated Plaintiff's information* and used products without Plaintiff's "express or implied consent" that have a "substantial similarity" to Plaintiff's "own CorrX™." *Id.* ¶¶ 72, 74. This is the very definition of patent infringement. Whether Plaintiff's Complaint explicitly used the word "patent infringement" is wholly irrelevant.

(Doc. No. 20 at 11) (emphasis added). The Defendants would likely be correct in their assessment if the "information" that CPT alleged the Defendants have misappropriated was patents. *See*

5

*SanDisk*, 408 F.3d at 1383 (holding that an express accusation of patent infringement is not dispositive of declaratory judgment jurisdiction and that a "promise not to sue" does not, on its own, destroy such jurisdiction). Instead, though, the "information" to which CPT refers is "confidential and trade secret information," (Doc. No. 1 at ¶¶ 72, 74), which, as discussed below, is the polar opposite of a published patent.

The Defendants claim that CPT has "taken a position that puts [Defendants] in the position of either pursuing arguably illegal behavior or abandoning that which [they] claim[] a right to do." (Doc. No. 20 at 12) (quoting *SanDisk*, 470 F.3d at 1381). This is certainly true with respect to the alleged confidential and trade secret information; CPT has accused the Defendants of trade secret misappropriation. Nevertheless, it is not true with respect to the '804 and '943 patents. Even though CPT mentions the '804 and '943 patents when describing Defendant Hatle's relationship with CPT, (*Id.* at ¶ 17), nowhere does CPT "assert rights under a patent," nor has it identified any allegedly infringing activity by the Defendants. *SanDisk*, 408 F.3d at 1381. Unlike the patentee in *SanDisk*, CPT has not sent the Defendants any communication with "a detailed presentation which identified, on an element-by-element basis, the manner in which" the patentee believed the declaratory-judgment plaintiff was infringing. *Id.* at 1382; *see also Element Six U.S. Corp. v. Novatek Inc.*, No. CV 14-0071, 2014 WL 12586395, at *4 (S.D. Tex. June 9, 2014) (finding that patentee sending correspondence asking other party to cease use of certain technology was not sufficient to create an actual controversy).

Indeed, as CPT explains in its reply, if the information that the Defendants have allegedly misappropriated consists of trade secrets, then by its very nature, that information cannot be patented. (Doc. No. 21 at 3) (citing *Newport Indus. v. Crosby Naval Stores*, 139 F.2d 611, 612 (5th Cir. 1944) ("A process that is a secret cannot be one that is patented.")). "A trade secret differs

6

fundamentally from a patent in that a patent is information which gains legal protection precisely because it is made public." *Carson Prod. Co. v. Califano*, 594 F.2d 453, 461 (5th Cir. 1979). To characterize CPT's claims of trade secret misappropriation as claims of patent infringement would directly contradict this settled law. Even though CPT has clearly demonstrated intent to enforce its alleged intellectual property, it has not shown "conduct that can be reasonably inferred as demonstrating intent to enforce a patent." *Balsam Brands.*, 787 F. App'x at 698. The Court holds that the Defendants have not demonstrated that there is an "actual controversy" regarding the '804 and '943 patents; therefore, this Court has no subject-matter jurisdiction over Defendants' declaratory judgment claims for noninfringement. Those claims are dismissed.

### B. State-Law Tort Claims

The Defendants have also asserted various tort claims against CPT that all arise from the same event. Defendants allege that, shortly after CPT filed its Complaint (Doc. No. 1), CPT contacted representatives of several of Defendants' vendors and customers. (Doc. No. 16 ¶ 134, 141, 146). CPT allegedly informed those representatives about its Complaint, forwarded them a copy of the Complaint and made "disparaging, defaming, misleading, and otherwise fraudulent claims" about Defendants, including allegations "regarding theft and underhanded business tactics." (*Id.*). CPT has moved to dismiss all the tort counterclaims under Rule 12(b)(6), or, in the alternative, for more definite pleading under Rule 12(e). The Court will address each counterclaim in turn.

