# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG UK, LTD., REEDHYCALOG, LP, NATIONAL OILWELL VARCO, LP,<br><br>    *Plaintiffs/Counter-Defendants*,<br>v.<br><br>SCHLUMBERGER TECHNOLOGY CORP., SMITH INTERNATIONAL, INC.; ULTERRA DRILLING TECHNOLOGIES, L.P., ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC.; VAREL INTERNATIONAL ENERGY SERVICES, INC., and VAREL INTERNATIONAL INDUSTRIES, L.P.,<br><br>    *Defendants*. | Civil Action No. 4:23-cv-00730 |

# EXHIBIT K

## TO

## PLAINTIFFS' MOTION TO DISMISS AND REMAND

No. 19812
Court of Civil Appeals of Texas, Dallas

# Reich v. Reed Tool Co.

582 S.W.2d 549 (Tex. Civ. App. 1979)
Decided Jun 18, 1979

No. 19812.

May 14, 1979. Rehearing Denied June 18, 1979.

Appeal from the 15th District Court, Grayson County, R. C. Vaughan, J. *550

Jack G. Kennedy, C. Larry Cain, Kennedy, Minshew, Evans, Campbell Cain, Sherman, for appellants.

A. H. Evans, William L. LaFuze, Vinson Elkins, Houston, for appellee.

Before GUITTARD, C. J., and STOREY and HUMPHREYS, JJ.

GUITTARD, Chief Justice.

This suit was brought for commissions alleged to be due under a written contract for sale of an invention and the inventor's rights to a patent, which had been applied for but not issued when the contract was signed. One of the defenses was that the inventor had "misused" the patent by requiring the purchaser to pay commissions on sales of equipment not covered by the patent applied for. After a trial and verdict, the judge disregarded findings favorable to plaintiffs and rendered judgment for defendant based on a single finding relating to the defense of patent misuse. Plaintiffs appeal on the ground that the court erred in applying the "patent misuse" doctrine under the circumstances of this case and also on the ground that the issue of misuse was not correctly submitted. We affirm on the ground that the doctrine applies, even though the inventor's right to the patent was only prospective when the contract was signed, and that the finding on the issue in question is sufficient, in the absence of objection, to support the judgment.

The inventor in this case was plaintiff Wendell Reich, who was in the business of making and selling rotary earth-drilling *551 equipment for water wells. Reich had invented a type of mobile rotary drill and had applied for a patent. While application for this patent was pending, Reich and plaintiff Robert Paul, a business associate, entered into negotiations with Texoma, Incorporated, a subsidiary of defendant Reed Tool Company, for sale of this invention and the inventor's rights under the patent application. These negotiations resulted in the contract in question. The contract provides for sale of the invention and prospective patent rights in consideration of certain payments, including the commissions now claimed. These commissions are payable at specified rates on sales of the "product," defined in the contract as including not only the invention covered by the claims of the patent application, but also other types of rotary earth-drilling equipment. The crucial language of the definition covering such other types of equipment is paragraph (1)(d), as follows:

(A)ny other rotary earth-drilling equipment manufactured and sold by TEXOMA during the continuance of this Agreement, provided, however, that this Sub-section (d) shall not be deemed to apply to or to include such equipment which is the subject of either a bona fide and genuine patent application filed by any third party(ties) or covered by United States Letters Patent owned by TEXOMA or any third party(ies) and contains only such other elements or features which are within the public domain. (Emphasis added.)

The contract continues for a period of five years or until three hundred "products" shall be sold or $1,500,000 in commissions paid. During this period Texoma is given the right to an injunction restraining Reich and Paul from competing in the manufacture and sale of rotary drilling machines. The contract further provides that if Texoma should decide to terminate the manufacture and sale of "products" as defined in the contract, it should have no further liability, but must give notice to Reich and Paul, who have the option to require a reassignment to them of all rights under the patent application and any patent issued on it.

After the contract was signed, Reich discontinued his own business and entered the employment of Texoma, which was succeeded by defendant Reed Tool Company. Neither Texoma nor defendant had previously been in the business of making and selling earth-drilling equipment. When Reich's patent application was granted, the patent was issued to defendant as assignee. Defendant made and attempted to sell several of the machines, but according to defendant's evidence, the venture was not a financial success. Defendant then gave Reich and Paul notice that it was terminating manufacture and marketing of the "product." Reich exercised his option to require a reassignment of the patent, and defendant made such a reassignment. Defendant did not, however, terminate the business of manufacture and sale of earth-drilling equipment. Instead, it undertook the manufacture and sale of another machine, known as the "Stonekiller," on which an earlier patent had expired. Defendant took the position that this machine was not within the definition of "product" in section (1)(d) of the contract. Reich and Paul, on the other hand, asserted that the Stonekiller was within this definition, and they brought this suit to recover commissions on these sales at the rates provided in the contract. Defendant pleaded also that their agreement to make payments on the sale of machines not covered by the Reich patent was a misuse of the patent and of the patent application and, therefore, unenforceable.

