# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG UK, LTD., REEDHYCALOG, LP, NATIONAL OILWELL VARCO, LP,<br><br>*Plaintiffs/Counter-Defendants*,<br><br>v.<br><br>SCHLUMBERGER TECHNOLOGY CORP., SMITH INTERNATIONAL, INC.; ULTERRA DRILLING TECHNOLOGIES, L.P., ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC.; VAREL INTERNATIONAL ENERGY SERVICES, INC., and VAREL INTERNATIONAL INDUSTRIES, L.P.,<br><br>*Defendants.* | Civil Action No. 4:23-cv-00730 |

## EXHIBIT M

## TO

## PLAINTIFFS' MOTION TO DISMISS AND REMAND

Nos. C8-86-1717, CX-86-1718
Minnesota Court of Appeals

# Regents of Univ. of Minn. v. Medical Inc.

405 N.W.2d 474 (Minn. Ct. App. 1987)
Decided Jul 15, 1987

Nos. C8-86-1717, CX-86-1718.

May 12, 1987. Review Denied July 15, 1987.

Appeal from the Court of Appeals, 382 N.W.2d 201. *475

475

Thomas Tinkam, Leslie J. Anderson, Dorsey Whitney, Minneapolis, for respondent.

Harold D. Field, Jr., Nancy C. Dreher, Robert P. Thavis, Leonard, Street Deinard, Minneapolis, Charles A. Bassford, Jr., Baker Bassford, P.A., Edina, for appellant. *477

477

Heard, considered and decided by FORSBERG, P.J., and RANDALL and STONE,– JJ.

– Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

476 *476

## OPINION

FORSBERG, Judge.

This is an appeal from the trial court's decision on patent issues remanded from this court on a prior appeal and from denial of a motion for a new trial.

The original action was brought by respondent Regents of the University of Minnesota (University) against appellant Medical, Incorporated (Medical) for royalties and specific performance under a patent license agreement. The patent was obtained by Robert Kaster in 1969.

The agreement licensing the patent to Medical was entered into on October 19, 1971, and amended November 20, 1975.

A jury trial was held from October 15 to November 30, 1984. The jury returned a verdict for the University, and judgment was entered accordingly. Medical subsequently appealed from the judgment, but prior to the hearing on appeal, moved the trial court for a new trial under Minn.R.Civ.P. 60.02(2), (3) and (6). The trial court denied relief based on lack of jurisdiction while the case was on appeal.

This court affirmed in part, reversed in part, and remanded the case to the trial court on February 11, 1986. The trial court subsequently denied Medical's motions for a new trial, and determined the remanded issue and a new issue concerning the calculation of royalties against Medical. We affirm.

## FACTS

The history of this case is outlined in *Regents of the University of Minnesota v. Medical, Inc.*, 382 N.W.2d 201 (Minn. Ct. App. 1986), and will not be repeated here.

Prior to the hearing on appeal from the trial court's judgment, Medical filed a Rule 60.02 motion with the trial court asking for a new trial. Medical claimed entitlement to a new trial because the trial judge had failed to recuse himself from the case even though his mother-in-law had been a Medical employee 8 years prior to this action, had been laid off, and had sued for and was denied worker's compensation. Medical served a notice to remove,

which motion was denied as moot since the case was on appeal. Medical then sought to remove the judge from further consideration of the case, which request was denied by the Chief Judge of Dakota County. This court denied Medical's motion to have the case remanded for consideration of its new trial motion. Medical then sought a writ of prohibition to prevent the judge from hearing the remanded issues, which was also denied by this court.

Medical also claimed entitlement to a new trial based on newly discovered evidence of perjury and destruction of subpoenaed documents by Robert Kaster, inventor and witness for the University at trial. Medical claimed to have discovered, from a former co-worker of Kaster's, that Kaster had stolen secret documents from Medical when he left the company in 1975 and had lied about the theft at his deposition. By way of affidavit, Kaster's co-worker claimed to have observed Kaster destroy stolen documents after he was ordered by the court to produce them.

An additional issue raised during pendency of the appeal concerned computation of royalty payments. After the trial Medical had been ordered to submit royalty reports to the University every six months. The University claimed that contrary to the terms of their contract, Medical had taken certain credits and deductions in three reporting periods, from August 1, 1984 to January 31, 1986. The University claimed it was owed $685,691 in post-trial royalties, while Medical contended its accounting procedure was accurate and reflected the amount owed as $31,348.

