**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG | § | |
| UK, LTD., REEDHYCALOG, LP, | § | |
| NATIONAL OILWELL VARCO, LP, | § | |
| *Plaintiffs/Counter-Defendants,* | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00730 |
| | § | |
| SCHLUMBERGER TECHNOLOGY | § | |
| CORP., SMITH INTERNATIONAL, INC.; | § | |
| ULTERRA DRILLING TECHNOLOGIES, | § | |
| L.P., ROCKBIT INTERNATIONAL | § | |
| SUBSIDIARIES, LLC.; and VAREL | § | |
| INTERNATIONAL ENERGY SERVICES, | § | |
| INC., VAREL INTERNATIONAL | § | |
| INDUSTRIES, L.P., | § | |
| *Defendants/Counter-Plaintiffs.* | § | |

**VAREL DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO DISMISS AND REMAND [ECF Nos. 32 & 33]**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES  .............................................................. ii

TABLE OF EXHIBITS  ................................................................. vi

I. STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT  ........................1

II. SUMMARY OF ARGUMENT  ..........................................................1

III. NATURE AND STAGE OF THE PROCEEDING  .....................................2

IV. LEGAL STANDARDS  ...............................................................3

    A. Federal Question Jurisdiction in a Removed Action  .........................3

    B. Declaratory Judgment Case or Controversy  ................................4

    C. 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction  ...............5

V. ARGUMENT  .........................................................................5

    A. Removal Is Proper As Plaintiffs' Claims Arise Under Federal Patent Laws .....6

    B. Varel's Counterclaims Create Justiciable Controversies  ..................12

        1. There is a case or controversy over Varel's counterclaims for
            noninfringement of the '534 and '752 patents  .............................13

        2. Plaintiffs' concession that the 12 core patents are expired does not
            eliminate a case or controversy regarding counterclaims of
            unenforceability and patent misuse  ...............................16

    C. This Court Has Jurisdiction Over The *Brulotte* Issues In This Case As
       They Present Federal Questions  ...............................................17

    D. The Court Should Exercise Supplemental Jurisdiction Over
       Plaintiffs' Breach of Contract Claims That Will Involve The Same Issues
       As Varel's Counterclaims  ........................................................20

VI. CONCLUSION ......................................................................20

## TABLE OF AUTHORITIES

*Cases*

*3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372 (Fed. Cir. 2012)......................................5

*Adams v. Pearl River Valley Water Supply Dist.*, No. 21-60749,

    2022 WL 2829756 (5th Cir. July 20, 2022)............................................................5

*Ameranth, Inc. v. Chownow, Inc.*, 3:20-cv-02167-BEN-BLM,

    2021 WL 3686056 (S.D.Cal. Aug. 19, 2021) ................................4, 8, 9, 10, 11, 14

*Bayer CropScience AG v. Dow Agrosciences LLC*,

    680 F. App'x 985 (Fed. Cir. 2017)...........................................................................4

*Board of Regents Univ. of Tex. Sys. v. Mission Pharm. Co.*,

    2006 WL 8436935 (N.D. Tex. June 12, 2006) ................................................18, 19

*Boggild v. Kenner Prods.*, 853 F.2d 465 (6th Cir. 1988)...........................................19, 20

*Bonzel v. Pfizer*, 439 F.3d 1358 (Fed. Cir. 2006) ......................................................10, 11

*Bradley Corp. v. Lawler Mfg. Co., Inc.*,

    2020 WL 7027875 (S.D. Ind. Nov. 30, 2020) ........................................................20

*Brulotte v. Thys Co.*, 379 U.S. 29 (1964)....................................................2, 17, 18, 19, 20

*Cohn v. Compax Corp.*, 87 A.D.2d 364 (N.Y. App. Div. 1982) .......................................19

*Corrosion Prevention Technologies LLC v. Hatle*, 4:20-cv-2201,

    2020 WL 6202690 (S.D.Tex. October 22, 2020) (Hanen, J.)................................16

*Dell Techs. Inc. v. TiVo Corp.*, 392 F. Supp. 3d 704 (W.D. Tex. 2019) ............................8

*Duval Wiedmann v. Inforocket*, 374 Fed. App'x 482 (5th Cir. 2010) ..............................19

*Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231 (Tex. 2016).......................................................7

*Green v. Rocket Rsch. Corp.*, 12 Wash. App. 613; 530 P.2d 1340 (1975).......................19

*Griggs v. State Farm Lloyds*, 181 F.3d 694 (5th Cir. 1999)..............................................16

*Gunn v. Minton*, 568 U.S. 251, 133 S. Ct. 1059 (2013)..........................................3, 8, 9, 10

*Jang v. Bos. Sci. Corp.*, 767 F.3d 1334 (Fed. Cir. 2014)............................................4, 8, 10

*Kearns v. Chrysler Corp.*, 32 F.3d 1541 (Fed. Cir. 1994).................................................17

*Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 450 (2015) ....................................................19

*Kunkel v. Topmaster Int'l, Inc.*, 906 F.2d 693(Fed. Cir. 1990) ........................................11

*Landeros v. Transamerica Life Ins. Co.*, 2019 WL 9123531
    (S.D. Tex. Sept. 17, 2019) ........................................................................16

*Levi Strauss & Co. v. Aqua Dynamics Sys.*, 2016 WL 1365946
    (N.D. Cal. Apr. 6, 2016) ..................................................................8, 10

*Luckett v. Delpark* 270 U.S. 496 (1926) ............................................................................11

*Mays v. Pierce*, 203 S.W.3d 564 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ....7

*McLeod v. Crawford*, 176 Neb. 513 (Neb. 1964) ..............................................................19

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)..............................5, 12, 13, 14

*Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191 (2014) .........................15

*Montez v. Dep't of Navy*, 392 F.3d 147 (5th Cir. 2004).......................................................5

*Natec Inc. v. Deter Co.*, 28 F.3d 28 (5th Cir. 1994) ....................................................18, 19

*Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301 (Fed. Cir. 2011) ..........12, 13, 14, 15

*Preston v. Nagel*, 857 F.3d 1382 (Fed. Cir. 2017)...............................................................3

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001).....................................................5

*Regents of Univ. of Minn. v. Med., Inc.*, 405 N.W.2d 474 (Minn. Ct. App. 1987)............19

*Recif Res., LLC v. Juniper Capital Advisors, L.P.*, 2019 WL 5457705

    (S.D. Tex. Oct. 24, 2019).......................................................................4

*Reich v. Reed Tool Co.*, 582 S.W.2d 549 (Tex. Civ. App. 1979) ......................................19

*Scheiber v. Dobly Labs., Inc.*, 293 F.3d 1014 (7th Cir. 2002).....................................19, 20

*Shoffiett v. Goode*, 825 F. App'x 824 (Fed. Cir. 2020) ........................................................17

*Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635 (Fed. Cir. 2015) ...................3, 4, 12, 13

*Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981) .......................................................5, 9

*Wilson v. Sandford*, 51 U.S. 99 (1850) ...........................................................................11


<u>Other Authorities</u>

28 U.S.C. § 1295(a) ...............................................................................................................3

28 U.S.C. § 1367 .............................................................................................................1, 20

28 U.S.C. § 1338(a) ................................................................................................2, 3, 10, 19

28 U.S.C. § 1441 .......................................................................................................2, 3

28 U.S.C. § 1454 .....................................................................................................3, 4, 12, 19

28 U.S.C. § 2201(a); ..............................................................................................................5

Tex. Civ. Prac. & Rem. Code 37.001 *et seq.* .......................................................................5

### TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| 1 | Appendix of Cases |

Defendants Varel International Energy Services, Inc. and Varel International Industries, LLC (f/k/a Varel International Industries, L.P.), (collectively, "Varel"), respond in opposition to Plaintiffs' combined Motion to Dismiss and Remand [ECF Nos. 32 & 33] ("Motion").[1]

## I.    STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT

1.    Whether Plaintiffs' claim for alleged breach of patent license agreements and sought declaration of patent term involve federal questions over which this Court has jurisdiction.

2.    Whether there is a justiciable case of Defendants' declaratory judgment counterclaims challenged by Plaintiffs.

3.    Whether this Court should exercise supplemental jurisdiction over Plaintiffs' breach of the patent license agreements claims, if the Court determines Plaintiffs' claims do not invoke federal question or patent question jurisdiction over said claims.

## II.    SUMMARY OF ARGUMENT

This Court should deny both of Plaintiffs' Motions as all of the claims in this case arise under the patent laws of the United States and invoke this Court's jurisdiction. Further, this Court should maintain this case under its original and exclusive jurisdiction as all of the claims and issues are inextricably intertwined with issues of patent law such that the outcome of the claims of one defendant group will undoubtedly directly affect the other parties. Alternatively, should the Court find that any of Plaintiffs' claims are not federal questions, the Court should nevertheless exercise its supplemental jurisdiction under § 1367, as remanding Plaintiffs' claims would create the potential for inconsistent rulings, unnecessary duplication of the proceedings, and inefficient use of judicial resources.

---

[1] Sections I, III-IV, and VI of this Response are substantially similar to the same sections contained in the contemporaneously filed responses by the SLB/Smith and Ulterra Defendants. Sections II and V are similar except that in them Varel analyzes the specific language of the Varel Patent License Agreement and its specific counterclaims.

Plaintiffs argue that because they did not allege patent *infringement* claims that there is no question of federal patent law under 28 U.S.C. § 1338(a). Motion, p. 2. This is patently incorrect. Plaintiffs' alleged claims for breach of the patent license agreements requires them to show that a valid and enforceable contract exists and under those agreements they must also show that Varel practices the alleged Licensed RH Patents, namely U.S. Patents 7,568,534 (the "'534 patent") and 8,721,752 (the "'752 patent"). This is because the patent license agreement grants a license *under* the "Licensed RH Patents". Plaintiffs cannot and will not be able to make such a showing, as Varel does not practice the '534 patent, nor the '752 patent, which are the only patents Plaintiffs have identified as being at issue in this case. Further, Varel's counterclaims invoke this Court's jurisdiction under the present state of the law regarding under 28 U.S.C. §§ 1338 and 1441. Additionally, Varel's counterclaims include demands for declaratory judgments that Plaintiffs' attempts to enforce the patent license agreement after the expiration of the 12 core patents constitutes *per se* patent misuse, illegal tying, anti-trust rendering any remaining patents under the patent license agreement unenforceable. *See Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964).

Varel's declaratory judgment counterclaims are not speculative or ethereal. Plaintiffs' present conduct necessitates the assertion of Varel's counterclaims. Should Varel prevail on any of its counterclaims, then there is no breach of the patent license agreement, and no royalties would be owed.

## III.   NATURE AND STAGE OF THE PROCEEDING

On May 13, 2022, Plaintiffs Grant Prideco, Inc., ReedHycalog UK, Ltd., ReedHycalog, LP and National Oilwell Varco, LP (collectively, "Plaintiffs") filed their Original Petition against Schlumberger Technology, Corp. ("SLB") and Smith in the 11th Judicial District Court of Harris County, Texas. ECF No. 1-2, Ex. B.1. On February 6, 2023, Plaintiffs filed a Second Amended Petition (the "Petition") against SLB and Smith and added Ulterra and Varel. ECF No. 1-2, Ex.

B.4. On February 27, 2023, SLB, Smith, Ulterra, and Varel answered the Petition and filed their original counterclaims. ECF No. 1-2, Exs. B.5–B.8 (Answers and Counterclaims). That same day, SLB/Smith and Ulterra filed a Notice of Removal, which Varel joined, removing the case to this Court. ECF No. 1 (Notice of Removal). On March 29, 2023, Plaintiffs filed the Motion to Dismiss and Remand presently at issue. ECF Nos. 32 and 33.

