**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG UK, LTD., REEDHYCALOG, LP, and NATIONAL OILWELL VARCO, LP, | |
| *Plaintiffs/Counter-Defendants*, | |
| v. | Civil Action No. 4:23-cv-00730 |
| SCHLUMBERGER TECHNOLOGY CORP., SMITH INTERNATIONAL, INC., ULTERRA DRILLING TECHNOLOGIES, L.P., ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC., VAREL INTERNATIONAL ENERGY SERVICES, INC., and VAREL INTERNATIONAL INDUSTRIES, L.P., | ██████████████ |
| *Defendants/Counter-Plaintiffs.* | |

**DEFENDANT ULTERRA'S OPPOSITION TO
PLAINTIFFS' MOTION TO DISMISS AND REMAND (DKT. NO. 33)**

## TABLE OF CONTENTS

I.    **STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT** ........................ 1

II.   **SUMMARY OF ARGUMENT** ........................................................................................ 1

III.  **NATURE AND STAGE OF PROCEEDINGS**.......................................................... 3

IV.  **LEGAL STANDARDS** ............................................................................................... 4

    A.  Federal Question Jurisdiction in a Removed Action .......................................... 4

    B.  Declaratory Judgement Case or Controversy .................................................... 5

    C.  Motions to Dismiss for Lack of Subject Matter Jurisdiction.............................. 6

V.    **ARGUMENT** ............................................................................................................... 6

    A.  Plaintiffs' Claims Arise under Federal Patent Laws, Making Removal Proper ................ 6

        1.  Ulterra's Obligations to Pay Royalties Depend on Whether It Practices Licensed RH Patents ................................................................................................. 7

    B.  Ulterra's Counterclaims Create Justiciable Controversies .............................. 11

        1.  There Is a Case or Controversy Over Ulterra's Counterclaims for Noninfringement of the '534 and '752 Patents........................................................ 12

        2.  Plaintiffs' Agreement That The 12 Core Patents Are Expired Does Not Moot the Case or Controversy Created by Ulterra's Counterclaims of Non-Infringement ............... 15

    C.  The *Brulotte* Issues in this Case also Present Federal Questions Over Which this Court has Jurisdiction........................................................................................ 16

    D.  The Court Should Exercise Supplemental Jurisdiction over Plaintiffs' Breach of Contract Claims, Which Will Involve the Same Issues as Ulterra's Counterclaims...................... 18

VI.  **CONCLUSION** ........................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Co. v. Avery Dennison Corp.*,
673 F.3d 1372 (Fed. Cir. 2012)............................................................................6

*Adams v. Pearl River Valley Water Supply Dist.*,
2022 WL 2829756 (5th Cir. July 20, 2022)..........................................................6

*Ameranth, Inc. v. ChowNow, Inc.*,
2021 WL 3686056 (S.D. Cal. Aug. 19, 2021) ............................................. *passim*

*Board of Regents Univ. of Tex. Sys. v. Mission Pharm. Co.*,
2006 WL 8436935 (N.D. Tex. June 12, 2006) ....................................................16

*Boggild v. Kenner Prods.*,
853 F.2d 465 (6th Cir. 1988) ..............................................................................18

*Bonzel v. Pfizer, Inc.*,
439 F.3d 1358 (Fed. Cir. 2006).............................................................................9

*Bradley Corp. v. Lawler Mfg. Co.*,
2020 WL 7027875 (S.D. Ind. Nov. 30, 2020) .....................................................18

*Brulotte v. Thys Co.*,
379 U.S. 29 (1964)..........................................................................................2, 16

*Corrosion Prevention Tech. LLC v. Hatle*,
2020 WL 6202690 (S.D. Tex. Oct. 22, 2020) (Hanen, J.)....................................14

*Duval Wiedmann v. Inforocket*,
374 F. App'x 482 (5th Cir. 2010) ........................................................................18

*Griggs v. State Farm Lloyds*,
181 F.3d 694 (5th Cir. 1999) ..............................................................................15

*Gunn v. Minton*,
568 U.S. 251 (2013)..........................................................................................4, 7

*Jang v. Boston Sci. Corp.*,
767 F.3d 1334 (Fed. Cir. 2014)..................................................................4, 5, 7, 9

*Kearns v. Chrysler Corp.*,
32 F.3d 1541 (Fed. Cir. 1994).............................................................................15

*Kimble v. Marvel Ent., LLC*,
    576 U.S. 446 (2015) ........................................................................................17

*Kunkel v. Topmaster Int'l, Inc.*,
    906 F.2d 693 (Fed. Cir. 1990) ........................................................................10

*Landeros v. Transamerica Life Ins. Co.*,
    2019 WL 9123531 (S.D. Tex. Sept. 17, 2019) ................................................15

*Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.*,
    2016 WL 1365946 (N.D. Cal. Apr. 6, 2016) ...............................................7, 9

*Luckett v. Delpark*,
    270 U.S. 496 (1926) ........................................................................................10

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ....................................................................5, 10, 12, 13

*Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*,
    571 U.S. 191 (2014) ........................................................................................14

*Montez v. Dep't of Navy*,
    392 F.3d 147 (5th Cir. 2004) ......................................................................6, 10

*Natec, Inc. v. Deter Co.*,
    28 F.3d 28 (5th Cir. 1994) .......................................................................2, 16, 17

*Powertech Tech. Inc. v. Tessera, Inc.*,
    660 F.3d 1301 (Fed. Cir. 2011) ..............................................................10, 12, 13

*Preston v. Nagel*,
    857 F.3d 1382 (Fed. Cir. 2017) ........................................................................4

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ............................................................................6

*Recif Res., LLC v. Juniper Capital Advisors, L.P.*,
    2019 WL 5457705 (S.D. Tex. Oct. 24, 2019) ..................................................5

