**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG UK, LTD., REEDHYCALOG, LP, NATIONAL OILWELL VARCO, LP, | |
| *Plaintiffs/Counter-Defendants*, | |
| v. | Civil Action No. 4:23-cv-00730 |
| SCHLUMBERGER TECHNOLOGY CORP., SMITH INTERNATIONAL, INC.; ULTERRA DRILLING TECHNOLOGIES, L.P., ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC.; VAREL INTERNATIONAL ENERGY SERVICES, INC., and VAREL INTERNATIONAL INDUSTRIES, L.P., | JURY |
| *Defendants/Counter-Plaintiffs.* | |

**PLAINTIFFS' CONSOLIDATED REPLY IN SUPPORT OF THEIR**
**MOTION TO DISMISS AND REMAND (DOC. NO. 33)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

TABLE OF EXHIBITS .............................................................................................. v

I.     SUMMARY .................................................................................... 1

II.    ARGUMENT ................................................................................. 2

    A.    Infringement Is Irrelevant and Cannot Create Subject-Matter Jurisdiction. ..................................................................... 2

        1.    Jurisdiction Turns on Whether the Breach of Contract "Depends" on a Finding of Infringement ....................................... 3

        2.    Under the Plain Language of the Agreements, Royalty Payments Do Not Depend on Infringement. ................................... 4

        3.    This Court Cannot Assume Subject-Matter Jurisdiction. .............. 7

        4.    Defendants' Declaratory Judgment of Non-Infringement Due to Expiration Does Not Create Subject Matter Jurisdiction. .................................................................. 13

    B.    Validity Is Irrelevant and Cannot Create Subject-Matter Jurisdiction. .............................................................. 14

    C.    The Brulotte Issue Does Not Create Subject-Matter Jurisdiction. .................................................................. 17

III.    CONCLUSION ............................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amerath, Inc. v. ChowNow, Inc.*,
2021 WL 3686056 (S.D. Cal. Aug. 19, 2021) ................................................................4, 6, 8

*AntennaSys, Inc. v. AQYR Techs., Inc.*,
976 F.3d 1374 (Fed. Cir. 2020)......................................................................................10, 11

*Arconic Corp. v. Novelis Inc.*,
2023 WL 3025390 (W.D. Penn. Apr. 20, 2023)..............................................................18, 20

*Automatic Radio Mfg. Co. v. Hazeltine Rsch.*,
339 U.S. 827 (1950)............................................................................................................5, 6

*Badwa v. Veritec, Inc.*,
367 F. Supp. 3d 890 (D. Minn. 2018)....................................................................................19

*Bd. of Regents Univ. of Tex. Sys. v. Mission Pharm. Co.*,
2006 WL 8436935 (N.D. Tex. June 12, 2006) ......................................................................17

*Broadband iTV, Inc. v. OpenTV, Inc.*,
2018 WL 4927935 (N.D. Cal. Feb. 22, 2018) ................................................................18, 20

*Duval Wiedmann, L.L.C. v. Inforocket.com, Inc.*,
374 Fed. App'x 482 (5th Cir. 2010) ......................................................................................18

*Engel Indus., Inc. v. Lockformer Co.*,
96 F.3d 1398 (Fed. Cir. 1996)................................................................................................5

*ExcelStor Tech., Inc. v. Papst Licensing GMBH & Co. KG*,
541 F.3d 1373 (Fed. Cir. 2008)......................................................................................17, 20

*Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
463 U.S. 1 (1983)..................................................................................................................20

*Gunn v. Minton*,
568 U.S. 251 (2013)........................................................................................................ *passim*

*Houston Refining, L.P. v. United Steel, Paper & Forestry*,
763 F.3d 396 (5th Cir. 2014) .................................................................................................7

*In re Qualcomm Litig.*,
2017 WL 5985598 (S.D. Cal. Nov. 08, 2017) ....................................................................4, 8

*Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*,
 938 F.3d 1355 (Fed. Cir. 2019)...................................................................... *passim*

*Jang v. Boston Sci. Corp*,
 767 F.3d 1334 (Fed. Cir. 2014)...................................................................... *passim*

*Jasper v. Fed. Emergency Mgmt. Agency*,
 414 Fed. App'x 649 (5th Cir. 2011) ....................................................................8

*Kimble v. Marvel Ent., LLC*,
 576 U.S. 446 (2015)..........................................................................................19

*Levi Strauss & Co. Aqua Dynamics Sys. Inc.*,
 2016 WL 1365946 (N.D. Cal. Apr. 6, 2016) ......................................................3

*MedImmune, Inc. v. Genetech, Inc.*,
 549 U.S. 118, S.Ct. 764, 166 L.Ed. 604 (2007)......................................4, 8, 12, 15

*Miotox, LLC v. Allergan, Inc.*,
 2015 WL 2084493 (C.D. Cal. May 5, 2015) ......................................................8

*Montez v. Dep't of Navy*,
 392 F.3d 147 (5th Cir. 2004) ..............................................................................7

*Natec, Inc. v. Deter Co.*,
 28 F.3d 28 (5th Cir. 1994) ..........................................................................17, 18

*NeuroRepair, Inc. v. The Nath Law Grp.*,
 781 F.3d 1340 (Fed. Cir. 2015)................................................................3, 10, 11, 18

*Powertech Tech. Inc. v. Tessera, Inc.*,
 660 F.3d 1301 (Fed. Cir. 2011)........................................................................8, 9

*Scheiber v. Dolby Lab's, Inc.*,
 293 F.3d 1014 (7th Cir. 2022) ......................................................................17, 18

*STC UNM v. Quest Diagnostics Inc.*,
 2020 WL 4734899 (D.N.M. Aug. 14, 2020) ................................................3, 12

*Texas v. American Tobacco Co.*
 463 F.3d 399 (5th Cir. 2006) ..............................................................................5

*U.S. Valves, Inc. v. Dray*,
 212 F.3d 1368 (Fed. Cir. 2000)........................................................................3, 10

*Verance Corp. v. Digimarc Corp.*,
 2011 WL 2182119 (Del. June 2, 2011)..............................................................4, 8

**Statutes**

28 U.S.C. § 1454(a) .................................................................................................9, 19

