2021 WL 3686056
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

AMERANTH, INC., a
Delaware corporation, Plaintiff,

v.

CHOWNOW, INC., a Delaware
corporation, Defendant.
ChowNow, Inc., a Delaware
corporation, Counter-claimant,

v.

Ameranth, Inc., a Delaware
corporation, Counter-defendant.

Case No.: 3:20-cv-02167-BEN-BLM
|
Signed 08/18/2021
|
Filed 08/19/2021

**Attorneys and Law Firms**

William J. Caldarelli, Caldarelli, Hejmanowski, Page
& Leer, LLP, San Diego, CA, for Plaintiff/Counter
Defendant.

Leiv Blad, Lowenstein Sandler LLP, Palo Alto, CA, for
Defendant/Counter Claimant.

**ORDER DENYING PLAINTIFF'S MOTION TO:**

**(1) DISMISS THE COUNTERCLAIM FOR (A)
FAILURE TO STATE A CLAIM AND (B) LACK
OF SUBJECT MATTER JURISDICTION AND**

**(2) REMAND TO STATE COURT
PURSUANT TO 28 U.S.C. § 1447(c)**

**ECF No. 12, 13, 15, 19, 20, 24, 28, 29, 30]**

ROGER T. BENITEZ, United States District Judge

**I. INTRODUCTION**

**\*1** Plaintiff/Counter-defendant Ameranth, Inc., a
Delaware corporation ("Plaintiff" or "Ameranth")

brings this action for breach of a patent
licensing agreement against Defendant/Counter-
claimant ChowNow, Inc., a Delaware corporation
("Defendant" or "ChowNow"). ECF No. 1; *see also*
ECF No. 12-1 at 6:3-4.

Before the Court are the following Motions: Plaintiff's
Motion to (1) Dismiss for (a) Failure to State a Claim
for Relief and (b) Lack of Subject Matter Jurisdiction
and (2) Remand to State Court, ECF No. 12 (the
"Motions"). Defendant opposed both motions. ECF
No. 19. Plaintiff replied. ECF No. 24. The Motions
were submitted on the papers without oral argument
pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b)
of the Federal Rules of Civil Procedure. ECF No.
25. After considering the papers submitted, supporting
documentation, and applicable law, the Court **DENIES**
both of Plaintiff's Motions.

**II. BACKGROUND**

A judge in this district recently noted that this is by
no means the first patent infringement case brought
by Ameranth and will undoubtedly not be the last.
*See, e.g., Ameranth, Inc. v. Domino's Pizza, Inc.,* No.
3:12-cv-00733-DMS-WVG, 2021 WL 409725, at \*1
(S.D. Cal. Feb. 5, 2021), *reconsideration denied,* No.
12CV0733 DMS (WVG), 2021 WL 1853553 (S.D.
Cal. May 10, 2021) (listing forty-three (43) patent
infringement cases filed by Ameranth in the Southern
District of California). [1] The instant case arises from
Ameranth's ownership of several patents licensed
to Defendant. *See generally* ECF No. 1. Defendant
eventually ceased paying royalties to Plaintiff on the
basis that, *inter alia,* it believed it did not practice the
patents covered by the underlying license agreement
and most of those patents had been declared invalid. *Id.*
Plaintiff contends that Defendant's failure to continue
paying royalties constitutes a breach of the agreements
between the parties. *Id.*

**A. Statement of Facts** [2]
**\*2** Plaintiff is a San Diego-based online and mobile
food ordering technology and software company
that provides web and mobile data synchronization
solutions as part of its food and beverage technology
systems to restaurants throughout the United States.
Complaint, ECF No. 1-2 ("Compl.") at 3:6-9 [3]; *see*

EXHIBIT

R

*also* Motion to Dismiss and Remand, ECF No. 12-1 ("Mot.") at 7:12-14. The United States Patent and Trademark Office ("USPTO") issued multiple utility patents to Plaintiff, including Patent Nos. 6,384,850 (the "850 Patent"), 6,871,325 (the "325 Patent"), 6,982,733 (the "733 Patent"), 8,146,077 (the "077 Patent"), 9,009,060 (the "060 Patent"), and 9,747,651 (the "651 Patent") (collectively, the Licensed Patents). Plaintiff also has other related patent applications pending. Mot. at 7:14-17; *see also* Opposition to Motion to Dismiss and Remand, ECF No. 19 ("Oppo.") at 7:25-28. These patents pertain to a "synchronous communications system and method for generation of computerized menus." Cross-Complaint, ECF No. 1-4 ("Cross-Compl.") at 4:11-13. Plaintiff readily admits that it licenses "its patents to dozens of companies in the hospitality industry." Mot. at 7:17-18.

Defendant is also an online and mobile food ordering company that provides food and beverage ordering technology systems and services to restaurants throughout the United States, including in San Diego, California. Compl. at 3, ¶ 4. Defendant provides its local restaurant customers with Software as a Service tools to help them grow their business by allowing them to process an unlimited number of customer orders through their own websites and mobile applications for a fixed monthly cost. Cross-Compl. at 3, ¶ 2.

## 1. *Initial Lawsuit*

On May 18, 2012, Plaintiff sued ChowNow in the Southern District of California in *Ameranth, Inc. v. ChowNow, LLC*, Case No. 3:12-cv-01201-JLS-NLS ("*ChowNow I*"), alleging three counts of infringement pertaining to the 850, 325, and 077 patents, arising out of Defendant's alleged use of Plaintiff's three aforementioned patents. *ChowNow I*, ECF No, 1; *see also* Mot. at 7:22-23; Oppo. at 7:19-22. This case was voluntarily dismissed pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure ("FRCP"), *with prejudice*, due to a settlement between the parties. *ChowNow I*, ECF No. 8.

## 2. *ChowNow I Settlement Resulting in Licensing Agreements*

On June 22, 2012, as part of the settlement reached in *ChowNow I*, Plaintiff and Defendant entered into an original licensing agreement pursuant to which Plaintiff granted a non-exclusive license[4] to Defendant to certain patents owned by Plaintiff in consideration for Defendant's agreement to (1) mark its system with Plaintiff's patents; (2) submit quarterly reports to Plaintiff of Defendant's royalty producing activities within the Fields of Use[5]; and (3) make royalty payments to Plaintiff." Mot. at 8:3-7; Oppo. at 8:9-15; *see also* Compl. at 3:13-17; Licensing Agreement, ECF No. 14-1 at 3, § 2.1.1. The licensing agreement (the "Licensing Agreement") pertained to the 850 Patent, 325 Patent, 733 Patent, and 077 Patent. ECF No. 14.

**\*3** This Licensing Agreement does not preclude Plaintiff from suing Defendant for patent infringement arising out of Defendant's use of the Licensed Patents outside the Field of Use or for Defendant's discontinuation of royalty payments, which would cause the Agreement to terminate. Other sections of the Agreement, such as Section 2.2.1, governing Plaintiff's "Release of Claims" confirm this:

> Ameranth hereby releases and forever discharges, and covenants not to sue ChowNow ... from any and all claims, causes of action ... known or unknown, actual or potential, suspected or unsuspected,... which Claims have been, or could have been, made ***as of the Effective Date of this Agreement***, or ***which might be made at any time in the future***, **that arise out of**, or relate to, directly or indirectly, the **alleged infringement**, prior to the Effective Date, of the Licensed Patents by any ChowNow ... product, device,

article of manufacture, service or system used or to be used *in the Field of Use.*

Licensing Agreement, ECF No. 14-1 at 3, § 2.2.1 (emphasis added). Thus, the release only applied to infringement occurring before the Agreement within the Field of Use. *See id.*; *see also id.* at 5, § 3.1 (providing that "[t]he Patent License grant set forth herein to ChowNow is limited to the Fields of Use").

On December 20, 2013, Plaintiff and Defendant entered into the First Amended License Agreement (the "FAA"), the operative contract in dispute in this lawsuit, which pertains to the same four Licensed Patents, contains similar terms, and provides Defendant with non-exclusive licensing rights in exchange for Defendant's obligation to pay certain running royalties. Mot. at 8:8-14; Oppo. at 8:16-22; Compl. at 3:21-28. Both the Licensing Agreement and FAA (collectively, the "Agreements") contain a provision, Section 5.3, stating that "[t]he Royalty Payments shall no longer be due if all claims under the Licensed Patents are finally held invalid and/or the Licensed Patents are held to be unenforceable (after all appeals are exhausted) prior to the due date for such Royalty Payments." Licensing Agreement, ECF No. 14 at 7, FAA, § 5.3; *see also* Compl. at 4:14-18 (quoting same). Additionally, pursuant to Section 6.3 of the FAA, if one party "materially defaults in the performance of any provision of this Agreement," the non-defaulting party may provide written notice to the defaulting party, and if the defaulting party fails to cure the default "within sixty (60) days of provision of such notice, the Agreement will terminate." FAA at 8, § 6.3. Upon termination of the Agreements "for any reason, all rights granted to ChowNow under Section 2 of this Agreement, and any responsibility of ChowNow to make future payments to Ameranth beyond the date of termination, will immediately terminate." *Id.* at 8, § 6.4. Thus, based on these provisions, if one party, like Defendant, breached the Agreements and failed to cure that breach within sixty days, the Agreements terminated, "all bets were off," and Plaintiff could sue Defendant for patent infringement.

### 3. *Federal Circuit Invalidation of Three of the Licensed Patents*

In 2016, the Federal Circuit (1) affirmed the PTAB's determination that "[c]laims 1-11 of the 850 patent, claims 1-10 of the 325 patent, and claims 1-16 of the 733 patent are all unpatentable under § 101" and (2) reversed the PTAB's determinations that the other claims were patentable. *Apple, Inc. v. Ameranth, Inc.,* 842 F.3d 1229, 1245 (Fed. Cir. 2016).[6] A few years later, in *Ameranth, Inc. v. Domino's Pizza, LLC,* 792 F. App'x 780, 782, 788 (Fed. Cir. 2019), *cert. denied,* ––– U.S. ––––, 141 S.Ct. 249, 208 L.Ed.2d 23 (2020), the Federal Circuit affirmed the district court's entry of judgment that claims 1, 6-9, 11, and 13-18 of Plaintiff's 077 Patent were "patent ineligible." Thus, the aforementioned claims have been adjudicated as unpatentable, and this Court is bound by those rulings. *See, e.g., Pfaff v. Wells Electronics, Inc.,* 5 F.3d 514, 518 (Fed. Cir. 1993) (providing that "where a determination of the scope of patent claims was made in a prior case, and the determination was essential to the judgement there on the issue of infringement, there is collateral estoppel in a later case on the scope of such claims."). Further, the United States Supreme Court denied Plaintiff's petition for writ of *certiorari* on October 5, 2020, declining to reverse the ruling of invalidity as to the 077 Patent. ECF No. 18 at 7:18-20. Thus, the only remaining valid patents appear to be the 060 Patent and the 651 Patents, which were not subject to either licensing agreement. *See* ECF No. 14 - 14-1. However, the 060 and 651 Patents "claim priority from the applications that issued as the '077, '733, and/or '850 Patents." Cross-Compl. at 7:18-21. Because these patents claim priority from the 077, 733, and 850 Patents, they fall under the Agreements' based upon their plain language. However, within the past year, a court in Delaware invalidated the 651 Patent. *See, e.g., Natera, Inc. v. ArcherDX, Inc.,* No. CV 20-125-LPS, 2020 WL 6043929, at *7 (D. Del. Oct. 13, 2020) (finding that even after applying Ameranth's proposed construction to the 651 Patent for an "information management and synchronous communications system for use in the hospital services industry," the claims are not patentable). As a result, only the 060 Patent appears to remain at issue.[7]

### 4. *ChowNow's Post-Invalidation Default under the Agreements*

**\*4** Defendant claims that in 2018, it concluded that it finally had sufficient information to evaluate its alleged use of Plaintiff's Licensed Patents in the ChowNow Platform, and as a result of this investigation, "ceased making royalty payments to [Plaintiff] after April 30, 2018—the payment due date for the first quarter of 2018." Oppo. at 8:24-9:7.

On August 31, 2018, Plaintiff served Defendant with a written Notice of Default of License Agreement for Failure to Pay Royalties. Compl. at 6:4-5. On September 28, 2018, Plaintiff's legal counsel sent another letter to Defendant demanding that the parties engage in mediation by no later than November of 2018, as required by section 9.2.2 of the FAA. Compl. at 6:15-17.

On October 11, 2018, Defendant's legal counsel sent Plaintiff a responsive letter. *Id.* at 6:19-20. Subsequently, on November 1, 2018, representatives for both Ameranth and ChowNow met but were unable to resolve their dispute. *Id.* at 7:9-11.

The 077, 733, 325, and 850 Patents expired on September 21, 2019. Cross-Compl. at 8:27-28. As Plaintiff notes, "[u]nder section 6.1, the license agreements remain in effect until all of the Licensed Patents expire, unless otherwise terminated earlier." [8] Mot. at 9:13-14. Plaintiff admits that the remaining 060 Patent "is a continuation in part of the '077 Patent, which is one of the patents specifically identified in section 1.3 of the License Agreement," and "[t]hus, the '060 patent is one of the Licensed Patents under the License Agreement" even though the other patents specifically mentioned in the FAA are no longer valid (either due to judicial declaration or expiration). Mot. at 9:25-28. Further, the 060 Patent issued on April 24, 2015, before the expiration of the patents preceding it. *See also* Mot. at 15:25-28 (stating that "[i]t is undisputed that, as of the filing date of the Complaint, Ameranth holds patents and patent claims that have not been found invalid or unenforceable, including but not limited to all claims of the '060 patent.").

### B. Procedural History

On October 1, 2020, Plaintiff filed suit against Defendant in the San Diego Superior Court, *Ameranth, Inc. v. ChowNow, Inc.*, San Diego Superior Court Case No. 37-2020-00034944-CU-BC-CTL, alleging causes of action for (1) breach of written contract; (2) declaratory relief; and (3) unjust enrichment, while also seeking damages, declaratory relief, and costs. Compl. at 1-12. The declaratory relief sought to require Defendant to provide quarterly reports and pay Plaintiff royalty payments through October 1, 2020, [9] which Plaintiff alleges were required under the FAA. Compl. at 11:1-7.

