2023 WL 3025390
Only the Westlaw citation is currently available.
United States District Court, W.D. Pennsylvania.

ARCONIC CORPORATION and
Howmet Aerospace Inc., Plaintiffs
and Counterclaim Defendants,
v.
NOVELIS INC. and Novelis Corp,
Defendants and Counterclaim Plaintiffs.

CIVIL ACTION NO. 17-1434
|
Signed April 20, 2023

**Synopsis**
**Background:** Plaintiffs, two businesses, brought action against competitors asserting, among other claims, antitrust claims and claims for declaratory relief with respect to license agreement between plaintiffs and competitors. Competitors brought counterclaims for declaratory relief with respect to license agreement and allegations of patent misuse by plaintiffs in connection with agreement between plaintiffs and third party. Plaintiffs and competitors moved for summary judgment with respect to their declaratory-judgment claims and counterclaims.

**Holdings:** The District Court, Joy Flowers Conti, Senior District Judge, held that:

[1] competitors' declaratory-judgment counterclaim asserting that plaintiffs were required to keep supplying to competitors chemical composition covered by license agreement would be dismissed without prejudice, since plaintiffs had represented that they would continue to permit the composition's supply, and

[2] court would not exercise its discretionary authority under the Declaratory Judgment Act (DJA) to decide competitors' counterclaim asserting that plaintiffs had engaged in patent misuse.

Summary-judgment motions denied as moot with respect to certain claims and counterclaims; as to patent-misuse counterclaim, summary judgment granted to plaintiffs and denied to competitors.

**Procedural Posture(s):** Motion for Summary Judgment.

West Headnotes (9)

[1]  **Declaratory Judgment**
Relief under the Declaratory Judgment Act (DJA) is discretionary; where an actual controversy exists, the DJA places a remedial arrow in the district court's quiver and confers a unique and substantial discretion on federal courts to determine whether to declare litigants' rights. 28 U.S.C.A. § 2201(a).

[2]  **Declaratory Judgment**
Declaratory relief under the Declaratory Judgment Act (DJA) is only prospective; the DJA cannot be used to correct past violations of law. 28 U.S.C.A. § 2201(a).

[3]  **Declaratory Judgment**
Declaratory relief awarded under the Declaratory Judgment Act (DJA) must be of practical help or utility. 28 U.S.C.A. § 2201(a).

[4]  **Declaratory Judgment**
If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court, under the Declaratory Judgment Act (DJA), to proceed to the merits before staying or dismissing the action. 28 U.S.C.A. § 2201(a).

[5]  **Declaratory Judgment**

EXHIBIT
S

Competitor's declaratory-judgment counterclaim asserting, in antitrust action by plaintiff against competitor, that plaintiff had wrongfully terminated a license agreement with competitor and was required to keep supplying to competitor chemical composition and process covered by license agreement would be dismissed without prejudice, where plaintiff had represented that it would continue to permit the supply of the chemical composition at issue to competitor.

More cases on this issue

[6] **Declaratory Judgment**

Exercise of district court of discretionary authority under the Declaratory Judgment Act (DJA) to decide, in antitrust action by plaintiff against competitor, competitor's counterclaim asserting that plaintiff had engaged in patent misuse under license agreement with third party was not warranted; patent misuse, as asserted by competitor, was essentially an affirmative defense to an infringement claim, but plaintiff had not brought an infringement claim against competitor, patent misuse, even if shown, would not allow competitor to recover economic relief, and competitor was asserting patent misuse with respect to a license agreement to which it was not a party, and the party to the agreement at issue was not involved in the litigation and its rights could not be decided in its absence. 28 U.S.C.A. § 2201(a).

More cases on this issue

[7] **Patents**

Patent misuse is typically an affirmative defense to a patent-infringement claim; if a patentee uses conditions on licenses to broaden the scope of a patent grant, an accused infringer may invoke the doctrine of patent misuse to defeat the patentee's claim.

[8] **Patents**

Monetary damages may not be awarded under a declaratory-judgment counterclaim based on patent misuse, because patent misuse simply renders the patent unenforceable.

[9] **Patents**

The patent-misuse doctrine cannot be asserted for monetary relief.

