Case 4:23-cv-00730   Document 55-9   Filed on 05/15/23 in TXSD   Page 1 of 9

Levi Strauss & Co. v. Aqua Dynamics Systems, Inc., Not Reported in Fed. Supp. (2016)

🚩 KeyCite Yellow Flag - Negative Treatment
Distinguished by **Jacksen v. Chapman Scottsdale Autoplex, LLC,** D.Ariz., July 21, 2021

2016 WL 1365946
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

LEVI STRAUSS & CO., Plaintiff,
v.
AQUA DYNAMICS SYSTEMS, INC., Defendant.

Case No. 15-cv-04718-WHO
|
Signed 04/06/2016

**Attorneys and Law Firms**

Robert Allan McFarlane, Hanson Bridgett LLP, San Francisco, CA, for Plaintiff.

Timothy Martin Flaherty, Morris Polich & Purdy LLP, San Francisco, CA, for Defendant.

**ORDER DENYING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, OR IN THE ALTERNATIVE, TO DISMISS OR STAY PENDING ARBITRATION**

Re: Dkt. No. 30

WILLIAM H. ORRICK, United States District Judge

### INTRODUCTION

**\*1** This is a declaratory relief action arising from a contract dispute between plaintiff Levi Strauss & Co. ("Levi" or "LS&Co.") and defendant Aqua Dynamics Systems, Inc. ("Aqua"). Aqua recently initiated an arbitration against Levi for alleged breach of a license agreement that requires Levi to pay royalties to Aqua's alleged predecessor-in-interest for the use of certain processes relating to the colorization of fabrics and garments. Levi responded by filing this lawsuit, seeking declaratory judgment that (1) Aqua, as a nonsignatory to the license agreement, lacks standing to enforce its arbitration provision; (2) Aqua waived its rights, if any, to enforce the arbitration provision; and (3) Levi has not breached the license agreement. Aqua moves to dismiss for lack of subject matter jurisdiction. In the alternative, it asks that the case be dismissed or stayed in light of the pending arbitration.

I find that federal question jurisdiction exists and, accordingly, DENY Aqua's motion to dismiss for lack of subject matter jurisdiction. I also DENY Aqua's motion to dismiss or stay the case pending arbitration. While Levi's waiver argument is for the arbitrators to decide, its nonsignatory standing argument is properly resolved in this Court. Accordingly, this action will proceed as set out at the conclusion of this Order.

### BACKGROUND

In 1993, Aqua's alleged predecessor in interest, Earth Aire Corporation ("Earth Aire" or "EAC"), Eric Wasinger, and Levi entered a written license agreement. First Amended Complaint ¶ 16 ("FAC") (Dkt. No. 22); *see also* FAC Ex. B (the "Agreement" or "License Agreement"). The Agreement granted Levi the right to use certain processes relating to the colorization of fabrics and garments using ozone. FAC ¶ 16. In exchange, Levi agreed to pay royalties to Earth Aire. *Id.* The Agreement refers to the licensed processes as "Licensed Ozone Processes" and identifies two categories of such processes: (1) Licensed Ozone Processes "covered by a valid and enforceable patent;" and (2) Licensed Ozone Processes "not covered by a valid and enforceable patent." Agreement ¶¶ 10.1.1, 10.1.2. I refer to these two categories as "Covered Processes" and "Uncovered Processes," respectively, in this Order.

The Agreement provides that it "will continue in effect and royalties will be paid" during the following time periods for Covered versus Uncovered Processes:

> 10.1.1 For the use of any Licensed Ozone Process which is *covered by a valid and enforceable patent*, during the life of the patent as to product produced by the process claimed by that patent, but in no event for more than seventeen (17) years after the end of the Development Period.

**EXHIBIT Z**

Case 4:23-cv-00730 Document 55-9 Filed on 05/15/23 in TXSD Page 2 of 9

Levi Strauss & Co. v. Aqua Dynamics Systems, Inc., Not Reported in Fed. Supp. (2016)

10.1.2 For the use of any Licensed Ozone Process *not covered by a valid and enforceable patent*, for seven (7) years after the end of the Development Project. LS&CO may freely use the affected Licensed Ozone Process after the expiration of this Agreement as to it.

