2015 WL 2084493
Only the Westlaw citation is currently available.
United States District Court,
C.D. California.

MIOTOX LLC, Plaintiff,

v.

ALLERGAN, INC., Defendants.

No. 2:14–cv–08723–ODW(PJWx).
|
Signed May 5, 2015.

**Attorneys and Law Firms**

Deborah E. Fishman, K. Nicole Buck, Krista Marie Carter, Kaye Scholer LLP, Palo Alto, CA, Jeffrey T. Martin, Kaye Scholer LLP, New York, NY, for Plaintiff.

Anne Y Brody, Sean S. Twomey, Jeffrey T. Thomas, Gibson Dunn and Crutcher LLP, Irvine, CA, for Defendant.

## ORDER DENYING PLAINTIFF'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM [27]

OTIS D. WRIGHT, II, District Judge.

### I. INTRODUCTION

*1 Plaintiff Miotox LLC ("Miotox") filed a Complaint for breach of contract against Defendant Allergan, Inc. ("Allergan") for failure to make adequate royalty payments under a license agreement. Allergan counterclaimed for patent invalidity, non-infringement, and patent misuse. Miotox now moves to dismiss Allergan's patent-related declaratory judgment counterclaims for lack of subject matter jurisdiction, and further moves to dismiss Allergan's patent misuse counterclaim for failure to state a claim upon which relief can be granted. For the reasons discussed below, the Court **DENIES** Plaintiff's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim.[1] (ECF No. 27.)

### II. FACTUAL BACKGROUND

In 1992, Dr. William J. Binder ("Dr.Binder") developed a novel therapy for the treatment of migraine headaches. (ECF No. 1–2 ["Compl."] ¶ 8.) His method calls for the administration of presynaptic neurotoxins, such as botulinum toxin A ("Botox®"), to areas like the face, neck, and back to reduce or prevent the pain associated with migraine headaches. (*Id.*) Dr. Binder filed patent applications, and on February 3, 1998, U.S. Patent No. 5,714,468 ("the ′468 Patent") entitled "Method For Reduction of Migraine Headache Pain" was issued to him. (*Id.*) The ′468 Patent expired on May 9, 2014. (*Id.*)

Dr. Binder formed Miotech, Inc. (now Miotox) in 1994 to promote his inventions and continue the development of novel methods of treatment using Botox® (hereafter, "Botox"). (*Id.* at ¶ 9.) Dr. Binder's continued research and development efforts have led to additional novel migraine headache therapies. Dr. Binder filed several patent applications in 2012 including:

1. U.S. Patent No. 8,420,106, Extramuscular Treatment of Traumatic–Induced Migraine Headache ("the ′106 Patent");

2. U.S. Patent No. 8,617,569, Treatment of Migraine Headache With Diffusion of Toxin in Non–Muscle Related Foraminal Sites ("the ′569 Patent");

3. U.S. Patent No. 8,883,143. Treatment of Traumatic–Induced Migraine Headache ("the ′143 Patent").

(*Id.* at ¶ 30.)

Allergan and Miotech entered into an option agreement on July 31, 1997, giving Allergan the option to acquire an exclusive license to Miotech's patents relating to the treatment of migraine headaches using a botulinum toxin or other neurotoxins. (*Id.* at ¶ 10.) Miotech assigned its patent rights to Plaintiff Miotox on October 23, 1998. On October 30, 1998, Allergan exercised its option and entered into the License Agreement with Miotech. (*Id.* at ¶ 11.) The parties later

EXHIBIT AA

amended the License Agreement to substitute Miotox as the correct licensor. (*Id.* at ¶ 12.)

Under the License Agreement, Allergan agreed to pay royalties of "Net Sales" in exchange for a license to the Licensed Patents. (*Id.* at ¶ 16.) The following are the relevant terms of the License Agreement and their corresponding definitions:

| Term | Definition |
| --- | --- |
| Net Sales | The actual selling price of Licensed Product sold by LICENSEE, its Affiliate, or any sublicensee to others in countries in which Licensed Patents have been granted for the Licensed Use ... |
| Licensed Product | Any medical product containing Botulinum Toxin or other toxin made, used, or sold by LICENSEE, its Affiliate, or any sublicensee thereof whose use is covered by a Valid Patent Claim. |
| Valid Patent Claim | A bona fide, unexpired claim in the Licensed Patents for the Licensed Use which has not been held invalid by a final decision of a court or other governmental agency. |
| Licensed Use | The use of Licensed Products for the treatment of migraine headache[s]. |

