2020 WL 4734899
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

STC.UNM, Plaintiff,
v.
QUEST DIAGNOSTICS INCORPORATED
and Quest Diagnostics Clinical
Laboratories, Inc., Defendants.

Civ. No. 20-197 KG/KK
|
Filed 08/14/2020

**Attorneys and Law Firms**

Deron B. Knoner, Keleher & McLeod P.A., Albuquerque, NM, Alfonso G. Chan, Michael W. Shore, Shore Chan DePumpo LLP, Dallas, TX, for Plaintiff.

Adam Beckstrom, Larry R. Laycock, Durham Jones & Pinegar, Salt Lake City, UT, Debashree Nandy, Lorena B. Hutton, Eric R. Burris, Brownstein Hyatt Farber Schreck, LLP, Albuquerque, NM, Jay F. Utley, Nicholas O. Kennedy, Pro Hac Vice, W. Bart Rankin, Pro Hac Vice, Baker & McKenzie, LLP, Dallas, TX, Kevin M. O'Brien, Pro Hac Vice, Baker & McKenzie LLP, Washington, DC, for Defendants.

MEMORANDUM OPINION AND ORDER

KENNETH J. GONZALES, UNITED STATES DISTRICT JUDGE

*1 This matter comes before the Court upon Plaintiff STC.UNM'S Motion to Remand (Motion to Remand), filed March 25, 2020. (Doc. 26). In addition to seeking a remand, Plaintiff requests an award of attorneys' fees and costs associated with this second removal to federal court. Defendants filed a response on April 8, 2020, and Plaintiff filed a reply on April 22, 2020. (Docs. 42 and 43). Having reviewed Plaintiff's First Amended Complaint (Doc. 26-1), Defendants' second Notice of Removal (Doc. 1), the Motion to Remand, and the accompanying briefing, the Court grants the Motion to Remand but denies Plaintiff's request for an award of attorneys' fees and costs.

*I. Background*
This case involves a dispute arising from a 2006 License Agreement between Plaintiff and Defendant Quest Diagnostics Incorporated (Quest) concerning patents related to various medical tests. *See* (Doc. 40) (filed under seal).

*A. Relevant Portions of the License Agreement*
Plaintiff granted Quest a non-exclusive "license to the Licensed Patents on a royalty-bearing basis...." *Id.* at 6, ¶ 2.1. The License Agreement includes a Reasonable Efforts Clause that requires Quest to "use its commercially reasonable efforts" to market the Licensed Products. *Id.* at ¶ 3.1 A "Licensed Product" is one which "would infringe a Valid Claim but for the existence of this Agreement."[1] *Id.* at 4, ¶¶ 1.7 and 1.9.

Also, the License Agreement requires Quest to pay Plaintiff a minimum annual royalty and, if applicable, an annual royalty on Gross Receipts, the "gross payments and other consideration" Quest receives for providing Licensed Products. *Id.* at 5, ¶ 1.12, and at 7, ¶¶ 4.2 and 4.3. Additionally, Quest must furnish Plaintiff copies of "records of all operations affecting" royalty payments when Plaintiff so requests. *Id.* at 8, ¶ 6.1. Finally, Plaintiff has the right to audit accounting records maintained by Quest to determine and verify royalty payments. *Id.* at 8, ¶ 6.2.

*B. The Original Complaint*
In September 2017, Plaintiff filed a state court action against Defendants in the Second Judicial District, Bernalillo County, State of New Mexico. (Doc. 1-1), filed in Civ. No. 17-1123 MV/KBM. Plaintiff alleged that Defendants had not reported any Gross Receipts and did not pay any royalties, except for minimum annual royalties, since the effective date of the License Agreement. *Id.* at 6, ¶ 32. Given this situation, Plaintiff requested certain records from Defendants and submitted a proposed audit protocol, as provided by the License Agreement. *Id.* at 6, ¶ 34 and at 7, ¶ 42. Defendants, however, did not provide any records nor did they agree to an audit. Plaintiff alleged that Defendants claimed they had no sales records to produce and objected to the proposed audit protocol

**EXHIBIT BB**

because they had not made any sales under the License Agreement. *Id.* at 6, ¶ 36; and at 7, ¶ 43.

