United States Courts Southern
District of Texas
FILED

*May 23, 2023*

Nathan Ochsner, Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG UK, LTD., REEDHYCALOG, LP, and NATIONAL OILWELL VARCO, LP, | |
| *Plaintiffs/Counter-Defendants*, | |
| v. | Civil Action No. 4:23-cv-00730 |
| SCHLUMBERGER TECHNOLOGY CORP., SMITH INTERNATIONAL, INC., ULTERRA DRILLING TECHNOLOGIES, L.P., ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC., VAREL INTERNATIONAL ENERGY SERVICES, INC., and VAREL INTERNATIONAL INDUSTRIES, L.P., | |
| *Defendants/Counter-Plaintiffs.* | |

**DEFENDANTS' JOINT SUR-REPLY TO PLAINTIFFS'
MOTION TO DISMISS AND REMAND (DKT NO. 33)**

## TABLE OF CONTENTS

I.    Plaintiffs Improperly Apply the *Gunn* Test to Defendants' Federal Patent Claims ...... 1

II.   Plaintiffs' Concede That If This Court Has Jurisdiction over One Claim, Then It Has Supplemental Jurisdiction over All Other Claims in the Case ................................................. 3

III.  Plaintiffs Misstate the Law for the Substantiality Prong of the *Gunn* Test ................... 3

IV.   Plaintiffs Incorrectly State that *Brulotte* Does Not Confer Subject Matter Jurisdiction 8

V.    Even If *Gunn* Did Apply to the *Brulotte* Counterclaim, Defendants' Counterclaim for Declaratory Judgment under *Brulotte* Would Readily Satisfy All Four Factors .................... 8

VI.   CONCLUSION .................................................................................................................. 9

***All emphasis added unless otherwise indicated***

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ameranth, Inc. v. ChowNow, Inc.*,
2021 WL 3686056 (S.D. Cal. Aug. 19, 2021) ...............................................................5, 7, 8

*AntennaSys, Inc. v. AQYR Techs., Inc.*,
976 F.3d 1374 (Fed. Cir. 2020)..................................................................................3, 7

*Automatic Radio Mfg. Co. v. Hazeltine Rsch.*,
339 U.S. 827 (1950),
*overruled sub nom. by Lear, Inc. v. Adkins*,
395 U.S. 653 (1969)...................................................................................................4, 5

*Board of Regents Univ. of Tex. Sys. v. Mission Pharm. Co.*,
2006 WL 8436935 (N.D. Tex. June 12, 2006) ........................................................8

*Brulotte v. Thys Co.*,
379 U.S. 29 (1964)...............................................................................................5, 6, 8, 9

*Duval Wiedmann, L.L.C. v. Inforocket*,
374 F. App'x 482 (5th Cir. 2010) ............................................................................8

*Gunn v. Minton*,
568 U.S. 251 (2013) ................................................................................... *passim*

*Houston Refining, L.P. v. United Steel, Paper & Forestry*,
765 F.3d 396 (5th Cir. 2014) ...................................................................................4

*Inspired Dev. Grp., LLC v. Inspired Prod. Grp., LLC*
938 F.3d 1355 (Fed. Cir. 2019)................................................................................6, 7

*Jasper v. FEMA*,
414 F. App'x 649 (5th Cir. 2011) ............................................................................4

*Kimble v. Marvel Ent., LLC*,
576 U.S. 446 (2015)...............................................................................................8, 9

*Lear, Inc. v. Adkins*,
395 U.S. 653 (1969)...................................................................................................5

*Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.*,
2016 WL 1365946 (N.D. Cal. Apr. 6, 2016) .......................................................7, 8

*Montez v. Dep't of Navy*
392 F.3d 147 (5th Cir. 2004) ...................................................................................4

*Natec, Inc. v. Deter Co.*,
  28 F.3d 28 (5th Cir. 1994) ..........................................................................8

*NeuroRepair, Inc. v. The Nath Law Grp.*,
  781 F.3d 1340 (Fed. Cir. 2015)..........................................................3, 6, 7, 9

*Pelletier v. Victoria Air Conditioning, Ltd.*,
  780 F. App'x 136 (5th Cir. 2019) ..............................................................4

*Pickett v. Tex. Tech Univ. Health Scis. Ctr.*,
  37 F.4th 1013 (5th Cir. 2022) ..................................................................4

*Rembrandt Diagnostics, LP v. Innovacon, Inc.*,
  2018 WL 9537931 (S.D. Cal. Mar. 23, 2018) ........................................7, 8

*Scheiber v. Dolby Lab'ys, Inc.*,
  293 F.3d 1014 (7th Cir. 2002) ..................................................................8

*STC.UNM v. Quest Diagnostics Inc.*
  2020 WL 4734899 (D.N.M. Aug. 14, 2020) ............................................7

**Statutes**

28 U.S.C. § 1367(a) ......................................................................................3

## LIST OF ABBREVIATIONS

Mot. [Dkt. No. 33]
Opp. [Dkt. No. 42][1]
Reply [Dkt. No. 55]
Schlumberger [Defendant Schlumberger Technology Corp.]
Smith [Defendant Smith International, Inc.]
SLB/Smith [Schlumberger and Smith, collectively]
Defendants [Named defendants, collectively]
Plaintiffs [Plaintiffs Grant Prideco, Inc., ReedHycalog UK, Ltd., ReedHycalog, LP and National Oilwell Varco, LP, collectively]

---

[1] For ease of reference, Defendants cite SLB/Smith's opposition brief (Dkt. No. 42) throughout this brief where it is representative of arguments made by all Defendants.

**LIST OF EXHIBITS**[2]

| Exhibit | Description |
|:---:|:---|
| 1 | *Adams v. Pearl River Valley Water Supply Dist.*, 2022 WL 2829756 (5th Cir. July 20, 2022) |
| 2 | *Ameranth, Inc. v. ChowNow, Inc.*, 2021 WL 3686056 (S.D. Cal. Aug. 19, 2021) |
| 3 | *Board of Regents University of Texas System v. Mission Pharmacal Co.*, 2006 WL 8436935, (N.D. Tex. June 12, 2006) |
| 4 | *Bradley Corp. v. Lawler Mfg. Co.*, 2020 WL 7027875, (S.D. Ind. Nov. 30, 2020) |
| 5 | *Corrosion Prevention Techs. LLC v. Hatle*, 2020 WL 6202690, (S.D. Tex. Oct. 22, 2020) |
| 6 | *Duval Wiedmann v. Inforocket*, 374 F. App'x 482 (5th Cir. 2010) |
| 7 | *Landeros v. Transamerica Life Ins. Co.*, 2019 WL 9123531, (S.D. Tex. Sept. 17, 2019) |
| 8 | *Levi Strauss & Co. v. Aqua Dynamics Sys.*, Inc., 2016 WL 1365946, (N.D. Cal. Apr. 6, 2016) |
| 9 | *Recif Res., LLC v. Juniper Cap. Advisors, L.P.*, 2019 WL 5457705, (S.D. Tex. Oct. 24, 2019) |
| 10 | *Rollo v. Chase Home Fin. LLC*, 2013 WL 1390676, (S.D. Tex. Apr. 4, 2013) |
| 11 | *Shoffiett v. Goode*, 825 F. App'x 824 (Fed. Cir. 2020) |
| 12 | *Pelletier v. Victoria Air Conditioning, Ltd.*, 780 F. App'x 136 (5th Cir. 2019) |
| 13 | *Jasper v. FEMA*, 414 F. App'x 649 (5th Cir. 2011) |
| 14 | *STC.UNM v. Quest Diagnostics Inc.* 2020 WL 4734899 (D.N.M. Aug. 14, 2020) |
| 15 | *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, 2018 WL 9537931 (S.D. Cal. Mar. 23, 2018) |
| 16 | Press Releases Regarding NOV Licensees |

---

[2] Exs. 1–11 were previously submitted with SLB/Smith's Opposition. *See* Dkt. No. 42-1–42-11.

The premise of Plaintiffs' Reply is that "this case could be removable only if Plaintiffs' breach of contract claim depended on a finding of infringement or validity of the Licensed RH Patents," which they assert is undisputed. Reply at 1. That assertion, however, is incorrect. Defendants' declaratory judgment claims—including invalidity and non-infringement—are also sufficient to establish federal jurisdiction. Moreover, in their Reply Plaintiffs largely abandon their opening arguments and, in doing so, raise new arguments often based on fundamental errors of law. Defendants submit this sur-reply to address these new arguments and correct the various errors and misstatements in Plaintiffs' Reply.

## I.   Plaintiffs Improperly Apply the *Gunn* Test to Defendants' Federal Patent Claims

In their Reply, Plaintiffs make the critical legal error of applying the four-factor *Gunn* test—a test for determining whether ***state law*** claims arise under ***federal law***—to argue that Defendants' ***federal patent counterclaims*** somehow do not arise under federal law. Reply at 9 (applying *Gunn* to Defendants' counterclaims for declaratory judgment of non-infringement); *id.* at 15 (applying *Gunn* to Smith's counterclaim for declaratory judgment of invalidity). Plaintiffs' brief invites error because, under black letter law, Defendants' declaratory judgment counterclaims of non-infringement and invalidity under federal patent law ***are not subject to the Gunn test***.

In their opening brief, Plaintiffs' only challenge to this Court's subject matter jurisdiction over Defendants' federal patent claims was based on an alleged lack of a justiciable case or controversy. Mot. at 10–16. In Reply, Plaintiffs largely abandon those arguments in favor of a legally erroneous application of the *Gunn* test to Defendants' federal claims. In *Gunn*, the Supreme Court stated that "a case can 'arise under' federal law in two ways": ***First***, "a case arises under federal law ***when federal law creates the cause of action asserted***"; and ***second***, "even where a claim finds its origins in state rather than federal law," in "a 'special and small category' of cases in which arising under jurisdiction still lies." *Gunn v. Minton*, 568 U.S. 251, 257–58 (2013). The

four-factor *Gunn* test is only applicable to the second category, the "special and small category" of **state law** claims deemed to arise under federal law. Defendants' counterclaims for declaratory judgment of non-infringement and invalidity, however, fall into the first category as they are indisputably federal causes of action. *Id.* at 257 ("Minton's original patent infringement suit against NASD and NASDAQ, for example, arose under federal law in this manner because it was authorized by 35 U.S.C. §§ 271, 281.").[3] Plaintiffs' attempt to apply the four-factor *Gunn* test to Defendants' federal patent counterclaims in reply must be rejected as a matter of law.

Plaintiffs briefly contend that no controversy exists with respect to invalidity because they are purportedly not seeking royalties from Schlumberger and Smith beyond March 28, 2022. Reply at 15–17. But, contrary to that attorney argument, Plaintiffs' operative petition expressly seeks a declaration that Defendants' royalty obligations do not expire **until 2031**. Dkt. No. 1-2, Ex. B.4 at 2 ("Plaintiffs seek both a declaration that Defendants' royalty obligations do not expire until 2031 . . . ."). Whatever Plaintiffs' supposed position is on "damages for unpaid royalties," the Reply does not contest that the operative petition asks for a declaration that would effectively require Defendants to pay royalties for eight more years. Tellingly, Plaintiffs have neither filed a stipulation purporting to limit their alleged damages, nor have they sought to file an amended complaint doing the same. Moreover, Plaintiffs' argument that they do not seek damages beyond March 28, 2022 is directly contradicted by their allegations that "Schlumberger [must] pay 70% of the gross margin of any 'unlicensed downhole tools'" without any stated time limitation.[4] Reply at 16–17. The provision on which NOV relies would be terminated if the alleged Licensed RH

---

[3] Plaintiffs' assertion that "neither Plaintiffs nor Defendants assert a cause of action created by the patent laws," Reply at 10, is incorrect at least because all Defendants assert claims for declaratory judgment of non-infringement and SLB/Smith assert claims for declaratory judgment of invalidity.

[4] SLB/Smith note that NOV's claim is meritless, at least because SLB/Smith have a royalty-free license to downhole tools other than drill bits. Dkt. No. 54-1 § 5.7.

Patents are found to be invalid. Dkt. No. 32-1, Ex. C at Art. VII. Contrary to Plaintiffs' position that there is no controversy regarding invalidity, Plaintiffs' present contention that Schlumberger owes an unbounded penalty under the Patent License thus itself presents a live controversy.

## II.    Plaintiffs' Concede That If This Court Has Jurisdiction over One Claim, Then It Has Supplemental Jurisdiction over All Other Claims in the Case

Plaintiffs do not contest that if this Court has jurisdiction over any claim, including counterclaims, then it may exercise supplemental jurisdiction over all other claims. 28 U.S.C. § 1367(a). Given Defendants' invalidity and non-infringement counterclaims indisputably arise under the Patent Act, the Court need not reach the *Gunn* inquiry and should exercise its supplemental jurisdiction over all claims raised.

## III.    Plaintiffs Misstate the Law for the Substantiality Prong of the *Gunn* Test

Plaintiffs did not address the *Gunn* test at all in their opening brief. Tacitly acknowledging this error, Plaintiffs reference it over a dozen times in the Reply, and in doing so, raise new arguments and misstate what *Gunn* requires to show "substantiality." Specifically, Plaintiffs assert that Defendants were required to satisfy a "***three-factor test*** from *NeuroRepair, Inc. v. The Nath Law Grp.*, 781 F.3d 1340, 1342 (Fed. Cir. 2015), which ***requires***":

> "(1) the existence of a 'pure issue' of patent law that 'is dispositive'";
>
> "(2) the resolution of which 'will control numerous other cases'; ***and***"
>
> "(3) where the Government 'has a direct interest in the availability of a federal forum to vindicate its own administrative action.'"

