THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG UK, LTD., REEDHYCALOG, LP, NATIONAL OILWELL VARCO, LP, | § § § § | |
| *Plaintiffs/Counter-Defendants,* | § § | |
| v. | § § | Civil Action No. 4:23-cv-00730-ASH-SSS |
| SCHLUMBERGER TECHNOLOGY CORP., SMITH INTERNATIONAL, INC.; ULTERRA DRILLING TECHNOLOGIES, L.P., ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC.; and VAREL INTERNATIONAL ENERGY SERVICES, INC., VAREL INTERNATIONAL INDUSTRIES, L.P., | § § § § § § § § § § | |
| *Defendants.* | § | |

**SCHLUMBERGER TECHNOLOGY CORP.'S AND SMITH INTERNATIONAL, INC.'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendants Schlumberger Technology Corp. ("Schlumberger") and Smith International, Inc. ("Smith") (collectively "Defendants") file this Second Amended Answer and Affirmative Defenses ("Answer") to Plaintiffs Grant Prideco, Inc. ("Grant Prideco"), ReedHycalog UK, Ltd., ReedHycalog, LP (both ReedHycalog entities together, "ReedHycalog"), and National Oilwell Varco, LP's ("NOV") (collectively, "Plaintiffs") Second Amended Petition ("Petition"), and Second Amended Counterclaims.

**INTRODUCTION**

For nearly two decades Plaintiffs had a monopoly on the right to make, use and sell certain polycrystalline diamond cutters having leached surfaces ("Leached Cutters"). By law that monopoly is now over. Beginning in 2001, Plaintiffs filed for and obtained 12 United States patents directed to Leached Cutters. These core patents were a step change in the industry, and

Schlumberger and Smith obtained licenses to use them.  For more than a decade, Schlumberger and Smith paid royalties to Plaintiffs per their agreements.  In October 2021, however, the last of these 12 patents expired, and Schlumberger and Smith accordingly stopped paying Plaintiffs. Now, because these 12 patents have expired, any new entrant to the industry is free to make, use, and sell Leached Cutters **without a license and without owing Plaintiffs a cent**.  Nevertheless, Plaintiffs assert that the Defendants' royalty obligations under their licenses do not expire until 2031, which is **nearly a decade after the expiration of the 12 core patents**.  Specifically, Plaintiffs assert that other patents exist—which Schlumberger and Smith do not practice—one of which Plaintiffs allege does not expire until January 2031.

Plaintiffs' claims fail for multiple reasons.  First, its interpretation of its licenses with the Defendants is incorrect.  Any royalty obligations ended in October 2021 when the last of the 12 core patents expired.  Second, the suggestion that royalty obligations continue based on patents other than the 12 core patents, which are not used by the Defendants, is unlawful under long established Supreme Court law.  *Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964).  Any attempt by Plaintiffs to extend its licenses to collect royalties based on patents that Schlumberger and Smith do not practice is unlawful per se and unenforceable.

### ANSWER

Defendants now answer the Petition of Plaintiffs and state their affirmative defenses and counterclaims against Plaintiffs as follows:

## NATURE OF THE CASE[1]

The unnumbered paragraphs on pages 1–2 of the Petition under the sub-heading, <u>Nature of the Case</u>, state legal conclusions and Plaintiffs' characterization of their own claims, to which no response is required.  To the extent a response is required, the paragraphs are denied.

## DISCOVERY CONTROL PLAN

1.      Discovery is intended to be conducted under Level 3 in accordance with Rule 190 of the Texas Rules of Civil Procedure.

**ANSWER:**  Denied.  The Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of Texas, and the Civil Procedures of Judge Hanen will govern discovery in this case.

*Plaintiffs*

2.      Plaintiff Grant Prideco, Inc. is a limited partnership formed under Delaware law, registered in Texas as a foreign limited partnership, and has a principal place of business in Harris County, Texas.

**ANSWER:**  Upon information and belief, based on facts alleged in Plaintiffs' Complaint, admitted.

3.      Plaintiff ReedHycalog UK, Ltd. Is a limited partnership formed under the laws of the United Kingdom, and has a principal place of business in Gloucestershire, England.

**ANSWER:**  Upon information and belief, based on facts alleged in Plaintiffs' Complaint, admitted.

4.      Plaintiff ReedHycalog, LP is a limited partnership formed under the laws of Delaware, registered in Texas as a foreign limited partnership, and has a principal place of

---

[1]      The headings and subheadings in the Second Amended Petition are reproduced herein for the convenience of the reader.  To the extent such headings include or infer allegations, they are denied.

business in Harris County, Texas. Collectively, Plaintiffs ReedHycalog UK, Ltd. and ReedHycalog UK, Ltd. are referred to herein as "ReedHycalog."

**ANSWER:** Upon information and belief, based on facts alleged in Plaintiffs' Complaint, admitted.

5.     Plaintiff National Oilwell Varco, LP ("NOV") is a limited partnership formed under the laws of Delaware, registered in Texas as a foreign limited partnership, and has a principal place of business in Harris County, Texas.

**ANSWER:** Upon information and belief, based on facts alleged in Plaintiffs' Complaint, admitted.

*Schlumberger*

6.     Defendant Schlumberger Technology Corporation ("Schlumberger") is a Domestic For-Profit Corporation and has a principal place of business in Harris County, Texas. Schlumberger may be served with process by serving its registered agent Capitol Corporate Services, Inc. at 206 East 9th Street, Suite 1300, Austin, Texas 78701.

**ANSWER:** Defendants admit that Schlumberger is a United States for profit corporation and that it may be served with process by serving its registered agent Capitol Corporate Services, Inc. at 206 East 9th Street, Suite 1300, Austin, Texas 78701.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

7.     Defendant Smith International, Inc. ("Smith") is a Delaware corporation and has a principal place of business in Harris County, Texas.  Smith may be served with process by serving its registered agent Capitol Corporate Services, Inc. at 206 East 9th Street, Suite 1300, Austin, Texas 78701.

**ANSWER:**  Defendants deny that Smith is a Delaware corporation.  Smith is a Delaware Limited Liability Company that is now known as Smith International, LLC.

*Ulterra*

8.      Defendant Ulterra Drilling Technologies. L.P. is a Texas limited partnership having a place of business at 420 Throckmorton St., Ste. 1110, Ft. Worth, TX 76102. It may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

9.      Defendant Rockbit International Subsidiaries, LLC. Is a Texas corporation, currently operating under the name Ulterra International Subsidiaries, LLC. It has a place of business at 201 Main Street, Suite 1660, Ft. Worth, TX 76102. It may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

*Varel*

10.      Defendant Varel International Energy Services, Inc. is a Delaware corporation having its principal place of business in Texas.  It may be served with process by serving its registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

11.      Defendant Varel International Industries, L.P. is a Delaware partnership having its

principal place of business in Texas.  It is registered to do business in Texas. It may be served

with process by serving its registered agent Corporation Service Company d/b/a/ CSC-Lawyers

Incorporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief about

the truth of the allegations in this paragraph and therefore deny the same.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction pursuant to Article V, Section 8, of the Texas

Constitution.   The amount in controversy exceeds the minimum jurisdictional limits of this

Court.

**ANSWER:**  Defendants deny that the 11th District Court of Harris County, Texas, has

jurisdiction over this matter.  Defendants state that the United States District Court for the

Southern District of Texas, Houston Division, has jurisdiction over this matter for at least the

reasons set forth in Defendants' Notice of Removal, including at Paragraphs 9–19, which are

incorporated by reference.  *See* Dkt. No. 1 (Notice of Removal) at ¶¶ 9–19.  Except as expressly

admitted, Defendants deny the allegations of this paragraph.

13.     Venue is proper in Harris County, Texas under Tex. Civ. Prac. & Rem. Code §

15.002(a)(1) and 15.020 (b).   All claims raised in this Second Amended Petition concern

disputes between the parties that arise out of and/or relate to valid and existing contracts in which

each Defendant agreed that the exclusive jurisdiction and venue for any action brought between

the parties that arises out of or relates to the contract shall be the courts sitting in Harris County,

Texas.  Moreover, all of a substantial part of the events and omissions giving rise to the claims

made the basis of this lawsuit occurred in Harris County, Texas.

