**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG | § | |
| UK, LTD., REEDHYCALOG, LP, | § | |
| NATIONAL OILWELL VARCO, LP, | § | |
| *Plaintiffs/Counter-Defendants,* | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00730-ASH-SSS |
| | § | |
| SCHLUMBERGER TECHNOLOGY | § | |
| CORP., SMITH INTERNATIONAL, INC.; | § | |
| ULTERRA DRILLING TECHNOLOGIES, | § | |
| L.P., ROCKBIT INTERNATIONAL | § | |
| SUBSIDIARIES, LLC.; and VAREL | § | |
| INTERNATIONAL ENERGY SERVICES, | § | |
| INC., VAREL INTERNATIONAL | § | |
| INDUSTRIES, L.P., | § | |
| *Defendants.* | § | |

**ULTERRA DRILLING TECHNOLOGIES, L.P.'S AND ROCKBIT INTERNATIONAL
SUBSIDIARIES, LLC'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES,
AND COUNTERCLAIMS**

Defendants Ulterra Drilling Technologies, L.P. and Rockbit International Subsidiaries, LLC ("Rockbit") (collectively "Ulterra" or "Defendants") file this First Amended Answer and Affirmative Defenses ("Answer") to Plaintiffs Grant Prideco, Inc. ("Grant Prideco"), ReedHycalog UK, Ltd., ReedHycalog, LP (both ReedHycalog entities together, "ReedHycalog"), and National Oilwell Varco, LP's ("NOV") (collectively, "Plaintiffs") Second Amended Petition ("Petition"), and First Amended Counterclaims.

**INTRODUCTION**

For nearly two decades Plaintiffs had a monopoly on the right to make, use and sell certain polycrystalline diamond cutters having leached surfaces ("Leached Cutters"). By law that monopoly is now over. Beginning in 2001, Plaintiffs filed for and obtained 12 United States patents directed to Leached Cutters. These core patents were a step change in the industry, and

Defendants obtained a license to use them.  For more than a decade, Defendants paid royalties to Plaintiffs per their agreement.  In October 2021, however, the last of these 12 patents expired, and Defendants accordingly stopped paying Plaintiffs.  Now, because these 12 patents have expired, any new entrant to the industry is free to make, use, and sell Leached Cutters ***without a license and without owing Plaintiffs a cent***.  Nevertheless, Plaintiffs assert that the Defendants' royalty obligations under their license do not expire until 2031, which is ***nearly a decade after the expiration of the 12 core patents***.  Specifically, Plaintiffs assert that other patents exist—which Defendants do not practice—one of which Plaintiffs allege does not expire until January 2031.

Plaintiffs' claims fail for multiple reasons.  First, their interpretation of the license with Defendants is incorrect.  Any royalty obligations ended in October 2021 when the last of the 12 core patents expired.  Second, the suggestion that royalty obligations continue based on patents other than the 12 core patents, which are not used by the Defendants, is unlawful under long established Supreme Court law.  *Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964).  Any attempt by Plaintiffs to extend their license to collect royalties based on patents that Defendants do not practice is unlawful per se and unenforceable.

## ANSWER

Defendants now answer the Petition of Plaintiffs and state their affirmative defenses and counterclaims against Plaintiffs as follows:

## NATURE OF THE CASE[1]

The unnumbered paragraphs on pages 1–2 of the Petition under the sub-heading, Nature of the Case, state legal conclusions and Plaintiffs' characterization of their own claims, to which no response is required.  To the extent a response is required, the paragraphs are denied.

---

[1]    The headings and subheadings in the Second Amended Petition are reproduced herein for the convenience of

## DISCOVERY CONTROL PLAN

1.      Discovery is intended to be conducted under Level 3 in accordance with Rule 190 of the Texas Rules of Civil Procedure.

**ANSWER:**  Denied.  The Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of Texas, and the Civil Procedures of Judge Hanen will govern discovery in this case.

*Plaintiffs*

2.      Plaintiff Grant Prideco, Inc. is a limited partnership formed under Delaware law, registered in Texas as a foreign limited partnership, and has a principal place of business in Harris County, Texas.

**ANSWER:**  Upon information and belief, based on facts alleged in Plaintiffs' Complaint, admitted.

3.      Plaintiff ReedHycalog UK, Ltd. Is a limited partnership formed under the laws of the United Kingdom, and has a principal place of business in Gloucestershire, England.

**ANSWER:**  Upon information and belief, based on facts alleged in Plaintiffs' Complaint, admitted.

4.      Plaintiff ReedHycalog, LP is a limited partnership formed under the laws of Delaware, registered in Texas as a foreign limited partnership, and has a principal place of business in Harris County, Texas. Collectively, Plaintiffs ReedHycalog UK, Ltd. and ReedHycalog UK, Ltd. are referred to herein as "ReedHycalog."

**ANSWER:**  Upon information and belief, based on facts alleged in Plaintiffs' Complaint, admitted.

---

the reader.  To the extent such headings include or infer allegations, they are denied.

5.      Plaintiff National Oilwell Varco, LP ("NOV") is a limited partnership formed under the laws of Delaware, registered in Texas as a foreign limited partnership, and has a principal place of business in Harris County, Texas.

**ANSWER:**  Upon information and belief, based on facts alleged in Plaintiffs' Complaint, admitted.

*Schlumberger*

6.      Defendant Schlumberger Technology Corporation ("Schlumberger") is a Domestic For-Profit Corporation and has a principal place of business in Harris County, Texas. Schlumberger may be served with process by serving its registered agent Capitol Corporate Services, Inc. at 206 East 9th Street, Suite 1300, Austin, Texas 78701.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

7.      Defendant Smith International, Inc. ("Smith") is a Delaware corporation and has a principal place of business in Harris County, Texas.  Smith may be served with process by serving its registered agent Capitol Corporate Services, Inc. at 206 East 9th Street, Suite 1300, Austin, Texas 78701.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

*Ulterra*

8.      Defendant Ulterra Drilling Technologies. L.P. is a Texas limited partnership having a place of business at 420 Throckmorton St., Ste. 1110, Ft. Worth, TX 76102. It may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

**ANSWER:** Defendants admit that Ulterra is a United States for profit corporation and that it may be served with process by serving its registered agent CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.   Except as expressly admitted, Defendants deny the allegations of this paragraph.

9.      Defendant Rockbit International Subsidiaries, LLC. is a Texas corporation, currently operating under the name Ulterra International Subsidiaries, LLC. It has a place of business at 201 Main Street, Suite 1660, Ft. Worth, TX 76102. It may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

**ANSWER:**  Defendants admit that Rockbit International Subsidiaries, LLC is a Texas corporation, currently operating under the name Ulterra International Subsidiaries, LLC and that it may be served with process by serving its registered agent CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.   Except as expressly admitted, Defendants deny the allegations of this paragraph.

