Case 4:23-cv-00730   Document 371   Filed on 09/29/25 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
September 29, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GRANT PRIDECO, INC., REEDHYCALOG UK, LTD., REEDHYCALOG, LP, NATIONAL OILWELL VARCO, LP, <br> *Plaintiffs/Counter-Defendants*, <br><br> v. <br><br> SCHLUMBERGER TECHNOLOGY CORP., SMITH INTERNATIONAL, INC., ULTERRA DRILLING TECHNOLOGIES L.P., ROCKBIT INTERNATIONAL SUBSIDIARIES, LLC; and VAREL INTERNATIONAL ENERGY SERVICES, INC., VAREL INTERNATIONAL INDUSTRIES, L.P., <br> *Defendants/Counter-Plaintiffs*. | CIVIL ACTION NO. 4:23-CV-00730 <br> **FILED UNDER SEAL** |

# ORDER

Pending before the Court is Defendants Ulterra Drilling Technologies L.P., and Rockbit International Subsidiaries, LLC's (collectively, "Ulterra") Motion to Disqualify Designated Expert Witness. (Doc. No. 171). The Plaintiffs in this matter are Grant Prideco, Inc. ("Grant Prideco"), ReedHycalog UK, LTD., ReedHycalog, LP ("ReedHycalog"), and National Oilwell Varco, LP ("NOV") (collectively, "Plaintiffs" or "NOV"). NOV filed a Response in Opposition (Doc. No. 183), and Ulterra Replied. (Doc. No. 190). After considering the pleadings and relevant law and facts, the Court **DENIES** Ulterra's Motion to Disqualify. (Doc. No. 171).

## I. BACKGROUND

In its Motion, Ulterra requests that the Court disqualify NOV's designated expert, Jeffrey C. Dodd ("Dodd"), from "acting as counsel, expert, or other consultant to Plaintiffs in this action." (Doc. No. 171 at 19).

In approximately March 2010, Ulterra retained Andrews Kurth LLP to advise Ulterra on "various patent and licensing issues." (Doc. No. 171 at 7–8). From 2010 to 2012, Hunton Andrews Kurth ("HAK")[1] advised Ulterra on several issues: 1) "patents cross-licensed pursuant to NOV's patent license agreement with Baker Hughes," 2) Patent No. 7,140,448 ("the '448 patent") that "Ulterra licensed pursuant to the Patent Cross-License Agreement," 3) "Ulterra's manufacturing process involving certain leached cutters," and 4) "monitoring patents" relating to polycrystalline diamond cutter leaching. (Doc. No. 171 at 8). At the time, Dodd was serving as the Global Chair of the IP and Technology Group at HAK; but he never represented Ulterra. The lawyers who actually did this work left HAK years before this suit was filed and before NOV retained Dodd as an expert. (Doc. No. 183-6 at 3). Today, Dodd is still a partner with HAK and has been one for over 23 years.

On June 16, 2024, NOV informed Ulterra of its intent to use Dodd as an expert in this case. (Doc. No. 183 at 9). On June 21, 2024, Ulterra informed NOV that HAK had done previous work for Ulterra including "work related to the license agreement at issue." (*Id.*). In a subsequent phone call, Ulterra again informed NOV of HAK's previous work for Ulterra, alleging a conflict of interest. Ulterra did not provide further details about the basis for the alleged conflict, citing privilege concerns. NOV informed Ulterra that Dodd would only be offering opinions on general licensing practices, not specific patents. (*Id.*).

In late July 2024, Ulterra called and emailed NOV, explaining its intent to seek disqualification of Dodd. (Doc. No. 183-1 at ¶5). On August 3, 2024, NOV asked that Ulterra speak to HAK's Deputy General Counsel, Kelly Faglioni ("Faglioni"), about its objections to Dodd's involvement so that it could articulate its basis for the conflict without any privilege

---

[1] HAK is the successor firm to Andrews Kurth LLP which merged with Hunton & Williams LLP. For ease of reference, the Court will follow the parties' lead and refer to both firms as HAK in this Order.

concerns. Faglioni and Ulterra proceeded to have multiple meetings regarding Dodd, with HAK requesting additional documentation to evaluate the conflict concerns. (Doc. No. 171 at 9). In late August 2024, Faglioni informed NOV that, after speaking with Ulterra, HAK did not believe that any conflict existed. (Doc. No. 183 at 9). On September 5, 2024, counsel for Ulterra inquired whether NOV still intended to use Dodd as an expert witness and NOV responded that it did.