#### 1. Tortious Interference with Potential Business Relationship

"To establish tortious interference with a prospective business relationship, a plaintiff must prove (i) a reasonable probability that the plaintiff would have entered into a business relationship; (ii) an independently tortious or unlawful act by the defendant that prevented the relationship from

7

occurring; (iii) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (iv) the plaintiff suffered actual harm or damages as a result of the defendant's interference." *Smith v. Royal Seating, Ltd.*, 03-09-00114-CV, 2009 WL 3682644, at *3 n.6 (Tex. App.—Austin Nov. 6, 2009, no pet.) (citing *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001)). To show "independently tortious conduct," the plaintiff must "prove that the defendant's conduct would be actionable under a recognized tort." *Sturges*, 52 S.W.3d at 726. "Conduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations." *Id.*

The Defendants allege that CPT committed the independent tort of business disparagement and/or defamation, (*See* Doc. No. 16 at 15–16), which can support recovery under tortious interference with business relations. *See Cramer v. Logistics Co., Inc.*, EP-13-CV-333-KC, 2014 WL 652319, at *7–8 (W.D. Tex. Feb. 19, 2014). CPT contends that the claim nevertheless fails because the Defendants have done no more than make "threadbare recitals" of the elements of the claim, and have not alleged facts "establishing a reasonable probability that any Defendant would have entered a business relationship, and fails to establish any actual damages." (Doc. No. 19 at 15).

Courts have found that the element of "reasonable probability" of a business relationship was sufficiently alleged when the plaintiff can describe the specifics of a proposed agreement that never came to fruition. *See Cooper v. Harvey*, 108 F. Supp. 3d 463, 472 (N.D. Tex. 2015). Here, the Defendants state merely that CPT contacted several of Defendants' "vendors and customers, including but not limited to, Schmidt Manufacturing, The Warehouse Rental and Supply and PolyLab," and that CPT attempted "to persuade these companies from continuing to do business

8

with Counterclaim Plaintiffs or start doing business [with] Counterclaim Plaintiffs." (Doc. No 16 at 15). Further, Defendants allege that they have "suffered irreparable harm to their future business opportunities, present client negotiations, good will, and all other economic opportunity losses." (*Id.* at 16). Courts have found allegations more substantial than this to fail to sufficiently allege a reasonable probability of a business relationship. For example, in *M-I LLC v. Stelly*, the plaintiff alleged "that it 'has provided [w]ellbore cleanout tools and services to BP for other ThunderHorse wells, and expected to provide the same for 778 # 2,' but instead lost the project to WES." 733 F. Supp. 2d 759, 776 (S.D. Tex. 2010). The court found that even this allegation of a specific previous business arrangement and its loss did not sufficiently plead a reasonable probability that the plaintiff would have entered into a contractual relationship. *Id.*

The Defendants' allegations here fall short even of the allegations in *Stelly*. They have not alleged any facts showing what business relationship they expected to have with the listed businesses or pointed to a specific contract they allegedly lost because of CPT's actions. The Court finds that the Defendants have failed to allege facts that plausibly state a counterclaim for tortious interference with a prospective business relationship.

### 2. Business Disparagement

Under Texas law, "[t]o prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003). CPT contends that the "Defendants' business disparagement claim is devoid of facts underlying malice or of any special damages." (Doc. No. 19 at 13).

9

In a business disparagement case, a plaintiff can plead malice by alleging facts that "the defendant knew its statements were false or acted with reckless disregard for their falsity; [or] acted with ill will or with an intent to interfere in the plaintiff's economic interests." *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 671 (S.D. Tex. 2010) (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987)). The Defendants pleaded that CPT made allegations about them "regarding theft and underhanded business tactics without regard for the truth of these statements" that were "yet untried before a finder of fact and [were] contrary to even the evidence presented by CPT in this Complaint." (Doc. No 16 at 17). These allegations seem to imply that the Defendants' claim is that CPT knew its statements were false; but, in their response, the Defendants argue instead that their "pleading is more than sufficient to show Plaintiff showed ill will and an intent to interfere with the plaintiff's economic interest." (Doc. No. 20 at 14). They further state, "The very act of contacting customers of competitors to dissuade future business, on its face, shows an intent to interfere with economic interests, if not ill will. *Res ipsa loquitur*." (*Id.*).