## 1. Misuse of Patent Application

Patent misuse is a doctrine developed by the federal courts to prevent the holder of a patent from using his statutory and constitutional monopoly power to coerce economic benefits not directly flowing from the rights granted by the patent. For example, the holder cannot tie sales of a patented device to purchase of unpatented supplies. Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942). He cannot exact royalties for *552 the use of a patented invention after the patent expires. Brulotte v. Thys, 379 U.S. 29, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964). Also, he cannot control the resale price of patented products. Straus v. Victor Talking Machine Co., 243 U.S. 490, 37 S.Ct. 412, 61 L.Ed. 866 (1917).

Appellants Reich and Paul contend that the doctrine of patent misuse does not apply to the sale of an application for a patent, as distinguished from the sale of a patent already issued, because until the patent is issued the applicant has no monopoly power subject to abuse. On this question the authorities are inconclusive.

Appellants rely principally on Heltra, Inc. v. Richen-Gemco, Inc., 395 F. Supp. 346 (D.S.C. 1975), Rev'd on other grounds 540 F.2d 1235 (4th Cir. 1976). Heltra, as we view it, does not bear on this point. Although the contract in Heltra was similar in some respects to that in this case, the

question was not one of patent abuse, but rather whether one who had purchased the rights to an invention, including the rights under a patent application, could deny liability for the purchase money on the ground that the patent, when later issued, was invalid. Heltra stands for the rule that in this situation the validity of the patent is immaterial to the purchaser's liability. There was no provision in the Heltra contract for payments based on sales of other devices, nor was patent abuse raised as a defense to the suit.

The cases cited by appellee lend some support to appellee's position, though none presented the exact question now before us. Appellee contends that the rationale of the misuse doctrine is equally applicable to agreements involving prospective or inchoate patent rights, such as those flowing from patent applications, as to agreements involving issued patents. It relies on the test of patent misuse laid down by the Supreme Court in Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969), and on decisions of federal trial courts and courts of other states. The Zenith case concerned issued patents rather than patent applications. Hazeltine owned patents on television sets which it offered for license to Zenith on condition that Zenith pay royalties on all television sets manufactured, regardless of whether any of the inventions subject to Hazeltine's patents were employed. Zenith refused the offer, and Hazeltine sued Zenith for infringing some of its patents. The Supreme Court held in favor of Zenith on its defense that Hazeltine's offer constituted patent misuse. The Court said:

We hold that conditioning the grant of a patent license upon payment of royalties on products which do not use the teaching of the patent does amount to patent misuse. 395 U.S. at 135, 89 S.Ct. at 1583. And just as the patent's leverage may not be used to extract from the licensee a commitment to purchase, use, or sell other products according to the desires of the patentee, neither can that leverage be used to garner as royalties a percentage share of the licensee's receipts from sales of other products. In either case, the patentee seeks to extend the monopoly of his patent to derive a benefit not attributable to use of the patent's teachings. 395 U.S. at 136, 89 S.Ct. at 1583. . . . But we discern no basis in the statutory monopoly granted the patentee for his using that monopoly to coerce an agreement to pay a percentage royalty on merchandise not employing the discovery which the claims of the patent define. 395 U.S. at 140, 89 S.Ct. at 1585.

Appellee relies on two state-court cases involving contracts made when applications for patents were pending, but in each the misuse doctrine was held inapplicable under the Zenith test because the evidence failed to show that the patent applicant had conditioned his assignment or license or prospective patent rights on payments unrelated to sales of products covered by the patent application. Mutchnik v. M. S. Willett, Inc., 274 Md. 610, 337 A.2d 72 (1975); Richards v. Liquid Controls Corp., 26 Ill. App.3d 111, 325 N.E.2d 775, 784 (1975). In Mutchnik, the court observed that when the agreement was negotiated, no patent had been issued and at most the licensee's bargaining *553 position was influenced by the existence of the pending patent application.