On remand from this court, the trial court considered Medical's Rule 60 motions, the issue of the license agreement grant-back provision and its effect on the scope of the Kaster patent, and the royalty calculation dispute. The trial court found for the University in all respects. *478

478

Medical moved for amended findings and for a new trial on these issues. Following denial of its motion by the trial court, Medical appealed to this court.

## ISSUES

1. Did the trial court err in denying Medical's Rule 60.02(2) motion for a new trial based on newly discovered evidence that the trial judge's mother-in-law was previously antagonistically involved with Medical, Inc.?

2. Did the trial court err in denying Medical's Rule 60.02(2), (3) and (6) motions for a new trial based on newly discovered evidence of Robert Kaster's alleged theft and destruction of subpoenaed documents and his subsequent perjury on this matter?

3. Did the trial court err in determining that assignment of the Huffstutler patent under the license agreement did not substantially extend the scope of the Kaster patent?

4. Did the trial court err in its construction of the provisions of the license agreement governing calculation of post-judgment royalties?

## ANALYSIS I.

Appellant moved for and was denied relief under Minn.R.Civ.P. 60.02 on the basis of newly discovered evidence that the trial judge failed to disclose that eight years ago his mother-in-law had worked for Medical, had been laid off, and had sought and was denied worker's compensation benefits. The trial court denied Medical's motions under 60.02(2), noting first that the matter of the alleged disqualification had been previously decided in the negative by both the Chief Judge of Dakota County and by the Court of Appeals. We agree with the trial court that there is no basis in Minn.Stat. § 542.16 (1986), Minn.R.Civ.P. Rules 63.02, 63.03 or 63.04, or Canon 2 or Canon 3 C(1) of the Code of Judicial Conduct for disqualifying the trial judge. The claim is without substance and its renewal specious.

II.

Appellant also moved for and was denied relief under Minn.R.Civ.P. 60.02(2), (3) and (6) on the basis of newly discovered evidence that Robert Kaster had stolen and destroyed secret documents from his former employer, Medical, which documents detailed advances in heart valve manufacturing made by Medical.

*60.02(2)*

Minn.R.Civ.P. 60.02(2) provides that a judgment may be vacated if a party discovers new evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.03. In order for relief from judgment to be granted where there is newly discovered evidence, such evidence must be relevant and admissible at trial, must be likely to have an effect on the result of a new trial, and must not be merely collateral, impeaching, or cumulative. *Gruenhagen v. Larson*, 310 Minn. 454, 459, 246 N.W.2d 565, 569 (1976). When reviewing denial of a motion for a new trial based on newly discovered evidence, this court need only determine whether the trial court's refusal to do so involved the violation of a clear legal right or a manifest abuse of judicial discretion. *Minder v. Peterson*, 254 Minn. 82, 92, 93 N.W.2d 699, 707 (1958), *quoting Vietor v. Costello*, 203 Minn. 41, 46, 279 N.W. 743, 745 (1938).

Appellant's motion for relief under Rule 60.02(2) was based on new evidence concerning Robert Kaster's alleged theft and destruction of documents stolen from Medical when Kaster left Medical's employ in 1975. The trial court denied the motion based on a determination that the evidence was not newly discovered, that even if it was newly discovered it would not have affected the outcome of the trial, and that in any event it was merely cumulative impeachment evidence. We agree.

In bringing its Rule 60.02(2) motion, Medical claimed that after the trial of this case, it obtained critical new information from a former employee of Angicor (a competitor of Medical and the company with which Kaster is now associated). 479 By way *479 of affidavit, Monte Lawrence stated that during the time of Kaster's deposition, he observed Kaster shredding and altering numerous documents he believed to have been stolen from Medical relating to the design, manufacture, and testing of Medical's heart valves.

Medical claimed that this information was newly discovered evidence. The trial court correctly noted that to require a new trial, the evidence must be such that with reasonable diligence could not have been found and produced at trial. Minn.R.Civ.P. 59.01(4) and 60.02(2). It has been held that diligence requires the use of available discovery tools as well as reasonable investigation efforts. *Brown v. Bertrand*, 254 Minn. 175, 184-85, 94 N.W.2d 543, 550 (1959).