## IV.   LEGAL STANDARDS

### A.   Federal Question Jurisdiction in a Removed Action

Removal of a state court case to the United States District Court for the district and division in which the case was filed is proper if the case falls within the "original jurisdiction" of the federal court. 28 U.S.C. § 1441(a). In 2011, Congress "made three changes in the AIA [America Invents Act] to address federal jurisdiction of patent claims: (1) 28 U.S.C. § 1338(a) clarified that state courts had no jurisdiction over 'any claim for relief arising under any Act of Congress relating to patents'; (2) the Federal Circuit's exclusive jurisdiction was extended to include cases with compulsory patent counterclaims, *see* 28 U.S.C. § 1295(a)(1); and (3) a provision was added to permit a party to remove to federal court a case in which any party asserts a patent claim, *see* 28 U.S.C. § 1454." *Preston v. Nagel*, 857 F.3d 1382, 1386 (Fed. Cir. 2017). Thus, federal question jurisdiction reigns over an action removed from state court in which (1) a plaintiff's claim arises under the patent laws *or* (2) a defendant's counterclaim raises a question of patent law.

As to the first basis for jurisdiction, "[a]n action 'aris[es] under' federal law: (1) where 'federal law creates the cause of action asserted,' and (2) in a 'special and small category of cases' in which arising under jurisdiction still lies.'" *Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635, 645 (Fed. Cir. 2015) (quoting *Gunn v. Minton*, 568 U.S. 251, 258, 133 S. Ct. 1059, 1064 (2013)). "For this second category of cases, 'federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution

in federal court without disrupting the federal-state balance approved by Congress.'" *Id.* For example, a plaintiff's claim for breach of contract may raise federal patent issues. *See Jang v. Bos. Sci. Corp.*, 767 F.3d 1334, 1335, 1337 (Fed. Cir. 2014) ("the disputed federal patent law issues presented by Jang's well-pleaded complaint ['for breach of contract and other various state law claims'] are substantial…."); *see also Bayer CropScience AG v. Dow Agrosciences LLC*, 680 F. App'x 985, 990 (Fed. Cir. 2017).

As to the second basis for jurisdiction, the amendments to the AIA "were intended to provide federal courts … with jurisdiction over claims arising under the patent laws *even* when asserted in counterclaims, rather than in an original complaint." *Vermont*, 803 F.3d at 643–44. To determine whether a counterclaim provides federal jurisdiction, a court asks two questions. *Id.* at 643. First, whether the counterclaim is compulsory, which "turns on whether the counterclaim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." *Id.* at 644. Second, whether the counterclaim arises under the federal patent laws. *Id.* Examples of counterclaims that arise under the federal patent law are questions of patent invalidity and infringement. *Id.*; *Jang*, 767 F.3d at 1337–38; *see also Ameranth, Inc. v. Chownow, Inc.*, 3:20-cv-02167-BEN-BLM, 2021 WL 3686056, at *1 (S.D.Cal. Aug. 19, 2021) ("Claims for patent invalidity qualify as compulsory counterclaims in response to a claim arising under patent law."). Upon removal under Section 1454, the entire action is removed, including claims not subject to federal question, and the Court may exercise supplemental jurisdiction over those claims. *Recif Res., LLC v. Juniper Capital Advisors, L.P.*, 2019 WL 5457705, at *3 (S.D. Tex. Oct. 24, 2019) (exercising supplemental jurisdiction over state law claims in case removed under Section 1454).

**B.    Declaratory Judgement Case or Controversy**

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations

of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see also* Tex. Civ. Prac. & Rem. Code 37.001 *et seq.* (Texas Uniform Declaratory Judgments Act). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). "Whether an actual case or controversy exists so that a district court may entertain an action for a declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law." *See 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012).

### C.    12(b)(1) Motions to Dismiss for Lack of Subject Matter Jurisdiction

"[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the [party asserting jurisdiction] cannot prove any set of facts in support of his claim that would entitle [that party] to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (internal citation omitted). "When considering a Rule 12(b)(1) motion, a district court may go beyond the pleadings to affidavits and other evidence to determine its jurisdiction." *Adams v. Pearl River Valley Water Supply Dist.*, No. 21-60749, 2022 WL 2829756, at *2 (5th Cir. July 20, 2022) (citing *Williamson v. Tucker*, 645 F.2d 404, 413–14 (5th Cir. 1981)). "[W]here issues of fact are central both to subject matter jurisdiction and the claim on the merits, … the trial court must assume jurisdiction and proceed to the merits." *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004).

## V.    ARGUMENT

From 2006 to 2008, Plaintiffs were engaged in a patent assertion campaign in which they sued numerous drill bit and cutter providers for allegedly infringing some or all of its 12 core patents related to polycrystalline diamond leached cutter technology used in drilling oil wells. *See*

ECF No. 1-2, Ex. B.8 (Defs.' Ans. & Cntclms.) ¶¶ 18-20. The Varel defendants were such drill bit and cutter providers, but the litigation never reached trial and Varel entered into a patent license with Plaintiffs ("the Patent License"). *Id.* ¶ 21, ECF No. 33-3, Ex. D. That license granted manufacturing and other rights to Varel under Plaintiffs' leached cutter patents. In exchange, for over a decade, Varel paid Plaintiffs significant royalties.. The last of the 12 core patents expired as of October 22, 2021. *Id.* ¶ 23. Accordingly, Varel ceased paying royalties. Notably, the technology of the 12 core patents is now in the public domain—any new entrant to the industry is permitted to use Plaintiffs' formerly patented leached cutter technology without paying Plaintiffs a single cent.

On February 6, 2023, Plaintiffs filed a Second Amended Petition (the "Petition") in Texas state court. The Petition asserted claims that all defendants (SLB, Smith, Ulterra, and Varel) breached their respective patent license agreements and continue to owe royalties. *See* ECF No. 1-2, Ex. B.4 (Petition). As to Varel, Plaintiffs allege that Varel owes royalties until the expiration of two non-core patents that it asserts are "Licensed RH Patents" under the Patent Licenses—U.S. Patent Nos. 7,568,534 (the "'534 patent") and 8,721,752 (the "'752 patent"). *Id.* at ¶¶ 30-37. Plaintiffs' new claims—and the compulsory counterclaims Varel asserted in response to those claims—necessarily raise federal patent law issues that must be litigated in this Court.