*Scheiber v. Dolly Lab'ys, Inc.*,
    293 F.3d 1014 (7th Cir. 2002) ........................................................................18

*Vermont v. MPHJ Tech. Invs., LLC*,
    803 F.3d 635 (Fed. Cir. 2015) ...................................................................4, 5, 11

*Williamson v. Tucker*,
    645 F.2d 404 (5th Cir. 1981) ........................................................................6, 7

*Wilson v. Sandford*,
   51 U.S. 99 (1850)................................................................................................10

**Statutes**

28 U.S.C. § 1295(a)(1)........................................................................................4

28 U.S.C. § 1338(a)............................................................................................2

28 U.S.C. § 1367(a)..........................................................................................18

28 U.S.C. § 1441(a)............................................................................................4

28 U.S.C. § 1446(c)(2)......................................................................................18

28 U.S.C. § 2201(a)............................................................................................5

**LIST OF EXHIBITS**

| Exhibit | Description |
|:---:|:---|
| 1 | *Adams v. Pearl River Valley Water Supply Dist.*, 2022 WL 2829756 (5th Cir. July 20, 2022) |
| 2 | *Ameranth, Inc. v. ChowNow, Inc.*, 2021 WL 3686056 (S.D. Cal. Aug. 19, 2021) |
| 3 | *Board of Regents University of Texas System v. Mission Pharmacal Co.*, 2006 WL 8436935, (N.D. Tex. June 12, 2006) |
| 4 | *Bradley Corp. v. Lawler Mfg. Co.*, 2020 WL 7027875, (S.D. Ind. Nov. 30, 2020) |
| 5 | *Corrosion Prevention Techs. LLC v. Hatle*, 2020 WL 6202690, (S.D. Tex. Oct. 22, 2020) |
| 6 | *Duval Wiedmann v. Inforocket*, 374 F. App'x 482 (5th Cir. 2010) |
| 7 | *Landeros v. Transamerica Life Ins. Co.*, 2019 WL 9123531, (S.D. Tex. Sept. 17, 2019) |
| 8 | *Levi Strauss & Co. v. Aqua Dynamics Sys.*, Inc., 2016 WL 1365946, (N.D. Cal. Apr. 6, 2016) |
| 9 | *Recif Res., LLC v. Juniper Cap. Advisors, L.P.*, 2019 WL 5457705, (S.D. Tex. Oct. 24, 2019) |

## I.      STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT[1]

1.  Whether Plaintiffs' claim for breach of patent license agreements for failure to pay royalties allegedly owed involve federal questions over which this Court has jurisdiction.

2.  Whether there is a justiciable case over Defendants' counterclaims for declaratory judgment.

3.  Whether the Court should exercise supplemental jurisdiction over Plaintiffs' breach of contract claim if it does not find federal question jurisdiction over these claims.

## II.     SUMMARY OF ARGUMENT

All of the claims in this case arise under the patent laws of the United States. Therefore, this Court possess subject matter jurisdiction over the case and remand to the state court would be improper. From 2006 to 2008, Plaintiffs were engaged in a patent assertion campaign in which they sued numerous drill bit and cutter providers for allegedly infringing some or all of their 12 core patents related to polycrystalline diamond leached cutter technology used in drilling oil wells. *See* Dkt. No. 1-2, Ex. B.6 (Answer and Counterclaims) pp. 5–6 ¶¶ 8, 10–11. Defendant Ulterra Drilling Technologies, L.P. was one such drill bit and cutter provider (collectively with Rockbit International Subsidiaries, LLC, "Ulterra"), but the litigation never reached trial and Ulterra entered into a patent license with Plaintiffs ("the Patent License"). *Id.* ¶¶ 16–17. That license granted manufacturing and other rights to Ulterra under Plaintiffs' leached cutter patents. In exchange, for over a decade, Ulterra paid Plaintiffs significant royalties. *Id.* ¶¶ 16–17, 21. The last of the 12 core patents expired on October 22, 2021. *Id.* ¶ 22. Accordingly, Ulterra ceased paying royalties. *Id.* ¶ 23. Notably, the technology of the 12 core patents is now in the public domain—any new entrant to the industry is permitted to use Plaintiffs' formerly patented leached

---

[1] Sections I, III–IV, and VI of this brief are substantially identical to the same sections in the concurrently filed brief by SLB/Smith. Sections II and V are similar except that in them Ulterra analyzes the specific language in the Ulterra Patent License and its specific counterclaims.

cutter technology without paying Plaintiffs a single cent.

On February 6, 2023, Plaintiffs filed a Second Amended Petition (the "Petition") in Texas state court.  The Petition asserted claims that all defendants (SLB, Smith, Ulterra, and Varel) breached their respective patent license agreements and continue to owe royalties.  *See* Dkt. No. 1-2, Ex. B.4 (Petition).[2]  As to Ulterra, Plaintiffs allege that it owes royalties until the expiration of two non-core patents that it asserts are Licensed RH Patents under the Patent License—U.S. Patent Nos. 7,568,534 (the "'534 patent") and 8,721,752 (the "'752 patent").  *Id.* at 7–8.