**TABLE OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| P | 2002 Purchase Agreement **FILED UNDER SEAL** |
| Q | Affidavit of Harry Susman (attaching docket sheet for *Kimble v. Marvel* |
| R | *Amerath, Inc. v. ChowNow, Inc.*, 2021 WL 3686056 (S.D. Cal. Aug. 19, 2021) |
| S | *Arconic Corp. v. Novelis Inc.*, 2023 WL 3025390 (W.D. Penn. Apr. 20, 2023) |
| T | *Bd. of Regents Univ. of Tex. Sys. v. Mission Pharm. Co.*, 2006 WL 8436935 (N.D. Tex. June 12, 2006) |
| U | *Broadband iTV, Inc. v. OpenTV, Inc.*, 2018 WL 4927935 (N.D. Cal. Feb. 22, 2018) |
| V | *Duval Wiedmann, L.L.C. v. Inforocket.com, Inc.*, 374 Fed. App'x 482 (5th Cir. 2010) |
| W | *Gonzalez v. SRC Real Estate (TX), LLC, 2022 WL 1121038, at *1 (S.D. Tex. Apr. 14, 2022).* |
| X | *Jasper v. Fed. Emergency Mgmt. Agency*, 414 Fed. App'x 649 (5th Cir. 2011) |
| Y | *In re Qualcomm Litig.*, 2017 WL 5985598 (S.D. Cal. Nov. 08, 2017) |
| Z | *Levi Strauss & Co. Aqua Dynamics Sys. Inc.*, 2016 WL 1365946 (N.D. Cal. Apr. 6, 2016) |
| AA | *Miotox, LLC v. Allergan, Inc.*, 2015 WL 2084493 (C.D. Cal. May 5, 2015) |
| BB | *STC UNM v. Quest Diagnostics Inc.*, 2020 WL 4734899 (D.N.M. Aug. 14, 2020) |
| CC | *Verance Corp. v. Digimarc Corp.*, 2011 WL 2182119 (Del. June 2, 2011) |
| | |

## I.    SUMMARY

This state law breach of contract dispute does not fit within the "special and small category" of state law disputes that are deemed to arise under the patent law under *Gunn v. Minton*. First, this case could be removable only if Plaintiffs' breach of contract claim ***depended on a finding*** of infringement or validity of the Licensed RH Patents; otherwise, both Parties' claims would not arise under the patent law nor would a case or controversy exist. Defendants do not appear to dispute this; instead, Defendants claim that their royalty obligation depends on a finding of infringement. The unambiguous language of the royalty clause, however, does not tie royalties to infringement. Recognizing this problem, Defendants argue that this Court must "assume" jurisdiction because Defendants dispute whether the contract requires infringement. This argument is not only unsupported as a matter of law but also it is belied by Defendants' argument that the Court may consider the plain language of the Agreements. *E.g.*, Ulterra Opp., Doc. No. 45 at 7-8.

Second, even if royalties depended on a finding of infringement or validity, that would not make the case automatically removable. Under *Gunn*, Defendants would have to demonstrate the alleged infringement or invalidity issue was "substantial." Defendants utterly ignore the extensive law on this issue. Instead, Defendants merely proclaim that infringement or invalidity is a "substantial" issue and cite to *Jang v. Boston Scientific Corp*. But this dubious argument was rejected squarely by the Federal Circuit. *Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC,* 938 F.3d 1355, 1364 (Fed. Cir. 2019) (distinguishing *Jang* and holding run-of-the-mill infringement or validity issues do not present "substantial" patent law issues).

Third, while Varel and Ulterra do not dispute validity, Smith and Schlumberger raise the issue. Validity is demonstrably irrelevant to Plaintiffs' limited contract claims against those defendants. Plaintiffs sue Smith only for unpaid royalties from October 2021 to March 2022.

Under the Smith License, only a final judgment of invalidity could excuse non-payment; at this point, a final judgment would not be a defense to Plaintiffs' time-limited claim against Smith. As to Schlumberger, Plaintiffs' breach claim relates to a specific, one-off contractual provision that imposes damages on Schlumberger for selling "unlicensed" products. That claim has nothing to do with the `534 and `752 patent, much less whether those patents are valid.

Finally, Defendants' invocation of *Brulotte* does not make the case removable. Patent misuse is an affirmative defense. Black-letter law holds that assertion of an affirmative defense, including a patent affirmative defense asserted in a declaratory judgment, does not constitute a claim "arising under the patent laws." This case should be remanded to state court where it belongs.

## II.    ARGUMENT

### A.    Infringement Is Irrelevant and Cannot Create Subject-Matter Jurisdiction.

Defendants argue that Plaintiffs' breach of contract claim for failure to pay royalties arises under the federal patent laws because the claim requires that Defendants infringe the `534 or `752 Patents. The plain language of the license agreements, however, makes clear infringement is irrelevant to Defendants' obligation to pay royalties. Because Plaintiffs' breach of contract claims do not depend on infringement, the claims do not "necessarily raise" an issue about infringement (*Gunn* factor 1), and thus jurisdiction is lacking. Jurisdiction is lacking over Defendants' counterclaims for a declaratory judgment of non-infringement because (1) no case or controversy exists regarding infringement (any decision regarding infringement would have no impact on royalty obligation); and (2) the counterclaims do not "arise under the patent law" because the alleged infringement issue, which is nothing more than a run-of-the-mill infringement dispute, would not be "substantial" (*Gunn* factor 3).