On November 4, 2020, Defendant timely filed a General Denial and Statement of Affirmative Defenses in the state court action, asserting affirmative defenses pertaining to Defendant's non-infringement of the Licensed Patents, the invalidity of the Licensed Patents, patent misuse, and preemption by federal law. Answer, ECF No. 1-3 ("Ans."). That same day, Defendant also filed a cross-complaint, seeking declaratory judgments pursuant to 28 U.S.C. § 2201, pleading five causes of action for a declaration of non-infringement of the 077, 060, and 651 Patents as well as a declaration of invalidity of the 077 and 060 Patents. Cross-Compl. at 1-31. Also on November 4, 2020, after filing its General Denial and Cross-Complaint in the San Diego Superior Court, Defendant filed a Notice of Removal, asserting that the federal court "has original jurisdiction under 28 U.S.C. §§ 1331 and 1338," and that removal is proper "pursuant to 28 U.S.C. §§ 1441(a), 1446, and 1454." ECF No. 1 at 4:11-13.

**\*5** On November 19, 2020, Plaintiff timely filed the instant Motions. *See* Mot. On December 7, 2020, Defendant opposed. *See* Oppo. On December 11, 2020, Plaintiff filed its reply. Reply, ECF No. 24 ("Reply").

On December 7, 2020, Defendant filed amended counterclaims, containing the same claims for relief as its cross-complaint filed in the superior court while adding eight additional claims for relief for (1) declaration of invalidity as to the 651 Patent; (2) unenforceability of the 077 Patent; (3) declaration of unenforceability of the 060 Patent; (4) declaration of unenforceability of the 651 Patent; (5) bad faith

enforcement of patents, 15 U.S.C. § 2; (6) bad faith enforcement of patents through a pattern of sham litigation, 15 U.S.C. § 2; (7) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; and (8) unjust enrichment. ECF No. 18.

On February 16, 2021, Defendant filed a Notice of Supplemental Authority in Support of Plaintiff's Motion. ECF No. 28. On June 24, 2021, Defendant provided another Notice Supplemental Authority. ECF No. 29. On June 25, 2021, Plaintiff filed an Objection to Defendant's second Notice of Supplemental Authority. ECF No. 30.

### III. LEGAL STANDARD

#### A. Motion to Dismiss

##### 1. *Lack of Subject Matter Jurisdiction (FRCP 12(b)(1))*

FRCP 12(b)(1) allows a defendant to seek dismissal of a claim or lawsuit by asserting the defense of lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). In patent cases, Federal Circuit precedent governs the determination of whether the court possesses subject matter jurisdiction. *See Minnesota Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 672 (Fed. Cir. 1991); *see also 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012) ("Whether an actual case or controversy exists so that a district court may entertain an action for a declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law.").

Federal courts are courts of limited jurisdiction; however, district courts possess "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Consequently, district courts are presumed to lack jurisdiction unless the Constitution or a statute expressly provides otherwise. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Article III of the United States Constitution limits the subject matter jurisdiction of federal courts to (1) legal and equitable cases "arising under this Constitution, the Laws of the United States, and Treaties made" and (2) controversies, *inter alia*, to which the United States is a party, between two or more

states, and citizens of different states. U.S. CONST. ART. III, § 2. The "case or controversy" requirement of Article III requires courts to find that a case presents a "justiciable" controversy by determining that (1) the plaintiff has demonstrated standing, "including 'an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical,' " and (2) the case is "ripe," or in order words, "not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " *Trump v. New York*, ─── U.S. ───, ───, 141 S.Ct. 530, 535, 208 L.Ed.2d 365 (2020); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) (noting that standing and ripeness become the same question when a licensee seeks a declaration of invalidity). An appropriate action for declaratory relief qualifies as a case or controversy within Article III. *MedImmune*, 549 U.S. at 118, 128, 127 S.Ct. 764.

**\*6** As to the requirement that a case arises under a law of the United States, generally, federal subject matter jurisdiction exists due to statutory authorization resulting from the presence of a federal question, *see* 28 U.S.C. § 1331, or complete diversity between the parties, *see* 28 U.S.C. § 1332. [10] Additionally, in 2011, Congress enacted the Leahy-Smith American Invents Act (the "AIA"), which amended 28 U.S.C. sections 1338 ("Section 1338") and 1295(a)(1) as well as added section 1454 ("Section 1454") to provide federal courts "with a broader range of ... jurisdiction over claims arising under the patent laws *even* when asserted in counterclaims." *Vermont v. MPHJ Technology Instruments, LLC*, 803 F.3d 635, 643-44 (Fed. Cir. 2015). As amended, Section 1338 vests district courts with "original jurisdiction of any civil action" that (1) arises "under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks" or (2) asserts "a claim of unfair competition when joined with a substantial and related claim under the ... patent ... or trademark laws." 28 U.S.C. § 1338(a)-(b). Section 1454, in turn, provides for removal of patent cases to federal court by providing that "[a] civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents ... may be removed to the district court of the United States for the district and division embracing the place where the action is pending .... in accordance with section 1446." 28 U.S.C. § 1454(a)-(b). Further, Section 1338(a) even

goes so far as to prohibit states courts from handling patent cases by providing: "No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents ..."

If a court determines at any time it lacks subject-matter jurisdiction under Article III or a federal statute, it "must dismiss the action." FED. R. CIV. P. 12(h)(3). "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008). The party seeking to establish federal jurisdiction bears the burden of establishing it. *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

### 2. **Failure to State a Claim (FRCP 12(b)(6))**

Under FRCP 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (holding that a claim must be facially plausible to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with it. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard*

*Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss to a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "Plaintiffs may plead themselves out of court by attaching exhibits inconsistent with their claims because the court may disregard contradictory allegations." Phillips & Stevenson, *California Practice Guide: Federal Civil Procedure Before Trial* § 9:212a (The Rutter Group April 2020); *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007-08 (9th Cir. 2015) (noting that courts "need not accept as true allegations contradicting documents that are referenced in the complaint"). Courts may also consider any statements made in a pleading or motion, including concessions made in plaintiff's response to the motion to dismiss as well as in response to any other pleading or motion. FED. R. CIV. P. 10(c).

### B. **Motion to Remand**

**\*7** A motion to remand challenges the propriety of an action's removal to federal court. 28 U.S.C. § 1447. A motion to remand is "the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction" under FRCP 12(b)(1). *See Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014). "Like plaintiffs pleading subject-matter jurisdiction under Rule 8(a)(1), a defendant seeking to remove an action may not offer mere legal conclusions; it must allege the underlying facts supporting each of the requirements for removal jurisdiction." *Leite*, 749 F.3d at 1122.

"Except as otherwise expressly provided by Act of Congress," where a plaintiff files in state court a civil action over which the district courts of the United States have original jurisdiction, the defendant may remove that case "to the district court of the United States for the district and division embracing the place

where such action is pending." 28 U.S.C. § 1441(a). However, removing a case does not deprive another party "of his right to move to remand the case." 28 U.S.C. § 1448. Courts strictly construe the removal statute against removal jurisdiction, and the defendant always has the burden of establishing that removal is proper. *Provincial Gov't of Marinduque v. Placer Dome, Inc.,* 582 F.3d 1083, 1087 (9th Cir. 2009); *Luther v. Countrywide Home Loans Servicing, LP,* 533 F.3d 1031, 1034 (9th Cir. 2008).

Where a party bases removal solely on Section 1454, the district (1) *must* "remand all claims that are neither a basis for removal under subsection (a) nor within the original or supplemental jurisdiction of the district court under any Act of Congress," and *"may,* under the circumstances specified in section 1367(c), remand any claims within the supplemental jurisdiction of the district court under section 1367." 28 U.S.C. § 1454(d) (emphasis added). District courts may decline to exercise supplemental jurisdiction over related claims where (1) the related "claim raises a novel or complex issue of State law," (2) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," (3) "the district court has dismissed all claims over which it has original jurisdiction," or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). "The decision to retain jurisdiction over state law claims is within the district court's discretion, weighing factors such as economy, convenience, fairness, and comity." *Brady v. Brown,* 51 F.3d 810, 816 (9th Cir. 1995). Further, district courts do not need to "articulate why the circumstances of [the] case are exceptional" to dismiss state-law claims pursuant to 28 U.S.C. section 1367(c)(1)-(3). *See San Pedro Hotel Co., Inc. v. City of L.A.,* 159 F.3d 470, 478-79 (9th Cir. 1998)).

## IV. DISCUSSION

Federal "subject matter jurisdiction in patent cases is, surprisingly, one of the thorniest issues in all of civil procedure." Paul R. Gugliuzza, *Rising Confusion About "Arising Under" Jurisdiction in Patent Cases,* 69 Emory L.J. 459, 461 (2019). With respect to Plaintiff's complaint, Plaintiff could either (1) file a breach of contract claim for Defendant's failure to meet its royalty obligations (as it did in the San Diego Superior Court) or (2) sue for patent infringement

because Defendant's breach of the licensing agreement allowed Plaintiff to terminate the Agreements and pursue infringement. *See* FAA, ECF No. 14-1 at 8, §§ 6.3-6.4. In the former, there would be no federal question in the well-pleaded complaint, [11] only in Defendant's answer, which would raise defenses of patent invalidity and non-infringement. However, affirmative defenses do not create federal question jurisdiction. *Akiachak Native Cmty. v. United States DOI,* 827 F.3d 100, 107 (D.C. Cir. 2016). In the latter, federal question appears in the well-pleaded complaint under 28 U.S.C. § 1338, which grants federal jurisdiction over "any civil action relating to patents." In this case, however, Defendant did not just plead invalidity and non-infringement as an affirmative defense, it also filed counterclaims, which the Court analyzes as if they were their own complaint. *See* FED. R. CIV. P. 8. In those counterclaims, Defendant seeks to invalidate the Licensed Patents, which raises a federal question under the AIA.

**\*8** In its Motions, Plaintiff asks the Court to dismiss Defendant's counterclaims seeking declaratory judgments of patent non-infringement and invalidity pursuant to FRCP 12(b)(1) and 12(b)(6) on the grounds that they fail to state a claim for relief. Mot. at 2:7-18. Plaintiff asks the Court to (1) dismiss Defendant's counterclaims for failure to state a claim for relief because Defendant cannot infringe patents that it has a license to use, so it is not plausible that Defendant could infringe on the Licensed Patents; (2) dismiss Defendant's counterclaims for lack of subject matter jurisdiction because the counterclaims seek a declaration of patent non-infringement (claims for relief 1 through 3) and patent invalidity (claims for relief 4 through 6), but Defendant lacks standing to pursue such claims, resulting in the absence of a justiciable case or controversy; and (3) remand the case to the San Diego Superior Court pursuant to 28 U.S.C. § 1447(c) due to the lack of federal subject matter jurisdiction. *Id.* at 2:7-18.

Defendant opposes by arguing that infringement is not the issue in this case, rather invalidity is, and if the patents are invalid, Defendant does not owe royalties, meaning that patent law is a central issue to the resolution of Plaintiff's claims for owed royalties. *See generally* Oppo. at 6:2-16. Defendant also notes that its filing of Amended counterclaims mooted Plaintiff's

Motion to Dismiss. *Id.* at 6:24-28. Plaintiff replies by reiterating that (1) because Defendant's counterclaims present no "forward looking controversy" due to Plaintiff's covenant not to sue for royalties after the date it filed suit, there is no justiciable controversy; (2) Defendant's Amended Counterclaims should not be considered for purposes of determining this motion to remand; (3) Plaintiff's Complaint does not raise issues of federal law; (4) that *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) did not abrogate the *Super Sack* "covenant not to sue" doctrine or eliminate the *Lear* test; (5) Defendant's Counterclaims do not create a basis for federal jurisdiction because in reality, the counterclaims are affirmative defenses, and federal jurisdiction may not be created from defenses; and (6) the *Splick-It* decision is distinguishable because it "did not involve a covenant not to sue for contractual or infringement liability." *See* Reply at 5-14.

First, the Court considers Plaintiff's Motion to Remand the Case because if the Court lacks jurisdiction, it also lacks the authority to decide the motions to dismiss. *See, e.g., H.R. ex rel. Reuter v. Medtronic, Inc.*, 996 F. Supp. 2d 671, 675 n.2 (S.D. Ohio 2014) (noting that the plaintiff's "motion to remand must be resolved before the motion to dismiss, because if remand is appropriate, then the state court should decide the motion to dismiss"). However, because a motion to remand challenges the propriety of an action's removal to federal court, 28 U.S.C. § 1447, the frame of reference when ruling on it is the four corners of the operative pleadings at the time of removal, *see Gracier v. Edwards Dental Supply Co.*, 86 F. Supp. 956, 957-58 (N.D. Cal. 1949) (citing 28 U.S.C. § 1447(c); *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 308 U.S. 283 (1939)). In this case, that frame of reference would be the original complaint and original counterclaims but not the amended counterclaims. Although the issue is complex, the Court finds that a basis for federal question jurisdiction exists, making remand improper.

Next, the Court considers Plaintiff's Motion to Dismiss for Lack of Subject Matter Jurisdiction. However, the Court finds that Defendant's Amended Complaint mooted that motion. Thus, the Court **DENIES** that motion as well.

**A. Plaintiff's Motion to Remand**

A motion to remand may be brought due either to (1) lack of subject matter jurisdiction or (2) any defect in the removal procedure. *See* 28 U.S.C. § 1447(c). Plaintiff does not appear to take issue with the manner in which Defendant removed the action. As such, it appears Plaintiff's grounds for remand arise solely due to an alleged lack of subject matter jurisdiction. Plaintiff challenges the propriety of Defendant's removal by arguing that (1) Plaintiff's underlying complaint does not give rise to claims making removal appropriate; (2) affirmative defenses fail to create a basis for removal as a matter of law; and (3) Plaintiff's counterclaims fail to provide a basis for removal due to Plaintiff's covenant not to sue for future royalties, which defeats creation of the live case or controversy required for the Court to assert Article III jurisdiction. *See generally* Mot.