**Attorneys and Law Firms**

Aaron M. Panner, Pro Hac Vice, Collin R. White, Pro Hac Vice, Kellogg, Hansen, Todd, Figel, & Frederick PLLC, Washington, DC, Adam Adler, Pro Hac Vice, Christine E. Lehman, Connor S. Houghton, David A. King, Natalie J. Hausknecht, Pro Hac Vice, Reichman Jorgensen Lehman & Feldberg LLP, Washington, DC, Antoinette C. Oliver, Meyer, Unkovic & Scott LLP, Pittsburgh, PA, Ariel C. Green Anaba, Pro Hac Vice, Wilson Sonsini Goodrich & Rosati, Los Angeles, CA, Brian C. Baran, Pro Hac Vice, Caroline M. Walters, Courtland L. Reichman, Karlanna M. Lewis, Pro Hac Vice, Leaf Williams, Pro Hac Vice, Reichman Jorgensen Lehman & Feldberg LLP, Redwood Shores, CA, Kate S. Falkenstien, Pro Hac Vice, Blue Peak Law Group, Palo Alto, CA, Sarah O. Jorgensen, Reichman Jorgensen Lehman & Feldberg LLP, Atlanta, GA, for Plaintiff and Counterclaim Defendant Arconic Corporation.

Adam Adler, Pro Hac Vice, Christine E. Lehman, Connor S. Houghton, David A. King, Reichman Jorgensen Lehman & Feldberg LLP, Washington, DC, Collin R. White, Pro Hac Vice, Aaron M. Panner, Pro Hac Vice, Kellogg, Hansen, Todd, Figel, & Frederick PLLC, Washington, DC, Antoinette C. Oliver, Meyer, Unkovic & Scott LLP, Pittsburgh, PA, Ariel C. Green Anaba, Wilson Sonsini Goodrich & Rosati, Los Angeles, CA, Caroline M. Walters, Courtland L.

Reichman, Karlanna M. Lewis, Pro Hac Vice, Leaf Williams, Pro Hac Vice, Reichman Jorgensen Lehman & Feldberg LLP, Redwood Shores, CA, Kate S. Falkenstien, Pro Hac Vice, Blue Peak Law Group, Palo Alto, CA, Sarah O. Jorgensen, Reichman Jorgensen Lehman & Feldberg LLP, Atlanta, GA, for Plaintiff and Counterclaim Defendant Howmet Aerospace Inc.

Charles Kelly, Michael J. Joyce, Saul Ewing LLP, Pittsburgh, PA, Holly A. Ovington, Pro Hac Vice, Marissa A. Lalli, Pro Hac Vice, Mark A. Ford, Mark G. Matuschak, Pro Hac Vice, Tyler L. Shearer, Pro Hac Vice, William F. Lee, Kate M. Saxton, Pro Hac Vice, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, Mindy Sooter, Pro Hac Vice, Samantha Picans, Pro Hac Vice, Wilmer Cutler Pickering Hale and Dorr LLP, Denver, CO, Mitchell G. Stockwell, Pro Hac Vice, Jeffrey H. Fisher, Pro Hac Vice, Vaibhav P. Kadaba, Pro Hac Vice, Kilpatrick Townsend & Stockton LLP, Atlanta, GA, Heather Petruzzi, Pro Hac Vice, Leon Bradford Greenfield, Pro Hac Vice, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC, for Defendants and Counterclaim Plaintiffs.

## MEMORANDUM OPINION re DECLARATORY JUDGMENT CLAIMS

Joy Flowers Conti, Senior United States District Judge

I. Introduction

*1 This hard-fought litigation between business competitors Arconic Corporation and Howmet Aerospace, Inc. (collectively, "Arconic") and Novelis Inc. and Novelis Corporation (collectively, "Novelis") has spanned 7 years and resulted in 1109 entries on the docket (and counting). Cross-motions for summary judgment are pending (ECF Nos. 988, 1003). [1] This opinion and order addresses only the requests for declaratory relief asserted by the parties.