Agreement ¶¶ 10.1.1, 10.1.2 (emphasis added). The parties do not dispute that both the "Development Period" and the "Development Project" ended on December 14, 1994, at which point the Agreement became effective, and that the Agreement terminated on December 14, 2011. *See* Oppo. at 4 (Dkt. No. 33); FAC Ex. G. Using a start date of December 14, 1994, the Agreement required Levi to pay royalties on the Uncovered Processes through December 14, 2001, and on the Covered Processes through the termination of the Agreement on December 14, 2011. *See* Oppo. at 4 (noting same).

**\*2** The Agreement includes an arbitration provision stating that

> all disputes, differences of opinion, or controversies which may arise between the parties hereto out of or in relation to or in connection with this Agreement or the breach thereof, shall be finally settled by arbitration in Chicago, Illinois...by a panel of three (3) arbitrators in accordance with the Rules of the American Arbitration Association.

Agreement ¶ 15.2. A subsequent amendment to the arbitration provision states as follows:

AMENDMENT TO ARBITRATION AGREEMENT

[...]

WHEREAS, Aqua alleges that it is the successor in interest to [EAC]; and

WHEREAS, EAC and LS&Co. are parties to [the Agreement]; and

WHEREAS, the Agreement contains certain provisions relating to Arbitration; and

WHEREAS, the Parties,[1] by their attorneys, wish to vary certain terms of the Agreement relating to only the place at which arbitration may take place and the organization which shall conduct the Arbitration;

THEREFORE, IT IS AGREED AS FOLLOWS:

1. This Agreement does not constitute a waiver, abandonment or modification of any claim, defense or counterclaim of either Party or to LS&Co.'s right to assert that this case is not subject to arbitration, but, to the contrary, effects only the provision of paragraph 15.2 referenced below.

2. The Parties agree that paragraph 15.2 of the Agreement shall be modified only to the extent that the place of arbitration, if any shall take place, shall be San Francisco, California, and such arbitration shall be conducted before a JAMS panel of three neutral arbitrators and pursuant to "JAMS Comprehensive Arbitration Rules & Procedures," effective July 1, 2014.

3. Except as set forth in paragraph 2 above, the Agreement remains unchanged and unmodified.

FAC Ex. C.

The Agreement's severability provision states that in relevant part that "[i]f any part of this Agreement shall be declared invalid or unenforceable by a court of competent jurisdiction, it shall not affect the validity of the balance of this Agreement." Agreement ¶ 16.7.

On February 4, 2015, Aqua filed an action against Levi in the United States District Court for the Southern District of New York for breach of contract and patent infringement (the "New York action"). FAC Ex. E (original complaint in the New York action). Its original complaint alleged that "[i]n or around 2002," Levi stopped paying royalties to Earth Aire, thereby breaching the Agreement. *Id.* ¶ 9. Aqua subsequently amended its complaint to drop the patent infringement cause of action. FAC Exs. F, G (first

amended complaint and second amended complaint in the New York action). [2]

On September 15, 2015, Aqua filed a "Demand for Arbitration Before JAMS" seeking to arbitrate the same breach of contract dispute at issue in the New York action. FAC Ex. A. Levi filed this action on October 13, 2015 and its FAC on January 1, 2016. Dkt. Nos. 1, 22. The FAC contains three causes of action for declaratory judgment. FAC ¶¶ 42-64.

*3 The first cause of action, titled, "Lack of Standing," seeks a declaration that Aqua, as a nonsignatory to the Agreement, "has no standing to assert any claim or request any relief related to the License Agreement, including the right to commence the Arbitration against LS&Co. for breach of the License Agreement." FAC ¶ 48; see also FAC at Prayer for Relief (requesting an order declaring that Aqua "has no standing to enforce the License Agreement because it is not a party to the License Agreement"). Levi alleges that the Agreement "requires LS&Co.'s consent for Earth Aire Corporation, or any subsequent assignee, to assign its rights in the License Agreement to any other party," and that "LS&Co. has identified no record that it ever provided, or was ever asked to provide, its consent to any assignment of Earth Aire Corporation's ownership or rights in the License Agreement." FAC ¶¶ 46-47.

The second cause of action, titled, "Waiver," seeks a declaration that Aqua waived its rights to enforce the Agreement's arbitration provision by failing to demand arbitration until approximately 13 years after the alleged breach commenced, and approximately 9 years after it sent Levi a Notice of Default in 2006. FAC ¶¶ 56-58; see also FAC at Prayer for Relief (requesting an order declaring that Aqua "has waived its rights, if any, to enforce the License Agreement in arbitration"). Levi alleges that Aqua "sat on whatever rights it had or has in the License Agreement until it filed [the New York action]," and that "LS&Co. has been materially prejudiced by the long delay." FAC ¶¶ 56-57.