**\*2** (ECF No. 27, Carter Decl., Ex. A.)

At the time the parties entered into the License Agreement, the sole patent covered by the Agreement was the ′468 Patent. On November 21, 2013, less than six months before the expiration of the ′468 Patent, Miotox contacted Allergan about amending the list of Licensed Patents included as Schedule 1 to the License Agreement. (Mot.7.) Miotox presented a list of four patents and one patent application, which included the ′106 Patent, ′569 Patent, and ′143 Patent that were filed in 2012. (Mot.6.) In addition to these patents and patent applications, Miotox's complaint listed additional patent applications filed in 2013 (together, the "New Patents").[2] (Compl.¶ 30.) Before agreeing to the amendment, Allergan wished to verify the parties understanding with respect to the royalty provision in light of the ′468 Patent expiring. (Opp'n 3.) Allergan conveyed that once the ′468 Patent expired on May 9, 2014, Allergan would only owe royalties on sales that resulted in Botox being used for one of the methods covered by a valid claim of the New Patents. (Compl.¶ 33.) Miotox disagreed and interpreted the Agreement to require Allergan to pay royalties on all sales of Botox relating to the treatment of migraine headaches, despite the ′468 Patent's expiration. (*Id.* at ¶ 34–36.)

On October 8, 2014, Miotox filed claims for breach of contract, unjust enrichment, and other related claims in the Superior Court of California, County of Los Angeles. (*See generally id.*) Allergan removed the case to this Court and counterclaimed for declaratory judgment of non-infringement of the ′106 Patent, non-infringement of the ′143 Patent, invalidity of the ′569 Patent, and unenforceability of all the New Patents due to patent misuse. (ECF No. 6.) On December 29, 2014, Miotox moved to dismiss all of Allergan's

counterclaims for lack of subject matter jurisdiction and to dismiss Allergan's patent misuse counterclaim for failure to state a claim upon which relief can be granted. (ECF No. 27.) Allergan opposed and Miotox replied. (ECF Nos. 28, 30.) That Motion is now before the Court for consideration.

### III. LEGAL STANDARD

**A. Rule 12(b)(1)**
Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the court may dismiss a complaint when it lacks subject matter jurisdiction. In patent suits, Federal Circuit precedent governs the determination of whether the court has subject matter jurisdiction. *See Minnesota Mining & Mfg. Co. v. Norton Co.,* 929 F.2d 670, 672 (Fed.Cir.1991).

The Declaratory Judgment Act provides that "[i]n an actual case or controversy within its jurisdiction ... any Court of the United States ... may declare the rights and other legal relations of any interested party facing such declaration." 28 U.S.C. § 2201(a). Accordingly, "the Declaratory Judgment Act requires an actual case or controversy between the parties before a federal court can constitutionally assume jurisdiction." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953, 955 (Fed.Cir.1987) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937)).

*3 The phrase "actual case or controversy" as used in the Act "refers to the same 'Cases' and 'Controversies' that are justiciable under Article III" of the Constitution. *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007). This jurisdictional inquiry is concerned with the facts that exist when the plaintiff originally filed its complaint, and if there was not a case or controversy at the time of filing, subsequent events cannot make subject matter jurisdiction proper. *See Innovative Therapies, Inc. v. Kinetic Concepts, Inc.,* 599 F.3d 1377, 1384 (Fed.Cir.2010). Thus, the burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed. *King Pharm., Inc. v. Eon Labs, Inc.,* 616 F.3d 1267, 1282 (Fed.Cir.2010); *Benitec Austl., Ltd. v. Nucleonics, Inc.,* 495 F.3d 1340, 1344 (Fed.Cir.2007).

In considering whether there exists a case or controversy, courts must determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune,* 549 U.S. at 127 (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)); *see also Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.,* 482 F.3d 1330, 1337 (Fed.Cir.2007). The dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," such that the dispute is "real and substantial" and "admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune,* 549 U.S. at 127.

The Federal Circuit has emphasized that "there is ... no facile, all-purpose standard" for determining whether an Article III controversy exists. *Cat Tech, LLC v. TubeMaster, Inc.,* 528 F.3d 871, 879 (Fed.Cir.2008); *see also Maryland Cas. Co.,* 312 U.S. at 273. For this reason, the court must calibrate its analysis to the facts of this particular case to determine whether "all the circumstances" demonstrate a case or controversy. *See MedImmune,* 549 U.S. at 127.

**B. Rule 12(b)(6)**
A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones,* 319 F.3d 483, 494 (9th Cir.2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**\*4** The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint ... as true and ... in the light most favorable" to the plaintiff. *Lee v. City of L.A.,* 250 F.3d 668, 688 (9th Cir.2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed. Fed.R.Civ.P. 15(a). But a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv–Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir.2000).

### IV. DISCUSSION

Miotox argues that (1) Allergan's counterclaims of non-infringement and invalidity do not present an actual controversy and would not resolve the parties' dispute over Allergan's royalty obligation; and (2) Allergan's counterclaim of patent misuse fails to adequately plead each element of patent misuse. The Court will address each of these arguments in turn.