**\*2** In Count I, entitled "Breach of Contract Against Quest," Plaintiff alleged Defendants breached the License Agreement by failing to provide records and to allow an audit. *Id.* at 9, ¶ 52. As relief for those breaches, Plaintiff sought "specific performance of both the records access and the audit provisions of the License." *Id.* 9, ¶ 54.

In Count II, Plaintiff brought a declaratory judgment action seeking a declaration that the License Agreement requires Defendants to provide certain categories of records as well as audit accounting records. *Id.* at 10, ¶¶ 61 and 63.

Finally, in Count III, Plaintiff alleged that Defendants' repeated breaching of the License Agreement also breached the implied covenant of good faith and fair dealing. *Id.* at 11, ¶ 76.

### C. The First Removal and Remand

In November 2017, Defendants removed the case to federal court on the basis of diversity jurisdiction and federal question jurisdiction premised on federal patent law. (Doc. 1) at 1, filed in Civ. No. 17-1123 MV/KBM (citing 28 U.S.C. §§ 1331, 1332, 1338, and 1454).[2] Plaintiff then moved to remand the case, in part, due to lack federal jurisdiction. (Doc. 12), filed in Civ. No. 17-1123 MV/KBM. Having concluded that the Court lacked federal jurisdiction, the Court granted the motion to remand and remanded the case to state court. (Docs. 72 and 73), filed in filed in Civ. No. 17-1123 MV/KBM.

### D. The First Amended Complaint

After the remand, the state court allowed Plaintiff to file its First Amended Complaint. (Docs. 26-1, 26-3, and 26-4). Plaintiff amended Count I to include the following alleged breach of contract: if Defendants did not obtain any Gross Receipts, then Defendants breached the Reasonable Efforts Clause of the License Agreement. (Doc. 26-1) at 10, ¶ 53. In the alternative, Plaintiff alleges that if Defendants obtained Gross Receipts, then Defendants breached the License Agreement by not paying royalties. *Id.* at 10, ¶ 54.

Plaintiff amended its prayer for relief to include a request for an award of compensatory damages for the alleged breach of the Reasonable Efforts Clause, and a request for an award of "[d]amages for failure to pay royalties, if the audit shows that unpaid royalties are owed." *Id.* at 14, ¶¶ i and iii.

### E. The Second Notice of Removal

In March 2020, Defendants filed their second Notice of Removal. (Doc. 1). Defendants contend that this Court has federal question jurisdiction because Plaintiff's claim that Defendants failed to pay royalties "necessarily depends on the resolution of a substantial question of federal patent law." *Id.* at 6, ¶ 19 (citing 28 U.S.C. §§ 1331, 1338, and 1454). Defendants explain that one must determine if Defendants sold a Licensed Product in order to decide if Plaintiff is entitled to a royalty based on Gross Receipts. Defendants assert that to determine if "a product is a Licensed Product requires an analysis of both [patent] infringement and [patent] invalidity." *Id.* at 9, ¶ 25. Defendants, therefore, conclude that these patent issues embedded in the failure to pay royalties claim arise under federal patent laws.[3]

**\*3** Plaintiff challenges the second Notice of Removal in its Motion to Remand and seeks an award of attorneys' fees and costs should it prevail on the Motion to Remand.

## II. Legal Standard

A defendant can remove a state case to federal district court if the federal district court would have original jurisdiction over the matter. 28 U.S.C. § 1441(a). However, "[s]ince federal courts are courts of limited jurisdiction, [courts] presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013) (citation omitted). "As the parties removing this case to federal court, [Defendants] bear the burden of establishing jurisdiction by a preponderance of the evidence." *Id.*

## III. Discussion

Plaintiff argues first that the Court should grant the Motion to Remand because Defendants' failure to raise a new ground for removal procedurally bars the second

removal. Second, Plaintiff argues that the alleged failure to pay royalties does not establish federal question or federal patent jurisdiction. Finally, Plaintiff argues that the Court should award it attorneys' fees and costs incurred as a result of this second removal.