Reply at 10 (emphasis added). This is wrong. As *NeuroRepair* itself holds, these factors are "nonexclusive," "may help to inform the substantially inquiry," and ***none*** are "necessarily controlling." 781 F.3d at 1345; *see also AntennaSys, Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374, 1382 (Fed. Cir. 2020) ("These factors are non-exclusive and 'none . . . is necessarily controlling.'"). Under a proper application of *Gunn*, Plaintiffs' claims confer federal jurisdiction.

**Necessarily Raised**: Defendants' opposition explained why Plaintiffs' claims require Defendants to practice the '534 or '752 Patents and for those patents to be valid. Opp. at 7–13. While Plaintiffs originally argued that all they needed to do to prove no patent issues were necessarily raised was to make a conclusory allegation in their complaint, in the Reply Plaintiffs implicitly acknowledge they misstated and misapplied the law.[5] *Compare* Mot. at 4 ("a court must accept all factual allegations in the complaint as true when ruling on the motion to dismiss for lack of subject matter jurisdiction"), 6–7 ("Plaintiffs' Second Amended Petition explicitly confirms that that the breach of contract claims advanced in the petition do not raise any issues as to whether any Defendants practiced a Licensed RH Patent . . . ." (emphasis omitted)), *with* Reply at 8 ("As this Court knows, a court can resolve a Rule 12(b)(1) motion based on 'the court's resolution of disputed facts' if appropriate."). Faced with this revised statement of law, Plaintiffs make another misstatement and assert that "Defendants do not dispute [Plaintiffs'] interpretation of the words used in their respective royalty provisions." Reply at 5. Defendants, however, **do** dispute Plaintiffs' interpretation of the Patent Licenses, Opp. at 7–13, including the royalty provision, *id.* at 8 (identifying and discussing provisions in royalty provision of the patent license that demonstrate

---

[5] Plaintiffs also attempt to distinguish *Montez v. Dep't of Navy*, which holds that for attacks on subject matter jurisdiction that are intertwined with the merits of their breach of contract claims, "the trial court must assume jurisdiction and proceed to the merits." 392 F.3d 147, 150 (5th Cir. 2004). Plaintiffs argue *Montez* is limited to "actions under the Federal Tort Claims Act," Reply at 8 (citing *Houston Refining, L.P. v. United Steel, Paper & Forestry*, 765 F.3d 396, 407 n.20 (5th Cir. 2014)), but the Fifth Circuit in *Houston Refining* expressly stated that it "need not pass on this question today." More recent Fifth Circuit cases continue to adhere to the *Montez* standard. *See Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022) (noting the Fifth Circuit "recently applied *Montez* outside the FTCA context"); *see also Pelletier v. Victoria Air Conditioning, Ltd.*, 780 F. App'x 136, 140 (5th Cir. 2019) (acknowledging *Montez* in contract dispute). Plaintiffs also cite *Jasper v. FEMA*, 414 F. App'x 649, 651 (5th Cir. 2011), but that unpublished case does not even mention *Montez*.

4

infringement must be shown to collect royalties).[6]

Defendants also identified a case in their opposition brief, *Ameranth*, in which a court held that a breach of contract claim based on nearly identical contract language conferred federal jurisdiction. Opp. at 7–11. Rather than engage with Defendants' arguments, Plaintiffs attempt to distinguish *Ameranth* by arguing "the license at issue [in those cases] expressly required infringement as a condition to payment of a royalty." Reply at 3. But *Ameranth* interpreted the same "under the Licensed Patents" language that exists here as requiring the licensee to practice those patents to owe royalties. Opp. at 7–8. In a footnote, Plaintiffs also argue that the *Ameranth* license agreement mentioned a "Field of Use" (Reply at 6), but that is a distinction without a difference. The *Ameranth* court explained, "if Defendant performs activities within the Fields of Use *without implicating* Plaintiff's Licensed Patents, Defendant would owe no royalties." *Ameranth, Inc. v. ChowNow, Inc.*, 2021 WL 3686056, at *10 (S.D. Cal. Aug. 19, 2021). Likewise, here, if Defendants perform activities *without implicating* the '534 or '752 Patents, then they would owe no royalties. Thus, for the same reasons as in *Ameranth*, a license grant "under the Licensed RH Patents" necessarily raises issues of infringement and invalidity.

**Actually Disputed**: Plaintiffs do not contest that this element of the *Gunn* test is satisfied.

---

[6] Plaintiffs also analogize to *Automatic Radio Mfg. Co. v. Hazeltine Rsch.*, 339 U.S. 827 (1950), *overruled sub nom. by Lear, Inc. v. Adkins*, 395 U.S. 653 (1969), but *Hazeltine* is nothing at all like the Patent Licenses here. *Hazeltine* involved a fixed, 10-year license term for the option to use any and all licenses owned by the licensor. 339 U.S. at 829. By contrast, here, the Patent Licenses require the practicing of a patent to trigger royalties and the term is also tied to patents. Opp. at 7–13. Moreover, contrary to NOV's attorney arguments, the Patent Licenses *do not* permit Defendants' *carte blanche* use of all "Licensed RH Patents." For example, the 2009 Schlumberger License did not include the right to use leaching deeper than 0.1 mm in drill bits, despite such patents being among the group falling within the "Licensed RH Patents" definition. Opp. at 10 n.4. In any event, *Hazeltine* was later limited and then partially overturned by the Supreme Court—see *Brulotte v. Thys Co.*, 379 U.S. 29 (1964) and *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969). Given the facts here, *Brulotte* would control.

**Substantiality**: The Supreme Court recognized that substantiality looks to "the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. The issues in this case are highly important to the federal system and thus squarely meet this criterion. Plaintiffs seek a declaration that some of the most critical oil and gas enterprises operating in the United States must continue to pay royalties on unpatented technology for nearly another decade, premised on the mere existence of extraneous patents that were not even listed in the Patent Licenses, and the Court's decision on the embedded patent issues at the heart of Plaintiffs' contract claims could impact future litigation over these same patents and other licenses.[7] The resolution of Defendants' federal patent issues, including noninfringement and invalidity, could also have an impact on the oil and gas industry—an industry core to the economy and the national security of the United States—for the next eight years. Indeed, highlighting the implications of this litigation beyond the current parties, Halliburton recently filed its own federal lawsuit against Plaintiffs raising similar issues over the '534 and '752 Patents. *See* S.D. Tex. Case No. 4:23-cv-01789. Thus, the issues in this case are entirely unlike the facts of *Gunn*, where the Supreme Court held that a "backward-looking . . . legal malpractice claim" that was "posed in a merely hypothetical sense" was not substantial. 568 U.S. at 261. Put in terms of the nonexclusive first and second *NeuroRepair* factors, the federal issues in this case (invalidity and noninfringement) are dispositive, forward looking, and will impact multiple cases and parties.[8]

This is also unlike any of the cases relied on by Plaintiffs in their Reply. In *Inspired Dev.*

---

[7] *See, e.g.*, Dkt. 1-2, Ex. B.5 at 56 ¶ 15 (noting that "many of the industry leaders settled their litigations with Plaintiffs and obtained a license"); *id.* ¶ 13 (identifying examples of other providers); *id.* at 51 ("These core patents were a step change in the industry . . . ."); *see* Ex. 16 (press releases identifying other oil and gas companies entering patent licenses with Plaintiffs).

[8] For example, if the patents identified by Plaintiffs are found to be invalid or not infringed, Plaintiffs' claim for royalties fail, either under the Patent Licenses or *Brulotte*.

*Grp., LLC v. Inspired Prod. Grp., LLC*, the Federal Circuit held that "the patent infringement issue here is not dispositive of whether [plaintiff] is entitled to relief" because the plaintiff "could prevail on its unjust enrichment claim without showing [defendant's] products actually infringed," to prevail the plaintiff also had to prove "knowledge," and the plaintiff could not prevail "as a matter of law if the written contracts are valid and controlling." 938 F.3d 1355, 1364 (Fed. Cir. 2019). Likewise, in *NeuroRepair*, the patent issues were not "even the most significant part of the state law causes of action"; those included "assertions of failure to communicate, overbilling, failure to accurately record time billed, failure to deliver work product, and misrepresentation of [] expertise in neuroscience." 781 F.3d at 1346. Similarly, in *STC.UNM v. Quest Diagnostics Inc.*, the court found that the "state claims can be resolved without determining the patent issues." 2020 WL 4734899, at *6 (D.N.M. Aug. 14, 2020). In *AntennaSys*, the court held that a two-party dispute where the only patent issue was infringement (with no impact past the specific case) did not meet the substantiality prong. 976 F.3d at 1382. In contrast, here the patent issues are paramount, not limited to infringement, and will be dispositive to Plaintiffs' claims for royalties.

Indeed, numerous courts have concluded that similar breach of contract disputes under a license agreement that raise patent infringement and invalidity issues satisfy the *Gunn* test. *E.g.*, *Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.*, 2016 WL 1365946, at *6 (N.D. Cal. Apr. 6, 2016); *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, 2018 WL 9537931, at *1 (S.D. Cal. Mar. 23, 2018); *Ameranth*, 2021 WL 3686056, at *10–12.

**Exercising Jurisdiction Would Not Upset Federal-State Balance**: There would be no impact on the federal-state balance if the Court were to exercise jurisdiction. Plaintiffs' claims necessarily raise issues of infringement and validity based on the language used in the Patent Licenses. This is unlike *Inspired Dev.* where the licensee argued that "any breach of contract claim

7

or related equitable claim involving a patent license agreement must 'arise under' the patent laws."
938 F.3d at 1369. Rather, here, it is the particular language of the agreement that raises issues of
infringement and validity—not the mere fact the contract at issue is a patent license agreement.
Thus, Plaintiffs' hypotheticals of far-reaching consequences if the Court were to find Plaintiffs'
claims arise under federal law are misplaced. Further, Plaintiffs provided no response to the
numerous district courts, post-*Gunn*, exercising jurisdiction under similar circumstances without
upsetting the federal-state balance. *E.g., Levi Strauss*, 2016 WL 1365946, at *6; *Rembrandt*, 2018
WL 9537931, at *1; *Ameranth*, 2021 WL 3686056, at *10–12. Thus, under *Gunn*, the Court can
exercise jurisdiction over Plaintiffs' claims because they arise under federal law.

## IV.    Plaintiffs Incorrectly State that *Brulotte* Does Not Confer Subject Matter Jurisdiction

The Fifth Circuit and a federal district court in Texas have both held that issues under
*Brulotte* raise a substantial question of patent law, conferring jurisdiction under 28 U.S.C.
§§ 1338(a) and 1454(a). *Natec, Inc. v. Deter Co.*, 28 F.3d 28, 29 (5th Cir. 1994); *Bd. of Regents
Univ. of Tex. Sys. v. Mission Pharm. Co.*, 2006 WL 8436935, at *2–3 (N.D. Tex. June 12, 2006).
Plaintiffs attempt to distinguish these cases on the fact they were before *Gunn*, but that is irrelevant.
First, Plaintiffs' cases are also before *Gunn* and are pre-AIA, including the case that Plaintiffs
incorrectly claim was decided in 2022. *Compare* Reply at 18, *with Scheiber v. Dolby Lab'ys, Inc.*,
293 F.3d 1014 (7th Cir. 20**02**); *Duval Wiedmann, L.L.C. v. Inforocket.com, Inc.*, 374 F. App'x 482,
484 (5th Cir. 2010) (nonprecedential). Second, Plaintiffs ignore that Congress **expanded** federal
jurisdiction involving patents when passing the AIA, reinforcing that *Natec* and *Board of Regents*
remain good law.

## V.    Even If *Gunn* Did Apply to the *Brulotte* Counterclaim, Defendants' Counterclaim for Declaratory Judgment under *Brulotte* Would Readily Satisfy All Four Factors

With respect to the first factor, Plaintiffs' only argument is that *Brulotte* **may** be pursued

as an affirmative defense. Reply at 18–20. Defendants here, however, have in fact asserted a declaratory judgment counterclaim under *Brulotte*. The Supreme Court affirmed precisely such a **claim** in *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 450 (2015). Plaintiffs themselves acknowledge that, in *Kimble*, the Supreme Court "affirmed a declaratory judgment relieving plaintiff from paying royalties under *Brulotte*." Reply at 19. Plaintiffs' only response is that *Kimble* was based on diversity, but that assertion is an irrelevant red herring. The pertinent point is that *Kimble* affirmed *Brulotte* as a declaratory judgment claim. *Kimble*, 576 U.S. at 451 ("Marvel sought a declaratory judgment in federal district court confirming that the company could cease paying royalties come 2010—the end of Kimble's patent term."). As to whether the dispute is "substantial," both the Fifth Circuit and a federal district court in Texas held that *Brulotte* raises a substantial question of patent law, and which remains good law today under the expanded jurisdiction conferred by the AIA. Even under the *NeuroRepair* factors on which Plaintiffs rely, Defendants' *Brulotte* counterclaims raise a federal issue that is a pure question of law and, as explained above, will control in multiple cases. As to the "actually disputed" and "federal-state balance" factors, Plaintiffs make no arguments. Therefore, the *Brulotte* counterclaims confer federal jurisdiction.

## VI.    CONCLUSION

For the reasons set forth above and in Defendants' opposition briefs, Defendants respectfully request that the Court deny Plaintiffs' Motion to Dismiss and Remand.