**ANSWER:**  Defendants state that under 28 U.S.C. § 1441(a), venue for this removed

action is proper in the United States District Court for the Southern District of Texas, Houston

Division, because the 11th District Court of Harris County, Texas, where Plaintiffs' state court action was brought (*Grant Prideco, Inc., et al. v. Schlumberger Technology Corp., et al.*, bearing Cause Number 2022-28716), is located within the Southern District of Texas, Houston Division. Except as expressly admitted, Defendants deny the allegations of this paragraph.

## FACTUAL BACKGROUND

### ReedHycalog's Patent Leaching Technology

14.     Plaintiff ReedHycalog is in the drill bit business.  It has a long track record of developing revolutionary technology and obtaining patents related thereto.

**ANSWER:**  Defendants admit that ReedHycalog purports to be in the drill bit business and purports to have obtained patents.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

15.     Among others, ReedHycalog owns patents related to certain technology it developed that leaches cobalt out of polycrystalline diamond material (the "Leaching Technology").  The Leaching Technology is commonly used to improve the durability of polycrystalline diamonds (aka synthetic diamonds) mounted on the cutting surfaces of downhole tools, including drill bits, reamers, and hole openers.

**ANSWER:**  Defendants admit that leaching cobalt out of polycrystalline diamond material may be used to improve the durability of polycrystalline diamonds mounted on the cutting surface of downhole tools.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

### Grant Prideco's Acquisition of ReedHycalog from Schlumberger

16.     In or about 1998, Schlumberger acquired ReedHycalog.

**ANSWER:** Admitted.

17.     In 2002, Schlumberger sold ReedHycalog and its Leaching Technology to Grant

Prideco pursuant to the terms of a written Purchase Agreement dated October 25, 2002 (the "2002 Purchase Agreement").

**ANSWER:**  Defendants admit that Schlumberger sold ReedHycalog to Grant Prideco pursuant to the terms of the 2002 Purchase Agreement.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

18.    When Schlumberger sold ReedHycalog and its Leaching Technology to Grant Prideco, Schlumberger retained a limited royalty free license on certain kinds of downhole applications.  The terms and conditions of that royalty free license are expressly set forth in the 2002 Purchase Agreement and prohibit, for example, Schlumberger from using the Leaching Technology in connection with the manufacture, sale or distribution of (a) PDC Bits (i.e. drill bits with Leached Cutters) or (b) components thereof (i.e. Leached Cutters).  Stated differently, the 2002 Purchase Agreement prohibits Schlumberger from manufacturing, selling or renting any downhole tools that contain Leached Cutters.

**ANSWER:**  Defendants admit that Schlumberger retained a royalty free license in the 2002 Purchase Agreement and that the terms of that royalty free license are expressly set forth in the 2002 Purchase Agreement.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

19.    At various times following the 2002 sale, Schlumberger breached (and continues to breach) the terms of the limited royalty free license in the 2002 Purchase Agreement by using the Leaching Technology to manufacture, sell or rent downhole tools that contain Leached Cutters.

**ANSWER:**  Denied.

*Smith's 2006 License Agreement*

20.     In 2006, ReedHycalog and Grant Prideco entered a written agreement with Smith (the "2006 Smith License") that provided Smith a non-exclusive license to use the Leaching Technology on "Licensed Drill Bits," which the agreement expressly defined as including drill bits, bicenter bits, fixed blade reamers and hole openers.

**ANSWER:**  Defendants admit that in 2006 ReedHycalog and Grant Prideco entered into a written agreement with Smith and that the 2006 Smith License provided Smith a non-exclusive license.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

21.     In 2008, NOV acquired Grant Prideco and in so doing, also acquired ReedHycalog, ReedHycalog's Leaching Technology and the patent rights owned by ReedHycalog relating to such technology.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

*The License Agreements at Issue*

22.     In 2009, Plaintiffs entered into an addendum with Smith which supplemented, amended, and modified some of the terms of the "2006 Smith License."  This 2009 agreement is referred to herein as the "Smith License."

**ANSWER:**  Defendants admit that Smith entered into an agreement with Plaintiffs in 2009.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

23.     Also in 2009, Plaintiffs entered into separate license agreements with Schlumberger, Ulterra, and Varel under which Schlumberger, Ulterra, and Varel each received a non-exclusive license to use the Leaching Technology (referred to as the "Schlumberger License", the "Ulterra License" and the "Varel License").

**ANSWER:**   Admitted that Plaintiffs entered into a separate license agreement with Schlumberger with an effective date in 2009 and that under that license agreement Schlumberger received a non-exclusive license.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

24.     Collectively, the license agreements with Smith, Schlumberger, Ulterra and Varel are referred to herein as the "License Agreements."

**ANSWER:**  To the extent this paragraph includes or infers allegations, they are denied.

***The Schlumberger License Also Prohibits Selling Non-Licensed Tools with Leached Cutters***

25.     The Schlumberger License, like the 2002 Purchase Agreement, prohibits Schlumberger from using the Leaching Technology to manufacture, sell or rent unlicensed downhole tools with Leached Cutters.  Schlumberger also specifically agreed in its License Agreement to pay Plaintiffs a penalty equal to 70% of gross margin (as defined in the agreement) in connection with the non-inadvertent sale/rental of unlicensed tools with Leached Cutters.

**ANSWER:**  Denied.

26.     Each License Agreement contains royalty obligations based on the "Licensed RH Patents" – a phrase that is defined by the following common language:

> "Licensed RH Patents" ***means all U.S. patents and patent applications listed on Exhibit C*** and all foreign counterpart patents and patent applications, and all continuations, continuations-in-part, divisionals, reissues, reexaminations, and term extensions thereof. … ***Licensed RH Patents also includes any*** current or ***later-issued Licensor patent*** (i) ***having an independent claim relating to the Leaching of PCD elements or*** (ii) having a dependent claim relating to the Leaching of PCD elements, ***which was filed on or before the Effective Date of this Agreement*** or claims a priority date on or before the Effective Date of this Agreement. …[1] (emphasis added)
>
> **Petition Footnote 1**:  The Ulterra and Varel PCD Leaching Technology Licenses included additional language in their definitions of "Licensed RH Patents" not pertinent to the present claims.

**ANSWER:** Denied.

27.     Exhibit C to each License Agreement identifies a number of patents owned by Plaintiffs that relate to the Leaching Technology.   Each of the specifically listed patents constitute a "Licensed RH Patent" under the License Agreements.

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  To the extent any response is required, Defendants admit that Exhibit C to the Smith License and the Schlumberger License purports to identify a number of patents and patent applications that Plaintiffs purport to own.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Ulterra License and the Varel License and therefore deny the same.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

28.     Although not explicitly listed on Exhibit C to each License Agreement, U.S. Patent No. 7,568,534 ("the '534 Patent") is also a "Licensed RH Patent" because it is a continuation of a patent application listed on Exhibit C to each License Agreement; namely U.S. Patent Application Serial No. 11/163,323.  The '534 Patent expires on October 10, 2025.

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  To the extent any response is required, Defendants admit that the '534 Patent is not listed on Exhibit C to the Smith License and the Schlumberger License.  Defendants admit that the '534 Patent purports to be a continuation of U.S. Patent Application Serial No. 11/163,323.  Defendants admit that U.S. Patent Application Serial No. 11/163,323 is listed on Exhibit C to the Schlumberger License.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with

respect to the Ulterra License and the Varel License and therefore deny the same.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

29.     Likewise, U.S. Patent No. 8,721,752 ("the '752 Patent") is also a "Licensed RH Patent" because it includes at least one "independent claim relating to the Leaching of PCD elements" and was filed prior to the effective date of each License Agreement.  The '752 Patent expires on January 10, 2031.

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Ulterra License and the Varel License and therefore deny the same.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

***The Defendants Owe Royalties Based on Invoicing of "Licensed Drill Bits"***

30.     To provide a convenient method of fixing the business value of the privileges granted to Defendants under the License Agreements, and to avoid the necessity of the parties having a controversy as to whether each product offered by Defendants embodies any particular "Licensed RH Patent", the parties to each License Agreement adopted the approach of basing royalties on an agreed percentage of the licensee's sales of an identified class of product offerings.