*Varel*

10.      Defendant Varel International Energy Services, Inc. is a Delaware corporation having its principal place of business in Texas.  It may be served with process by serving its registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

11.      Defendant Varel International Industries, L.P. is a Delaware partnership having its principal place of business in Texas.  It is registered to do business in Texas. It may be served with process by serving its registered agent Corporation Service Company d/b/a/ CSC-Lawyers

Incorporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction pursuant to Article V, Section 8, of the Texas Constitution.  The amount in controversy exceeds the minimum jurisdictional limits of this Court.

**ANSWER:**  Defendants deny that the 11th District Court of Harris County, Texas, has jurisdiction over this matter.  Defendants state that the United States District Court for the Southern District of Texas, Houston Division, has jurisdiction over this matter for at least the reasons set forth in Defendants' Notice of Removal, including at Paragraphs 9–19, which are incorporated by reference.  *See* Dkt. No. 1 (Notice of Removal) at ¶¶ 9–19.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

13.    Venue is proper in Harris County, Texas under Tex. Civ. Prac. & Rem. Code § 15.002(a)(1) and 15.020 (b).  All claims raised in this Second Amended Petition concern disputes between the parties that arise out of and/or relate to valid and existing contracts in which each Defendant agreed that the exclusive jurisdiction and venue for any action brought between the parties that arises out of or relates to the contract shall be the courts sitting in Harris County, Texas.  Moreover, all of a substantial part of the events and omissions giving rise to the claims made the basis of this lawsuit occurred in Harris County, Texas.

**ANSWER:**  Defendants state that under 28 U.S.C. § 1441(a), venue for this removed action is proper in the United States District Court for the Southern District of Texas, Houston Division, because the 11th District Court of Harris County, Texas, where Plaintiffs' state court action was brought (*Grant Prideco, Inc., et al. v. Schlumberger Technology Corp., et al.*, bearing

Cause Number 2022-28716), is located within the Southern District of Texas, Houston Division. Except as expressly admitted, Defendants deny the allegations of this paragraph.

## FACTUAL BACKGROUND

### *ReedHycalog's Patent Leaching Technology*

14.    Plaintiff ReedHycalog is in the drill bit business.  It has a long track record of developing revolutionary technology and obtaining patents related thereto.

**ANSWER:**  Defendants admit that ReedHycalog purports to be in the drill bit business and purports to have obtained patents.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

15.    Among others, ReedHycalog owns patents related to certain technology it developed that leaches cobalt out of polycrystalline diamond material (the "Leaching Technology").  The Leaching Technology is commonly used to improve the durability of polycrystalline diamonds (aka synthetic diamonds) mounted on the cutting surfaces of downhole tools, including drill bits, reamers, and hole openers.

**ANSWER:**  Defendants admit that leaching cobalt out of polycrystalline diamond material may be used to improve the durability of polycrystalline diamonds mounted on the cutting surface of downhole tools.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

### *Grant Prideco's Acquisition of ReedHycalog from Schlumberger*

16.    In or about 1998, Schlumberger acquired ReedHycalog.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

17.    In 2002, Schlumberger sold ReedHycalog and its Leaching Technology to Grant Prideco pursuant to the terms of a written Purchase Agreement dated October 25, 2002 (the "2002

Purchase Agreement").

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

18.     When Schlumberger sold ReedHycalog and its Leaching Technology to Grant Prideco, Schlumberger retained a limited royalty free license on certain kinds of downhole applications.  The terms and conditions of that royalty free license are expressly set forth in the 2002 Purchase Agreement and prohibit, for example, Schlumberger from using the Leaching Technology in connection with the manufacture, sale or distribution of (a) PDC Bits (i.e. drill bits with Leached Cutters) or (b) components thereof (i.e. Leached Cutters).  Stated differently, the 2002 Purchase Agreement prohibits Schlumberger from manufacturing, selling or renting any downhole tools that contain Leached Cutters.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

19.     At various times following the 2002 sale, Schlumberger breached (and continues to breach) the terms of the limited royalty free license in the 2002 Purchase Agreement by using the Leaching Technology to manufacture, sell or rent downhole tools that contain Leached Cutters.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

***Smith's 2006 License Agreement***

20.     In 2006, ReedHycalog and Grant Prideco entered a written agreement with Smith (the "2006 Smith License") that provided Smith a non-exclusive license to use the Leaching Technology on "Licensed Drill Bits," which the agreement expressly defined as including drill bits, bicenter bits, fixed blade reamers and hole openers.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

21.     In 2008, NOV acquired Grant Prideco and in so doing, also acquired ReedHycalog, ReedHycalog's Leaching Technology and the patent rights owned by ReedHycalog relating to such technology.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

*The License Agreements at Issue*

22.     In 2009, Plaintiffs entered into an addendum with Smith which supplemented, amended, and modified some of the terms of the "2006 Smith License."  This 2009 agreement is referred to herein as the "Smith License."

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

23.     Also in 2009, Plaintiffs entered into separate license agreements with Schlumberger, Ulterra, and Varel under which Schlumberger, Ulterra, and Varel each received a non-exclusive license to use the Leaching Technology (referred to as the "Schlumberger License", the "Ulterra License" and the "Varel License").

**ANSWER:**  Admitted that Plaintiffs entered into a separate license agreement with Ulterra with an effective date in 2009 and that under that license agreement Ulterra received a non-exclusive license.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

24.     Collectively, the license agreements with Smith, Schlumberger, Ulterra and Varel are referred to herein as the "License Agreements."

**ANSWER:**  To the extent this paragraph includes or infers allegations, they are denied.

***The Schlumberger License Also Prohibits Selling Non-Licensed Tools with Leached Cutters***

25.     The Schlumberger License, like the 2002 Purchase Agreement, prohibits Schlumberger from using the Leaching Technology to manufacture, sell or rent unlicensed downhole tools with Leached Cutters.  Schlumberger also specifically agreed in its License Agreement to pay Plaintiffs a penalty equal to 70% of gross margin (as defined in the agreement) in connection with the non-inadvertent sale/rental of unlicensed tools with Leached Cutters.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

26.     Each License Agreement contains royalty obligations based on the "Licensed RH Patents" – a phrase that is defined by the following common language:

> "Licensed RH Patents" ***means all U.S. patents and patent applications listed on Exhibit C*** and all foreign counterpart patents and patent applications, and all continuations, continuations-in-part, divisionals, reissues, reexaminations, and term extensions thereof. … ***Licensed RH Patents also includes any*** current or ***later-issued Licensor patent*** (i) ***having an independent claim relating to the Leaching of PCD elements or*** (ii) having a dependent claim relating to the Leaching of PCD elements, ***which was filed on or before the Effective Date of this Agreement*** or claims a priority date on or before the Effective Date of this Agreement. …[1] (emphasis added)

**Petition Footnote 1**:  The Ulterra and Varel PCD Leaching Technology Licenses included additional language in their definitions of "Licensed RH Patents" not pertinent to the present claims.