By September 25, 2024, Ulterra provided the additional documents to HAK supporting their conflict concerns. Then, on October 9, 2024, Ulterra emailed Faglioni, copying NOV, informing them of its intent to file a motion to disqualify. (Doc. No. 183 at 9–10); (Doc. No. 191 at 3). On October 12, NOV served a copy of Dodd's Expert Report on Ulterra.[2] The Report addresses "various practices in structuring patent license agreements." (Doc. No. 183 at 10). The Report does not discuss Ulterra's patents or drill bits, nor does it offer opinions about any other patents. Ulterra filed this Motion to Disqualify on November 5, 2024. (Doc. No. 171).

## II. LEGAL STANDARD

"Federal courts have the inherent power to disqualify experts." *Koch Ref. Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996). That said, "cases that grant disqualification are rare." *Id.* "Merely being a lawyer does not disqualify one as an expert witness." *City of San Antonio v. Edwards Aquifer Auth.*, 2014 WL 12495317, at *2 (W.D. Tex. Sept. 30, 2014). A lawyer that testifies as an expert, however, "does not shed his responsibility to adhere to the rules of professional conduct that apply to lawyers." *Id.*

The Fifth Circuit has emphasized that a "motion to disqualify counsel is the proper method for a party-litigant to bring the issues of conflict of interest . . . to the attention of the court." *In re*

---

[2] The parties dispute the date on which Dodd's report was served on Ulterra. *See* (Doc. No. 191 at 4 n.3); (Doc. No. 183 at 5). For the sake of this analysis, the Court adopted NXV's proffered timeline of October 12, 2024. (Doc. No. 183 at 5). This date does not affect the substance of this Order.

*Am. Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992). Motions to disqualify, as substantive motions, are governed by federal law. *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995). "When considering motions to disqualify, courts should first look to 'the local rules promulgated by the local court itself.'" *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009). The Local Rules of the Southern District of Texas provide that "the minimum standard" of practice for lawyers practicing before the Court are the Texas Disciplinary Rules of Professional Conduct ("Texas Rules"). S.D. TEX. LOCAL R. APP. A, R.1A. Fifth Circuit jurisprudence further counsels courts to review "the ethical rules announced by the national profession in light of the public interest and the litigants' rights." *ProEducation Int'l, Inc.*, 587 F.3d at 299; *Am. Airlines, Inc.*, 972 F.2d at 610; *Maersk Tankers MR K/S v. M/T Swift Winchester*, 655 F. Supp. 3d 554, 558 (S.D. Tex. 2023). The Fifth Circuit recognizes the ABA Model Rules of Professional Conduct ("Model Rules") as at least one source for determining an appropriate national standard. *ProEducation Int'l, Inc.*, 587 F.3d at 299; *Am. Airlines, Inc.*, 972 F.2d at 610; *Maersk Tankers*, 655 F. Supp. 3d at 558.

Courts in the Fifth Circuit are "sensitive to preventing conflicts of interest." *ProEducation Int'l, Inc.*, 587 F.3d at 299; *Am. Airlines, Inc.*, 972 F.2d at 611; *Maersk Tankers*, 655 F. Supp. 3d at 558. Thus, "a district court is *obliged* to take measures against unethical conduct occurring in connection with any proceeding before it." *ProEducation Int'l, Inc.*, 587 F.3d at 299–300. Disqualification, however, "must not be imposed cavalierly," *id.* at 300, and a court must consider "all of the facts particular to the case . . . in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." *Id.* The party seeking disqualification bears the burden of proving that it is warranted. *Am. Airlines, Inc.*, 972 F.2d at 614.