Intent is a notoriously difficult element to plead and prove. *See Iqbal*, 556 U.S. at 675–86 (plaintiff had not sufficiently pleaded discriminatory intent when there was an obvious alternative explanation for defendants' conduct). Here, the Defendants have stated the intent element, described the allegedly disparaging action by CPT, and alleged that action "speaks for itself" to show CPT's intent. It is doubtful that this is sufficient to plausibly allege the malice element of Defendants' business disparagement counterclaim, but the Court need not decide this because the counterclaim fails on another element: special damages.

In the business disparagement context, special damages means that "the disparaging communication p[l]ayed a substantial part in inducing third parties not to deal with the plaintiff,

10

resulting in a direct pecuniary loss that has been realized or liquidated, such as specific lost sales, loss of trade or loss of other dealings." *TMIRS Enterprises, Ltd. v. Godaddy.com, Inc.*, CIV.A. H-09-2858, 2010 WL 3063659, at *5 (S.D. Tex. Aug. 3, 2010). "Special damages . . . are never presumed as they represent specific economic losses that must be proven." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). Here, as to the damages element, the Defendants allege:

> Because of CPT's deliberate actions, Counterclaim Plaintiffs' businesses have suffered irreparable harm to their present and future business opportunities, present client negotiations, good will, and all other economic opportunity losses. Anti-corrosion project solutions, when properly performed and maintained, rarely require repeated involvement by corrosion specialists like Counterclaim Plaintiffs for any given project. Therefore, loss of economic opportunity with any client denies good will and profits that may not arise for more than a decade, if not longer.

(Doc. No. 16 at 18). Assuming as true, as this Court is bound to do at this stage of the proceeding, that the Defendants did lose "present and future business opportunities, present client negotiations, [and] good will," this still does not sufficiently plead special damages. These allegations do not demonstrate specific contracts or sales that the Defendants lost because of CPT's actions. *See TMIRS*, CIV.A. H-09-2858, 2010 WL 3063659, at *5. Consequently, the Court dismisses this counterclaim as well.

### 3. Defamation

The Defendants contend that the action taken by CPT constitutes not only business disparagement, but also defamation. In Texas, "[c]orporations and other business entities have reputations that can be libeled apart from the businesses they own, and such entities can prosecute an action for defamation in their own names." *Lipsky*, 460 S.W.3d at 593. "Moreover, a corporation or other business entity asserting a claim for business disparagement may also assert additional or alternative claims for defamation to recover non-economic general damages such as injury to reputation that are not recoverable on a business-disparagement claim." *Id.* The elements of a

11

defamation claim are "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *Id.* Where, as here, the plaintiff (or counterclaim plaintiff) is not a public figure or official, the "requisite degree of fault" is only negligence. *Id.* Further, when the alleged statements are defamatory per se, including those that "adversely reflect on a person's fitness to conduct his or her business or trade," general damages are presumed and the plaintiff need not prove any specific loss. *Id.* at 596.

The damages that the Defendants alleged from their defamation counterclaim are identical to those alleged from their business-disparagement claim. (*Compare* Doc. No. 16 ¶¶ 143, 147). This Court has already held that these allegations are insufficient to plausibly allege special damages. (*See* Section III.2). The question, then, is whether the alleged defamatory statements by CPT would constitute defamation per se such that the Defendants did not have to plead special damages to proceed. *See Lipsky*, 460 S.W.3d at 595–96 (explaining that, after the Court found plaintiff had not sufficiently proved special damages, the next inquiry was whether defendant's statements were defamatory per se, thus relieving plaintiff from obligation to prove special damages).