Appellee relies also on three federal district court opinions. In Key Pharmaceuticals, Inc. v. Lowey, 373 F. Supp. 1190, 1193 (1974), the grantee of an exclusive license to make certain pharmaceuticals according to a process described in a patent

application sued to rescind the agreement and was allowed by the court to amend its complaint to add a count alleging misuse in that the licensee was required to pay royalties on specified products, regardless of whether produced by the processes described in the patent application. The opinion does not discuss application of the misuse doctrine to a patent application, but seems to assume that it would apply if the allegations should be supported by proof.

The other two federal district court cases were patent infringement suits in which the patentees were held disqualified to sue on the ground that they had misused their patents by making license agreements with third parties tending to restrict sales of similar products. Krampe v. Ideal Industries, Inc., 347 F. Supp. 1384, 1386-87 (N.D.Ill. 1972); Anderson Company v. Trico Products Corp., 237 F. Supp. 834, 838 (W.D.N.Y. 1964). In each of these cases the agreements had been made when the application for the patent was pending, but the plaintiff had undertaken to enforce the restriction after the patent had been issued to him. In Krampe the court observed that the plaintiff "possessed inchoate rights" in the invention from the time he filed his application and held:

> Accordingly, this Court finds that plaintiff's use of the rights which he possessed in his invention to secure an additional right to which he was not entitled, combined with his maintaining the objectionable terms of the contract after these rights had ripened into a patent monopoly, constitutes misuse of his patent for the cable stripper.

Appellants point out that in the present case, unlike the plaintiffs in Krampe and Anderson, Reich never owned the patent in question and the parties never contemplated that he would because, by the contract in question, he assigned all his rights under the applications to Texoma, to whose successor the patent was issued pursuant to the assignment. Appellants also argue that there could be no misuse of the monopoly rights granted by the patent in question here because an applicant has no monopoly until the patent is issued, and, since no patent was ever issued to Reich, he could not be guilty of misuse. We do not agree that an applicant who assigns his prospective patent rights can never be guilty of misuse. An inventor who has applied for a patent on a marketable invention may indeed have bargaining leverage to exact benefits he could never get if he did not have a patent application with a fair prospect of success. If he conditions the sale of his prospective patent rights on a promise of payments based on sales of unrelated products, he is using his prospective monopoly power to obtain benefits beyond the scope of his prospective monopoly. He should be in no better position than if the patent had already been issued.

Neither is it essential to the misuse doctrine that the inventor continue to use the leverage of his monopoly after the patent has been issued. If he has obtained a promise of benefits unrelated to the patent on condition of an assignment of his patent rights, whether actual or prospective, such a promise is within the rationale of the misuse doctrine, as stated by the Supreme Court in Zenith. Consequently, we hold in this case that the defense of patent misuse is available, even though Reich had no patent when he sold his invention and his prospective rights under the patent application.

## 2. Evidence and Findings of Patent Misuse

Appellants contend further that even if the misuse doctrine is available as a defense to a suit on a contract made before the patent is issued, no misuse is established by the evidence and verdict in this case. They argue that a fact issue on misuse is made by the evidence in this case, and that appellee failed to obtain a jury finding that would support the judgment in appellee's favor. *554

554

We agree with appellants that a fact issue is raised. Appellee's evidence tends to show that Texoma's representatives proposed the contract without paragraph (1)(d), which brings other drilling equipment manufactured and sold by Texoma within the definition of "products" on which commissions must be paid. Appellee's witnesses testified that Reich insisted on this provision and that Texoma agreed to it only because Reich's rights to the invention and his prospective patent rights could not be obtained on any other terms. On the other hand, appellants' evidence tended to show that the patent application was not a primary item in the negotiations leading to the contract. Appellants assert that appellee was eager to get into the shallow-well drilling equipment business in which Reich was already established, that appellee, through its subsidiary, Texoma, not only bought the invention and the patent application from Reich, but took over his business, obtained his services, and secured his agreement not to compete. Thus, according to appellants, it was reasonable and proper for the parties to agree on a consideration that included commissions on sales of equipment, whether or not covered by the claims of the patent application assigned in the contract. In response appellee points out that the contract by which Reich entered appellee's employment and agreed not to compete was a separate transaction supported by an independent consideration, and it insists that the agreement in the contract in question to pay commissions on unrelated products must be taken as part of the consideration for Reich's assignment of his prospective patent rights.