From a review of the record, it is clear that Medical suspected Kaster had stolen secret documents as far back as 1983. As the trial court noted, Medical charged Kaster with theft of its documents in motions over a year before the case came to trial. In an affidavit accompanying Medical's motion for a protective order in 1983, Marshall Kreisel, then the president of Medical, stated that from his review of their files and current Angicor developments, he believed Kaster had stolen secret documents from Medical. Indeed, in his 1984 deposition, in response to a request to produce any stolen documents, Kaster denied he had any in his possession.

Medical's argument that the evidence was unobtainable because Kaster deceived Medical into believing it was unavailable is not acceptable. Once theft was suspected, further investigation was open to Medical and the assertion that investigations were suspended in reliance on representations from the very person suspected of the theft is unconvincing. What Medical has here is new evidence to support old suspicions; evidence that was available to it before trial through reasonable investigative efforts.

Case 4:23-cv-00730   Document 32-9   Filed on 03/29/23 in TXSD   Page 5 of 9

Regents of Univ. of Minn. v. Medical Inc.    405 N.W.2d 474 (Minn. Ct. App. 1987)

Medical argues that evidence showing that Kaster, in 1975, had stolen documents detailing Medical's advances in heart valve development constitutes significant affirmative evidence which, if known, would likely produce a different result in a new trial. Medical argues alternatively that even if it is only impeachment evidence, it should be allowed as a basis for a new trial because these are "extraordinary" circumstances warranting such relief.

Appellant argues that evidence of Kaster's theft would likely result in a different outcome at trial because it would contradict the University's argument and Kaster's testimony on the two main issues at trial: 1) whether the 1971 license agreement required Medical to pay royalties on "each and every" valve it sold, regardless of whether it was covered by the Kaster patent, and 2) whether the Kaster patent covered Medical's L-K, OS, and OC heart valves.

Appellant's argument reduces the entire issue of patent coverage to a contest of credibility between Marshall Kriesel, Medical's former president, and Robert Kaster. While Kaster was an important witness, he was only one of four witnesses who testified for the University on the patent coverage issue. Three expert witnesses testified as to the coverage of the patent, and indeed, as a result of motions by Medical to prevent Kaster from seeing confidential documents, Kaster was unable to testify on this issue as fully as the three experts. Far from being an issue of credibility, the question of the scope of the Kaster design was largely a technical one, to which experts on both sides testified. While credibility is, of course, always a factor, the ultimate question was not who was telling the truth, but rather, which descriptive, comparative analysis was more accurate.

On the issue of construction of the license agreement, the University argued at trial that because the Kaster patent was so valuable to Medical, in 1971, Medical agreed to a provision in the licensing agreement requiring them to pay royalties on "each and every" heart valve manufactured, regardless of whether it was covered by the Kaster patent. Medical argued that it would never have agreed to pay royalties on whatever valves it might develop in the future just to obtain license to the Kaster patent, claiming that the Kaster patent was *480 not that valuable since it needed substantial improvements. Medical argues that the new evidence of Kaster's theft of documents detailing advances made by Medical in heart valve manufacturing serves to refute the University's argument, while bolstering its own position because it is affirmative proof of the existence and need of improvements to the patent. While the relevance of the 1975 theft to the intent of the parties and the contract they entered into in 1971 is doubtful, even if this evaluation of the evidence is correct, it is merely cumulative of other evidence offered in support of Medical's position and not necessarily of such importance that a different outcome at trial would likely result.

While the evidence appears to have little, if any, substantive value, it may have had great impeachment value. Although newly discovered evidence that merely impeaches a witness is generally not the basis for a new trial, there are exceptions in the most extraordinary circumstances. *Albertson v. Albertson*, 243 Minn. 212, 217, 67 N.W.2d 463, 467 (1954); *Disch v. Helary, Inc.*, 382 N.W.2d 916, 919 (Minn. Ct. App. 1986), *pet. for rev. denied* (Minn. Apr. 24, 1986). Medical's assertion that they were denied an opportunity to properly impeach an important witness concerning a collateral matter does not present an extraordinary circumstance warranting the relief requested. Where, as in this case, there is doubt whether "newly discovered" evidence would materially affect the result or could have been discovered before trial by the exercise of reasonable diligence, this court cannot justifiably hold that the trial court abused its discretion in ruling as it did. *Albertson*, 243 Minn. at 217-18, 67 N.W.2d at 467.