## A.    Removal Is Proper As Plaintiffs' Claims Arise Under Federal Patent Laws

Plaintiffs "seek both a declaration that Defendants' royalty obligations do not expire until 2031 and damages as a result of Defendants' failure to pay royalties after October 2021." ECF No. 1 (Notice of Removal) ¶ 13 (quoting ECF No. 1-2, Ex. B.4 (Petition) at 2). Plaintiffs base these claims—which are made against *all* Defendants—on the latest alleged expiration dates of the '534 and '752 patents, which they assert is in 2031. ECF No. 1-2, Ex. B.4 (Petition) ¶¶ 38–45. Plaintiffs also assert that these are "Licensed RH Patents." *Id.* Under the language of the Patent Licenses,

however, if Defendants do not practice any Licensed RH Patent after October 22, 2021, then no royalties are owed to Plaintiffs. Accordingly, and as further explained below, Plaintiffs' claims necessarily raise issues of patent infringement in addition to Schlumberger and Smith's counterclaims of patent invalidity and all Defendants' counterclaims of non-infringement, further Varel has sought declarations relating to *per se* patent misuse, illegal patent tying, and anti-trust violations, which also raise federal questions. *see* ECF No. 1-2, Ex. B.8, ¶¶ 54-57 (Varel Defendants' Answer and Counterclaims). It should be noted that Plaintiffs' have not sought dismissal of Varel's requests for declaratory judgments for *per se* patent misuse at ¶¶ 56-57. *Id.*, *see also* Motion at p. 18.

Plaintiffs assert that this case *merely* concerns a breach of contract. The first element of proving that cause of action is the existence of a valid and enforceable contract. *See Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). To be enforceable, a contract must address all of its essential and material terms with a reasonable degree of certainty and definiteness. *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016).

As Plaintiffs state in their opening summary, the term of the various alleged license patent agreements at issue in this case allegedly have a term "until the expiration of the last to expire Licensed RH Patents." ECF No. 32 & 33, p. 1. Necessarily, Plaintiffs will have to prove the existence of at least one Licensed RH Patent, that it is valid, infringed, and enforceable, and consequently prove the term or expiration date of such at least one Licensed RH Patent in order to provide certainty and definiteness to the alleged patent license agreement. As it currently stands, Plaintiffs are alleging the existence of two patents, U.S. Patents Nos. 7,568,534 (the "'534 Patent") and 8,721,752 (the "'752 Patent"). See ECF No. 32 & 33, p. 1, fn. 2. Plaintiffs, via attorney argument, also cite to a "foreign patent", but neglect to mention which foreign patent. ECF No. 32

& 33, p. 1, fn. 2. It is unclear what other patents Plaintiffs are alleging to exist that are part of the patent license agreement, but Plaintiffs fail to identify them in the Second Amended Petition and their Motion. Further, Varel is not sure if Plaintiffs are even able to ascertain and provide a certain identification of patents within the scope of the "Licensed RH Patents" due to the broad and ambiguous definitions used in the alleged patent license agreements. At any rate, Plaintiffs readily acknowledge that the Core Patents are expired, thereby depriving the Defendant licensees of any on-going value to the alleged licenses.

Additionally, Plaintiffs' claims for breach of contract arise under federal patent law at least because they require that Defendants practice the '534 or '752 patents. "[C]ourts have repeatedly held that a state-law-based breach of contract claim arises under federal law where it depends on a finding that the defendant has infringed the plaintiff's patents." *Levi Strauss & Co. v. Aqua Dynamics Sys.*, 2016 WL 1365946, at \*5 (N.D. Cal. Apr. 6, 2016) (collecting cases); *Jang*, 767 F.3d at 1337 ("[a]lthough this case arises from a [state law breach of contract] claim, rather than directly as a patent infringement claim, [plaintiff's] right to relief … depends on an issue of federal patent law – whether the [products] sold by [Varel] would have infringed [plaintiff's patents]") (internal quotation marks omitted)); *Dell Techs. Inc. v. TiVo Corp.*, 392 F. Supp. 3d 704, 718 (W.D. Tex. 2019) ("This court concludes that Dell's breach-of-contract claim necessarily raises a federal issue of patent infringement."). This determination turns on the application of the four-factor test set forth by the Supreme Court in *Gunn*—a test Plaintiffs entirely ignore in their brief. 568 U.S. 251 (2013); *Jang*, 767 F.3d at 1337–38; *Levi Strauss*, 2016 WL 1365946, at \*5–6; *Ameranth*, 2021 WL 3686056, at \*10. In deciding whether there is federal jurisdiction over Plaintiffs' claims, the Court is not limited to Plaintiffs' disputed interpretation of the Patent Licenses and instead may consider their contents, which Plaintiffs cite throughout their Petition

and motion, and attach as exhibits to their motion. *See Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) ("[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."); *Ameranth*, 2021 WL 3686056, at *10 ("As a jurisdictional cross-check, the Court may consider the plain language of the Agreements.").

Here, Plaintiffs' breach of contract claims necessarily raise a federal issue and thus *Gunn* factor 1 is satisfied. The Patent Licenses require that Varel operates under, *i.e.*, practice, a Licensed RH Patent in order for royalties to be paid. In Article III, titled "███████████████," the Patent Licenses state: "███████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████" ECF No. 33-3 ("Motion Ex."), Ex. D (Varel License) § 3.01. Because the '534 and '752 patents are the only alleged "Licensed RH Patents" that are unexpired, the current license grant must be "under" the '534 and '752 patents. This interpretation is supported elsewhere in the agreement, including ██████████████████████████████████), which identifies products that "█████████████████████" and are therefore not subject to royalties. ECF No. 33-3, Motion Ex. D (Varel Agreement), § 6.01(e). This makes sense and is reflected by the stated purpose of the agreement, *i.e.*, to "███████████████████████ ███████" and allow each party to "████████████████████████████████ ████████████████████" *Id.* at § 1.08.