Plaintiffs' new claims—and the compulsory counterclaims Ulterra asserted in response to those claims—necessarily raise federal patent law issues that must be litigated in this Court.  ***First***, Ulterra does not practice the '534 and '752 patents.  Based on the language of the Patent License and the law, including the grant of rights "***under*** the Licensed RH Patents," if these two patents are not practiced, then Ulterra necessarily does not owe any royalties.  Dkt. No. 1-2, Ex. B.6 (Answer and Counterclaims) ¶¶ 17–18.  Noninfringement is indisputably a federal patent issue over which Congress has declared that "[n]o State court shall have jurisdiction."  28 U.S.C. § 1338(a).  ***Second***, Plaintiffs are seeking to enforce the Patent License based on expired patents, which the Fifth Circuit has held is another "substantial question of federal patent law," and thus not within the state court's jurisdiction.  *Natec, Inc. v. Deter Co.*, 28 F.3d 28, 29 (5th Cir. 1994) (citing *Brulotte v. Thys Co.*, 379 U.S. 29 (1964)).  ***Third***, in response to Plaintiffs' claims, Ulterra asserted compulsory counterclaims that the '534 and '752 patents are not infringed, and that Plaintiffs' attempt to enforce their Patent License based on expired patents is unlawful.  These

---

[2] Plaintiffs' Original Petition was asserted against Schlumberger Technology Corporation ("SLB") and Smith International, Inc. ("Smith") and it asserted certain claims that are now abandoned.  *See* Dkt. 1-2, Ex. B.1 (Original Petition); *id.* Ex. B.3 (Notice of Abandonment).  Plaintiffs Second Amended Petition added the Ulterra defendants and Varel International Energy Services, Inc. and Varel International Industries, L.P. (collectively, "Varel"), as defendants.

counterclaims are not speculative.  If Ulterra prevails, then there is no breach of contract and no royalties are owed, which is the exact relief that Plaintiffs are trying to obtain in state court.  Under the special patent removal statute, 28 U.S.C. § 1454, these counterclaims also vest this Court with jurisdiction over the entire action.

Despite substantial questions of patent law predominating every issue in this case, Plaintiffs nevertheless move to remand, contending that their claims do not raise patent issues and move to dismiss three of Ulterra's counterclaims for purportedly lacking a justiciable case or controversy.  In arguing that their claims do not raise patent issues, Plaintiffs assert incorrect readings of the Patent License that contradict its controlling language.  In asserting that there is no case or controversy, Plaintiffs argue that they have never accused Ulterra of infringement, ignoring that the Patent License *requires* an infringed patent for Plaintiffs to collect royalties.  Plaintiffs also twist themselves in knots by agreeing that if the 12 core patents are found unenforceable then no royalties would be owed, but asserting that because those patents are now expired, there is no case or controversy.  Nevertheless, despite core-patent expiration, Plaintiffs contend they are still entitled to royalties due to other non-core, non-practiced patents.  In short, Plaintiffs have no valid response to the numerous straightforward bases for this Court's jurisdiction.  Removal to this Court was not only appropriate, but it was necessary.  This Court should deny Plaintiffs' motion.

## III.     NATURE AND STAGE OF PROCEEDINGS

On May 13, 2022, Plaintiffs Grant Prideco, Inc., ReedHycalog UK, Ltd., ReedHycalog, LP and National Oilwell Varco, LP (collectively, "Plaintiffs") filed their Original Petition against SLB and Smith in the 11th Judicial District Court of Harris County, Texas.  Dkt. No. 1-2, Ex. B.1.  On February 6, 2023, Plaintiffs filed a Second Amended Petition (the "Petition") against SLB and Smith, and added Ulterra and Varel.  Dkt. No. 1-2, Ex. B.4.  On February 27, 2023, SLB, Smith, Ulterra, and Varel answered the Petition and filed their original counterclaims.  Dkt. No. 1-2, Exs.

3

B.5–B.8 (Answers and Counterclaims).  That same day, SLB/Smith and Ulterra filed a Notice of

Removal, which Varel joined, removing the case to this Court.  Dkt. No. 1 (Notice of Removal).

On March 29, 2023, Plaintiffs filed a Motion to Dismiss and Remand.  Dkt. No. 33 ("Mot.").

## IV.  LEGAL STANDARDS

### A.  Federal Question Jurisdiction in a Removed Action

Removal of a state court case to the United States District Court for the district and division

in which the case was filed is proper if the case falls within the "original jurisdiction" of the federal

court.  28 U.S.C. § 1441(a).  In 2011, Congress "made three changes in the AIA [America Invents

Act] to address federal jurisdiction of patent claims: (1) 28 U.S.C. § 1338(a) clarified that state

courts had no jurisdiction over 'any claim for relief arising under any Act of Congress relating to

patents'; (2) the Federal Circuit's exclusive jurisdiction was extended to include cases with

compulsory patent counterclaims, *see* 28 U.S.C. § 1295(a)(1); and (3) a provision was added to

permit a party to remove to federal court a case in which any party asserts a patent claim, *see* 28

U.S.C. § 1454."  *Preston v. Nagel*, 857 F.3d 1382, 1386 (Fed. Cir. 2017).  Thus, federal question

jurisdiction lies over an action removed from state court in which (1) a plaintiff's claim arises

under the patent laws *or* (2) a defendant's counterclaim raises a question of patent law.

As to the first basis for jurisdiction, "[a]n action 'aris[es] under' federal law: (1) where

'federal law creates the cause of action asserted,' and (2) in a 'special and small category of cases'

in which arising under jurisdiction still lies.'"  *Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635,

645 (Fed. Cir. 2015) (quoting *Gunn v. Minton*, 568 U.S. 251, 257–58 (2013)).  "For this second

category of cases, 'federal jurisdiction over a state law claim will lie if a federal issue is:

(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal

court without disrupting the federal-state balance approved by Congress,'"  *id.*, for example, in

some breach of contract cases, *see Jang v. Boston Sci. Corp.*, 767 F.3d 1334, 1335, 1337 (Fed. Cir.

2014) ("the disputed federal patent law issues presented by Jang's well-pleaded complaint ['for breach of contract and other various state law claims'] are substantial . . . .").