**1. Jurisdiction Turns on Whether Breach of Contract "Depends" on a Finding of Infringement**.

The Parties appear to agree that under the applicable law, the critical question is whether Plaintiffs' breach of contract claim depends on a finding of infringement. Defendants note that "courts have repeatedly held that a state-law breach of contract case arises under federal law ***where it depends on a finding that the defendant has infringed*** the plaintiff's patents." *E.g.*, SLB/Smith Opp., Doc. No. 42 at 7 (emphasis added). Defendants cite cases where the license at issue expressly required infringement as a condition to payment of a royalty. *E.g.*, *Levi Strauss & Co. Aqua Dynamics Sys. Inc.*, 2016 WL 1365946, at *5 (N.D. Cal. Apr. 6, 2016) ("Thus, to prove that Levi breached the Agreement by failing to pay royalties, Aqua will have to show that Levi continued . . . to use a process that was 'covered by a valid and enforceable patent.'"); *Jang v. Boston Sci. Corp*, 767 F.3d 1334 (Fed. Cir. 2014) ("The Assignment Agreement defines 'Contingent Payment Products' as 'any stent . . . the development, manufacture, use, or sale of which is covered by one or more *Valid Claims of the Patents* . . . .'" (emphasis in original); *U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, (Fed. Cir. 2000) (same). While a breach claim that depends on a finding of infringement is necessary to confer federal jurisdiction, the infringement issue also must be "substantial" (here, it is not, *see infra*, at 10-12). *E.g.*, *STC UNM v. Quest Diagnostics Inc.*, 2020 WL 4734899 (D.N.M. Aug. 14, 2020) (remanding breach claim even though the royalties were owed only for products "which infringe a Valid Claim" because the infringement and validity issues were not "substantial").

In contrast, where a royalty obligation does ***not depend*** on infringement, no federal jurisdiction exists over a claim of breach. First, such a claim would not arise under patent law because the claim would not "necessarily raise" a patent issue—infringement would not be an element of the claim. *NeuroRepair, Inc. v. The Nath Law Grp.*, 781 F.3d 1340, 1342 (Fed. Cir.

2015) ("[A] patent law issue will be necessarily raised only if it is a necessary element of one of the well-pleaded claims."). Moreover, a declaratory judgment of non-infringement to defeat such a breach claim would not present a case or controversy under the test announced in *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118 (2007). The reason is that where the royalty obligation does not depend on infringement, no "substantial controversy, between parties having adverse legal interests" exists and any resulting declaration would not conclusively resolve the breach dispute. *E.g., In re Qualcomm Litig.*, 2017 WL 5985598, at *22 (S.D. Cal. Nov. 08, 2017) ("Because the royalty rates in the SULAs are not contingent on patent invalidity or noninfringement, there is no case or controversy because any declaration of the Nine Additional Patents-in-Suit would not conclusively resolve the dispute regarding royalties owed to Qualcomm."); *Verance Corp. v. Digimarc Corp.*, 2011 WL 2182119, at *6 (Del. June 2, 2011) ("In fact, there is no provision in the License Agreement or its addendums that make Verance's obligations contingent on patent validity or infringement. Thus, a declaration of invalidity or non-infringement would not 'admit of specific relief through a decree of conclusive character.'" (quoting *MedImmune*, 549 U.S., at 127)). Conspicuously, the opinion in *Amerath, Inc. v. ChowNow, Inc.*, 2021 WL 3686056 (S.D. Cal. Aug. 19, 2021), which Defendants repeatedly cite, observes that cases involving "licensing agreements that did not require the licensee to practice the claims of the patent in order to incur royalty obligations" find no federal jurisdiction. *Id.*, at *11 & n. 12.

### 2. Under the Plain Language of the Agreements, Royalty Payments Do Not Depend on Infringement.

Under the plain language of the License Agreements, the royalty obligation does not depend on infringement. As this Court is well-aware, Texas law (which governs the Agreements, *e.g.*, Mot., Doc. No. 33, Ex. B at §9.03) enforces the unambiguous, plain language of contracts without consideration of any extrinsic evidence. *Texas v. American Tobacco Co.*, 463 F.3d 399,

407 (5th Cir. 2006). The plain meaning of the "go-forward" royalty obligation makes infringement irrelevant: the royalty is owed on sales of products ("Licensed Drill Bits") that have specified features without reference to any of the many patent claims. *E.g.*, Mot. Ex. B §4.01(b). This sort of "total sales" royalty obligation is well-accepted. *Automatic Radio Mfg. Co. v. Hazeltine Rsch.*, 339 U.S. 827, 833-34 (1950) ("Payment for the privilege is required regardless of use of the patents. . . . We cannot say that payment of royalties according to an agreed percentage of the licensee's sales is unreasonable."); *Engel Indus., Inc. v. Lockformer Co*., 96 F.3d 1398, 1408 (Fed. Cir. 1996) ("We agree with the magistrate judge's statement that royalties may be based on unpatented components if that provides a convenient means for measuring the value of the license."). Defendants do not dispute this interpretation of the words used in their respective royalty provisions.

Instead, Defendants point to an entirely distinct provision: the license grant. This provision grants Defendants the right to use the licensed patents, so the grant is made "under the Licensed RH Patents." *E.g.*, Mot., Doc. No. 33, Ex. B at §3.01 (Defendants are granted a license "under the Licensed RH Patents . . . to make, use, sell, offer to sell, and import" drill bits). The license grant gives the Defendants the right to use the inventions disclosed in the patents for drill bits without fear of an infringement suit. This license grant, however, does not purport to address Defendants' royalty obligation, which is the consideration Defendants agreed to pay for the option to use the patents and is addressed in a stand-alone provision. *E.g.*, *id*. §4.01(b). Under the separately stated and distinct royalty provision, the Defendants agreed to pay royalties regardless of whether Defendants products actually used one or more of the Licensed RH Patents. As the Supreme Court explained in *Automatic Radio*,

> What [Defendant] acquired by the agreement into which it entered was the privilege
> to use any or all of the patents and developments as it desired to use them. If it

chooses to use none of them, it has nevertheless contracted to pay for the privilege of using existing patents plus any developments resulting from respondent's continuous research.

339 U.S., at 834. The fact that the license grant was "under" the patents does not change the unambiguous obligation to pay royalties irrespective of whether Defendants ultimately chose to practice the patents.[1]

Defendants also attempt to avoid the plain meaning of the contracts by pointing to language designed to carve out certain types of products from the royalty obligation. The carve-out applies to products having PDC cutters manufactured using a process described in a patent that was issued in 1992, almost a decade before any of the License RH Patents were filed. The carve-out notes that cutters made by a certain process and products using those cutters "do not infringe the Licensed RH Patents and are not considered partially leached cutters." *E.g.*, Mot., Doc. No. 33, Ex. B at §4.01(d). In other words, the carve-out represents the Parties' agreement that the sale of certain products having cutters covered by a particular piece of prior art known at the time would not trigger royalties even if the products otherwise met the Licensed Drill Bits definition. It does not purport to alter the general "go forward" royalty obligation. The carve-out actually undermines Defendants' interpretation: If the Parties intended that only infringing products would trigger a royalty payment, the carve-out would be superfluous because non-infringing products could never trigger a royalty payment.