**\*9** Defendant responds that the Court should deny Plaintiff's Motion to Remand because it properly removed this case given (1) both its non-infringement and invalidity counterclaims (which are not mooted by Plaintiff's limited covenant not to sue) and Plaintiff's originally asserted claims arise under the federal patent laws; (2) claims arising under the patent laws must be brought in a federal court; and (3) even if this Court found that some of Plaintiff's claims do not arise under federal patent law, it would still have supplemental jurisdiction over those claims because Plaintiff's claims "are so related" to Defendant's cross-claims "that they form part of the same case or controversy." Oppo. at 12:16-13:2 (citing 28 U.S.C. § 1367(a)); *see also Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) ("A state law claim is part of the same case or controversy when it shares a common nucleus of operative fact with the federal claims and the state and federal claims would normally be tried together.") (internal quotation marks omitted).

Both parties to this case have filed claims seeking declaratory relief. An appropriate action for declaratory relief qualifies as a case or controversy within Article III. *MedImmune*, 549 U.S. at 128, 127 S.Ct. 764. Further, Section 1338 vests district courts with "original jurisdiction of any civil action" that arises "under any Act of Congress relating to patents." 28 U.S.C. § 1338(a)-(b). Section 1454 also provides federal courts "with a broader range of ... jurisdiction over claims arising under the patent laws

*even* when asserted in counterclaims." *Vermont*, 803 F.3d at 643-44. Thus, the Court finds the issue of whether Plaintiff's complaint raises federal question jurisdiction does not settle the question because if Defendant's counterclaims give rise to jurisdiction, removal was still proper.

### 1. *Whether Plaintiff's Complaint Gives Rise to Federal Jurisdiction*

Plaintiff argues that Defendant's basis for removal was incorrect: Defendant removed on the basis that it is necessary to an adjudication of Plaintiff's complaint for breach of the of the Agreements is a determination of patent infringement and patent invalidity. Mot. at 13:9-12. However, Plaintiff contends that while the issue of patent validity might be relevant to whether Defendant would owe royalties in the future, "such potential future invalidations do not affect ChowNow's liability for royalty fees owed for period [sic] *prior to* any such final adjudications of invalidity." *Id.* at 15:20-23. Thus, according to Plaintiff, "because the causes of action of Ameranth's complaint are expressly limited to the time *before* October 1, 2020, and because Ameranth has covenanted not to sue for royalties that might otherwise be owed for period [sic] of time *after* October 1, 2020, the question of the determination of validity of the Ameranth patents is wholly *irrelevant* to Ameranth's state law claims, and provides no basis for federal subject matter jurisdiction." *Id.* at 15:24-16:5. In sum, Plaintiff's position is that is (1) "complaint expressly alleges that the parties' rights and obligations under the license agreement are *not* dependent on the issue of whether ChowNow's product practices the elements of the claims of Ameranth's patents,"; (2) the Agreements base Defendant's obligation to pay royalties on whether its activities fall within the Fields of Use rather than on whether Defendant practices the claimed inventions; and (3) as a result, Plaintiff's state law claims do not necessitate determination of federal issues of patent infringement or validity. *Id.* 16:26-17:7 (citing Compl. at ¶ 8).

Plaintiff's first argument asserts that the Agreements base Defendant's "obligation to pay royalties on ChowNow's product deployments and commercial activities within the fields of use, and *not* on whether ChowNow practices the claimed inventions." Mot. at

17:2-5. Thus, Ameranth contends that "adjudication of [its] state law claims does *not* necessitate determination of federal issues of patent infringement or validity, and there is no basis to remove this action to federal court on any such ground." *Id.* at 17:5-7. Defendant responds that Plaintiff's "strained interpretation of the Amended License Agreement it both wrote and recharacterized in its Complaint is irrelevant at this stage of the litigation because disputes over the merits of a case, particularly contract interpretation, are not relevant to a court's jurisdictional determination." Oppo. at 20:13-21:2 (citing *Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301, 1310 (Fed. Cir. 2011) (holding "that the dispute between PTI and Tessera—as to whether the license agreement requires royalty payments to be tied to valid patent coverage—is sufficient to support declaratory judgment jurisdiction," while "leav[ing] the merits-based arguments to the district court to consider on remand"); *see also MedImmune*, 549 U.S. at 135-36, 127 S.Ct. 764 ("[E]ven if respondents were correct that the licensing agreement ... precludes this suit, the consequence would be that respondents win this case on the merits—not that the very genuine contract dispute disappears, so that Article III jurisdiction is somehow defeated.")). According to Defendant, under *MedImmune* and *Powertech*, federal jurisdiction is present for this case.

**\*10** As a jurisdictional cross-check, the Court may consider the plain language of the Agreements. Where a court does not rely on the interpretation of a contract but rather looks at the plain language of the agreements the parties provide (in a manner similar to the review the Supreme Court performed in *MedImmune*), it may look to such language in ruling on a motion to dismiss. *Id.* (citing *MedImmune*, 549 U.S. at 121, 127 S.Ct. 764 (citing to language of a licensing agreement in a case reviewing a motion to dismiss)). Thus, the Court finds it proper to look to the language of the Agreements, which neither party seems to dispute.

The Agreements, state that "[d]uring the term of this Agreement, and subject to full and timely payment of all amounts due to Ameranth[,] ... Ameranth hereby grants to ChowNow a non-exclusive, non-transferable ... worldwide license ... **under the Licensed Patents** within the Field of Use." FAA at 3, § 2.1.1. In other words, Defendant only owes royalties

for practicing Plaintiff's Licensed Patents within the Fields of Use, but if Defendant performs activities within the Fields of Use without implicating Plaintiff's Licensed Patents, Defendant would owe no royalties. This reading is bolstered by Section 5.2 of the FAA, which states that Defendant is only obligated "to pay [Plaintiff] a running royalty ... for the Patent License [under the Licensed Patents within the Field of Use] granted in [Section] 2.1 [discussed below] for all activities falling within the Fields of Use." FAA at 6, § 5.2. Defendant points out that "[b]y its own language, Section 5.2 is intended to be read in conjunction with Section 2.1.1, which clarifies that [Plaintiff] granted [Defendant] a Patent License 'under the Licensed Patents within the Field [sic] of Use.' " Oppo. at 18:28-19:3 (citing FAA at 6, at § 2.1.1). Thus, Defendant argues that Plaintiff's "own claims arise under federal patent laws" because 28 U.S.C. § 1338(a) makes clear that federal district courts have original jurisdiction of "*any* civil action arising under any Act of Congress *relating to* patents." *Id.* at 18:3-6.

As outlined below, the Court agrees that royalty obligations are contingent upon Defendant practicing the Licensed Patents within the designated Field of Use, which would require the Court to interpret the Licensed Patents as well as whether Defendant performs activities falling within the scope of their claims. A case qualifies as arising under federal law where (1) federal law creates the cause of action or (2) in a "special and small category of cases," arising under jurisdiction still lies. *Vermont*, 803 F.3d at 645 (quoting *Gunn v. Minton*, 568 U.S. 251, 258, 133 S.Ct. 1059, 185 L.Ed.2d 72 (2013)). As to the latter category, which applies to this case, courts find "federal jurisdiction over a state law claim" if, after applying the *Gunn* test, "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *AntennaSys, Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374, 1381 (Fed. Cir. 2020).

Many courts, including the Federal Circuit Court of Appeals, have applied the *Gunn* test to determine that a breach of contract claim brought in state court arises under federal law where the case depends on a finding the defendant infringed on the plaintiff's patents. *See, e.g., Jang v. Boston Sci. Corp.*, 767

F.3d 1334, 1336-38 (Fed. Cir. 2014) (finding, after applying the *Gunn* test, that federal subject matter jurisdiction existed where "[a]lthough this case arises from a [state law breach of contract] claim [for royalties under a patent license], rather than directly as a patent infringement claim, [plaintiff's] right to relief ... depends on an issue of federal patent law —whether the [products] sold by [defendants] would have infringed [plaintiff's patents]") (internal quotation marks omitted); *Levi Strauss & Co. v. Aqua Dynamics Sys.*, No. 15-cv-04718-WHO, 2016 WL 1365946 at *5, 2016 U.S. Dist. LEXIS 46738 at *13-14 (N.D. Cal. Apr. 6, 2016) (noting that by applying the *Gunn* test, "courts have repeatedly held that a state-law-based breach of contract claim arises under federal law where it depends on a finding that the defendant has infringed the plaintiff's patents").

**\*11** Defendant argues that this case meets all four factors of the *Gunn* test for the "special and small category of cases," but that only the first factor is in dispute. Oppo. at 18:19-22. Defendant also contends that contrary to Plaintiff's arguments, Plaintiff's claims "necessarily raise" issues of whether Ameranth's patents are valid, and if they are, whether Defendant's platform infringes the Patents-in-Suit. *Id.* at 18:22-24. Plaintiff, on the other hand, relies on the issue of *In re Oximetrix, Inc.*, 748 F.2d 637 (Fed. Cir. 1984) as support for why the Court should remand this case. Reply at 6:25-7:21. In *Oximetrix*, the Federal Circuit denied the defendant-licensee's petition for a writ of mandamus seeking an order requiring the district court to vacate its order remanding a case filed by the licensor for breach of contract under a licensing agreement requiring royalty payments. 748 F.2d at 640. The breach of contract action was removed to the federal court after trial but prior to the issuance of a statement of decision; however, the district court later granted the plaintiff's motion to remand finding that federal courts do "not have 'exclusive jurisdiction over patent claims' that may arises in a state court action" under the version of Section 1338 at that time. *Id.* at 641-42. However, not only is *Oximetrix* distinguishable in that the defendant based its arguments for federal jurisdiction on affirmative defenses rather than counterclaims, but Plaintiff also fails to address the fact that this case preceded the 2011 amendments to the AIA, which expanded federal court jurisdiction over patent

cases. *See, e.g., Vermont,* 803 F.3d at 643-44 (noting that these changes "were intended to provide federal courts ... with a broader range of jurisdiction; that is, with jurisdiction over claims arising under the patent laws *even* when asserted in counterclaims, rather than in an original complaint"). Based on the 2011 amendments, any authority remanding a case prior to 2011 has questionable application to the case at hand.

More importantly, Plaintiff failed to direct the Court to authority directly criticizing *Oximetrix.* For example, in *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.,* 986 F.2d 476, 479 (Fed. Cir. 1993), the Federal Circuit cited to *Oximetrix* as a prior opinion denying federal jurisdiction but also noted that *Oximetrix* did not involve "a cause of action in which plaintiff's right to relief depended upon resolution of a substantial question of patent law." Thus, the *Additive Controls* court held that the district court correctly determined that the plaintiff's business disparagement claim arose under federal patent law because the plaintiff's right to relief depended upon the resolution of a substantial patent law question. *Id.* This was because the allegedly disparaging statement was that the plaintiff infringed on the patent-in-suit; however, in order to prove the disparagement case, the plaintiff must provide it did not infringe the patent. *Id.* at 478. As a result, the plaintiff's right to relief necessarily depended "upon resolution of a substantial question of patent law, in that proof relating to infringement is a necessary element of Alcon's business disparagement claim." *Id.* Similarly, in this case, whether Defendant owes Plaintiff royalties for using Plaintiff's patents necessarily depends upon resolution of a substantial question of patent law in that proof relating to patent validity and infringement are necessary elements of Plaintiff's claim for breach of contract: If the Licensed Patents are not valid, Defendant does not owe royalties after the date it provide *Lear* notice (described below). If the Defendant does not practice the Licensed Patents, it neither infringes nor owes royalties. Thus, this case is inapposite from the authority relied on by Plaintiff in its Motions to argue its complaint does not raise federal question jurisdiction. [12]

**\*12** This Court finds Plaintiff's Complaint implicates federal question jurisdiction. As described below, federal jurisdiction also exists to adjudicate Defendant's counterclaims.

**2.** *Whether Defendant's Affirmative Defenses and Counterclaims Provide a Basis for Federal Subject-Matter Jurisdiction*

Plaintiff argues that Defendant's second asserted basis for removal (e.g., Defendant's own affirmative defenses and cross-complaints) are not a "claim to relief," and as such, fail to provide a basis for removal. Mot. at 17:19-27 (citing, *inter alia, Comm'ty v. U.S. Dept. of Labor,* 827 F.3d 100, 107 (D.C. Cir. 2016) (noting that "affirmative defenses made '[i]n respon[se] to a pleading' are not themselves claims for relief")). Plaintiff elaborates that Defendant "fails to state claims for non-infringement and lacks standing to assert such claims in light of its status as a licensee." *Id.* at 17:13-14. According to Plaintiff, no justiciable controversy exists regarding patent validity because it "has covenanted not to sue ChowNow for any royalty obligations beyond October 1, 2020, and ChowNow never complied with the '*Lear* doctrine' by challenging the validity of Ameranth's patents prior to October 1, 2020 (the only period for which Ameranth seeks recovery of royalties)." *Id.* at 17:14-19. The Court addresses whether Defendant's affirmative defenses create a basis for federal jurisdiction followed by whether Defendant's counterclaims provide a basis for federal jurisdiction as well.

a. *Affirmative defenses*

Section 1454 provides for removal of patent cases to federal court by providing that "[a] civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents." 28 U.S.C. § 1454(a)-(b). As Plaintiff points out, the statute does not address whether affirmative defenses create a removable controversy. Mot. at 17:23-25. Plaintiff argues that "[i]t is well settled law that a case may *not* be removed to federal court on the basis of a federal defense." *Id.* at 17:25-27 (citing *Caterpillar,* 482 U.S. at 393, 107 S.Ct. 2425). However, Defendant does not base its removal on its affirmative defenses. *See* ECF No. 1 at 4, ¶ 12. Rather, Defendant pleads that it "has asserted Cross-Claims [sic] for relief and affirmative defenses arising under an Act of Congress relating to patents, and removal ... is authorized by

at least 28 U.S.C. § 1454, which allows patent law counterclaims, or in this case, cross-claims, to serve as a basis for removal to federal court." *Id.* In other words, although Defendant references the fact that it has pled affirmative defenses, it relies only on its counterclaims as the basis for removal. Thus, the Court rejects Plaintiff's argument that Defendant relied on its affirmative defenses as a basis for removal.