Both parties sought summary judgment with respect to their claims for relief under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, as follows:

1. Arconic's Count VII sought declaratory judgment that the 2012 Technology Access & License Agreement dated August 15, 2012, between Arconic and Novelis (the "2012 License") (ECF No. 1-3) does not include the "ion exchange patent";

2. Novelis' Counterclaim X sought a parallel declaratory judgment that the ion exchange patent is included in the 2012 License;

3. Novelis' Counterclaim I sought a declaration that Arconic wrongfully terminated the 2012 License and must continue to supply the A951 chemical composition and process to Novelis; and

4. Novelis' Counterclaim XIII sought a declaration that Arconic committed patent misuse, i.e., a Brulotte violation, by failing to step down its royalty after the last patent expired.

Although many of the related filings are sealed, this opinion will not be filed under seal.

II. Standard of review

[1] The DJA provides that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... **may** declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). Relief under the DJA is discretionary:

Where an actual controversy exists, the DJA "place[s] a remedial arrow in the district court's quiver and confers a unique and substantial discretion on federal courts to determine whether to declare litigants' rights." Reifer v. Westport Ins. Corp., 751 F.3d 129, 139 (3d Cir. 2014) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 288 [115 S.Ct. 2137, 132 L.Ed.2d 214] (1995)) (internal quotation marks omitted); see also Lilac Dev. Grp., LLC v. Hess Corp., No. 15-7547, 2016 WL 3267325, at *2 (D.N.J. June 7, 2016).

*2 Great Lakes Ins. SE v. Ross, No. 121CV17308, ––– F.Supp.3d ––––, ––––, 2023 WL 372788, at *3 (D.N.J. Jan. 24, 2023).

[2] Declaratory relief is only prospective. The DJA cannot be used to correct past violations of law. As the court explained in Doris Behr 2012 Irrevocable Trust v. Johnson, No. CV198828, 2021 WL 2722569 (D.N.J. June 30, 2021):

[D]eclaratory relief cannot be obtained for alleged past wrongs, given that '[t]he remedy is ... by definition prospective in nature.'" *McDonald v. Thomas*, No. 13-1471, 2015 WL 5032379, at *6 (M.D. Pa. Aug. 25, 2015) (quoting *CMR D.N. Corp. v. City of Phila.,* 703 F.3d 612, 628 (3d Cir. 2013)); *Gochin v. Markowitz*, 791 F. App'x 342, 346 (3d Cir. 2019) ("Declaratory relief is 'by definition prospective in nature,' and [the appellant] was therefore not entitled to a declaration that Judge Branca previously violated her rights in the forfeiture action." (citations omitted)); *Parkell v. Senato*, 704 F. App'x 122, 125 (3d Cir. 2017) (affirming district court's conclusion that the plaintiff "could not seek declaratory relief—which is 'by definition prospective in nature,' ... and cannot be issued to address past wrongs") (quoting *CMR D.N.*, 703 F.3d at 628).

*Id.* at *3.

**[3]** **[4]** Declaratory relief must be of practical help or utility. *Pic–A–State Pa. Inc. v. Reno*, 76 F.3d 1294, 1298 (3d Cir. 1996). As the Supreme Court explained: "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990) (the most important principles to weigh in deciding whether to exercise jurisdiction under the DJA "are the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility, of that judgment").

III. First three DJA claims (Arconic's Count VII, Novelis' Counterclaims X and I)

With respect to three of the four DJA claims, the parties agree that declaratory relief is no longer necessary.

First, with respect to the parallel requests about ion exchange, both parties acknowledged in the summary judgment briefing that their affirmative request for a declaration was unnecessary if the opponent's request was denied. (ECF No. 990 at 19 n.11; ECF No. 1029 at 20). Counsel confirmed at the oral argument on February 7, 2023, that "the competing claims on the ion exchange should be dismissed." Tr. at 17. These claims will be dismissed.

**[5]** Second, on February 9, 2023, pursuant to Federal Rule of Civil Procedure 56(f), the court gave notice for Novelis to show cause why summary judgment should not be granted on Counterclaim I (on which no party sought summary judgment) (ECF No. 1065). In its response, Novelis agreed that declaratory relief on Counterclaim I would no longer be of practical use or utility in light of Arconic's assurances that it would continue to permit the supply of the A951 chemical composition to Novelis. (ECF No. 1081). Novelis sought leave to withdraw Counterclaim I without prejudice. Arconic filed a response opposing withdrawal without prejudice and contending that summary judgment should be granted on Counterclaim I (ECF No. 1089). Novelis filed a reply (ECF No. 1098) reiterating its position that Counterclaim I should be dismissed without prejudice for lack of jurisdiction or ripeness.