The third cause of action, titled, "No Breach of Contract; Performance by LS&Co.," seeks a declaration that "LS&Co. has not breached the License Agreement, at least for the reason that none of LS&Co. or its suppliers' processes or devices are covered by any valid and enforceable patent [under] the License Agreement." FAC ¶ 64; see also FAC at Prayer for Relief (requesting an order declaring that Levi "is not in breach of the License Agreement"). In support of this theory, Levi points to the Agreement's differing time periods for Covered Processes versus Uncovered Processes. See Oppo. at 4. Levi explains that because Aqua's breach of contract theory is that Levi began breaching the Agreement in 2002 – after Levi's obligation to pay royalties on the Uncovered Processes had expired on December 14, 2001 – Aqua's breach of contract claim depends on a finding that Levi continued using the Covered Processes after 2001. Id. "[I]f there is no such patent infringement," Levi contends, "there is no breach of contract." Id. In the FAC, Levi "denies that it or its vendors used a process covered by a valid and enforceable patent under the License Agreement during the time frame relevant to this dispute and, therefore, denies that it has breached the License Agreement." FAC ¶ 21.

The FAC alleges that subject matter jurisdiction exists under 28 U.S.C. §§ 1331 and 1338, on the ground that Aqua's "right to relief necessarily depends on resolution of a substantial question of federal patent law." FAC ¶ 7. Section 1331 provides jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Section 1338 provides jurisdiction over "any civil action arising under any Act of Congress relating to patents." 28 U.S.C. § 1338.

On January 21, 2016, the parties stipulated to extend Aqua's time to respond to the FAC, and for Aqua's motion to dismiss the FAC, if any, to be heard on March 30, 2016. Dkt. Nos. 25-26. Shortly thereafter, on February 12, 2016, Levi moved for a temporary restraining order prohibiting Aqua from pursuing the JAMS arbitration. Dkt. No. 26. I denied the motion but ruled that I would treat it as a motion for a preliminary injunction to be heard along with the motion to dismiss on March 30, 2016. Dkt. No. 29. Aqua then filed the instant motion, Dkt. No. 30 ("Mot."), and the parties stipulated to stay the JAMS arbitration, Dkt. No. 32. I heard argument on March 30, 2016. Dkt. No. 36.

**LEGAL STANDARD**

## I. FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

 **\*4**  Federal Rule of Civil Procedure 12(b)(1) allows a party to bring a motion to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A challenge under Rule 12(b)(1) may be "facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Where, as here, the challenge is facial – meaning that it is confined to whether the allegations in the complaint are sufficient "on their face" to invoke subject matter jurisdiction, *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) – the court applies essentially the same standard as in considering a motion to dismiss under Rule 12(b)(6), assuming the allegations to be true and drawing all reasonable inferences in the complaining party's favor, *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *see also Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Colony Cove Properties, LLC v. City Of Carson*, 640 F.3d 948, 955 (9th Cir. 2011).

## II. FEDERAL ARBITRATION ACT

Under 9 U.S.C. § 2, the "primary substantive provision" of the Federal Arbitration Act ("FAA"), *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983), a written agreement to arbitrate "in any maritime transaction or a contract evidencing a transaction involving commerce...shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT & T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (internal quotation marks and citations omitted). "Because arbitration is fundamentally a matter of contract, the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms." *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011) (internal quotation marks omitted).

Where a claim is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

## DISCUSSION

Aqua's motions raise two basic questions: (1) whether subject matter exists; and (2) whether the issues underlying Levi's first and second causes of action (i.e., nonsignatory standing and waiver) are for this Court or the arbitrators to decide. I address the questions in turn.

## I. SUBJECT MATTER JURISDICTION

"Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense," that determines whether there is subject matter jurisdiction over the case. *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952). "In other words, the court examines the declaratory *defendant's* hypothetical well-pleaded complaint to determine if subject matter jurisdiction exists." *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1349-50 (Fed. Cir. 2011) (emphasis in original); *see also Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 848 (2014) ("The relevant question concerns the nature of the threatened action in the absence of the declaratory judgment suit."). As stated above, Levi asserts subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338, which together confer jurisdiction over all civil actions "arising under" either "the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, or, more particularly, "any Act of Congress relating to patents," 28 U.S.C. § 1338. Thus, to establish subject matter jurisdiction, Levi must show that Aqua's hypothetical breach of contract action is one "arising under" federal law.