**A. Declaratory Judgment**
Miotox makes a factual attack on the Court's jurisdiction over Allergan's declaratory judgment counterclaims. A 12(b)(1) motion to dismiss for lack of subject matter jurisdiction can be based on a facial attack or a factual attack. *Leite v. Crane Co.,* 749 F.3d 1117, 1121–22 (9th Cir.2014). A factual attack is raised when the moving party introduces evidence to controvert factual allegations made in the complaint. *Id.* When the moving party brings a factual attack, the court can make findings on any disputed factual allegations. *Id.* The party opposing the motion to dismiss "bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Id.*

Allergan and Miotox have an ongoing dispute regarding the interpretation of the royalty provision in the License Agreement. The crux of the dispute is which Botox sales are royalty-bearing. Miotox argues that the License Agreement is part of a broader, integrated agreement that provides Allergan exclusive patent rights, know-how, clinical data, and improvements on the use of Botox (or other toxins) for the treatment of migraine headaches. (Mot.12.) In exchange for this broad grant of rights, Allergan agreed to pay royalties based on the Net Sales of the Licensed Product for the Licensed Use and not tied in any way to Allergan's actual practice of the Licensed Patents. (*Id.*)

What Miotox overlooks is that the language of the License Agreement defines "Licensed Product" as being dependent on the practice the Licensed Patents: "any medical product containing Botulinum Toxin or other toxin made, used, or sold by LICENSEE ... whose use is *covered by a Valid Patent Claim."* (Carter Decl., Ex. A at 6 (emphasis added).) This is relevant because royalties are determined by the Net Sales, which is defined in part by a "Licensed Product." (*Id.* at 3.) Therefore, the Court agrees with Allergan's interpretation that since the royalties are tied to sales of products covered by Miotox patents, this dispute cannot be resolved without deciding (1) which of the unexpired Miotox patents are valid and (2) the scope of Botox use covered by the patents. (*Id.* at 8.) *See Powertech Tech. Inc. v. Tessera, Inc.,* 660 F.3d 1301, 1309–10 (Fed.Cir.2011) ("Here, we simply hold that the dispute ... as to whether the license agreement requires royalty payments to be tied to valid patent coverage [ ] is sufficient to support declaratory judgment jurisdiction.").

**\*5** Further, the cases Miotox relies upon that granted motions to dismiss declaratory judgment claims of invalidity and non-infringement under Rule 12(b)(1) are distinguishable from this case. Specifically, in *Verance Corp. v. Digimarc Corp.,* the court held that there was "no provision in the License Agreement making Verance's payment obligations contingent on the validity or infringement of any Digimarc's patents." No. 10–831, 2011 WL 2182119, at \*6 (D.Del. June 2,

2011). But, the license agreement in *Verance* required the licensee to pay royalties for "Licensed Products and Services" that were defined as specific products made by the licensee, with no reference to the licensor's patents. *Id.* In contrast, "Licensed Product" in this case is explicitly defined to be products whose "use is covered by a valid, unexpired claim." (Opp'n 10.) Regardless of Miotox's insistence that the License Agreement covers a "broad grant of rights," the actual language of the Agreement supports Allergan's position that royalties are tied to the practice of the Licensed Patents.

Miotox also argues that because Allergan has not challenged the validity or infringement of *all* the New Patents, Allergan's declaratory judgment counterclaims are not yet ripe for adjudication. That is, resolution of the declaratory judgment counterclaims will not resolve Allergan's royalty obligations. Once again the Court disagrees. Allergan does not challenge the remaining two New Patents; therefore if Allergan prevails on its invalidity and non-infringement claims with respect to the ′569, ′106, and 143 Patents, the royalty amount would be based upon the sales of Botox (or other toxins) covered by a claim in one of those two patents. (Opp'n 11.) Miotox argues that royalties from a license agreement do not need to be based on the actual use of a patent, but can be dictated by the convenience of the parties. (Mot.12.) The Court agrees with Miotox that parties can contract different conditions on royalty payments, but as explained above, the language of the License Agreement in this case does not support such an agreement.

Lastly, Miotox argues that because it brought a breach of contract action rather than an infringement action against Allergan, there is no immediate and real controversy sufficient to establish declaratory judgment jurisdiction. "[A] specific threat of infringement litigation by the patentee is not required to establish jurisdiction, and a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids magic words such as 'litigation' or 'infringement.' " *ABB Inc. v. Cooper Indus., LLC,* 635 F.3d 1345, 1348 (Fed.Cir.2011) (internal quotations and citations omitted). Despite Miotox's attempt to characterize the controversy as solely a dispute about contract interpretation, a controversy exists to support declaratory judgment jurisdiction because determining the invalidity and infringement of the ′569, ′ 106, and ′143 Patents is necessary to resolve the dispute as to the amount of royalties due. Further, the argument that Miotox has not triggered the termination clause and therefore cannot bring an infringement action is unavailing. The termination clause states in relevant part that:

> **\*6** This Agreement may be terminated by one party giving notice to the other parties of its intent to terminate, while stating with specificity the grounds therefor, in the event that a party fails to perform or otherwise breaches any material obligations hereunder. The party so notified shall have sixty (60) days after receipt of the notice to cure the breach or seek legal redress.