### A. Whether the Second Removal is Procedurally Barred Due to a Failure to Raise a New Ground for Removal

Section 1446(b)(3) states that even if an initial pleading is not removable a defendant can file a notice of removal after receipt of an amended pleading "from which it may first be ascertained that the case is one which is or has become removable." To file a second removal under Section 1446(b)(3), two actions must occur. "First, the plaintiff must voluntarily amend his state court complaint after an order of remand has been entered." *O'Bryan v. Chandler*, 496 F.2d 403, 410 (10th Cir. 1974). "Second, the voluntary action of the plaintiff in amending his state complaint must set forth a ground for removal that appears for the first time." *Id.* In other words, a second notice of removal cannot allege the "same grounds" for removal as the first notice of removal. *Id.* "The legal phrase 'same grounds' ... does not mean the same cause of action or theory of recovery." *Id.* "Stated oppositely different grounds more precisely mean a different set of facts that state a new ground for removal." *Id.*

The parties do not contest that Plaintiff voluntarily amended its state court complaint after the first remand. Nonetheless, Plaintiff contends that the "second Notice of Removal now before the Court raised the same grounds (i.e. 28 U.S.C. §§ 1331, 1338, and 1454) that [Defendants] previously raised in their first Notice of Removal." (Doc. 26) at 10. Put another way, Plaintiff argues that Defendants raised the same *statutory* provisions to support the second Notice of Removal as it did in the first Notice of Removal. Plaintiff also argues that the same causes of action are at issue in both the first and second Notices of Removal: breach of contract, declaratory judgment, and breach of the implied covenant of good faith and fair dealing. "Same grounds," however, refers to the same *factual* basis to support a second removal, not to the same statutory provisions and causes of action.

**\*4** Moreover, the facts are no longer the same. The original Complaint alleged a failure to produce records and to allow an audit. Plaintiff now alleges for the first time that Defendants may not have paid royalties as required by the License Agreement. Indeed, Defendants rely on that new factual allegation and its embedded patent issues to remove this action. Defendants, thus, set forth a new ground for removal. Accordingly, Defendants have complied with Section 1446(b)(3) and the second Notice of Removal is not procedurally barred.

### B. Whether the Alleged Failure to Pay Royalties Establishes Federal Question or Federal Patent Jurisdiction

"Congress has authorized the federal district courts to exercise original jurisdiction in 'all civil actions arising under the Constitution, laws, or treaties of the United States,' 28 U.S.C. § 1331, and, more particularly, over 'any civil action arising under any Act of Congress relating to patents,' § 1338(a)." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). In fact, Section 1338(a) eliminates state jurisdiction over those civil actions arising under federal patent law. *Id.* (noting that Section 1338(a) "eliminated state jurisdiction, decreeing that '[n]o State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents' ").

As the United States Supreme Court in *Gunn* recognized, only a "slim" category of cases with their origins in state law can arise under federal law. *Id.* at 258. In those caes, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* Courts use this analysis to determine if a state claim arises under federal patent law. *Id.* (applying analysis to decide if state legal malpractice claim arises under federal patent law).

#### 1. Are the Patent Law Issues "Necessarily Raised?"

"[A] patent law issue will be necessarily raised only if it is a necessary element of one of the well-pleaded claims." *Inspired Development Group, LLC v. Inspired Products Group, LLC*, 938 F.3d 1355, 1362 (Fed. Cir. 2019) (citation omitted). In a case where alternative

legal theories support a well-pleaded claim, the claim "may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988).

To begin with, Plaintiff argues that Count I and the prayer for relief contain only "two passing references to 'royalties' " in order "to provide additional background and are not a 'necessary element' of the causes of action" it asserts. (Doc. 26) at 9; *see, e.g., Hoodye v. Wells Fargo Bank, NA,* 2013 WL 672567, at *2 (S.D. Tex.) (acknowledging that "[b]ackground facts ... are not a 'necessary element' of the cause of action" and so "do not transform a state law claim into a cause of action under federal law"). The Court disagrees with Plaintiff. Plaintiff's references to royalties hardly constitute mere background information. Plaintiff explicitly pleads that, if Defendants obtained Gross Receipts, then Defendants breached the License Agreement by failing to pay royalties. Indeed, the alleged failure to pay royalties is the heart of the claim in Count I. Plaintiff also explicitly seeks any unpaid royalties as damages for that failure to pay royalties.