Dated: May 23, 2023

*/s/ Gregg F. LoCascio*
Gregg F. LoCascio, P.C.
Attorney-in-Charge
S.D. TX Bar No. 1109276
DC Bar No. 452814
Tera Jo Stone (admitted *pro hac vice*)
DC Bar No. 90000748
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
Email: gregg.locascio@kirkland.com
Email: tera.stone@kirkland.com

Ryan Kane, P.C.
S.D. TX Bar No. 1314513
NY Bar No. 4882551
Chris Ilardi (admitted *pro hac vice*)
NY Bar No. 5403811
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: ryan.kane@kirkland.com
Email: chris.ilardi@kirkland.com

Nick Brown
S.D. TX Bar No. 2725667
TX. Bar No. 24092182
**KIRKLAND & ELLIS LLP**
609 Main Street
Houston, Texas 77002
Telephone: (713) 836-3600
Facsimile: (713) 836-3601
Email: nick.brown@kirkland.com

Respectfully submitted,

*/s/ Gregg F. LoCascio*
Gregg F. LoCascio, P.C.
Attorney-in-Charge
S.D. TX Bar No. 1109276
DC Bar No. 452814
Tera Jo Stone (admitted *pro hac vice*)
DC Bar No. 90000748
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
Email: gregg.locascio@kirkland.com
Email: tera.stone@kirkland.com

Ryan Kane, P.C.
S.D. TX Bar No. 1314513
NY Bar No. 4882551
Chris Ilardi (admitted *pro hac vice*)
NY Bar No. 5403811
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: ryan.kane@kirkland.com
Email: chris.ilardi@kirkland.com

Nick Brown
S.D. TX Bar No. 2725667
TX. Bar No. 24092182
**KIRKLAND & ELLIS LLP**
609 Main Street
Houston, Texas 77002
Telephone: (713) 836-3600
Facsimile: (713) 836-3601
Email: nick.brown@kirkland.com

James John Lomeo
S.D. TX Bar No. 3511238
TX Bar No. 24118993
**KIRKLAND & ELLIS LLP**
401 Congress Avenue
Austin, Texas 78701
Telephone: (512) 678-9100
Facsimile: (512) 678-9101
Email: james.lomeo@kirkland.com

Craig Smyser
S.D. TX Bar No. 848
TX Bar No. 18777575
Samantha J. Jarvis
S.D. TX Bar No. 2774222
TX Bar No. 24089238
Garland D. Murphy IV
S.D. TX Bar No. 802346
TX Bar No. 24058010
**SMYSER KAPLAN & VESELKA LLP**
717 Texas Avenue, Suite 2800
Houston, Texas 77002
Telephone: (713) 221-2300
Facsimile: (713) 221-2320
Email: csmyser@skv.com
Email: sjarvis@skv.com
Email: lmurphy@skv.com

*Counsel for Defendants Schlumberger Technology Corp. and Smith International, LLC*

James John Lomeo
S.D. TX Bar No. 3511238
TX Bar No. 24118993
**KIRKLAND & ELLIS LLP**
401 Congress Avenue
Austin, Texas 78701
Telephone: (512) 678-9100
Facsimile: (512) 678-9101
Email: james.lomeo@kirkland.com

David J. Beck
S.D. Texas Bar No. 16605
TBN 00000070
dbeck@beckredden.com
BECK REDDEN LLP
1221 McKinney Street
Suite 4500
Houston, Texas 77010
Telephone:     (713) 951-3700
Facsimile:     (713) 951-3720

*Counsel for Defendants Ulterra Drilling Technologies, L.P. and Rockbit International Subsidiaries, LLC*

/s/ Matthew C. Juren
Kelly D. Stephens
Attorney-in-Charge
S.D. Texas Bar No. 8535
TBN 19158300
kstephens@patent-lawyers.com
Matthew C. Juren
S.D. Texas Bar No. 979324

TBN 24065530
mjuren@patent-lawyers.com
STEPHENS JUREN PLLC
2500 Tanglewilde St., Suite 320
Houston, Texas 77063
Telephone:      (832) 344-5400
Facsimile:      (832) 476-5460


*Counsel for Defendants Varel
International Energy Services, Inc. and
Varel International Industries, L.P.*

**CERTIFICATE OF SERVICE**

I hereby by certify that the foregoing document was electronically served on all registered counsel of record via the Court's PACER ECF system.

*/s/ Gregg F. LoCascio*
Gregg F. LoCascio, P.C.

# Exhibit 12

780 Fed.Appx. 136
This case was not selected for
publication in West s Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial decisions
issued on or after Jan. 1, 2007. See also
U.S.Ct. of App. 5th Cir. Rules 28.7 and 47.5.
United States Court of Appeals, Fifth Circuit.

Gaetan PELLETIER, Plaintiff – Appellant,

v.

VICTORIA AIR CONDITIONING, LIMITED; Lloyd
Boedeker; Warren Heilker, Defendants – Appellees.

Gaetan Pelletier, Plaintiff – Appellant,

v.

Mario Ledesma, Lloyd Boedeker, Victoria Air
Conditioning, Limited, Gay Heilker, Anita
Heilker, Warren Heilker, Benjamin F. Heilker,
Donald H. Anderson, Defendants – Appellees.

No. 18-40390

FILED July 12, 2019

**Synopsis**

**Background:** Purported owner of hotel brought breach of
contract action against installer of hotel plumbing. The United
States District Court for the Southern District of Texas, No.
6:17-CV-6, Hayden W. Head, Senior District Judge, 2018
WL 1523694, dismissed action and denied motion to amend
judgment. Purported owner appealed.

**Holdings:** The Court of Appeals held that:

[1] filing of amended notice of appeal which included appeal
of denial of motion to amend judgment was insufficient to
confer jurisdiction on appellate court to review order denying
motion to amend, and

[2] district court did not clearly err in finding that purported
owner of hotel failed to establish by preponderance of
evidence that he personally owned the hotel, as would be
required for constitutional standing.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for
Lack of Standing; Motion to Alter or Amend Judgment;
Motion to Take Judicial Notice.

West Headnotes (2)

[1] **Federal Courts** 🔑 **Premature appeal**

Filing of amended notice of appeal which
included appeal of denial of motion to amend
judgment was insufficient to confer jurisdiction
on appellate court to review order denying
motion to amend, after district court dismissed
action for lack of standing, where amended
notice of appeal was filed before district court
issued order on motion to amend. Fed. R. App.
P. 4(a)(1).

3 Cases that cite this headnote

[2] **Contracts** 🔑 **Name in which action must be
brought**

**Corporations and Business
Organizations** 🔑 **Property, funds, and
conveyances**

District court did not clearly err in finding that
purported owner of hotel failed to establish by
preponderance of evidence that he personally
owned the hotel, as would be required for
constitutional standing for breach of contract
action against installer of hotel plumbing;
multiple deeds of trust represented that limited
liability company (LLC) of which purported
owner was an agent was in fact the owner of the
property and "any improvements" thereon, and
purported owner had previously represented to
different court that LLC was owner of hotel. U.S.
Const. art. 3, § 2, cl. 1.

1 Case that cites this headnote

Appeals from the United States District Court for the
Southern District of Texas, USDC No. 6:17-CV-6

**Attorneys and Law Firms**

Gaetan Pelletier, Pro Se

John Wallace Griffin, Jr., Marek, Griffin & Knaupp, Victoria, TX, Robert Edward McKnight, Jr., Esq., Law Office of Robert E. McKnight, Jr., Victoria, TX, for Defendants-Appellees

Before KING, ELROD, and ENGELHARDT, Circuit Judges.

**Opinion**

PER CURIAM: *

 **\*137** Gaetan Pelletier appeals the district court's dismissal of a contract dispute case for lack of standing. Because the district court did not clearly err in its determination that Pelletier did not establish by a preponderance of the evidence that he personally owned the hotel involved in the underlying contract dispute, we AFFIRM.

I.

Pelletier, proceeding *pro se*, alleges that he is the owner of a hotel that was being constructed in Texas. He raises breach of contract and other state law claims for allegedly faulty plumbing installed in that hotel by the appellees. This case is in federal court under diversity jurisdiction. *See* 🚩 28 U.S.C. § 1332.

In the district court, the appellees moved to dismiss, contending that Pelletier was not the owner of the hotel and therefore lacked standing to bring the lawsuit. Instead, the appellees argued that LLCs associated with Pelletier were the legal owners of both the hotel's business and its physical structure. The district court requested supplemental briefing from both parties on the question of standing and held an evidentiary hearing on the matter. The district court then weighed conflicting evidence and made the factual determination that even though Pelletier was the "primary actor" for each of the LLCs, he was not personally the owner of either the structure or the business of the hotel.

On one hand, the district court considered evidence indicating that the LLCs owned the hotel, which included: (1) a general warranty deed, a county appraisal, and three deeds of trust to secure loans all identifying an LLC as the owner of the land and/or its improvements; (2) representations made by the LLCs in previous state court proceedings that they were the owners; (3) Pelletier's hearing testimony, where he conflated actions that he personally took with those that were in fact taken by the LLCs; and (4) the absence of other

documentary evidence that could have established ownership, such as building permits, subcontracts, insurance policies, or invoices.

On the other hand, the district court also considered a land lease agreement between an LLC affiliated with Pelletier as the lessor and Pelletier as the lessee, which said that the "Lessee owns the improvement structure(s)." However, the district court concluded that the lease, when "taken together with all the other evidence, does not show clear intent by [the LLC] to convey real property or any improvements."

The district court ultimately granted the appellees' motion to dismiss under Rule 12(b)(1), stating:

> The Court cannot conclude Plaintiff has proven beyond a preponderance of the evidence that [he] is the owner of [the hotel].... [T]here are too many instances in the public record where the limited liability companies are declared by Plaintiff to be the owners. Statements to lenders and to courts are not to be taken **\*138** lightly. Documents that might reflect ownership are not in the record. The matter is just too vague for the court to find for Plaintiff. Therefore, Plaintiff does not have standing to sue for ... the allegedly faulty plumbing.

Pelletier filed a timely notice of appeal from that judgment, and we have jurisdiction pursuant to 🚩 28 U.S.C. § 1291.

But the story is not done. After filing the notice of appeal of the initial judgment, Pelletier filed a motion to amend judgment with the district court,[1] and included several additional exhibits which he alleged evidenced his personal ownership. The appellees opposed the motion, arguing that the new exhibits still did not clearly establish personal ownership and noting that many of the new exhibits were created after the evidentiary hearing, when Pelletier had a clear motive to manufacture standing. Prior to the district court's ruling on that motion, Pelletier filed an amended notice of appeal, wherein he expressed his desire to incorporate the motion to amend judgment into his appeal, even though he

expressly noted that the motion "has not yet been ruled upon" by the district court. The district court denied the motion to amend judgment, specifically finding that all of the "new" evidence was either known to Pelletier before the hearing but not shared with the court or created by or on behalf of Pelletier after the evidentiary hearing. Pelletier did not file a notice of appeal from the order denying the motion to amend judgment any time after that order was issued.

## II.

There are thus two issues before us. First, whether an appeal of the order denying the motion to amend judgment is properly before us; and second, whether the district court erred by dismissing the case for lack of standing. We address each issue in turn.

## 1.

**[1]** We begin by addressing whether an appeal of the order denying the motion to amend judgment is properly before us.

"[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement." *Bowles v. Russell*, 551 U.S. 205, 214, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007). The Federal Rules of Appellate Procedure direct that the notice of appeal must be filed *after* the district court has decided the issue sought to be appealed. *See* Fed. R. App. P. 4(a)(1) (for civil cases); Fed. R. App. P. 4(b)(1) (for criminal cases).

In this case, Pelletier attempted to amend his notice of appeal to include his motion to amend judgment, but he filed that amended notice of appeal *before* the district court issued its order on that post-judgment motion. That is not a proper notice of appeal from the ruling on the post-judgment motion. As such, we lack the jurisdiction to review that decision, as well as any of the exhibits provided therein. *See Taylor v. Johnson*, 257 F.3d 470, 475 (5th Cir. 2001); *cf. Manrique v. United States*, —— U.S. ——, 137 S. Ct. 1266, 1272, 197 L.Ed.2d 599 (2017) (rejecting, in a criminal case, the argument that a notice of appeal filed after the initial judgment is rendered also "springs forward" to appeal an amended judgment).

**\*139** 2.

Therefore, the only question properly before us is whether the district court erred in its initial judgment dismissing the case for lack of standing.

We review *de novo* a district court's rulings on legal questions, including rulings on the issue of standing. *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015). However, "[a] district court's factual findings, including those on which the court based its legal conclusions, are reviewed for clear error." *Id.* (citation omitted). "A factual finding is not clearly erroneous if it is plausible, considering the record as a whole." *United States v. King*, 773 F.3d 48, 52 (5th Cir. 2014) (citation omitted).

Before addressing the standing arguments, we pause to address the type of standing that is at issue. "Standing jurisprudence contains two strands: Article III [or constitutional] standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Servicios Azucareros de Venez., C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 801 (5th Cir. 2012) (citation, alterations, and quotation marks omitted). A dismissal for lack of constitutional standing should be granted under Rule 12(b)(1) for lack of subject matter jurisdiction, whereas a dismissal for lack of prudential standing should be granted under Rule 12(b)(6) for failure to state a claim. *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011).