**ANSWER:**  Defendants deny the allegations of this paragraph as to Schlumberger and Smith.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to Ulterra and Varel and therefore deny the same.

31.     Specifically, in consideration for the grant of the broad and expansive technology rights in the License Agreements, each Defendant agreed to pay royalties based on the net price

of "Licensed Drill Bits" invoiced during each reported quarter.  To that end, each License

Agreement includes the following common language:

> Beginning on the Effective date [*sic*] of this Agreement [Licensee] will owe ReedHycalog, on a quarterly basis, a go-forward royalty based on [Licensee's] Net Price of Licensed Drill Bits[2] invoiced on a worldwide basis to a third party customer during the reported quarter.

> **Petition Footnote 2**:  The Smith License Agreement includes an additional three words

after the phrase "Licensed Drill Bits."

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which

no responsive pleading is necessary.  To the extent any response is required, Defendants deny the

allegations with respect to Schlumberger and Smith.  Defendants lack knowledge or information

sufficient to form a belief about the truth of the allegations in this paragraph with respect to the

Ulterra License and the Varel License and therefore deny the same.

32.    Importantly, the definition of "Licensed Drill Bits" is not based on whether such

"Licensed Drill Bit" practices the claims of any particular Licensed RH Patent.  Rather, the

defining criteria for determining whether a product is a royalty-bearing "Licensed Drill Bit" is

based on certain articulated physical characteristics.  Specifically, the License Agreements define

"Licensed Drill Bits" as drill bits manufactured or marketed by the Licensee or its Subsidiaries

containing at least one PCD element having "a non-Leached [or unLeached] region that is not

substantially free of catalyzing material" and either

> (i) a Leached region that is substantially free of catalyzing material to a depth less than 0.1 mm from the Top Working Surface (as measured in a direction perpendicular to the outer surface of the Top Working Surface (See Exhibit A)), which may (but is not required to) further have a Bevel Working Surface and/ or Side Working Surface that has a Leached region that is substantially free of catalyzing material to a depth less than 0.1 mm from the Bevel Working Surface and/or Side Working Surface (as measured in a direction perpendicular to the outer surface of the Bevel or Side Working Surfaces, respectively (See Exhibit A)); or

(ii) a Bevel Working Surface and/or Side Working Surface that has a Leached region that is substantially free of catalyzing material to a depth less than 0.1 mm from the Bevel Working Surface and/or Side Working Surface (as measured in a direction perpendicular to the outer surface of the Bevel or Side Working Surfaces (See Exhibit A)); or

(iii) a Leached region that is substantially free of catalyzing material to a depth equal to or greater than 0 .1 mm from the Top Working Surface (as measured in a direction perpendicular to the outer surface of the Top Working Surface (See Exhibit A)); or

(iv) a Bevel Working Surface and/or Side Working Surface that has a Leached region that is substantially free of catalyzing material to a depth greater than or equal to 0.1 mm from the Bevel Working Surface and/or Side Working Surface (as measured in a direction perpendicular to the outer surface of the Bevel or Side Working Surfaces (See Exhibit A))…[3]

**Footnote 3**:  Section 2.05 of the Schlumberger License is similar but does not include (iii) and (iv) above.

**ANSWER:**  Defendants admit that the Smith License includes the quoted language in (iii), and (iv).  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Ulterra License and the Varel License and therefore deny the same.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

*Each License Agreement Obligates Defendants to Pay Royalties Until the Expiration of the Last to Expire Licensed RH Patent*

33.     To ensure that each Defendant was granted the ability to use any and all of the Leaching Technology, and to ensure that Plaintiffs were properly compensated for the grant of the broad licenses described above, each License Agreement specifically provides that (in the absence of other termination occurrences) the term of the licenses granted and the obligation to pay royalties remains in full force and effect until the expiration of the last to expire Licensed RH Patents.  Specifically:

- Section 7.04 of the Smith License and Section 8 of the Varel License provide that: [Licensee's] obligation to pay royalties to ReedHycalog…shall terminate…[u]pon expiration of all of the Licensed RH Patents… .

- Section 8.02 of the Ulterra License provides that "[t]he licenses and obligations to make royalty payments…shall terminate with respect to [Licensee] upon the expiration date of the last of the Licensed RH Patents."

- Section 7.02 of the Schlumberger Leaching Technology License provides: "This Agreement shall terminate upon the later of the expiration date of the last Licensed RH Patent."

**ANSWER:**   Defendants deny the allegations of this paragraph with respect to the Schlumberger License and the Smith License.   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Ulterra License and the Varel License and therefore deny the same.

34.     For the Schlumberger License, Ulterra License and Varel License, none of the occurrences terminating their respective obligations to make royalty payments have occurred. Consequently, these License Agreements remain in full force and effect today and including through January 10, 2031.

**ANSWER:**   Defendants deny the allegations of this paragraph with respect to the Schlumberger License.   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Ulterra License and the Varel License and therefore deny the same.

35.     On March 28, 2022, Smith terminated the Smith License. Prior to then, none of the occurrences terminating Smith's obligation to make royalty payments had occurred. Consequently, the Smith License remained in full force and effect through March 28, 2022.

**ANSWER:**   Defendants admit that Smith sent a letter on March 28, 2022, stating: "Although the underlying patents at issue and royalty obligation therefrom expired in late 2021, for administrative purposes this letter is to inform you that pursuant to Section 7.02 of the

Agreement, Smith hereby terminates any remaining licenses in the Agreement under which Smith was the licensee." Except as expressly admitted, Defendants deny the allegations of this paragraph.

***Defendants Stopped Paying Royalties After October 22, 2021***

36.    After October 22, 2021, Smith, Ulterra, and Varel stopped paying royalties under their respective License Agreements, although each Defendant continued to receive revenues as a result of their having invoiced products constituting "Licensed Drill Bits" as defined under their respective License Agreements.

**ANSWER:**   Defendants admit that after October 22, 2021, Smith stopped paying royalties to Plaintiffs.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Ulterra License and the Varel License and therefore deny the same.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

37.    Defendants' conduct gives rise to the following causes of action.

**ANSWER:**  Denied.

## CAUSES OF ACTION

### Count I (Against All Defendants)
### DECLARATORY JUDGMENT – THE '752 PATENTS ARE LICENSED RH PATENTS

38.    Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER:**   Defendants incorporate their answers to the allegations in the preceding paragraphs as if fully set forth herein.

39.    Defendants owe royalties under their respective License Agreements until the expiration of the last to expire "Licensed RH Patents."

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  To the extent any response is required, Defendants deny the allegations in this paragraph with respect to Schlumberger and Smith.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to Ulterra and Varel and therefore deny the same.

40.     The phrase "Licensed RH Patents" expressly includes all U.S. patents and patent applications listed in Defendants' respective License Agreements as well as later-issue patents that have an independent or dependent claim relating to the Leaching Technology (provided such later-issue patent was filed before the date of each Defendants' License Agreement).

**ANSWER:**   Defendants deny the allegations in this paragraph with respect to Schlumberger and Smith.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to Ulterra and Varel and therefore deny the same.

41.     U.S. Patent No. 7,568,534 ("the '534 Patent) is a continuation of a patent application listed on Exhibit C to each License Agreement.  The '534 Patent does not expire until October 10, 2025.

**ANSWER:**  Defendants admit that the '534 Patent purports to be a continuation of U.S. Patent Application Serial No. 11/163,323.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Ulterra License and the Varel License and therefore deny the same.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

42.     U.S. Patent No. 8,721,752 ("the '752 Patent") contains claims that relate to the Leaching Technology, was filed before the respective dates of Defendants' License Agreements

and does not expire until 2031.

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Ulterra License and the Varel License and therefore deny the same.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

43.    For Schlumberger, Ulterra and Varel, none of the occurrences terminating their respective obligation to make royalty payments have occurred.  Consequently, Defendants Schlumberger, Varel and Ulterra owe royalties under their respective License Agreements through the expiration of the '752 Patent in 2031.  Defendants Schlumberger, Ulterra and Varel disagree that the '752 Patent is a "Licensed RH Patents" and further disagree that they owe royalties under their respective License Agreements beyond October 21, 2021.  As a result of that disagreement, the issue of whether the '752 Patent is a "Licensed RH Patent", and the corresponding impact on the time period for which Defendants Schlumberger, Ulterra and Varel owe royalties, represents a justiciable controversy between Plaintiffs and Defendants Schlumberger, Ulterra and Varel.