**ANSWER:**  Defendants admit that the Ulterra License contains certain of the quoted language in this paragraph.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

27.     Exhibit C to each License Agreement identifies a number of patents owned by Plaintiffs that relate to the Leaching Technology.  Each of the specifically listed patents constitute

a "Licensed RH Patent" under the License Agreements.

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  To the extent any response is required, Defendants admit that Exhibit C to the Ulterra License purports to identify a number of patents and patent applications that Plaintiffs purport to own.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Smith License, the Schlumberger License, and the Varel License and therefore deny the same.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

28.     Although not explicitly listed on Exhibit C to each License Agreement, U.S. Patent No. 7,568,534 ("the '534 Patent") is also a "Licensed RH Patent" because it is a continuation of a patent application listed on Exhibit C to each License Agreement; namely U.S. Patent Application Serial No. 11/163,323.  The '534 Patent expires on October 10, 2025.

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  To the extent any response is required, Defendants admit that the '534 Patent is not listed on Exhibit C to the Ulterra License.  Defendants admit that the '534 Patent purports to be a continuation of U.S. Patent Application Serial No. 11/163,323.  Defendants admit that U.S. Patent Application Serial No. 11/163,323 is listed on Exhibit C to the Ulterra License.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Smith License, the Schlumberger License, and the Varel License and therefore deny the same.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

29.     Likewise, U.S. Patent No. 8,721,752 ("the '752 Patent") is also a "Licensed RH Patent" because it includes at least one "independent claim relating to the Leaching of PCD

11

elements" and was filed prior to the effective date of each License Agreement.  The '752 Patent expires on January 10, 2031.

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to Smith License, the Schlumberger License, and the Varel License and therefore deny the same.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

***The Defendants Owe Royalties Based on Invoicing of "Licensed Drill Bits"***

30.     To provide a convenient method of fixing the business value of the privileges granted to Defendants under the License Agreements, and to avoid the necessity of the parties having a controversy as to whether each product offered by Defendants embodies any particular "Licensed RH Patent", the parties to each License Agreement adopted the approach of basing royalties on an agreed percentage of the licensee's sales of an identified class of product offerings.

**ANSWER:**  Defendants deny the allegations of this paragraph as to Ulterra. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to Schlumberger, Smith, and Varel and therefore deny the same.

31.     Specifically, in consideration for the grant of the broad and expansive technology rights in the License Agreements, each Defendant agreed to pay royalties based on the net price of "Licensed Drill Bits" invoiced during each reported quarter.  To that end, each License Agreement includes the following common language:

> Beginning on the Effective date [*sic*] of this Agreement [Licensee] will owe ReedHycalog, on a quarterly basis, a go-forward royalty based on [Licensee's] Net Price of Licensed Drill Bits[2] invoiced on a worldwide basis to a third party customer during the reported quarter.

**Petition Footnote 2**: The Smith License Agreement includes an additional three words after the phrase "Licensed Drill Bits."

**ANSWER:** The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary. To the extent any response is required, Defendants deny the allegations with respect to Ulterra. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Smith License, the Schlumberger License, and the Varel License and therefore deny the same.

32. Importantly, the definition of "Licensed Drill Bits" is not based on whether such "Licensed Drill Bit" practices the claims of any particular Licensed RH Patent. Rather, the defining criteria for determining whether a product is a royalty-bearing "Licensed Drill Bit" is based on certain articulated physical characteristics. Specifically, the License Agreements define "Licensed Drill Bits" as drill bits manufactured or marketed by the Licensee or its Subsidiaries containing at least one PCD element having "a non-Leached [or unLeached] region that is not substantially free of catalyzing material" and either:

(i) a Leached region that is substantially free of catalyzing material to a depth less than 0.1 mm from the Top Working Surface (as measured in a direction perpendicular to the outer surface of the Top Working Surface (See Exhibit A)), which may (but is not required to) further have a Bevel Working Surface and/ or Side Working Surface that has a Leached region that is substantially free of catalyzing material to a depth less than 0.1 mm from the Bevel Working Surface and/or Side Working Surface (as measured in a direction perpendicular to the outer surface of the Bevel or Side Working Surfaces, respectively (See Exhibit A)); or

(ii) a Bevel Working Surface and/or Side Working Surface that has a Leached region that is substantially free of catalyzing material to a depth less than 0.1 mm from the Bevel Working Surface and/or Side Working Surface (as measured in a direction perpendicular to the outer surface of the Bevel or Side Working Surfaces (See Exhibit A)); or

(iii) a Leached region that is substantially free of catalyzing material to a depth equal to or greater than 0.1 mm from the Top Working Surface (as measured in a direction perpendicular to the outer surface of the Top Working Surface (See Exhibit A)); or

(iv) a Bevel Working Surface and/or Side Working Surface that has a Leached region that is substantially free of catalyzing material to a depth greater than or equal to 0.1 mm from the Bevel Working Surface and/or Side Working Surface (as measured in a direction perpendicular to the outer surface of the Bevel or Side Working Surfaces (See Exhibit A))…[3]

**Footnote 3**:  Section 2.05 of the Schlumberger License is similar but does not include (iii) and (iv) above.

**ANSWER:**  Defendants admit that the Ulterra License includes the quoted language in (i), (ii), (iii), and (iv).  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Smith License, Schlumberger, and the Varel License and therefore deny the same.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

*Each License Agreement Obligates Defendants to Pay Royalties Until the Expiration of the Last to Expire Licensed RH Patent*

33.    To ensure that each Defendant was granted the ability to use any and all of the Leaching Technology, and to ensure that Plaintiffs were properly compensated for the grant of the broad licenses described above, each License Agreement specifically provides that (in the absence of other termination occurrences) the term of the licenses granted and the obligation to pay royalties remains in full force and effect until the expiration of the last to expire Licensed RH Patents.  Specifically:

- Section 7.04 of the Smith License and Section 8 of the Varel License provide that: [Licensee's] obligation to pay royalties to ReedHycalog…shall terminate…[u]pon expiration of all of the Licensed RH Patents… .

- Section 8.02 of the Ulterra License provides that "[t]he licenses and obligations to make royalty payments…shall terminate with respect to [Licensee] upon the expiration date of the last of the Licensed RH Patents."

- Section 7.02 of the Schlumberger Leaching Technology License provides: "This Agreement shall terminate upon the later of the expiration date of the last Licensed RH Patent."

**ANSWER:**  Defendants deny the allegations of this paragraph with respect to the Ulterra License.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Smith License, Schlumberger, and the Varel License and therefore deny the same.

34.    For the Schlumberger License, Ulterra License and Varel License, none of the occurrences terminating their respective obligations to make royalty payments have occurred. Consequently, these License Agreements remain in full force and effect today and including through January 10, 2031.

**ANSWER:**  Defendants deny the allegations of this paragraph with respect to the Ulterra License.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Schlumberger License and the Varel License and therefore deny the same.