### III. ANALYSIS

As an initial matter, there is no dispute that Ulterra is a former client of HAK. (Doc. No. 171 at 7–8); (Doc. No. 183 at 10–11). Ulterra argues that the Court should "disqualify Mr. Dodd from representing NOV against Ulterra in any capacity, expert or otherwise" due to his position as a partner at HAK, a firm that previously represented Ulterra from 2010 to 2012 in arguably related matters. (Doc. No. 171 at 6). In response, NOV argues that the applicable ethical rules and caselaw indicate that Ulterra waived its objection to Dodd's representation, Ulterra did not provide evidence that any lawyer remaining at HAK has any confidential information material to this case, and HAK's prior representation of Ulterra is not substantially related to Dodd's expert opinion. (Doc. No. 183).

**1. Did Ulterra timely object to Dodd's participation?**

The Court finds that Ulterra did not waive its objection to Dodd's representation in this case. The Court agrees with Ulterra that, while NOV argues Ulterra's four and a half month delay falls in a "gray area" of undue delay, case law has directed that a "four month" wait to file a motion to disqualify is "permissible," five months is a "gray area," and six months is "impermissible." *In re: Cinch Wireline Services, LLC.*, 2024 WL 4161463, at *8 (W.D. Tex. Bkty. Sept. 11, 2024). Generally, "[a] motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion." *Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, 2010 WL 11661414, at *6 (S.D. Tex. July 30, 2010). Considering Ulterra promptly objected to Dodd's designation as an expert and continually corresponded with both NOV's counsel and HAK's in-house counsel about its conflict concerns, the Court finds that Ulterra did not use this motion as "part of its litigation tactics." (Doc. No. 183 at 12). Ulerra's four and a half

5

month delay in actually filing its motion to disqualify does not constitute waiver. Thus, the Court will proceed on the merits.

### 2. Is Dodd's participation permissible under the appropriate rules?

While the parties do not agree on which standard applies, the Court will begin with the appropriate local and national ethical rules governing Dodd's representation here.³ Ulterra argues that disqualification is warranted "if the subject matter of the present and former representation are substantially related." *Maersk Tankers*, 655 F. Supp. 3d at 558. This standard, as Ulterra notes, stems from Texas Rule 1.09, stating in relevant part that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."⁴ TEX. DISC. R. PROF'L CONDUCT 1.09(a)(3). Under Texas Rule 1.10, "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.06 or 1.09." TEX. DISC. R. PROF'L CONDUCT 1.10(a). Thus, under this rule, once a former client establishes that a current matter is substantially related to a former representation, the lawyer's entire firm is precluded along with the lawyer who handled the prior matter. Accordingly, Ulterra argues that Dodd is precluded from handling this case, and he

---

³       The Court is well-aware that, in reality, there are no binding national ethical rules, but as noted above in the text, the Fifth Circuit has advised courts to look to the "ethical rules announced by the national profession" in addition to the Texas Disciplinary Rules of Professional Conduct that actually govern Texas lawyers.

⁴       Note that the cited standard from *Maersk Tankers* originates from the former Texas Rule 1.09. *See Maersk Tankers*, 655 F. Supp. 3d at 558. The Supreme Court of Texas adopted amendments to the Texas Rules, affecting this rule and others, effective October 1, 2024. *See* Order Adopting Amendments to Texas Disciplinary Rules of Professional Conduct, Misc. Doc. No. 24-9054, Supreme Court of Texas (Aug. 27, 2024). For this Order, the Court refers to the recently revised Texas Rules.

should be disqualified from representing NOV in any capacity, since it is an adverse party in a substantially related matter.

As NOV correctly points out, however, Ulterra ignores Texas Rule 1.10(b) in making this assertion. Rule 1.10(b) states:

> When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless:
> (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; **and**
> (2) **any lawyer remaining in the firm has information protected by Rules 1.05 and 1.09(c) that is material to the matter**.