The facts alleged by Defendants regarding the defamatory statements by CPT are as follows:

> On or around July 15, 2020, CPT contacted representatives of several Counterclaim Plaintiffs' vendors and customers, including but not limited to, Schmidt Manufacturing, The Warehouse Rental and Supply and PolyLab. CPT contacted these representatives to inform them of this Complaint and on information and belief, CPT forwarded a copy of their Complaint to at least one if not all of those representatives. In CPT's communications with these third parties, CPT claimed false and disparaging information about Counterclaim Plaintiffs' businesses. Specifically, CPT asserted allegations against Counterclaim Plaintiffs' businesses regarding theft and underhanded business tactics without regard for the truth of these statements. CPT knows these allegations are yet untried before a

12

> finder of fact and are contrary to even the evidence presented by CPT in this Complaint. Therefore, CPT published false and disparaging statements, with reckless disregard for the truth of these statements, about Counterclaim Plaintiffs' businesses.

(Doc. No. 16 ¶ 146). CPT contends that these allegations are insufficient to plead a defamatory statement at all, much less a defamatory per se statement. (*See* Doc. No. 19 at 20–21). First, CPT argues that, to the extent the Defendants rely on the Complaint as containing defamatory statements, such statements were privileged as being made in connection with a legal proceeding. (*Id.*) (citing *DirecTV, Inc. v. Nguyen*, No. H-03-1757, 2003 WL 27381297, at *3 (S.D. Tex. Oct. 8, 2003)) ("Statements made in connection with a legal proceeding are absolutely privileged and not actionable in defamation."). Then, according to CPT, the Defendants are left only with a "naked assertion that CPT purportedly made statements against Defendants' businesses regarding 'theft and underhanded business tactics.'" (*Id.* at 21).

The Defendants respond that CPT made "defamatory statements separate and apart from the allegations contained within Plaintiff's Complaint" and that "[n]o one is afforded absolute immunity from liability for statements made to others simply because a portion of the conversation references privileged statements." (Doc. No 20 at 15). Further, the Defendants assert that "discovery needs to be had to fully develop the truths regarding this matter." (*Id.*).

The most specific fact the Defendants allege is that "CPT asserted allegations against Counterclaim Plaintiffs' businesses regarding theft and underhanded business tactics." (Doc. No. 16 ¶ 146). Even though such statements may "adversely reflect on [Defendants'] fitness to conduct [their] business or trade," *Lipsky*, 460 S.W.3d at 596, the Defendant's allegations are too conclusory and vague. They fail to allege a "specific defamatory statement" as required by Texas law. *Stukes v. Nehls*, 614 Fed. Appx. 792, 794 (5th Cir. 2015), as revised (Sept. 2, 2015). The Defendants' allegations are insufficient to state a plausible claim for defamation. *See Desperado*

13

*Motor Racing & Motorcycles, Inc. v. Robinson*, CIV.A. H-09-1574, 2010 WL 2757523, at *3 (S.D. Tex. July 13, 2010) ("Robinson's scant factual allegations that he falsely was called a 'thief' might be enough for the Court to infer the 'possibility' of misconduct. The allegations are insufficient, however, for the Court to draw a reasonable inference that Desperado Motor Racing and/or Nicklus are liable for the alleged misconduct or that Robinson is entitled to relief."). The Defendants' defamation counterclaim is therefore dismissed.

### IV. Conclusion

For the foregoing reasons, the Court grants Plaintiff CPT's motion to dismiss the Defendants' counterclaims. The Defendants' counterclaims are hereby dismissed in their entirety. Defendants are given permission to re-plead their state-law counterclaims to cure their deficiencies if they do so by November 20, 2020.

Signed at Houston, Texas, this 22nd day of October, 2020.

Andrew S. Hanen
United States District Judge

14