This question is not resolved by the provisions of the contract itself, as both parties agree. In the case of a patent license, it is not Per se a misuse to measure the consideration by a percentage of the licensee's total sales, including sales of products not within the patent. Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., 339 U.S. 827, 834, 70 S.Ct. 894, 94 L.Ed. 1312 (1950). Misuse occurs when the patentee conditions the license on payments based on sales of other products, and thus uses the leverage of his monopoly to coerce an agreement to make payments based on sales of merchandise not employing the discovery which the claims of the patent define. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 139-40, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). Consequently, the negotiations leading up to the contract are relevant to determine whether improper conditioning has occurred, and the party asserting misuse has the burden of proof. Mutchnik v. M. S. Willett, Inc., 274 Md. 610, 337 A.2d 72, 75-77 (1975). Determination of this issue requires a finding of fact. Glen Mfg., Inc. v. Perfect Fit Industries, Inc., 420 F.2d 319 (2d Cir. 1970).

Appellants insist that no such fact finding has been made in this case. The finding on which appellee relies to support its defense of misuse is the following:

> SPECIAL ISSUE NO. 2: Do you find from a preponderance of the evidence that Plaintiff Reich would not have entered into the agreement sued upon if Article (1)(d) thereof had not been included in the agreement?
>
> ANSWER: We do.

Appellants argue that this issue is evidentiary and that the answer is immaterial because the proper issue under Zenith and the other authorities above cited is whether appellants conditioned their assignment of patent rights on the payments promised; that is, whether plaintiffs used their patent power to compel insertion of paragraph (1)(d) in the contract. Appellants bring forward no objection to the issue as submitted. They assert that they had no burden to point out the defect in the issue because the burden was on appellee to obtain a finding establishing the defense of misuse.

We conclude that the issue as submitted and answered is sufficient, in the absence of objection, to support the defense of misuse. Though possibly subject to objection as evidentiary, it was submitted in connection with appellee's plea of patent misuse and gave notice to plaintiffs that an affirmative answer might be taken as a basis for a judgment sustaining that plea. *555 Consequently, appellants were required to point out any defect by a timely objection to the issue. Allen v. American Nat'l Ins. Co., 380 S.W.2d 604 (Tex. 1964). They could not wait until after judgment and then assert that the finding should be disregarded in rendering judgment. Lanphier Const. Co. v. Fowco Const. Co., 523 S.W.2d 29, 43 (Tex.Civ.App. Corpus Christi 1975, writ ref'd n.r.e.); Panhandle S. F. Ry. v. Friend, 91 S.W.2d 922, 930 (Tex.Civ.App. Austin 1936, writ ref'd). A complaint that an issue is evidentiary rather than ultimate is among those that are waived by failure to make a timely objection, and in the absence of such an objection, an issue subject to such a complaint may form the basis of a judgment. Weingarten, Inc. v. Scott, 456 S.W.2d 266, 271 (Tex.Civ.App. Houston (14th Dist.) 1970, no writ). Although in the cases cited the courts rested the waiver on the complaining party's failure to make a timely objection, the same rule, in our opinion, applies if an objection is made but is not brought forward on appeal as a ground for a new trial. Consequently, even if appellants objected to the issue in the trial court, they have waived it by not bringing it forward in their brief on this appeal as a ground for a new trial.

Although issue number two may be subject to objection, it bears directly on the defense of misuse. In Zenith the concept of "conditioning" a patent license is explained as "where the patentee refuses to license on any other basis and leaves the licensee with a choice between a license so providing and no license at all." 395 U.S. at 135, 89 S.Ct. at 1583. The same test has been applied to an assignment. Compton v. Metal Products, Inc., 453 F.2d 38, 46 (4th Cir. 1971). The jury found in answer to issue number two that Reich "would not have entered into the agreement sued upon if Article (1)(d) had not been included." This answer is equivalent to a finding that plaintiffs refused to assign their patent application on any other basis and left Texoma with a choice between an assignment containing article (1)(d) and no assignment at all. Appellants have not suggested any additional factual element that should have been submitted to establish that plaintiffs conditioned the assignment on Texoma's promise to pay commissions on sales of products not covered by the claims of the patent application. If any additional finding was necessary to establish the defense of misuse, such a finding must be deemed to have been made by the trial court in support of the judgment in the absence of objections to failure to submit the omitted component. Rule 279, Tex.R.Civ.P.; Kirk v. Standard Life Accident Ins. Co., 475 S.W.2d 570, 572 (Tex. 1972); Rogers v. Ellsworth, 501 S.W.2d 756, 757 (Tex.Civ.App. Houston (14th Dist.) 1973, writ ref'd n.r.e.). No such objection appears in the present record. We hold, therefore, that the answer to issue number two is material, that appellants waived any defect in it, and that the trial judge did properly base his judgment on it.

Affirmed.

casetext