*60.02(3)*

Minn.R.Civ.P. 60.02(3) provides that relief from a final judgment will be authorized if fraud, misrepresentation, or other misconduct of an adverse party exists. To prevail, the moving party must establish by clear and convincing evidence that the adverse party engaged in fraud or other misconduct which prevented it from fully and fairly presenting its case. *Stridiron v. Stridiron*, 698 F.2d 204, 206-07 (3rd Cir. 1983); *e.g., Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978).

Medical's request for relief under 60.02(3) was based on the "discovery" of Kaster's theft and destruction of Medical's secret documents detailing advances in heart valve manufacturing, and his subsequent pre-trial deposition perjury concerning the fact of the theft. The basis for relief under 60.02(3) is misconduct *of an adverse party. Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 832 (7th Cir. 1985).

Medical strains unsuccessfully to construe Kaster's involvement in this case so as to identify him as an adverse party. However, a person is not a party merely because he is directly interested in the result. *State v. Tri-State Telephone and Telegraph Co.*, 146 Minn. 247, 251, 178 N.W. 603, 604 (1920). A "party" is one who has the right to control the proceedings, examine and cross-examine the witnesses, and appeal from the order or judgment finally entered. *Id*. Robert Kaster was not a party to this action, he was merely a witness, and a party does not vouch for its witnesses. *Metlyn*, 763 F.2d at 833.

Equally strained is Medical's agency argument, which attributes Kaster's conduct to the University because Kaster was an employee of the University at the time of trial. The alleged theft of documents, however, did not occur while Kaster was employed by the University. Neither was there any showing that the subsequent misconduct was directed or known by the University, or in any way connected with Kaster's employment.

Rule 60.02(3) also requires that the misconduct have gone to the ultimate issue of the case. *See Harre v. A.H. Robins Co.*, 750 F.2d 1501, 1503 (11th Cir. 1985), *Simons v. Gorsuch*, 715 F.2d 1248, 1253 (7th Cir. 1983). The trial court determined that facts of document theft and related pre-trial perjury added no more to this action than the opportunity for impeachment. *481 We agree that, although strong impeachment evidence, the facts lend little to resolution of the substantive issues here. Further, it is doubtful whether Kaster's misconduct denied Medical the opportunity to fully present its case: since the misconduct here was not that of a party; it involved a merely collateral issue and had little to do with the ultimate issues of the case; Medical failed to use what evidence of misconduct it possessed to impeach the witness so accused; and there was substantial other evidence to support the verdict. Under the circumstances, the trial court did not abuse its discretion in denying relief under 60.02(3).

*60.02(6)*

Rule 60.02(6) provides that relief from the final judgment may be permitted for any reason justifying relief from the operation of the judgment. Relief under this rule requires a showing of "extraordinary circumstances," on the basis of a judicial balancing of the need for finality and the need to do justice in the individual case. *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950).

Medical argues that Kaster's perjury, document destruction, and violation of a court order to produce documents is gross misconduct which should not be rewarded by enforcement of this judgment. Relief under 60.02(6) is required here, Medical asserts, to maintain the integrity of the judicial process.

While Kaster's actions, if proved, are indeed reprehensible, the granting of a new trial on that basis places undue importance on the significance of his actions. First, these are not "extraordinary

Case 4:23-cv-00730   Document 32-9   Filed on 03/29/23 in TXSD   Page 7 of 9

Regents of Univ. of Minn. v. Medical Inc.    405 N.W.2d 474 (Minn. Ct. App. 1987)

circumstances" warranting relief from the judgment. A missed opportunity to adequately impeach one of many witnesses is not extraordinary. It is, in fact, relatively unimportant to the issues tried and result reached in this case. Second, one should question the effect on the integrity of the judicial process of subjecting the system to another trial of this case, where the only new evidence would be on an incidental, collateral matter. Third, while it may be unfortunate that Kaster stands to benefit from the University's success in this matter, justice does not require a new trial where the University sufficiently proved its case, and Kaster's conduct is currently the subject of a criminal investigation.

### III.

On remand after the first appeal, the trial court decided that Medical had not met its burden of proving that assignment of the Huffstutler patent to the University constituted patent misuse by substantially extending the claims of the Kaster patent.