Plaintiffs' breach of contract claim against Varel thus necessarily raises a federal question because it will "require the Court to interpret the Licensed Patents as well as whether Defendant performs activities falling within the scope of their claims," *i.e.*, infringement. *See Ameranth*, 2021 WL 3686056, at *10 (license granted "***under the Licensed Patents***" means that "if Defendant

performs activities … without implicating Plaintiff's Licensed Patents, Defendant would owe no royalties" (emphasis added)). This understanding is bolstered by Section 6.01(e) of the Varel Agreement, "███████████████████," where the parties agreed that certain PDC cutters and PDC Bits "██████████████████████" and ███████████████. Motion Ex. D (Varel Agreement) § 6.01(e).

The remaining *Gunn* factors are not addressed by Plaintiffs, but they too are satisfied in this instance. With respect to the second factor, the federal issue is actually disputed because, as explained above, it is necessary to Plaintiffs' breach of contract claim against Varel. For the third factor, the "the disputed federal patent law issues … are substantial and neither entirely backward-looking nor hypothetical." *Jang*, 767 F.3d at 1337 ("Jang's right to relief on the contract claim as asserted in the complaint depends on an issue of federal patent law—whether the stents sold by petitioners would have infringed Jang's patents."). The fourth factor is satisfied as shown by the fact that other federal courts have considered the same issue under a similar set of circumstances. *Jang*, 767 F.3d at 1337–38 (applying the *Gunn* test to conclude that "[c]ontract claims based on underlying ongoing royalty obligations" arose under an Act of Congress relating to patents and satisfied 28 U.S.C. § 1338(a)"); *Levi Strauss*, 2016 WL 1365946, at *5–6 (same); *Ameranth*, 2021 WL 3686056, at *10 (same).

Plaintiffs unsuccessfully make a pair of arguments to side-step the patent infringement issue raised by their Petition. *First*, Plaintiffs argue that it is "well-settled that breach of contract claims, even when they involve damages for unpaid royalties under a patent license or assignment, do not '***arise under***' an Act of Congress." Motion, p. 5. If that was ever correct, the AIA and *Gunn* have changed that outcome, as demonstrated by the above-cited cases. *Supra* 3-4. Plaintiffs cite two cases in support of their argument, one from 2006 and the other from 1926, both well before

the 2011 AIA amendments, and thus, even if those outdated cases were analogous (they are not), they would "have questionable application to the case at hand." *Ameranth*, 2021 WL 3686056, at *11. Plaintiffs first cite *Bonzel v. Pfizer*, 439 F.3d 1358, 1363 (Fed. Cir. 2006). *See* Motion, p. 5. *Bonzel*, however, was a breach of contract action in which the alleged breach was "the obligation ***to notify*** of patent infringement and share payment for infringement." *Bonzel*, 439 F.3d at 1363 (emphasis added). The dispute over notice, which was conspicuously replaced with an ellipsis on page five of Plaintiffs' Motion, is inapposite to the present dispute of whether Varel owes royalties for a license granted "***under***" two patents. Plaintiffs also cite two pages in *Luckett v. Delpark*, without explanation. To start, *Luckett* pre-dates "*the institution of the Federal Rules of Civil Procedure in 1938*," and thus fails to provide guidance to the instant case. *See Kunkel v. Topmaster Int'l, Inc.*, 906 F.2d 693, 696 (Fed. Cir. 1990) (noting *Luckett* is "old and now inapplicable Supreme Court precedent") (*emphasis added*). Further, *Luckett* looked to the "main and declared purpose" of the bill in equity and determined that the relief sought "depended altogether upon the rules and principles of equity, and in no degree whatever upon any act of Congress concerning patent rights." 270 U.S. 496, 503 (1926) (quoting *Wilson v. Sandford*, 51 U.S. 99, 102 (1850)). As stated above, Plaintiffs' claim for relief here is ***under*** two patents, which necessarily raises issues of whether Varel practices those patents' claims.

*Second*, Plaintiffs argue that because they alleged in their Petition that the contracts require payment based on invoicing "Licensed Drill Bits," not based on "'practice' of a Licensed RH Patent," that must be accepted as an established fact. Motion, pp. 6–7. Not so. As explained above, the patent license agreements state that the license is granted ***under*** the licensed patents, and thus requires practicing the patents. *Supra* 9-10. Even if the Court were not ready to make that determination, however, it does not need to for it to resolve this dispute over the Court's

jurisdiction. Rather, the parties' dispute over the license agreement "is sufficient to support declaratory judgment jurisdiction." *Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301, 1310 (Fed. Cir. 2011) ("whether the license agreement requires royalty payments to be tied to valid patent coverage—is sufficient to support declaratory judgment jurisdiction."); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 135–36 (2007) ("[E]ven if respondents were correct that the licensing agreement … precludes this suit, the consequence would be that respondents win this case on the merits—not that the very genuine contract dispute disappears, so that Article III jurisdiction is somehow defeated."). Plaintiffs cannot defeat jurisdiction simply on their interpretation of the patent license agreements.

## B.    Varel's Counterclaims Create Justiciable Controversies

Varel's counterclaims for non-infringement, *per se* patent misuse, illegal tying, anti-trust, and a declaration that no royalties are owed after October 22, 2021, create an independent basis for this Court to exercise federal question jurisdiction. ECF. No. 1-2 at Ex. B.8, ¶¶ 52-55. Through their Petition, Plaintiffs seek to enforce patent licenses against Varel based on the existence of two patents. Varel and other defendants claim, among other things, that these patents are not infringed[2], and therefore that no royalties are owed and there is no breach of contract. These counterclaims are compulsory—each "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," *Vermont*, 803 F.3d at 644, *i.e.*, Plaintiffs assert a breach of contract claim that requires a valid, enforceable, and infringed patent.