As to the second basis for jurisdiction, the amendments to the AIA "were intended to provide federal courts . . . with jurisdiction over claims arising under the patent laws *even* when asserted in counterclaims, rather than in an original complaint." *Vermont*, 803 F.3d at 644 (emphasis in original). To determine whether a counterclaim provides federal jurisdiction, a court asks two questions. *Id.* First, whether the counterclaim is compulsory, which "turns on whether the counterclaim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." *Id.* at 644. Second, whether the counterclaim arises under the federal patent laws. *Id.* Counterclaims for noninfringement arise under federal patent law. *Id.*; *Jang*, 767 F.3d at 1337–38; *see also Ameranth, Inc. v. ChowNow, Inc.*, 2021 WL 3686056, at *13 (S.D. Cal. Aug. 19, 2021) ("[N]on-infringement counterclaims are compulsory in response to a complaint raising patent issues."). Upon removal under Section 1454, the entire action is removed, including claims not subject to federal question jurisdiction, and the Court may exercise supplemental jurisdiction over those claims. *Recif Res., LLC v. Juniper Capital Advisors, L.P.*, 2019 WL 5457705, at *3 (S.D. Tex. Oct. 24, 2019) (exercising supplemental jurisdiction over state law claims in case removed under Section 1454).

## B. Declaratory Judgement Case or Controversy

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  "Whether an actual case or controversy exists so that a district court may entertain an action for a declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law."  *See 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012).

### C.    Motions to Dismiss for Lack of Subject Matter Jurisdiction

"[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the [party asserting jurisdiction] cannot prove any set of facts in support of his claim that would entitle [that party] to relief."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  "When considering a Rule 12(b)(1) motion, a district court may go beyond the pleadings to affidavits and other evidence to determine its jurisdiction."  *Adams v. Pearl River Valley Water Supply Dist.*, 2022 WL 2829756, at *2 (5th Cir. July 20, 2022) (citing *Williamson v. Tucker*, 645 F.2d 404, 413–14 (5th Cir. 1981)).  Where subject matter jurisdiction is being challenged, "no presumptive truthfulness attaches to the plaintiff's allegations."  *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004).[3]  Further, "where issues of fact are central both to subject matter jurisdiction and the claim on the merits, . . . the trial court must assume jurisdiction and proceed to the merits."  *Id.* at 150.

## V.    ARGUMENT

### A.    Plaintiffs' Claims Arise under Federal Patent Laws, Making Removal Proper

Plaintiffs "seek both a declaration that Defendants' royalty obligations do not expire until 2031 and damages as a result of Defendants' failure to pay royalties after October 2021."  Dkt. No. 1 (Notice of Removal) ¶ 13 (quoting Dkt. No. 1-2, Ex. B.4 (Petition) at 2).  Plaintiffs base

---

[3] Plaintiffs contend that "a court must accept all factual allegations in the complaint as true when ruling on the motion to dismiss for lack of subject matter jurisdiction."  Mot. at 4 (citing *Ramming*). *Ramming* does not support that proposition, and, as stated in *Montez*, it is not correct.

these claims—made against *all* defendants—on the alleged 2025 and 2031 expiration dates of the '534 and '752 patents.  Dkt. No. 1-2, Ex. B.4 (Petition) ¶¶ 38–45.  Plaintiffs also assert that these patents are "Licensed RH Patents."  *Id.*  Under the Patent License, however, if Ulterra does not practice any Licensed RH Patent after October 22, 2021 then no royalties are owed to Plaintiffs.  Accordingly, Plaintiffs' claims necessarily raise issues of noninfringement, which is a federal question for this Court.

### 1. Ulterra's Obligations to Pay Royalties Depend on Whether It Practices Licensed RH Patents

Plaintiffs' claim for breach of contract arises under federal patent law at least because it requires that Ulterra practice the '534 or '752 patents.  "[C]ourts have repeatedly held that a state-law-based breach of contract claim arises under federal law where it depends on a finding that the defendant has infringed the plaintiff's patents."  *Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.*, 2016 WL 1365946, at *5 (N.D. Cal. Apr. 6, 2016) (collecting cases); *Jang*, 767 F.3d at 1336 (finding plaintiff's "right to relief" for state law breach of contract claim "depends on an issue of federal patent law," *i.e.*, infringement).  This determination turns on the application of the four-factor test set forth by the Supreme Court in *Gunn*—a test Plaintiffs ignore.  568 U.S. 251 (2013); *see Jang*, 767 F.3d at 1337–38; *Levi Strauss*, 2016 WL 1365946, at *5–6; *Ameranth*, 2021 WL 3686056, at *10.  To decide jurisdiction, the Court need not accept Plaintiffs' disputed interpretation of the Patent License and instead may consider its contents, which Plaintiffs cite throughout their Petition and motion, and attach as exhibits to their motion.  *See Williamson*, 645 F.2d at 413 ("[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."); *Ameranth*, 2021 WL 3686056, at *10 ("As a jurisdictional cross-check,

the Court may consider the plain language of the Agreements.").[4]

Here, Plaintiffs' breach of contract claim necessarily raises a federal issue and, thus, *Gunn* factor 1 is satisfied.  The Patent License requires that Ulterra be operating under, *i.e.*, practice, a Licensed RH Patent in order for royalties to be paid.  In ███████████████████████ ████████ the Patent License states: ███████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████ Mot. Ex. E (Ulterra Patent License) ██████.  Because the '534 and '752 patents are the only alleged unexpired "Licensed RH Patents," the license grant must be "under" the '534 and '752 patents.  *Ameranth*, 2021 WL 3686056, at *10 (license granted "***under the Licensed Patents***" means that "if Defendant performs activities . . . without implicating Plaintiff's Licensed Patents, Defendant would owe no royalties") (emphasis in original).

This interpretation is supported elsewhere in the Patent License, including ███████████ ██████████████████████████████, which identifies products that ████████████████ ████████████████████ and are therefore not subject to royalties.  Mot. Ex. E (Ulterra Patent License) ██████.  This is also reflected by the stated purpose of the Patent License, *i.e.*, to ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ *Id.* ██████.  Plaintiffs' breach of contract claim against Ulterra thus necessarily raises a federal question because it will "require the Court to interpret the Licensed Patents as well as whether Defendant performs activities falling within the scope of their claims."  *See Ameranth*, 2021 WL 3686056, at *10.