---

[1] In *Ameranth v. ChowNow, Inc*., 2021 WL 3686056 (S.D. Cal. Aug. 19, 2021), the court determined resolution of the breach of contract claim required interpreting the patents because the royalty provision was limited to activities "within the Fields of Use" of the license patents. *Id*. 2021 WL 3686056, at *10 ("[T]he Court agrees that royalty obligations are contingent upon Defendant practicing the Licensed Patents within the designated Field of Use, which would require the Court to interpret the Licensed Patents as well as whether Defendant performs activities falling within the scope of their claims."). The royalty provision in the licenses at issue here obviously do not contain any similar language.

Defendants also point to a recital, *e.g.*, Mot., Doc. No. 33, Ex. B at §1.10, that says each Party wants to manufacture products "without infringing the rights of the other under any patent or patent application." This provision does not purport to alter the royalty obligation; in fact, the provision is entirely non-substantive. Moreover, this recital simply addresses the license grant, which immunized Defendants from any infringement claims. [2]

Defendants also claim that Plaintiffs' request for a declaration that the `752 patent is a "Licensed RH Patent" "belies" the notion that Defendants owe royalties even if the patents are not infringed. *E.g.*, Ulterra Opp., a 13. Defendants provide no explanation for this argument. If the `752 patent meets the contractual definition of "Licensed RH Patents," then the royalty obligation extends until expiration of the `752 patent. Whether the `752 patent is a "Licensed RH Patent" turns on whether the patent meets the contractual definition, *E g.,* Mot. Doc. No. 33, Ex. B at §2.06, which has nothing to do with whether Defendants infringes and is a pure state contract issue.

### 3. This Court Cannot Assume Subject-Matter Jurisdiction.

The Defendants argue that the Court must ignore the unambiguous language of the contracts and assume subject-matter jurisdiction merely because they argue the royalty obligations require infringement. This argument is based on a misreading of the relevant law.

Defendants rely on the Fifth Circuit's holding that "where issues of fact are central both to subject matter jurisdiction and the claims on the merits, we have held that the trial court must assume jurisdiction and proceed to the merits." *See SLB/*Smith Opp., Doc. No. 42 at 10 (quoting *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004)). But the Fifth Circuit has expressed doubt whether *Montez* remains good law given that the United States Supreme Court has rejected the doctrine of "hypothetical jurisdiction," and the Fifth Circuit has confined the application of

---

[2] Also, the Varel and Ulterra contracts contained cross-licenses of their patents to Plaintiffs, and the Smith contract granted Plaintiffs an option to license Smith's patents. *See* Mot., Doc. No. 33, Exs. D, E & B.

*Montez* to situations that are inapplicable here. *Houston Refining, L.P. v. United Steel, Paper &* *Forestry*, 763 F.3d 396, 407 n. 20 (5th Cir. 2014) ("[W]e express doubt about whether a court can ever "assume jurisdiction and proceed to the merits. . . . Read narrowly, our holding in *Montez* is limited to actions under the Federal Tort Claims Act. . . ."); *Jasper v. Fed. Emergency Mgmt.* *Agency*, 414 Fed. App'x 649, 651 (5th Cir. 2011) (*Montez/Williamson* rationale does not apply where the plaintiffs' cause of action arises under state law). As this Court knows, a court can resolve a Rule 12(b)(1) motion based on "the court's resolution of disputed facts" if appropriate. *Gonzalez v. SRC Real Estate (TX), LLC*, 2022 WL 1121038, at *1 (S.D. Tex. Apr. 14, 2022).

Contrary to Defendants' argument the Federal Circuit's decision in *Powertech Tech. Inc.* *v. Tessera, Inc.*, 660 F.3d 1301 (Fed. Cir. 2011) did not hold that the mere existence of a dispute about the meaning of a royalty obligation is sufficient to create patent jurisdiction. To begin with, the Federal Circuit concluded the District Court's resolution was "premature" because the contract dispute could not be resolved without discovery. *Id.*, at 1310 & n. 7 ("[N]o discovery into the proper interpretation of the license agreement has been conducted" so "the district court's contract interpretation was clearly premature"). The *Powertech* contract was governed by California law, which allows consideration of "evidence apart from the contract to explain the meaning of terms that are otherwise unambiguous." *Id.*, at n. 7. Texas law, which governs the contracts here, is fundamentally different.

Unlike the California law applied in *Powertech*, a court applying Texas law is precluded from considering extrinsic evidence absent ambiguity. As a result, assuming this Court concludes the License Agreements are unambiguous, this Court can interpret the License Agreements without the need to permit Defendants to develop the factual record. Even Defendants concede the Court "does not need to accept [the Parties'] disputed interpretation" and can consider the contract's

8

"plain language." *E.g.*, SLB/Smith Opp., Doc. No. 33 at 7 (quoting *Amerath*); *see, e.g., In re Qualcomm Litig.*, 2017 WL 5985598, at *21 ("[T]he Court's decision . . . looks at the plain language of the agreements that the CMs provided for the Court's review in a manner similar to the review the Supreme Court performed in *MedImmune.*"); *Verance*, 2011 WL 2182119, at *6 & n. 4 (same); *Miotox, LLC v. Allergan, Inc.*, 2015 WL 2084493, at *5 (C.D. Cal. May 5, 2015) (finding jurisdiction because "[r]egardless of Miotox's insistence that the License Agreement covers a 'broad grant of rights,' the actual language of the Agreement supports Allergan's position that royalties are tied to the practice of the Licensed Patents.").