Plaintiff advances a similar but different argument that Plaintiff's counterclaims for non-infringement and invalidity are actually affirmative defenses, so the Court should dismiss the counterclaims as redundant of Defendant's affirmative defenses. Mot. at 17:22-28. Plaintiff argues that "[i]f the question of whether [Defendant]'s products practiced the claims of [Plaintiff]'s patents was relevant to the issue of [Defendant]'s claim to collect royalties under the License Agreement (which it is *not*), it would be properly raised as an affirmative defense, not a cross-complaint." *Id.* at 19:23-18 (citing *C.J.L. Constr., Inc. v. Universal Plumbing*, 18 Cal. App. 4th 376, 391-92, 22 Cal.Rptr.2d 360 (1993) ("Given ... the fact that declaratory relief by means of a cross-complaint may be denied when the same issue is raised by an affirmative defense, ... absent something more than the allegations in the amended cross-complaint in this case, such a claim may not be pursued where the employer has not intervened in the civil suit."). [13] Plaintiff elaborates that because affirmative defenses fail to provide a basis for federal jurisdiction, the Court should remand the case. *Id.* at 17:22-28. Defendant does not respond to this specific argument addressing whether its counterclaims are really affirmative defenses but rather generally argues that its counterclaims provide a basis for federal question jurisdiction. *See generally* Oppo.

**\*13** "Patent invalidity can be a counterclaim and/or an affirmative defense to patent infringement." *Deniece Design, LLC v. Braun*, 953 F. Supp. 2d 765, 773 (S.D. Tex. 2013). Claims for patent invalidity qualify as compulsory counterclaims in response to a claim arising under patent law. *In re Rearden LLC*, 841 F.3d 1327, 1331 (Fed. Cir. 2016). Meanwhile, invalidity also qualifies as "an affirmative defense that 'can preclude enforcement of a patent against otherwise infringing conduct.' " *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644, 135 S.Ct. 1920, 191

L.Ed.2d 883 (2015) (quoting 6A Chisum on Patents § 19.01, p. 19-5 (2015)). Even though invalidity and non-infringement counterclaims are compulsory in response to a complaint raising patent issues, some courts have noted the absence of "authority that allows parties to assert an affirmative counterclaim for declaratory relief ... while simultaneously asserting an affirmative defense on precisely the same grounds." *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 69 F. Supp. 3d 1136, 1145 (D. Colo. 2014) (noting the defendant's "counterclaim sought only declaratory relief, making it essentially indistinguishable from an affirmative defense," and therefore, because it was duplicative from the pending affirmative defense, it was "properly dismissed"). Instead, FRCP 8(c) permits courts to treat a counterclaim as an affirmative defense where a party has mistakenly designates a defense as a counterclaim. [14] FED. R. CIV. P. 8(c)(2) ("If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so."); *see also Rayman v. Peoples Savings Corp.*, 735 F. Supp. 842, 851-53 (N.D. Ill. 1990) (denying the defendant's motion for leave to file a declaratory judgment counterclaim in a securities case because it was really an affirmative defense cast as a counterclaim).

This Court finds it would be improper to treat Defendant's counterclaims as affirmative defenses, and subsequently, remand to the state court for three reasons. First, "[u]nlike an affirmative defense, a counterclaim for patent invalidity survives the dismissal of patent infringement claims and presents a standalone issue." *Epic Games, Inc. v. Acceleration Bay LLC*, No. 4:19-CV-04133-YGR, 2020 WL 1557436, at \*1 (N.D. Cal. Apr. 1, 2020) (citing *Cardinal Chem. Co. v. Mortin Int'l, Inc.*, 508 U.S. 83, 100-03 n.11, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993) ("Although it is often more difficult to determine whether a patent is valid than whether it has been infringed, ... [a] company once charged with infringement must remain concerned about the risk of similar charges if it develops and markets similar products in the future")). In other words, the issue of whether Defendant practices Plaintiff's Licensed Patents, which the Court must determine in order to decide the royalty dispute, is distinct from whether

those Licensed Patents are valid. Thus, even if the Court concludes that Defendant does not practice the Licensed Patents, Defendant's counterclaims seeking a declaration of invalidity would survive and require a determination by the Court despite its resolution of the infringement issues. *See Cardinal*, 508 U.S. at 100-03, 113 S.Ct. 1967. This is because "[a]n unnecessary ruling on an affirmative defense is not the same as the necessary resolution of a counterclaim for a declaratory judgment." *Cardinal*, 508 U.S. at 93-94, 113 S.Ct. 1967. Second, "[t]he Supreme Court has expressed a preference for deciding issues of patent validity independent of any infringement claim in order to prevent wasteful re-litigation and provide final resolution to accused infringers." *Epic*, 2020 WL 1557436, at *3 (citing *Cardinal*, 508 U.S. at 100-01, 113 S.Ct. 1967 (noting that "the opportunity to relitigate might, as a practical matter, grant monopoly privileges to the holders of invalid patents")); *see also* Robert B. Orr, *The Doctrine of Licensee Repudiation in Patent Law*, 63 Yale L.J. 125, 125 (1953) ("The public has an interest in the adjudication of patents of questionable validity and the law provides procedures whereby private persons may advance this interest."). Thus, policy reasons support the Court determining the issues at hand and avoiding further litigation between the parties.

**\*14** In *Epic Games, Inc. v. Acceleration Bay LLC*, the Northern District of California denied a defendant's motion to strike the plaintiff's counterclaims-in-reply while holding that a finding of noninfringement did not moot a counterclaim of invalidity where the counterclaim "merely repeated the affirmative defense of invalidity." 2020 WL 1557436, at *1. The *Epic* court held that the plaintiff's "counterclaims for patent invalidity [were] redundant of its second affirmative defense of patent invalidity under Federal Rule 12(f)." 2020 WL 1557436, at *3. It reasoned that the plaintiff asserted no new matters that it did not *implicitly* assert through its affirmative defense and addressed the same claims in the same patents asserted in the defendant's infringement counterclaim. *Id.* However, the court also noted that "precisely because the issues raised by Epic Games' counterclaims-in-reply [were] redundant of its affirmative defenses, striking the counterclaims would be futile," *Id.* Thus, the Court denied the defendant's motion to strike or reclassify the plaintiff's counterclaims-in-reply. *Id.* at *4.

In *Epic*, the potential infringing party filed suit first, seeking a declaration of non-infringement, whereas in this case, Plaintiff filed suit, and then, the potential infringing party (ChowNow) filed counterclaims seeking a declaratory judgment of non-infringement. 2020 WL 1557436, at * 1. Thus, *Epic* is inapposite to the case at hand for several reasons, including but not limited to the fact that the *Epic* plaintiff originally filed suit in federal court, and the case litigated patent infringement issues as opposed to the contractual licensing issues between Ameranth and ChowNow. 2020 WL 1557436, at *1.

In this case, Defendant's original Answer filed on November 4, 2020, includes a Third Affirmative Defense for Non-Infringement of Patents, which pleads that Ameranth is not entitled to any payment under the Agreements because ChowNow has not infringed any valid or invalid claim of any patent owned by or licensed to Plaintiff. Ans. at 3-4. Its Fourth Affirmative Defense for Invalidity of Patents pleads that Ameranth is also not entitled to any royalty payments under the Agreements because each of the Licensed Patents is invalid. *Id.* at 3-4. That same day, Defendant also filed its original Counterclaims, which included four claims seeking a declaratory judgment of invalidity of each of the Licensed Patents pursuant to the Declaratory Judgment Act of 1934, 28 U.S.C. § 2201 (the "DJA"), along with two claims for invalidity of the two Licensed Patents that had not yet been declared invalid, also pursuant to the DJA. Cross-Compl. at 21-30. The Prayer for Relief seeks a declaratory judgment that pursuant to the DJA, (1) Defendant does not and has not directly or indirectly infringed the Licensed Patents, and (2) the 060 and 651 Patents are invalid for failure to comply with the one of more of the requirements of the AIA. Cross-Compl. at 30. Thus, the final reason it would be improper to treat Defendant's counterclaims as affirmative defenses is that Defendant's affirmative defenses, although raising the issues of infringement and invalidity, do not seek affirmative relief. Defendant's counterclaims, on the other hand, seek affirmative relief that the Court declare the remaining Licensed Patents invalid, which would both prevent Plaintiff from (1) seeking to license the remaining patent to Defendant in the future and (2) pursuing Defendant for patent infringement as to that remaining Licensed Patent.

In sum, because Defendant's counterclaims respond to different issues (*i.e.*, potential infringement liability in the future) than Defendant's affirmative defenses, which respond to potential royalty obligations, the Court finds those counterclaims distinct enough to continue as separate claims rather than re-classifying them as affirmative defenses. Next, the Court addresses whether those counterclaims provide a basis for federal jurisdiction in the fact of Plaintiff's arguments to the contrary.

### b. *Counterclaims*

**\*15** Plaintiff argues that Defendant's counterclaims for declaratory relief as to non-infringement of Plaintiff's patents fail to create federal question jurisdiction for three reasons: First, because a patent license is a complete defense to infringment, Defendant's active license to each of the Licensed Patents it challenges prevents it from infringing any of Plaintiff's Licensed Patents, negating the need to bring a declaratory action for non-infringement. Mot. at 18:3-10; Reply at 9:19-27. Second, Plaintiff contends that under the Agreements, which give rise to the instant dispute, "the obligation to pay royalties does *not* depend on whether ChowNow's products practice the claims of the patents," only whether Defendant deploys products or conducts activities within the defined "fields of use." *Id.* at 18:11-17. Plaintiff avers that because Defendant fails to state a claim for declaratory relief of non-infringement given it never alleges in its counterclaims that the Agreements require it to practice the elements of Plaintiff's claims as a condition to its obligations to pay royalties, and even if it did, such a determination does not resolve the legal controversy—*i.e.*, whether Defendant owes royalties to Plaintiff. *Id.* at 18:21-25. Third, Plaintiff argues that Defendant cannot sustain its cross-complaints for declaratory relief as to invalidity because it never provided Plaintiff with *Lear* notice —or notice it was withholding royalty payments under the license agreement on the grounds that it had determined that the patents were invalid—before October 1, 2020 (the date Plaintiff filed suit in the Superior Court), and Plaintiff has given Defendant a covenant not to sue for any period of time *after* October 1, 2020. *Id.* at 6:22-24; 19:13-16. Defendant

opposes by pointing out that Plaintiff does not contest that Defendant's counterclaims arise under patent laws but rather only challenges Defendant's standing to bring those claims. Oppo. at 24:1-3. Defendant argues, however, that the Court should deny Plaintiff's Motion to remand bcause (1) Defendant's counterclaims unquestionaly present justiciable federal questions under the patent laws that can only be heard in federal court and (2) Plaintiff's limited covenant not to sue Defendant for future royalties does not negate the Court's jurisdiction. *Id.* at 24:5-9.

The Court finds Plaintiff's first argument unpersuasive. Plaintiff is correct that a patent license qualifies as a complete defense to infringement. *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1334 (Fed. Cir. 2006); *see also* 35 U.S.C. § 271(a) (providing that infringement only arises when a person "*without authority* makes, uses, offers to sell, or sells any patented invention, within the United States") (emphasis added). However, given the Agreements clearly state that the defense to infringement only applies so long as Defendant pays royalties, Defendant's cessation of royalty payments opens it up to liability for infringment.[15] For example, in *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197, 134 S.Ct. 843, 187 L.Ed.2d 703 (2014), the court found federal subject matter jurisdiction over a similar dispute, albeit one that did not involve a covenant not to sue. The plaintiff-licensee, designed, made, and sold medical devices, while the defendant-licensor, owned patents related to implantable heart stimulators. *Id.* at 194, 134 S.Ct. 843. The parties entered into a license agreement similar to the Agreements in this case. *Id.* at 194-95, 134 S.Ct. 843. After a dispute arose, the plaintiff-licensee brought a declaratory judgment action in the Delaware District Court, seeking a declaration that its products did not infringe on the defendant's patents, and the defendant's patents were invalid. *Id.* at 195, 134 S.Ct. 843. The Supreme Court held that (1) the federal court had jurisdiction of the dispute and (2) the plaintiff, as the licensee, did not have the burden of proof in the declaratory judgment action. *Id.* It reasoned that the hypothetical threatened action of the defendant-licensor suing the plaintiff-licensee for patent infringement "is properly characterized as an action 'arising under an Act of Congress relating to patents.'" *Id.* at 198, 134 S.Ct. 843. "The patent licensing agreement specifie[d] that, if [the plaintiff]

stop[ped] paying royalties, [the defendant could] terminate the contract and bring an ordinary patent infringement action." *Id.* at 197, 134 S.Ct. 843. If that occurred, "[s]uch an action would arise under federal patent law because 'federal patent law creates the cause of action.' " *Id.* at 198, 134 S.Ct. 843.

 **\*16** Similar to *Medtronic*, in this case, the FAA provides that if a breaching party fails to cure a default within sixty (60) days of notice, the Agreement self-terminates, FAA at 8, §§ 6.3-6-4, meaning the breaching party, Defendant, is open to liability for patent infringement again. On August 31, 2018, Plaintiff provided a formal "Notice of Default of License Agreement for Failure to Pay Royalties." *See* ECF No. 12-3 at 54. The FAA clearly states that "[i]f [a] default is not cured within sixty (60) days of provision of such notice, ... the Agreement shall ***automatically*** terminate at the end of that [60 day] period." FAA at 8, ¶ 6.3 (emphasis added). Thus, the FAA terminated sixty (60) days after the August 31, 2018 Notice of Default, or in other words, on October 30, 2018. Accordingly, while Plaintiff can sue Defendant for patent infringement from October 30, 2018 to the present, Plaintiff's covenant not to sue for royalties from October 1, 2020 is meaningless. Plaintiff had no right to royalties on that date given the FAA stated it automatically terminated after a failure to cure within sixty (60) days of notice. Further, it also means that royalty obligations could only run from April 1, 2018 through October 30, 2018. Thus, the Agreements no longer provide a defense to such infringement. As in *Medtronic*, Defendant faces hypothetical threatened action by Plaintiff for patent infringement. 571 U.S. at 197-98, 134 S.Ct. 843. This "hypothetical threatened action" seems even more likely in light of Ameranth's pattern of litigation. Consequently, the threat of a lawsuit for patent infringement by Ameranth, sometimes referred to as a patent troll, [16] gives rise to federal question jurisdiction over ChowNow's counterclaims, which like the *Medtronic* plaintiff's complaint, seek a declaratory judgment of invalidity of the Licensed Patents and non-infringement.