**\*3** After considering the parties' arguments, Counterclaim I will be dismissed without prejudice. The dismissal is not based upon the merits; rather, the dismissal is based upon representations made by Arconic. Under those circumstances, a dismissal without prejudice is appropriate. In the event Arconic does not comply with its representations, Novelis will be able to reassert this claim, subject to Arconic being able to reassert its defenses.

IV. Novelis' Counterclaim XIII

A. The dispute

The only remaining DJA claim involves an alleged patent misuse violation. In *Brulotte v. Thys Co.*, 379 U.S. 29, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964), the Supreme Court held that a holder of a patent cannot charge royalties for that patent after the patent's term has expired. Novelis argues that *Brulotte* creates a bright-line rule that a royalty must be stepped down to reflect the expiration of patent rights and that Arconic failed to do so in the Amended and Restated Technology Access & License

Agreement between Arconic and Chemetall US, Inc. ("Chemetall"), executed in December 2018, but with an effective date of November 1, 2017 ("2018 Arconic-Chemetall Agreement") (ECF No. 1002-15). *See Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 459, 135 S.Ct. 2401, 192 L.Ed.2d 463 (2015) ("The decision [in *Brulotte*] is simplicity itself to apply. A court need only ask whether a licensing agreement provides royalties for post-expiration use of a patent. If not, no problem; if so, no dice."); *Meehan v. PPG Indus., Inc.*, 802 F.2d 881, 886 (7th Cir. 1986) ("Although it is true [ ] that parties can contract for trade secret payments to extend beyond the life of a patent, there must be some provision that distinguishes between patent royalties and trade secret royalties.... [I]t is the lack of clarity that is dispositive in this case. Under *Brulotte* when royalty payments extend unchanged beyond the life of a patent, patent leverage has been abused and the agreement is unlawful per se.").

Arconic disputes that it committed a *Brulotte* violation, but argues that the court need not reach the merits of patent misuse because declaratory relief is not appropriate under the circumstances of this case. Arconic contends: (1) patent misuse is an affirmative defense that will never be implicated because Arconic will not assert a patent infringement claim; (2) Novelis lacks standing to challenge a contract to which it is not a party; (3) any relief would be illusory because Chemetall – which is a party to the contract -- is not a party to this litigation and could not be forced to abide by any declaration the court may issue; (4) a stepdown was not required because the royalties were tied to non-patent knowhow, i.e., the secret formula for the A951 chemical composition; and (5) the 2018 Arconic-Chemetall Agreement is not a product of patent misuse (and cures any violation) because it was executed after all relevant patents expired.

B. Factual background

Arconic and Chemetall entered into an agreement to commercialize the A951 process on October 29, 2012 (the "2012 Arconic-Chemetall Agreement"). Arconic Combined Concise Statement of Material Facts ("Arconic CCSMF") ¶ 10 (ECF No. 1052). There were revisions to the financial terms in 2014 and 2015. Novelis Supplemental Facts ¶¶ 84, 85 (ECF No. 1052). In December 2018, Arconic and Chemetall renegotiated and executed the 2018 Arconic-Chemetall Agreement, which was backdated to November 1, 2017. Arconic CCSMF ¶¶ 17, 50.

Both contracting parties (Arconic and Chemetall) were well-aware that all applicable patents had expired when they executed the 2018 Arconic-Chemetall Agreement. Tr. 104. The 2018 Arconic-Chemetall Agreement § 1.3 provided that the term "Arconic Patents" meant only the '609 patent. The '609 patent expired on December 26, 2017. Arconic CCSMF ¶ 51 (ECF No. 1052). Section 1.3 specified that the '030 patent (i.e., ion exchange) was not included in the 2018 Arconic-Chemetall Agreement. The 2018 Arconic-Chemetall Agreement recognized that the '804 patent "is now expired." *Id.* § 1.3.

*4 Attachment B to the 2018 Arconic-Chemetall Agreement set prices for various categories of customers of the A951 chemical composition from Chemetall. Novelis pays a rate (i.e., the "Target Price") higher than the rate paid by Arconic. Arconic CCSMF ¶¶ 19, 20.