 **\*5**  For the purposes of both section 1331 and section 1338, "a case can 'arise under' federal law in two ways." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013). First, and most commonly, "a case arises under federal law when federal law creates the cause of action asserted." *Id.* Second, even when a claim "finds its origins in state rather than federal law," the claim nevertheless arises under federal law where it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state

Case 4:23-cv-00730 Document 55-9 Filed on 05/15/23 in TXSD Page 5 of 9

Levi Strauss & Co. v. Aqua Dynamics Systems, Inc., Not Reported in Fed. Supp. (2016)

judicial responsibilities." *Id.* at 1064-65. That is, a state law claim provides a basis for federal question jurisdiction where a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.*

Only the second of these two means of determining subject matter jurisdiction is at issue here. *See* Oppo. at 8-13; Reply at 2-4 (Dkt. No. 35). Applying that framework, courts have repeatedly held that a state-law-based breach of contract claim arises under federal law where it depends on a finding that the defendant has infringed the plaintiff's patents. *See, e.g., Jang v. Boston Sci. Corp.*, 767 F.3d 1334, 1336 (Fed. Cir. 2014) (subject matter jurisdiction existed where "[a]lthough this case arises from a [state law breach of contract] claim, rather than directly as a patent infringement claim, [plaintiff's] right to relief...depends on an issue of federal patent law – whether the [products] sold by [defendants] would have infringed [plaintiff's patents]") (internal quotation marks omitted); *U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000) (subject matter jurisdiction existed where, to show that the defendant breached an exclusive license agreement, the plaintiff "must show that [the defendant] sold [products] covered by the licensed patents"); *Alexsam, Inc. v. Green Dot Corp.*, No. 15-cv-05742, 2015 WL 6520917, at *4 (C.D. Cal. Sept. 28, 2015) ("Just as in *Dray*, any determination of whether the agreement was breached will require the Court to interpret the...patents to determine if defendants' products in fact infringe on the patents."); *Berman v. OpenTV Corp.*, No. 09-cv-04065-MMC, 2010 WL 3987448, at *3 (N.D. Cal. Oct. 12, 2010) ("Where a plaintiff asserts that a breach of contract occurs from a defendant's infringement of the plaintiff's patents, the breach of contract claim necessarily depends on resolution of a substantial question of patent law.").

Resolution of Aqua's hypothetical breach of contract claim depends on a finding that Levi has infringed its patents. Aqua's breach of contract theory (assuming that its pleadings in the New York action accurately reflect that theory) is that Levi stopped paying royalties in 2002, after its obligation to pay royalties on the Uncovered Processes had expired on December 14, 2001. Thus, to prove that Levi breached the Agreement by failing to pay royalties, Aqua will have to show that Levi continued using the Covered Processes after 2001. In other words, Aqua will have to show that Levi continued to use a process that was "covered by a valid and enforceable patent." Agreement ¶ 10.1.1. Aqua offers no reason to doubt this characterization of its hypothetical breach of contract claim. Although it argues that the patent issues in this case are mere "affirmative defenses," it fails to explain how it could establish that Levi breached the Agreement without also establishing that Levi committed patent infringement. *See* Reply at 2-4; *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 n.3 (1988) ("[M]erely because a claim makes no reference to federal patent law does not necessarily mean the claim does not 'arise under' patent law.").

**\*6** Aqua's attempt to analogize this case to *Gunn*, 133 S. Ct. 1059, is unpersuasive. In *Gunn*, the plaintiff brought a state court action accusing his attorneys of malpractice for failing to timely raise an exception to the on-sale bar in federal district court litigation that ultimately resulted in his patent being held invalid. 133 S. Ct. at 1062-63. After the state court granted summary judgment for the attorneys, the plaintiff argued on appeal that the state court lacked jurisdiction over the case, and that its summary judgment order should be vacated, leaving him "free to start over" in federal court. *Id.* The Supreme Court found that the patent issue underlying the malpractice action was "not substantial in the relevant sense," in that "[t]he substantiality inquiry...looks...to the importance of the issue to the federal system as a whole," not to the importance of the issue "to the particular parties in the immediate suit." *Id.* at 1066. The patent issue raised by the plaintiff's malpractice claim was not substantial in this sense because it was "backward-looking" and "hypothetical." *Id.* at 1066-67. The Court concluded, "[A]lthough the state courts must answer a question of patent law to resolve [plaintiff's] malpractice claim, their answer will have no broader effects. It will not stand as binding precedent for any future patent claim; it will not even affect the validity of [plaintiff's] patent." *Id.* at 1068. Thus, the patent issue did not support "arising under" jurisdiction. *Id.*