(Carter Decl., Ex. A at 15.) While it is unclear whether Miotox's complaint would constitute as notice to terminate, Miotox at any time can provide Allergan notice to terminate and after sixty days bring an action for patent infringement. Clearly, Miotox feels that Allergan has failed to perform its obligations under the License Agreement, otherwise it would have not brought the breach of contract action in the first place. The fact that Miotox *could* bring an infringement action is what is relevant, not whether Miotox has actually brought an infringement action. Therefore, there is sufficient immediacy and reality of an infringement action against Allergan.

Accordingly, the Court finds that the controversy between Allergan and Miotox regarding the ′569, ′106, and ′143 Patents is of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune,* 549 U.S. at 127.

**B. Patent Misuse**
Patent misuse requires "that the alleged infringer show that the patentee has impermissibly broadened the 'physical or temporal' scope of the patent grant

with anticompetitive effect." *Windsurfing Int'l. Inc. C. AMF, Inc.,* 782 F.2d 995, 1001 (Fed.Cir.1986) (quoting *Blonder–Tongue Lab., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 343, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)). "Patent misuse is viewed as a broader wrong than antitrust violation because of the economic power that may be derived from the patentee's right to exclude." *C.R. Bard v. M3 Systems,* 157 F.3d 1340, 1372 (Fed.Cir.1998). Accordingly, "misuse may arise when the conditions of antitrust violation are not met." Under FRCP 8(a), the complainant is required to "give a short and plain statement of the claim showing that the pleader is entitled to relief." Patent misuse counterclaims are judged under the standard of FRCP 8(a). *See Matsushita Elec. Indus. Co. v. CMC Magnetics Corp.,* No. C 06–04538 WHA, 2006 WL 3290413, at *2 (N.D.Cal. Nov.13, 2006).

In *Zenith Radio Corp. v. Hazeltine Research, Inc.,* the Supreme Court found that activity similarly alleged in this case constitutes patent misuse:

> We also think patent misuse inheres in a patentee's insistence on a percentage-of-sales royalty, regardless of use, and his rejection of licensee proposals to pay only for actual use. Unquestionably, a licensee must pay if he uses the patent. Equally, however, he may insist upon paying only for use, and not on the basis of total sales, including products in which he may use a competing patent or in which no patented ideas are used at all. There is nothing in the right granted the patentee to keep others from using, selling, or manufacturing his invention which empowers him to insist on payment not only for use but also for producing products which do not employ his discoveries at all.

**\*7** 395 U.S. 100, 139, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). Allergan has alleged that Miotox is seeking royalties on all sales of Botox for the treatment of migraine headaches even though the original ′468 Patent has expired. (ECF No. 6, Countercl. ¶¶ 38–41.) The ′468 Patent covered the broad treatment of migraine headaches using Botox. Miotox demands that Allergan pay the same royalties now, after the expiration of the ′468 Patent, as it did previously, regardless of the scope of the New Patents, which are narrower. *Id.* Under the patent misuse principles articulated in *Zenith,* the Court finds that Allergan has adequately stated a claim for relief.

**C. Request to Stay Allergan's Counterclaims**

Miotox has requested this Court, in the alternative, to stay Allergan's counterclaims pending the resolution of the Miotox's breach of contract claim. (Mot.25.) Allergan argues that there is a high likelihood that Allergan's counterclaims will have to be decided regardless of how the Court interprets the contract and therefore it would be inefficient to bifurcate this action. (Opp'n 24.) If Allergan's interpretation is correct, then Allergan's non-infringement and invalidity counterclaims must be decided in order to resolve Allergan's royalty obligation. (*Id.* 23.) If Miotox's interpretation is correct, resolution of Allergan's patent misuse counterclaim will be necessary to determine if Miotox may legally demand the royalties it has thus far insisted upon. (*Id.*)

Consistent with the Scheduling Conference hearing held on May 4, 2015, the Court will issue a separate case management order setting out a schedule for early summary judgment on the contract interpretation issue and related discovery.

### V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim. (ECF No. 27.)

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 2084493

## Footnotes

| | |
|---|---|
| 1 | After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed.R.Civ.P. 78; L.R. 7–15. |
| 2 | Allergan does not challenge U.S. Patent No. 8,491,917; U.S. Patent No. 8,722,060; and Patent Application PCT/US2013/00131. |

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.