Next, Plaintiff argues that it has only one well-pleaded breach of contract claim, which Plaintiff supports with four legal theories: Defendants' failure to produce records, Defendants' refusal to allow an audit, Defendants' failure to comply with the Reasonable Efforts Clause, and Defendants' failure to pay royalties. Plaintiff contends that patent law is not essential to the legal theories based on Defendants' failure to produce records, Defendants' failure to allow an audit, and Defendants' failure to comply with the Reasonable Efforts Clause. See *STC.UNM v. Quest Diagnostics Inc.,* No. CIV 17-1123 MV/KBM, 2019 WL 1091390, at *4 (D.N.M.), *report and recommendation adopted*, 2019 WL 1386733 (D.N.M.) (finding that Plaintiff's right to relief on its original contract claim based on alleged failure to provide records "does not depend on the resolution of a substantial question of federal patent law"), *see also, NeuroRepair, Inc. v. The Nath Law Group,* 781 F.3d 1340, 1345 (Fed. Cir. 2015) (holding that plaintiff could prevail on breach of contract "cause[ ] of action under alternate bases that do not necessarily implicate an issue of substantive patent law"). Plaintiff also notes that it added the failure to pay royalties allegation in the alternative so Plaintiff may prevail on the Count I "breach of contract claim without ever reaching the question of royalties" or imbedded patent issues. (Doc. 43) at 4. Hence, Plaintiff concludes that patent law is not necessarily raised with respect to its breach of contract claim.

**\*5** Defendants, however, argue that Count I contains not one, but four distinct well-pleaded breach of contract claims, i.e., Defendants failed to provide records; Defendants failed to allow an audit; Defendants failed to comply with the Reasonable Efforts Clause; and Defendants failed to pay royalties, as opposed to four legal theories in support of one breach of contract claim. Thus, Defendants contend that they need not show that all four contract claims necessarily raise a patent issue. Instead, Defendants assert they need only show that the failure to pay royalties claim necessarily raises a patent issue.

Indeed, "[w]hat is styled as a single breach-of-contract claim" can assert separate breach of contract claims. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) (acknowledging that "what a plaintiff presents as one 'count' may be understood to encompass more than one 'claim' "). "One of the key characteristics of a mere 'theory,' as opposed to a distinct claim, is that a plaintiff may obtain the relief he seeks without prevailing on it." *Id.* at 195. In other words, a complaint for breach of contract that alleges separate breaches, each with a different request for relief, even if they "rely on some common elements, such as a breach of contract," are separate claims, not theories. *Grynberg Prod. Corp. v. British Gas, p.l.c.*, 817 F. Supp. 1338, 1364 (E.D. Tex. 1993). Moreover, "pleading claims in the alternative [does not] preclude[ ] jurisdiction even if one claim is a proper federal question." *Id.*

Here, Plaintiff seeks a separate remedy for each of the alleged breaches of contract and must prevail on the specific alleged breach of contract to obtain the relief it seeks for that breach of contract. For example, Plaintiff does not seek specific performance, i.e., the release of records and an audit, as relief for failing to pay royalties. Conversely, Plaintiff does not seek unpaid royalties as relief for the failure to provide records or to allow an audit. Similarly, Plaintiff does

not seek specific performance as relief for the failure to comply with the Reasonable Efforts Clause. The fact that Plaintiff cannot obtain all the relief it seeks under Count I by prevailing on just one of the alleged breaches of contract indicates that the alleged breaches are not mere legal theories supporting a single breach of contract claim. [4] Rather, each alleged breach of contract is a well-pleaded claim. Moreover, pleading the failure to pay royalties allegation in the alternative does not affect the determination that the alleged failure to pay royalties is a well-pleaded claim and not a mere legal theory.

For the reasons stated above, the Court concludes that Defendants have shown by a preponderance of the evidence that a patent law issue necessarily is raised in the failure to pay royalties claim.

### 2. Are the Patent Law Issues Actually Disputed?

Plaintiff does not dispute that the embedded patent law issues are actually disputed. *See* (Doc. 26) at 14 (assuming *arguendo* that patent law issues are actually disputed). Even so, the Court concludes that Defendants have shown by a preponderance of the evidence that the embedded patent law issues are actually disputed.