Before the district court, and again before this court, the appellees argued that the courts lack subject matter jurisdiction because Pelletier lacks prudential standing. However, as explained above, a lack of prudential standing does not implicate subject matter jurisdiction, and the district court appears to have granted the Rule 12(b)(1) motion to dismiss based on constitutional standing. [2] We therefore start and end by addressing the constitutional standing determination made by the district court. *See id.* (noting that we must first establish that we have constitutional standing before addressing questions of prudential standing).

One requirement of constitutional standing is that the plaintiff must have suffered (or be imminently threatened with suffering) the alleged injury. [3] *See* *Lexmark Int'l, Inc. v.*

*Static Control Components, Inc.,* 572 U.S. 118, 125, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014) (citing *Lujan v. Def. of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). To satisfy that requirement here, Pelletier needed to establish that he, personally, was injured by the allegedly faulty plumbing installed at the hotel. The district court concluded that **\*140** Pelletier did not make that showing, and Pelletier raises two arguments contending that the district court erred on that point.

First, Pelletier contends that a jury, not the court, should have resolved the factual dispute over whether he owned the hotel. "[W]here subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Montez v. Dep't of Navy,* 392 F.3d 147, 149 (5th Cir. 2004). However, where the same factual dispute underlies both the subject matter jurisdiction and the merits of the case, "the trial court must assume jurisdiction and proceed to the merits." *Id.* at 150.

Because Pelletier did not adequately raise this argument before the district court in any motion or proceeding that is properly before us, it is forfeited on appeal. *See United States ex rel. Vavra v. Kellogg Brown & Root, Inc.,* 848 F.3d 366, 376 (5th Cir. 2017) ("[T]o preserve its argument for appeal, the litigant must press and not merely intimate the argument before the district court." (citation and quotation marks omitted)). [4]

 **[2]**   Second, Pelletier contends that the district court erred in its determination that he did not personally own the hotel. To prevail on a factual dispute concerning standing, "a plaintiff must prove the existence of subject-matter jurisdiction by a preponderance of the evidence and is obliged to submit facts through some evidentiary method to sustain his burden of proof." *Superior MRI Servs.,* 778 F.3d at 504 (citation and quotation marks omitted).

As such, Pelletier carried the burden of establishing, by a preponderance of the evidence, that he personally was the legal owner of the hotel. Under Texas law, "[t]he general rule is that improvements become part of the land and belong to the landowner unless there is ... evidence showing intent of the improver that the improvements remain personalty with the right to be removed." *Travis Cent. Appraisal Dist. v.*

*Signature Flight Support Corp.,* 140 S.W.3d 833, 838 (Tex. App.—Austin 2004, no pet.).

Pelletier repeatedly argues—both before the district court and this court—that the land lease agreement (between himself and an LLC that he is associated with) is dispositive for determining that he, personally, was the legal owner of the hotel's physical structure.

His argument was unpersuasive to the district court and also is to us. The district court weighed that land lease agreement against documentary and testimonial evidence indicating that an LLC was instead the proper legal owner of the hotel. Significantly, that other evidence included multiple deeds of trust, signed after the land lease agreement, in which Pelletier, acting as an agent of the LLC, represented that the LLC was the owner of the property and "any improvements" thereon. Also of significance, the district court found it to be "troubling" that Pelletier, as the primary actor for the LLCs, previously allowed those entities to represent to a Texas court that they were the owners of the hotel in state court litigation that involved the same allegedly faulty plumbing.[5] As **\*141** the district court observed, "[s]tatements to lenders and to courts are not taken lightly."

Pelletier argues that Texas state courts give substantial weight to land lease agreements when resolving the ownership of improvements made upon leased land. *See, e.g., Bexar Appraisal Dist. v. Dee Howard Co.,* No. 04-96-00085-CV, 1997 WL 30884 (Tex. App.—San Antonio Jan. 29, 1997, writ denied). In a less convoluted case, his argument might have more traction. However, based on the record before us, we cannot say that the district court clearly erred in its determination that Pelletier failed to establish by a preponderance of the evidence that he personally owned the hotel.

Therefore, because Pelletier did not establish that he personally owned the hotel and he offered no other valid cause of action for his personal claim against the appellees, the district court did not err in its initial judgment dismissing the case for lack of standing. *Cf. L & F Homes & Dev., L.L.C. v. City of Gulfport,* 538 F. App'x 395, 408 (5th Cir. 2013) (unpublished) (holding that an individual member of an LLC did not have standing to sue a third party for economic harms allegedly suffered by the LLC because "[a] stockholder in a corporation does not have standing to bring suit in his own name for injuries sustained by the corporation ... even where that individual is the sole shareholder of a corporation.")

(citing *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 276–77 (5th Cir. 1997)).

* * * *

The district court's judgment is AFFIRMED.[6]

**All Citations**

780 Fed.Appx. 136

## Footnotes

* Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

1 The motion was styled as "Plaintiff's Motion to Alter or Amend Judgment Per FRCP 59(e); Motion for Judgment as a Matter of Law Per FRCP 50(a)(2); and Motion for Relief from a Judgement Order Per FRCP 60." However, a Rule 50 motion is not applicable here, and the arguments for Rule 59(e) and Rule 60 relief appear to be indistinguishable from one another. Thus, for brevity's sake, we refer to it as a motion to amend judgment.

2 Pelletier's *pro se* briefs, for their part, do not clearly identify whether his arguments pertain to prudential or constitutional standing.

3 The Supreme Court has noted that there is some overlap and tension between the constitutional standing requirement that a plaintiff must show he has suffered an injury and the prudential standing requirement that a plaintiff may not assert the legal rights of others. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 n.3, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014); *see also United States v. Windsor*, 570 U.S. 744, 781–88, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013) (Scalia, J., dissenting). We have held that prudential standing requirements still apply to third-party challenges brought by plaintiffs who otherwise have constitutional standing. *See Superior MRI Servs.*, 778 F.3d at 506. *See also* 33 Charles A. Wright et al., Federal Practice & Procedure § 8343 (2d ed. April 2019 Update) (describing the tension, and noting that among all the categories of prudential standing, "only the doctrine of third-party standing ... still remains in the prudential category").

4 However, even if we were to consider the argument, Pelletier's contention would be unavailing. The merits of the case are whether the appellees breached the contract or otherwise violated state law by installing allegedly faulty plumbing. That dispute is entirely distinct from the dispute over whether Pelletier owns the hotel. As such, it was proper for the district court to first determine whether it had subject matter jurisdiction by resolving the factual question of whether Pelletier owned the hotel.

5 That state litigation was brought by two LLCs associated with Pelletier and involved the same claims of allegedly faulty plumbing at issue in this appeal. The complaint asserted that the LLCs "are the owners of the TexInn hotel." Originally, those LLCs were represented by counsel. However, counsel for the LLCs later withdrew and the LLCs were notified that, as LLCs, they were precluded from representing themselves *pro se.* Shortly thereafter, Pelletier filed his *pro se* complaint in federal court claiming that he, personally, was the owner of the hotel. The state court claims brought by the LLCs were subsequently dismissed for failure to prosecute. However, the state court granted a default judgment in those proceedings on counterclaims that were brought against the LLCs, specifically determining that it had subject matter jurisdiction over the

parties. That determination implies that the state court understood the LLCs to have standing to sue and be sued as owners of the hotel for matters regarding the allegedly faulty plumbing that is at issue.

6       The appellees' motion to take judicial notice of additional state court documents is denied.

---

**End of Document**                                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

---

# Exhibit 13

⚑ KeyCite Yellow Flag - Negative Treatment

Declined to Follow by   Cascabel Cattle Company, L.L.C. v. United States,
5th Cir.(Tex.),   April 6, 2020

414 Fed.Appx. 649

This case was not selected for
publication in West s Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial decisions
issued on or after Jan. 1, 2007. See also
U.S.Ct. of App. 5th Cir. Rules 28.7 and 47.5.
United States Court of Appeals, Fifth Circuit.

Geraldine JASPER, Plaintiff–Appellant,

v.

FEDERAL EMERGENCY MANAGEMENT
AGENCY, Defendant–Appellee.

No. 10–30841

Summary Calendar

Feb. 25, 2011.

**Synopsis**

**Background:** Resident of travel trailer provided by Federal
Emergency Management Agency (FEMA) after hurricane
filed action against FEMA, alleging that she suffered post-
traumatic stress disorder and damage to personal property as
result of explosion in trailer. The United States District Court
for the Eastern District of Louisiana, 2010 WL 3021825,
dismissed claims for want of subject-matter jurisdiction based
on independent-contractor exception to Federal Tort Claims
Act (FTCA). Resident appealed.

**Holdings:** The Court of Appeals held that:

[1] merits of negligence claim were not so intertwined with
jurisdictional issue as to prevent separate consideration and
decision of jurisdiction question;

[2] Louisiana's imposition of non-delegable duties was
preempted by independent-contractor exception to FTCA;
and

[3] it was within district court's discretion to deny trailer
resident's motion for additional discovery.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.

West Headnotes (3)

[1]   **United States** ⚷   Contractors

Merits of trailer resident's negligence claims
against Federal Emergency Management
Agency (FEMA) and jurisdictional issue of
whether waiver of sovereign immunity under
Federal Tort Claims Act (FTCA) was excluded
under independent-contractor exception were
not so intermeshed as to prevent separate
consideration and decision of jurisdiction
question; resident's claim depended on whether
company that installed refrigerator in trailer
was negligent in installation and whether such
negligence proximately caused injuries that she
sustained, rather than determination regarding
applicability of FTCA's independent-contractor
exception. 28 U.S.C.A. § 1346(b)(1).

10 Cases that cite this headnote

[2]   **United States** ⚷   In general;  place of injury

Louisiana's imposition of non-delegable duties
was preempted by independent-contractor
exception to Federal Tort Claims Act
(FTCA) in travel trailer resident's negligence
action against Federal Emergency Management
Agency (FEMA). 28 U.S.C.A. § 1346(b)(1).

5 Cases that cite this headnote

[3]   **Federal Civil Procedure** ⚷   Time of
determination; reserving decision

It was within district court's discretion to deny
trailer resident's motion for additional discovery
in negligence action against Federal Emergency
Management Agency (FEMA); only contested
issue on motion to dismiss involved scope
of government's control over contractor, and
resident's need for discovery was necessarily
limited to gathering information relating to

that control, and resident failed to state what information she sought from extra deposition or why two and one half months between motion to dismiss and dismissal was insufficient to take deposition. Fed.Rules Civ.Proc.Rule 12(b)(1), 28 U.S.C.A.

4 Cases that cite this headnote

**Attorneys and Law Firms**

**\*649** William Roy Mustian, III, Esq., Stanga & Mustian, P.L.C., Metairie, LA, for Plaintiff–Appellant.

Glenn Kenneth Schreiber, Esq., Assistant U.S. Attorney, Diane Hollenshead Copes, Esq., Assistant U.S. Attorney, **\*650** Stephen Andrew Higginson, Assistant U.S. Attorney, U.S. Attorney's Office, New Orleans, LA, for Defendant–Appellee.

Appeal from the United States District Court for the Eastern District of Louisiana, New Orleans, USDC No. 2:09–CV–7177.

Before KING, BENAVIDES, and ELROD, Circuit Judges.

**Opinion**

PER CURIAM: *

*  Pursuant to the 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

Geraldine Jasper, plaintiff-appellant in this matter, appeals from the district court's dismissal of her claims for want of subject-matter jurisdiction based on the independent-contractor exception to the Federal Tort Claims Act (FTCA), and from the district court's denial of her request to conduct additional discovery. We AFFIRM.

**I. BACKGROUND AND PROCEDURAL HISTORY**

After Hurricane Katrina struck New Orleans, Jasper became one of the many displaced refugees seeking aid. As part of its Katrina relief aid, FEMA provided Jasper with a travel trailer in which to live. On October 7, 2006, the refrigerator in Jasper's trailer quit working. At that time, FEMA had a contract with AME Janitorial Services (AME) concerning the maintenance and eventual deactivation of the trailers at the park in which Jasper's trailer was located. When Jasper's refrigerator quit working, AME provided her with a temporary portable refrigerator to use while it sought a replacement. When AME installed the refrigerator, [1] it connected the appliance to a wall socket by using an extension cord that it left hanging over the stove. A week later, an explosion occurred in Jasper's trailer, allegedly as a result of the extension cord's placement over the gas stove.

[1]  Jasper originally alleged that FEMA had installed the refrigerator, though it is now undisputed that AME conducted the actual installation.

Subsequently, Jasper filed the instant lawsuit against FEMA contending that she suffered post-traumatic stress disorder and damage to personal property as a result of the explosion. FEMA filed a Rule 12(b)(1) motion challenging the district court's subject-matter jurisdiction. After reviewing the FEMA–AME contract and an affidavit submitted by FEMA's Contracting Officer's Technical Representative, Thomas Warder, the district court concluded that FEMA's relationship with AME was sufficiently disconnected to qualify AME as an independent contractor. The district court therefore determined that the independent-contractor exception to the FTCA divested the court of subject-matter jurisdiction. Jasper appeals arguing that the district court improperly allowed FEMA's collateral attack on the merits of her case, failed to apply Louisiana state law, and improperly restricted her ability to conduct discovery.

**II. DISCUSSION**

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." See United States v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). The FTCA waives sovereign immunity and allows private individuals to sue the federal government for the negligent torts of its employees by granting federal courts exclusive subject-matter jurisdiction over such actions. **\*651** 28 U.S.C. § 1346(b)(1). The FTCA, however, enumerates a number of exceptions to the waiver of immunity, including an exception that excludes from its grant of subject-matter jurisdiction claims brought against the government for the negligent acts committed by its independent contractors. 28 U.S.C. § 2671.