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  To the extent any response is required, Defendants do not deny that a justiciable controversy exists between Plaintiffs and Schlumberger related to the time period for which Schlumberger allegedly owes royalties.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Ulterra License and the Varel License and therefore deny the same.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

44.     For Smith, none of the occurrences terminating its obligation to make royalty payments occurred prior to March 28, 2022.  Consequently, Defendant Smith owes royalties under its License Agreement between October 21, 2021 and March 28, 2022.  Defendant Smith disagrees that the '752 Patent is a "Licensed RH Patents" and further disagrees that it owes royalties beyond October 21, 2021.  As a result of that disagreement, the issue of whether the '752 Patent is a "Licensed RH Patent", and the corresponding impact on the time period for which Defendant Smith owes royalties, represents a justiciable controversy between Plaintiffs and Defendants Smith.

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  To the extent any response is required, Defendants do not deny that a justiciable controversy exists between Plaintiffs and Smith related to the time period for which Smith allegedly owes royalties.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

45.     Pursuant to Tex. Civ. Prac. & Rem. Code § 37.004, Plaintiffs are entitled to and seek relief in the form of a declaration that the '752 Patent is a Licensed RH Patent.

**ANSWER:**  Denied.

### Count II (Against Smith, Ulterra, and Varel)
#### BREACH OF CONTRACT – FAILURE TO PAY OWED ROYALTIES

46.     Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER:**  Defendants incorporate their answers to the allegations in the preceding paragraphs as if fully set forth herein.

47.     Each License Agreement is a valid and enforceable contract.

**ANSWER:** The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary. To the extent any response is required, at least under Plaintiffs' asserted reading of the Schlumberger License and the Smith License, denied. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Ulterra License and the Varel License and therefore deny the same.

48.     Plaintiffs performed under each License Agreement.

**ANSWER:** The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary. To the extent any response is required, Defendants state that they lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Smith License and Schlumberger License including because information about Plaintiffs' performance is uniquely within the possession of Plaintiffs, and Defendants therefore deny the same. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Ulterra License and the Varel License and therefore deny the same.

49.     Defendants Smith, Ulterra, and Varel breached their respective License Agreements by failing to pay royalties on licensed products they invoiced after October 21, 2021.

**ANSWER:** The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary. To the extent any response is required, Defendants deny that Smith breached its License Agreement. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the

Ulterra License and the Varel License and therefore deny the same.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

50.     Plaintiffs suffered damages as a result of each Defendant's failure to pay royalties after October 21, 2021. Plaintiffs seek to recover such damages, including interest thereon, as well as their attorneys' fees incurred as a result of each Defendant's breach.

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  To the extent any response is required, Defendants deny the allegations in this paragraph as to Smith.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Ulterra License and the Varel License and therefore deny the same.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

**Count III (Against Schlumberger)**
**BREACH OF CONTRACT – SELLING ROTARY STEERABLE TOOLS WITH LEACHED CUTTERS**

51.     Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER:**  Schlumberger incorporates its answers to the allegations in the preceding paragraphs as if fully set forth herein.

52.     The 2002 Purchase Agreement and Schlumberger License are valid and enforceable contracts.

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  To the extent any response is required, at least under Plaintiffs' asserted reading of the Schlumberger License, denied with respect to the Schlumberger License.

53.     Plaintiffs performed under both the 2002 Purchase Agreement and Schlumberger

License.

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  To the extent any response is required, Defendants refer to their specific denials with respect to conditions precedent in their answer to Paragraph 60, which is incorporated herein by reference.  To the extent any further response is required, Defendants state that they lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the 2002 Purchase Agreement and Schlumberger License including because information about Plaintiffs' performance is uniquely within the possession of Plaintiffs, and Defendants therefore deny the same.

54.    Defendant Schlumberger breached the 2002 Purchase Agreement and Schlumberger License by manufacturing, selling/renting unlicensed downhole tools with Leached Cutters, such as Schlumberger's Rotary Steerable Tool.

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  To the extent any response is required, Defendants deny the allegations in this paragraph.

55.    Plaintiffs suffered damages as a result of Defendant Schlumberger' breach of the 2002 Purchase Agreement and Schlumberger License. Plaintiffs seek to recover such damages, including interest thereon, as well as their attorneys' fees incurred as a result of Defendant Schlumberger's breach.

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  To the extent any response is required, Defendants deny the allegations in this paragraph.

## STATEMENT OF RELIEF

56.    Plaintiffs seek monetary relief from each Defendant of over $1,000,000. The

monetary relief sought by Plaintiffs is within the jurisdictional limits of the Court.

**ANSWER:**  The Petition recites a statement of relief for which no response is required. To the extent an answer is required, Defendants deny that Plaintiffs are entitled to any remedy or relief.

57.    Plaintiffs seek the issuance of the declarations requested in Count I.

**ANSWER:**  The Petition recites a statement of relief for which no response is required. To the extent an answer is required, Defendants deny that Plaintiffs are entitled to any remedy or relief.

## FEES AND COSTS

58.    Plaintiffs seek recovery of their reasonable attorney's fees for breach of contract under Chapter 38 of the Texas Civil Practices and Remedies Code.

**ANSWER:**  The Petition recites fees and costs for which no response is required.  To the extent an answer is required, Defendants deny that Plaintiffs are entitled to any remedy or relief.

59.    Plaintiffs also seek and are entitled to recovery of their reasonable attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code Sections 37.009.

**ANSWER:**  The Petition recites fees and costs for which no response is required.  To the extent an answer is required, Defendants deny that Plaintiffs are entitled to any remedy or relief.

## CONDITIONS PRECEDENT

60.    All conditions precedent to Plaintiffs' claims for relief have occurred, have been performed, or have been waived.

**ANSWER:**  Defendants specifically deny that all conditions precedent to Plaintiffs' claims for relief have occurred, have been performed or have been waived. Defendants do not assume the burden of proof on any such issues except as required by applicable law.  Defendants reserve the right to supplement these specific denials upon discovery of facts or evidence

rendering such action appropriate.  With respect to Count III, Schlumberger specifically denies that "Purchaser Parent" was "willing and able to sell to [Schlumberger] and its Affiliates at a commercially reasonable price" as required by Section 5.7 of the 2002 Purchase Agreement. With respect to Count III, Schlumberger specifically denies that "the quality, delivery time and other terms [were] reasonably satisfactory to [Schlumberger] and its Affiliates" as required by Section 5.7 of the 2002 Purchase Agreement.

## PRAYER

The Petition recites a prayer for which no response is required. To the extent an answer is required, Defendants deny that Plaintiffs are entitled to any remedy or relief.

## DEFENSES

Without any admission as to the burden of proof, burden of persuasion, or the truth of any allegation in the Petition, Defendants rely upon the following defenses, whether pled as an affirmative defense or otherwise:

### First Defense (Invalidity of the '534 Patent)

Plaintiffs' claims are barred in whole or in part because every claim of U.S. Patent No. 7,568,534 ("the '534 Patent") is invalid and/or unenforceable for failure to comply with one or more of the requirements of the United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

### Second Defense (Invalidity of the '752 Patent)

Plaintiffs' claims are barred in whole or in part because every claim of U.S. Patent No. 8,721,752 ("the '752 Patent") is invalid and/or unenforceable for failure to comply with one or more of the requirements of the United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

### Third Defense (Non-Infringement of the '534 Patent)

Plaintiffs' claims are barred in whole or in part because Defendants have not infringed and do not infringe, under any theory of infringement, including literally or under the doctrine of equivalents, directly (whether individually or jointly), or indirectly (whether contributorily or by inducement), any valid, enforceable claim of the '534 Patent.