35.    On March 28, 2022, Smith terminated the Smith License. Prior to then, none of the occurrences terminating Smith's obligation to make royalty payments had occurred. Consequently, the Smith License remained in full force and effect through March 28, 2022.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

***Defendants Stopped Paying Royalties After October 22, 2021***

36.    After October 22, 2021, Smith, Ulterra, and Varel stopped paying royalties under their respective License Agreements, although each Defendant continued to receive revenues as a result of their having invoiced products constituting "Licensed Drill Bits" as defined under their respective License Agreements.

**ANSWER:** Defendants admit that after October 22, 2021, Ulterra stopped paying royalties to Plaintiffs.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Smith License and the Varel License and therefore deny the same.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

37.     Defendants' conduct gives rise to the following causes of action.

**ANSWER:**  Denied.

### CAUSES OF ACTION

### Count I (Against All Defendants)
### DECLARATORY JUDGMENT – THE '752 PATENTS ARE LICENSED RH PATENTS

38.     Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER:**  Defendants incorporate their answers to the allegations in the preceding paragraphs as if fully set forth herein.

39.     Defendants owe royalties under their respective License Agreements until the expiration of the last to expire "Licensed RH Patents."

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  To the extent any response is required, Defendants deny the allegations in this paragraph with respect to Ulterra.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to Smith, Schlumberger, and Varel and therefore deny the same.

40.     The phrase "Licensed RH Patents" expressly includes all U.S. patents and patent applications listed in Defendants' respective License Agreements as well as later-issue patents that have an independent or dependent claim relating to the Leaching Technology (provided such later-

issue patent was filed before the date of each Defendants' License Agreement).

**ANSWER:**  Defendants deny the allegations in this paragraph with respect to Ulterra. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to Smith, Schlumberger, and Varel and therefore deny the same.

41.    U.S. Patent No. 7,568,534 ("the '534 Patent) is a continuation of a patent application listed on Exhibit C to each License Agreement.  The '534 Patent does not expire until October 10, 2025.

**ANSWER:**  Defendants admit that the '534 Patent purports to be a continuation of U.S. Patent Application Serial No. 11/163,323.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Smith License, Schlumberger, and the Varel License and therefore deny the same.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

42.    U.S. Patent No. 8,721,752 ("the '752 Patent") contains claims that relate to the Leaching Technology, was filed before the respective dates of Defendants' License Agreements and does not expire until 2031.

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Smith License, Schlumberger, and the Varel License and therefore deny the same.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

43.    For Schlumberger, Ulterra and Varel, none of the occurrences terminating their respective obligation to make royalty payments have occurred.  Consequently, Defendants

Schlumberger, Varel and Ulterra owe royalties under their respective License Agreements through the expiration of the '752 Patent in 2031.  Defendants Schlumberger, Ulterra and Varel disagree that the '752 Patent is a "Licensed RH Patents" and further disagree that they owe royalties under their respective License Agreements beyond October 21, 2021.  As a result of that disagreement, the issue of whether the '752 Patent is a "Licensed RH Patent", and the corresponding impact on the time period for which Defendants Schlumberger, Ulterra and Varel owe royalties, represents a justiciable controversy between Plaintiffs and Defendants Schlumberger, Ulterra and Varel.

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  To the extent any response is required, Defendants do not deny that a justiciable controversy exists between Plaintiffs and Ulterra related to the time period for which Ulterra allegedly owes royalties.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Smith License, Schlumberger, and the Varel License and therefore deny the same.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

44.    For Smith, none of the occurrences terminating its obligation to make royalty payments occurred prior to March 28, 2022.  Consequently, Defendant Smith owes royalties under its License Agreement between October 21, 2021 and March 28, 2022.  Defendant Smith disagrees that the '752 Patent is a "Licensed RH Patents" and further disagrees that it owes royalties beyond October 21, 2021.  As a result of that disagreement, the issue of whether the '752 Patent is a "Licensed RH Patent", and the corresponding impact on the time period for which Defendant Smith owes royalties, represents a justiciable controversy between Plaintiffs and Defendants Smith.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

45.      Pursuant to Tex. Civ. Prac. & Rem. Code § 37.004, Plaintiffs are entitled to and seek relief in the form of a declaration that the '752 Patent is a Licensed RH Patent.

**ANSWER:**  Denied.

**Count II (Against Smith, Ulterra, and Varel)**
**BREACH OF CONTRACT – FAILURE TO PAY OWED ROYALTIES**

46.      Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER:**  Defendants incorporate their answers to the allegations in the preceding paragraphs as if fully set forth herein.

47.      Each License Agreement is a valid and enforceable contract.

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  To the extent any response is required, at least under Plaintiffs' asserted reading of the Ulterra License, denied.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Smith License, the Schlumberger License, and the Varel License and therefore deny the same.

48.      Plaintiffs performed under each License Agreement.

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  To the extent any response is required, Defendants state that they lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Ulterra License including because information about Plaintiffs' performance is uniquely within the possession of Plaintiffs, and Defendants therefore deny the

same.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Smith License, the Schlumberger License, and the Varel License and therefore deny the same.

49.     Defendants Smith, Ulterra, and Varel breached their respective License Agreements by failing to pay royalties on licensed products they invoiced after October 21, 2021.

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  To the extent any response is required, Defendants deny that Ulterra breached its License Agreement.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Smith License and the Varel License and therefore deny the same.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

50.     Plaintiffs suffered damages as a result of each Defendant's failure to pay royalties after October 21, 2021. Plaintiffs seek to recover such damages, including interest thereon, as well as their attorneys' fees incurred as a result of each Defendant's breach.

**ANSWER:**  The allegations set forth in this paragraph are conclusions of law as to which no responsive pleading is necessary.  To the extent any response is required, Defendants deny the allegations in this paragraph as to Ulterra.   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph with respect to the Smith License and the Varel License and therefore deny the same.  Except as expressly admitted, Defendants deny the allegations of this paragraph.

### Count III (Against Schlumberger)
**BREACH OF CONTRACT – SELLING ROTARY STEERABLE TOOLS WITH LEACHED CUTTERS**

51.     Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER:**  Defendants incorporate their answers to the allegations in the preceding paragraphs as if fully set forth herein

52.    The 2002 Purchase Agreement and Schlumberger License are valid and enforceable contracts.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

53.    Plaintiffs performed under both the 2002 Purchase Agreement and Schlumberger License.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

54.    Defendant Schlumberger breached the 2002 Purchase Agreement and Schlumberger License by manufacturing, selling/renting unlicensed downhole tools with Leached Cutters, such as Schlumberger's Rotary Steerable Tool.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

55.    Plaintiffs suffered damages as a result of Defendant Schlumberger' breach of the 2002 Purchase Agreement and Schlumberger License. Plaintiffs seek to recover such damages, including interest thereon, as well as their attorneys' fees incurred as a result of Defendant Schlumberger's breach.

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

## STATEMENT OF RELIEF

56.    Plaintiffs seek monetary relief from each Defendant of over $1,000,000. The monetary relief sought by Plaintiffs is within the jurisdictional limits of the Court.