TEX. DISC. R. PROF'L CONDuct 1.10(b) (emphasis added).[5] Under this rule, a firm is permitted to represent a client with interests materially adverse to the former client, even in a substantially related matter, so long as none of the remaining lawyers at the firm have protected, confidential information that is material to the current matter. This mirrors the identical national standard language in ABA Model Rule 1.10. Since the parties do not dispute that the lawyers at HAK who represented Ulterra from 2010 to 2012 have left the firm, *see* (Doc. No. 183 at 10–11); (Doc. No. 191 at 8), Texas Rule 1.10(b) applies here.

---

[5] Ulterra argues in footnote 7 of its Reply (Doc. No. 191 at 8) that Texas Rule 1.10(b) does not apply retroactively to the events at hand because the amendments became effective on October 1, 2024, and they do not state they apply retroactively. The Court, however, agrees with NOV that, even if 1.10(b) was not effective, comment 7 to former Rule 1.09 elaborated on the former Rule 1.09(c), stating that "[i]f . . . a lawyer disqualified by paragraph (a) should leave a firm, paragraph (c) prohibits lawyers from undertaking a representation that would be forbidden to the departed lawyer only if that representation" would question the validity of prior work for the client (former Rule 1.09(a)(1)) or, in reasonable probability, would involve an improper disclosure of the former clients information (former Rule 1.09(a)(2)). Thus, following the former Rule would only further NOV's argument for the permissibility of Dodd's participation in this case as the previous rule would not prohibit him from undertaking a representation in a matter that is "the same or substantially similar" to a previous matter. Texas Rule 1.09(a)(3) (amended Aug. 27, 2024).

Therefore, Ulterra must prove both that this matter is substantially related to HAK's previous representation and that there *is* a lawyer remaining at HAK with protected, confidential information *material* to this case.

### a) Is Dodd's participation in this case substantially related to HAK's previous representation of Ulterra?

Ulterra has not met its burden to provide evidence that this case is substantially related to HAK's previous representation of Ulterra. The substantial relationship test requires that Ulterra establish (1) "an actual attorney-client relationship" between Ulterra and HAK and (2) "a substantial relationship between the subject matter of the former and present representations." *Am. Airlines*, 972 F.2d at 614. The parties do not dispute that there was an actual attorney–client relationship between Ulterra and HAK from 2010 to 2012. (Doc. No. 183 at 10). Thus, the Court will only address the second required element.

"[A] substantial relationship may be found only after 'the moving party delineates with specificity the subject matters, issues and causes of action' common to prior and current representations and the court engages in a 'painstaking analysis of the facts and precise application of precedent.'" *Am. Airlines*, 972 F.2d at 614. The moving party must prove the "existence of a prior attorney-client relationship in which the factual matters involved were so related to the facts in the pending litigation that it creates a genuine threat that confidences revealed to his former counsel will be divulged to his present adversary." *Maersk Tankers*, 655 F. Supp. 3d at 559. Proving a substantial relationship requires "evidence of specific similarities capable of being recited in the disqualification order." *Id.*

Ulterra provides several arguments why HAK's prior representation is substantially related to the opinions Dodd offers in this case.[6] None satisfy the substantial relationship test. Notably, Ulterra's only evidence regarding the prior representation is the Affidavit of David Beck, Ulterra's current counsel who was not involved in the prior representation. (Doc. No. 171-1) (Decl. of D. Beck). In his Affidavit, Mr. Beck merely discusses seven documents from Ulterra's files that arguably highlight aspects of HAK's prior representation of Ulterra. These general descriptions of documents do not "delineate with specificity" the subject matters or issues common to HAK's prior and current representation; they merely provide a broad overview of each document with only minor indications as to how they might relate to Dodd's participation here. *See Am. Airlines*, 972 F.2d at 614. Based on this record, HAK's prior representation of Ulterra is, at best, tangentially related to Dodd's expert opinion. None of the documents indicate any specific relationship to the subject of Dodd's expert opinion or the actual issues in dispute in this case. HAK's prior representation of Ulterra is essentially "related" to Dodd's expert opinion in the same way that any licenses or patents would be related to a general explanation of licensing practices. Since Dodd is not speaking about Ulterra itself but rather general licensing concepts, HAK's prior representation of Ulterra is not "so related" to the facts of Dodd's opinion as to "create[] a genuine threat that confidences revealed" to HAK