Medical argues that the trial court erred in not finding patent misuse because the Huffstutler patent substantially enhances the physical and temporal scope of the Kaster patent. Medical's argument as to extension of the physical scope of the patent involves a comparative analysis presented for the first time on appeal. Medical offered no evidence or testimony to support this argument at trial. Since the trial court was instructed to look at the record and determine whether Medical had met its burden of proving patent misuse at trial, consideration of this new analysis is precluded.

In the first appeal, this court described the remanded issue as one "peculiarly within the factfinder's province." *Regents*, 382 N.W.2d at 211. Treating this as an issue of fact is particularly appropriate in this case, where the scope of a patent claim is disputed, and in need of explanation by resort to extrinsic evidence. *McGill, Inc. v. John Zink Co.*, 736 F.2d 666, 671-72 (Fed. Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984). The findings of the trial court on this issue of fact should not be disturbed unless they are clearly erroneous, either without evidentiary support or induced by an erroneous view of the law. *Reserve Mining Co. v. State*, 310 N.W.2d 487, 490 (Minn. 1981).

There is ample support in the testimony of three experts at trial to support the trial court's findings. In addition, as this court noted on the first appeal, the jury specifically found that the OC and OS (Huffstutler) *482 valves were covered by the Kaster patent. The jury finding that the valves were covered by the Kaster patent necessarily implies that the Huffstutler patent was merely an improvement patent and did not substantially extend the scope of the Kaster patent. This court was apparently disturbed, however, that there was no specific jury question on the issue of substantial extension of the Kaster patent, and refused to imply an answer. A technical comparison had been thoroughly provided at trial, and the jury determination that the physical scope of the Kaster patent covered the OC and OS (Huffstutler) valves is now supported by the trial court's specific findings as derived from the record.

The trial court did not address the temporal scope issue directly on remand. The University argues that the issue of temporal scope was not remanded and need not have been addressed by the trial court. Medical argues that a determination of patent misuse by extension of the scope of a patent necessarily included an analysis of possible temporal scope extension.

The trial court was to determine if there had been patent misuse by assignment of the Huffstutler patent to the University. As the court stated in the first appeal, if the grant-back provision is applied to substantially extend the scope of the patent monopoly, there is patent misuse. *Regents*, 382 N.W.2d at 211. One way the scope of the patent might be substantially enhanced is by extending

Case 4:23-cv-00730   Document 32-9   Filed on 03/29/23 in TXSD   Page 8 of 9

Regents of Univ. of Minn. v. Medical Inc.   405 N.W.2d 474 (Minn. Ct. App. 1987)

the temporal scope of the patent, that is, by extending the time under which royalties may be due. Expansion of the temporal scope of the patent by the grant-back provision is a legitimate concern, and the determination of which is both appropriate and necessary to a determination of whether there has been patent misuse.

The trial court determined that the Huffstutler patent was an improvement patent and, as such, within the scope of the Kaster patent. This results in the Huffstutler patent being assigned to the University under the grant-back provision in the license agreement. The Kaster patent and the license agreement expire in 1986. The Huffstutler patent expires in 1997. The problem, as seen by Medical, is that after the Kaster patent expires, the University will have the Huffstutler patent for eleven more years. Medical claims this results in patent misuse because it extends the patent monopoly beyond the expiration of the patent. Medical relies strongly on *Brulotte v. Thys Co.*, 379 U.S. 29, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964) for the proposition that using the leverage of a patent to obtain benefits for the patentee after the patent expires is patent misuse per se. What was determined illegal, and what *Brulotte* precludes, is the use by the patentee of a license agreement to extend the scope of the patent's monopoly past the date of the patent expiration. *Id*. at 33, 85 S.Ct. at 179. In *Brulotte*, this was achieved by contracting for payment of royalties after the patent had expired. *Id*. at 30, 85 S.Ct. at 178. The assignment of patents in license agreements has never been determined to be misuse per se. *Transparent-Wrap Machine Corp. v. Stokes Smith Co.*, 329 U.S. 637, 648, 67 S.Ct. 610, 616, 91 L.Ed. 563 (1947).