Under post-AIA 28 U.S.C. § 1454, this Court has "jurisdiction over claims arising under the patent laws *even* when asserted in counterclaims, rather than in an original complaint."

---

[2] The Schlumberger and Smith Defendants separately assert that the patents are invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112. ECF No. 29, ¶¶ 48-55 (Counts I and II).

*Vermont*, 803 F.3d at 643–44. Plaintiffs do not dispute that Varel's non-infringement and illegal patent tying, anti-trust, and patent misuse counterclaims (ECF. No. 1-2 at Ex. B.8, ¶¶ 52-55) are federal claims that ordinarily belong in this Court. *See* Motion, p. 14–15. Plaintiffs also do not move to dismiss Varel's counterclaims that they owe no royalties after October 22, 2021 (ECF. No. 1-2 at Ex. B.8, ¶¶ 48-49), which similarly require determining validity and non-infringement of the '534 and '752 patents. Nevertheless, Plaintiffs argue that Schlumberger and Smith's invalidity counterclaims and all Defendants' noninfringement counterclaims "lack the necessary justiciable case or controversy requirement" and seek to dismiss them pursuant to Rule 12(b)(1). Motion, p. 14-15. Because that argument has been squarely rejected by the Supreme Court in *MedImmune*, Plaintiffs' motion to dismiss must be denied, and thus Plaintiffs' motion to remand must also be denied.

      1.     There is a case or controversy over Varel's counterclaims for noninfringement of the '534 and '752 patents

Varel's claims for declaratory judgments that the only two unexpired alleged Licensed RH Patents are not infringed present a clear case or controversy for this Court to adjudicate under well-established Supreme Court and Federal Circuit precedent. In *MedImmune*, the Supreme Court held that a justiciable Article III case or controversy exists where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127. Thus, there was a case or controversy where a licensee "dispute[d] its obligation to make payments under the [] License Agreement because [it argued it] … does not infringe any valid claim of the [licensed] Patent". *Id.* at 123. Similarly, in *Powertech Tech. Inc. v. Tessera, Inc.*, the Federal Circuit held that there was a case or controversy where the licensee

alleged "that the terms of the license agreement do not require it to pay royalties for the [] chips if those chips do not infringe or … if the patent is invalid." 660 F.3d 1301, 1308 (Fed. Cir. 2011).

Similarly, Varel seeks declarations that the '534 and '752 patents are not infringed, ECF No. 1-2, Ex. B.8, ¶¶ 52-53, that no royalties are owed after October 22, 2021 because they "do not practice any valid and enforceable claim of the '534 Patent and '752 Patent," *id.* ¶¶ 48-49, and that there is no breach of contract for these and other reasons, *id.* ¶¶ 56-57. Varel, and other Defendants, stopped making royalty payments after October 22, 2021 under their respective agreements, and Plaintiffs now seek to recoup those payments and obtain future on-going payments for an *additional ten-years* through this lawsuit. Plaintiffs also seek an affirmative declaration that the '752 patent is a "Licensed RH Patent." ECF No. 1-2, Ex. B.4 (Petition) ¶¶ 38–45. There is thus a clearly defined case or controversy that will require this Court to determine validity, enforceability, and noninfringement as issues of federal patent law. *See MedImmune*, 549 U.S. 128 (case or controversy where party "asserts that no royalties are owing because the [licensed] patent is invalid and not infringed"); *Powertech*, 660 F.3d at 1310 (case or controversy over "whether the license agreement requires royalty payments to be tied to valid patent coverage"); *Ameranth*, 2021 WL 3686056, at *16 (case or controversy exists where "Defendant's obligation to pay royalties depends on whether it practices the Licensed Patent").

Plaintiffs argue that Varel owes royalties even if the patents are invalid and not infringed, and thus there is no case or controversy. Motion, pp. 11, 14. This is simply incorrect, *supra* 11-12, and it is belied by Plaintiffs' own claim for declaratory judgment that the '752 patent is a Licensed RH Patent. It is also irrelevant to the jurisdictional question at hand. "[T]he issue of contract interpretation is a merits issue, not appropriate to deci[de] on a motion to dismiss under Rule 12(b)(1)." *Powertech*, 660 F.3d at 1310 (citing *MedImmune*, 549 U.S. at 135–36). In *Powertech*,

for example, the plaintiff argued "that royalty payments are due even if the products do not infringe the [] patent and regardless of the patent's validity", *Powertech*, 660 F.3d at 1308, which is the exact argument Plaintiffs make in this case. The Federal Circuit held, however, that it "need not decide" that dispute because the "merits of this dispute are not before us." *Id.* at 1309. Rather, "the dispute between [the parties]—as to whether the license agreement requires royalty payments to be tied to valid patent coverage—***is sufficient to support declaratory judgment jurisdiction***." *Id.* at 1310 (emphasis added).

Plaintiffs spill much ink arguing that there is no case or controversy over noninfringement because they have never explicitly alleged infringement, for example, by sending Defendants cease and desist letters. *See* Motion, pp. 13-14 (arguing Plaintiffs have taken "no affirmative act"). This misses the mark. Plaintiffs brought this lawsuit asserting breach of contract based on the alleged later expiration dates of the '534 and '752 patents. If Varel does not practice the '534 and '752 patents, again they do not owe royalties. *Supra* 9-10. This is substantial relief for Varel and all Defendants, and neither finding requires an assertion of infringement.

Further, as to noninfringement specifically, now that Varel has ceased paying royalties, Plaintiffs "could terminate the license and bring an ordinary federal patent law action for infringement," also creating a case or controversy. *See Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197 (2014). While Plaintiffs have carefully crafted their Petition to avoid explicitly asserting infringement, the licenses are no longer an impediment to that action. Indeed, Plaintiffs are apparently seeking "discovery concerning all products" of Varel, which they may use to pursue infringement. Motion, p. 16. Thus, declarations of noninfringement will terminate Defendants' obligation to pay the royalties that Plaintiffs are ***currently*** seeking, ***and*** relieve them from ***the threat*** of an infringement action now that Varel has ceased paying royalties.