---

[4] Further, Plaintiffs liberally quote provisions from the Patent License, in both their Petition and the motion, and now make related factual assertions not present in their Petition on at least page 6 of their brief.  Dkt. No. 32-1 ("Mot. Ex."), Ex. E (Ulterra Patent License).

Plaintiffs do not address the remaining *Gunn* factors, but they too are satisfied. With respect to the second factor, the federal issue is actually disputed because it is necessary to Plaintiffs' breach of contract claim. For the third factor, "the disputed federal patent law issues . . . are substantial and neither entirely backward-looking nor hypothetical" because Plaintiffs' right to relief depends on their resolution. *Jang*, 767 F.3d at 1337. The fourth factor is also satisfied as shown by the fact that other federal courts have considered the same issue under similar circumstances. *Id.* at 1337–38 (applying the *Gunn* test to conclude that "[c]ontract claims based on underlying ongoing royalty obligations" arose under an Act of Congress relating to patents and satisfied 28 U.S.C. § 1338(a)"); *Levi Strauss*, 2016 WL 1365946, at *5–6 (same); *Ameranth*, 2021 WL 3686056, at *10 (same).

Plaintiffs make two arguments for why their claims purportedly do not raise infringement issues, but each fails. ***First***, Plaintiffs argue that it is "well-settled that breach of contract claims, even when they involve damages for unpaid royalties under a patent license or assignment, do not '***arise under***' an Act of Congress." Mot. at 5. If that was ever correct, it no longer is after the AIA and *Gunn*, as demonstrated by the above-cited cases. *Supra* 7. Plaintiffs cite only two cases in support, from 2006 and 1926, well before the 2011 amendments to the AIA. Thus, even if they were analogous (they are not), they would "ha[ve] questionable application to the case at hand." *Ameranth*, 2021 WL 3686056, at *11. First, Plaintiffs cite *Bonzel v. Pfizer, Inc.*, 439 F.3d 1358, 1363 (Fed. Cir. 2006). *See* Mot. at 5. *Bonzel*, however, was a breach of contract action in which the alleged breach was failing to comply with "the obligation ***to notify*** of patent infringement and share payment." *Bonzel*, 439 F.3d at 1363. That dispute over notice—conspicuously replaced with an ellipsis on page five of Plaintiffs' brief—has no bearing on the present dispute over whether Ulterra owes royalties for a license granted "***under***" two patents. Plaintiffs also cite to

9

two pages from *Luckett v. Delpark*, 270 U.S. 496 (1926) without explanation.  As an initial matter, *Luckett* was decided before "the institution of the Federal Rules of Civil Procedure in 1938," and thus fails to provide guidance to the instant case.  *See Kunkel v. Topmaster Int'l, Inc.*, 906 F.2d 693, 696 (Fed. Cir. 1990) (noting *Luckett* is "old and now inapplicable Supreme Court precedent").  Further, *Luckett* looked to the "main and declared purpose" of the bill in equity and determined that the relief sought "depended altogether upon the rules and principles of equity, and in no degree whatever upon any act of Congress concerning patent rights."  270 U.S. at 502–03 (quoting *Wilson v. Sandford*, 51 U.S. 99, 102 (1850)).  As stated above, Plaintiffs' claim for relief here is ***under*** two patents, which necessarily raises issues of whether Ulterra practices those patents.

***Second***, Plaintiffs argue that because they alleged in their Petition that the contracts require payment based on invoicing "Licensed Drill Bits," not based on "'practice' of a Licensed RH Patent," that must be accepted as an established fact.  Mot. at 6–7.  Not so.  As explained above, the Patent License states that the license is granted ***under*** the licensed patents, and thus requires practicing the patents.  *Supra* 7–8.  Even if the Court were not ready to make that determination, however, it does not need to for it to resolve the current jurisdictional dispute.  Rather, because Plaintiffs' attack on subject matter jurisdiction is intertwined with the merits of their breach of contract claim, "the trial court must assume jurisdiction and proceed to the merits."  *Montez*, 392 F.3d at 150; *see also Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301, 1310 (Fed. Cir. 2011) (existence of dispute over "whether the license agreement requires royalty payments to be tied to valid patent coverage" sufficient for jurisdiction); *MedImmune*, 549 U.S. at 135–36 (jurisdiction not defeated by argument that "licensing agreement . . . precludes this suit").  Plaintiffs cannot

10

defeat federal question jurisdiction simply on their say-so of the contract.[5]

### B.    Ulterra's Counterclaims Create Justiciable Controversies

Ulterra's counterclaims create independent bases for this Court to exercise jurisdiction. Through their Petition, Plaintiffs seek to enforce the Patent License against Ulterra based on the existence of two patents.  Ulterra claims, among other things, that these patents are not infringed, and therefore that no royalties are owed and there is no breach of contract.  These counterclaims are compulsory—"there is a logical relationship between the counterclaim and the main claim," *Vermont*, 803 F.3d at 644, *i.e.*, Plaintiffs assert a breach of contract claim that requires an infringed patent.

Under post-AIA 28 U.S.C. § 1454, this Court has "jurisdiction over claims arising under the patent laws *even* when asserted in counterclaims, rather than in an original complaint." *Vermont*, 803 F.3d at 644 (emphasis in original).  Plaintiffs do not dispute that the noninfringement counterclaims (Counts I–II) are federal claims that ordinarily belong in this Court.  *See* Mot. at 11–15.  Plaintiffs also do not move to dismiss Ulterra's counterclaims that they owe no royalties after October 22, 2021 (Count III) or that there is no breach of contract (Count V), which similarly require determining non-infringement of the '534 and '752 patents (Counts I–II).  Nevertheless, Plaintiffs argue that the noninfringement counterclaims "lack the necessary justiciable case or controversy requirement" and seek to dismiss them pursuant to Rule 12(b)(1).  Because the

---

[5] Plaintiffs also make repeated references to the licenses as "portfolio licenses."  Not only is this irrelevant, it is also wrong. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
*See generally* Mot. Ex. E (Ulterra Patent License).