Moreover, *Powertech* held that the existence of a contract interpretation dispute meant that the declaratory judgment was based on a case or controversy; it did not hold that the claim arose under the patent law. *Powertech Tech. Inc.*, 660 F.3d, at 1310 ("[W]e simply hold that the dispute between PTI and Tessera—as to whether the license agreement requires royalty payments to be tied to valid patent coverage—is sufficient to support declaratory judgment jurisdiction.").[3] To justify removal, Defendants must show *both* (1) the existence of a case or controversy and (2) that "the claim for relief aris[es] under any Act of Congress relating to patents" under 28 U.S.C. § 1454(a). In other words, even if this Court had to turn a blind eye to the unambiguous contract language (which it does not) and assume the royalty obligation might require infringement, Defendants still would have to show some claim arises under patent law. Among other shortcomings, the claims here would ***not*** arise under patent law because this case do not raise a ***substantial*** issue of infringement.

---

[3] The Court had already concluded federal patent jurisdiction existed and the parties were diverse in any event. *Powertech*, 660 F.3d at 1308 & 1303 (noting that Powertech was a citizen of Taiwan).

9

Because neither Plaintiffs nor Defendants assert a cause of action created by the patent laws, the only way this dispute could "arise under" the patent laws would be if it fit into the "slim category" of state law claims that raise a substantial question of patent law under *Gunn v. Minton*, 568 U.S. 251 (2013). Defendants cannot make such a showing because the underlying infringement issue does not present a "substantial" question of patent law (*Gunn* factor 3) and exercising jurisdiction would upset the federal-state balance (*Gunn* factor 4). Since *Gunn*, the Federal Circuit squarely rejected the notion that if a state law claim may require a court to conduct an infringement analysis, the claim necessarily arises under the patent laws. *AntennaSys, Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374, 1381 (Fed. Cir. 2020) ("Citing a case [*U.S. Valves Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000)] from this court that long predates *Gunn v. Minton*, [Appellant] contends that, whenever a state court claim requires a court to engage in claim construction, the claim necessarily arises under the Patent Act. We disagree."). A garden-variety infringement dispute "is not enough" to trigger patent jurisdiction. *E.g.*, *AntennaSys, Inc.*, 976 F.3d, at 1382; *Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC,* 938 F.3d 1355, 1364 (Fed. Cir. 2019) (concluding a "run-of the-mill question of infringement" issue embedded in a state law claim would not meet the *Gunn* test).

Defendants do not even bother articulating their infringement theory. Defendants utterly fail to explain how their bare assertion of non-infringement would raise a substantial issue of patent law under the three-factor test from *NeuroRepair, Inc. v. The Nath Law Grp.,* 781 F.3d 1340, 1342 (Fed. Cir. 2015), which requires: (1) the existence of a "pure issue" of patent law that "is dispositive"; (2) the resolution of which "will control numerous other cases"; and (3) where the Government "has a direct interest in the availability of a federal forum to vindicate its own administrative action." *Inspired Dev. Grp.,* LLC, 938 F.3d, at 1364. Defendants utterly ignore this

test and instead simply assert that the "substantiality" requirement is met and cite to the decision in *Jang v. Boston Scientific Corp.*, 767 F.3d 1334 (Fed. Cir. 2014). *E.g.*, SLB/Smith Opp., Doc. No. 42 at 8; Ulterra Opp., Doc. No. 45 at 9; Varrel Opp., Doc. No. 38 at 10. The Federal Circuit, however, rejected this precise argument in *Inspired Development*, 781 F.3d, at 1365 (Appellee "exclusively cites to our decision in *Jang* . . . for support." (citation omitted)). The court explained that the substantiality found in *Jang* turned on the fact that the case involved a jurisdictional dispute among the federal courts of appeals (*i.e.*, whether an appeal would go to the Federal Circuit or the applicable regional circuit), and thus presented a risk to the system of non-uniform invalidity law. *Id.* ("Thus, the reasoning in *Jang* turned on the system-wide conflict that could arise in the federal courts if regional circuits reached different conclusions about validity."). The Court noted that no such concern exists if a state court decides infringement or validity for various reasons, including that a state court cannot invalidate a patent and its rulings are not binding on federal courts. *Id.*, at 1365-66.

Here, the stakes are even less compelling. Whether Defendants products infringe the `534 or `752 patents does not present any novel issue of law (Defendants do not mention a single legal issue) nor would resolution impact any other parties. At most, the Defendants' alleged infringement issue would involve a fact-bound inquiry into whether Defendants' specific products meet the claims in the `534 and/or `753 patents. *AntennaSys, Inc.*, 976 F.3d, at 1382 ("Here, the federal issue—infringement of the patent in suit—is fact-bound and situation-specific. This case does not present a context-free interpretation of a patent statute, but requires merely that the court apply patent law to the facts of the case."). There is no suggestion that resolution of this dispute "will control numerous other cases." *Inspired Dev. Grp.,* LLC, 938 F.3d, at 1364.

Worse, if federal courts exercised jurisdiction over license agreement disputes merely because non-infringement were alleged, the federal-state balance would be upset (*Gunn* factor 4). Such a rule would result in "gamesmanship in non-diversity actions [that] would upset the balance between state and federal courts" because a party simply could assert non-infringement and avoid state court. *Id*., at 1369 ("[A] plaintiff could create a federal jurisdictional hook to avoid state court in any case involving almost any state law claim by doing little more than pleading allegations that involve an embedded infringement or validity analysis. Clearly, such gamesmanship in non-diversity actions would upset the balance between state and federal courts."). This problem would be exacerbated if courts were precluded (as Defendants contend) from considering the fact that the plain language of the license agreement at issue did not even require infringement. As a result, even if the Court concludes a "case or controversy" exists because the Parties dispute the interpretation of the contract, the dispute does not automatically "arise under" the patent law. *See, e.g., STC UNM*, 2020 WL 4734899.