As to Plaintiff's second argument that the Agreements do not make Defendant's royalty obligations dependent on Defendant practicing the Licensed Patents, that argument is likewise unpersuasive. As noted, the term "Fields of Use" references and incorporates the Licensed Patents, meaning Defendant's obligation to pay royalties depends on whether it practices the Licensed Patents. More importantly, in examining the Agreements, the Court notes that they contain a provision, Section 9.2.3, which provides that "[t]he Parties agree that any dispute ... shall be determined by the state or ***federal courts*** located in San Diego, California, and the Parties expressly consent to personal jurisdiction and venue before such courts." ECF No. 14-1 at 10-11. Thus, it would appear Plaintiff's contesting federal court jurisdiction breaches its own agreement under which it seeks relief.

Plaintiff's third argument raises more complex issues addressing whether (1) Defendant's standing to bring this lawsuit, (2) Defendant provided proper *Lear* notice, and (3) Plaintiff's covenant not to sue defeats federal subject matter jurisdiction. The Court addresses each argument below. However, the Court ultimately concludes that each argument fails to defeat federal subject matter jurisdiction.

### i. Standing

The Declaratory Judgments Act of 1934 provides that "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see also Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 239-40, 57 S.Ct. 461, 81 L.Ed. 617 (1937) (noting that the DJA "in its limitation to 'cases of actual controversy,' manifestly has regard to the constitution provision [*i.e.*, Article III] and is operative only in respect to controversies which are such in the constitutional sense") The party seeking a declaratory judgment carries the burden of showing a justiciable case and controversy existed at the time the party filed for declaratory relief as well as throughout the case. *Benitec Austl., Ltd. v. Nucleonics, Inc.,* 495 F.3d 1340, 1344, 1346 (Fed. Cir. 2007) (concluding that the declaratory judgment plaintiff lacked standing because it admitted that it did not anticipate pursuing any infringing activity for several years, "if ever"). While a specific threat of infringement litigation is not

required, where " 'a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support jurisdiction' at that time." *Id.* at 1344.

**\*17** Plaintiff argues that Defendant "has no standing to seek declaratory relief for invalidity of the licensed patents for any time period *after* the filing date of the complaint (October 1, 2020) because [Plaintiff] has expressly covenanted not to sue [Defendant] for royalties or other fees for any period of time or events occurring *beyond* the date of filing of the Complaint." Mot. at 21:13-17. Plaintiff contends that "[p]ursuant to the Federal Circuit's decision in *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054. 1058-59 (Fed. Cir. [1995]), a patentee can eliminate any justiciable issue about patent validity by covenanting not to sue the putative infringer" because "[s]uch a covenant not to sue eliminates any 'case or controversy' regarding patent validity," thereby divesting "this Court of subject matter jurisdiction to entertain a cross-complaint for declaratory relief of invalidity." *Id.* at 21:17-22:4. Thus, Plaintiff argues no case or controversy as to patent validity or infringement exists before the filing date of the complaint (due to the alleged improper *Lear* notice) or after the filing of the complaint (due to the covenant not to sue), resulting in Defendant lacking standing to maintain any declaratory relief claims for non-infringement or invalidity. *Id.* at 22:4-6.

In 1995, in *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, the Federal Circuit created what Plaintiff refers to as the "covenant not to sue doctrine," which allowed a patent holder to eliminate a potential dispute over patent validity or infringement—thereby also eliminating federal question jurisdiction—by covenanting not to sue for patent infringement. 57 F.3d 1054, 1060 (Fed. Cir. 1995). The *Super Sack* plaintiff-patent owner brought an infringement lawsuit against a competitor-defendant for infringement of two patents. *Id.* at 1055. In response, the defendant, like ChowNow, filed a counterclaim seeking declaratory judgments of both noninfringement and invalidity. *Id.* The plaintiff, like Amaranth, filed a motion to dismiss the counterclaim stating that it was "unconditionally agree[ing] not to sue [the defendant] for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by [the

defendant]." *Id.* at 1056. The plaintiff argued that this removed "any apprehension by [the defendant] that it will face claims of infringement regarding the patents-in-suit," eliminating any actual case or controversy pertaining to patent law while also divesting the federal court of jurisdiction. *Id.* The Federal Circuit affirmed the lower court's dismissal of the case, agreeing that a plaintiff patent owner's withdrawal of infringement allegations and promise not to assert its patents against the defendant had rendered the controversy in the case moot, meaning that if the court issued an opinion, it would be "rendering a forbidden advisory opinion." *Id.* at 1060.

Plaintiff argues that this doctrine remains good law, Reply at 8:19-9:16. while Defendant argues it has been abrogated by the Supreme Court, Oppo. at 21:4-26. Following *Super Sack*, until 2007, "it had been the law of the Federal Circuit that a patent owner's unqualified covenant not to sue a competitor for infringement divested that competitor of standing to sue for declaratory relief, and thereby the court of subject matter jurisdiction." *Apotex, Inc. v. Novartis AG*, Civil Action No. 3:06-CV-698, 2007 WL 5493499 at \*4, 2007 U.S. Dist. LEXIS 98357 at \*11 (E.D. Va. Aug. 31, 2007). The rationale behind this arose from the belief that a justiciable case or controversy required the plaintiff to "be under a reasonable apprehension of defending an imminent suit," but so as long as "an unqualified covenant not to sue" existed, the plaintiff was not in apprehension of an imminent suit, and therefore, lacked standing. *Id.* at \*4, 2007 U.S. Dist. LEXIS 98357 at \*11-12. However, "[t]hat is no longer the standard." *Id.* at \*4, 2007 U.S. Dist. LEXIS 98357 at \*12. Thus, the Court disregards Plaintiff's argument that its covenant not to sue justifies this Court finding it has no jurisdiction over this case without further analysis.

In 2007, the United States Supreme Court held in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 137, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007), that standing pursuant to the DJA, and by explicit reference, the AIA, *see* 35 U.S.C. § 271(e)(5), is coextensive with the constitutional limitations of Article III, meaning the Federal Circuit's "reasonable apprehension of imminent" suit standard has been abrogated. *See also Teva*, 482 F.3d at 1338-39. The *MedImmune* plaintiff-licensee manufactured a drug

used to prevent respiratory tract disease in children and entered into a patent licensing agreement with the defendant covering one of the defendant's existing patents as well as a pending patent application. 549 U.S. at 121, 127 S.Ct. 764. The plaintiff agreed to pay royalties on sales of the defendant's licensed products while the defendant granted the plaintiff "the right to make, use, and sell them." *Id.* at 121, 127 S.Ct. 764. The agreement defined licensed products as the covered patents, "which have neither expired nor been held invalid by a court or other body of competent jurisdiction from which no appeal has or may be taken." *Id.* at 121, 127 S.Ct. 764. After the patent application matured into a patent, the plaintiff believed the new patent did not fall under the licensing agreement, and as result, the plaintiff did not owe royalties on it. *Id.* at 121-22, 127 S.Ct. 764. It also contended the patent was invalid and unenforceable as well as that its claims were not infringed by the plaintiff's products. *Id.* A dispute arose, and the plaintiff filed suit for declaratory relief, seeking a declaration that the patents it licensed from the defendant were invalid or its products did not infringe the patents. *Id.* at 122-25, 127 S.Ct. 764.

**\*18** The Supreme Court held that nothing in Article III's case or controversy requirement meant that the licensee had to break or terminate a licensing agreement before seeking a declaratory judgment that the underlying patent in the agreement is invalid, unenforceable, or not infringed. 549 U.S. at 137, 127 S.Ct. 764. Consequently, it concluded that the Federal Circuit Court of Appeals erred in affirming dismissal of the case for lack of subject-matter jurisdiction, where the dismissal was based on the reasoning that "a patent licensee in good standing cannot establish an Article III case or controversy with regard to validity, enforceability, or scope of the patent because the license agreement 'obliterate[s] any reasonable apprehension' that the licensee will be sued for infringement." *Id.* at 122, 127 S.Ct. 764. It reasoned "that 'the requirements of [a] case or controversy are met where payment of a claim is demanded as of right and where payment is made, but where the involuntary or coercive nature of the exaction preserves the right to recover the sums paid or to challenge the legality of the claim.' " *Id.* at 131, 127 S.Ct. 764. It also noted that "[p]romising to pay royalties on patents that have not been held invalid does not amount to a promise *not to*

*seek* a holding of their invalidity." *Id.* at 135, 127 S.Ct. 764.

Thus, *MedImmune* replaced the imminent suit test. *Micron Technology, Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897, 901 (Fed. Cir. 2008). Instead, *MedImmune* established the standard for declaratory judgment justiciability, holding that a justiciable Article III case or controversy exists where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127, 127 S.Ct. 764 (quoting *Md. Cas. Co. v. P. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). Under the *MedImmune* standard, courts analyze whether a counterclaimant basing federal jurisdiction off of a declaratory judgment claim meets the party's burden by showing (1) a case or controversy of sufficient immediacy and reality and (2) that a declaratory judgment as to the patents-in-suit would affect the legal relationship between the counter-claimant and counter-defendant by finally and conclusively resolving the underlying controversy. *Id.*; *see also Qualcomm*, 2017 WL 5985598, at \*20.

Plaintiff contends that "*Medimmune* simply held that a patent licensee had standing to file claims for declaratory relief challenging validity of licensed patents and whether its product practices the licensed patents without first breaching the license payment by withholding payment *where, if the licensee ceased making payments under the license agreement, it might be sued for patent infringement by the patent holder.*" Reply at 8:8-13. Plaintiff argues that *MedImmune*'s holding does not apply to this case, meaning the Court should apply *Super Sack* instead, for three reasons: First, unlike the *MedImmune* licensee, who continued paying royalties under protest while challenging the patents-in-suit, Defendant has already breached the Agreements by ceasing royalty payments and has been sued in state court for doing so. *Id.* at 8:19-9:1; *see also* Oppo. at 16:27-28. Second, Plaintiff argues that *MedImmune* is distinguishable because the *MedImmune* patent license required the licensee's products to practice the claims of the Licensed Patents, but the Agreements at issue in this case do not. Reply at 8:23-28, 9:2-4. As already noted, the Court

finds the Agreements do require ChowNow to practice the Licensed Patents in order for ChowNow to bear responsibility for royalties, so this argument fails to distinguish *MedImmune.* Third, Plaintiff asserts that unlike the *MedImmune* licensee, ChowNow "does not face the threat—real or potential—of being sued by Amaranth for patent infringement, now or in the future, because Amaranth has expressly covenanted not to sue ChowNow for such a claim." *Id.* at 9:4-7. As also already noted, the covenant to sue only covered agreeing not to pursue royalties, but it did not covenant not to sue for patent infringement. Thus, this argument also fails to distinguish *MedImmune.* As such, the Court proceeds to apply *MedImmune* to the present controversy.

**\*19** The *MedImmune* "all the circumstances" analysis is "calibrated to the particular facts of each case." *Matthews Int'l Corp. v. Biosafe Eng'g, LLC,* 695 F.3d 1322, 1328 (Fed. Cir. 2012). Courts have not developed a bright-line rule applicable to patent cases, but rather "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372, 1380-81 (Fed. Cir. 2007). Since *MedImmune,* the Federal Circuit has held that, in the context of patent disputes, an "actual controversy" requires "an injury in fact traceable to the patentee," which exists only if the plaintiff alleges "both (1) an affirmative act by the patentee related to the enforcement of his patent rights and (2) meaningful preparation to conduct potentially infringing activity." *ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.,* 975 F. Supp. 2d 1083, 1087 (N.D. Cal. 2013) (finding there was "no dispute regarding the second factor because AV already makes the products that are being accused of infringing"); *Qualcomm,* 2017 WL 5985598, at \*15 (holding that "there is no dispute as to the second factor because Apple long engaged in the sale and, through its Contract Manufacturers, the production of iPhones and iPads").

Courts have found the first step satisfied where a patent holder files a lawsuit in state court seeking royalty payments owed in connection with use of the patent holder's patents. *Beverly Hills Teddy Bear Co., Inc. v. GennComm, LLC,* No. CV-2002849-CJCJEMX, 2020 WL 7049537, at \*2 (C.D. Cal. Oct. 1, 2020) (noting that the "[t]he first element is also satisfied" because the patent holder had "already filed a lawsuit in state court seeking the royalty payments owed by [the licensee] in connection with its alleged use of [the patent holder's] patents"). Further, "[p]rior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy." *Hewlett-Packard Co. v. Acceleron LLC,* 587 F.3d 1358, 1364 (Fed. Cir. 2009). In this case, Amaranth has already filed suit seeking royalty payments in connection with its Licensed Patents. Amaranth also has an extensive history of prior litigious conduct. Thus, Amaranth has taken affirmative acts to enforce its patent rights in satisfaction of the first step.

A declaratory judgment plaintiff satisfies the second step where a license holder refuses to pay royalties owed under a license agreement. *See, e.g., Beverly Hills Teddy Bear Co., Inc. v. GennComm, LLC,* No. CV2002849CJCJEMX, 2020 WL 7049537, at \*2 (C.D. Cal. Oct. 1, 2020) ("Here, the second element is clearly satisfied as BH Teddy has refused to pay GennComm the royalties agreed to under the Agreement."); *see also MedImmune,* 549 U.S. at 128, 127 S.Ct. 764 ("There is no dispute that [a justiciable controversy would have existed] if petitioner had taken the final step of refusing to make royalty payments under the [ ] license agreement."). Thus, where an accused party, like ChowNow, contends that it has the right to engage in the accused activity without a license, "an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights." *Dow Jones & Co. v. Ablaise Ltd.,* 606 F.3d 1338, 1346-47 (Fed. Cir. 2010) (citing *Revolution Eyewear,* 556 F.3d at 1297); *see also Hero Nutritionals, Inc. v. Vitastix, Inc.* 2010 WL 11580048, at \*4 (C.D. Cal. Apr. 23, 2010) (explaining that when the plaintiff refused to pay royalties under the license agreement because the underlying patent was invalid, the plaintiff's challenge to the patent was justiciable because "if Plaintiff successfully challenges the validity of Defendant's patent, the parties' License Agreement will be effectively undermined"); *Precision Shooting Equip. Co. v. Allen,* 646 F.2d 313, 314, 318-19 (7th Cir. 1981) (finding "there is

sufficient controversy for jurisdiction" in a dispute between parties to a licensing agreement where the licensee challenges the validity of the licensor's patent in a declaratory judgment action; noting that "if it is determined that [the licensee] is paying royalties for nothing, its post-challenge royalties will likewise be in safekeeping for return by the court."). Here, ChowNow has taken meaningful preparation to conduct potentially infringing activity in satisfaction of the second prong. Thus, an actual controversy exists under the *MedImmune* test. However, the Court must still address whether after applying *MedImmune*, Ameranth's covenant not to sue defeats a case or controversy.