After Arconic and Chemetall entered into the 2012 Arconic-Chemetall Agreement, Novelis no longer had a contractual relationship with Arconic with respect to the purchase of the A951 chemical composition. Arconic CCSMF ¶ 49. Novelis buys the A951 chemical composition directly from Chemetall by purchase order. Arconic CCSMF ¶¶ 44, 45. Novelis has paid the same price since 2014, despite other revisions in the revenue-sharing terms between Arconic and Chemetall. Arconic CCSMF ¶¶ 15, 16.

There is no specific royalty payment paid by Novelis to Arconic. Chemetall remits royalties (defined in the 2018 Arconic-Chemetall Agreement as "Technology Access Fees") to Arconic as part of their split of total proceeds from Chemetall's sale of the A951 chemical composition to third parties, including to Novelis and others. Novelis CCSMF ¶ 20 (ECF No. 1049); Tr. 45. The 2018 Arconic-Chemetall Agreement modified the financial terms by which Arconic and Chemetall shared the proceeds from a split of profits to a split of gross sales revenues. It appears that this modification was not a stepdown because it increased Arconic's share of the net proceeds. Novelis Supplemental Facts

¶ 86 (ECF No. 1052); Novelis CCSMF ¶¶ 21, 22 (ECF No. 1049).

The 2018 Arconic-Chemetall Agreement does not expressly include a stepdown in royalties to reflect expiration of Arconic's patents and does not apportion royalties between patent and non-patent rights. Novelis CCSMF ¶ 24 (ECF No. 1049). Arconic and Novelis acknowledge that the real value in what was being sold by Chemetall to Novelis resulted from the formula for the A951 chemical composition, which is one of Arconic's trade secrets. Arconic CCSMF ¶ 1 (ECF No. 1052); *see* Fudge Deposition at 450 ("we [Chemetall] were assured that there was sufficient IP that allowed [Arconic] to continue to charge royalties.").

### C. The declaratory relief sought by Novelis

As pled, Novelis sought a declaration that: (1) the Technology Access fees in the 2012 License and the 2012 and 2018 Arconic-Chemetall Agreements are unenforceable; (2) the Target Price to Novelis in Attachment B to the 2018 Arconic-Chemetall Agreement is unenforceable; and (3) any price set for the A951 chemical composition and know-how cannot include any consideration for the expired '804, '609 and '030 patents.[2] (ECF No. 721 ¶ 407). From the summary judgment briefing, the court understood Novelis to be seeking a declaration requiring Arconic and Chemetall to renegotiate their agreement. (*See* ECF No. 1056 at 3) (directing counsel to address the question: "If the requested relief is to have Arconic and Chemetall renegotiate, why is the 2018 renegotiation (after the last patent expired) not the best evidence of the deal they would reach?"); Tr. at 125-126.

**\*5** At the oral argument on February 7, 2023, Novelis made several inconsistent requests for relief. It sought, alternatively, a declaration that the 2018 Arconic-Chemetall Agreement (or the Novelis price term in Attachment B) was illegal (Tr. at 109-110); or an injunction that Arconic be prohibited from enforcing the royalty provision (Tr. at 128). Novelis' counsel argued that possibly Arconic should be required to provide the use of the A951 chemical formula to Chemetall for free. (Tr. 125) ("So the royalty would be void. Chemetall wouldn't have to pay [anything]."). Novelis' counsel argued that the price Chemetall charged to Novelis would fall with the illegal royalty provision and should be invalidated as well. (Tr. at 128-129).

### D. Conclusive nature or practical help or utility of the relief requested

 **[6]**  There are at least three problems with Novelis' request for a declaration about patent misuse. First, there will be no claim of patent infringement asserted by Arconic. Second, the patent misuse defense does not allow Novelis to recover economic relief. Third, there are practical problems: Novelis is not a party to the contract on which it seeks a declaration while Chemetall, which is a contracting party, is not part of this litigation.

#### 1. Patent misuse defense

 **[7]**  Patent misuse is typically an affirmative defense to a patent infringement claim. If a patentee uses conditions on licenses to broaden the scope of a patent grant, "an accused infringer may invoke the doctrine of patent misuse to defeat the patentee's claim." *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir. 2010); *B. Braun Med., Inc. v. Abbott Lab'ys*, 124 F.3d 1419, 1427 (Fed. Cir. 1997) ("Patent misuse arose [ ] as an equitable defense.... When used successfully, this defense results in rendering the patent unenforceable until the misuse is purged. It does not, however, result in an award of damages to the accused infringer.").