Aqua contends that the patent issues in this case are also "backward-looking" and "hypothetical" and thus

Case 4:23-cv-00730   Document 55-9   Filed on 05/15/23 in TXSD   Page 6 of 9

Levi Strauss & Co. v. Aqua Dynamics Systems, Inc., Not Reported in Fed. Supp. (2016)

insufficient to support federal question jurisdiction. Mot. at 7-8. The Federal Circuit rejected this argument in *Jang*, 767 F.3d 1334. There, the Federal Circuit had previously determined that it had jurisdiction over the plaintiff's contract claim because the plaintiff's "right to relief...depends on an issue of federal patent law – whether the [products] sold by [defendants] would have infringed [plaintiff's patents]." 767 F.3d at 1336 (internal quotation marks omitted). The court held that *Gunn* did not alter this conclusion. *Id.* It found that the patent issues presented by the plaintiff's contract claim were "neither entirely backward-looking nor hypothetical" for two reasons. *Id.* at 1337. First, "the court may be called upon to determine the extent to which validity is made relevant to the resolution of the [contract] claim by the language of the contract itself," which extended only to products covered by patent claims that had not "been held invalid." *Id.* Second, the court reasoned that in "disputes like the one at issue here in which resolution of the contract claim itself requires resolution of underlying issues of infringement, there exists the possibility that the patentee would file suits alleging infringement by others and may even be contractually obligated to do so." *Id.* at 1337-38. It concluded that "[m]aintaining Federal Circuit jurisdiction over such contractual disputes to avoid such conflicting rulings is important to 'the federal system as a whole' and not merely 'to the particular parties in the immediate suit.'" *Id.* at 1338 (quoting *Gunn*, 133 S. Ct. at 1066).

Aqua does not dispute that resolution of its breach of contract claim would require a determination of the validity of the relevant patents. *See* Oppo. at 11 (raising this point). Nor does it dispute that there exists the possibility of subsequent infringement suits based on those same patents. *See id.* (same). Accordingly, in line with *Jang*, I find that Levi has shown that the patent issues in this case are sufficient to support "arising under" jurisdiction, and that subject matter jurisdiction exists under sections 1331 and 1338. Aqua's motion to dismiss under Rule 12(b)(1) is DENIED.

## II. NONSIGNATORY STANDING AND WAIVER

In the alternative, Aqua asks that I dismiss or stay the case in light of the JAMS arbitration. *See* Mot. at 9-13; Reply at 8-12. It contends that the parties clearly and unmistakably delegated questions of arbitrability to the arbitrators, and that as a result Levi's arbitrability challenges (i.e., Levi's first and second causes of action, regarding nonsignatory standing and waiver) must be resolved by the arbitrators. Levi argues that, for a variety of reasons, its nonsignatory standing and waiver challenges are properly resolved by this Court. I find that each party is half-right. The waiver issue is a question for the arbitrators, while the nonsignatory standing issue is a question for the Court.

**\*7** "The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24-25. Nevertheless, "so-called 'question[s] of arbitrability' [–] which include certain gateway matters, such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a [particular] controversy [–] are presumptively for courts to decide." *Oxford Health Plans LLC v. Sutter*, 133 S.Ct. 2064, 2068 n.2 (2013) (some internal quotation marks omitted); *see also Momot*, 652 F.3d at 987 (issues that "contracting parties would likely have expected a court to have decided" are "gateway questions of arbitrability" to be determined by the court, not the arbitrator). This rule flows from the "principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).