### 3. Are the Patent Law Issues Substantial?

**\*6** "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue...." *Gunn,* 568 U.S. at 260. Rather, the courts consider "the importance of the issue to the federal system as a whole," including whether "allowing state courts to resolve these cases [would] undermine 'the development of a uniform body of [patent] law.' " *Id.* at 260-61 (citation omitted). "A 'substantial federal issue is more likely to be present' if:

a) 'a pure issue of [federal] law' is 'dispositive of the case,'

b) 'the court's resolution of the issue will control "numerous other cases," '

c) '[t]he Government ... has a direct interest in the availability of a federal forum to vindicate its own administrative action.' "

*Inspired Development Group, LLC,* 938 F.3d at 1364 (quoting *NeuroRepair, Inc.*, 781 F.3d at 1345 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006); *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 315 (2005))).

#### a. Is a Pure Issue of Federal Patent Law Dispositive of the Case?

Plaintiff argues that whatever federal patent issue is raised in the failure to pay royalties claim will not entirely dispose of this lawsuit because the other state claims can be resolved without determining patent issues. The Court agrees with Plaintiff and determines that this factor does not support substantiality. [5]

#### b. Will the Court's Resolution of the Federal Patent Law Issues Control Numerous Other Cases?

Plaintiff argues that the resolution of the patent issue would not control numerous other federal courts because, "[t]o the extent this case raises any question of patent law, it would arise as a 'hypothetical analysis' of an 'embedded patent issue,' (i.e., STC.UNM's breach of contract claim could involve a 'case within a case' analysis of patent infringement)." (Doc. 26) at 16. Plaintiff asserts that "[a]ny determination made by the state court with respect to issues of patent law would be limited to the parties of this immediate suit and would have no binding preclusive effect upon any other potential third-party infringer of [Plaintiff's] patents." *Id.*

Defendants argue, on the other hand, that "Plaintiff's royalty claim requires interpretation of the scope and validity of live patents that would trigger past and future royalty obligations for Quest and other parties practicing the patents." (Doc. 42) at 12. Defendants note that "the License Agreement here is non-exclusive, meaning others may face infringement suits based on the same patents." *Id.* at 13. Defendants also

cite *Jang v. Bos. Sci. Corp.* to support it substantiality argument. 767 F.3d 1334 (Fed. Cir. 2014).

The Court begins its analysis of whether the resolution of the patent issues will control numerous other cases with an examination of *Jang*. In *Jang,* the plaintiff "brought suit in federal court for breach of contract and other various state law claims" on the basis of diversity jurisdiction and alleged failure to pay royalties. *Id.* at 1335. Like this case, to resolve the alleged failure to pay royalties claim would require a patent infringement and validity determination under relevant provisions of the license agreement, provisions similar to the ones at issue in this License Agreement. *Id.* at 1337 (noting that "[i]n addition to infringement, the court may be called upon to determine the extent to which validity is made relevant to the resolution of the breach-of-contract claim by the language of the contract itself"). After denying a motion for summary judgment, the district court certified an interlocutory appeal to the Federal Circuit. *Id.* at 1336. The Federal Circuit ordered the parties to address the issue of jurisdiction in light of *Gunn* and whether to transfer the interlocutory appeal to the Ninth Circuit. *Id.* at 1335.

**\*7** The Federal Circuit held that the embedded patent law issues were not "entirely backward-looking nor hypothetical." *Id.* at 1337. Moreover, the Federal Circuit concluded that resolving the patent issue would "raise the real world potential" of other conflicting patent rulings. *Id.* The Federal Circuit explained:

> Under disputes like the one at issue here in which resolution of the contract claim itself requires resolution of underlying issues of infringement, there exists the possibility that the patentee would file suits alleging infringement by others and may even be contractually obligated to do so. These suits have the potential of conflicting rulings particularly as to validity. Here, where suit was filed in federal court based on diversity of citizenship, the potential for inconsistent judgments affecting not only the parties to this dispute but other parties who might be sued in separate actions for infringement is particularly significant. Permitting regional circuits to adjudicate questions of patent validity, for example, could result in inconsistent judgments between a regional circuit and the Federal Circuit, resulting in serious uncertainty for parties facing similar infringement charges before district courts within that regional circuit. Maintaining Federal Circuit jurisdiction over such contractual disputes to avoid such conflicting rulings is important to "the federal system as a whole" and not merely "to the particular parties in the immediate suit." *Gunn,* 133 S.Ct. at 1066.

*Id.* at 1337-38 (footnote omitted). The Federal Circuit, therefore, declined to transfer the case to the Ninth Circuit. *Id.* at 1335.