Because a federal court must determine whether jurisdiction is proper prior to addressing the merits of a case, a district court must first determine if a party is an independent contractor within the meaning of the FTCA. *See Steel v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (requiring a jurisdictional determination as a "threshold matter"); *Linkous v. United States,* 142 F.3d 271, 275 (5th Cir.1998) ("Therefore, if the act was not committed by an 'employee of the Government,' then the court must dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)."). Whether the independent-contractor exception bars liability turns on whether the United States had the right "to control the detailed physical performance of the contractor" and "whether [the contractor's] day-to-day operations are supervised by the Federal government." *Logue v. United States,* 412 U.S. 521, 528, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973); *United States v. Orleans,* 425 U.S. 807, 815, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976).

The district court "has the power to dismiss for lack of subject-matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.1981). If the district court's determination involves only the first two categories, this court only reviews the lower court's application of the law. *Id.* If the district court's determination is based in part on the resolution of disputed facts, however, this court accepts the district court's findings unless they are "clearly erroneous." *Id.* While deference is given to the lower court's fact findings, this court reviews *de novo* whether a federal court has subject-matter jurisdiction over a dispute. *Linkous,* 142 F.3d at 275. Further, in determining whether subject-matter jurisdiction exists, "[c]ourts must strictly construe all waivers of the federal government's sovereign immunity, [resolving] all ambiguities in favor of the sovereign." *Id.*

[1] Jasper contends that FEMA's Rule 12(b)(1) motion constituted an indirect attack on the merits of her claim. Quoting at length from the *Williamson* decision, she argues that the jurisdictional issue is so interwoven with the merits of her claim that dismissal on Rule 12(b)(1) grounds was improper. Our holding in *Williamson,* however, is distinguishable. The plaintiffs' claims in that case were based on various federal acts relating to the sale or exchange of securities. *Williamson,* 645 F.2d at 409. The plaintiffs were seeking rescission of a joint-venture agreement under

the theory that the agreements were "securities" within the meaning of 15 U.S.C. § 77(b)(1) and § 78c(a)(10). *Id.* at 409–10. Because the applicability of the statute was the sole basis for jurisdiction, dismissal for want of subject-matter jurisdiction was premature:

> Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.

*Id.* at 415.

Unlike *Williamson,* Jasper's claims are based on negligence theories interpreted under Louisiana state law. The merits of her claim depend on whether the company *652 that installed the refrigerator was negligent in such installation and whether such negligence proximately caused the injuries that she sustained. It does not depend on a determination regarding the applicability of the FTCA's independent-contractor exception. *See Ford v. Am. Motors Corp.,* 770 F.2d 465, 468 (5th Cir.1985) (holding that where an exception to the FTCA barred the plaintiff's negligence claims, "[t]he merits and jurisdictional issue were not so intermeshed as to prevent the separate consideration and decision of the jurisdiction question....").

[2] Jasper alternatively argues that even if AME is considered an independent contractor, FEMA should still remain responsible because Louisiana state law views maintenance on leased premises as non-delegable duties. When confronted with this issue, the Fourth Circuit stated: "We note from the start that, although the threshold inquiry into governmental liability as defined by the FTCA requires an examination of state law to define tortious conduct, the question of whether a state law tort can be applied against the United States is exclusively one of federal law." *Berkman v. United States,* 957 F.2d 108, 112 (4th Cir.1992). We have held in accord. *Levrie v. Dept. of Army,* 810 F.2d 1311, 1314 (5th Cir.1987) (per curiam) (holding that the independent-contractor "exception to the waiver of sovereign immunity takes precedence over [state] law"). Louisiana's

imposition of non-delegable duties is therefore preempted by the independent-contractor exception to the FTCA.

 **[3]**    Finally, Jasper contends that she had inadequate time to conduct the proper scope of discovery necessary to defend the government's Rule 12(b)(1) motion. We review a district court's denial of additional discovery time for an abuse of discretion. *Rosemound Sand & Gravel Co. v. Lambert Sand & Gravel Co.,* 469 F.2d 416, 418 (5th Cir.1972). Because the only contested issue in the Rule 12(b)(1) hearing involved the scope of the government's control over the contractor, Jasper's need for discovery is necessarily limited to gathering information relating to that control. *Williamson,* 645 F.2d at 414. In its Rule 12(b)(1) motion, FEMA submitted both the Warder affidavit and the entire FEMA–AME contract. Both documents provided ample material on which the district court could have determined the scope of FEMA's control over AME's day-to-day activity. While Jasper has asserted her desire to depose Warder, she has failed to state any particular reason for needing to do so. She has not stated what information she seeks to gain from the deposition, which areas

she would like to further explore, or how such areas even relate to the jurisdictional issue in dispute. "Vague assertions of the need for additional discovery are as unavailing as vague responses on the merits." *Reese v. Anderson,* 926 F.2d 494, 499 n. 5 (5th Cir.1991) (affirming denial of request for additional discovery prior to motion for summary judgment hearing). Jasper has also failed to state why the two and one-half months between her receipt of FEMA's motion to dismiss and the district court's dismissal of her lawsuit was an insufficient time period in which to take Warder's deposition. *See Rosemound Sand & Gravel Co.,* 469 F.2d at 418 (holding that the district court's dismissal for lack of subject-matter jurisdiction after giving the plaintiff a sixty-day opportunity to conduct discovery was not an abuse of discretion).

For the foregoing reasons, the judgment of the district court is AFFIRMED.

**All Citations**

414 Fed.Appx. 649

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit 14

2020 WL 4734899
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

STC.UNM, Plaintiff,
v.
QUEST DIAGNOSTICS INCORPORATED and Quest
Diagnostics Clinical Laboratories, Inc., Defendants.

Civ. No. 20-197 KG/KK

|

Filed 08/14/2020

**Attorneys and Law Firms**

Deron B. Knoner, Keleher & McLeod P.A., Albuquerque, NM, Alfonso G. Chan, Michael W. Shore, Shore Chan DePumpo LLP, Dallas, TX, for Plaintiff.

Adam Beckstrom, Larry R. Laycock, Durham Jones & Pinegar, Salt Lake City, UT, Debashee Nandy, Lorena B. Hutton, Eric R. Burris, Brownstein Hyatt Farber Schreck, LLP, Albuquerque, NM, Jay F. Utley, Nicholas O. Kennedy, Pro Hac Vice, W. Bart Rankin, Pro Hac Vice, Baker & McKenzie, LLP, Dallas, TX, Kevin M. O'Brien, Pro Hac Vice, Baker & McKenzie LLP, Washington, DC, for Defendants.

MEMORANDUM OPINION AND ORDER

KENNETH J. GONZALES, UNITED STATES DISTRICT JUDGE

**\*1** This matter comes before the Court upon Plaintiff STC.UNM'S Motion to Remand (Motion to Remand), filed March 25, 2020. (Doc. 26). In addition to seeking a remand, Plaintiff requests an award of attorneys' fees and costs associated with this second removal to federal court. Defendants filed a response on April 8, 2020, and Plaintiff filed a reply on April 22, 2020. (Docs. 42 and 43). Having reviewed Plaintiff's First Amended Complaint (Doc. 26-1), Defendants' second Notice of Removal (Doc. 1), the Motion to Remand, and the accompanying briefing, the Court grants the Motion to Remand but denies Plaintiff's request for an award of attorneys' fees and costs.

*I. Background*
This case involves a dispute arising from a 2006 License Agreement between Plaintiff and Defendant Quest

Diagnostics Incorporated (Quest) concerning patents related to various medical tests. *See* (Doc. 40) (filed under seal).

*A. Relevant Portions of the License Agreement*
Plaintiff granted Quest a non-exclusive "license to the Licensed Patents on a royalty-bearing basis...." *Id.* at 6, ¶ 2.1. The License Agreement includes a Reasonable Efforts Clause that requires Quest to "use its commercially reasonable efforts" to market the Licensed Products. *Id.* at ¶ 3.1 A "Licensed Product" is one which "would infringe a Valid Claim but for the existence of this Agreement." [1] *Id.* at 4, ¶¶ 1.7 and 1.9.

Also, the License Agreement requires Quest to pay Plaintiff a minimum annual royalty and, if applicable, an annual royalty on Gross Receipts, the "gross payments and other consideration" Quest receives for providing Licensed Products. *Id.* at 5, ¶ 1.12, and at 7, ¶¶ 4.2 and 4.3. Additionally, Quest must furnish Plaintiff copies of "records of all operations affecting" royalty payments when Plaintiff so requests. *Id.* at 8, ¶ 6.1. Finally, Plaintiff has the right to audit accounting records maintained by Quest to determine and verify royalty payments. *Id.* at 8, ¶ 6.2.

*B. The Original Complaint*
In September 2017, Plaintiff filed a state court action against Defendants in the Second Judicial District, Bernalillo County, State of New Mexico. (Doc. 1-1), filed in Civ. No. 17-1123 MV/KBM. Plaintiff alleged that Defendants had not reported any Gross Receipts and did not pay any royalties, except for minimum annual royalties, since the effective date of the License Agreement. *Id.* at 6, ¶ 32. Given this situation, Plaintiff requested certain records from Defendants and submitted a proposed audit protocol, as provided by the License Agreement. *Id.* at 6, ¶ 34 and at 7, ¶ 42. Defendants, however, did not provide any records nor did they agree to an audit. Plaintiff alleged that Defendants claimed they had no sales records to produce and objected to the proposed audit protocol because they had not made any sales under the License Agreement. *Id.* at 6, ¶ 36; and at 7, ¶ 43.

**\*2** In Count I, entitled "Breach of Contract Against Quest," Plaintiff alleged Defendants breached the License Agreement by failing to provide records and to allow an audit. *Id.* at 9, ¶ 52. As relief for those breaches, Plaintiff sought "specific performance of both the records access and the audit provisions of the License." *Id.* 9, ¶ 54.

In Count II, Plaintiff brought a declaratory judgment action seeking a declaration that the License Agreement requires Defendants to provide certain categories of records as well as audit accounting records. *Id.* at 10, ¶¶ 61 and 63.

Finally, in Count III, Plaintiff alleged that Defendants' repeated breaching of the License Agreement also breached the implied covenant of good faith and fair dealing. *Id.* at 11, ¶ 76.

### C. The First Removal and Remand

In November 2017, Defendants removed the case to federal court on the basis of diversity jurisdiction and federal question jurisdiction premised on federal patent law. (Doc. 1) at 1, filed in Civ. No. 17-1123 MV/KBM (citing 28 U.S.C. §§ 1331, 1332, 1338, and 1454). [2] Plaintiff then moved to remand the case, in part, due to lack federal jurisdiction. (Doc. 12), filed in Civ. No. 17-1123 MV/KBM. Having concluded that the Court lacked federal jurisdiction, the Court granted the motion to remand and remanded the case to state court. (Docs. 72 and 73), filed in filed in Civ. No. 17-1123 MV/KBM.

### D. The First Amended Complaint

After the remand, the state court allowed Plaintiff to file its First Amended Complaint. (Docs. 26-1, 26-3, and 26-4). Plaintiff amended Count I to include the following alleged breach of contract: if Defendants did not obtain any Gross Receipts, then Defendants breached the Reasonable Efforts Clause of the License Agreement. (Doc. 26-1) at 10, ¶ 53. In the alternative, Plaintiff alleges that if Defendants obtained Gross Receipts, then Defendants breached the License Agreement by not paying royalties. *Id.* at 10, ¶ 54.

Plaintiff amended its prayer for relief to include a request for an award of compensatory damages for the alleged breach of the Reasonable Efforts Clause, and a request for an award of "[d]amages for failure to pay royalties, if the audit shows that unpaid royalties are owed." *Id.* at 14, ¶¶ i and iii.

### E. The Second Notice of Removal

In March 2020, Defendants filed their second Notice of Removal. (Doc. 1). Defendants contend that this Court has federal question jurisdiction because Plaintiff's claim that Defendants failed to pay royalties "necessarily depends on the resolution of a substantial question of federal patent law." *Id.* at 6, ¶ 19 (citing 28 U.S.C. §§ 1331, 1338, and 1454). Defendants explain that one must determine if Defendants

sold a Licensed Product in order to decide if Plaintiff is entitled to a royalty based on Gross Receipts. Defendants assert that to determine if "a product is a Licensed Product requires an analysis of both [patent] infringement and [patent] invalidity." *Id.* at 9, ¶ 25. Defendants, therefore, conclude that these patent issues embedded in the failure to pay royalties claim arise under federal patent laws. [3]

**\*3** Plaintiff challenges the second Notice of Removal in its Motion to Remand and seeks an award of attorneys' fees and costs should it prevail on the Motion to Remand.

### II. Legal Standard

A defendant can remove a state case to federal district court if the federal district court would have original jurisdiction over the matter. 28 U.S.C. § 1441(a). However, "[s]ince federal courts are courts of limited jurisdiction, [courts] presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013) (citation omitted). "As the parties removing this case to federal court, [Defendants] bear the burden of establishing jurisdiction by a preponderance of the evidence." *Id.*

### III. Discussion

Plaintiff argues first that the Court should grant the Motion to Remand because Defendants' failure to raise a new ground for removal procedurally bars the second removal. Second, Plaintiff argues that the alleged failure to pay royalties does not establish federal question or federal patent jurisdiction. Finally, Plaintiff argues that the Court should award it attorneys' fees and costs incurred as a result of this second removal.