### Fourth Defense (Non-Infringement of the '752 Patent)

Plaintiffs' claims are barred in whole or in part because Defendants have not infringed and do not infringe, under any theory of infringement, including literally or under the doctrine of equivalents, directly (whether individually or jointly), or indirectly (whether contributorily or by inducement), any valid, enforceable claim of the '752 Patent.

### Fifth Defense (Statute of Limitations)

Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations.

### Sixth Defense (Estoppel, Acquiescence, Laches, and Unclean Hands)

Plaintiffs' claims are barred in whole or in part by one or more of the doctrines of, estoppel, acquiescence, laches, and unclean hands.  ReedHycalog developed a process of leaching cobalt out of polycrystalline diamond material while ReedHycalog was a subsidiary of Schlumberger.  On information and belief, ReedHycalog has been aware that Schlumberger was—for example—manufacturing, selling, and/or renting rotary steerable tools with leached components for over a decade.

### Seventh Defense (License)

Plaintiffs' claims are barred in whole or in part by the defense of license including because the 2002 Purchase Agreement provided Schlumberger with a world-wide, perpetual, non-exclusive, irrevocable, non-transferable, royalty-free license to use, make, have made, sell

and offer for sale certain ReedHycalog intellectual property for use with applications for downhole tools other than drill bits.

### Eighth Defense (Plaintiffs' Breach)

Plaintiffs' claims are barred in whole or in part by their prior material breaches and/or failure to perform their required obligations.   For example, Plaintiffs have not met the requirements of Section 5.7 of the 2002 Purchase Agreement.

### Ninth Defense (Termination of Contractual Duties)

Plaintiffs' claims are barred in whole or in part because they are based on purported contractual duties that have terminated.

### Tenth Defense (Public Policy)

Plaintiffs' claims are barred in whole or in part because they are based on purported contractual duties that are void on public policy grounds, including under the patent laws of the United States.

### Eleventh Defense (Preemption)

Plaintiffs' claims are barred in whole or in part because federal law, including laws arising under Acts of Congress relating to patents, preempts them.

### Twelfth Defense (Patent Misuse)

On information and belief, at least the '534 Patent and the '752 Patent, as well as the 12 core patents, are being exploited and used in an improper manner that impermissibly broadens the physical and/or temporal scope of Plaintiffs' patent grant with anticompetitive effect, thereby rendering Plaintiffs' demand for royalties unenforceable and unlawful patent misuse.

### Thirteenth Defense (Failure to Mitigate)

Plaintiffs' claims are barred, in whole or part, by failure to mitigate.  For example, on information and belief, ReedHycalog has been aware that Schlumberger was manufacturing, selling, and/or renting rotary steerable tools with leached components for over a decade.

### Fourteenth Defense (Arbitration and Award)

Plaintiffs' claims are barred, in whole or part, due to an arbitration award.

### Fifteenth Defense (Res Judicata and Issue Preclusion)

Plaintiffs' claims are barred, in whole or part, by the doctrines of res judicata and issue preclusion.

### Sixteenth Defense (Invalidity of the '730 Patent)

Plaintiffs' claims are barred in whole or in part because every claim of U.S. Patent No. 8,910,730 ("the '730 Patent") is invalid and/or unenforceable for failure to comply with one or more of the requirements of the United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

### Seventeenth Defense (Non-Infringement of the '730 Patent)

Plaintiffs' claims are barred in whole or in part because Defendants have not infringed and do not infringe, under any theory of infringement, including literally or under the doctrine of equivalents, directly (whether individually or jointly), or indirectly (whether contributorily or by inducement), any valid, enforceable claim of the '730 Patent.

### ADDITIONAL DEFENSES

Defendants reserve the right to assert any additional defenses or counterclaims that discovery may reveal.

## COUNTERCLAIMS

Defendants Schlumberger and Smith, by way of Counterclaims against Plaintiffs, state as follows:

### PARTIES

1.     Counter-Plaintiff/Defendant Schlumberger Technology Corporation is a Texas corporation with its principal place of business in Fort Bend County, Texas.

2.     Counter-Plaintiff/Defendant Smith International, Inc. is a Delaware Limited Liability Company that is now known as Smith International, LLC, with its principal place of business in Harris County, Texas.   Collectively, Schlumberger and Smith are referred to as "Defendants."

3.     On information and belief, Counter-Defendant/Plaintiff Grant Prideco, Inc. ("Grant Prideco") is a Delaware limited partnership with its principal place of business in Harris County, Texas and has appeared in this lawsuit through its counsel of record.

4.     On information and belief, Counter-Defendant/Plaintiff ReedHycalog UK, Ltd. is a limited partnership formed under the laws of the United Kingdom with its principal place of business in Gloucestershire, England and has appeared in this lawsuit through its counsel of record.

5.     On information and belief, Counter-Defendant/Plaintiff ReedHycalog, LP is a Delaware limited partnership with its principal place of business in Harris County, Texas and has appeared in this lawsuit through its counsel of record.   Collectively, ReedHycalog UK, Ltd. and ReedHycalog LP are referred to as "ReedHycalog."

6.     On information and belief, Counter-Defendant/Plaintiff National Oilwell Varco, LP ("NOV") is a Delaware limited partnership with its principal place of business in Harris County, Texas and has appeared in this lawsuit through its counsel of record.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over Defendants' counterclaims for at least the reasons set forth in Defendants' Notice of Removal, including at Paragraphs 9–19, which are incorporated by reference. *See* Dkt. No. 1 (Notice of Removal) at ¶¶ 9–19.

8.     Venue is proper in this Court because for at least the reasons set forth in Defendants' Notice of Removal, including at Paragraph 20, which is incorporated by reference. *See* Dkt. No. 1 (Notice of Removal) at ¶ 20.

## FACTS

### I.     Schlumberger Sells ReedHycalog to Grant Prideco in 2002

9.     Prior to and during part of 2002, Schlumberger owned ReedHycalog.  In and around this time, ReedHycalog developed certain polycrystalline diamond leached cutter technology that is used in drilling oil wells ("Leached Cutters" or "Leached Cutter Technology").

10.     One or more of the Plaintiffs applied for, and obtained, 12 core patents directed to this Leached Cutter Technology. These patents include U.S. Patent Nos. 6,861,098, 6,861,137, and 6,878,447 ("Thermal Characteristic Patents"), U.S. Patent No. 6,601,662 ("Impact Strength Patent"), and U.S. Patent Nos. 6,585,064, 6,589,640, 6,749,033, 6,544,308, 6,562,462, 6,592,985, 6,739,214, and 6,797,326 ("Other Asserted Patents") (collectively, the "12 core patents").

11.     In 2002, Schlumberger sold ReedHycalog to Grant Prideco.  The terms of this sale are set forth in a Purchase Agreement dated October 25, 2002 between Schlumberger and Grant Prideco (the "2002 Purchase Agreement").

12.     As part of the 2002 Purchase Agreement, Schlumberger received a world-wide, perpetual, non-exclusive, irrevocable, non-transferable, royalty-free license to use, make, have

made, sell and offer for sale certain ReedHycalog intellectual property for use with applications for downhole tools other than drill bits.

13.     Nothing in the 2002 Purchase Agreement prohibited Defendants from obtaining a subsequent license from Plaintiffs for drill bits or other technology not covered by the royalty-free license in the 2002 Purchase Agreement.

## II.     Plaintiffs Monetize Their Leaching Technology

14.     Starting around 2006, ReedHycalog and Grant Prideco sought to generate revenue in another way—by suing over and licensing their Leached Cutter Technology, specifically the 12 core patents.

15.     From 2006 through 2008, ReedHycalog and Grant Prideco initiated patent infringement suits in the Eastern District of Texas against drill bit and cutter providers such as Baker Hughes, Halliburton, US Synthetic Corporation, Ulterra, and Diamond Innovations. ReedHycalog and Grant Prideco accused these drill bit and cutter providers of, *inter alia*, infringing some or all of its 12 core patents.

16.     In 2008, NOV acquired Grant Prideco and thereby also acquired ReedHycalog.

17.     By 2009, many of the industry leaders settled their litigations with Plaintiffs and obtained a license.  Other industry leaders negotiated licenses without litigation.