**ANSWER:** The Petition recites a statement of relief for which no response is required. To the extent an answer is required, Defendants deny that Plaintiffs are entitled to any remedy or relief.

57.     Plaintiffs seek the issuance of the declarations requested in Count I.

**ANSWER:** The Petition recites a statement of relief for which no response is required. To the extent an answer is required, Defendants deny that Plaintiffs are entitled to any remedy or relief.

## FEES AND COSTS

58.     Plaintiffs seek recovery of their reasonable attorney's fees for breach of contract under Chapter 38 of the Texas Civil Practices and Remedies Code.

**ANSWER:** The Petition recites fees and costs for which no response is required.  To the extent an answer is required, Defendants deny that Plaintiffs are entitled to any remedy or relief.

59.     Plaintiffs also seek and are entitled to recovery of their reasonable attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code Sections 37.009.

**ANSWER:** The Petition recites fees and costs for which no response is required.  To the extent an answer is required, Defendants deny that Plaintiffs are entitled to any remedy or relief.

## CONDITIONS PRECEDENT

60.     All conditions precedent to Plaintiffs' claims for relief have occurred, have been performed, or have been waived.

**ANSWER:** Defendants specifically deny that all conditions precedent to Plaintiffs' claims for relief have occurred, have been performed or have been waived. Defendants do not assume the burden of proof on any such issues except as required by applicable law.  Defendants reserve the right to supplement these specific denials upon discovery of facts or evidence rendering such

action appropriate.  With respect to Count III, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

## PRAYER

The Petition recites a prayer for which no response is required. To the extent an answer is required, Defendants deny that Plaintiffs are entitled to any remedy or relief.

## DEFENSES

Without any admission as to the burden of proof, burden of persuasion, or the truth of any allegation in the Petition, Defendants rely upon the following defenses, whether pled as an affirmative defense or otherwise:

### First Defense (Non-Infringement of the '534 Patent)

Plaintiffs' claims are barred in whole or in part because Defendants have not infringed and do not infringe, under any theory of infringement, including literally or under the doctrine of equivalents, directly (whether individually or jointly), or indirectly (whether contributorily or by inducement), any claim of the '534 Patent.

### Second Defense (Non-Infringement of the '752 Patent)

Plaintiffs' claims are barred in whole or in part because Defendants have not infringed and do not infringe, under any theory of infringement, including literally or under the doctrine of equivalents, directly (whether individually or jointly), or indirectly (whether contributorily or by inducement), any claim of the '752 Patent.

### Third Defense (Non-Infringement of the '730 Patent)

Plaintiffs' claims are barred in whole or in part because Defendants have not infringed and do not infringe, under any theory of infringement, including literally or under the doctrine of equivalents, directly (whether individually or jointly), or indirectly (whether contributorily or by inducement), any claim of the '730 Patent.

### Fourth Defense (Plaintiffs' Breach)

Plaintiffs' claims are barred in whole or in part by their prior material breaches and/or failure to perform their required obligations.

### Fifth Defense (Termination of Contractual Duties)

Plaintiffs' claims are barred in whole or in part because they are based on purported contractual duties that have terminated.

### Sixth Defense (Public Policy)

Plaintiffs' claims are barred in whole or in part because they are based on purported contractual duties that are void on public policy grounds, including under the patent laws of the United States.

### Seventh Defense (Preemption)

Plaintiffs' claims are barred in whole or in part because federal law, including laws arising under Acts of Congress relating to patents, preempts them.

### Eighth Defense (Patent Misuse)

On information and belief, at least the '534 Patent and the '752 Patent, as well as the 12 core patents, are being exploited and used in an improper manner that impermissibly broadens the physical and/or temporal scope of Plaintiffs' patent grant with anticompetitive effect, thereby rendering Plaintiffs' demand for royalties unenforceable and unlawful patent misuse.

### Ninth Defense (Failure to Mitigate)

Plaintiffs' claims are barred, in whole or part, by failure to mitigate. For example, Ulterra notified Plaintiffs in February 2022 that its royalty obligations ended in October 2021 and Plaintiffs made no attempt to negotiation or seek a cure for Ulterra's alleged breach.

## ADDITIONAL DEFENSES

Defendants reserve the right to assert any additional defenses or counterclaims that discovery may reveal.

## COUNTERCLAIMS

Defendants Ulterra by way of Counterclaims against Plaintiffs, state as follows:

## PARTIES

1.      Counter-Plaintiff/Defendant Ulterra Drilling Technologies, L.P. is a Texas limited partnership with its principal place of business in Tarrant County, Texas.

2.      Counter-Plaintiff/Defendant Rockbit International Subsidiaries, LLC is a Texas Limited Liability Company that is now known as Ulterra International Subsidiaries, LLC, with its principal place of business in Tarrant County, Texas. Collectively, Ulterra and Rockbit are referred to as "Defendants."

3.      On information and belief, Counter-Defendant/Plaintiff Grant Prideco, Inc. ("Grant Prideco") is a Delaware limited partnership with its principal place of business in Harris County, Texas and has appeared in this lawsuit through its counsel of record.

4.      On information and belief, Counter-Defendant/Plaintiff ReedHycalog UK, Ltd. is a limited partnership formed under the laws of the United Kingdom with its principal place of business in Gloucestershire, England and has appeared in this lawsuit through its counsel of record.

5.      On information and belief, Counter-Defendant/Plaintiff ReedHycalog, LP is a Delaware limited partnership with its principal place of business in Harris County, Texas and has appeared in this lawsuit through its counsel of record. Collectively, ReedHycalog UK, Ltd. and ReedHycalog LP are referred to as "ReedHycalog."

6.      On information and belief, Counter-Defendant/Plaintiff National Oilwell Varco, LP ("NOV") is a Delaware limited partnership with its principal place of business in Harris County, Texas and has appeared in this lawsuit through its counsel of record.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over Defendants' counterclaims for at least the reasons set forth in Defendants' Notice of Removal, including at Paragraphs 9–19, which are incorporated by reference. *See* Dkt. No. 1 (Notice of Removal) at ¶¶ 9–19.

8.      Venue is proper in this Court because for at least the reasons set forth in Defendants' Notice of Removal, including at Paragraph 20, which is incorporated by reference. *See* Dkt. No. 1 (Notice of Removal) at ¶ 20.

## FACTS

### I.      Plaintiffs Monetize Their Leaching Technology

9.      In and around 2002, ReedHycalog developed certain polycrystalline diamond leached cutter technology that is used in drilling oil wells ("Leached Cutters" or "Leached Cutter Technology").

10.     One or more of the Plaintiffs applied for, and obtained, 12 core patents directed to this Leached Cutter Technology. These patents include U.S. Patent Nos. 6,861,098, 6,861,137, and 6,878,447 ("Thermal Characteristic Patents"), U.S. Patent No. 6,601,662 ("Impact Strength Patent"), and U.S. Patent Nos. 6,585,064, 6,589,640, 6,749,033, 6,544,308, 6,562,462, 6,592,985, 6,739,214, and 6,797,326 ("Depth Patents")[2] (collectively, the "12 core patents").