---

[6] Ulterra asserts the following matters from its prior involvement with HAK: (1) HAK administered documents "relating to the license and patent litigation settlement resulting from *ReedHycalog U.K., Ltd. vs. United Diamond Drilling, Varel Int'l Ind., L.P., and Ulterra Drilling Tech., L.P.* Case No. 6:07-CV-251 (E.D. Tex. June 4, 2007)"; (2) "Patents that were licensed by Baker Hughes to NOV pursuant to the terms of the Baker-Hughes and NOV Patent Cross-License Agreement;" (3) "A patent that Ulterra licenses to NOV pursuant to the Patent Cross-License Agreement;" (4) "Patents related to PDC drilling technology;" (5) "Ulterra's leached polycrystalline diamond cutter manufacturing processes;" (6) "Monitoring of patents related to Ulterra's leached polycrystalline diamond cutter manufacturing processes." (Doc. No. 191 at 6).

would be divulged to NOV. *Maersk Tankers*, 655 F. Supp. 3d at 559. Therefore, Ulterra did not provide "evidence of specific similarities capable of being recited in the disqualification order," *id.*, and thus Dodd's expert opinion is not substantially related to HAK's prior representation of Ulterra.

### b) Is there any lawyer remaining at HAK with confidential information material to this case?

The Court finds that there is no evidence showing that any lawyer remaining at HAK currently possesses confidential information material to this case. As stated previously, the parties do not dispute that the lawyers at HAK who represented Ulterra from 2010 to 2012 have left the firm. *See* (Doc. No. 183 at 10–11); (Doc. No. 191 at 8). Additionally, HAK surveyed its current lawyers, and all disavowed any knowledge of HAK's prior representation of Ulterra, as well as any recollection of any confidential information of Ulterra. (Doc. No. 183-6 at ¶8). Dodd himself also never represented Ulterra and has no knowledge of the representation. (Doc. No. 183-7 at ¶2–4).

Further, even though Ulterra argues that HAK's retention of some files from its previous representation of Ulterra indicate that some lawyers at the firm could have accessed the materials, (Doc. No. 191 at 7), NOV expressly states that "HAK has made sure that no lawyers at HAK can access those files." (Doc. No. 183 at 17). Indeed, Ulterra itself states it "has no reason to disbelieve HAK's representation that all such files have been secured and accessed solely by HAK's Office of General Counsel in connection with this disqualification dispute." (Doc. No. 191 at 7). More importantly, even if there was some evidence that HAK lawyers still had access to confidential Ulterra information, there is no evidence that such information would be "material" to Dodd's present expert opinion,

as indicated by the discussion above. TEX. DISC. R. PROF'L CONDUCT 1.10(b). The Court thus finds no evidence to suggest that any lawyer at HAK has confidential information material to this case.

Texas Rule 1.10(b), and the identical ABA Model Rule 1.10, are the appropriate ethical standards here because the parties do not dispute that the lawyers at HAK who previously represented Ulterra have left the firm. *See* (Doc. No. 183 at 10–11); (Doc. No. 191 at 8). Ulterra did not provide evidence showing that Dodd's current representation is substantially related to HAK's previous representation of Ulterra nor did it provide evidence indicating that any lawyer presently at HAK has confidential information material to this case. Further, Dodd's testimony as an expert witness only addresses general licensing concepts and not any specific patents. Accordingly, Ulterra has not proven that disqualification of Dodd as an expert witness is warranted.

## IV. CONCLUSION

For the aforementioned reasons, the Court **DENIES** Ulterra's Motion to Disqualify Dodd. (Doc. No. 171). The Court additionally orders that whatever files remain at HAK, if any, that pertain to Ulterra shall remain kept by HAK's general counsel under lock and key, and no lawyer at HAK, especially Dodd, shall be allowed access during the pendency of this lawsuit or any appeal of this Court's judgment.

Signed this 29th day of September, 2025.

Andrew S. Hanen
United States District Judge