*Transparent-Wrap* makes clear that the mere existence of a grant-back provision, such as the one used by the University here, is not enough to prove patent misuse. Patent misuse exists only if the condition in the license agreement violates some other principle of law or public policy. *Id*. at 643, 67 S.Ct. at 614. For example, if the patent license agreement is used to violate antitrust laws by fixing prices or by conditioning a license on agreement to buy unpatented products, the agreement would be patent misuse. Again, if by "the use of patent pools or multiple licensing agreements the fruits of invention of an entire industry [were] systematically funneled into the hands of the original patentee," there would be patent misuse. *Id*. at 647, 67 S.Ct. at 616. There is nothing of this nature alleged in this case. Medical asserts that the mere assignment of the Huffstutler patent under the license agreement is patent misuse. Clearly, under *Transparent-Wrap*, this is incorrect. *483

There is no patent misuse in this case because, as this court has already determined, the Kaster patent and the license agreement expired in 1986. *Regents*, 382 N.W.2d at 212. When the Kaster patent expired in 1986, it passed into the public domain. The University has not required payment of royalties past this date. After the Kaster patent expires, the University will retain the Huffstutler patent. The parties will have to enter into a new license agreement at that time if Medical desires to use the Huffstutler patent. Medical agreed to this when it entered into the license agreement with the University, and there is no violation of law or public policy to prevent its enforcement.

## IV.

The final issue in this case involves a dispute concerning the calculation of post-judgment royalties.

During the pendency of the first appeal and remand of this case, Medical Incorporated was obligated to submit royalty reports to the University of Minnesota for three periods: August 1, 1984 to January 31, 1985; February 1, 1985 to July 31, 1985; and August 1, 1985 to January 31, 1986. The reports submitted to the University for those time periods claimed

Case 4:23-cv-00730   Document 32-9   Filed on 03/29/23 in TXSD   Page 9 of 9

Regents of Univ. of Minn. v. Medical Inc.    405 N.W.2d 474 (Minn. Ct. App. 1987)

1.) A credit for royalties or heart valve sales that were included by the jury in its damage award and thus included in the judgment, but which were subsequently returned to Medical's ownership, but not its physical possession;

2.) a 25% deduction for a "distributor inventory" credit, which resulted from a post-trial restatement of sales records for the period of Aug. 1, 1984 to Jan. 31, 1986 that reflected sales at the time of implant rather than at the time of transfer to the distributor, which method was not the previously agreed upon practice; and

3.) a deduction of $21,885.00 for patent filing costs incurred prior to July 31, 1984, which costs Medical had failed to include as part of its pre-trial itemized deductions and thus was precluded from introducing at trial.

All of these credits were denied by the trial court. As stated in *Creative Cookware v. Northland Aluminum Products*, 678 F.2d 746, 750 (8th Cir. 1982), the trial court's assessment of damages in patent infringement cases is given great deference. An appellate court must affirm the award if there is substantial record evidence to support it: the trial court's findings will not be set aside unless it is shown that they are clearly erroneous. *Milgo Electronic Corp. v. United Business Communications, Inc.*, 623 F.2d 645, 663 (10th Cir.), *cert. denied*, 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980). Balanced against this is the standard for review of documentary evidence cited by Medical, which states that where the critical evidence is documentary, an appellate court need not defer to the trial court's assessment of the meaning and credibility of that evidence. *In Re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 243 N.W.2d 302, 305 (1976).

It is clear that Medical's attempted credits and deductions are an improper attempt to 1) reduce the damage award as determined by the jury, not because it was unsupported by the evidence but because of subsequent events; 2) arbitrarily and unilaterally impose an entirely new accounting procedure from that agreed upon by the parties in their original agreement, and used by the parties previously; 3) deduct an amount which the trial court previously determined had been waived due to Medical's failure to include the amount in pre-trial itemizations, and which amount had not been allowed to be proved or presented at trial. Even if this court accepts the "de novo" standard of review, the trial court must be affirmed.

## DECISION

There is no basis in the law or in the code of judicial conduct to support appellant's request for disqualification of the trial judge.

Evidence of misconduct of a nonparty involving a collateral issue which was discoverable before trial did not present extraordinary *484 circumstances or warrant the granting of a new trial.

Assignment of the Huffstutler patent under the grant-back provision of the license agreement did not constitute patent misuse because it did not substantially extend the scope of the Kaster patent.

Royalty payment credits and deductions claimed by appellant were improper and inconsistent with the terms of the license agreement.

Affirmed.

 casetext