Plaintiffs rely heavily on this Court's decision in *Corrosion Prevention*, Motion, pp. 11-13, but that case is factually inapposite. In *Corrosion Prevention*, no license agreement existed, and the Court found no case or controversy over a patent counterclaim where the plaintiff asserted a trade secret claim, and in counterclaims the defendants alleged that the filing of the complaint demonstrated an intent to enforce two patents. *Corrosion Prevention Technologies LLC v. Hatle*, 4:20-cv-2201, 2020 WL 6202690, at *2 (S.D.Tex. October 22, 2020) (Hanen, J.). In the absence of a license agreement, the Court recognized that filing a trade secret lawsuit is not "conduct that can be reasonably inferred as demonstrating intent to enforce a patent." *Id.* at *3. That is entirely unlike here, where Plaintiffs filed a breach of contract lawsuit that ***requires*** the alleged licensed patents to be valid and infringed.

Finally, Plaintiffs mention in two footnotes that unidentified foreign patents will further extend Varel's royalty obligations. Motion, pp. 1, n.2, 17, n.8. This ambiguous allegation, however, appears nowhere in the Petition and thus may not be considered. *See Landeros v. Transamerica Life Ins. Co.*, 2019 WL 9123531, at *5 (S.D. Tex. Sept. 17, 2019) ("the Court considers the pleadings at the time of removal"); *see also Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999) ("Post-removal filings may not be considered … when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court."). As Plaintiffs have not identified these patents, Varel cannot address them.

> 2.    Plaintiffs' concession that the 12 core patents are expired does not eliminate a case or controversy regarding counterclaims of unenforceability and patent misuse

Plaintiffs next try to destroy jurisdiction by agreeing that the 12 core patents have expired—arguing that its concession on that issue eliminates any case or controversy—but Plaintiffs notably ***do not*** agree that royalties are not owed. Surprisingly, Plaintiffs simply ignore Varel's counterclaims for a declaration that seeking go-forward royalties after expiration of the

core patents is an unlawful patent tying scheme and a *per se* patent misuse that will render any remaining Licensed RH Patents unenforceable. ECF No. 1-2, Ex. B.8 (Varel's Answer and Counterclaims), ¶¶ 56-57. In short, while the Varel patent license agreement states that after the 12 core patents are invalid and not infringed, *e.g.*, by expiration or a finding of unenforceability[3] (*see* ECF No. 1-2, Ex. B.8, ¶¶ 50-53; Ex. D (Varel Agreement) ███████████████ ████████████████████████████████████████ no royalties are owed, Plaintiffs argue that they can continue to collect royalties by agreeing to the predicate fact of expiration of the core patents.

The patently absurd result Plaintiffs seek is that by agreeing the core patents are not enforceable, no final judgment to that effect may be entered and so, according to Plaintiffs, Varel must continue to pay royalties for another decade despite the patent licenses agreement's clear statement that no royalties should be owed after that event. To be clear, there is still a case and controversy here: Varel seeks a declaration from this Court that Plaintiffs actions, *i.e.* attempting to assert the patent license agreement after the expiration of the 12 core patents to seek royalty payments thereunder renders the patent license agreement unenforceable, as of October 22, 2021, ***thereby voiding the agreement and suspending all royalty obligations***. ECF No. 1-2, Ex. B.8 ¶¶ 48-49 and 56-57. Plaintiffs continue to argue royalties are owed despite expiration of the 12 core patents, thus creating a case and controversy.

### C.   This Court Has Jurisdiction Over The *Brulotte* Issues In This Case As They Present Federal Questions

Varel's *Brulotte* counterclaims provide yet another basis for this Court's jurisdiction over the present case. ECF No. 1-2, Ex. B-8, ¶¶ 54-57. Plaintiffs did not move to dismiss Varel's

---

[3] *See Shoffiett v. Goode*, 825 F. App'x 824 (Fed. Cir. 2020) ("no enforceable patent rights" after patent expires); *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1550 (Fed. Cir. 1994) ("no infringement once the patent expires").

counterclaims for declaratory judgment that it is unlawful to require payment of royalties accruing after the patents incorporated into Defendants' products have expired, under *Brulotte v. Thys Co.*, 379 U.S. 29 (1964). ECF No. 1-2, Ex. B.8, ¶¶ 56-57. Regardless of whether the Court dismisses any other claims, Varel's *Brulotte* claims will not be dismissed. Thus, the only question is whether the *Brulotte* claims provide federal jurisdiction. Because they do, this is yet another independent basis to deny Plaintiff's motion.

Under Fifth Circuit law, "[t]he right of the patent holder … to enforce the settlement agreements and obtain royalties for use of the patent after it expires is a substantial question of federal patent law." *Natec Inc. v. Deter Co.*, 28 F.3d 28 (5th Cir. 1994). At least one federal district court in Texas similarly recognized that attempts to extract royalties beyond a patent's expiration is a substantial question of federal patent law. *Board of Regents Univ. of Tex. Sys. v. Mission Pharm. Co.*, 2006 WL 8436935, at *3 (N.D. Tex. June 12, 2006) ("[T]he relief requested by [plaintiff] is for the enforcement of an agreement to obtain royalties for the use of a patent after it has expired, a substantial question of federal patent law.").

Here, "[t]he license agreements at issue are patent licenses, and the relief requested by Plaintiffs is enforcement of an agreement to obtain royalties after the 12 core patents have expired based on two patents not used by the … [Varel]." ECF No. 1 (Notice of Removal) ¶ 15; *see also* ECF No. 1-2, Ex. B.8, ¶¶ 52-53, 56-57. Accordingly, Plaintiffs' attempts to extract royalties from Varel beyond the expiration date of the 12 core patents raises a substantial question of patent law, which necessitates this Court exercising jurisdiction. *Board of Regents Univ. of Tex. Sys.*, 2006 WL 8436935.