Supreme Court rejected that argument in *MedImmune*, Plaintiffs' motion to dismiss must be denied, and thus Plaintiffs' motion to remand must also be denied.

> **1.    There Is a Case or Controversy Over Ulterra's Counterclaims for Noninfringement of the '534 and '752 Patents**

Ulterra's claims for declaratory judgments that the only two unexpired alleged Licensed RH Patents are not infringed (Counts I–II) constitute a justiciable case or controversy for this Court to adjudicate under well-established Supreme Court and Federal Circuit precedent.    In *MedImmune*, the Supreme Court held that a justiciable Article III case or controversy exists where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127.    Thus, there was a case or controversy where a licensee "dispute[d] its obligation to make payments under the [] License Agreement because [it argued it] . . . does not infringe any valid claim of the [licensed] Patent." *Id.* at 123–24.    Similarly, in *Powertech*, the Federal Circuit held that there was a case or controversy where the licensee alleged "that the terms of the license agreement do not require it to pay royalties for the wBGA chips if those chips do not infringe."  660 F.3d at 1308.

Here, as in those cases, Ulterra seeks declarations that (i) the '534 and '752 patents are not infringed, Dkt. No. 1-2, Ex. B.6 (Answer and Counterclaims) ¶¶ 42–49, (Counts I–II), (ii) that no royalties are owed after October 22, 2021 because they "do not practice any claim of the '534 Patent and '752 Patent," *id.* ¶ 50–55 (Count III), and that there is no breach of contract for these and other reasons, *id.* ¶¶ 63–67 (Count V).  Ulterra stopped making royalty payments after October 22, 2021 under its agreement, and Plaintiffs seek to recoup those payments and obtain future payments through this lawsuit.  Plaintiffs also seek an affirmative declaration that the '752 patent is a "Licensed RH Patent."  Dkt. No. 1-2, Ex. B.4 (Petition) ¶¶ 38–45.  There is thus a clearly

defined case or controversy that will require this Court to determine noninfringement.  *See MedImmune*, 549 U.S. 128 (case or controversy where party "asserts that no royalties are owing because the [licensed] patent is. . . not infringed"); *Powertech*, 660 F.3d at 1310 (case or controversy over "whether the license agreement requires royalty payments to be tied to valid patent coverage"); *Ameranth*, 2021 WL 3686056, at \*16 (case or controversy exists where "Defendant's obligation to pay royalties depends on whether it practices the Licensed Patent").

Plaintiffs argue that Ulterra owes royalties even if the patents are not infringed, and thus there is no case or controversy.  Mot. at 11, 14.  This is not only factually wrong, *supra* 6–11, it is belied by Plaintiffs' own request for a declaration that the '752 patent is a Licensed RH Patent.  It is also irrelevant to the jurisdictional question.  "[T]he issue of contract interpretation is a merits issue, not appropriate to deci[de] on a motion to dismiss under Rule 12(b)(1)." *Powertech*, 660 F.3d at 1310 (citing *MedImmune*, 549 U.S. at 135–36).  In *Powertech*, for example, the plaintiff argued "that royalty payments are due even if the products do not infringe the [licensed] patent," *Powertech*, 660 F.3d at 1308, which is the exact argument Plaintiffs make here.  The Federal Circuit held, however, that it "need not decide" this dispute because the "merits of this dispute are not before us." *Id.* at 1309.  Rather, "the dispute between [the parties]—as to whether the license agreement requires royalty payments to be tied to valid patent coverage—***is sufficient to support declaratory judgment jurisdiction***." *Id.* at 1310.[6]

---

[6] Plaintiffs relegate their entire discussion of *MedImmune* to a footnote, in which they simply assert that in *MedImmune*, "the royalty obligations were tied to the practice of a claim of the licensed patents" and "[n]o such requirement is contained in the various portfolio license agreements at issue here."  Mot. at 11, n.6.  Ulterra has explained why this reading of the Patent License is incorrect, *supra* 6–11, and even *MedImmune* rejected that jurisdiction can be defeated based on a disputed contract interpretation.  *See MedImmune*, 549 U.S. at 135–36 ("[E]ven if respondents were correct that the licensing agreement . . . precludes this suit, the consequence would be that respondents win this case on the merits—not that the very genuine contract dispute disappears, so that Article III jurisdiction is somehow defeated.").

Plaintiffs also spill much ink arguing that there purportedly is no case or controversy over noninfringement because they have never explicitly alleged infringement, for example, by sending Ulterra cease and desist letters. *See* Mot. at 14 (arguing Plaintiffs have taken "no affirmative act"). This misses the mark. Plaintiffs brought this lawsuit asserting breach of contract based on the later expiration dates of the '534 and '752 patents. If Ulterra does not practice these patents, they do not owe royalties. *Supra* 6–11. This finding does not require Plaintiffs to assert infringement.

Further, now that Ulterra has ceased paying royalties, Plaintiffs could "bring an ordinary federal patent law action for infringement," also creating a case or controversy. *See Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197 (2014). While Plaintiffs have carefully crafted their response to avoid explicitly asserting infringement, the Patent License no longer prevents that. Indeed, Plaintiffs are apparently seeking "discovery concerning all products" of Ulterra, which they may use to pursue infringement claims. Mot. at 16. Declarations of noninfringement will confirm Ulterra's obligation to pay the royalties that Plaintiffs are ***currently*** seeking has ended, ***and*** relieve them from ***the threat*** of an infringement action now that Ulterra has ceased paying royalties.