Finally, Defendants cite *MedImmune*, *Inc. v. Genentech, Inc*., 549 U.S. 118, 135-36 (2007), as support for their argument. *E.g.*, SLB/Smith Opp., at 10. While *MedImmune* discussed the parties' dispute about whether the royalty obligation was tied to infringement, the Court noted that the discussion was not relevant to its jurisdictional analysis. 549 U.S. at 122 (the disagreement about whether the contract required infringement "probably makes no difference to the ultimate issue of subject-matter jurisdiction, but it is well to be clear about the nature of the case before us."). Defendants cite a different portion of the opinion where the Court addressed the actual issue in the case: Whether to create an Article III case or controversy, a declaratory judgment plaintiff/licensee is required to cease royalty payments, before seeking a declaratory judgment that the underlying patent is invalid or not infringed. As part of that discussion, the Court noted that

the licensor had argued that the license implicitly precluded the licensee from challenging validity. The Court observed that if this contract argument were correct (which the Court found dubious), it would merely mean the licensor would win on the merits. 549 U.S. at 135-136. This is the discussion cited by Defendants, and it has no relevance to whether this Court must ignore the plain language of the License Agreements.

### 4. Defendants' Declaratory Judgment of Non-Infringement Due to Expiration Does Not Create Subject Matter Jurisdiction.

Defendants also persist in claiming that their "non-infringement by expiration" Declaratory Judgment claims raise a case or controversy arising under the patent law. *E.g.*, Ulterra Opp., Doc. No. 45 at 15. To explain, each license contains a provision potentially suspending the royalty obligation (at least in part) based on certain final judgments of non-infringement as to certain claims (called "Asserted Claims") in 12 patents existing as of the Effective Date (the "Suspension Provision"). *E.g.*, Mot. Ex. E §8.03(b) & (c). Unlike with the `534 and `752 patents, Defendants do not dispute that they infringe claims in these 12 patents. Rather, Defendants claim that the Suspension Provision is triggered because these 12 patents have ***expired*** such that practice of the claims can no longer give rise to patent ***infringement***. *E.g.*, Doc. No. 1-2, Ex. B.5, Count VII ("Declaratory Judgment that the Asserted Claims are Not Infringed after October 22, 2021 because they are Expired."). This claim does not present a case or controversy arising under the patent law. The only issue touching on patent law is undisputed: the allowable term for the 12 patents has expired. Instead, the only issued raised by Defendants' claim is whether by "non-infringement" in the Suspension Provision, the Parties meant a finding that a particular practice did not meet the elements of Asserted Claims (Plaintiffs' position) or that the 12 patents containing the Asserted Claims expired (Defendants' position). Defendants' claim is contradicted by the unambiguous contract language. The Agreements contain a distinct provision addressing termination of the

royalty obligation upon patent expiration. The provision provides for termination of the royalty obligation upon the last to expire of "*all* of the Licensed RH Patents." *E.g.*, Mot., Doc. No. 33, Ex. E at §8.04(a) (Ulterra) ("Upon expiration of all of the Licensed RH Patents . . . Ulterra's obligation to pay royalties . . . shall terminate."). This provision would be rendered meaningless by Defendants' interpretation of the Suspension Provision, which would terminate royalties upon expiration of only the 12 patents. More importantly, this clearly is a question of state law—pure contract interpretation—and does not arise under the patent law.

### B. Validity Is Irrelevant and Cannot Create Subject-Matter Jurisdiction.

Alleged validity issues do not create subject-matter jurisdiction. The analysis, however, differs slightly for Varel and Ulterra, vs. Smith and Schlumberger. The reason is that Varel and Ulterra do not challenge validity directly, and Plaintiffs' claims against Smith and Schlumberger are limited such that validity of the `543 and `752 patents could not conceivably be relevant.

***Varel & Ulterra.*** Because Varel and Ulterra do not assert any counterclaims based on invalidity, the only way validity issues could create subject-matter jurisdiction over claims against Varel and Ulterra is if Plaintiffs' state law claim met the *Gunn* test. But they do not for at least the following four reasons. First, because the royalty obligation does not depend on validity of the patents, *supra*, at 4-7, Plaintiffs' breach of contract claims for failure to pay royalties against Varel and Ulterra do not "necessarily raise" any issue of validity (*Gunn* factor 1). Second, validity is not actually disputed among Plaintiffs, Varel, and Ulterra (*Gunn* factor 2) because Varel and Ulterra do not make any allegations of invalidity at all. Third, Varel and Ulterra utterly fail to explain how any validity issue, which neither party bothers to raise, would raise a "substantial" question of patent law (*Gunn* factor 3), except to cite to *Jang* which is insufficient as discussed above. *See supra*, at 11; *Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC,* 938 F.3d 1355, 1365-66 (Fed.

Cir. 2019) (holding that a state court deciding validity issues does not raise any of the concerns underlying *Jang*). Fourth, Defendants' argument (royalty disputes necessarily require a determination of validity) would destroy the federal-state balance (*Gunn* factor 4) because it would allow a party to get any licensing dispute into federal court. *Id*., at 1368 ("Indeed, a plaintiff could create a federal jurisdictional hook to avoid state court in any case involving almost any state law claim by doing little more than pleading allegations that involve an embedded infringement or validity analysis.").

  *Smith*. Plaintiffs' claims against Smith do not raise a substantial issue of patent law nor do Smith's declaratory judgments claims that the `534 and `752 are invalid raise a case or controversy, much less one arising under patent law. The *Gunn* analysis for Plaintiffs' claims against Smith is slightly different than above because Smith does dispute validity (*Gunn* factor 2) while the failure to meet *Gunn* factors 1 and 3 is especially obvious. Invalidity is not "necessarily raised" by the claims against Smith (*Gunn* factor 1) and would not be substantial (*Gunn* factor 3) given the temporal limitation of the claim for unpaid royalties against Smith. A finding of invalidity would have zero impact on Smith. As a result, neither Plaintiffs' affirmative claim nor Smith's counterclaim could arise under patent law, and Smith's declaratory judgments claims could not present a case or controversy because invalidity does not impact the parties' respective rights.