 **\*20** The parties dispute whether *MedImmune* abrogated *Super Sack's* covenant not to sue doctrine, which holds that a patent holder's covenant not to sue for patent infringement divests the district court of federal subject matter jurisdiction over claims of patent invalidity because the covenant eliminates any case or controversy between the parties. *See* Oppo. at 21:4-26 (arguing *MedImmune* abrogated the holding in *Super Sack* and "dramatically altered the applicable standard, making it easier for claimants to gain Declaratory Judgment Act standing"); Reply at 8:19-9:16 (arguing that "*MedImmune* did not abrogate the *Super Sack* procedure to eliminate a potential dispute over patent validity or infringement by providing a covenant not to sue). While *Super Sack* has not been entirely overruled, it has been clarified. *See, e.g., Benitec, 495 F.3d at 1346* ("Although neither *Super Sack* nor *Amana* has been expressly overruled, both applied the disapproved 'reasonable apprehension of *imminent* suit' test."); *see also Cat Tech LLC v. TubeMaster, Inc., 528 F.3d 871, 880 (Fed. Cir. 2008)* (noting that "[i]n the wake of *MedImmune*, several opinions of this court have reshaped the contours of the first prong of our declaratory judgment jurisprudence," and "*MedImmune* articulated a 'more lenient legal standard' for the availability of declaratory judgment relief in patent cases"). Defendant argues that Plaintiff fails to meet the formidable burden of showing that "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur" because it fails to show that (1) Plaintiff could not reasonably be expected to resume its patent enforcement efforts against Defendant or (2) it is absolutely clear that Plaintiff will not sue Defendant in the future for

issues related to the Licensed Patents. Oppo. at 22:3-7, 23:13-17.

"Whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 556 F.3d 1294, 1297 (Fed. Cir. 2009)*; *see also* Oppo. at 22:13-16 (citing same). For instance, in *Revolution Eyewear*, the court distinguished cases where "the covenants covered the current products whether they were produced and sold before or after the covenant, and the courts found [the] absence of continuing case or controversy" from the plaintiff's covenant, which "offered no covenant on the current products, stating that it is not obligated to 'repudiate suit for future infringement.' " *Id.* "[B]y retaining that right [to sue on current products], Revolution preserved this controversy at a level of 'sufficient immediacy and reality' to allow Aspex to pursue its declaratory judgment counterclaims." *Id.* Similarly, in *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp., 488 F.3d 982, 995-96 (Fed. Cir. 2007)*, the Federal Circuit noted that the plaintiff failed to make a blanket withdrawal by refusing to withdraw some of the claims and had also sued one of the defendants for infringement of those claims in another suit. Thus, the district court had appropriately retained jurisdiction over the patents in suit because the failure to withdraw all claims created a reasonable apprehension of suit for infringement. *Id.*

Here, as Defendant points out, Plaintiff's covenant not to sue "only guarantees that Ameranth will not sue ChowNow in the future 'for royalties or other fees.' " Oppo. at 22:16-17 (citing McNally Decl. at ¶ 14). It says nothing of whether it will sue for patent infringement. Defendant contends that it only entered into the Agreements to end a patent infringement lawsuit previously filed by Plaintiff, so because the covenant to sue "does not include an irrevocable and unconditional *guarantee* that Ameranth will not sue ChowNow for any alleged past or future *patent infringement*," it is facially deficient and cannot serve as the basis of mooting ChowNow's *non-infringement* and invalidity Cross-Claims. *Id.* at 22:17-24. Defendant also points out that the covenant not to sue fails to address the impact the covenant would have on successors to Plaintiff's patents, who could also sue Defendant

for patent infringement; Defendant's successors and/ or subsidiaries, who could potentially be sued by Plaintiff or its successors; and Defendant's customers and other third-parties, "who are expressly provided for in the Amended License Agreement, and Ameranth previously accused of infringement." *Id.* at 22:25-23:1. Thus, Defendant argues that Plaintiff's "covenant not to sue is not unconditional and irrevocable, and Ameranth's actions in related patent-infringement litigations lend support to the belief that Ameranth could exploit the conditional nature of the covenant not to sue if it ever so desired." *Id.* at 23:7-10 (citing *In re Ameranth Cases*, No. 3:11-cv-01810 (S.D. Cal. 2020)). The Court agrees. The covenant not to sue is limited like the *Revolution* and *Honeywell* covenants. Plaintiff's complaint pleading the covenant not to sue shows the covenant only addresses royalties, not patent infringement:

> **\*21** Ameranth does not seek to recover royalties for any period of time or events occurring beyond October 1, 2020, the date of filing of the Complaint. Ameranth specifically waives the right to seek recovery of running royalties or other license fees due from ChowNow pursuant to the First Amended Agreement for any period of time or events occurring *beyond* the date of filing of the Complaint, and covenants not to sue ChowNow for any running royalties or other license fees for any period of time or events occurring *beyond* the date of filing of the Complaint.

Compl. at 9, ¶ 24.

The Agreements indicate that once Defendant stopped paying royalties, the Agreements terminate, *see* ECF No. 14-1 at 8, ¶ 6.3, and Plaintiff can sue Defendant for patent infringement again, and in fact, would not have

the ability to even seek royalties once the Agreements terminate. In other words, Plaintiff has only pointed out that it has waived rights it never had in the first place. Thus, Plaintiff's covenant not to sue does not negate the Court's ability to find an Article III case or controversy in this case.

In sum, the Court finds that Plaintiff's covenant not to sue does not defeat the existence of a case or controversy sufficient to give Defendant standing to pursue its counterclaims seeking declaratory judgments of non-infringement and invalidity. Plaintiff's arguments to the contrary are unavailing in light of post-*MedImmune* authority protecting licensees from abusive licensees abusive licensing and patent practices. *See, e.g.*, Michael Risch, *Patent Challenges and Royalty Inflation*, 85 Ind. L.J. 1003, 1057, n.39 (2010) (noting that "[t]he post-*MedImmune* Federal Circuit has been able to protect patent holders from abusive practices," and as a result, "[a] licensee can also seek declaratory judgment that it does not practice the patent and thus is not liable for royalties."). Having concluded that a case or controversy exists the Court must still address Plaintiff's arguments as to whether Defendant provided proper *Lear* notice.

#### ii. *Lear* notice

Plaintiff argues that Defendant has no standing to pursue its counterclaims for declaratory relief as to invalidity because it never provided Plaintiff with *Lear* notice (*i.e.*, notice it was withholding royalty payments under the Agreement on the grounds that it had determined that the Licensed Patents were invalid) before October 1, 2020 (the date Plaintiff filed suit in the Superior Court), and Plaintiff has given Defendant a covenant not to sue for any period of time *after* October 1, 2020. Mot. at 6:22-24; 19:13-16. Absent standing, the Court would need to remand the case or dismiss it. Defendant opposes by arguing that Plaintiff's arguments regarding *Lear* notice fail for three reasons: (1) Defendant's 2018 correspondence met the standards for invoking rights under *Lear*; (2) even under Plaintiff's "mistaken understanding" of what *Lear* requires, Defendant's "2018 correspondence at least creates fact questions that cannot be decided without any discovery at this stage of the litigation"; and (3) regardless of whether

Defendant's 2018 correspondence invoked its *Lear* rights, Plaintiff's covenant not to sue does not eliminate any controversy after the date of Amaranth's suit, and therefore, does not moot ChowNow's invalidity cross-claims. Oppo. at 15:20-16:3.

In 1969, the Supreme Court, in *Lear, Inc. v. Adkins*, 395 U.S. 653, 673, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), made clear that with respect to a breach of contract claim arising out of a licensing agreement, the licensee need not repudiate the licensing agreement—thereby subjecting itself to liability for infringement—in order to challenge the validity of a patent. *Id.* In doing so, it overruled the doctrine of licensee estoppel, which previously prevented a patent licensee from challenging the validity of a patent to which it possessed a license to use. *Id.* Plaintiff argues that *Lear* notice, which the Court describes below, is relevant to determination of federal subject matter jurisdiction because no case or controversy exists between the licensor and licensee as to the validity of the licensed patents or obligation to pay royalties until the licensee challenges the licensed patents. Thus, by failing to provide proper *Lear* notice until filing its Amended Counterclaims, Defendant lacked standing at the time Plaintiff filed suit as well as at the time of removal.

**\*22** *Lear* involved a patent licensing agreement containing similar terms to the Agreements in this case: If the UPSTO refused to issue a patent or held any of the patents covered by the agreement invalid, the defendant-licensee could terminate the agreement. 395 U.S. at 656-57, 89 S.Ct. 1902. Eventually, the defendant ceased paying royalties, and the plaintiff-licensor, like Amaranth, sued for breach of the patent licensing agreement. *Id.* at 660, 89 S.Ct. 1902. The Supreme Court held that a party seeking to repudiate a licensing agreement, like the *Lear* plaintiff and ChowNow, need not comply with the licensing agreement by continuing to pay royalties until the patent claim is declared invalid, even where an agreement expressly states royalties are owed until the patent claim is held invalid. *Id.* at 673-74, 89 S.Ct. 1902 (holding "that Lear must be permitted to avoid the payment of all royalties accruing after Adkins' 1960 patent issued if Lear can prove patent invalidity"). As applies to this case, *Lear* means ChowNow had a right to cease paying royalties while challenging the Licensed Patents and did not need to continue

such payments until the final determination on the validity of those patents, even if the Agreements state otherwise.

One year later, in 1997, the Federal Circuit, in *Studiengesellschaft Kohle, M.B.H. v. Shell Oil Co.*, began requiring what is known as "*Lear* notice," pursuant to which "a licensee ... cannot invoke the protection of the *Lear* doctrine until it [17] (i) actually ceases payment of royalties, and (ii) provides notice to the licensor that the reason for ceasing payment of royalties is because it has deemed the relevant claims to be invalid." 112 F.3d 1561, 1568 (Fed. Cir. 1997); *see also Dodocase VR, Inc. v. MerchSource, LLC*, No. 17-CV-07088-JCS, 2020 WL 475494, at \*4 (N.D. Cal. Jan. 29, 2020) (holding that "Defendant MerchSource satisfies the *Kohle* requirements because Defendant MerchSource (i) actually ceased payment of royalties, and (ii) provided notice to Plaintiff Dodocase on October 5, 2015 that the reason for ceasing payment was that it concluded that the relevant claims are invalid"). While "a licensee need not institute suit challenging the validity of the patent," it "must clearly notify the licensor that the licensee is challenging the patent's validity." *Id.* at 936-47. *Studiengesellschaft* also clarified that the *Lear* doctrine does not prevent a patent owner from recovering royalties up until the date the licensee first challenges the validity of the patent. 112 F.3d at 1568; *see also Go Medical Industries, Pty., Ltd. v. Inmed Corp.*, 471 F.3d 1264, 1273 (Fed. Cir. 2006) (holding that the court erred in relieving the licensee of its obligation to pay royalties after a finding of invalidity during another lawsuit because that invalidity finding was still pending appeal, and thus, "had no effect on the contractual relationship" between the plaintiff and the defendant even though the agreement tied its duration to the life of the patent-in-suit).

Plaintiff argues that an October 11, 2018 letter sent by Defendant stated that its decision to cease paying royalties was based on a determination that its products did not practice the claims of Plaintiff's Licensed Patents within the Field of Use as defined by the FAA "and not on the basis of validity." Mot. at 10:24-11:2; Oppo. at 3:28. Defendant responds that even if the Licensed Patents were or are valid, it is of no import because its products and services do not practice the

Licensed Patents. *See* Exhibit 3 to Mot., ECF No. 12-3 at 8-9.

The actual letter itself states that it believes "the question of validity of this patent is immaterial, *at the present time*, to ChowNow's decision to cease royalty payments," *see* Exhibit 3 to Mot., ECF No. 12-3 at 8-9 (emphasis added), but not necessarily that it did not factor into the decision in any respect. In fact, the letter explicitly noted that the 850, 325, 733, and 077 Patents had all been invalidated. *Id.* It also stated that Plaintiff had identified the 060 and 651 Patents, which Defendant "reviewed and reached the same conclusion of no infringement." *Id.* It concluded by stating that if Plaintiff believed its platform employed an "an enforceable and valid claim of Ameranth's patents," then, Plaintiff should provide Defendant "with any such claim chart for us to evaluate," *Id.* Because licensees pay royalties to allow them to practice patents without being sued for patent infringement, if a licensee does not practice the patents subject to the licensing agreement, the need for royalty payments disappears. In sum, the letter at issue, while noting it was not basing the decision to cease royalty payments on the basis of a belief of invalidity "at the present time," also asserted that the Licensed Patents had already been declared invalid and were, in fact, invalid. *See Dodocase*, 2020 WL 475494, at *4 (providing that "it is undisputed that on October 5, 2017, Defendant MerchSource sent Plaintiff Dodocase a letter stating that Defendant MerchSource had concluded that "all relevant claims are invalid under 35 U.S.C. § 102 and/or § 103."). This letter also clearly advised that Defendant would not paying royalties on any products sold thereafter. This satisfies the requirements to (1) actually cease payment of royalties and (2) provide notice that the reason for ceasing payment was that it concluded that the relevant claims were invalid. *See Dodocase*, 2020 WL 475494, at *4 (holding the defendant met the requirements because it "(1) actually ceased payment of royalties, and (ii) provided notice to Plaintiff... on October 5, 2015 that the reason for ceasing payment was that it concluded that the relevant claims are invalid.").

**\*23** Further, unlike in *Studiengesellschaft*, where the licensee continued to pay some royalties while hiding the fact that it was withholding royalties on certain products, Defendant has withheld all royalties.