Novelis is not an accused infringer of the '609 patent. Arconic never filed a patent infringement claim against Novelis or Chemetall. The court, therefore, does not need to decide the merits of a patent misuse defense. *Princeton Digital Image Corp. v. Off. Depot Inc.*, No. CV 13-239, 2016 WL 1533697, at *8 (D. Del. Mar. 31, 2016) (declining DJA claim based on patent misuse where there was no threat that patent infringement claim would be asserted); *Internet Pipeline, Inc. v. Aplifi, Inc.*, No. CIV.A. 10-6089, 2011 WL 4528340, at *3 (E.D. Pa. Sept. 29, 2011) (patent misuse DJA counterclaim falls because patent holder covenanted not to proceed with patent infringement claim); *Nationwide Sales & Servs. Inc.*

*v. Steel City Vacuum Co.*, No. 16CV06223, 2021 WL 982867, at *4 (E.D.N.Y. Feb. 16, 2021), report and recommendation adopted, 2021 WL 980872 (E.D.N.Y. Mar. 16, 2021) (any alleged patent misuse purged where court dismissed patent infringement claims).

Even if patent misuse is asserted proactively, it is Chemetall that pays the royalty, not Novelis. Any patent misuse violation by Arconic would not invalidate the price that Novelis pays to Chemetall. Chemetall is not directly accused of a *Brulotte* violation. Instead, the patent misuse doctrine impacts only the amount of royalties Arconic could recover from Chemetall. In *Zila, Inc. v. Tinnell*, 502 F.3d 1014 (9th Cir. 2007), the court explained:

> *Brulotte* does not render an entire contract void and unenforceable merely because it includes an invalid licensing agreement. Rather, *Brulotte* renders unenforceable only that portion of a license agreement that demands royalty payments beyond the expiration of the patent for which the royalties are paid.

*Id.* at 1023.

Novelis is not a party to the 2018 Arconic-Chemetall Agreement and does not pay royalties (patent or non-patent) to Arconic. Novelis buys the A951 chemical composition from Chemetall by purchase order. Any relief the court could impose for improper royalties in the 2018 Arconic-Chemetall Agreement would go to Chemetall, not Novelis. The evidence in the record shows the the price charged by Chemetall to Novelis has remained unchanged since 2014, despite several modifications to the financial terms between Arconic and Chemetall and the recognition by Arconic and Chemetall that various patents originally covered by their agreement expired. In short, any declaration about patent misuse would not directly help Novelis. See *Stradley, Ronon, Stevens & Young, LLP v. Sovereign Bank, N.A.*, No. CIV.A. 12-2466, 2013 WL 173022, at *8 (E.D. Pa. Jan. 15, 2013) (declining DJA jurisdiction) ("Stradley has not cited a single case where a court has interpreted a contract through the Declaratory Judgment Act in favor of a non-party to the contract").

**\*6** 2. No recovery of damages

**[8]** Novelis cannot recover damages for patent misuse. The court in *B. Braun* explained that a party cannot avoid the limitation on recovery of damages for patent misuse by using the DJA: "monetary damages may not be awarded under a declaratory judgment counterclaim based on patent misuse, because patent misuse simply renders the patent unenforceable." *B. Braun,* 124 F.3d at 1428.

**[9]** "The Federal Circuit [ ] has determined that there can be a counterclaim for patent misuse **in the appropriate case**." *Internet Pipeline*, 2011 WL 4528340, at *3 (citing *Glitsch, Inc. v. Koch Eng'g Co.*, 216 F.3d 1382, 1386 (Fed. Cir. 2000)) (emphasis added).[3] The court in *Internet Pipeline* continued: "That said, a counterclaim of patent misuse may only seek declaratory relief, not monetary damages, because patent misuse only renders the patent unenforceable." *Id.* (citing *B. Braun*, 124 F.3d at 1427). One district court permitted limited declaratory relief "solely to enjoin defendant from asserting a patent infringement claim against plaintiff." *Cont'l Auto. GmbH v. iBiquity Digital Corp.*, No. 14 C 1799, 2015 WL 859569, at *7 (N.D. Ill. Feb. 26, 2015) (citing *Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*, No. 05 C 4088, 2005 WL 3557947, at *6 (N.D. Ill. Dec. 26, 2005)). All courts agree that the "patent misuse doctrine cannot be asserted for monetary relief." *Id.* Novelis' creative effort to use the patent misuse defense and the DJA to reduce (or eliminate) the price it pays for the A951 chemical composition from Chemetall is not a situation which this court finds warrants discretionary relief under the DJA.