"Although gateway issues of arbitrability presumptively are reserved for the court, the parties may agree to delegate them to the arbitrator." *Momot*, 652 F.3d at 987. In other words, parties can "agree to arbitrate" questions of arbitrability. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (internal quotation marks omitted). For arbitration agreements governed by the FAA, courts considering whether the parties have agreed to arbitrate questions of arbitrability "should apply federal arbitrability law absent clear and unmistakable evidence that the parties agreed to apply nonfederal arbitrability law." *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 921 (9th Cir. 2011) (internal quotation marks omitted); *accord Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015). Under federal arbitrability law, "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts...should

Case 4:23-cv-00730   Document 55-9   Filed on 05/15/23 in TXSD   Page 7 of 9
Levi Strauss & Co. v. Aqua Dynamics Systems, Inc., Not Reported in Fed. Supp. (2016)

apply ordinary state law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944. Because questions of arbitrability are presumptively for courts to decide, however, courts "apply a more rigorous standard in determining whether the parties have agreed to arbitrate [such] question[s]." *Momot*, 652 F.3d at 987. "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options*, 514 U.S. at 944 (internal quotations marks and alterations omitted); accord *Rent-A-Ctr.*, 561 U.S. at 69 n.1.

Aqua contends that the parties clearly and unmistakably agreed to delegate questions of arbitrability to the arbitrators by agreeing to amend the Agreement to provide for arbitration under the JAMS Comprehensive Arbitration Rules & Procedures (the "JAMS Rules"). *See* Mot. at 10-11. Rule 11(b) of the JAMS Rules provides in relevant part:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

JAMS Rules § 11(b) (effective July 1, 2014) (RJN Ex. 3, Dkt. No. 30-5). [3]

Viewed in a vacuum, the incorporation of the JAMS Rules might be sufficient to establish a clear and unmistakable delegation. Viewed holistically, however, the Agreement is ambiguous on this point. The Agreement's severability provision states that "[i]f any part of this Agreement shall be declared invalid or unenforceable *by a court of competent jurisdiction*, it shall not affect the validity of the balance of this Agreement." Agreement ¶ 16.7 (emphasis added). The parties do not dispute that by referring to "any part of this Agreement," the severability provision extends to the Agreement's arbitration provision.

**\*8** A number of courts have held that contracts including similar evidence of delegation, as well as similarly worded severability provisions, fail to evince a clear and unmistakable agreement to delegate questions of arbitrability to the arbitrator. *See Vargas v. Delivery Outsourcing, LLC*, No. 15-cv-03408-JST, 2016 WL 946112, at \*6-7 (N.D. Cal. Mar. 14, 2016) ("[D]espite clear language delegating arbitrability to the arbitrator, the issue of delegation is made ambiguous by the language of the arbitration provision that permits modification of the [Agreement] should 'a court of law or equity' hold any provision of the Agreement unenforceable."); *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1565-66 (2009) (finding no clear and unmistakable delegation where the contract included a severability provision applicable "[i]n the event that any provision of this Agreement shall be determined *by a trier of fact of competent jurisdiction* to be unenforceable;" reasoning that this language suggested that "the trial court also may find a provision, including the arbitration provision, unenforceable"); *Baker v. Osborne Dev. Corp.*, 159 Cal. App. 4th 884, 891, 893-94 (2008) (finding no clear and mistakable delegation where the contract included a severability provision applicable if "any provision of this arbitration agreement shall be determined by the arbitrator or by any court to be unenforceable;" reasoning that "although one provision of the arbitration agreement stated that issues of enforceability or voidability were to be decided by the arbitrator, [the severability] provision indicated that the court might find a provision unenforceable") (emphasis omitted); *see also Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185, 1198 (N.D. Cal. 2015).

These courts have reasoned that, "[a]s a general matter, where one contractual provision indicates that the enforceability of an arbitration provision is to be decided by the arbitrator, but another provision indicates that the court might also find provisions in the contract unenforceable, there is no clear and unmistakable delegation of authority to the arbitrator." *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 792 (2012); *see also Mohamed*, 109 F. Supp. 3d at 1202 ("[I]t is reasonable to assume that the typical Uber

drivermight read this severability language to provide further evidence that Uber intended any determination as to whether 'any provision of this Agreement is invalid or unenforceable' to be made in court, and not arbitration.") (internal footnotes and emphasis omitted).

In line with these cases, I find that the parties did not clearly and unmistakably agree to delegate questions of arbitrability to the arbitrators.