*Jang*, however, is significantly distinguishable from the alleged "state-federal conflict here." *Inspired Development Group, LLC*, 938 F.3d at 1365. First, "[t]he analysis in *Jang* took place entirely between federal courts" and "diversity jurisdiction was undisputed." *Id.* Second, "the reasoning in *Jang* turned on the *system-wide* conflict that could arise in the federal courts if regional circuits reached different conclusions about validity." *Id.* "Given the 'serious uncertainty' of whether a district court would follow its regional circuit or the federal circuit, such conflicts raised 'substantial concerns for the federal system." *Id.* (citation omitted). However, in this case, "[t]he risk of such conflict from state courts ... is remote." *Id.*

Congress ensured the development of uniform patent law "by vesting exclusive jurisdiction over actual patent cases in the federal district courts and exclusive appellate jurisdiction in the Federal Circuit." *Gunn,* 568 U.S. at 261-62. "In resolving the nonhypothetical patent questions those cases present, the federal courts are of course not bound by state court case-within-a-case patent rulings." *Id.* at 262. Accordingly, such a state court decision "will not stand as binding precedent for any future patent claim; it will not even affect the validity of [the] patent." *Id.* at 264. The Supreme Court went on to state:

> But even assuming that a state court's case-within-a-case adjudication may be preclusive under some circumstances, the result would be limited to the parties and patents that had been before the state court." Such "fact-bound and situation-specific" effects are not

sufficient to establish federal arising under jurisdiction.

**\*8** *Id.* at 263. Hence, even if a license agreement is non-exclusive, a state court's case-within-a-case ruling affects only the parties and patents before it. Applying these legal principles to the instant case, the Court concludes that the resolution of the patent issues, whether hypothetical or not, will not control numerous other courts. Thus, this second factor does not support substantiality.

### c. Does the Government Have a Direct Interest in the Availability of a Federal Forum to Vindicate its own Administrative Action?

Plaintiff argues that "the federal government has no 'direct' interest in a contract dispute between private parties." (Doc. 26) at 17. On the other hand, Defendants argue that "[t]he federal interest in a uniform interpretation of [the patent issues] is strong." (Doc. 42) at 12. However, "[g]iven the 'fact bound' nature of the embedded patent law issues in this suit, the 'government interest in having any single case of patent infringement heard in a federal forum is limited.' " *Inspired Development Group, LLC,* 938 F.3d at 1368-69 (citation omitted). Moreover, Defendants' "vague" and general assertion of a direct federal interest in this dispute does not establish this last substantiality factor. *See NeuroRepair, Inc.,* 781 F.3d at 1347 (holding that "vague assertions, which do not contain citations to authority, do not convincingly establish" that government has "direct interest" in outcome of dispute "between private parties" related to state claims).

In sum, Defendants have not shown by a preponderance of the evidence that the above three substantiality factors, on balance, demonstrate that the failure to pay royalties claim presents "substantial" federal patent law issues.

### 4. Are the Patent Law Issues Capable of Resolution in Federal Court Without Disrupting the Federal-State Balance Approved by Congress?

Plaintiff argues that finding a federal question premised on a breach of contract claim implicating a "run-of-the mill" patent infringement or validity issue would disrupt the federal-state balance approved by Congress. (Doc. 26) at 18. Defendants argue that resolving the patent infringement and validity issues in federal court does not disrupt the federal-state balance because states have no interest in interpreting federal patent law. (Doc. 42) at 14 (citing unpublished federal district court cases). Defendants essentially argue that "[a]ny time ... a state law claim 'necessarily raises' an embedded patent infringement or invalidity question, federal question jurisdiction would lie." *Inspired Development Group, LLC,* 938 F.3d at 1369. Such an argument, however, "would undoubtedly impact the wider balance between state and federal courts" because it would "sweep" numerous state contract claims involving "run-of-the mill question[s] of infringement or validity" into federal court. *Id.* In addition, as Plaintiff observes, Defendants do not address the State of New Mexico's interest in deciding contract claims, albeit, contract claims with embedded patent law issues. For the above reasons, the Court concludes that Defendants have failed to show by a preponderance of the evidence that the patent law issues are capable of resolution in federal court without disrupting the federal-state balance approved by Congress. And having failed to do so, Defendants have not shown that the failure to pay royalties claim arises under federal patent law. Consequently, the Court lacks federal jurisdiction to hear this case and will remand this matter to state court.