### A. Whether the Second Removal is Procedurally Barred Due to a Failure to Raise a New Ground for Removal

Section 1446(b)(3) states that even if an initial pleading is not removable a defendant can file a notice of removal after receipt of an amended pleading "from which it may first be ascertained that the case is one which is or has become removable." To file a second removal under Section 1446(b)(3), two actions must occur. "First, the plaintiff must voluntarily amend his state court complaint after an order of remand has been entered." *O'Bryan v. Chandler*, 496 F.2d 403, 410 (10th Cir. 1974). "Second, the voluntary action of the plaintiff in amending his state complaint must set forth

a ground for removal that appears for the first time." *Id.* In other words, a second notice of removal cannot allege the "same grounds" for removal as the first notice of removal. *Id.* "The legal phrase 'same grounds' ... does not mean the same cause of action or theory of recovery." *Id.* "Stated oppositely different grounds more precisely mean a different set of facts that state a new ground for removal." *Id.*

The parties do not contest that Plaintiff voluntarily amended its state court complaint after the first remand. Nonetheless, Plaintiff contends that the "second Notice of Removal now before the Court raised the same grounds (i.e. 28 U.S.C. §§ 1331, 1338, and 1454) that [Defendants] previously raised in their first Notice of Removal." (Doc. 26) at 10. Put another way, Plaintiff argues that Defendants raised the same *statutory* provisions to support the second Notice of Removal as it did in the first Notice of Removal. Plaintiff also argues that the same causes of action at issue in both the first and second Notices of Removal: breach of contract, declaratory judgment, and breach of the implied covenant of good faith and fair dealing. "Same grounds," however, refers to the same *factual* basis to support a second removal, not to the same statutory provisions and causes of action.

**\*4** Moreover, the facts are no longer the same. The original Complaint alleged a failure to produce records and to allow an audit. Plaintiff now alleges for the first time that Defendants may not have paid royalties as required by the License Agreement. Indeed, Defendants rely on that new factual allegation and its embedded patent issues to remove this action. Defendants, thus, set forth a new ground for removal. Accordingly, Defendants have complied with Section 1446(b)(3) and the second Notice of Removal is not procedurally barred.

### B. Whether the Alleged Failure to Pay Royalties Establishes Federal Question or Federal Patent Jurisdiction

"Congress has authorized the federal district courts to exercise original jurisdiction in 'all civil actions arising under the Constitution, laws, or treaties of the United States,' 28 U.S.C. § 1331, and, more particularly, over 'any civil action arising under any Act of Congress relating to patents,' § 1338(a)."

*Gunn v. Minton,* 568 U.S. 251, 257 (2013). In fact, Section 1338(a) eliminates state jurisdiction over those civil actions arising under federal patent law. *Id.* (noting that Section 1338(a) "eliminated state jurisdiction, decreeing that '[n]o

State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents' ").

As the United States Supreme Court in *Gunn* recognized, only a "slim" category of cases with their origins in state law can arise under federal law. *Id.* at 258. In those caes, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* Courts use this analysis to determine if a state claim arises under federal patent law. *Id.* (applying analysis to decide if state legal malpractice claim arises under federal patent law).

### 1. Are the Patent Law Issues "Necessarily Raised?"

"[A] patent law issue will be necessarily raised only if it is a necessary element of one of the well-pleaded claims."

*Inspired Development Group, LLC v. Inspired Products Group, LLC,* 938 F.3d 1355, 1362 (Fed. Cir. 2019) (citation omitted). In a case where alternative legal theories support a well-pleaded claim, the claim "may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 810 (1988).

To begin with, Plaintiff argues that Count I and the prayer for relief contain only "two passing references to 'royalties'" in order "to provide additional background and are not a 'necessary element' of the causes of action" it asserts. (Doc. 26) at 9; *see, e.g., Hoodye v. Wells Fargo Bank, NA,* 2013 WL 672567, at *2 (S.D. Tex.) (acknowledging that "[b]ackground facts ... are not a 'necessary element' of the cause of action" and so "do not transform a state law claim into a cause of action under federal law"). The Court disagrees with Plaintiff. Plaintiff's references to royalties hardly constitute mere background information. Plaintiff explicitly pleads that, if Defendants obtained Gross Receipts, then Defendants breached the License Agreement by failing to pay royalties. Indeed, the alleged failure to pay royalties is the heart of the claim in Count I. Plaintiff also explicitly seeks any unpaid royalties as damages for that failure to pay royalties.

Next, Plaintiff argues that it has only one well-pleaded breach of contract claim, which Plaintiff supports with four legal theories: Defendants' failure to produce records, Defendants'

refusal to allow an audit, Defendants' failure to comply with the Reasonable Efforts Clause, and Defendants' failure to pay royalties. Plaintiff contends that patent law is not essential to the legal theories based on Defendants' failure to produce records, Defendants' failure to allow an audit, and Defendants' failure to comply with the Reasonable Efforts Clause. *See STC.UNM v. Quest Diagnostics Inc.,* No. CIV 17-1123 MV/KBM, 2019 WL 1091390, at *4 (D.N.M.), *report and recommendation adopted,* 2019 WL 1386733 (D.N.M.) (finding that Plaintiff's right to relief on its original contract claim based on alleged failure to provide records "does not depend on the resolution of a substantial question of federal patent law"), *see also,* NeuroRepair, Inc. v. The Nath Law Group, 781 F.3d 1340, 1345 (Fed. Cir. 2015) (holding that plaintiff could prevail on breach of contract "cause[ ] of action under alternate bases that do not necessarily implicate an issue of substantive patent law"). Plaintiff also notes that it added the failure to pay royalties allegation in the alternative so Plaintiff may prevail on the Count I "breach of contract claim without ever reaching the question of royalties" or imbedded patent issues. (Doc. 43) at 4. Hence, Plaintiff concludes that patent law is not necessarily raised with respect to its breach of contract claim.

**\*5** Defendants, however, argue that Count I contains not one, but four distinct well-pleaded breach of contract claims, i.e., Defendants failed to provide records; Defendants failed to allow an audit; Defendants failed to comply with the Reasonable Efforts Clause; and Defendants failed to pay royalties, as opposed to four legal theories in support of one breach of contract claim. Thus, Defendants contend that they need not show that all four contract claims necessarily raise a patent issue. Instead, Defendants assert they need only show that the failure to pay royalties claim necessarily raises a patent issue.

Indeed, "[w]hat is styled as a single breach-of-contract claim" can assert separate breach of contract claims. Broder v. Cablevision Sys. Corp., 418 F.3d 187, 194 (2d Cir. 2005) (acknowledging that "what a plaintiff presents as one 'count' may be understood to encompass more than one 'claim' "). "One of the key characteristics of a mere 'theory,' as opposed to a distinct claim, is that a plaintiff may obtain the relief he seeks without prevailing on it." Id. at 195. In other words, a complaint for breach of contract that alleges separate breaches, each with a different request for relief, even if they "rely on some common elements, such as a breach of contract," are separate claims, not theories.

Grynberg Prod. Corp. v. British Gas, p.l.c., 817 F. Supp. 1338, 1364 (E.D. Tex. 1993). Moreover, "pleading claims in the alternative [does not] preclude[ ] jurisdiction even if one claim is a proper federal question." *Id.*

Here, Plaintiff seeks a separate remedy for each of the alleged breaches of contract and must prevail on the specific alleged breach of contract to obtain the relief it seeks for that breach of contract. For example, Plaintiff does not seek specific performance, i.e., the release of records and an audit, as relief for failing to pay royalties. Conversely, Plaintiff does not seek unpaid royalties as relief for the failure to provide records or to allow an audit. Similarly, Plaintiff does not seek specific performance as relief for the failure to comply with the Reasonable Efforts Clause. The fact that Plaintiff cannot obtain all the relief it seeks under Count I by prevailing on just one of the alleged breaches of contract indicates that the alleged breaches are not mere legal theories supporting a single breach of contract claim. [4] Rather, each alleged breach of contract is a well-pleaded claim. Moreover, pleading the failure to pay royalties allegation in the alternative does not affect the determination that the alleged failure to pay royalties is a well-pleaded claim and not a mere legal theory.

For the reasons stated above, the Court concludes that Defendants have shown by a preponderance of the evidence that a patent law issue necessarily is raised in the failure to pay royalties claim.

### 2. Are the Patent Law Issues Actually Disputed?

Plaintiff does not dispute that the embedded patent law issues are actually disputed. *See* (Doc. 26) at 14 (assuming *arguendo* that patent law issues are actually disputed). Even so, the Court concludes that Defendants have shown by a preponderance of the evidence that the embedded patent law issues are actually disputed.

### 3. Are the Patent Law Issues Substantial?

**\*6** "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue...." Gunn, 568 U.S. at 260. Rather, the courts consider "the importance of the issue to the federal system as a whole," including whether "allowing state courts to resolve

these cases [would] undermine 'the development of a uniform body of [patent] law.' " *Id.* at 260-61 (citation omitted). "A 'substantial federal issue is more likely to be present' if:

a) 'a pure issue of [federal] law' is 'dispositive of the case,'

b) 'the court's resolution of the issue will control "numerous other cases,' "

c) '[t]he Government ... has a direct interest in the availability of a federal forum to vindicate its own administrative action.' "

*Inspired Development Group, LLC,* 938 F.3d at 1364 (quoting *NeuroRepair, Inc.,* 781 F.3d at 1345 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 700 (2006); *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,* 545 U.S. 308, 315 (2005))).

### *a. Is a Pure Issue of Federal Patent Law Dispositive of the Case?*

Plaintiff argues that whatever federal patent issue is raised in the failure to pay royalties claim will not entirely dispose of this lawsuit because the other state claims can be resolved without determining patent issues. The Court agrees with Plaintiff and determines that this factor does not support substantiality. [5]

### *b. Will the Court's Resolution of the Federal Patent Law Issues Control Numerous Other Cases?*

Plaintiff argues that the resolution of the patent issue would not control numerous other federal courts because, "[t]o the extent this case raises any question of patent law, it would arise as a 'hypothetical analysis' of an 'embedded patent issue,' (i.e., STC.UNM's breach of contract claim could involve a 'case within a case' analysis of patent infringement)." (Doc. 26) at 16. Plaintiff asserts that "[a]ny determination made by the state court with respect to issues of patent law would be limited to the parties of this immediate suit and would have no binding preclusive effect upon any other potential third-party infringer of [Plaintiff's] patents." *Id.*

Defendants argue, on the other hand, that "Plaintiff's royalty claim requires interpretation of the scope and validity of live patents that would trigger past and future royalty obligations for Quest and other parties practicing the patents." (Doc. 42) at 12. Defendants note that "the License Agreement here is non-exclusive, meaning others may face infringement suits based on the same patents." *Id.* at 13. Defendants also cite *Jang v. Bos. Sci. Corp.* to support it substantiality argument. 767 F.3d 1334 (Fed. Cir. 2014).

The Court begins its analysis of whether the resolution of the patent issues will control numerous other cases with an examination of *Jang.* In *Jang,* the plaintiff "brought suit in federal court for breach of contract and other various state law claims" on the basis of diversity jurisdiction and alleged failure to pay royalties. *Id.* at 1335. Like this case, to resolve the alleged failure to pay royalties claim would require a patent infringement and validity determination under relevant provisions of the license agreement, provisions similar to the ones at issue in this License Agreement. *Id.* at 1337 (noting that "[i]n addition to infringement, the court may be called upon to determine the extent to which validity is made relevant to the resolution of the breach-of-contract claim by the language of the contract itself"). After denying a motion for summary judgment, the district court certified an interlocutory appeal to the Federal Circuit. *Id.* at 1336. The Federal Circuit ordered the parties to address the issue of jurisdiction in light of *Gunn* and whether to transfer the interlocutory appeal to the Ninth Circuit. *Id.* at 1335.

**\*7** The Federal Circuit held that the embedded patent law issues were not "entirely backward-looking nor hypothetical." *Id.* at 1337. Moreover, the Federal Circuit concluded that resolving the patent issue would "raise the real world potential" of other conflicting patent rulings. *Id.* The Federal Circuit explained:

Under disputes like the one at issue here in which resolution of the contract claim itself requires resolution of underlying issues of infringement, there exists the possibility that the patentee would file suits alleging infringement by others and may even be contractually obligated to do so. These suits have the potential of conflicting rulings particularly as to validity. Here, where suit was filed in federal court based on diversity of citizenship, the potential for inconsistent judgments affecting not only the parties to this dispute but other parties who might be

sued in separate actions for infringement is particularly significant. Permitting regional circuits to adjudicate questions of patent validity, for example, could result in inconsistent judgments between a regional circuit and the Federal Circuit, resulting in serious uncertainty for parties facing similar infringement charges before district courts within that regional circuit. Maintaining Federal Circuit jurisdiction over such contractual disputes to avoid such conflicting rulings is important to "the federal system as a whole" and not merely "to the particular parties in the immediate suit." *Gunn,* 133 S.Ct. at 1066.

*Id.* at 1337-38 (footnote omitted). The Federal Circuit, therefore, declined to transfer the case to the Ninth Circuit. *Id.* at 1335.