18.     Smith, for example, was never sued by any of the Plaintiffs for infringement of the 12 core patents.  Rather, in 2006 Smith signed a non-exclusive license agreement giving it certain rights to the Leached Cutter Technology (the "2006 Smith License").  That license was supplemented and amended in 2009 (the "2009 Smith License").  The 2009 Smith License states that the license grant is "under the Licensed RH Patents."  The 2009 Smith License also requires the Licensed RH Patents to be valid.  If the Licensed RH Patents are not valid, then no royalties are owed to Plaintiffs.

19.     Schlumberger was also not sued by any of the Plaintiffs for infringement of the 12 core patents.   Instead, in 2009, Schlumberger, like Smith, signed a non-exclusive license agreement with certain of the Plaintiffs (the "2009 Schlumberger License").   The 2009 Schlumberger License states that the license grant is "under the Licensed RH Patents."  The 2009 Schlumberger License also requires the Licensed RH Patents to be valid.  If the Licensed RH Patents are not valid, then no royalties are owed to Plaintiffs.

20.     Schlumberger acquired Smith in 2010.  The 2009 Smith License and the 2009 Schlumberger License are collectively referred to as "the License Agreements."

21.     "Licensed Drill Bits" were defined in Schlumberger's License Agreement, in relevant part, as certain PDC Bits containing PCD elements leached to depths of "less than 0.1 mm," and defined in Smith's License Agreement, in relevant part, as certain PDC Bits containing PCD elements leached to depths of "less than 0.1 mm" or "equal to or greater than 0.1 mm."  The depths of leaching licensed in the License Agreements corresponded to the depths of leaching recited in certain claims of the 12 core patents.

22.     The royalties under the License Agreements are tied directly to one or more of the 12 core patents.  For example, each of the License Agreements defines the "Asserted Patents" as the patents that were asserted to judgment in ReedHycalog's and/or Grant Prideco's litigations related to Leached Cutters.   In these litigations, ReedHycalog and/or Grant Prideco asserted some or all of the 12 core patents, but only a subset of the 12 core patents were asserted to judgment.

23.     By way of example, the 2009 Smith License Agreement states that certain royalties shall be suspended "if all of the Asserted Claims of the Impact Strength Patent and the three Thermal Characteristic Patents are found to be invalid or unenforceable, as reflected in a

final judgment by a district court."  It further states that any remaining royalties shall be suspended if "all of the Asserted Claims" are "found to be invalid or unenforceable, as reflected in a final judgment by a district court," where the Asserted Claims are limited to those claims asserted to judgment in prior litigations from the 12 core patents only.  In other words, if all such claims are ever found invalid or unenforceable, then no royalties are owed regardless of whether any other patents are valid and enforceable.

24.     The 2009 Smith License Agreement also states that royalties shall "be suspended if an appealable, unambiguous judgment by a United States District Court finds that Leaching" performed to certain depths does not infringe any of the same Asserted Claims.

25.     Schlumberger's License Agreement contains similar provisions that tie royalties to the 12 core patents.  For example, it defines "Asserted Claims" as limited to the claims from the 12 core patents that were asserted to judgment, and states that the obligation to pay royalties is suspended if there is a "final, appealable judgment by a United States district court that all Asserted Claims of the Thermal Characteristic and Impact Strength Patents are invalid or unenforceable."  In other words, when some or all of the claims of the 12 core patents are invalid or unenforceable, then no royalties are owed regardless of whether any other patents are valid and enforceable.

26.     Schlumberger's License Agreement also expressly ties the termination of royalties to the expiration of the Thermal Characteristic and Impact Strength Patents.

**III.    The Twelve Core Patents Expire and Defendants Cease Paying Royalties**

27.     Defendants paid royalties to Plaintiffs per their agreements through October 22, 2021.

28.     On October 22, 2021, the last-to-expire of the 12 core patents expired.

29.     Accordingly, Defendants ceased paying royalties as of October 22, 2021.

IV.    **Plaintiffs Seek to Impose Royalty Obligations on Schlumberger and Smith After the Expiration of the Twelve Core Patents**

30.     The License Agreements do not obligate Schlumberger and Smith to pay royalties after the expiration of the 12 core patents.  Thus, Defendants' obligation under the License Agreements to pay royalties to Plaintiffs terminated no later than October 22, 2021.

31.     Plaintiffs, however, assert that "Defendants' royalty obligations do not expire until 2031."

32.     That is because Plaintiffs assert that Defendants' royalty obligations under the License Agreements extend until the expiration of all Licensed RH Patents, and Plaintiffs further assert that the '534 and '752 Patents are Licensed RH Patents that do not expire until October 10, 2025 and January 10, 2031, respectively.

33.     Calculating the expiration of a patent, as Plaintiffs have purportedly done in this lawsuit, is an issue that is unique to patent law.  Indeed, the '752 Patent on its face states it is entitled to an extension or an adjustment under the Patent Act, 35 U.S.C. § 154(b), of 879 days.

34.     Plaintiffs have identified the '534 and '752 Patents as purported Licensed RH Patents that Plaintiffs assert are unexpired.  Plaintiffs have also identified other purported unexpired Licensed RH Patents, including U.S. Patent No. 8,910,730 ("the '730 patent"), in NOV's Responses and Objections to Defendants' First Set of Interrogatories (No. 1).

35.     These purportedly unexpired patents are not among the 12 core patents.  Nor are they listed in the License Agreements.  For example, the '752 and the '730 Patents did not even issue until 2014, five years after the License Agreements were entered into.  None of the purportedly unexpired patents were ever asserted in a litigation.

36.     Schlumberger and Smith do not practice any claim of the '534, '752, and '730 Patents.

33

37.     Despite the fact that Defendants' obligation to pay royalties ended no later than October 22, 2021, and despite the fact that Defendants do not practice any claim of the '534, '752, and '730 Patents, Plaintiffs assert that Defendants should continue to pay royalties solely because the '534 Patent allegedly expires in 2025 and the '752 Patent allegedly expires in 2031. Plaintiffs have not made an assertion regarding the expiration date of the '730 Patent, however based on the identification of the '730 Patent as an alleged unexpired Licensed RH Patent in Plaintiffs' interrogatory response, Plaintiffs have indicated their belief that the '730 Patent does not expire until after October 22, 2021.

38.     Plaintiffs seek to impose the same royalty on Defendants' revenue both pre- and post-October 22, 2021.

39.     Plaintiffs seek royalties on technology that has now been committed to the public domain based on unexpired patents that Defendants do not use.

40.     After October 22, 2021, companies that do not have a license with Plaintiffs can sell leached cutters with leaching depths both "less than 0.1 mm" and "equal to or greater than 0.1 mm" without paying a royalty to Plaintiffs.  Yet, Plaintiffs assert that Defendants may not do the same.

41.     Plaintiffs' assertion is not only contrary to the License Agreements, but it is also unlawful.  In *Brulotte v. Thys Company*, the Supreme Court of the United States held that "a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful per se."  379 U.S. 29, 32 (1964).

42.     The rationale behind *Brulotte* is clear:  Plaintiffs' 12 core patents expired in October 2021.  Since then, new market participants have been permitted to make products that would have been previously covered by these 12 core patents and owe no royalties.  It is

unlawful per se for Plaintiffs to extend their patent monopoly beyond the expiration of the 12 core patents by pointing to other unexpired patents that Schlumberger and Smith do not practice. The Supreme Court of the United States admonished Plaintiffs' very practice in *Brulotte*, and more recently, in *Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446 (2015).

43.    Plaintiffs' unlawful actions are apparent in evaluating the alleged Licensed RH Patents identified in their Second Amended Petition.  Indeed, the '534, '752, and '730 Patents recognize that leaching—the technology giving rise to the License Agreements that is now committed to the public domain—is "well known in the art."

44.    For example, the '534 Patent states that:

It has become ***well known in the art*** to preferentially remove this catalyzing material from a portion of the working surface in order to form a surface with much higher abrasion resistance without substantially reducing its impact strength.

'534 Patent at 2:29–32.  Thus, the '534 Patent recognized that leaching was not the subject of the purported invention of the patent.