11.     In 2002, Grant Prideco acquired ReedHycalog.

---

[2]     The "Depth Patents" as defined in the agreement between Plaintiffs and Defendants omits U.S Patent No. 6,562,462 but lists U.S. Patent No. 6,544,308 twice.

12.     Starting around 2006, ReedHycalog and Grant Prideco sought to generate revenue in addition to selling drill bits—by suing over and licensing their Leached Cutter Technology, specifically the 12 core patents.

13.     From 2006 through 2008, ReedHycalog and Grant Prideco initiated patent infringement suits in the Eastern District of Texas against drill bit and cutter providers. Ulterra was one such provider—along with others such as Baker Hughes, Halliburton, US Synthetic Corporation, and Diamond Innovations. ReedHycalog and Grant Prideco accused Ulterra and these drill bit and cutter providers of, *inter alia*, infringing some or all of the 12 core patents.

14.     Specifically, with respect to Ulterra, ReedHycalog and Grant Prideco accused Ulterra of infringing the Thermal Characteristic Patents, the Impact Strength Patent, and the Depth Patents in a lawsuit in the Eastern District of Texas, which was filed on June 4, 2007.

15.     Over the next two years, Ulterra, ReedHycalog and Grant Prideco litigated the case through *Markman*, fact discovery, expert discovery, and dispositive motions briefing.

16.     In 2008, NOV acquired Grant Prideco and thereby also acquired ReedHycalog.

17.     By 2009, many of the industry leaders settled their litigations with Plaintiffs and obtained a license.

18.     Ulterra was no different. The litigation involving Ulterra never reached trial as all claims and counterclaims in that lawsuit were dismissed with prejudice on September 22, 2009.

19.     Defendants and Plaintiffs executed an agreement titled the ReedHycalog – Ulterra Patent Cross-License Agreement (the "License Agreement") with an effective date of September 1, 2009. The License Agreement states that the license grant is "under the Licensed RH Patents."

20.     "Licensed Ulterra Drill Bits" were defined in the License Agreement, in relevant part, as any and all PDC Bits containing at least one PCD element leached to depths of "less than

0.1 mm" or "equal to or greater than 0.1 mm." The depths of leaching licensed in the License Agreement corresponded to the depths of leaching recited in certain claims of the 12 core patents.

21.     The royalties under the License Agreement are tied directly to one or more of the 12 core patents. For example, the License Agreement defines the "Asserted Patents" as the patents that were asserted to judgment in *any* of ReedHycalog's and/or Grant Prideco's litigations related to Leached Cutters—not just the litigation between ReedHycalog and Ulterra. In these litigations, ReedHycalog and/or Grant Prideco asserted some or all of the 12 core patents, but only a subset of the 12 core patents were asserted to judgment.

22.     The License Agreement also states that royalties shall "be suspended if an appealable, unambiguous judgment by a United States District Court finds that Leaching" performed to certain depths or "any partially leached PCD element" does not infringe any of the Asserted Claims. In the License Agreement, like the definition of "Asserted Patents," the definition of "Asserted Claims" is similarly limited to the claims from the 12 core patents that were asserted to judgment.

## II.     The Twelve Core Patents Expire and Defendants Cease Paying Royalties

23.     Defendants paid royalties to Plaintiffs per their agreement through October 22, 2021.

24.     On October 22, 2021, the last-to-expire of the 12 core patents expired.

25.     Accordingly, Defendants ceased paying royalties as of October 22, 2021.

## III.     Plaintiffs Seek to Impose Royalty Obligations on Defendants After the Expiration of the Twelve Core Patents

26.     The License Agreement does not obligate Defendants to pay royalties after the expiration of the 12 core patents. Thus, Defendants' obligation under the License Agreement to pay royalties to Plaintiffs terminated no later than October 22, 2021.

27. Plaintiffs, however, assert that "Defendants' royalty obligations do not expire until 2031."

28. That is because Plaintiffs assert that Defendants' royalty obligations under the License Agreement extend until the expiration of all Licensed RH Patents, and Plaintiffs further assert that the '534 and '752 Patents are Licensed RH Patents that do not expire until October 10, 2025 and January 10, 2031, respectively.

29. Calculating the expiration of a patent, as Plaintiffs have purportedly done in this lawsuit, is an issue that is unique to patent law. Indeed, the '752 Patent on its face states it is entitled to an extension or an adjustment under the Patent Act, 35 U.S.C. § 154(b), of 879 days.

30. Plaintiffs have identified the '534 and '752 Patents as purported Licensed RH Patents that Plaintiffs assert are unexpired. Plaintiffs have also identified other purported unexpired Licensed RH Patents, including U.S. Patent No. 8,910,730 ("the '730 patent"), in NOV's Responses and Objections to Defendants' First Set of Interrogatories (No.1).

31. These purportedly unexpired patents are not among the 12 core patents. Nor are they listed in the License Agreement. For example, the '752 and '730 Patents did not even issue until 2014, nearly five years after the License Agreement was entered into. None of the purportedly unexpired patents were ever asserted in a litigation.

32. Defendants do not practice any claim of the '534,'752, and '730 Patents.

33. Despite the fact that Defendants' obligation to pay royalties ended no later than October 22, 2021, and despite the fact that Defendants do not practice any claim of the '534, '752, and '730 Patents, Plaintiffs assert that Defendants should continue to pay royalties solely because the '534 Patent allegedly expires in 2025 and the '752 Patent allegedly expires in 2031. Plaintiffs have not made an assertion regarding the expiration date of the '730 Patent, however based on the

identification of the '730 Patent as an alleged unexpired Licensed RH Patent in Plaintiffs' interrogatory response, Plaintiffs have indicated their belief that the '730 Patent does not expire until after October 22, 2021.

34.     Plaintiffs seek to impose the same royalty on Defendants' revenue both pre- and post-October 22, 2021.

35.     Plaintiffs seek royalties on technology that has now been committed to the public domain based on unexpired patents that Defendants do not use.

36.     After October 22, 2021, companies that do not have a license with Plaintiffs can sell leached cutters with leaching depths both "less than 0.1 mm" and "equal to or greater than 0.1 mm" without paying a royalty to Plaintiffs. Yet, Plaintiffs assert that Defendants may not do the same.

37.     Plaintiffs' assertion is not only contrary to the License Agreement, but it is also unlawful. In *Brulotte v. Thys Company*, the Supreme Court of the United States held that "a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful per se." 379 U.S. 29, 32 (1964).

38.     The rationale behind *Brulotte* is clear: Plaintiffs' 12 core patents expired in October 2021. Since then, new market participants have been permitted to make products that would have been previously covered by these 12 core patents and owe no royalties. It is unlawful per se for Plaintiffs to extend their patent monopoly beyond the expiration of the 12 core patents by pointing to other unexpired patents that Defendants do not practice. The Supreme Court of the United States admonished Plaintiffs' very practice in *Brulotte*, and more recently, *Brulotte* was reaffirmed in *Kimble v. Marvel Entertainment*, LLC, 576 U.S. 446 (2015).