Although Plaintiffs do not address Varel's unenforceability, patent misuse, and illegal patent tying counterclaims raised under *Brulotte* (ECF No. 1-2, Ex. B.8, ¶¶ 56-57), Plaintiffs

contend that Varel's *Brulotte* claim "reflect[] a wholesale misunderstanding of the law." Motion, p. 9. As explained above, however, this argument was rejected by the Northern District of Texas in *Board of Regents*. Moreover, courts do decide **claims** for unenforceability of a contract based on *Brulotte*, *see Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 450 (2015) (affirming "declaratory judgment in federal district court confirming that the company could cease paying royalties" pursuant to *Brulotte*), and under 28 U.S.C. § 1454(a), Count III may therefore be removed to this Court. Plaintiffs rely **exclusively on out of circuit, pre-AIA** cases and fail to cite any Fifth Circuit or post-AIA authority remanding a case in a similar circumstance. Thus, if there is any conflict between their cited cases (*Boggild* and *Scheiber*) *Natec's* holding that "obtain[ing] royalties for use of the patent after it expires **is a substantial question of federal patent law**," *Natec*, 28 F.3d at 28, then *Natec* controls.[4]

Plaintiffs cite several pre-AIA state court cases "considering" *Brulotte* issues. Motion, p. 10. The mere fact a state court "considered" *Brulotte* is irrelevant to Plaintiffs' remand motion. No party appears to have disputed jurisdiction in those cases, as none address the federal jurisdiction statute, let alone the AIA amendment to 28 U.S.C. Section 1338, which states: "No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights."[5] Further, *Brulotte* is routinely

---

[4]   *Duval Wiedmann v. Inforocket*, 374 Fed. App'x 482 (5th Cir. 2010) predates the AIA and did not involve issues under *Brulotte*.  It is therefore inapplicable.

[5]   *Reich v. Reed Tool Co.*, 582 S.W.2d 549, 553 (Tex. Civ. App. 1979) (finding patent misuse defense available, but federal question jurisdiction was not raised); *Cohn v. Compax Corp.*, 87 A.D.2d 364, 368 (N.Y. App. Div. 1982) (finding agreement at issue was not a licensing agreement and therefore patent misuse defense was unavailable, but federal question jurisdiction was not raised); *Regents of Univ. of Minn. v. Med., Inc.*, 405 N.W.2d 474, 483 (Minn. Ct. App. 1987) (finding no patent misuse because "[w]hen the Kaster patent expired in 1986, it passed into the public domain. The University has not required payment of royalties past this date," but federal question jurisdiction was not raised); *McLeod v. Crawford*, 176 Neb. 513, 526 (Neb. 1964) (finding patent misuse defense unavailable in trademark related action, but federal question jurisdiction was not raised); *Green v. Rocket Rsch. Corp.*, 12 Wash. App. 613, 619; 530 P.2d 1340, 1344 (1975) (rejecting patent misuse defense, but federal question jurisdiction was not raised).

considered by federal courts, including in Plaintiffs' own cited cases. *Boggild v. Kenner Prods.*, 853 F.2d 465, 469–70 (6th Cir. 1988); *Scheiber v. Dobly Labs., Inc.*, 293 F.3d 1014, 1016–18 (7th Cir. 2002); *Bradley Corp. v. Lawler Mfg. Co., Inc.*, 2020 WL 7027875 (S.D. Ind. Nov. 30, 2020).

> **D.    The Court Should Exercise Supplemental Jurisdiction Over Plaintiffs' Breach of Contract Claims That Will Involve The Same Issues As Varel's Counterclaims**

Finally, Plaintiffs argue that if the Court finds it has jurisdiction over Varel's counterclaims, it should nevertheless decline to exercise supplemental jurisdiction over Plaintiffs' breach of contract claim. Motion, pp. 16–17. This makes no sense (it will also be moot if the Court finds that Plaintiffs' breach of contract claim raises issues of patent law, *supra* 6-12). The issues of non-infringement, misuse, and enforceability are inextricably intertwined with Plaintiffs' breach of contract claim, as explained *supra* 12-17. They are also intertwined with the *Brulotte* issues, which too is a substantial question of patent law. One that Plaintiffs did not move to dismiss. *Supra* 18-19. Thus, discovery on Plaintiffs' breach of contract claim will include noninfringement of the '534 and '752 patents, at least because of *Brulotte*, which is the same discovery that Plaintiffs say will be needed to pursue infringement. Motion, pp. 16-17. Plaintiffs' proposal is to create two separate proceedings involving the same parties, the same patents, the same patent license agreements, the same products, and the same overlapping issues, which is not only inefficient but could lead to conflicting outcomes. Accordingly, if the Court finds it has subject matter jurisdiction over Varel's counterclaims arising under the United States patent laws for declaratory judgment, then the Court should exercise supplemental jurisdiction over the other claims at issue, pursuant to 28 U.S.C. § 1367(a).

## VI.    CONCLUSION

For the above stated reasons, Varel respectfully requests that the Court deny Plaintiffs' Motion to Dismiss and Remand in its entirety.

/s/Kelly D. Stephens

Kelly D. Stephens
S.D. Texas Bar No. 8535
Texas Bar No. 19158300
kstephens@patent-lawyers.com
Matthew C. Juren
Texas Bar No. 24065530
mjuren@patent-lawyers.com
STEPHENS JUREN PLLC
2500 Tanglewilde St., Suite 320
Houston, Texas 77063
Telephone:     (832) 344-5400
Facsimile:     (832) 476-5460

***Counsel for Defendants Varel International Energy Services, Inc. and Varel International Industries, LLC***

Dated: April 26, 2023

## <u>Certificate of Service</u>

I hereby certify that a true and correct copy of the foregoing was served electronically via CM/ECF to all counsel of record.

*/s/Kelly D. Stephens*