Plaintiffs rely on this Court's decision in *Corrosion Prevention*, Mot. at 11–14, but that case is factually inapposite. In *Corrosion Prevention*, no license agreement existed, and the Court found no case or controversy over a patent counterclaim where the plaintiff asserted a trade secret claim, and the defendants alleged in counterclaims that the filing of the complaint demonstrated an intent to enforce two patents. *Corrosion Prevention Tech. LLC v. Hatle*, 2020 WL 6202690, at *2 (S.D. Tex. Oct. 22, 2020) (Hanen, J.). In the absence of a license agreement, the Court recognized that filing a trade secret lawsuit is not "conduct that can be reasonably inferred as demonstrating intent to enforce a patent." *Id.* at *3. Here, by contrast, Plaintiffs filed a breach of

14

contract lawsuit that ***requires*** the alleged licensed patents to be infringed.

Finally, Plaintiffs briefly argue in two footnotes that unidentified foreign patents will allegedly further extend Ulterra's royalty obligations. Mot. at 1, n.2; *id.* at 17, n.8. This ambiguous allegation, however, appears nowhere in the Petition and thus may not be considered. *See Landeros v. Transamerica Life Ins. Co.*, 2019 WL 9123531, at *5 (S.D. Tex. Sept. 17, 2019) ("the Court considers the pleadings at the time of removal"); *see also Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999) ("Post-removal filings may not be considered . . . when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court."). As Plaintiffs have not identified these patents, Ulterra cannot address them.

        2.      **Plaintiffs' Agreement That The 12 Core Patents Are Expired Does Not Moot the Case or Controversy Created by Ulterra's Counterclaims of Non-Infringement**

Plaintiffs next try to game the system to destroy federal court jurisdiction. They agree that the 12 core patents have expired—arguing that their agreement on that issue eliminates any case or controversy over Count IV—but Plaintiffs notably ***do not*** concede that royalties are not owed, which that Count also seeks as declaratory relief. In short, while the Patent License states that no royalties are owed after the 12 core patents are not infringed,[7] *e.g.*, by expiration,[8] Plaintiffs argue that they can continue to collect royalties by agreeing to the predicate fact of expiration.

The absurdity of Plaintiffs' position is obvious—they contend that by agreeing that the patents are expired and thus not infringed, no final judgment to that effect may be entered and so,

---

[7] *See* Dkt. No. 1-2, Ex. B.6 (Answer and Counterclaims) ¶¶ 50–62; Mot. Ex. E (Ulterra Patent License) ███████████████████████████████████████████████████████████████████████████.

[8] *See Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1550 (Fed. Cir. 1994) ("no infringement once the patent expires").

according to Plaintiffs, Ulterra must continue to pay royalties for another decade despite the Patent License's clear statement that no royalties should be owed after that event. To be clear, there is still a case and controversy here: Ulterra seeks a declaration from this Court that the 12 core patents are expired and therefore not infringed after October 22, 2021, *thereby suspending all royalty obligations*. Plaintiffs continue to argue royalties are owed despite expiration of the 12 core patents, thus creating a case and controversy.

### C.     The *Brulotte* Issues in this Case also Present Federal Questions Over Which this Court has Jurisdiction

The claims asserted in Plaintiffs' Petition seeking to enforce the Patent License also raise the question of whether it is unlawful to require payment of royalties under *Brulotte v. Thys Co.*, 379 U.S. 29 (1964) after the patents incorporated into Ulterra's products have expired. Under Fifth Circuit law, "[t]he right of the patent holder . . . to enforce the settlement agreements and obtain royalties for use of the patent after it expires is a substantial question of federal patent law." *Natec*, 28 F.3d 29.

For example, in *Board of Regents Univ. of Tex. Sys. v. Mission Pharm. Co.*, the court was presented with the same situation present in this case. 2006 WL 8436935 (N.D. Tex. June 12, 2006). There, the plaintiff brought a breach of contract claim in state court, which the defendant removed to federal court because "the Contract is a patent license and [plaintiff] is asking the court to extend [defendant's] obligation to pay patent royalties beyond the life of the subject patents," which is "a substantial question of federal patent law." *Id.* at *2. Thus, the district court held it had jurisdiction over plaintiff's removed breach of contract claim because "federal patent law is a necessary element of one of [plaintiff's] claims in that the relief requested by [plaintiff] is for the enforcement of an agreement to obtain royalties for the use of a patent after it has expired." *Id.* at *3. Similarly, here, "[t]he license agreements at issue are patent licenses, and the relief requested

16

by Plaintiffs is enforcement of an agreement to obtain royalties after the 12 core patents have expired based on two patents not used by the . . . Ulterra Defendants."  Dkt. No. 1 (Notice of Removal) ¶ 15.

Ulterra's counterclaim that no royalties are owed after October 22, 2021 (Count III) provides yet another basis for this Court's jurisdiction in this action.  Plaintiffs did not move to dismiss Count III, which seeks a declaratory judgment that that no royalties are owed after October 22, 2021 because, under *Brulotte*, it is unlawful to require payment of royalties accruing after the patents incorporated into Ulterra's products have expired.  Dkt. No. 1-2, Ex. B.6 (Answer and Counterclaims) ¶¶ 50–55 (Count III).  Regardless of whether the Court dismisses any other claims, ***Count III will not be dismissed***.  Thus, the only question is whether Count III provides federal jurisdiction.  Because it raises "a substantial question of federal patent law," *Natec*, 28 F.3d at 29, this is yet another basis to deny Plaintiffs' motion.