  Plaintiffs' claim against Smith is for unpaid royalties between October 21, 2021, and March 28, 2022. Second Amended Petition, Doc. No. 1-2, Ex. B.4 ¶ 44 (hereinafter "SAP"). Although Smith stopped paying royalties on October 21, 2022, Smith waited until March 28, 2022, to exercise its unilateral termination right (which only Smith had among the Defendants). As a result, Plaintiffs only seek damages for unpaid royalties from October 21, 2021, through March 28, 2022. SAP ¶ 44 ("Consequently, Defendant Smith owes royalties under its License Agreement between

October 21, 2021 and March 28, 2022."). Smith's royalty obligation is only suspended upon a finding of invalidity in "a non-appealable court decision." Mot., Doc. No. 33, Ex. B at §7.04(a). No such decision was entered before March 28, 2022, and a subsequent decision would not be a defense to unpaid royalties before March 28, 2022. As a result, Plaintiffs' breach of contract claim against Smith does not raise a federal question because it does not "necessarily raise" any issue regarding validity (*Gunn* factor 1). Likewise, Smith's Declaratory Judgment of invalidity of the `534 patent (Smith Counterclaim Count I) and the `752 patent (Count II) does not present a case or controversy because it fails to raise a "substantial controversy" between the parties and even if granted, would not "admit of specific relief through a decree of conclusive character." *MedImmune,* 549 U.S., at 137.

Smith tries to avoid this result by making the disingenuous claim that Plaintiffs are seeking damages beyond March 28, 2022. SLB/Smith Opp., Doc. No. 42 at 12. Smith claims that Plaintiffs' Count II does not contain language limiting the time period for which damages were sought. *Id*. Defendants ignore that paragraph 46 of Count II incorporates "the allegations in the preceding paragraphs," which would include paragraph 44's allegation that "Smith owes royalties under its License Agreement between October 21, 2021, and March 28, 2022."

***Schlumberger.*** Schlumberger's effort to use validity issues to create subject-matter jurisdiction is head scratching because Plaintiffs do ***not*** assert a claim for unpaid royalties against Schlumberger. Instead, Plaintiffs assert against Schlumberger a claim for damages based on selling "unlicensed downhole tools." SAP, Doc. No. 1-2, Ex. B.4 at ¶54 (Count III). Plaintiffs are not suing Schlumberger for failing to pay royalties on licensed products or "Licensed RH Bits," which is the subject of Count II asserted against all other Defendants. SAP, Doc. No. 1-2, Ex. B.4 at ¶ 49. These "downhole tools" are "unlicensed" under the license agreements because they are not

16

drill bits (, Mot., Doc. No. 33, Ex. C at §2.05 (defining "Licensed Drill Bits" as "PDC Bits" that meet certain specifications); §2.12. (defining "PDC Bits" means "drill bits . . ."), and have nothing to do with the royalty obligation. *Id.* §4.01(a) (royalties owed on the sale of "Licensed Drill Bits"). Instead, Plaintiffs' claim is based on a provision in the Schlumberger License that requires Schlumberger to pay 70% of the gross margin of any "unlicensed downhole tools." SAP, Doc. No. 1-2, Ex. B.4 at ¶ 25.[4] The validity of `534 or `752 is utterly irrelevant to the breach claim against Schlumberger because it does not arise from the license grant or the royalty obligation; it is based on an independent contract obligation unrelated to the patent license.

Finally, Plaintiffs assert a Declaratory Judgment claim against Schlumberger that the `752 patent constitutes a "Licensed RH Patent" (SAP Count I), but this raises purely a state law contract interpretation issue, *see supra*, at 7, and does not necessarily raise any issue about the validity of the `752 patent.

### C. The *Brulotte* Issue Does Not Create Subject-Matter Jurisdiction.

Defendants assert that any claim for breach of a license agreement that implicates *Brulotte* is automatically removable to federal court. This argument is wrong.

Prior to the Supreme Court's holding in *Gunn v. Minton*, the black-letter rule was that the mere presence of a patent defense did ***not*** cause a claim to arise under the patent laws. *ExcelStor Tech., Inc. v. Papst Licensing GMBH & Co. KG*, 541 F.3d 1373 (Fed. Cir. 2008) (patent exhaustion is "a defense to patent infringement, not a cause of action" and "claims, which merely invoke

---

[4] The 2002 Purchase Agreement granted Schlumberger a royalty-free license to use certain "Intellectual Property" (which was defined as a list of patents attached in a schedule that does not include the `534 and `752 patents) to make certain "downhole tools other than drill bits" but Schlumberger first had to offer Plaintiffs the right to supply the products or components. 2002 Purchase Agreement §5.7(a) (attached as Exhibit P). In 2009, Schlumberger obtained a license to use the "Licensed RH Patents" in drill bits (not downhole tools). A separate provision was added to the Schlumberger License that imposed damages measured as 70% of the gross selling price if Schlumberger violated the 2002 Agreement and sold a "Non-Licensed Product that is not a PDC Bit with one or more Leached cutters." Mot. Ex. C § 7.05(b)(2).

defenses to hypothetical claims of patent infringement do not 'arise under' the patent laws."). That rule specifically applied to *Brulotte* issues. *Scheiber v. Dolby Lab's, Inc.*, 293 F.3d 1014, 1016 (7th Cir. 2022) (Posner, J.) ("The presence of a federal defense (here, patent misuse [based on *Brulotte*]) is irrelevant to jurisdiction."). The reasoning behind this rule was a straightforward application of the well-pleaded complaint rule.

As support for the contrary position, Defendants cite a single unpublished decision from 2006 from the Northern District of Texas that has never been cited by any other court and is utterly unpersuasive. *Bd. of Regents Univ. of Tex. Sys. v. Mission Pharm. Co.*, 2006 WL 8436935 (N.D. Tex. June 12, 2006). The opinion provides no explanation for its mysterious holding. The Court simply asserts the case is removable because the *Brulotte* issue raise a "substantial" question of patent law, and cites to the Fifth Circuit decision in *Natec, Inc. v. Deter Co.*, 28 F.3d 28 (5th Cir. 1994). But *Natec* dealt with the statute defining the scope of the Federal Circuit's jurisdiction and provided zero analysis for its single-sentence assertion. Notably, the Fifth Circuit more recently ruled the exact opposite of *Natec* (also in the context of construing the Federal Circuit's jurisdiction) and expressly adopted the ruling in *Scheiber v. Dolby* addressing *Brulotte* "A suit to enforce a patent licensing agreement does not arise under federal patent law and the presence of a federal defense is irrelevant to jurisdiction." *Duval Wiedmann, L.L.C. v. Inforocket.com, Inc.*, 374 Fed. App'x 482, 484 (5th Cir. 2010) (quoting *Scheiber*) (brackets omitted).