Oppo. at 16:17-22. Defendant argues this distinction is important because "[i]t was in that *nonrepudiating* context that the Federal Circuit stated that [the defendant] could not 'invoke the protection of the *Lear* doctrine until it (i) actually ceases payment of royalties, and (ii) provides notice to the licensor that the reason for ceasing payment of royalties is because it has deemed the relevant claims to be held invalid." *Id.* at 16:22-17:2. Defendant contends that in this case, it has clearly satisfied both *Studiengesellschaft* requirements by (1) already ceasing royalty payments to Ameranth and (2) expressly telling Ameranth it was ceasing doing so, in part, because it believed the Licensed Patents were invalid. *Id.* at 17:3-9. Defendant also argues that "[t]he fact that ChowNow had multiple reasons for not paying Ameranth is irrelevant to whether ChowNow properly invoked its rights under *Lear*." *Id.* at 17:14-16. This is because "Supreme Court held that MedImmune could invoke its *Lear* rights even though it raised *three* grounds for believing it owed no royalties, *i.e.*, that the 'patent was [1] invalid and [2] unenforceable, and that its claims were in any event [3] not infringed.' " *Id.* at 17:16-20 (citing *MedImmune*, 549 U.S. at 122, 127 S.Ct. 764) (reference numerals added). Thus, Defendant argues that "[a]t the very least, this record creates a factual question as to whether ChowNow invoked its *Lear* rights as required under *MedImmune* and/or [*Studiengesellschaft*], thus precluding remand on that basis." *Id.* at 17:20-22.

The Court agrees that under *MedImmune*, a repudiating licensee can provide multiple reasons for repudiating a license agreement, as ChowNow did here, which means ChowNow provided adequate *Lear* notice.

### iii. *Ameranth v. Splick-It, Inc.*

In the Notice of Removal, Defendant also cited to the *Splick-It* case, in which the contract involved a license agreement covering the 077 Patent, and the district court denied Ameranth's motions to remand and dismiss similar to the Motions here. ECF No. 1 at 5:13-6:6. Plaintiff argues that even though Defendant's Notice of Removal refers to the *Splick-It* Action, *Splick-It* is distinguishable for four reasons warranting this Court arriving at a different outcome. Mot. at 24:4-7. Plaintiff contends that these differences require

the Court to dismiss Defendant's cross-complaints for declaratory relief because Defendant has no standing, resulting in the Court lacking jurisdiction over the case and requiring remand pursuant to 28 U.S.C. § 1447(c). *Id.* at 24:4-7. Defendant opposes by arguing that Plaintiff's attempts to distinguish *Splick-It* is unavailing because that case "is nearly identical, both factually and procedurally, to this case." Oppo. at 24:11-13.

On April 26, 2017, Ameranth filed an action against the defendant, Splick-It, Inc. ("Splick-It"), in the San Diego Superior Court alleging two claims for (1) breach of contract and (2) declaratory relief, alleging that the defendant "breached the 1 st Amended License Agreement by failing to provide the reports and royalties required by the 1 st Amended License Agreement, while still using the family of Ameranth hospitality patents." 3:17-cv-01093-DMS-WVG, ECF No. 1 at 9-13 (the "*Spick-It*") *see also Ameranth, Inc. v. Splick-It, Inc.,* No. 17-cv-01093-DMS-WVG, 2017 WL 11422186, at *1 (S.D. Cal. Aug. 4, 2017) (Sabraw, Chief J.) (denying Ameranth's motion to remand); *see also Ameranth, Inc. v. Splick-It, Inc.,* No. 17-cv-01093-DMS-WVG, 2017 WL 11422187, at *1 (S.D. Cal. Aug. 18, 2017) (Sabraw, Chief J.) (denying Ameranth's motion to dismiss). On May 26, 2017, Splick-It filed an answer and cross-complaint, alleging, *inter alia,* that Ameranth's patents—including but not limited to the 060 and 077 Patents at issue in this case—were not infringed, invalid, and unenforceable. *Splick-It,* 2017 WL 11422186, at *1. After filing its cross-complaint, Splick-It also removed the case to the Southern District of California. *Id.* In June 2017, Plaintiff filed a Motion to Dismiss, *see Spick-It* Action, at ECF No. 16, Motion to Remand, *id.* at ECF No. 12. The court, however, denied the motion to dismiss and motion to remand, *id.* at ECF Nos. 27, 28.

In denying the motion to remand, the court reasoned that the facts underlying Ameranth's state law claims would "involve an inquiry into whether Splick-It is practicing the inventions claimed in the '077 Patent." *Splick-It,* 2017 WL 11422186, at *3. Thus, because the "issue, infringement of the '077 Patent, [was] currently being litigated in this Court, ... it would be more economical and efficient to litigate the issue as to Splick-It here, as well." *Id.* In denying the motion to dismiss for lack of subject-matter jurisdiction, the

*Splick-It* court held that "as in *Powertech,* the dispute between Splick-It and Ameranth about 'whether the license agreement requires royalty payments to be tied to valid patent coverage–[was] sufficient to support declaratory judgment jurisdiction.' " *Splick-It,* 2017 WL 11422187, at *3.

**\*24** Plaintiff argues that *Splick-It* is distinguishable for four reasons: First, Plaintiff points out that the license agreement in *Splick-It* "was a license to *use and practice* the Ameranth patents," and the *Splick-It* court "relied upon the linkage between practice of the patented inventions and obligation to pay royalties to find that adjudication of [Plaintiff]'s state law claims 'will involve an inquiry into whether Splick-It is practicing the inventions claimed in the '077 Patent.' " Mot. at 22:14-23:2 (citing *Splick-It,* 2017 WL 11422186, *3). Because "no such linkage exists here" requiring that Defendant must use or practice the patents in order to be liable for royalties, Plaintiff argues *Splick-It* does not warrant this Court finding jurisdiction over this case. *Id.* at 23:2-6 (quoting *Splick-It,* 2017 WL 11422186, at *3). Defendant responds that "Judge Sabraw made no such 'linkage.' " Oppo. at 25:4-5. In fact, Defendant points out that "Judge Sabraw *did not even address* this argument in any way, shape, or form in his order denying Ameranth's motion to remand," and "[i]n fact, the words 'pay,' 'royalty,' and 'linkage' do not appear in Judge Sabraw's order." Oppo. at 25:5-8 (citing *Splick-It,* 2017 WL 11422186, at *1-3). In a way, both parties are correct: *Splick-It* did discuss whether the defendant practiced Ameranth's patents-in-suit. *See Splick-It, Inc.,* 2017 WL 11422186, at *3. However, it never discussed Splick-It's practicing of Ameranth's patents with respect to Splick-It's royalty obligations in the manner Plaintiff suggests. *See id.*

Second, Plaintiff argues unlike this case, where the Agreements arose as the result of a settlement agreement between the parties to a lawsuit filed by Ameranth against ChowNow for patent infringement, in *Splick-It,* Ameranth had never sued Splick-It for patent infringement, so the license did not result from the settlement of a patent dispute. *Id.* at 23:7-17. Defendant responds that whether the license agreement at issue resulted from a complaint for patent infringement "is a distinction that, legally, makes no difference." Oppo. at 25:9-13. The Court agrees.

Third, Plaintiff argues that in *Splick-It*, its complaint against Splick-It sought royalties both before, during, and after the lawsuit began, seeking royalties through the end of the term of the license agreement, where in this case, Plaintiff limits the royalties it seeks through the date it filed the original complaint. Mot. at 23:18-24. Similarly, Plaintiff's final argument contends that in *Splick-It*, it never provided the defendant with a covenant not to sue for any periods of time beyond the filing date of its complaint against the defendant, whereas in this case, Plaintiff has covenanted not to sue for any royalties or fees after October 1, 2020. *Id.* at 23:25-24:3. Defendant responds to both arguments by stating that Plaintiff's "covenant is so limited that it does not affect this Court's jurisdiction, and Ameranth's attempt to manipulate facts to reach a different outcome from *Splick-It* should be rejected." Oppo. at 25:16-21. Although Plaintiff attempts to distinguish this case from *Splick-It*, this Court finds that these arguments that *Splick-It* is distinguishable actually prove that Plaintiff learned from the 2017 *Splick-It* decision [18] by taking the reasons offered by the *Splick-It* court for finding jurisdiction and making a conscious effort to make those reasons inapplicable to this case—for example, by covenanting not to sue for royalties after it filed suit. *See, e.g.*, Reply at 14:10-11 (noting that this case differs from *Splick-It* because "*Splick-It* did not involve a covenant not to sue for future contractual or infringement liability"). However, because the Court has already noted that Plaintiff's covenant not to sue is meaningless in light of the Agreements, these distinctions do not warrant a different outcome in this case.

**\*25** Plaintiff's Motion to Remand is **DENIED** because the Complaint and Defendant's counterclaims give rise to a justiciable Article III case or controversy relating to patent law.

### B. Plaintiff's Motion to Dismiss the Cross-Complaints for Failure to State a Claim and Lack of Subject Matter Jurisdiction are Denied as Moot.

Plaintiff filed its Motion to Dismiss on November 19, 2020, which sought to dismiss Plaintiff's counterclaims. *See* Mot. However, on December 7, 2020, Defendant filed amended counterclaims,

containing eight additional claims for relief. ECF No. 18. "It is well-established in our circuit that an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.' " *Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (reversing the district court's granting of the defendants' motion to dismiss the superseded first amended complaint and the resulting dismissal of the case because the timely filed second amended complaint mooted the motion to dismiss targeted at Plaintiff's first amended complaint, which was no longer in effect). Here, Defendant filed its original counterclaims on November 4, 2020, *see* Cross-Compl., which Plaintiff responded to with the instant motion to dismiss filed on November 19, 2020, *see* ECF No. 12. FRCP 15(a)(1) allows a party to amend its pleading once as a matter of course within 21 days of serving the original pleading, or "[i]f the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), whichever is earlier." Thus, in response to Plaintiff's motion to dismiss the counterclaims, Defendant filed its Amended Counterclaims, on December 7, 2020. ECF No. 18. Because Defendant filed the Amended Counterclaims within 21 days of Plaintiff filing the Motion to Dismiss the original Counterclaims, FRCP 15(a) allowed Defendant to amend the Counterclaims "as of course," or without leave of court, thereby mooting Plaintiff's Motion to Dismiss. *See, e.g., Apollo Enter. Sols., Inc. v. Lantern Credit*, LLC, No. 17-cv-02331-AB-JCX, 2018 WL 437472, at \*1 (C.D. Cal. Jan. 16, 2018) (noting that the defendant "subsequently filed its First Amended Counterclaims on May 5, 2017, mooting Apollo's initial motion to dismiss").

In sum, Plaintiff's Motion to Dismiss sought to dismiss Defendant's original counterclaims, filed on November 4, 2020, *see* Cross-Compl., which are no longer operative due to Defendant's filing of the Amended Counterclaims, on December 7, 2020, *see* ECF No. 18. Thus, granting Defendant's Motion to Dismiss would have no effect within the confines of this case. *See, e.g., Tur v. YouTube, Inc.*, 562 F.3d 1212, 1214 (9th Cir. 2009) ("[A]n issue is moot when deciding it would have no effect within the confines of the case itself.").

### C. Plaintiff's Objections to Defendant's Notices of Supplemental Authority

Plaintiff objects to Defendant's Notices of Supplemental Authority, ECF Nos. 28, 29, which provided the Court with opinions from Chief Judge Dana Sabraw in *Ameranth, Inc. v. Domino's Pizza, Inc.*, No. 12-cv-0733-DMS-WVG, 2021 WL 409725, at *1 (S.D. Cal. Feb. 5, 2021), finding this case exceptional for purposes of 35 U.S.C. § 285. Plaintiff objects to these notices, and the orders attached to them, as "not relevant to the controlling legal issues." ECF No. 30 at 2:12-17. The Court agrees and disregards these notices in its consideration of the Motions. The orders provided to the Court have nothing to do with the jurisdictional issues before the Court.

## V. CONCLUSION

 **\*26**  Plaintiff argues that "[t]his is a garden variety state law action for breach of ChowNow's contractual duty to pay royalties to Ameranth under a written license agreement," so "[i]t belongs in San Diego County Superior Court, the venue in which Ameranth properly filed the complaint. Mot. at 24:9-12. Plaintiff accuses Defendant of attempting "to make a federal case out of this suit on several grounds, none of which are well-taken" because Plaintiff's "causes of action include no federal claims and do not depend upon determination of any patent law or other federal issues, and therefore provide no basis for removal." Mot. at 24:13-16. However, because the Agreements self-terminated, they provide no defense to a claim by Ameranth for infringement from the date of termination (*i.e.*, October 30, 2018) onwards. Further, the plain language of the Agreements shows royalties are due dependent on whether ChowNow practices the Licensed Patents, requiring the Court to determine the claims of the Licensed Patents as

well as their validity. Finally, Plaintiff argues that Defendants' "cross-complaints for declaratory relief of invalidity are likewise defective because [Defendant] never provided *Lear* notice that it was challenging the validity of the patents prior to the initiation of this lawsuit, and [Plaintiff] has unconditionally covenanted not to sue [Defendant] for royalties or other fees for any period of time after the filing of the lawsuit." Mot. at 24:21-26. However, the Court has determined that ChowNow provided adequate *Lear* notice, and Ameranth's covenant not to sue for royalties does not address its desire or intent to sue for patent infringement, which it has done in the past. Thus, a controversy exists sufficient to create federal subject matter jurisdiction under the Declaratory Judgment Act.

Thus, for the above reasons, the Court:

1. **DENIES** Plaintiff's Motion to (a) Dismiss the Cross-Complaint for (i) Failure to State a Claim and (ii) Lack of Subject Matter Jurisdiction and (b) Remand to State Court, ECF No. 12.

2. **SUSTAINS** Plaintiff's Objections to Defendant's Notices of Supplemental Authority.

3. Any response to Defendant's Amended Counterclaims must be filed within ten (10) days of this order.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2021 WL 3686056

## Footnotes

1    The Court takes judicial notice of the fact that as of the date of this order, PACER shows a total of 52 cases in which the plaintiff is Ameranth, Inc. FED. R. EVID. 201(b) (1)-(2) (providing that at any stage of a proceeding, courts may take judicial notice of (1) facts not subject to reasonable dispute and "generally known within the trial court's territorial jurisdiction" and (2) adjudicative facts, which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290 n.1 (9th Cir. 1996) (taking judicial notice of court records); *Langer v. Kiser*, 495 F. Supp. 3d 904, 911 (S.D.