3. Chemetall's Due Process rights

The court cannot order Chemetall to reduce its price to Novelis when Chemetall is not a party to this litigation.[4] See *Massachusetts Delivery Ass'n*

*v. Coakley*, 671 F.3d 33, 48 n.12 (1st Cir. 2012) (DJA "does not contain any provisions indicating that declaratory judgments are authoritative vis-à-vis nonparties to the litigation. In fact, the Act indicates it may only declare the rights of 'interested part[ies] seeking [the] declaration.'").

Chemetall is not before the court and did not have notice or an opportunity to be heard about the validity of the 2018 Arconic-Chemetall Agreement. Under the general rule that parties have a due process right to notice and the opportunity to be heard, "any declaratory judgment issued by this Court would not be binding on the [non-parties] because they are not parties to the current suit." *In re G-I Holdings, Inc.*, No. BR 01-30135, 2008 WL 11513187, at *8 (D.N.J. May 30, 2008).

**\*7** Novelis did not establish any exception to this general rule, *id.*, and did not explain why it did not join Chemetall. *See* Fed. R. Civ. P. 19(c)(2) (the party asserting the claim for relief must state the reasons for nonjoinder). In exercising its discretion under the DJA, the court recognizes that Chemetall has a significant interest in the 2018 Arconic-Chemetall Agreement and should have notice and the opportunity to be heard before its corporate interests are affected. Even the most limited relief sought by Novelis would require Chemetall to renegotiate the 2018 Arconic-Chemetall Agreement and the court cannot impose that duty on Chemetall without Chemetall having notice and an opportunity to be heard. *See Hearing Lab Tech., Inc. v. Hearing Instruments, Inc.*, No. CV 16-221, 2017 WL 3208676, at *3 (W.D. Pa. July 27, 2017) ("Parties to a contract at the heart of a dispute are considered necessary parties."); *Amwest Sur. Ins. Co. v. Concord Bank*, No. 4:00CV1988, 2003 WL 553229, at *5 (E.D. Mo. Feb. 4, 2003) (declining to resolve DJA counterclaim that would require the court to review contractual relationships among entities who were not parties to the lawsuit); *Dombrovskis v. Esperdy*, 185 F. Supp. 478, 482 (S.D.N.Y. 1960) (declining to exercise DJA discretion where the requested relief would be "a useless thing" since it could not bind nonparty). Under these circumstances, the court will decline to exercise DJA jurisdiction over Novelis' patent misuse DJA counterclaim.

4. Review of Novelis' arguments

Novelis makes a series of creative legal arguments about what the court *could* do – i.e., the court could enter declaratory relief on a counterclaim that would not directly confer a monetary benefit on Novelis; the court could ignore that a price reduction to Novelis would not flow mechanically from a declaration; the court could consider Novelis to be a third-party beneficiary of the 2018 Arconic-Chemetall Agreement (even though Novelis argues in Counterclaim XI that it is the victim of an antitrust conspiracy between Arconic and Chemetall stemming from that same agreement); Novelis can seek declaratory relief about a contract to which it is not a party to promote the public interest in patent rights and fair competition; and Chemetall need not be a party because it will benefit from the proposed relief. The court is unable to discern why it *should* exercise its discretion to engage in any of these creative exercises under the DJA.

Novelis' arguments in this case about the proper scope of the DJA, when defending against Arconic's DJA claim, are enlightening. Novelis argues that the court lacks jurisdiction over Arconic's attempt to obtain declaratory relief on an affirmative defense to a patent infringement claim:

> Arconic's declaratory judgment claim (Count 7) attempts to litigate a potential affirmative defense to a patent infringement claim that Arconic has never brought. The "conclusiveness" and "utility" requirements bar this use of declaratory judgments and require dismissal for lack of jurisdiction.