This resolves the question of who decides the nonsignatory standing issue, as that particular issue is not arbitrable absent a clear and unmistakable delegation of it to the arbitrator. *See* Kramer v. Toyota Motor Corp., 705 F.3d 1122, 1127 (9th Cir. 2013) (holding that "the district court had authority to decide whether Toyota, a nonsignatory to the [agreements], can compel plaintiffs to arbitrate," where there was no "clear and unmistakable evidence that plaintiffs and Toyota agreed to arbitrate arbitrability").

On the other hand, I find that the waiver issue is not actually a gateway question of arbitrability and is thus properly resolved by the arbitrator even in the absence of clear and unmistakable evidence of an agreement to delegate it. "[C]ontract-based challenges to the validity of arbitration agreements come in two types: one type challenges specifically the validity of the agreement to arbitrate and the other challenges the contract as a whole." Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008) (internal quotation marks and alterations omitted). While a court presumptively determines the validity of an arbitration clause where the challenge is "specifically to the validity of the agreement to arbitrate," where the challenge is "that [the] contract as a whole is unenforceable, the arbitrator decides the validity of the contract, including derivatively the validity of its constituent provisions (such as the arbitration clause)." Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1000 (9th Cir. 2010) (internal quotation marks and alterations omitted). In other words, it is only when "the crux of [the] complaint is a challenge to the arbitration provision itself," and that challenge to the arbitration provision does not "threate[n] to invalidate or otherwise directly affect the entire contract," that the question is presumptively decided by the court. Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1271 (9th Cir. 2006); *see also* Bridge Fund, 622 F.3d at 1000 ("When a plaintiff argues that an arbitration clause, standing alone, is unenforceable – *for reasons independent of any reasons the remainder of the contract might be invalid* – that is a question to be decided by the court.") (emphasis added).

**\*9** The waiver challenge raised by Levi is not independent of any reasons the remainder of the Agreement might be invalid; it directly affects the entire Agreement. In contrast with cases like Cox, 533 F.3d 1114, in which the waiver challenge is based on a party's conduct with respect to the specific right to arbitrate under the contract at issue, *see id.* at 1124-26, Levi's waiver challenge is based on Aqua's general delay in seeking to enforce its purported rights under the Agreement and on the Notice of Default Aqua sent Levi in 2006, *see* FAC ¶¶ 24-30, 53-58. This conduct goes as much to Aqua's ability to enforce the Agreement at all as to its ability to enforce the Agreement's arbitration provision in particular. Indeed, the portion of the FAC setting out the facts regarding the waiver challenge is titled, "Waiver/Statute of Limitations," and Levi's counsel conceded at oral argument that Levi's waiver challenge overlaps with the statute of limitations defense Levi states it will assert if Aqua brings a breach of contract claim in this action. *See* FAC ¶¶ 24, 41. Levi's waiver challenge is properly decided by the arbitrator, not this Court.

Nevertheless, because the nonsignatory standing issue is properly resolved here, Aqua's request that I dismiss or stay this case pending the JAMS arbitration is DENIED, at least for the time being.[4]

### CONCLUSION

For the foregoing reasons, Aqua's motion is DENIED. Unless the parties agree otherwise, they shall have 60 days from the date of this Order to conduct discovery on the nonsignatory standing issue, and Aqua shall file any motion to compel arbitration no more than 15 days thereafter. The Case Management Conference set for May 10, 2016 is CONTINUED until September 6, 2016.

**IT IS SO ORDERED**.

Levi Strauss & Co. v. Aqua Dynamics Systems, Inc., Not Reported in Fed. Supp. (2016)

Case 4:23-cv-00730   Document 55-9   Filed on 05/15/23 in TXSD   Page 9 of 9

**All Citations**

Not Reported in Fed. Supp., 2016 WL 1365946

## Footnotes

1 The amendment to the arbitration provision was executed on August 17, 2015 by Aqua and Levi. FAC Ex. C. The amendment defines the "Parties" as Aqua and Levi. *Id.*

2 On February 10, 2016, Aqua voluntarily dismissed the New York action, stating that "no federal question...or diversity of citizenship now exists between the parties." McFarlane Decl. Ex. 1 (Dkt. No. 34-1).

3 Aqua's request for judicial notice, Dkt. No. 30-1, is GRANTED.

4 I do not address Levi's other arguments for denying Aqua's motion to dismiss or stay the case pending the JAMS arbitration.

**End of Document**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.