### C. Whether to Award Plaintiff Attorneys' Fees and Costs

**\*9** Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Garrett v. Cook,* 652 F.3d 1249, 1254 (10th Cir. 2011) (citation omitted). Consequently, "the removing party's intent is irrelevant; in fact, the Court 'may award fees even if removal is made in subjective good faith.' " *Martinez v. El Paso Corp.,* 2011 WL 3606813, at \*3 (W.D. Tex.) (quoting *Valdes*

*v. Wal–Mart Stores, Inc.,* 199 F.3d 290, 292 (5th Cir. 2000)); *see also Excell, Inc. v. Sterling Boiler & Mech., Inc.,* 106 F.3d 318, 322 (10th Cir. 1997) (holding that "district court does not have to find that the state court action has been removed in bad faith as a prerequisite to awarding attorney fees and costs under § 1447(c)").

Plaintiff argues that Defendants' removal lacks an objectively reasonable basis because their "argument is entirely premised on arguments that were raised by the appellees in *Inspired Development Group[, LLC]* and expressly rejected in a precedential decision by the Federal Court." (Doc. 43) at 11. Plaintiff further argues that the removal was "an attempt to delay the state court proceedings and to burden [Plaintiff] with additional unnecessary costs." *Id.* at 11-12.

The Court finds that Defendants did not unreasonably distinguish *Inspired Development Group, LLC* from this case on the facts: *Inspired Development Group, LLC* primarily concerned an unjust enrichment claim while in this case, Plaintiff raises a breach of contract claim premised on a failure to pay royalties. Nonetheless, the Court did not rely on the analysis of the facts in *Inspired Development Group, LLC* to decide the Motion to Remand. Instead, the Court relied on its explanation of relevant legal principles.

Moreover, the Court finds that the fact Defendants supported their argument with legal authority and the issues were "not clear-cut" suggests that Defendants had an objectively reasonable basis to file the second Notice of Removal. *See Tajran v. Estate of McDonald,* 2020 WL 256209, at *10 (S.D. Cal.) (denying Section 1447(c) request for attorney's fees because "[s]ome authority supports Defendants' position, and Plaintiffs' remand motion raises issues that are not clear-cut"). Notably, the Court ruled in Defendants' favor by concluding that the second Notice of Removal is not procedurally barred and that the failure to pay royalties claim necessarily raises actually disputed issues of patent law. Plaintiff, thus, did not prevail on all of its arguments in support of remand.

Furthermore, Plaintiff's contention that Defendants removed this case to delay the state court case and to burden Plaintiff with additional costs is essentially an accusation that Defendants removed the case in bad faith. As stated above, motivation is irrelevant in deciding whether to award attorney's fees and costs under Section 1447(c). For the foregoing reasons, the Court determines that Defendants' second removal was objectively reasonable and that an award of Section 1447(c) attorneys' fees and costs is not warranted.

IT IS ORDERED that

1. Plaintiff STC.UNM'S Motion to Remand (Doc. 26) is granted;

2. the Court will remand this matter to the Second Judicial District Court, Bernalillo County, State of New Mexico; and

3. Plaintiff's request for an award of attorneys' fees and costs is denied.

**All Citations**

Slip Copy, 2020 WL 4734899

## Footnotes

1     A "valid claim" is "a claim included among the Licensed Patents, which claim shall not have been irrevocably abandoned or held invalid in an unappealable decision of a court or other authority of competent jurisdiction." (Doc. 40) at 4, ¶ 1.9.

2     Section 1331 provides for federal question jurisdiction; Section 1332 provides for federal diversity jurisdiction; Section 1338 provides for federal jurisdiction over actions arising under federal patent

| | |
|---|---|
| | law; and Section 1454 provides for the removal of actions which assert a claim for relief arising under federal patent law. |
| 3 | The Court notes that Plaintiff does not dispute that the failure to pay royalties claim contains embedded patent law issues. |
| 4 | The Court observes that "where a contract is divisible so that full performance of one part may be made by both parties without affecting the subsequent performance or right of performance as to the remainder, recovery may be had for breach of a divisible part, and the injured party may proceed on each cause of action for such a breach separately." 15 *Williston on Contracts* § 45:19 (4th ed.). |
| 5 | Defendants do not present any argument on this first substantiality factor. |

**End of Document**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.