*Jang*, however, is significantly distinguishable from the alleged "state-federal conflict here." *Inspired Development Group, LLC,* 938 F.3d at 1365. First, "[t]he analysis in *Jang* took place entirely between federal courts" and "diversity jurisdiction was undisputed." *Id.* Second, "the reasoning in *Jang* turned on the *system-wide* conflict that could arise in the federal courts if regional circuits reached different conclusions about validity." *Id.* "Given the 'serious uncertainty' of whether a district court would follow its regional circuit or the federal circuit, such conflicts raised 'substantial concerns for the federal system.'" *Id.* (citation omitted). However, in this case, "[t]he risk of such conflict from state courts ... is remote." *Id.*

Congress ensured the development of uniform patent law "by vesting exclusive jurisdiction over actual patent cases in the federal district courts and exclusive appellate jurisdiction in the Federal Circuit." *Gunn,* 568 U.S. at 261-62. "In resolving the nonhypothetical patent questions those cases present, the federal courts are of course not bound by state court case-within-a-case patent rulings." *Id.* at 262. Accordingly, such a state court decision "will not stand as binding precedent for any future patent claim; it will not even affect the validity of [the] patent." *Id.* at 264. The Supreme Court went on to state:

> But even assuming that a state court's case-within-a-case adjudication may be preclusive under some circumstances, the result would

be limited to the parties and patents that had been before the state court." Such "fact-bound and situation-specific" effects are not sufficient to establish federal arising under jurisdiction.

**\*8** *Id.* at 263. Hence, even if a license agreement is non-exclusive, a state court's case-within-a-case ruling affects only the parties and patents before it. Applying these legal principles to the instant case, the Court concludes that the resolution of the patent issues, whether hypothetical or not, will not control numerous other courts. Thus, this second factor does not support substantiality.

### *c. Does the Government Have a Direct Interest in the Availability of a Federal Forum to Vindicate its own Administrative Action?*

Plaintiff argues that "the federal government has no 'direct' interest in a contract dispute between private parties." (Doc. 26) at 17. On the other hand, Defendants argue that "[t]he federal interest in a uniform interpretation of [the patent issues] is strong." (Doc. 42) at 12. However, "[g]iven the 'fact bound' nature of the embedded patent law issues in this suit, the 'government interest in having any single case of patent infringement heard in a federal forum is limited.'" *Inspired Development Group, LLC,* 938 F.3d at 1368-69 (citation omitted). Moreover, Defendants' "vague" and general assertion of a direct federal interest in this dispute does not establish this last substantiality factor. *See NeuroRepair, Inc.,* 781 F.3d at 1347 (holding that "vague assertions, which do not contain citations to authority, do not convincingly establish" that government has "direct interest" in outcome of dispute "between private parties" related to state claims).

In sum, Defendants have not shown by a preponderance of the evidence that the above three substantiality factors, on balance, demonstrate that the failure to pay royalties claim presents "substantial" federal patent law issues.

#### 4. Are the Patent Law Issues Capable of Resolution in Federal Court Without Disrupting the Federal-State Balance Approved by Congress?

Plaintiff argues that finding a federal question premised on a breach of contract claim implicating a "run-of-the-mill" patent infringement or validity issue would disrupt the federal-state balance approved by Congress. (Doc. 26) at 18. Defendants argue that resolving the patent infringement and validity issues in federal court does not disrupt the federal-state balance because states have no interest in interpreting federal patent law. (Doc. 42) at 14 (citing unpublished federal district court cases). Defendants essentially argue that "[a]ny time ... a state law claim 'necessarily raises' an embedded patent infringement or invalidity question, federal question jurisdiction would lie." *Inspired Development Group, LLC*, 938 F.3d at 1369. Such an argument, however, "would undoubtedly impact the wider balance between state and federal courts" because it would "sweep" numerous state contract claims involving "run-of-the mill question[s] of infringement or validity" into federal court. *Id.* In addition, as Plaintiff observes, Defendants do not address the State of New Mexico's interest in deciding contract claims, albeit, contract claims with embedded patent law issues. For the above reasons, the Court concludes that Defendants have failed to show by a preponderance of the evidence that the patent law issues are capable of resolution in federal court without disrupting the federal-state balance approved by Congress. And having failed to do so, Defendants have not shown that the failure to pay royalties claim arises under federal patent law. Consequently, the Court lacks federal jurisdiction to hear this case and will remand this matter to state court.

#### C. Whether to Award Plaintiff Attorneys' Fees and Costs

*9 Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Garrett v. Cook*, 652 F.3d 1249, 1254 (10th Cir. 2011) (citation omitted). Consequently, "the removing party's intent is irrelevant; in fact, the Court 'may award fees even if removal is made in subjective good faith.'" *Martinez v. El Paso Corp.*, 2011 WL 3606813, at

*3 (W.D. Tex.) (quoting *Valdes v. Wal–Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000)); *see also Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 322 (10th Cir. 1997) (holding that "district court does not have to find that the state court action has been removed in bad faith as a prerequisite to awarding attorney fees and costs under § 1447(c)").

Plaintiff argues that Defendants' removal lacks an objectively reasonable basis because their "argument is entirely premised on arguments that were raised by the appellees in *Inspired Development Group[, LLC]* and expressly rejected in a precedential decision by the Federal Court." (Doc. 43) at 11. Plaintiff further argues that the removal was "an attempt to delay the state court proceedings and to burden [Plaintiff] with additional unnecessary costs." *Id.* at 11-12.

The Court finds that Defendants did not unreasonably distinguish *Inspired Development Group, LLC* from this case on the facts: *Inspired Development Group, LLC* primarily concerned an unjust enrichment claim while in this case, Plaintiff raises a breach of contract claim premised on a failure to pay royalties. Nonetheless, the Court did not rely on the analysis of the facts in *Inspired Development Group, LLC* to decide the Motion to Remand. Instead, the Court relied on its explanation of relevant legal principles.

Moreover, the Court finds that the fact Defendants supported their argument with legal authority and the issues were "not clear-cut" suggests that Defendants had an objectively reasonable basis to file the second Notice of Removal. *See Tajran v. Estate of McDonald*, 2020 WL 256209, at *10 (S.D. Cal.) (denying Section 1447(c) request for attorney's fees because "[s]ome authority supports Defendants' position, and Plaintiffs' remand motion raises issues that are not clear-cut"). Notably, the Court ruled in Defendants' favor by concluding that the second Notice of Removal is not procedurally barred and that the failure to pay royalties claim necessarily raises actually disputed issues of patent law. Plaintiff, thus, did not prevail on all of its arguments in support of remand.

Furthermore, Plaintiff's contention that Defendants removed this case to delay the state court case and to burden Plaintiff with additional costs is essentially an accusation that Defendants removed the case in bad faith. As stated above, motivation is irrelevant in deciding whether to award

attorney's fees and costs under  Section 1447(c). For the foregoing reasons, the Court determines that Defendants' second removal was objectively reasonable and that an award of  Section 1447(c) attorneys' fees and costs is not warranted.

IT IS ORDERED that

1. Plaintiff STC.UNM'S Motion to Remand (Doc. 26) is granted;

2. the Court will remand this matter to the Second Judicial District Court, Bernalillo County, State of New Mexico; and

3. Plaintiff's request for an award of attorneys' fees and costs is denied.

**All Citations**

Slip Copy, 2020 WL 4734899

## Footnotes

1    A "valid claim" is "a claim included among the Licensed Patents, which claim shall not have been irrevocably abandoned or held invalid in an unappealable decision of a court or other authority of competent jurisdiction." (Doc. 40) at 4, ¶ 1.9.

2    Section 1331 provides for federal question jurisdiction;  Section 1332 provides for federal diversity jurisdiction; Section 1338 provides for federal jurisdiction over actions arising under federal patent law; and Section 1454 provides for the removal of actions which assert a claim for relief arising under federal patent law.

3    The Court notes that Plaintiff does not dispute that the failure to pay royalties claim contains embedded patent law issues.

4    The Court observes that "where a contract is divisible so that full performance of one part may be made by both parties without affecting the subsequent performance or right of performance as to the remainder, recovery may be had for breach of a divisible part, and the injured party may proceed on each cause of action for such a breach separately." 15 *Williston on Contracts* § 45:19 (4th ed.).

5    Defendants do not present any argument on this first substantiality factor.

---

**End of Document**                                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit 15

2018 WL 9537931
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

REMBRANDT DIAGNOSTICS, LP, Plaintiff,

v.

INNOVACON, INC., Defendant.

Case No.: 16-cv-0698 CAB (NLS)

Signed 03/23/2018

**Attorneys and Law Firms**

Boris Zelkind, Duane Morris LLP, San Diego, CA, Jared Christian Bunker, Kendall M. Loebbaka, Joseph F. Jennings, Douglas Glen Muehlhauser, &, Knobbe Martens Olson and Bear LLP, Irvine, CA, Jonathan Bachand, Knobbe, Martens, Olson & Bear, LLP, Washington, DC, for Plaintiff.

Amanda Jean Hollis, Pro Hac Vice, Daniel Patrick Gross, Pro Hac Vice, James F. Hurst, Pro Hac Vice, Kirkland & Ellis LLP, Brent P. Ray, Pro Hac Vice, King & Spalding LLP, Chicago, IL, David J. Noonan, Noonan Lance Boyer & Banach LLP, San Diego, CA, Jason M. Wilcox, Pro Hac Vice, Kirkland & Ellis LLP, Washington, DC, Sarah K. Tsou, Pro Hac Vice, Kirkland & Ellis LLP, New York, NY, for Defendant.

## ORDER ON SUBJECT MATTER JURISDICTION

Hon. Cathy Ann Bencivengo, United States District Judge

 **\*1**  The matter before the Court is a breach of contract action brought by Plaintiff Rembrandt Diagnostics, LP against Defendant Innovacon, Inc. Subject matter jurisdiction was alleged based on diversity jurisdiction. 28 U.S.C. § 1332. The parties have notified the Court that there is not in fact complete diversity and therefore jurisdiction is not proper under section 1332. [Doc. No. 205.] Both parties however contend that this Court still has jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) because the resolution of the state law contract claim requires a determination of patent infringement and there are patent law counterclaims for noninfringement and invalidity.

Rembrandt sues Innovacon for breach of a patent licensing agreement. Under the terms of the agreement Innovacon

is licensed to make and sell products that would "infringe any claim of any Licensed Patents absent [the] Agreement." Rembrandt alleges that Innovacon sold products that are covered by the claims of one or more of the licensed patents and failed to pay the required royalties thereby breaching the contract.

Although Rembrandt's claim is a state law claim, Rembrandt's right to relief necessarily depends a question of patent law. Under 28 U.S.C. § 1338(a), district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents. To determine if Defendant's sales are subject to the contract, there must first be a determination of whether the products Defendant sold would otherwise infringe the patents at issue. This case, therefore, comes within that "special and small category of cases" in which there is federal jurisdiction over a state law claim. *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013). "A federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disruption the federal-state balance approved by Congress." *Id.* at 1065. *See U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000) (breach of contract claim arose under the patent laws because the claim required a court to interpret the patents and determine whether the accused product infringed the patents); *Jang v. Boston Sci. Corp.*, 767 F.3d 1334, 1336 (Fed. Cir. 2014) (right to relief on the contract claim as asserted in the complaint depended on whether accused product would have infringed Jangs's patents). [1]

---

[1]
 The jurisdictional analysis in both *U.S. Valves* and *Jang* involved whether appellate jurisdiction was properly with the Federal Circuit, under 28 U.S.C. § 1295, or a regional circuit court. In both matters, the district courts had diversity jurisdiction over the asserted state contract claims. *U.S. Valves*, 212 F.3d at 1371 (Dray removed to district court based on diversity); *Jang*, 767 F.3d at 1335 (Jang brought suit in federal court based on diversity of citizenship). The jurisdictional analysis in both matters however reference 28 U.S.C. § 1338, which vests jurisdiction in district courts for matters arising under patent law. The implication is that even if these parties did not have diversity jurisdiction, they could have brought these matters in district court under 28 U.S.C. § 1338 as they necessarily required interpretation of the scope of the patents and whether the accused products were

Case 4:23-cv-00730   Document 59   Filed on 05/24/23 in TXSD   Page 43 of 55

Rembrandt Diagnostics, LP v. Innovacon, Inc., Not Reported in Fed. Supp. (2018)

covered by the patents to determine whether there was any right to relief on the contract claim.

**\*2** Further Innovacon asserts that jurisdiction is proper in federal court based on its counterclaim for patent invalidity and noninfringement. Section 19 of the America Invents Act ("AIA"), amended 28 U.S.C. § 1338 (a) to include that, "No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patent, plant variety protection, or copyrights." *See Vermont v. MPHJ Tech Inv., 803 F. 3d 635, 644 (Fed. Cir. 2015)* (referred to as the "Holmes Group fix" the amendment is intended to provide federal courts with a broader range of jurisdiction over claims arising under the patent laws even when asserted in counterclaims). As a consequence Innovacon's compulsory counterclaim for the invalidity and noninfringement of the

Rembrandt patents that are the subject of the contract claim could not be heard in state court and give rise independently to federal jurisdiction.

Although there is not complete diversity between the parties in this matter, the Court finds, based on the above analysis, that this Court has subject matter jurisdiction over the claims and counterclaims.