45.    The '752 Patent also recognized that leaching PCD cutters was known in the art:

It has become ***well known*** that the cutting properties of these PCD materials are greatly enhanced when a relatively thin layer of the diamond material adjacent to the working surface is treated to remove the catalyzing material that remains there from the manufacturing process. This has been a relatively thin layer, generally from about 0.05 mm to about 0.4 mm thick, and the depth from the working surface tends to be generally uniform. ***This type of PDC cutting element has now become nearly universally used as cutting elements*** in earth boring drill bits and has caused a very significant improvement in drill bit performance.

'752 Patent at 1:31–41.  Thus, the '752 Patent recognized that leaching was not the subject of the purported invention of the patent and in fact was "nearly universally used" as of the priority date of the '752 Patent.

46.    The '730 Patent similarly recognizes that prior to the '730 Patent being filed, it was known in the art that leached cutting elements were "well known" and "available," and that

removal of catalyst material was known to be advantageous:

> One form of cutting element for use on a drill bit comprises a table of superhard material, for example polycrystalline diamond, which is bonded to a substrate of a less hard material, for example tungsten carbide. Cutting elements of this type are *well known and are available* in a range of shapes and sizes for use in a range of applications. . . . *It has been found to be advantageous to remove the binder catalyst material* from at least the interstitial volumes located adjacent a working surface of the cutting element, as described in, for example, WO 02/24603 and WO 02/24601, as such treatment results in the working Surface being of improved abrasion and impact resistance.

'730 Patent at 1:17-40.

47.     The specifications of the '534, '752, and '730 Patents are clear that they do not cover the invention of leaching, which was the subject of the 12 core patents.

48.     Defendants now bring their counterclaims for Declaratory Judgment of Invalidity and Non-Infringement with respect to the '534, '752, and '730 Patents along with a finding that Defendants do not owe royalties under their License Agreements after October 22, 2021 including because Plaintiffs' attempt to extract royalties thereafter is unlawful per se and unenforceable, as the Supreme Court of the United States recognized in *Brulotte*, and No Breach of Contract.

## COUNT I – Declaratory Judgment of Invalidity of the '534 Patent

49.     Defendants reallege paragraphs 1–48 as if fully set forth herein.

50.     Based on the filing of this action, an actual controversy has arisen and now exists between the parties as to the validity of the claims of the '534 Patent.

51.     The claims of the '534 Patent are invalid for failure to comply with one or more of the requirements of the United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.  For example, the claims are anticipated and/or rendered obvious by, *inter alia*, U.S. Patent Nos. 6,189,634,

6,861,098, 6,544,308, and 7,608,333.  Defendants reserve the right to assert additional prior art and/or other invalidity defenses against the '534 Patent.

52.     Defendants request a declaration by the Court that the claims of the '534 Patent are invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

### COUNT II – Declaratory Judgment of Invalidity of the '752 Patent

53.     Defendants reallege paragraphs 1–48 as if fully set forth herein.

54.     Based on the filing of this action, an actual controversy has arisen and now exists between the parties as to the validity of the claims of the '752 Patent.

55.     The claims of the '752 Patent are invalid for failure to comply with one or more of the requirements of the United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.  For example, the claims are anticipated and/or rendered obvious by, *inter alia*, U.S. Patent Nos. 9,097,074, 6,544,308, 6,601,662, 8,066,087, and 7,726,420.  Defendants reserve the right to assert additional prior art and/or other invalidity defenses against the '752 Patent.

56.     Defendants request a declaration by the Court that the claims of the '752 Patent are invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

### COUNT III– Declaratory Judgment of Non-Infringement of the '534 Patent

57.     Defendants reallege paragraphs 1–48 as if fully set forth herein.

58.     Based on the filing of this action, an actual controversy has arisen and now exists between the parties as to whether Defendants infringe the '534 Patent.

59.     Defendants do not infringe Claim 1 of the '534 Patent at least because, *inter alia*, Defendants do not perform the steps of: "exposing untreated superhard material between the end and peripheral working surfaces, by machining away the polycrystalline diamond material" and "preferentially wearing the exposed, untreated polycrystalline diamond material of the cutting element forming a pair of protruding lips with diamond material," as required by Claim 1 of the '534 Patent.

60.     Defendants request a declaration by the Court that Defendants have not infringed and do not infringe any valid and enforceable claim of the '534 Patent under any theory of infringement, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

## COUNT IV – Declaratory Judgment of Non-Infringement of the '752 Patent

61.     Defendants reallege paragraphs 1–48 as if fully set forth herein.

62.     Based on the filing of this action, an actual controversy has arisen and now exists between the parties as to whether Defendants infringe the '752 Patent.

63.     Defendants do not infringe at least Claims 1 and 12 of the '752 Patent because, *inter alia*, Defendants do not make, use, sell, offer to sell, or import polycrystalline diamond cutting elements with at least one "substantially catalyst-free projection extending below the first depth and to a second depth, the at least one projection being a distance from the working surface," as required by at least Claims 1 and 12 of the '752 Patent. Defendants do not infringe any claim that depends, directly or indirectly, from Claims 1 or 12 for at least these reasons.

64.     Defendants request a declaration by the Court that Defendants have not infringed and do not infringe any valid and enforceable claim of the '752 Patent under any theory of infringement, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

**COUNT V – Declaratory Judgment That Defendants Owe No Royalties After October 22, 2021 Under the License Agreements**

65.     Defendants reallege paragraphs 1–48, 58-60, 62-64, and 89-91 as if fully set forth herein.

66.     Based on the filing of this action, as well as Plaintiffs' identification of allegedly unexpired Licensed RH Patents in Plaintiffs' interrogatory responses, an actual controversy has arisen and now exists between the parties as to whether any royalties are owed and enforceable under the License Agreements after October 22, 2021 at least because it is unlawful for Plaintiffs to require the payment of royalties accruing after the patents incorporated into Defendants' products have expired, under at least *Brulotte* and its progeny.

67.     At least the '534 Patent, '752 Patent, and '730 Patent, as well as the 12 core patents, are being exploited and used in an improper manner that impermissibly broadens the physical and/or temporal scope of Plaintiffs' patent grant with anticompetitive effect, thereby rendering any attempt to enforce the License Agreements based on the expiration dates of the '534 Patent, '752 Patent, and '730 Patent unlawful per se and unenforceable.

68.     As set forth herein, the '534 Patent, '752 Patent, and '730 Patent recognized that leaching technology was well known at the time of the purported inventions disclosed in the '534 Patent, '752 Patent, and '730 Patent.  Accordingly, the '534 Patent, '752 Patent, and '730 Patent do not claim the leaching technology giving rise to the License Agreements.  Nonetheless, Plaintiffs still seek to extract royalties from Defendants for their use of leaching technology that is now committed to the public domain based on the alleged expiration dates of the '534 Patent, '752 Patent, and '730 Patent.

69.     The Defendants do not practice any valid and enforceable claim of the '534 Patent, '752 Patent, and '730 Patent.

70.     Therefore, any attempt by Plaintiffs to enforce purported contractual obligations, including to extract royalties from Defendants, after October 22, 2021, including on the basis of the '534 Patent, '752 Patent, and '730 Patent, is unlawful per se and unenforceable.

**COUNT VI – Declaratory Judgment that the Asserted Claims are Unenforceable after October 22, 2021 because they are Expired**

71.     Defendants reallege paragraphs 1–48 as if fully set forth herein.

72.     The License Agreements define Asserted Claims as "claims [that] are asserted to judgment by ReedHycalog and/or Grant Prideco in a patent infringement lawsuit in a United States District Court," (2009 Smith License), or "claims [that] are asserted to judgment by ReedHycalog in a patent infringement lawsuit in a United States District Court," (2009 Schlumberger License).

73.     The only claims that were asserted in a patent infringement lawsuit, and thus the only claims that were asserted to judgment, were claims from some of the 12 core patents.

74.     The 2009 Smith License states that royalties are suspended if some or all of the Asserted Claims are found to be invalid or unenforceable as reflected in a final judgment by a district court.

75.     The 2009 Schlumberger License states that royalties are suspended if some or all of the Asserted Claims are found to be invalid or unenforceable as reflected in a final judgment by a district court.