39.     Plaintiffs' unlawful actions are apparent in evaluating the alleged Licensed RH Patents identified in their Second Amended Petition. Indeed, the '534, '752, and '730 Patents recognize that leaching—the technology giving rise to the License Agreement that is now committed to the public domain—is "well known in the art."

40.     For example, the '534 Patent states that:

> It has become ***well known in the art*** to preferentially remove this catalyzing material from a portion of the working surface in order to form a surface with much higher abrasion resistance without substantially reducing its impact strength.

'534 Patent at 2:29–32.  Thus, the '534 Patent recognized that leaching was not the subject of the purported invention of the patent.

41.     The '752 Patent also recognized that leaching PCD cutters was known in the art:

> It has become ***well known*** that the cutting properties of these PCD materials are greatly enhanced when a relatively thin layer of the diamond material adjacent to the working surface is treated to remove the catalyzing material that remains there from the manufacturing process. This has been a relatively thin layer, generally from about 0.05 mm to about 0.4 mm thick, and the depth from the working surface tends to be generally uniform. ***This type of PDC cutting element has now become nearly universally used as cutting elements*** in earth boring drill bits and has caused a very significant improvement in drill bit performance.

'752 Patent at 1:31–41.  Thus, the '752 Patent recognized that leaching was not the subject of the purported invention of the patent and in fact was "nearly universally used" as of the priority date of the '752 Patent.

42.     The '730 Patent similarly recognizes that prior to the '730 Patent being filed, it was known in the art that leached cutting elements were "well known" and "available," and that removal of catalyst material was known to be advantageous:

> One form of cutting element for use on a drill bit comprises a table of superhard material, for example polycrystalline diamond, which is bonded to a substrate of a less hard material, for example tungsten carbide. Cutting elements of this type are ***well known and are available*** in a range of shapes and sizes for use in a range of applications. . . .  ***It has been found to be advantageous to remove the binder catalyst material*** from at least the interstitial volumes located adjacent a working

surface of the cutting element, as described in, for example, WO 02/24603 and WO 02/24601, as such treatment results in the working Surface being of improved abrasion and impact resistance.

'730 Patent at 1:17-40.

43.     The specifications of the '534, '752, and '730 Patents are clear that they do not cover the invention of leaching, which was the subject of the 12 core patents.

44.     Defendants now bring their counterclaims for Declaratory Judgment of Non-Infringement with respect to the '534, '752, and '730 Patents along with a finding that Defendants do not owe royalties under their License Agreement after October 22, 2021 including because Plaintiffs' attempt to extract royalties thereafter is unlawful per se and unenforceable, as the Supreme Court of the United States recognized in *Brulotte*, and No Breach of Contract.

## COUNT I – Declaratory Judgment of Non-Infringement of the '534 Patent

45.     Defendants reallege paragraphs 1–44 as if fully set forth herein.

46.     Based on the filing of this action, an actual controversy has arisen and now exists between the parties as to whether Defendants infringe the '534 Patent.

47.     Defendants do not infringe Claim 1 of the '534 Patent at least because, *inter alia*, Defendants do not perform the steps of: "exposing untreated superhard material between the end and peripheral working surfaces, by machining away the polycrystalline diamond material" and "preferentially wearing the exposed, untreated polycrystalline diamond material of the cutting element forming a pair of protruding lips with diamond material," as required by Claim 1 of the '534 Patent.

48.     Defendants request a declaration by the Court that Defendants have not infringed and do not infringe any claim of the '534 Patent under any theory of infringement, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

### COUNT II – Declaratory Judgment of Non-Infringement of the '752 Patent

49.     Defendants reallege paragraphs 1–44 as if fully set forth herein.

50.     Based on the filing of this action, an actual controversy has arisen and now exists between the parties as to whether Defendants infringe the '752 Patent.

51.     Defendants do not infringe at least Claims 1 and 12 of the '752 Patent because, *inter alia*, Defendants do not make, use, sell, offer to sell, or import polycrystalline diamond cutting elements with at least one "substantially catalyst-free projection extending below the first depth and to a second depth, the at least one projection being a distance from the working surface," as required by at least Claims 1 and 12 of the '752 Patent. Defendants do not infringe any claim that depends, directly or indirectly, from Claims 1 or 12 for at least these reasons.

52.     Defendants request a declaration by the Court that Defendants have not infringed and do not infringe any claim of the '752 Patent under any theory of infringement, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

### COUNT III – Declaratory Judgment That Defendants Owe No Royalties After October 22, 2021 Under the License Agreement

53.     Defendants reallege paragraphs 1–44, 46–48, 50–52, and 72–74 as if fully set forth herein.

54.     Based on the filing of this action, as well as Plaintiffs' identification of allegedly unexpired Licensed RH Patents in Plaintiffs' interrogatory responses, an actual controversy has arisen and now exists between the parties as to whether any royalties are owed and enforceable under the License Agreement after October 22, 2021 at least because it is unlawful for Plaintiffs to require the payment of royalties accruing after the patents incorporated into Defendants' products have expired, under at least *Brulotte* and its progeny.

55.     At least the '534 Patent, '752 Patent, and '730 Patent, as well as the 12 core patents, are being exploited and used in an improper manner that impermissibly broadens the physical and/or temporal scope of Plaintiffs' patent grant with anticompetitive effect, thereby rendering any attempt to enforce the License Agreement based on the expiration dates of the '534 Patent, '752 Patent, and '730 Patent unlawful per se and unenforceable.

56.     As set forth herein, the '534 Patent, '752 Patent, and '730 Patent recognized that leaching technology was well known at the time of the purported inventions disclosed in the '534 Patent, '752 Patent, and '730 Patent.  Accordingly, the '534 Patent, '752 Patent, and '730 Patent do not claim the leaching technology giving rise to the License Agreement.  Nonetheless, Plaintiffs still seek to extract royalties from Defendants for their use of leaching technology that is now committed to the public domain based on the alleged expiration dates of the '534 Patent, '752 Patent, and '730 Patent.

57.     The Defendants do not practice any claim of the '534 Patent, '752 Patent, and '730 Patent.

58.     Therefore, any attempt by Plaintiffs to enforce purported contractual obligations, including to extract royalties from Defendants, after October 22, 2021, including on the basis of the '534 Patent, '752 Patent, and '730 Patent, is unlawful per se and unenforceable.

**COUNT IV – Declaratory Judgment that the Asserted Claims are Not Infringed after October 22, 2021 because they are Expired**

59.     Defendants reallege paragraphs 1–44 as if fully set forth herein.

60.     The License Agreement defines Asserted Claims as "claims [that] are asserted to judgment by any party in a patent infringement lawsuit in a United States District Court involving ReedHycalog."

61. The only claims that were asserted in a patent infringement lawsuit, and thus the only claims that were asserted to judgment, were claims from some of the 12 core patents.