Plaintiffs contend that removing this case based on *Brulotte* "reflects a wholesale misunderstanding of the law" because it "does not give rise to a basis for removal."  Mot. at 9.  As explained above, however, this argument was rejected by the Northern District of Texas in *Board of Regents*.  Moreover, courts do decide **claims** for unenforceability of a contract based on *Brulotte*, *see Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 450 (2015) (affirming "declaratory judgment in federal district court confirming that the company could cease paying royalties" pursuant to *Brulotte*), and under 28 U.S.C. § 1454(a), Count III may therefore be removed to this Court.  Plaintiffs rely ***exclusively on out of circuit, pre-AIA*** cases and fail to cite any Fifth Circuit or post-AIA authority remanding a case in a similar circumstance.  Thus, if there is any conflict between their cited cases (*Boggild* and *Scheiber*) and *Natec's* holding that "obtain[ing] royalties for use of the patent after it expires ***is a substantial question of federal patent law***," *Natec*, 28 F.3d at 28,

then *Natec* controls.[9]

Plaintiffs also cite pre-AIA state court cases "considering" *Brulotte* issues.  Mot. at 10.

The mere fact that a state court "considered" *Brulotte* is irrelevant to Plaintiffs' remand motion.

No party appears to have disputed jurisdiction in those cases, as none address the federal

jurisdiction statute, let alone the AIA amendment to Section 1338, which states: "No State court

shall have jurisdiction over any claim for relief arising under any Act of Congress relating to

patents, plant variety protection, or copyrights."  Further, *Brulotte* is routinely considered by

federal courts, including in Plaintiffs' own cited cases.  *Boggild v. Kenner Prods.*, 853 F.2d 465,

469–70 (6th Cir. 1988); *Scheiber v. Dolly Lab'ys, Inc.*, 293 F.3d 1014, 1017–18 (7th Cir. 2002);

*Bradley Corp. v. Lawler Mfg. Co.*, 2020 WL 7027875, at *5–7 (S.D. Ind. Nov. 30, 2020).

### D.    The Court Should Exercise Supplemental Jurisdiction over Plaintiffs' Breach of Contract Claims, Which Will Involve the Same Issues as Ulterra's Counterclaims

Finally, Plaintiffs argue that if the Court finds it has jurisdiction over Ulterra's

counterclaims, it should nevertheless decline to exercise supplemental jurisdiction over Plaintiffs'

breach of contract claim.  Mot. at 16–17.  When a civil action includes both federal and state law

claims, "the entire action may be removed."   28 U.S.C. § 1446(c)(2).   Following removal,

Section 1367 provides that "in any civil action of which the district courts have original

jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are

so related to the claims in the action within such original jurisdiction that they form part of the

same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Plaintiffs' argument to sever and remand their breach of contract claims here makes no

sense (and will also be moot if the Court finds that Plaintiffs' breach of contract claim raises issues

---

[9] *Duval Wiedmann v. Inforocket*, 374 F. App'x 482 (5th Cir. 2010), a nonprecedential opinion, predates the AIA and did not involve issues under *Brulotte*.  It is therefore inapplicable.

of patent law, *supra* 6–11).  The issue of infringement is inextricably intertwined with Plaintiffs' breach of contract claim, as explained *supra* 6–11.  They are also intertwined with the *Brulotte* issues, which too is a substantial question of patent law, and one that Plaintiffs did not move to dismiss.  *Supra* 16–18.  Thus, discovery on Plaintiffs' breach of contract claim will include discovery on noninfringement of the '534 and '752 patents, at least because of *Brulotte*, which is the same discovery that Plaintiffs say will be needed to pursue infringement.  Mot. at 16–17.

Plaintiffs' proposal is to create two separate proceedings involving the same parties, the same patents, the same products, and the same overlapping issues.  That proposal is not only inefficient but also risks conflicting outcomes.  Accordingly, if the Court finds it has subject matter jurisdiction over Ulterra's (or any other defendant's) patent counterclaims for declaratory judgment, then the Court should exercise supplemental jurisdiction.

## VI.    CONCLUSION

For the reasons set forth above, Ulterra respectfully requests that the Court deny Plaintiffs' Motion to Dismiss and Remand.

Dated:  April 26, 2023

Respectfully submitted,

/s/ Gregg F. LoCascio
Gregg F. LoCascio, P.C.
Attorney-in-Charge
S.D. TX Bar No. 1109276
DC Bar No. 452814
Tera Jo Stone (admitted *pro hac vice*)
DC Bar No. 90000748
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
Email: gregg.locascio@kirkland.com
Email: tera.stone@kirkland.com

Ryan Kane, P.C.
S.D. TX Bar No. 1314513
NY Bar No. 4882551
Chris Ilardi (admitted *pro hac vice*)
NY Bar No. 5403811
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY  10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: ryan.kane@kirkland.com
Email: chris.ilardi@kirkland.com

Nick Brown
S.D. TX Bar No. 2725667
TX. Bar No. 24092182
**KIRKLAND & ELLIS LLP**
609 Main Street
Houston, Texas  77002
Telephone: (713) 836-3600
Facsimile: (713) 836-3601
Email: nick.brown@kirkland.com

James John Lomeo
S.D. TX Bar No. 3511238
TX Bar No. 24118993
**KIRKLAND & ELLIS LLP**
401 Congress Avenue
Austin, Texas 78701
Telephone: (512) 678-9100
Facsimile: (512) 678-9101
Email: james.lomeo@kirkland.com

David J. Beck
S.D. TX Bar No. 16605
TX Bar No. 00000070
**BECK REDDEN LLP**
1221 McKinney Street, Suite 4500
Houston, Texas  77010
Telephone: (713) 951-3700
Facsimile:  (713) 951-3720
Email: dbeck@beckredden.com

*Counsel for Defendants Ulterra Drilling
Technologies, L.P. and Rockbit
International Subsidiaries, LLC*

## **CERTIFICATE OF SERVICE**

I hereby by certify that the foregoing document was electronically served on all registered

counsel of record via the Court's PACER ECF system.

> */s/ Gregg F. LoCascio*
> Gregg F. LoCascio, P.C.