More importantly, the authorities cited by Defendants predate the Supreme Court's decision in *Gunn v. Minton* and *Gunn*'s progeny including the Federal Circuit's test for when a patent issue is "substantial." The mere presence of a potential *Brulotte* issue cannot transform a breach of contract claim into one of the "special and small category" of state law claims that arise under federal patent law. First, the state law claim must "necessarily raise" (*Gunn* factor 1) a patent

law issue, which means that a patent law issue "is a necessary element" of a well-pleaded claim. *NeuroRepair, Inc. v. The Nath Law Grp.*, 781 F.3d 1340, 1342 (Fed. Cir. 2015) ("[A] patent law issue will be necessarily raised only if it is a necessary element of one of the well-pleaded claims."). Patent misuse and *Brulotte* specifically is an affirmative defense. *E.g.*, *Broadband iTV, Inc. v. OpenTV, Inc.*, 2018 WL 4927935, at *6 (N.D. Cal. Feb. 22, 2018) ("[T]his Court finds that it would not be proper to allow OpenTV to bring an affirmative cause of action for declaratory relief on patent misuse in this case [involving breach of a license agreement]."); *Arconic Corp. v. Novelis Inc.,* 2023 WL 3025390, at *5 (W.D. Penn. Apr. 20, 2023) (same and citing multiple similar cases). Because *Brulotte* is an affirmative defense, *Brulotte* is not a "necessary element" of Plaintiffs' breach of contract claim.

Second, application of *Brulotte* in a dispute between parties to a license agreement does not raise a "substantial" issue of patent law (*Gunn* factor 3). The court's resolution of the issue will not control numerous other cases; at most, resolution will impact the relationship among the parties to the peculiar license agreements at issue. *Inspired Dev. Grp., LLC.* 938 F.3d at 1364-1368 (discussing what sort of cases may control numerous other cases and concluding, "[a]t bottom, [Appellee] ignores the limited nature of the claim. As pled, this claim is about a particular relationship."). Additionally, because the "government has no direct interest in this contract dispute between private parties," the "third factor also militates against treating the issue as substantial." *Id.* at 1368-69.

Defendants also point out that *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 450 (2015) affirmed a declaratory judgment relieving plaintiff from paying royalties under *Brulotte*. But jurisdiction in *Kimble* was based on diversity. *See* Affidavit of Harry Susman (attaching docket sheet for *Kimble*) (Reply Ex. Q).

Defendants claim that enactment of the AIA changes the result, but Defendants provide no explanation. Presumably, Defendants are suggesting that the AIA abrogated the well-pleaded complaint rule so that affirmative defenses can give rise to patent jurisdiction. The AIA merely provided that federal question jurisdiction could be established by the allegations in the defendant's counterclaim. The AIA, however, maintained the requirement that the counterclaim claim must assert "a claim for relief arising under" the patent laws. 28 U.S.C. § 1454(a). As one court has explained, "§1454 seemingly abrogates the 'complaint' portion of the well-pleaded complaint rule . . . [b]ut . . . the 'well-pleaded' requirement remains." *Badwa v. Veritec, Inc.*, 367 F. Supp. 3d 890, 898 (D. Minn. 2018). The long-standing rule has been that an affirmative defense did not create federal jurisdiction merely because it was asserted in a declaratory judgment claim. *See Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 14 (1983). This rule explicitly applied to patent affirmative defenses asserted in declaratory judgments. *E.g.*, *ExcelStor Tech., Inc.*, 541 F.3d 1373 (Fed. Cir. 2008). Post-AIA, courts have adhered to this long-standing rule. *E.g., Broadband iTV, Inc.*, 2018 WL 4927935, at *6; *Arconic Corp.,* 2023 WL 3025390, at *5 (same and citing multiple similar cases). There is zero textual or legislative history suggesting Congress intended the AIA to permit affirmative defenses to create federal jurisdiction if asserted in a declaratory judgment ***counterclaim***. Defendants are free to raise *Brulotte* issues in state court as an affirmative defense to Plaintiffs' claims—just as the defendants did in *Brulotte* itself. *See Thys Co. v. Brulotte*, 382 P.2d 271 (Wash. 1963), *reversed by Brulotte v. Thus Co.*, 379 U.S. 29 (1964).

## III.   CONCLUSION

For the foregoing reasons, this Court should grant the relief requested in Plaintiffs' Motion to Dismiss and Remand.

Dated: May 15, 2023

*Of counsel*

**MCAUGHAN DEAVER PLLC**

Robert J. McAughan, Jr.
Texas Bar No. 00786096
SDID No. 16500
Albert B. Deaver, Jr.
Texas Bar No. 05703800
SDID No. 11300
MCAUGHAN DEAVER PLLC
550 Westcott, Suite 375
Houston, Texas 77007
bmcaughan@md-iplaw.com
(713) 829-3851
adeaver@md-iplaw.com
(281) 460-2315

Respectfully Submitted,

**AHMAD, ZAVITSANOS & MENSING P.L.L.C.**

*/s/ Kevin Leyendecker*
John Zavitsanos
Texas Bar No. 22251650
Kevin Leyendecker
Texas Bar No. 00784472
Shahmeer Halepota
Texas Bar No. 24109968
Michael Killingsworth
Texas Bar No. 24110089
Louis Liao
Texas Bar No. 24109471
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Telephone: 713.655.1101
jzavitsanos@azalaw.com
kleyendecker@azalaw.com
shalepota@zalaw.com
mkillingsworth@azalaw.com
lliao@azalaw.com

**SUSMAN GODFREY L.L.P.**

Harry P. Susman
Texas Bar No. 24008875
SDID No. 23067
Armando Lozano
Texas Bar No. 24120467
1000 Louisiana Street, Suite 5100
Houston, Texas  77002
Telephone: 713.651.9366
hsusman@susmangodfrey.com
alozano@susmangodfrey.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing instrument has been served

on all counsel of record via this Court's ECF System on this 15th day of May, 2023.

*/s/ Kevin Leyendecker*
Kevin Leyendecker