Cal. 2020) (taking judicial notice of the fact that "PACER shows a total of 1,498 cases in which the plaintiff is named 'Chris Langer' throughout all courts on PACER").

2    In its order, the Court primarily relies on facts stated in both Plaintiff's Motions as well as Defendant's Opposition given these appear to be facts neither party disputes. The majority of the facts set forth are also taken from the operative pleadings Plaintiff seeks to dismiss or disputes (*e.g.*, Defendant's notice of removal and Defendant's counterclaims), and for purposes of ruling on Plaintiffs' Motions, the Court assumes the truth of the allegations pled and liberally construes all allegations in favor of the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). Additional facts were also taken from the relevant licensing agreements and documents relied upon in the pleadings. *See, e.g., Rosen v. Uber Techs., Inc.,* 164 F. Supp. 3d 1165, 1171 (N.D. Cal. 2016) (providing that "[f]or purposes of a Rule 12(b)(6) motion...the court can [also] 'augment' the facts and inferences from the body of the complaint with 'data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice' "); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993) ("Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied").

3    Unless otherwise indicated, all page number references are to the ECF-generated page number contained in the header of each ECF-filed document. All references to an ECF-generated filing number preceded by a case number differing from the present case refer to a filing on the docket in the case number that precedes that "ECF No." reference.

4    "In a patent license, a patent owner grants to someone else permission to tread upon the patent owner's property rights without legal consequence." Amelia Smith Rinehart, *The Federal Question in Patent-License Cases,* 90 Ind. L.J. 659, 660 (2015) (noting that "[w]hen one of the parties to a patent license decides to seek remedies from the other party for a license harm, ... [i]n most cases, the patent owner brings her suit against the licensee in federal court, alleging that the licensee breached the license contract and, as a result, now infringes the patent" because "[t]he license agreement, by its very nature, implicates patent issues").

5    The definition of "Fields of Use" is ultimately not helpful to the issues at hand, but because it is referenced throughout both parties' briefing as well as this order, the Court notes that both Agreements define the term as pertaining to electronic food ordering:

> *"Fields of Use"* shall mean use for: (a) hosting menus and receiving and processing orders for food and beverages from consumers, caterers, delivery services, and other third party aggregators and food service providers, and (b) payment/gift card processing via a wireless handheld computing device—including any of the uses in subsections ( a)-(b) by any of the following means: (i) online, including on its own and third party websites, (ii) on mobile devices, including through mobile websites and mobile applications, (iii) in call centers operated by ChowNow or third parties, (iv) on platforms such as game consoles, cable boxes, DVD and Blu-Ray players, web enabled televisions, media players, and other web enabled devices, (v) on web and social media platforms such as Linked-In, Facebook, My Space, and Four Square, and (vi) on other synchronized devices or platforms that may be developed in the future.

Licensing Agreement, ECF No. 14-1 at 2q, § 1.2; First Amended Agreement, ECF No. 14-1 ("FAA") at 2, § 1.2.

6      These adjudications on the merits bind this district with respect to the validity of the claims adjudicated in that case. *Yong v. INS*, 208 F.3d 1116, 1119 n. 2 (9th Cir. 2000) ("[O]nce a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority....").

7      Although the *Natera* decision is from another district court, and as such, is not binding precedent on this Court, the Court accepts its conclusion as to patent invalidity on the basis of the doctrine of defensive non-mutual collateral estoppel. The doctrine of non-mutual defensive collateral estoppel "precludes a plaintiff from contesting an issue it has previously litigated and lost in another case against a different defendant." *Pharm. Care Mgmt, Ass'n v. D.C.*, 522 F.3d 443, 446 (D.C. Cir. 2008) (noting that "[t]he preclusion [in that case] is defensive because the defendant invokes the bar against the plaintiff's claims"); *see also Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1313, 1320 (Fed. Cir. 2015) (holding the invalidity of the asserted claims of two patents-in-suit was established by issue preclusion). The Supreme Court has explicitly held that the defense of issue preclusion applies to a defendant "facing a charge of infringement of a patent that has once been declared invalid," even though the party asserting the defense was not a party to the action where the patent was invalidated. *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 349-50, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *see also Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1577 (Fed. Cir. 1994). In order to apply issue preclusion, the Federal Circuit requires the party seeking to apply preclusion to meet four conditions: "(1) identity of the issues in a prior proceeding; (2) the issues were actually litigated; (3) the determination of the issues was necessary to the resulting judgment; and, (4) the party defending against preclusion had a full and fair opportunity to litigate the issues." *Soverain*, 778 F.3d at 1315.

Here, the Court concludes that (1) the validity of the 651 Patent was litigated in the *Natera* proceeding; (2) that issue was actually litigated; (3) the U.S. District Court for the District of Delaware made a determination on the merits; and (4) the party defending against preclusion, which in this case, would be Plaintiff, had a full and fair opportunity to litigate the issues in that court. Thus, any attempt to dispute the invalidity of the 651 Patent is barred by issue preclusion, or more specifically, the doctrine of defensive non-mutual collateral estoppel.

8      So long as any single patent under a licensing agreement remains valid, the licensee must continue paying royalties until all covered patents have been held invalid or expire. *Brulotte v. Thys Co.*, 379 U.S. 29, 29, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964).

9      This date is significant as Defendant contends that Plaintiff is waiving its right to future potential royalties because "Ameranth is well aware that its final patent, the '060 Patent, is invalid, and it does not want to put the validity of this last patent at issue in federal court, where the other five patents in the family were previously invalidated." Oppo. at 10:11-15.

10     Because both parties to this case are Delaware corporations, no diversity of citizenship exists sufficient to create diversity jurisdiction. *See* 28 U.S.C. § 1332; *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010).

11     The well-pleaded complaint rule makes the plaintiff the master of his or her complaint by allowing the plaintiff to avoid federal jurisdiction by exclusively relying on state law. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

12    The majority of the non-binding cases Plaintiff cites involved licensing agreements that did not
      require the licensee to practice the claims of the patent in order to incur royalty obligations. *See,
      e.g.*, *Broadband iTV, Inc. v. OpenTV, Inc.*, No. 17-CV-06647-SK, 2018 WL 4927935, at *5, 7 (N.D.
      Cal. Feb. 22, 2018) (granting the plaintiff's motion to remand after dismissing the defendant's
      declaratory relief claims for non-infringement where the scope of the applicable license agreement
      was not limited to patent rights but also included copyrights, trademarks, and trade secrets, albeit
      relying predominantly on law preceding the 2011 amendments to the AIA in arriving at its holding);
      *Qualcomm*, 2017 WL 5985598, at *1, 21-22 (granting the counterdefendant's partial motion to
      dismiss a count of the defendants-counterclaimants' counterclaims where "[b]ecause the royalty
      rates in the SULAs are not contingent on patent invalidity or noninfringement, there is no case or
      controversy because any declaration of the Nine Additional Patents-in-Suit would not conclusively
      resolve the dispute regarding royalties owed to Qualcomm"); *Powertech Tech., Inc. v. Tessera,
      Inc.*, No. C 10-945 CW, 2013 WL 12324116, at *12, 19 (N.D. Cal. Apr. 15, 2013) (finding "that,
      as a result of the supplemental covenant [not to sue], there is no continuing case or controversy
      in this litigation" and dismissing "the case for lack of jurisdiction" where "the licensing agreement
      "did not tie the royalty obligation to coverage" of the patents); *Verance Corp. v. Digimarc Corp.
      (Delaware)*, No. CIV.A. 10-831, 2011 WL 2182119, at *1, 7 (D. Del. June 2, 2011), *dismissed*, 465
      Fed. App'x 934 (Fed. Cir. 2012) (granting the defendant-licensor's motion to dismiss pursuant to
      FRCP 12(b)(1) where "the License Agreement [was] not contingent on the validity of the patent
      and, thus, a declaration of invalidity or non-infringement would not obviate Verance's royalty
      obligation under its terms as a matter of federal patent law"). Thus, the aforementioned cases
      found jurisdiction did not exist while noting that the obligation to pay royalties did not depend on
      the validity of the patents. In *MedImmune*, on the other hand, the Supreme Court held that the
      case and controversy requirements had been met by a licensee's claim for declaratory judgment
      as to patent invalidity and the licensing agreement itself provided that royalties were not owed
      if the patents were declared invalid. 549 U.S. at 130-31, 127 S.Ct. 764. In this case, just as
      in *MedImmune*, the plain language of the Agreements indicates royalties are not owed if the
      Licensed Patents are invalid. *See* FAA at 7, § 5.3; *see also* Compl. at 4:14-18 (quoting same).

13    The case Plaintiff relies on for this proposition is a California workers' compensation case that
      is inapposite, and also said "declaratory relief by means of a cross-complaint *may* [not must] be
      denied when the same issue is raised by an affirmative defense." *C.J.L.*, 18 Cal. App. 4th at
      391-92, 22 Cal.Rptr.2d 360.

14    FRCP 8(a)(1) requires that for a pleading, such as a complaint or counterclaim, to state a claim
      for relief, it must contain a short and plain statement of the claim showing the pleader is entitled
      to relief as well as the grounds for the court's jurisdiction. In responding to a pleading, however,
      the responding party must (1) "state in short and plain terms its defenses to each claim asserted
      against it" and (2) "admit or deny the allegations asserted against it by an opposing party." FED.
      R. CIV. P. 8(b)(1). Thus, under FRCP 8, "affirmative defenses made 'in response to a pleading'
      are not themselves claims for relief." *Akiachak*, 827 F.3d at 107.

15    Both parties appear to concede that no royalties are owed before April 1, 2018. *See* Oppo. at 9:5-7
      ("ChowNow ceased making royalty payments to Ameranth after April 30, 2018—the payment due
      date for the first quarter of 2018"); *see also* Mot. at 10:10-15 (providing that Defendant owed
      a report of and royalty payment for the second quarter of 2018, covering April 1 through June
      30, 2018) on July 31, 2018). Thus, it appears both parties agree that the period of disputed
      royalties owed pertains only to the period of April 1, 2018 through October 1, 2020. *See* Compl.
      at 12:7-12. However, the Complaint also seeks "a further judicial declaration that ChowNow has
      miscalculated, under-reported, and underpaid royalties due under the First Amended License

Agreements for prior periods of time within the last 4 years, and owes additional royalties to Ameranth for such time periods." Compl. at 12:9-12. This means that Plaintiff's complaint, on its face, seeks royalties due for the past four years. *Id.* However, according to the licensing agreement itself, no such royalties are owed if the Licensed Patents are invalid. *Id.* Defendant's Cross-Complaint "that this Court deny the relief sought by Ameranth in its Complaint and Prayer." Cross-Compl. at 30:24.

16 A "nonpracticing entity" has been defined as "[a] person or company that acquires patents with no intent to use, further develop, produce, or market the patented invention." Garner, Brian A., *Black's Law Dictionary*, NONPRACTICING ENTITY, (11th ed. 2019). "When a nonpracticing entity focuses on aggressively or opportunistically enforcing the patent against alleged infringers, it is also termed (pejoratively) a *patent troll.*"*Id.* Whether Ameranth qualifies as a "patent troll" has been raised by both the media, *see, e.g.,* https://reformingretail.com/index.php/2020/04/23/patent-troll-ameranth-disgustingly-seeks-to-benefit-from-online-ordering-popularity-during-covid-19/ (describing Plaintiff's extensive litigation history, dating back to 2007, and how it seeks to benefit from an increase in online ordering due to the COVID-19 pandemic), as well as in other courts. *See Ameranth Inc v. Genesis Gaming Solutions Inc et al.*, Case No. 8:11-cv-00189-AG-RNB. Ameranth even filed a motion in limine to exclude evidence that it was a patent troll in another case. *See, e.g., id.* at ECF No. 11 (Motion in Limine No. 11 to Exclude Evidence and Argument (1) that Ameranth is a "Patent Troll", "Non-Practicing Entity", "Patent Assertion Entity" or the Like, and (2) Referencing Ameranth's Licensing or Litigation Activities other than those at Issue in the Present Case; *see also* ECF No. 408 (Minutes of Pretrial Conference/Motions in Limine). However, because the parties settled prior to trial, all motions in limine were vacated, so the court did not rule on this issue. *See id.*

17 Plaintiff points out that it is not enough for someone else to challenge a licensed patent for the licensee to avoid paying royalties; rather, the licensee seeking to refrain from making royalty payments must challenge the patent. *Studiengesellschaft*, 112 F.3d at 1568; *see also* Mot. at 21:21-26. This means ChowNow cannot seek to avoid royalties based on the date another party challenged any of the Licensed Patents.

18 In fact, the Court notes that Ameranth is currently represented by the same counsel it had in *Splick-It. See Splick-It*, 2017 WL 1142186 *1. Plaintiff's counsel is reminded of their obligations: "By presenting to the court a ... written motion ... an attorney ... certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances .... the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." FED. R. CIV. P. 11(B)(2). In this case, in light of (1) the number of cases filed by Plaintiff and (2) denial of previous motions to dismiss and remand in this district court, the Court questions Plaintiff's circumspection in filing the instant motions.

The AIA provides that reasonable attorney's fees may be awarded to the prevailing party in "exceptional cases." 35 U.S.C. § 285. A case is "exceptional" if it stands out from others with respect to either: (1) the substantive strength of a party's litigating position, or (2) the unreasonable manner in which the case was litigated. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 134 S. Ct. 1749, 1756, 188 L.Ed.2d 816 (2014). "[A] pattern of litigation *abuses* characterized by the repeated filing of patent infringement actions *for the sole purpose of forcing settlements*, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285." *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1363 (Fed. Cir. 2019). Courts must discourage such behavior because some patent holders,

known as nonpracticing entities or patent trolls, "with broad claims on platform technologies may try to use those claims to discourage competitors through licensing restrictions and litigation against technologies on similar products." Keith E. Maskus, *Reforming U.S. Patent Policy: Getting the Incentives Right*, COUNCIL ON FOREIGN RELATIONS, CSR No. 19, at 19 (Nov. 2006), *available at* http://www.cfr.org/content/publications/attachments/Patent CSR.pdf.

---

**End of Document**
© 2023 Thomson Reuters. No claim to original U.S. Government Works.