ECF No. 990 at 19 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007)) ("a litigant may not use a declaratory-judgment action to obtain piecemeal adjudication of defenses that would not finally and conclusively resolve the underlying controversy.").

Novelis' attempt to obtain declaratory relief on what is essentially an affirmative defense to a patent infringement claim Arconic never brought and will not bring (and when a party to the agreement in issue is not before the court) does not warrant the exercise of this court's discretionary authority under the DJA. A declaration about patent misuse would not be conclusive or of practical help or utility under the circumstances of this case.

### E. Summary about patent misuse

For the reasons set forth above, the court declines to exercise its discretion under the DJA to award declaratory relief for counterclaim XIII. Declaratory relief on patent misuse would not be conclusive of any dispute between Arconic and Novelis in this case and would not be of practical help or utility. At most, it would affect Arconic's ability to recover patent royalties from Chemetall, who is not a party to this litigation. The patent misuse doctrine cannot provide monetary relief to Novelis. Any declaration that Arconic obtained improper royalties would not directly affect the price Novelis pays to Chemetall: Chemetall is not a party and has not had notice or the opportunity to be heard. Arconic's motion for summary judgment on counterclaim XIII will be granted to the extent the counterclaim is dismissed because the court declines to exercise discretion over that counterclaim and denied in all other respects. Novelis' motion for summary judgment on counterclaim XIII will be denied.

### V. Conclusion

**\*8** In summary, the parties consented to the dismissal of three of the DJA claims (Arconic's Count VII and Novelis' Counterclaims I and X) and the court declines to exercise its discretion to award declaratory relief with respect to the fourth DJA claim in this case (Novelis' Counterclaim XIII). The parties' summary judgment motions with respect to Arconic's Count VII and Novelis' Counterclaims I and X will be denied as moot in light of the parties' acknowledgement that those claims should be dismissed.

With respect to Novelis' Counterclaim XIII: (a) the court will grant Arconic's motion for summary judgment to the extent that Novelis' Counterclaim XIII will be dismissed because the court declines to exercise its discretion under the DJA over that counterclaim; and (b) Novelis' motion for summary judgment will be denied.

An appropriate order follows.

**All Citations**

--- F.Supp.3d ----, 2023 WL 3025390

---

### Footnotes

1   The court referred certain parts of the summary judgment motions to the special master for report and recommendation ("R&R"), specifically, Arconic's claims with respect to the "7 CI" and Novelis' Sherman Act and Robinson Patman Act ("RPA") counterclaims (Counterclaims XI and XII) (ECF No. 1065). In an opinion and order dated March 8, 2023 (ECF No. 1087, 1088), the court granted Arconic's motion for summary judgment (ECF No. 1003) in part, and denied Novelis' motion for summary judgment (ECF No. 988) in part, in that Novelis cannot recover treble damages for the alleged RPA violation in counterclaim XII. The court noted that Novelis' ability to obtain injunctive relief on the RPA counterclaim would be the subject of an R&R by the special master. On March 8, 2023, pursuant to Rule 56(f), the court directed Novelis to show cause why partial summary judgment should not be granted on counterclaims II and III, for alleged breach of the 2012 License. Those issues will be resolved in separate opinions and orders.

| 2 | As described above, the text of the 2018 Arconic-Chemetall Agreement provides that the '030 patent was not included and recognizes that the '804 patent expired. The only patent at issue is the '609 patent, which expired on December 26, 2017 (approximately two months after the backdated effective date of November 1, 2017 and one year before the execution of the 2018 Arconic-Chemetall Agreement). |
|---|---|
| 3 | For example, if a party "cannot obtain a just adjudication of its rights in the first action, [then] declaratory relief is necessary to preserve important rights that otherwise would be unjustifiably lost." *Glitsch*, 216 F.3d at 1384. Here, there is no first action because Arconic will not sue Novelis or Chemetall for patent infringement. No other decision was cited to show what circumstances would be appropriate for a patent misuse counterclaim. |
| 4 | The parties did not brief whether the court could exercise subject-matter jurisdiction and personal jurisdiction to enter such an order. |

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.