It is **SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 9537931

---

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit 16

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG UK, LTD., REEDHYCALOG, LP, and NATIONAL OILWELL VARCO, LP, <br><br>     *Plaintiffs/Counter-Defendants*, <br><br> v. <br><br> SCHLUMBERGER TECHNOLOGY CORP., SMITH INTERNATIONAL, INC., ULTERRA DRILLING TECHNOLOGIES, L.P., ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC., VAREL INTERNATIONAL ENERGY SERVICES, INC., and VAREL INTERNATIONAL INDUSTRIES, L.P., <br><br>     *Defendants/Counter-Plaintiffs.* | Civil Action No. 4:23-cv-00730 |

<u>**DECLARATION OF JAMES JOHN LOMEO**</u>

I, James John Lomeo, declare as follows:

1.    I am an attorney at Kirkland & Ellis LLP, located at 401 Congress Avenue, Suite 2500, Austin, Texas 78701, counsel for Defendants Schlumberger Technology Corp., Smith International, Inc., Ulterra Drilling Technologies, L.P., and Rockbit International Subsidiaries, LLC, in the above-captioned action, and I am duly admitted to practice law in the State of Texas.

2.    I am over the age of eighteen and suffer from no mental or physical disabilities that would render me incompetent to testify in this matter. I have knowledge of the facts set forth herein, and if called to testify as a witness thereto, could do so completely under oath.

3.     Attached hereto as **Attachment 1** is a true and correct copy of news articles and press releases, which are available as of today at the following links:

(i)    https://www.law360.com/articles/57725/baker-hughes-reedhycalog-reach-100m-settlement

(ii)   https://investors.nov.com/news-releases/news-release-details/reedhycalog-settlement-0

(iii)  https://investors.nov.com/news-releases/news-release-details/reedhycalog-settlement

(iv)   https://www.rigzone.com/news/oil_gas/a/73775/nov_announces_reedhycalog_settlement/

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.  This declaration was executed in Austin, Texas on May 23, 2023.

*/s/ James John Lomeo*
James John Lomeo

# Attachment 1

≡  LAW360®

News, cases, companies, firms  🔍 ▾

INTELLECTUAL PROPERTY   SECURITIES   BANKRUPTCY   COMPETITION   EMPLOYMENT   WHITE COLLAR   LEGAL INDUSTRY   ACCESS TO JUSTICE   LAW360 UK   PULSE   ‖   SEE ALL SECTIONS   ‖   NEWSLETTERS

# Baker Hughes, ReedHycalog Reach $100M Settlement

*By Ryan Davis*

Law360 (May 29, 2008, 12:00 AM EDT)   Baker Hughes Oilfield Operations Inc., one of three defendants in a patent infringement lawsuit over drilling equipment, has reached a $100 million settlement with plaintiff ReedHycalog UK Ltd.

Under the terms of the deal, announced last week, the two companies agreed to cross license the disputed technologies. Baker Hughes will pay ReedHycalog $70 million in royalties for prior use of the patented technologies and will pay a minimum of $30 million in royalties for future use.

At the same time, ReedHycalog has agreed to pay unspecified royalties to license some of Baker Hughes' patented technologies.

As a result of the settlement, the claims against Baker Hughes in an ongoing lawsuit in the U.S. District Court for the Eastern District of Texas have been dismissed, and Baker Hughes has dismissed all of its counterclaims against ReedHycalog.

The settlement does not affect Halliburton Energy Services Inc. and U.S. Synthetic, the other two defendants in the case that is currently being prepared for trial.

ReedHycalog, a subsidiary of Grant Prideco Inc., filed its complaint in May 2006, accusing the defendants of making and selling drill bits and cutters that infringe four of its patents. The patents at issue deal with removing catalyzing material from the drill bit cutter while maintaining its strength.

Drill bit cutters, which are usually made of synthetic polycrystalline diamond, can break down because of the high temperatures generated by friction. A process called leaching can increase the thermal resistance of the cutter by removing catalyzing material, but that can adversely impact the cutter's strength.

The patents at issue are U.S. Patent Numbers 6,861,098; 6,861,137; 6,878,447; and 6,601,662, titled "Polycrystalline diamond partially depleted of catalyzing material" and "Polycrystalline diamond cutters with working surfaces having varied wear resistance while maintaining impact strength."

ReedHycalog is represented in the suit by Williams Morgan & Amerson PC, the Ward & Smith Law Firm and Wong Cabello Lutsch Rutherford & Brucculeri PC.

Baker Hughes is represented by Parsons Behle & Latimer, Dow Lohnes PLLC and Ireland Carroll & Kelley.

The case is ReedHycalog UK Ltd. et al. v. Baker Hughes Oilfield Operations Inc. et al., case number 06 222, in the U.S. District Court for the Eastern District of Texas.

-Additional reporting by Ben James

*For a reprint of this article please contact reprints@law360.com*

**0 Comments**

Sign In To Comment

## Useful Tools & Links

- Add to Briefcase
- Save to PDF & Print
- Rights/Reprints
- Editorial Contacts

### Related Sections
Energy
Intellectual Property
Texas

### Law Firms
Cooley LLP
Parsons Behle
Ward Smith & Hill
Williams Morgan

### Companies
Baker Hughes Co.
Halliburton Co.

### Patents
6,861,098 - Polycrystalline diamond partially depleted of catalyzing material
6,861,137 - High volume density polycrystalline diamond with working surfaces depleted of catalyzing material
6,601,662 - Polycrystalline diamond cutters with working surfaces having varied wear resistance while maintaining impact strength
6,878,447 - Polycrystalline diamond partially depleted of catalyzing material

### 2023 Titans of the Plaintiffs Bar

**Law360 Reveals Titans Of The Plaintiffs Bar**

In the past year companies like JUUL, Capital One and Southern California Edison have settled for millions if not billions of dollars in litigation that was high-profile and often groundbreaking in its impact on the law itself. Such cases and many others — which involved opioids sexual harassment kickbacks and data breaches — were led by attorneys whose accomplishments helped them earn recognition as Law360's Titans of the Plaintiffs Bar for 2023.

### Top 10 trending in Energy

1  NJ Says High Court Backs Remand Of Climate Change Suit
2  US Sets Over 300 New Restrictions On Russia
3  EPA Proposes Rule For Legacy Coal Ash Disposal Sites
4  DC Circ Ruling On LNG Project Won't Fix FERC Climate Split
5  Mexican Law Amendment Could Stifle Mining Activity
6  Calif Gov Unveils Plan To Speed Up Clean Energy Projects
7  Courthouse Door Now Open To FERC Enforcement Challenges
8  Ball Didn't Break Deal With Denver Co., Jury Finds
9  Minorities, Women Still Lag Behind In Law School Admissions
10 Rollins' 'Egregious' Abuse Of Power Broke Law, Reports Say

Resource Library | Explore Law360



# ReedHycalog Settlement

December 8, 2008 at 11:20 AM EST

HOUSTON--(BUSINESS WIRE)--Dec. 8, 2008--National Oilwell Varco, Inc. (NYSE:NOV) announced today that it has reached a license agreement with Dowdco Bits, LLC. As part of the settlement, NOV and Dowdco Bits, LLC have agreed to a license regarding the use of shallow leaching diamond cutter technology belonging to its ReedHycalog division. The shallow leaching diamond cutter technology is a part of ReedHycalog's broader portfolio of patented diamond technologies. As part of the agreement, Dowdco Bits has agreed to pay ReedHycalog a royalty of 9.5% on worldwide sales of products using this technology. ReedHycalog designs, manufactures and sells premium roller cone and fixed cutter drill bits, drilling tools and provides other specialty drilling services for the oilfield.

PDF ⬇

National Oilwell Varco is a worldwide leader in the design, manufacture and sale of equipment and components used in oil and gas drilling and production operations, the provision of oilfield services, and supply chain integration services to the upstream oil and gas industry.

CONTACT: National Oilwell Varco, Inc.Clay Williams, 713-346-7606 Clay.Williams@nov.com Source: National Oilwell Varco, Inc.

RSS Feeds    E-mail Alerts

NOV Live

NOV Today Podcast

Our Business Units

Our Company Structure

Sustainability

Patents

Tools

Training

Search for Jobs

Working at NOV

Events

Investor Contacts

News Releases

Presentations

Quarterly Results

SEC Filings

Shareholder Information

Stock Information

Privacy Notice | Terms of Use | Policies | Trust Center | Media Kit

© 2023 NOV Inc. All Rights Reserved.



# ReedHycalog Settlement

October 31, 2008 at 4:02 PM EDT

HOUSTON--(BUSINESS WIRE)--Oct. 31, 2008--National Oilwell Varco, Inc. (NYSE:NOV) announced today    PDF 📄
that it has reached a license agreement with Encore Bits regarding the use of shallow leaching diamond
cutter technology belonging to its ReedHycalog division. The shallow leaching diamond cutter technology is a part of the broader
portfolio of diamond technologies which ReedHycalog sells under its TReX(R) and Raptor(R) brands. As part of the agreement, Encore
has agreed to pay ReedHycalog a royalty of 9.5% on worldwide sales of products using this technology. ReedHycalog designs,
manufactures and sells premium roller cone and fixed cutter drill bits, drilling tools and provides other specialty drilling services for
the oilfield.

National Oilwell Varco is a worldwide leader in the design, manufacture and sale of equipment and components used in oil and gas
drilling and production operations, the provision of oilfield services, and supply chain integration services to the upstream oil and gas
industry.

```
CONTACT: National Oilwell Varco, Inc., Houston
         Clay Williams, 713-346-7606
         Clay.Williams@nov.com

SOURCE: National Oilwell Varco, Inc.
```

📶                     🔔
RSS Feeds          E-mail Alerts



| About Us | Products and Services | Careers | Investors |
|----------|----------------------|---------|-----------|
| Industry Events | Brands | Diversity | Annual Results |
| News | Capabilities and Industries | Early Career Development | Company Overview |

NOV Live

NOV Today Podcast

Our Business Units

Our Company Structure

Sustainability

Document Library

Patents

Tools

Training

Our Employees

Search for Jobs

Working at NOV

Corporate Governance

Events

Investor Contacts

News Releases

Presentations

Quarterly Results

SEC Filings

Shareholder Information

Stock Information

Privacy Notice  |  Terms of Use  |  Policies  |  Trust Center  |  Media Kit

© 2023 NOV Inc. All Rights Reserved.



RIGZONE

SEARCH JOBS >>    CREATE ACCOUNT    SIGN IN

| OIL & GAS JOBS ▾ | OIL & GAS NEWS ▾ | EVENTS | TRAINING | EQUIPMENT | SOCIAL | Recruitment | Advertise |

WTI Crude  $71.55  -0.43%    Brent Crude  $75.58  -0.37%    Natural Gas  $2.59  -0.27%

SUBSCRIBE    SEARCH ARTICLES

**NEWS**

**NOV Announces ReedHycalog Settlement**

National Oilwell Varco  |  Monday, March 09, 2009

Tweet    in Share    reddit this!

National Oilwell Varco has reached a license agreement with NorthBasin
Energy Services, Inc. in Canada regarding the use of shallow leaching
diamond cutter technology belonging to its ReedHycalog division. The
shallow leaching diamond cutter technology is a part of ReedHycalog's
broader portfolio of patented diamond technologies. ReedHycalog designs,
manufactures and sells premium roller cone and fixed cutter drill bits, drilling
tools and provides other specialty drilling services for the oilfield.

National Oilwell Varco is a worldwide leader in the design, manufacture and
sale of equipment and components used in oil and gas drilling and
production operations, the provision of oilfield services, and supply chain
integration services to the upstream oil and gas industry.

Tweet    in Share    reddit this!



SUBSCRIBE TO OUR NEWSLETTER
**Join 700k Members Daily!**

Enter your email address

SUBSCRIBE    Our Privacy Pledge

**OIL & GAS JOB SUGGESTION**

| | |
|---|---|
| Basic First Aid | Mechanical Engineering Entry L... |
| Construction Supervisor Electr... | |
| Drilling Procurement | Painting Job |
| | Printing |

**RELATED COMPANIES**

Company: NOV Inc.                                    more info

NOV Wins Barossa Submerged Turret Contract

Schlumberger and NOV Want Faster Automated Drilling Adoption

Which Major OFS Player Seems Most Bullish About 2021?

**RELATED ARTICLES**

More Company Operations articles

**MOST POPULAR ARTICLES**

| LAST 24 HOURS | 7 DAYS | MONTH |

USA Oil and Gas Supported Nearly 11MM Jobs

Net-Zero World by 2050 Unlikely: ExxonMobil

Oil Market Watcher Talks Drama Filled, Mouth Gaping Week

UK Awards First Carbon Storage Licenses

Leading Organizations Create North Sea Mental Health Charter

South Africa Braces for More Frequent Blackouts this Winter

Startup of Australian Gas Project Delayed Due to Labor Shortage

Top Headlines: BMI Projects Gasoline Price Through to 2026

Oil Falls Slightly Friday but Posts Weekly Gain

Saipem Bags Pair of Deals Worth $850MM

**Energy Prices**    Charts

| INDEX | PRICE | % | TIME(EDT) |
|---|---|---|---|
| WTI Crude | $71.55 | -0.43 | 4:59 PM |
| Brent Crude | $75.58 | -0.37 | 4:59 PM |
| Natural Gas | $2.59 | -0.27 | 4:59 PM |

May 21, 2023 2:58 PM EDT

**SITE LINKS**

| | |
|---|---|
| Home | News |
| Create Account | Newsletter |
| Jobs | Recruitment |
| Search Jobs | Advertise |
| Candidate Hub | Conversion Calculator |
| Candidate FAQs | Site Map |

About Rigzone
Contact Us
Community Guidelines
Terms of Use
Privacy Policy
GDPR Policy

**FOLLOW RIGZONE**

 

**RSS Feeds**

Candidate FAQs

Network FAQs

Rigzone Social Network

CCPA Policy

Copyright © 1999 - 2023 Rigzone.com, Inc.