76.     The 12 core patents have expired and are thus unenforceable for activity occurring after October 22, 2021.

77.     Therefore, Defendants request a declaration by the Court that the 12 core patents, and thus the Asserted Claims, are expired and therefore unenforceable for activity occurring after October 22, 2021.

**COUNT VII – Declaratory Judgment that the Asserted Claims are Not Infringed after October 22, 2021 because they are Expired**

78.     Defendants reallege paragraphs 1–48, and 72–73 as if fully set forth herein.

79.     The 2009 Smith License states that "Royalties due by Smith pursuant to Section 4.01(b)(1) of this Agreement shall also be suspended if an appealable, unambiguous judgment by a United States District Court finds that Leaching, performed to a depth adjacent to any working surface, does not infringe all such Asserted Claims, then Smith's obligation to pay royalties for any products that contain PCD elements Leached to a depth equal to or shallower than such court determined depth shall be suspended as of the date of said final, appealable judgment, finding, or holding."

80.     The 2009 Smith License also states that "Royalties due by Smith pursuant to Section 4.01(b)(2) of this Agreement shall also be suspended if an appealable, unambiguous judgment by a United States District Court finds that Leaching, performed to a depth adjacent to any working surface to a depth greater than or equal to 0.1mm does not infringe all such Asserted Claims (wherein the Asserted Patents include at least one of the Licensed RH Patents other than the Thermal Characteristic Patents and the Impact Strength Patent), then Smith's obligation to pay royalties for any products that contain PCD elements Leached to a depth equal to or shallower than such court determined depth shall be suspended as of the date of said final, appealable judgment, finding, or holding."

81.     The 12 core patents have expired and therefore Leaching and PCD elements Leached to any depth do not infringe any of the claims of such patents after October 22, 2021.

82.     Therefore, Defendants request a declaration by the Court that the 12 core patents are expired and therefore the Asserted Claims are not infringed for activity occurring after October 22, 2021.

## COUNT VIII – Declaratory Judgment of No Breach of Contract

83.     Defendants reallege paragraphs 1–48, 58-60, 62-64, and 89-91 as if fully set forth herein.

84.     Royalties under the License Agreements ended no later than October 22, 2021 when the last-to-expire of the 12 core patents expired.

85.     Yet, Plaintiffs assert that Defendants owe royalties under their respective License Agreements until January 10, 2031 and have allegedly breached by failing to pay.

86.     Defendants did not breach the License Agreements at least because Defendants' obligations to pay royalties terminated no later than October 22, 2021.

87.     Therefore, Defendants request a declaration by the Court that they have not breached the License Agreements.

## COUNT IX – Declaratory Judgment of Non-Infringement of the '730 Patent

88.     Defendants reallege paragraphs 1–48 as if fully set forth herein.

89.     Based on the filing of this action, as well as Plaintiffs' identification of allegedly unexpired Licensed RH Patents in Plaintiffs' interrogatory responses, an actual controversy has arisen and now exists between the parties as to whether Defendants infringe the '730 Patent.

90.     Defendants do not infringe any claim of the '730 Patent at least because, inter alia, Defendants do not perform the steps of: "the first and second layers forming a series of steps of different sizes" and "the first layer adjacent to the working surface having a radius greater than a radius of the second layer," as required by the only independent claims (Claims 1 and 20) of the '730 Patent.

91.     Defendants request a declaration by the Court that Defendants have not infringed and do not infringe any valid and enforceable claim of the '730 Patent under any theory of infringement, including directly (whether individually or jointly) or indirectly (whether

contributorily or by inducement).

### COUNT X – Declaratory Judgment of Invalidity of the '730 Patent

92.     Defendants reallege paragraphs 1–48 as if fully set forth herein.

93.     Based on the filing of this action, as well as Plaintiffs' identification of allegedly unexpired Licensed RH Patents in Plaintiffs' interrogatory responses, an actual controversy has arisen and now exists between the parties as to the validity of the claims of the '730 Patent.

94.     The claims of the '730 Patent are invalid for failure to comply with one or more of the requirements of the United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.  For example, the claims are anticipated and/or rendered obvious by, inter alia, U.S. Patent Nos. 7,350,601, 8,210,288, and 4,582,458.  Defendants reserve the right to assert additional prior art and/or other invalidity defenses against the '730 Patent.

95.     Defendants request a declaration by the Court that the claims of the '730 Patent are invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

### CONDITIONS PRECEDENT

96.     All conditions precedent to recovery, to the extent they exist, have been performed or have occurred.

### ATTORNEYS' FEES

97.     Defendants seek an award of their attorneys' fees under 35 U.S.C. § 285.

### PRAYER FOR RELIEF

FOR THESE REASONS, Defendants respectfully request that the Court enter a judgment in its favor that:

98.     Dismisses all claims against Defendants and orders that Plaintiffs take nothing by reason of Plaintiffs' allegations against Defendants;

99.     Orders the declaratory judgments requested in ¶¶ 49–95, *supra*; and

100.    Orders that Defendants recover all costs incurred in defense of Plaintiffs' claims, and that Defendants' judgment against Plaintiffs includes the following:

    1.     Reasonable attorneys' fees to the maximum extent permitted by law;

    2.     Costs of suit; and

    3.     Such other further relief, general and special, at law or in equity, to which Defendants may be justly entitled.

Dated: September 6, 2023                    Respectfully Submitted,


                                            */s/ Gregg F. LoCascio*
                                            Gregg F. LoCascio, P.C.
                                            Attorney-in-Charge
                                            S.D. Texas Bar No. 1109276
                                            DC Bar No. 452814
                                            gregg.locascio@kirkland.com
                                            Tera Jo Stone (*pro hac vice*)
                                            DC Bar No. 90000748
                                            tera.stone@kirkland.com
                                            KIRKLAND & ELLIS LLP
                                            1301 Pennsylvania Ave., N.W.
                                            Washington, D.C.  20004
                                            Telephone:    (202) 389-5000
                                            Facsimile:    (202) 389-5200

                                            Ryan Kane, P.C.
                                            S.D. Texas Bar No. 1314513
                                            NY Bar No. 4882551
                                            ryan.kane@kirkland.com
                                            Chris Ilardi (*pro hac vice*)
                                            NY Bar No. 5403811
                                            chris.ilardi@kirkland.com
                                            KIRKLAND & ELLIS LLP
                                            601 Lexington Ave.
                                            New York, NY  10022
                                            Telephone:    (212) 446-4800
                                            Facsimile:    (212) 446-4900

                                            Greg Polins (*pro hac vice*)
                                            IL Bar No. 6309928
                                            greg.polins@kirkland.com
                                            KIRKLAND & ELLIS LLP
                                            300 North LaSalle
                                            Chicago, IL  60654
                                            Telephone:    (312) 862-2000
                                            Facsimile:    (312) 862-2200

                                            Nick Brown
                                            S.D. Texas Bar No. 2725667
                                            TBN 24092182
                                            nick.brown@kirkland.com
                                            KIRKLAND & ELLIS LLP

609 Main Street
Houston, Texas 77002
Telephone:      (713) 836-3600
Facsimile:      (713) 836-3601

James John Lomeo
S.D. Texas Bar No. 3511238
TBN 24118993
james.lomeo@kirkland.com
KIRKLAND & ELLIS LLP
401 Congress Ave.
Austin, Texas 78701
Telephone:      (512) 678-9100
Facsimile:      (512) 678-9101

Craig Smyser
S.D. Texas Bar No. 848
TBN 18777575
csmyser@skv.com
Samantha J. Jarvis
S.D. Texas Bar No. 2774222
TBN 24089238
sjarvis@skv.com
Garland D. Murphy IV
S.D. Texas Bar No. 802346
TBN 24058010
lmurphy@skv.com
SMYSER KAPLAN & VESELKA LLP
717 Texas Avenue, Suite 2800
Houston, Texas 77002
Telephone:      (713) 221-2300
Facsimile:      (713) 221-2320

***Counsel for Defendants Schlumberger Technology Corp. and Smith International, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 6, 2023, in accordance with the Federal Rules of Civil Procedure, a true and correct copy of the above and foregoing document was served on all registered counsel of record via the Court's PACER ECF system.

*/s/ Gregg F. LoCascio*

Gregg F. LoCascio, P.C.