62. The License Agreement states that "Royalties due by Ulterra pursuant to Section 6.01(b)(1) of this Agreement may also be suspended if an appealable, unambiguous judgment by a United States District Court finds that Leaching, performed to a depth adjacent to any working surface, does not infringe all such Asserted Claims." The License Agreement also states that "royalties due by Ulterra pursuant to Section 6.01(b)(1) of this Agreement may also be suspended if an appealable, unambiguous judgment by a United States District Court finds that any partially leached PCD element does not infringe all such Asserted Claims."

63. The License Agreement states that "Royalties due by Ulterra pursuant to Section 6.01(b)(2) of this Agreement may also be suspended if an appealable, unambiguous judgment by a United States District Court finds that Leaching, performed to a depth adjacent to any working surface to a depth greater than or equal to 0.1mm does not infringe all such Asserted Claims (wherein the Asserted Patents include at least one of the Licensed RH Patents other than the Thermal Characteristic Patents and the Impact Strength Patent)." The License Agreement also states that "royalties due by Ulterra pursuant to Section 6.01(b)(2) of this Agreement may also be suspended if an appealable, unambiguous judgment by a United States District Court finds that any partially leached PCD element does not infringe all such Asserted Claims (wherein the Asserted Patents include at least one of the Licensed RH Patents other than the Thermal Characteristic Patents and the Impact Strength Patent)."

64. The 12 core patents have expired and therefore Leaching and partially leached PCD elements do not infringe any of the claims of such patents after October 22, 2021.

65.     Therefore, Defendants request a declaration by the Court that the 12 core patents are expired and therefore the Asserted Claims are not infringed for activity occurring after October 22, 2021.

### COUNT V – Declaratory Judgment of No Breach of Contract

66.     Defendants reallege paragraphs  1–44, 46–48, 50–52, and 72–74 as if fully set forth herein.

67.     Royalties under the License Agreement ended no later than October 22, 2021 when the last-to-expire of the 12 core patents expired.

68.     Yet, Plaintiffs assert that Defendants owe royalties under their respective License Agreement until January 10, 2031 and have allegedly breached by failing to pay.

69.     Defendants did not breach the License Agreement at least because Defendants' obligations to pay royalties terminated no later than October 22, 2021.

70.     Therefore, Defendants request a declaration by the Court that they have not breached the License Agreement.

### COUNT VI – Declaratory Judgment of Non-Infringement of the '730 Patent

71.     Defendants reallege paragraphs 1–44 as if fully set forth herein.

72.     Based on the filing of this action, as well as Plaintiffs' identification of allegedly unexpired Licensed RH Patents in Plaintiffs' interrogatory responses, an actual controversy has arisen and now exists between the parties as to whether Defendants infringe the '730 Patent.

73.     Defendants do not infringe any claim of the '730 Patent at least because, inter alia, Defendants do not perform the steps of: "the first and second layers forming a series of steps of different sizes" and "the first layer adjacent to the working surface having a radius greater than a radius of the second layer," as required by the only independent claims (Claims 1 and 20) of the '730 Patent.

74.     Defendants request a declaration by the Court that Defendants have not infringed and do not infringe any claim of the '730 Patent under any theory of infringement, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

## CONDITIONS PRECEDENT

75.     All conditions precedent to recovery, to the extent they exist, have been performed or have occurred.

## ATTORNEYS' FEES

76.     Defendants seek an award of their attorneys' fees under 35 U.S.C. § 285.

## <u>PRAYER FOR RELIEF</u>

FOR THESE REASONS, Defendants respectfully request that the Court enter a judgment in its favor that:

77.     Dismisses all claims against Defendants and orders that Plaintiffs take nothing by reason of Plaintiffs' allegations against Defendants;

78.     Orders the declaratory judgments requested in ¶¶ 45–74, *supra*; and

79.     Orders that Defendants recover all costs incurred in defense of Plaintiffs' claims, and that Defendants' judgment against Plaintiffs includes the following:

1.     Reasonable attorneys' fees to the maximum extent permitted by law;

2.     Costs of suit; and

3.     Such other further relief, general and special, at law or in equity, to which Defendants may be justly entitled.

Dated: September 6, 2023                    Respectfully Submitted,


                                            */s/ Gregg F. LoCascio*
                                            Gregg F. LoCascio, P.C.
                                            Attorney-in-Charge
                                            S.D. Texas Bar No. 1109276
                                            DC Bar No. 452814
                                            gregg.locascio@kirkland.com
                                            Tera Jo Stone (*pro hac vice*)
                                            DC Bar No. 90000748
                                            tera.stone@kirkland.com
                                            KIRKLAND & ELLIS LLP
                                            1301 Pennsylvania Ave., N.W.
                                            Washington, D.C.  20004
                                            Telephone:     (202) 389-5000
                                            Facsimile:     (202) 389-5200

                                            Ryan Kane, P.C.
                                            S.D. Texas Bar No. 1314513
                                            NY Bar No. 4882551
                                            ryan.kane@kirkland.com
                                            Chris Ilardi (*pro hac vice*)
                                            NY Bar No. 5403811
                                            chris.ilardi@kirkland.com
                                            KIRKLAND & ELLIS LLP
                                            601 Lexington Ave.
                                            New York, NY  10022
                                            Telephone:     (212) 446-4800
                                            Facsimile:     (212) 446-4900

                                            Greg Polins (*pro hac vice*)
                                            IL Bar No. 6309928
                                            greg.polins@kirkland.com
                                            KIRKLAND & ELLIS LLP
                                            300 North LaSalle
                                            Chicago, IL  60654
                                            Telephone:     (312) 862-2000
                                            Facsimile:     (312) 862-2200

                                            Nick Brown
                                            S.D. Texas Bar No. 2725667
                                            TBN 24092182
                                            nick.brown@kirkland.com
                                            KIRKLAND & ELLIS LLP

609 Main Street
Houston, Texas 77002
Telephone:     (713) 836-3600
Facsimile:     (713) 836-3601

James John Lomeo
S.D. Texas Bar No. 3511238
TBN 24118993
james.lomeo@kirkland.com
KIRKLAND & ELLIS LLP
401 Congress Ave.
Austin, Texas 78701
Telephone:     (512) 678-9100
Facsimile:     (512) 678-9101

David J. Beck
TBN 00000070
**BECK REDDEN LLP**
1221 McKinney Street
Suite 4500
Houston, Texas 77010
Telephone: 713.951.3700
Facsimile: 713.951.3720
dbeck@beckredden.com

***Counsel for Defendants Ulterra Drilling Technologies, L.P. and Rockbit International Subsidiaries, LLC.***

## **CERTIFICATE OF SERVICE**

I certify that on September 6, 2023, in accordance with the Federal Rules of Civil Procedure, a true and correct copy of the above and foregoing document was served on all registered counsel of record via the Court's PACER ECF system.

*/s/ Gregg F. LoCascio*
Gregg F. LoCascio, P.C.